| | |
|---|---|
| 1 | ROBERT A. NAEVE (CA SBN 106095) |
| | RNaeve@mofo.com |
| 2 | MORRISON & FOERSTER LLP |
| | 19900 MacArthur Boulevard |
| 3 | Irvine, California 92612-2445 |
| | Telephone: (949) 251-7500 |
| 4 | Facsimile: (949) 251-0900 |
| 5 | DAVID F. MCDOWELL (CA SBN 125806) |
| | MICHAEL J. BOSTROM (CA SBN 211778) |
| 6 | DMcDowell@mofo.com |
| | MBostrom@mofo.com |
| 7 | MORRISON & FOERSTER LLP |
| | 555 West Fifth Street, Suite 3500 |
| 8 | Los Angeles, California 90013-1024 |
| | Telephone: (213) 892-5200 |
| 9 | Facsimile: (213) 892-5454 |
| 10 | Attorneys for Defendant |
| | TARGET CORPORATION |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NATIONAL FEDERATION OF THE BLIND, the NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, on behalf of their members, and Bruce F. Sexton, on behalf of himself and all others similarly situated, | | Case No.　C06-01802 BZ |
| Plaintiffs, | | **DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER** |
| v. | | |
| TARGET CORPORATION and DOES ONE-TEN, | | |
| Defendant. | | **[Fed. R. Civ. P. 12(b)(6), (f)]** |
| | | Hearing Date:　April 19, 2006 |
| | | Time:　10:00 a.m. |

TARGET'S MOTION TO DISMISS/ TO STRIKE (CASE NO. C06-01802 BZ)
la-846373

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on April 19, 2006, at 10:00 a.m., or as soon thereafter as the matter may be heard before a United States District Judge for the Northern District of California[1], defendant Target Corporation ("Target") will and hereby does move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' first, second, and third claims for relief. In the alternative, Target moves the Court, pursuant to Rule 12(f), to strike Plaintiffs' claims under Title III of the Americans with Disabilities Act, California's Unruh Civil Rights Act, and California's Blind and Other Physically Disabled Persons Act. This Motion is brought on the ground that Plaintiffs cannot state a claim for relief under any of these acts. This Motion is based on this Notice of Motion and Motion and Supporting Memorandum of Points and Authorities, and on such further written and oral argument as may be presented at or before the time the Court takes this motion under submission.

Dated: March 15, 2006        ROBERT A. NAEVE
                             DAVID F. MCDOWELL
                             MICHAEL J. BOSTROM
                             MORRISON & FOERSTER LLP


                             By:    /s/ Robert A. Naeve
                                    Robert A. Naeve

                             Attorneys for Defendant
                             TARGET CORPORATION

---

[1] Defendant Target Corporation files concurrently herewith its Declination to Proceed Before a Magistrate Judge and Request for Reassignment to a United States District Judge. Target will amend this Notice once a United States District Judge has been assigned to this case.

TARGET'S MOTION TO DISMISS/ TO STRIKE (CASE NO. C06-01802 BZ)
la-846373

1

**TABLE OF CONTENTS**

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................................ 1

STATEMENT OF FACTS .............................................................................................................. 2

ARGUMENT ................................................................................................................................... 3

I.   PLAINTIFFS CANNOT BASE THEIR STATE LAW CLAIMS ON AN ADA VIOLATION BECAUSE THE ADA DOES NOT APPLY TO TARGET'S WEBSITE ................................................................................................................. 3

II.  PLAINTIFFS' CLAIMS UNDER CALIFORNIA'S ACCESS STATUTES FAIL AS A MATTER OF LAW .................................................................................. 4

     A.   Plaintiffs Cannot State A Claim For Relief Under the UCRA ............................... 4
     B.   Plaintiffs Cannot State A Claim For Relief Under the DPA .................................. 5

III. CALIFORNIA'S ACCESS STATUTES WOULD VIOLATE THE COMMERCE CLAUSE IF THEY WERE INTERPRETED AS APPLYING TO THE INTERNET ................................................................................................................. 6

     A.   California May Not Project Its Laws Into Conduct Occurring Entirely Outside Its Borders .................................................................................................. 7
     B.   Any Regulation of the Internet Must Be Instituted At the National Level ............. 8

IV.  PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF FAILS BECAUSE PLAINTIFFS CANNOT SHOW TARGET'S WEBSITE VIOLATES CALIFORNIA'S ACCESS STATUTES ................................................................... 9

V.   CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

Page

## CASES

*American Booksellers Foundation v. Dean*,
   342 F.3d 96 (2d Cir. 2003) .................................................................................................. 7

*American Civil Liberties Union v. Johnson*,
   194 F.3d 1149 (10th Cir. 1999) ........................................................................................... 7

*American Library Ass'n v. Pataki*,
   969 F. Supp. 160 (S.D.N.Y. 1997) .................................................................................. 7, 9

*Arnold v. United Artists Theatre Cir., Inc.*,
   158 F.R.D. 439 (N.D. Cal. 1994) ....................................................................................... 6

*BMW of North America, Inc. v. Gore*,
   517 U.S. 559 (1996) ............................................................................................................ 7

*Center for Democracy & Tech. v. Pappert*,
   337 F. Supp. 2d 606 (E.D. Pa. 2004) ................................................................................. 8

*Hankins v. El Torito Restaurants, Inc.*,
   63 Cal. App. 4th 510 (1998) .............................................................................................. 6

*Harris v. Capital Growth Investors XIV*,
   52 Cal. 3d 1142 (1991) ....................................................................................................... 5

*Healy v. The Beer Inst.*,
   491 U.S. 324 (1989) ........................................................................................................ 2, 7

*Lentini v. California Center for the Arts*,
   370 F.3d 837 (9th Cir. 2004) .............................................................................................. 5

*Marsh v. Edwards Theatres Circuit, Inc.*,
   64 Cal. App. 3d 881 (1976) ............................................................................................ 2, 5

*Psinet, Inc. v. Chapman*,
   362 F.3d 227 (4th Cir. 2004) .............................................................................................. 7

*Southeast Booksellers Ass'n v. McMaster*,
   371 F. Supp. 2d 773 (D.S.C. 2005) .................................................................................... 7

*Southern Pac. Co. v. Arizona ex rel. Sullivan*,
   325 U.S. 761 (1945) ........................................................................................................ 2, 8

*Torres v. AT&T Broadband, LLC*,
   158 F. Supp. 2d 1035 (N.D. Cal. 2001) ............................................................................ 4

*Western Mining Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) .............................................................................................. 3

TARGET'S MOTION TO DISMISS (CASE NO. C06-01802 BZ)                                         ii

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F.3d 1104 (9th Cir. 2000) .................................................................................................. 3

**STATUTES**

42 U.S.C. § 12182(a) ..................................................................................................................... 3

28 C.F.R. § 36.104 ..................................................................................................................... 1, 3

Cal. Civ. Code §§ 51 ................................................................................................................. 2, 4

Cal. Civ. Code § 51(d) .............................................................................................................. 1, 4

Cal. Civ. Code § 54.1 ................................................................................................................ 1, 6

Cal. Civ. Code § 54.1(a)(1) ........................................................................................................... 5

Class Action Fairness Act of 2005, Pub. L. 109-2 ........................................................................ 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 1

# INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs allege Target violates Title III of the Americans with Disabilities Act ("ADA"), California's Unruh Civil Rights Act ("UCRA"), and California's Blind and Other Physically Disabled Persons Act ("DPA") because its website contains "thousands" of access barriers (Compl. ¶ 1), such as the lack of "alt-text on graphics, inaccessible image maps, and mouse-only driven transactions," that make it "difficult if not impossible for blind customers to use" (Compl. ¶1, ¶ 21).[2]  Even assuming the truth of the factual allegations, Plaintiffs' ADA, UCRA and DPA claims should be dismissed, or in the alternative stricken, for at least the following reasons:

1. Title III of the ADA does *not* apply to websites.  As we explain in detail below, the prohibitions of Title III are restricted to physical "*places* of public accommodation," which include only "facilities," such as "buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property . . . ." 28 C.F.R. § 36.104.  Internet websites are *not* actual physical places or facilities, and fall outside Title III's regulatory purview.

2. Plaintiffs cannot state a claim under the UCRA because: (a) the UCRA does not apply to websites; (b) the UCRA does not by its terms require public accommodations to construct, alter, repair or modify covered facilities, Cal. Civ. Code § 51(d); and (c) Plaintiffs have not alleged Target intentionally discriminated against them, which is required where, as here, an UCRA claim cannot be premised on an ADA violation.

3. Plaintiffs' DPA claim fails to state a claim because (a) the DPA only applies to physical places, not to websites, Cal. Civ. Code § 54.1; and (b) Plaintiffs must prove Target's website violates California's building codes, which they cannot do. *Marsh v. Edwards Theatres Circuit, Inc.*, 64 Cal. App. 3d 881, 892 (1976).

---

[2] Target removed this action from the Superior Court of the State of California, County of Alameda on March 6, 2006 pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2.

1    4.   Even if the UCRA and DPA could somehow be interpreted as requiring Target to modify its website, applying those statutes to Target's website would amount to a *per se* violation of the Commerce Clause of the United States Constitution, U.S. CONST. art. I, § 8, cl. 3. First, by requiring Target to modify its website, California would be impermissibly regulating conduct occurring entirely outside its borders because Target's website is accessible to consumers all around the country, not just consumers in California. *Healy v. The Beer Inst.*, 491 U.S. 324, 336 (1989). Second, regulation of the Internet is exclusively reserved for Congress because otherwise Target, and all other Internet users, could be subjected to inconsistent and contradictory state law standards. *Southern Pac. Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761 (1945).

5.   Plaintiffs' third claim for a declaration that Target's website violates California's access statutes fails for all the reasons listed above.

## STATEMENT OF FACTS

Plaintiffs National Federation of the Blind, the National Federation of the Blind of California, and Bruce F. Sexton do not allege that Target in any way impedes their access to Target's brick and mortar stores. Plaintiffs' claims are limited solely to Target's website. Plaintiffs allege "Target denies the blind access to goods services and information made available on Target.com by preventing them from freely navigating Target.com." (Compl. ¶20.) In particular, Plaintiffs allege "Target.com contains a variety of access barriers that prevent free and full use by blind persons using keyboards and screen reading software. These barriers include but are not limited to: lack of alt-text on graphics, inaccessible image maps, and mouse-only driven transaction." (Compl. ¶21.)

Based on these allegations, Plaintiffs assert three purported claims for relief. In their first claim for relief, Plaintiffs allege Target's website violates the UCRA. (Compl., ¶¶ 25, 26.) In their second claim for relief, Plaintiffs allege Target's website violates the DPA. (Compl., ¶¶ 33, 34.) Plaintiffs base both their UCRA claim and their DPA claim, at least in part, on allegations that Target's website also violates the ADA. (Compl. ¶¶ 27, 35.) (An ADA violation amounts to

TARGET'S MOTION TO DISMISS/ TO STRIKE (CASE NO. C06-01802 BZ)
la-846373

2

1  an automatic UCRA and DPA violation.  *See* Cal. Civ. Code §§ 51 and 54.1.)  Plaintiffs repeat

2  their UCRA and DPA claims in their third claim for relief by seeking a declaration that Target's

3  website violates both of these statutes.  (Compl., ¶40.)

4        For purposes of this Motion only, we assume the truth of Plaintiffs' factual allegations.

5  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (on a motion to dismiss,

6  courts will "generally assume the factual allegations to be true").  As explained below, even

7  assuming Plaintiffs' factual allegations are true, Plaintiffs have not stated a claim under the ADA,

8  UCRA, or DPA.  Plaintiffs claims under those statutes should, therefore, be dismissed, or in the

9  alternative, stricken without leave to amend.

10 **ARGUMENT**

11 **I.  PLAINTIFFS CANNOT BASE THEIR STATE LAW CLAIMS ON AN ADA VIOLATION BECAUSE THE ADA DOES NOT APPLY TO TARGET'S**
12 **WEBSITE**

13  Title III of the ADA provides:

14      No individual shall be discriminated against on the basis of
       disability in the full and equal enjoyment of the goods, services,
15     facilities, privileges, advantages, or accommodations of any place
       of public accommodation by any person who owns, leases (or
16     leases to), or operates <u>a place of public accommodation</u>.

17  42 U.S.C. § 12182(a) (emphasis added).  Thus, to establish an ADA violation, Plaintiffs must

18  demonstrate that Target's website is a "place of public accommodation."  *Id.*

19        Plaintiffs cannot make that showing.  The prohibitions of Title III are restricted to

20  "places" of public accommodation.  As the applicable regulations clarify, a "place" is "a facility,

21  operated by a private entity, whose operations affect commerce and fall within at least one of

22  the" twelve "public accommodation" categories.  28 C.F.R. § 36.104.  "Facility," is defined as

23  "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other

24  conveyances, roads, walks passageways, parking lots, or other real or personal property,

25  including the site where the building, property, structure, or equipment is located."  *Id.*  Clearly,

26  Target's website is not a "facility" because it is not an actual physical place.

27        For these reasons, the Ninth Circuit has held that Title III of the ADA does not apply

28  where, as here, a plaintiff does not claim he was denied access to an actual physical place.

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (affirming summary judgment of Title III claim where plaintiff's claim centered on the terms of an insurance contract, rather than access to defendant insurance company's physical office). *See also Torres v. AT&T Broadband, LLC*, 158 F. Supp. 2d 1035, 1038 (N.D. Cal. 2001) (dismissing claim that defendants' digital cable channel menu violated the ADA "because in no way does viewing the system's images require the plaintiff to gain access to any actual physical public place"). Thus, Plaintiffs cannot base their UCRA and DPA claims on an ADA violation.

## II. PLAINTIFFS' CLAIMS UNDER CALIFORNIA'S ACCESS STATUTES FAIL AS A MATTER OF LAW

### A. Plaintiffs Cannot State A Claim For Relief Under the UCRA

The UCRA provides:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51.

The UCRA makes clear, however, that:

> Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure . . . .

Cal. Civ. Code § 51(d).

Plaintiffs cannot state a claim under the UCRA because the UCRA does not apply to the Internet. Indeed, Section 51 only applies to establishments, facilities, buildings, improvements, and other structures.

Even if the UCRA did apply to websites, the language quoted above provides that the UCRA does not require Target to make any "alteration, repair, or modification" to its website in

order to improve access by the visually impaired. Cal. Civ. Code § 51 (d). Thus, as a matter of law, Target cannot be held to violate the UCRA.

Moreover, the California Supreme Court has long held that "a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act." *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991). While intentional discrimination is not required where the alleged UCRA violation is premised on an ADA violation, *Lentini v. California Center for the Arts*, 370 F.3d 837, 847 (9th Cir. 2004), intentional discrimination is still required where, as here, the UCRA claim cannot be premised on an ADA violation. Because Plaintiffs have failed to allege Target intentionally discriminated against them, they have failed to state a claim under the UCRA.

**B.     Plaintiffs Cannot State A Claim For Relief Under the DPA**

California Civil Code section 54.1 provides:

> Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

Cal. Civ. Code § 54.1(a)(1).

The alleged access barriers in Target's website cannot give rise to a DPA violation because the DPA, by its terms, does not apply to websites. As the language quoted above demonstrates, the DPA only applies to physical places such as hospitals, airplanes, schools, hotels, and amusement parks. Target's website is not a physical place.

Furthermore, because the DPA only applies to physical places, a DPA claim must be premised on a California building code violation. *See, e.g., Marsh v. Edwards Theatres Circuit, Inc.*, 64 Cal. App. 3d 881, 892 (1976) ("We conclude that the operator of a business of a type

1  enumerated in Civil Code section 54.1 is not required by the force of that section *alone* to modify
2  its facilities to allow for their use by handicapped persons. That statute requires only that the
3  operator open its doors on an equal basis to all that can avail themselves of the facilities without
4  violation of other valid laws and regulations.") (emphasis in original; superseded by statute on
5  other grounds); *Arnold v. United Artists Theatre Cir., Inc.*, 158 F.R.D. 439, 446 (N.D. Cal. 1994)
6  ("The degree of 'full and equal access' to places of public accommodation guaranteed to disabled
7  persons under § 54.1(a) is defined by building code standards that are imposed under California
8  Government Code §4450.") Here, Plaintiffs have not alleged Target's website is in violation of
9  any California building code.

10  The California Court of Appeal for the First Appellate District has declined to follow
11  *Marsh*'s requirement that a DPA claim be based on a building code violation, in a single, limited
12  instance. *See Hankins v. El Torito Restaurants, Inc.*, 63 Cal. App. 4th 510, 522 (1998). The
13  *Hankins* court held that a discriminatory policy that precludes access to a physical place may
14  also violate the DPA. *Hankins* at 522-24 (holding El Torito's policy prohibiting disabled patrons
15  from using the employee restroom on the first floor of the restaurant violated the DPA where the
16  only restroom for customer use was on the second floor of the restaurant, which was out of reach
17  for disabled customers). This narrow exception, however, cannot save Plaintiffs' DPA claim.
18  Even if this Court were to follow *Hankins*, Plaintiffs' DPA claim would still fail because
19  Plaintiffs have not alleged that Target has any discriminatory policy that prevents them from
20  accessing a physical place.

### III. CALIFORNIA'S ACCESS STATUTES WOULD VIOLATE THE COMMERCE CLAUSE IF THEY WERE INTERPRETED AS APPLYING TO THE INTERNET

23  Even if the UCRA and DPA could somehow be interpreted as applying to Target's
24  website as Plaintiffs claim, applying those statutes to Target's website would amount to a *per se*
25  Commerce Clause violation. First, if California applied the UCRA and DPA to the Internet,
26  California would be impermissibly applying its laws to conduct occurring entirely outside its
27  borders. Second, the Internet is an area of commerce for which regulation, if any, falls within
28  Congress' exclusive purview.

1  **A. California May Not Project Its Laws Into Conduct Occurring Entirely Outside Its Borders**

The Supreme Court has long held "a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature. The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State." *Healy v. The Beer Inst.*, 491 U.S. 324, 336 (1989) (striking a Connecticut statute that required out-of-state beer shippers to affirm their prices were no higher than the prices charged in the bordering states at the time of the affirmation). *See also BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) (holding the Commerce Clause precludes a single state from imposing a nationwide policy requiring full disclosure of presale repairs to an automobile).

Relying on *Healy*, *Gore*, and similar Supreme Court decisions, the court in *American Library Ass'n v. Pataki,* 969 F. Supp. 160 (S.D.N.Y. 1997), found a New York statute making it unlawful to disseminate communications harmful to minors over the Internet constituted a *per se* Commerce Clause violation. *Pataki* at 177. As the court explained,

> The nature of the Internet makes it impossible to restrict the effects of the New York Act to conduct occurring within New York. An Internet user may not intend that a message be accessible to New Yorkers, but lacks the ability to prevent New Yorkers from visiting a particular Website or viewing a particular newsgroup posting or receiving a particular mail exploder. Thus, conduct that may be legal in the state in which the user acts can subject the user to prosecution in New York and thus subordinate the user's home state's policy -- perhaps favoring freedom of expression over a more protective stance -- to New York's local concerns.

*Pataki* at 177.

The reasoning in *Pataki* has been widely adopted. *See American Booksellers Foundation v. Dean*, 342 F.3d 96, 99 (2d Cir. 2003) (enjoining enforcement of a Vermont statute prohibiting the distribution over the internet of sexually explicit materials that are "harmful to minors" on Commerce Clause grounds); *Psinet, Inc. v. Chapman*, 362 F.3d 227 (4th Cir. 2004) (same); *American Civil Liberties Union v. Johnson*, 194 F.3d 1149 (10th Cir. 1999) (same); *Southeast*

TARGET'S MOTION TO DISMISS/ TO STRIKE (CASE NO. C06-01802 BZ)
la-846373

7

*Booksellers Ass'n v. McMaster*, 371 F. Supp. 2d 773 (D.S.C. 2005) (same); *Center for Democracy & Tech. v. Pappert*, 337 F. Supp. 2d 606, 610 (E.D. Pa. 2004) (enjoining enforcement of Pennsylvania law requiring an Internet Service Provider to remove or disable access to child pornography items "residing on or accessible through its service" after notification by the Pennsylvania Attorney General on Commerce Clause grounds).

The same result should be reached here. By virtue of the Internet's unrestricted reach, Target's website is accessible to consumers all around the country, not just consumers in California. Thus, if this Court were to construe the UCRA and DPA as applying to Target's website, as Plaintiffs request, then California would be impermissibly applying its laws beyond its borders, such as when a consumer in Colorado or New Mexico purchases a good or service through Target's website.

### B. Any Regulation of the Internet Must Be Instituted At the National Level

The Supreme Court has also long held that the Commerce Clause bars states from regulating "those phases of the national commerce which, because of the need of national uniformity, demand that their regulation, if any, be prescribed by a single authority." *Southern Pac. Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761 (1945). In *Southern Pacific*, the Court stuck down an Arizona statute limiting the length of trains within the state to fourteen passenger and seventy freight cars. The Arizona law had the effect of forcing interstate railroads to decouple their trains in Texas or New Mexico and reform the train at full length in California. Thus, the practical impact of the Arizona law was to control the length of trains "all the way from Los Angeles to El Paso." *Southern Pacific* at 775. In striking the Arizona law as violative of the Commerce Clause, the Court noted:

> With such laws in force in states which are interspersed with those having no limit on train lengths, the confusion and difficulty with which interstate operations would be burdened under the varied system of state regulation and the unsatisfied need for uniformity in such regulation, if any, are evident.

*Southern Pacific* at 773-74.

TARGET'S MOTION TO DISMISS/ TO STRIKE (CASE NO. C06-01802 BZ)
la-846373

8

Relying on *Southern Pacific*, and similar decisions, the *Pataki* court found New York's statute making it unlawful to disseminate communications harmful to minors over the Internet also constituted a *per se* Commerce Clause violation because the Internet, like the railroad, is an area of commerce reserved for national regulation. *Pataki,* 969 F. Supp. at 183.  As the *Pataki* court explained, "[t]he Internet, like the rail and highway traffic at issue in the cited cases, requires a cohesive national scheme of regulation so that users are reasonably able to determine their obligations.  Regulation on a local level, by contrast, will leave users lost in a welter of inconsistent laws, imposed by different states with different priorities." *Pataki,* 969 F. Supp. at 182.

Moreover, as the *Pataki* court recognized, Internet users, like Target, are in a worse position than the train engineer in *Southern Pacific*.  The train engineer can steer around Arizona, or reconfigure the train at the state line.  Internet users, however, "cannot foreclose access to [their] work from certain states or send differing versions of [their] communication to different jurisdictions." *Pataki* at 183.  The users must "thus comply with the regulation imposed by the state with the most stringent standard or forego Internet communication of the message that might or might not subject her to prosecution." *Id.*

The same analysis applies here.  Target cannot foreclose access to its website from residents in California, nor can Target design differing website versions for different jurisdictions.  Thus, if states are permitted to regulate the Internet, Target, and all other on-line retailers, will be forced to comply with the regulation imposed by the state with the most stringent standards, or forego Internet commerce altogether.  Regulation of the Internet, if any, is most clearly reserved for Congress.

In short, Plaintiffs have failed to state a claim under the UCRA or the DPA because the Commerce Clause precludes California from applying those statutes to Target's website.

## IV. PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF FAILS BECAUSE PLAINTIFFS CANNOT SHOW TARGET'S WEBSITE VIOLATES CALIFORNIA'S ACCESS STATUTES

In their third claim for relief, Plaintiffs allege they are entitled to a declaration that Target's website violates the UCRA and the DPA. (Compl., ¶ 40.) Again, as discussed above, Plaintiffs cannot state a claim under the UCRA or the DPA for all of the reasons stated in Section II. Moreover, even if the UCRA and DPA could be interpreted to apply to Target's website, applying those states to Target's website would amount to a *per se* Commerce Clause violation.

## V. CONCLUSION

For all the foregoing reasons, Target respectfully requests that the Court dismiss, or in the alternative strike Plaintiffs' ADA, UCRA, and DPA claims.

Dated: March 15, 2006

ROBERT A. NAEVE
DAVID F. MCDOWELL
MICHAEL J. BOSTROM
MORRISON & FOERSTER LLP

By:   /s/ Robert A. Naeve
         Robert A. Naeve

Attorneys for Defendant
TARGET CORPORATION