1   LAURENCE W. PARADIS (California Bar No. 122336)
    lparadis@dralegal.org
2   MAZEN M. BASRAWI (California Bar No. 235475)
    mbasrawi@dralegal.org
3   DISABILITY RIGHTS ADVOCATES
    2001 Center Street, Third Floor
4   Berkeley, California 94704
    Telephone:    (510) 665-8644
5   Facsimile:    (510) 665-8511
    TTY:          (510) 665-8716
6
7   TODD M. SCHNEIDER (California Bar No. 158253)
    tschneider@schneiderwallace.com
    JOSHUA KONECKY (California Bar No. 182897)
8   jkonecky@schneiderwallace.com
    SCHNEIDER & WALLACE
9   180 Montgomery Street, Suite 2000
    San Francisco, CA 94104
10  Telephone:    (415) 421-7100
    Fax:          (415) 421-7105
11  TTY:          (415) 421-1655

12  DANIEL F. GOLDSTEIN (*pro hac vice*)
    dfg@browngold.com
13  BROWN, GOLDSTEIN & LEVY, LLP
    120 E. Baltimore St., Suite 1700
14  Baltimore, MD 21202
    Telephone:    (410) 962-1030
15  Fax:          (410) 385-0869

16

17                  **UNITED STATES DISTRICT COURT**

18                 **NORTHERN DISTRICT OF CALIFORNIA**

19                   **SAN FRANCISCO DIVISION**

20   NATIONAL FEDERATION OF THE        Case No.:  C 06-01802 MHP
     BLIND, the NATIONAL FEDERATION OF
21   THE BLIND OF CALIFORNIA, on behalf of   **CLASS ACTION**
     their members, and Bruce F. Sexton, on behalf
22   of himself and all others similarly situated,   **PLAINTIFFS' NOTICE OF MOTION
                                         AND MOTION FOR PRELIMINARY
23                 Plaintiffs,           INJUNCTION; MEMORANDUM OF
                                         POINTS AND AUTHORITIES**
24   v.
                                         Hearing Date: June 12, 2006
25   TARGET CORPORATION,                 Time:         2:00 p.m.
                                         Judge:        The Honorable Marilyn Hall
26                 Defendant.                          Patel

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1

# **TABLE OF CONTENTS**

2    I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

3    II.    FACTS ........................................................................................................ 2

4         A.    The Parties ...................................................................................... 2

5         B.    Making Websites Accessible To Blind Individuals Is Not Difficult. .................... 4

6         C.    Target Refuses To Make Its Website Accessible. .................................. 5

7         D.    NFB Attempted To Convince Target To  Make Its Website Accessible ............... 6

8    III.   LEGAL STANDARD ................................................................................. 7

9    IV.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ..................................... 7

10        A.    Plaintiffs' Unruh Act Claim Will Succeed Because Target Corporation Is A
                Covered Entity That Unlawfully Discriminates Against The Blind. ...................... 7

11

12             1.    Target Corporation Is A Business Establishment Within The
                     Contemplation Of The Unruh Act. ............................................. 7

13             2.    Target.com Is A Service, Privilege, Facility, Advantage Or
                     Accommodation Of Target Corporation. ......................................... 8

14

15             3.    Target.com Is Inaccessible And Thus Denies The Blind Full And Equal
                     Access To Target's Facilities, Privileges And Services. ........................ 9

16             4.    If Intentional Discrimination Is An Element Of An Unruh Act Claim,
                     Target's Knowing Refusal To Remove Barriers Demonstrates Intent. ...... 9

17

18        B.    Plaintiffs' Disabled Persons Act Claim Will Succeed Because Target.com Is An
                Accommodation, Advantage, Facility Or Privilege Of Target Stores. ................. 10

19             1.    Target.com Is An Accommodation, Advantage, Facility Or Privilege Of
                     Target Stores. ......................................................................... 11

20

21             2.    Failing To Provide Blind Customers Full And Equal Access To
                     Target.com Violates The DPA. ................................................. 12

22        C.    Plaintiffs' ADA Claim Will Succeed Because Target.com Is A Service, Facility,
                Privilege, Advantage Or Accommodation Of Target Stores. ............................. 12

23

24             1.    Title III Applies to Target.com Because It Is A Service, Facility, Privilege,
                     Advantage Or Accommodation Of Target Corporation's Stores. ............ 13

25             2.    Target Discriminates Against The Blind In Creating, Maintaining And
                     Operating Target.com In An Inaccessible Manner. ......................... 15

26

          D.    Target Has Violated All Three Statutes. ...................................... 15

27

28   V.     THE FAILURE TO MAKE TARGET.COM ACCESSIBLE TO THE BLIND CAUSES
            IRREPARABLE HARM .......................................................................... 17

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

# TABLE OF CONTENTS
## (continued)

VI.     THE BALANCE OF HARDSHIPS TIPS HEAVILY IN PLAINTIFFS' FAVOR ......... 18

VII.    THE INJUNCTION PLAINTIFFS SEEK IS REASONABLE ........................................ 18

VIII.   AN INJUNCTION IS IN THE PUBLIC INTEREST ...................................................... 19

IX.     THE COURT SHOULD WAIVE THE BOND REQUIREMENT OR ORDER A
        NOMINAL BOND ............................................................................................................ 20

X.      CONCLUSION ................................................................................................................. 21

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

# TABLE OF AUTHORITIES

## CASES

*American Motorcyclist Ass'n v. Watt,*
    714 F.2d 962 (9th Cir. 1983) ........................................................................ 19

*Anderson v. United States,*
    612 F.2d 1112 (9th Cir. 1979) ........................................................................ 7

*Burks v. Poppy Const. Co.,*
    57 Cal. 2d 463 (1962) ........................................................................ 8

*Burlington Northern R. Co. v. Department of Revenue of State of Wash.,*
    934 F.2d 1064 (9th Cir. 1991) ........................................................................ 17

*Chabner v. United of Omaha Life Ins. Co.,*
    225 F.3d 1042 (9th Cir. 2000) ........................................................................ 8

*Connecticut General Life Ins. Co. v. New Images of Beverly Hills,*
    321 F.3d 878 (9th Cir. 2003) ........................................................................ 20

*Cupolo v. Bay Area Rapid Transit,*
    5 F. Supp. 2d 1078 (N.D. Cal. 1997) ........................................................................ 17, 20

*Doctor's Associates Inc. v. Stuart,*
    85 F.3d 975 (2nd Cir. 1996) ........................................................................ 20

*Gorbach v. Reno,*
    219 F.3d 1087 (9th Cir.2000) ........................................................................ 20

*Gresham v. Windrush Partners, Ltd.,*
    730 F.2d 1417 (11th Cir.1984) ........................................................................ 17

*Hankins v. El Torito Restaurants, Inc.,*
    63 Cal. App. 4th 510 (1998) ........................................................................ 10, 11

*Harris v. Capital Growth Investors XIV,*
    52 Cal. 3d 1142 (1991) ........................................................................ 10

*Isbister v. Boys' Club of Santa Cruz,*
    40 Cal. 3d 72 (1985) ........................................................................ 9

*Keirnan v. Utah Transit Authority,*
    339 F.3d 1217 (10th Cir. 2003) ........................................................................ 17

*Lentini v. California Center for the Arts,*
    370 F.3d 837 (9th Cir. 2004) ........................................................................ 9, 10

*O'Connor v. Village Green Owners Ass'n,*
    33 Cal. 3d 790 (1983) ........................................................................ 8

*Pathways Psychosocial v. Town of Leonardtown, Md.,*
    223 F. Supp. 2d 699 (D. Md. 2002) ........................................................................ 17

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

# TABLE OF AUTHORITIES
### (continued)

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency,*
    766 F.2d 1319 (9th Cir. 1985) ................................................................ 20

*Presta v. Peninsula Corridor Joint Powers Bd.*
    16 F. Supp. 2d 1134 (N.D. Cal. 1998) ................................................ 9, 10, 19

*Regents of the University of California v. Dakocytomation California, Inc.,*
    Slip Copy, 2006 WL 618769, 3 (N.D. Cal., March 10, 2006) ....................... 7

*Rendon v. Valleycrest Productions, Ltd.,*
    294 F.3d 1279 (11th Cir. 2004) .......................................... 12, 14, 15

*Scherr v. Volpe,*
    466 F.2d 1027 (7th Cir. 1972) ............................................................ 20

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs,*
    251 F.3d 814 (9th Cir. 2001) ............................................................ 17

*Smallwood v. National Can Co.,*
    583 F.2d 419 (9th Cir. 1978) ............................................................ 17

*Sullivan By and Through Sullivan v. Vallejo City Unified School Dist.,*
    731 F. Supp. 947 (E.D. Cal. 1990) ..................................................... 17

*United States by Mitchell v. Hayes Int'l Corp.,*
    415 F.2d 1038 (5th Cir. 1969) ............................................................ 17

*Warfield v. Peninsula Golf & Country Club,*
    10 Cal. 4th 594 (1995) ....................................................................... 8

## STATUTES

42 U.S.C. § 12101(b)(1). ......................................................................... 19

42 U.S.C. § 12181 ................................................................................... 2

42 U.S.C. § 12182(a) ............................................................................... 12

42 U.S.C. § 12182(b) ............................................................................... 12

42 U.S.C. § 12182(b)(2)(A)(ii) ................................................................ 13

42 U.S.C. § 12182(b)(2)(A)(iii) ............................................................... 13

42 U.S.C. § 12182(b)(2)(A)(iv) ............................................................... 13

42 U.S.C. § 12182(7)(e) .......................................................................... 13

42 U.S.C. § 12188(a) ............................................................................... 17

Cal. Civ. Code § 51................................................................................... 1

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

# TABLE OF AUTHORITIES
### (continued)

Cal. Civ. Code § 51(b) ........................................................................................... 1, 7, 8

Cal. Civ. Code § 52.1(b) ............................................................................................ 17

Cal. Civ. Code § 54.1(a)(1)....................................................................................... 2, 11

Cal. Civ. Code § 55 ................................................................................................... 17

# OTHER AUTHORITIES

11A Charles Allen Wright, Arthur A. Miller, & Mary Kay Kane,
  *Federal Practice and Procedure* § 2948.4 (2nd ed. 1995).................................... 19

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1  **NOTICE OF MOTION AND MOTION**

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3  　　　　PLEASE TAKE NOTICE that on June 12, 2006 at 2:00 p.m., or as soon thereafter as the

4  matter may be heard by the above-entitled court located at 450 Golden Gate Avenue, San

5  Francisco, California 94102, Courtroom 15, Plaintiffs National Federation of the Blind ("NFB"),

6  NFB of California and Bruce Sexton will and hereby do move the Court for a preliminary

7  injunction requiring Target Corporation ("Target") to make its website, target.com, readily

8  accessible to and useable by blind persons who use screen-reading software.  This motion is

9  brought on the grounds that Target, by failing and refusing to make target.com accessible, is in

10  violation of California's Unruh Civil Rights Act (California Civil Code §§ 51, *et seq.*),

11  California's Disabled Person's Act (California Civil Code §§ 54, *et seq.*) and Title III of the

12  Americans With Disabilities Act (42 U.S.C. §§ 12181, *et seq.*) and on the basis that these

13  violations have and are causing irreparable injuries to the blind.  This motion is based on this

14  Notice of Motion and Motion, the supporting Memorandum of Points and Authorities and

15  declarations filed herewith, and on such further written and oral argument as may be presented at

16  or before the time the Court takes this motion under submission.

17

18  DATED:　　　May 8, 2006　　　　　　　DISABILITY RIGHTS ADVOCATES
　　　　　　　　　　　　　　　　　　　　　　　LAURENCE W. PARADIS
19  　　　　　　　　　　　　　　　　　　　　　　MAZEN M. BASRAWI

20  　　　　　　　　　　　　　　　　　　　　　　SCHNEIDER & WALLACE
　　　　　　　　　　　　　　　　　　　　　　　TODD M. SCHNEIDER
21  　　　　　　　　　　　　　　　　　　　　　　JOSHUA KONECKY

22  　　　　　　　　　　　　　　　　　　　　　　BROWN, GOLDSTEIN & LEVY, LLP
　　　　　　　　　　　　　　　　　　　　　　　DANIEL F. GOLDSTEIN (*pro hac vice*)
23

24  　　　　　　　　　　　　　　　　　　　By:　　 /s/ Laurence W. Paradis　
　　　　　　　　　　　　　　　　　　　　　　　Laurence W. Paradis
25  　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs

26

27

28

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:　C 06-01802 MHP**
**Motion For Preliminary Injunction**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs move for a preliminary injunction to prevent Target Corporation ("Target") from continuing to deny blind individuals full and equal access to one of its major services – "target.com."  Target.com is a website that links the public to a wide array of household goods, clothing, pharmaceutical services, pricing discounts, product information and employment opportunities that are available in Target's retail stores.  Despite Target's substantial revenues (fifty-two billion dollars in 2005), Target does not incorporate basic, readily available technology commonly used by businesses to make their websites accessible to blind individuals.  As evidenced by Target's recently filed Motion to Dismiss (which misstates both plaintiffs' allegations and the substantive legal requirements), Target refuses to acknowledge its obligation to make its website accessible to people with disabilities.  Plaintiffs seek preliminary injunctive relief to prevent Target from continuing to deny blind persons full and equal access to one of its major services – "target.com."

As shown below, plaintiffs meet both tests for issuance of a preliminary injunction.  With respect to the need to demonstrate "likelihood of success" on the merits, plaintiffs do so on each of their statutory claims, although a strong case on only one would suffice.  Plaintiffs succeed on their claim under the California Unruh Civil Rights Act[1] because (1) Target is a "business establishment" subject to the Act; (2) target.com is one of Target's "accommodations, advantages, facilities, privileges or services;" and (3) Target does not make target.com available to the blind on a "full and equal" basis to non-disabled persons.[2]  Plaintiffs have a substantial likelihood of success under both the California Disabled Persons Act and Title III of the ADA because (1) Target's retail stores are places of public accommodation; (2) target.com is one of the "accommodations, advantages, facilities, privileges or services" of the retail stores; and (3) blind individuals do not have "full and equal access, as other members of the general public" to

---

[1] Cal. Civ. Code §§ 51, *et seq*.
[2] *See* Cal. Civ. Code § 51(b); Section IV.A., *infra*.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1  this accommodation, advantage, facility, privilege, and/or service.[3]  The merits of the motion for

2  preliminary injunction do <u>not</u> turn on whether target.com is itself a "place of public

3  accommodation."  That issue, while alleged as an alternative theory of liability in the Amended

4  Complaint, need not be addressed or resolved at this time for plaintiffs to have a substantial

5  likelihood of success on any of their other claims.

6       As to the remaining considerations for issuance of a preliminary injunction, the

7  California statutes at issue and the ADA all specifically authorize injunctive relief.  It is well-

8  established that harm caused by ongoing discrimination is irreparable.[4]  Moreover, the balance of

9  hardships and public interest tip sharply in plaintiffs' favor: (1) meaningful access to the World

10  Wide Web is an indispensable component of independent living for the blind in today's

11  technology-dependent world; (2) the laws at issue permit the use of injunctions to eradicate

12  ongoing discrimination; (3) Target has extensive resources to make target.com accessible; (4)

13  established guidelines and readily available protocols exist to make websites accessible; (5) the

14  Court can craft an order allowing Target to use such guidelines and protocols to make target.com

15  readily accessible and usable by blind people within a reasonably defined period of time (*e.g.*, 90

16  days); and (6) the injunction can provide Target an opportunity to resolve particularly identified

17  difficulties that arise (if any) by conferring with plaintiffs.

18       For all these reasons, plaintiffs request that the Court grant their motion for a preliminary

19  injunction as set forth herein.

20  **II.    FACTS**

21       **A.    <u>The Parties</u>**

22       Bruce Sexton, a blind student at the University of California Berkeley, employs screen

23  access software to use the internet for a variety of daily activities, including banking, research,

24  online shopping, e-mail and instant messaging.[5]  Target.com's many barriers, however, prevent

25

26

27  ---
[3] *See* Cal. Civ. Code § 54.1(a)(1); Section IV.B., *infra*; *see* 42 U.S.C. §§ 12181 *et seq.*; Section IV.C., *infra*.

28  [4] *See* Section V, *infra*.
[5] Declaration of Bruce F. Sexton, Jr. ("Sexton Decl.") at ¶¶2, 4, 14-17.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

him from navigating that site.[6]  Its inaccessibility, in turn, diminishes Mr. Sexton's use of Target stores.[7]  The inaccessible features on target.com include product information on in store items, including brand, model, features and price; information concerning weekly specials at individual stores; coupons for store redemption; and other store-related services which Mr. Sexton would choose to use if they were accessible.[8]  Moreover, while sighted persons can browse, purchase and receive special discounts to Target's merchandise from the comfort of their home computer, Mr. Sexton must travel to a Target store.[9]  These inequalities unfairly burden Mr. Sexton.[10]

The National Federation of the Blind ("NFB") is the oldest and largest national advocacy organization of blind persons.  The vast majority of its approximately 50,000 members are blind. The NFB is widely recognized by the public, Congress, executive agencies of government and the courts as a collective and representative voice on behalf of blind Americans and their families.  Its purpose is to promote the general welfare of the blind by (1) assisting the blind in their efforts to integrate themselves into society on equal terms and (2) removing barriers and changing social attitudes, stereotypes, and mistaken beliefs that sighted and blind persons hold concerning the limitations created by blindness and that result in the denial of opportunity to blind persons in virtually every sphere of life.[11]  The NFB has brought this suit on behalf of its members and a proposed class of all blind persons throughout the United States who have and are being denied access due to the barriers on target.com.[12]

Access to the World Wide Web and the wealth of services and information it offers has become a significant concern to the NFB.  Increasingly, the Web has become an essential means to deliver information, conduct business and interact socially.  If the blind are to live and work independently in today's technology-dependent world, meaningful access to the Web is indispensable.  To make the Web fully accessible, the NFB and many of its members have been

---

[6] *Id*. at ¶¶29-35.
[7] *Id*.
[8] *Id*.
[9] *Id*. at ¶¶22-25, 28.
[10] *Id*. at ¶¶28, 33-37.
[11] Declaration of Marc Maurer ("Maurer Decl."), President of the NFB, at ¶5.
[12] Amended Complaint at ¶¶8, 12.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1   actively developing and promoting adaptive technology for the blind, including screen readers,

2   and basic improvements in web design.[13]

3         Target Corporation ("Target") is a leading national retailer that offers household goods

4   and clothing, an in-store pharmacy and other services.  Target's gross revenues exceeded forty-

5   six billion dollars in 2004 and leapt to fifty-two billion dollars in 2005.[14]  More than 200 of its

6   1400 stores are in California.[15]  Through target.com, Target maintains an online business that

7   provides a multitude of services, including online shopping of items also available in Target

8   stores; web-exclusive merchandise; special offers, coupons and programs; a store locator

9   allowing persons who wish to shop at Target to learn its locations, hours and phone numbers;

10  online orders of prescriptions for pickup at certain Target stores; online placement of deli party

11  orders for pickup at certain Target stores; online photo shops wherein photos can be ordered for

12  pickup at a Target store; and wedding and baby registries linked to Target's in-store

13  merchandise.  The website also includes extensive information about Target's employment

14  opportunities, investor relations and company policies.[16]  All these features are provided on

15  target.com to be useful to sighted customers; they would be equally valuable to blind

16  customers.[17]

17      **B.**    **Making Websites Accessible To Blind Individuals Is Not Difficult.**

18        To use websites, the blind rely on screen access software that reads the code behind the

19  computer screen and text-to-speech software that vocalizes that information.  (To best illustrate

20

21  [13] Declaration of Anne Taylor ("Taylor Decl."), Co-Director of the NFB International Braille and Technology Center for the Blind, at ¶6; Maurer Decl. at ¶6.

22  [14] Press Release, Target Corporation, "Target Corporation Fourth Quarter Earnings Per Share From Continuing Operations $1.06" (February 16, 2006) (on file with author and at

23  http://investors.target.com).

24  [15] Target Corporation, "Company Overview", http://investors.target.com/phoenix.zhtml?c=65828&p=irol-homeProfile (last visited May 4, 2006).

25  [16] *See* Target website, http://www.target.com (last visited May, 4, 2006).

26  [17] *See* Sexton Decl. at ¶32; Declaration of Bob Ayala ("Ayala Decl.") at ¶¶16-19; Declaration of Tim Elder ("Elder Decl.") at ¶¶10, 14-15; Declaration of Tina Thomas  ("Thomas Decl.") at

27  ¶¶13, 17; Declaration of Ken Volonte ("Volonte Decl.") at  ¶¶16-17; Declaration of Terri Uttermohlen ("Uttermohlen Decl.") at  ¶¶15, 21; Declaration of Steve Jacobson ("Jacobson

28  Decl.") at ¶¶14, 20; Declaration of Robert Stigile ("Stigile Decl.") at ¶¶14, 18.

---

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Motion For Preliminary Injunction**      4

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

how screen access software functions, the elements of web accessibility and the inaccessibility of target.com, plaintiffs are prepared to present their web access expert, Dr. James W. Thatcher, during the hearing on this Motion for Preliminary Injunction to testify and present an in-court demonstration on web-accessibility and/or provide a videotape of such a presentation, at the Court's discretion.)[18]  The use of screen access software by the blind is widespread.[19]  However, websites must be designed to allow adaptive software to work.  Accordingly, long-accepted, comprehensive guidelines outline the design requirements for accessible websites.  The most prominent set of guidelines are those of the Web Accessibility Initiative (WAI), a project of the World Wide Web Consortium (W3C), the Web's leading standards organization.[20]

The basic components of accessibility are (1) using invisible labels for graphics (called "alt tags" by web designers) that can be read by screen access software; (2) ensuring that all functions can be performed with a keyboard and not just a mouse; (3) ensuring that forms are labeled in ways the screen access software can recognize; and (4) adding invisible headings to links so that blind people can easily navigate the site.[21]  This technology has existed for years, does not affect the operation or appearance of the website for sighted people, and has been adopted not only by various federal, state and local governments to make their websites accessible, but also by many business and organizations both nationally and internationally.[22]

**C.     Target Refuses To Make Its Website Accessible.**

Defendant Target Corporation is a multi-billion dollar retail business with over 1400 retail stores and locations, selling its product line and offering a variety of special discounts and

---

[18] Dr. Thatcher is a prominent expert in the field of web accessibility.  *See* Expert Declaration of James W. Thatcher ("Thatcher Decl.") at ¶¶2-14.  Dr. Thatcher has worked in the field of assistive technology for more than twenty years and served as Vice Chairman of the Advisory Committee that proposed Web Accessibility Standards for the U.S. Access Board.  *Id.*  Plaintiffs will await further guidance from the Court as to whether to have Dr. Thatcher prepare a live and/or video demonstration for the purposes of this hearing.

[19] Taylor Decl. at ¶¶8, 10.

[20] *See* Web Accessibility Initiative, www.w3.org/WAI (last visited May 4, 2006).

[21] Thatcher Decl. at ¶¶13 (alt text requirement), 41-42 (keyboard access), 47-51 (website navigation) and 52-59 (labeling forms); *see* www.w3.org/WAI (last visited May 4, 2006).

[22] Taylor Decl. at ¶6.

---

1    services through its online site, target.com.[23]  In spite of its considerable resources, and the

2    availability of technology and widely accepted procedures for achieving web accessibility,

3    Target has failed to make its website accessible to the blind.[24]  Target's refusal prevents the blind

4    from having access to the wide array of basic goods and services on target.com that Target

5    makes available to sighted people.

6            Target.com lacks the most basic requirements for accessibility.  What the blind encounter

7    at target.com is inexplicable code, garbled text, and unidentifiable product images.[25]  As

8    explained by Dr. Thatcher in his expert declaration:

9            There are many thousands of images on Target.com that lack text equivalents to
         make them available to people using screen readers…None of the form controls
10           on Target.com have proper labeling and there is no accommodation to facilitate
         keyboard navigation throughout Target.com pages.  I have described four types of
11           barriers that are easiest to explain and that are especially important for screen
         readers.  There are other components of Web Accessibility for people with visual
12           disabilities.  As of April 12, 2006 the website of the Target Corporation is
         virtually unusable by a visitor who is blind.[26]

13       **D.      NFB Attempted To Convince Target To Make Its Website Accessible.**

14           Before filing this case, NFB notified Target of the website's many unlawful accessibility

15   barriers.[27]  Although the NFB entered into a structured negotiation and tolling agreement with

16   Target Corporation and agreed to extend it twice, negotiations proved fruitless and the agreement

17   was allowed to expire.[28]  The website remains inaccessible.[29]  Accordingly, plaintiffs filed their

18   complaint on February 6, 2006, in Alameda County Superior Court of California alleging

19   violations of the Unruh Civil Rights Act and the California Disabled Persons Act.  When Target

20

21   ────────────────────

[23] Press Release, Target Corporation, "Target Corporation Fourth Quarter Earnings Per Share

22   From Continuing Operations $1.06" (February 16, 2006) (on the web at
     http://investors.target.com); *see also* Target Corporation, "Company Overview",

23   http://investors.target.com/phoenix.zhtml?c=65828&p=irol-homeProfile (last visited May 4,
     2006); *see also* Target website, www.target.com (last visited May 4, 2006).

24   [24] Thatcher Decl. at ¶60.

     [25] *See* Sexton Decl. at ¶¶29-33; Ayala Decl. at ¶¶13-18; Elder Decl. at ¶¶11-13; Thomas Decl. at
25   ¶¶14-16; Volonte Decl. at  ¶¶13-15; Uttermohlen Decl. at  ¶¶16-20; Jacobson Decl. at ¶¶15-19;
     Stigile Decl. at ¶¶15-17.

26   [26] Thatcher Decl. at ¶60.
     [27] Maurer Decl. at ¶7.

27   [28] *Id*.

28   [29] Thatcher Decl. at ¶60.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1    filed a notice of removal, the case was assigned to the San Francisco Division of the Northern

2    District of California on March 24, 2006.  On March 30, 2006, plaintiffs filed an Amended

3    Complaint with an additional claim alleging violation of Title III of the ADA.

4    **III.    LEGAL STANDARD**

5        This Court has often articulated the legal standard for the issuance of a preliminary

6    injunction:

7        a plaintiff seeking preliminary injunctive relief must demonstrate either: "(1) a
     likelihood of success on the merits and the possibility of irreparable injury; or (2)

8        that serious questions going to the merits [have been] raised and the balance of
     hardships tips sharply in [the plaintiff's] favor." The components of these two

9        tests, together with the added consideration of the public interest, operate on a
     sliding scale or "continuum."[30]

10

11   Whether the sought-after injunction is deemed "mandatory" or "prohibitive," relief will issue

12   "where the injury complained of is [not] capable of compensation in damages."[31]  As

13   demonstrated below, plaintiffs fully satisfy these standards for preliminary relief.

     **IV.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS**

14
        **A.    Plaintiffs' Unruh Act Claim Will Succeed Because Target Corporation Is A
15        Covered Entity That Unlawfully Discriminates Against The Blind.**

16       As a business that operates in California, Target Corporation is required to abide by

17   California civil rights laws.  The Unruh Act states in pertinent part:

18       All persons within the jurisdiction of this state are free and equal, and no matter
     what their … disability … are entitled to the full and equal accommodations,

19       advantages, facilities, privileges, or services in all business establishments of
     every kind whatsoever.[32]

20
     To succeed on this claim, plaintiffs need only show that (1) Target Corporation is a business
21
     establishment; (2) target.com is one of the "accommodations, advantages, facilities, privileges, or
22
     services" of Target Corporation; and (3) the blind lack "full and equal" access to target.com.
23
            **1.    Target Corporation Is A Business Establishment Within The
24            Contemplation Of The Unruh Act.**

25       The California Supreme Court has repeatedly held that the Unruh Act should be liberally

26

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

---

27   [30] *Regents of the University of California v. Dakocytomation California, Inc.,* Slip Copy, 2006
     WL 618769, at *3 (N.D. Cal., March 10, 2006) (internal citations omitted).

28   [31] *Anderson v. United States,* 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted).
     [32] Cal. Civ. Code §51(b).

construed to apply to the full gamut of business entities.[33]  For example, in *O'Connor v. Village Green Owners Association,* the Supreme Court reasoned:

> The Legislature used the words "all" and "of every kind whatsoever" in referring to business establishments covered by the Unruh Act (Cal. Civ. Code § 51), and the inclusion of these words without any exception and without specification of particular kinds of enterprises, leaves no doubt that the term "business establishments" was used in the broadest sense reasonably possible…The word "establishment," as broadly defined, includes not only a fixed location, such as the "place where one is permanently fixed for residence or business," but also a permanent "commercial force or organization" or "a permanent settled position as in life or business."[34]

In affirming an order of this Court, the Ninth Circuit reached the same conclusion.[35]

Target Corporation is a business establishment in the most traditional sense.  Target not only has 205 stores in California,[36] but owns target.com, an online site where it sells merchandise to California residents and provides information to California investors and prospective employees.[37]  As a for-profit, publicly traded corporation conducting an immense amount of retail business in California every day of every year, Target Corporation is clearly a permanent commercial force and organization within California.

### 2.    Target.com Is A Service, Privilege, Facility, Advantage Or Accommodation Of Target Corporation.

The Unruh Act's guarantee of full and equal access extends to a business establishment's "accommodations, advantages, facilities, privileges, and services."[38]  Target.com falls squarely within a number of those categories.  Target.com is a "service" of Target Corporation in that it is, by its nature, a service, and is certainly not a service of any other business establishment.  Moreover, just as a store is a "facility" of a retail company, so, too, target.com is a venue or

---

[33] *See Burks v. Poppy Const. Co.*, 57 Cal. 2d 463, 468-469 (1962); *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 621 (1995); *O'Connor v. Village Green Owners Ass'n,* 33 Cal. 3d 790, 795 (1983).

[34] *O'Connor*, 33 Cal. 3d at 795 (quoting *Burks,* 57 Cal. 2d at 468).

[35] *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1050 (9th Cir. 2000) (holding that an insurance company is a business establishment within the meaning of the Unruh Act).

[36] Target Corporation, "Company Overview", http://investors.target.com/phoenix.zhtml?c=65828&p=irol-homeProfile (last visited May 4, 2006).

[37] Thatcher Decl. at ¶20.

[38] Cal. Civ. Code 51(b).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

---

means that provides an opportunity to buy goods offered for sale by Target.  Finally, target.com

is an advantage, privilege, service and/or accommodation offered by Target because it contains

employment information, investment information, product information and information

concerning in-store specials and price discounts and other in-store-related features.

### 3.  Target.com Is Inaccessible And Thus Denies The Blind Full And Equal Access To Target's Facilities, Privileges And Services.

Target does not provide the blind full and equal access to target.com.  Target.com

contains thousands of accessibility barriers, including active images that do not have text

equivalents and form fields which do not have proper labels.[39]  These barriers deny the blind

access to target.com just as surely as staircases, narrow doorways and blocked aisles would deny

wheelchair users access to physical stores.  Such barriers violate both the plain text and sweeping

intent of the Unruh Act's "full and equal" access mandate.

### 4.  If Intentional Discrimination Is An Element Of An Unruh Act Claim, Target's Knowing Refusal To Remove Barriers Demonstrates Intent.

In *Presta v. Peninsula Corridor Joint Powers Bd.,* Judge Henderson of this District held

that a plaintiff "need not demonstrate that defendants harbored discriminatory intent as an

element of her claim of disability discrimination under the Unruh Civil Rights Act."[40]  The Ninth

Circuit has also rejected the suggestion that intentional discrimination is an element of all Unruh

Act claims.[41]  As Judge Henderson reasoned in *Presta*,

> [O]ften the most damaging instances in which rights of persons with disabilities are denied come not as the result of malice or discriminatory intent, but rather from benevolent inaction when action is required.  Such discrimination may only be fought by a statute that prescribes liability without reference to an actor's intent.[42]

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

---

[39] Thatcher Decl. at ¶¶24-60.

[40] *Presta v. Peninsula Corridor Joint Powers Bd.,* 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998).

[41] *Lentini v. California Center for the Arts,* 370 F.3d 837, 847 (9th Cir. 2004) ("We find that… no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation").

[42] *Presta,* 16 F. Supp. 2d at 1136.  Judge Henderson also reasoned that the Unruh Act's incorporation of the ADA as a floor for liability belies any construction of the statute which would require an intent to discriminate, given that the ADA does not require such intent. *Id.* at 1135-1136.  This is further confirmed by the fact that the "California courts have clearly and repeatedly held that the Unruh Act is to be interpreted 'in the broadest sense reasonably possible,' so as to achieve its purpose of combating discrimination in all its forms."  *Id.* (citing *Isbister v. Boys' Club of Santa Cruz,* 40 Cal. 3d 72, 76 (1985)).

---

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Motion For Preliminary Injunction**                                             9

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

It may be that the Act requires intentional conduct in most cases that do not involve disability discrimination.[43]  Nonetheless, as explained in *Presta* and *Lentini*, not all Unruh Act claims require proof of intentional conduct.[44]

Even if the Unruh Act requires showing that Target acted intentionally, plaintiffs easily meet their burden.  Intentional discrimination under California law simply means that the defendant has unlawfully engaged in wrongful and discriminatory conduct with "knowledge of the effect [its conduct] was having on [] disabled persons."[45]  Plaintiffs notified Target on May 5, 2005, that its website was inaccessible to the blind and that the site's access barriers discriminated against and excluded the blind from the benefits of that service.[46]  Plaintiffs unsuccessfully attempted to convince Target through structured negotiations to make its website accessible.[47]  The site remains largely inaccessible.[48]  As stated in plaintiffs' Amended Complaint, "Target has constructed a website that is inaccessible to class members; maintains the website in this inaccessible form; and has failed to take action to correct these barriers even after being notified of the discrimination that such barriers cause."[49]  This certainly suffices to prove intent under California law – if such a showing were necessary.

In sum, plaintiffs are clearly likely to prevail on the merits of their Unruh Act claim.

**B.    Plaintiffs' Disabled Persons Act Claim Will Succeed Because Target.com Is An Accommodation, Advantage, Facility Or Privilege Of Target Stores.**

The Disabled Persons Act ("DPA") states that,

Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities . . . and

---

[43] *Harris v. Capital Growth Investors XIV,* 52 Cal. 3d 1142, 1175 (1991) (upholding dismissal of sex discrimination claim pled under disparate impact theory and holding that plaintiffs would have needed to plead intent to state Unruh Act claim).

[44] *See Presta,* 16 F. Supp. 2d at 1135-1136; *Lentini,* 370 F.3d at 847.

[45] *Cf. Hankins v. El Torito Restaurants, Inc.,* 63 Cal. App. 4th 510, 518 (1998) (finding of intentional discrimination where plaintiff alleged that the defendant had "'wrongfully and unlawfully denied accessible restroom facilities to physically handicapped persons,' that it acted with 'knowledge of the effect [its conduct] was having on physically disabled persons,' and that [the plaintiff] was 'discriminated against on the sole basis that he was physically disabled and on crutches.'").

[46] Maurer Decl. at ¶7.

[47] *Id.*

[48] Thatcher Decl. at ¶ 60.

[49] First Amended Complaint, filed March 30, 2006, at ¶41.

---

privileges of . . . places of public accommodation . . . or other places to which the general public is invited.[50]

Plaintiffs are also highly likely to prevail on this claim since Target's retail stores in California are denying blind persons an accommodation, advantage, facility or privilege of those stores – to wit, target.com.  The language of Section 54.1(a) *et seq.* reflects, "…a legislative intent to afford broad protection,"[51] forbidding covered entities from maintaining policies or practices "unrelated to any structural impediment, which results in a denial of full and equal access by a disabled individual to a public accommodation."[52]  This statute clearly prohibits policies and practices that have the effect of denying equal access to customers with disabilities even in the absence of an intent to discriminate.[53]

> ### 1.    Target.com Is An Accommodation, Advantage, Facility Or Privilege Of Target Stores.

Target stores are unquestionably places of public accommodation under the DPA, and target.com is related to and integrated with these physical stores.  Customers are able to browse target.com for products for later purchase in Target stores,[54] select products at Target stores for use in conjunction with the online wedding and baby registries for purchase either online or at the stores,[55] place party orders for pickup at the store,[56] and find and print out coupons for use in Target stores.[57]  All of these features of target.com are clearly advantages and benefits only to sighted users of Target's stores and Target's website.  As Bruce Sexton has explained, "I often use the product listings and descriptions on retail stores' websites in order to research products, compare prices, and make decisions about purchasing goods in the stores physical locations," but

---

[50] Cal. Civ. Code §54.1(a)(1).

[51] *Hankins,* 63 Cal. App. 4th at 523.

[52] *Id*.

[53] *Id.* at 519.

[54] Thatcher Decl. at ¶20.

[55] Target Corporation, "Target Club Wedd", http://www.target.com/gp/registry/wedding.html (last visited May 4, 2006); Target Corporation, "Target Baby", http://www.target.com/gp/registry/babyreg.html (last visited May 4, 2006).

[56] Target Corporation, "Order Party Food", http://sites.target.com/site/en/supertarget/page.jsp;jsessionid=ELXR4CMKRXWKBLARAAVPX5Y?title=supertarget_order_party (last visited May 4, 2006).

[57] Target Corporation, "Target Weekly Ad", http://weeklyad.target.com (last visited May 4, 2006).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

---

1  "[u]pon accessing target.com on several occasions, I have become frustrated with inexplicable

2  code and garbled text that has prevented me from continuing to navigate through the site."[58]

3  ### 2.    Failing To Provide Blind Customers Full And Equal Access To Target.com Violates The DPA.

4

5    Target's maintenance of an inaccessible website violates the DPA because it denies full

6  and equal access to Target stores' services.  Maintaining target.com in its inaccessible state

7  constitutes a policy and practice that has the direct effect of denying blind persons access to

8  Target stores' services.  Moreover, Target can readily ensure full and equal access simply by

9  adopting and implementing the clear and simple web accessibility guidelines that are already

10  widely accepted and used by other businesses nationwide.[59]  Target's failure to provide full and

11  equal access to the services offered by target.com clearly denies the blind equal access to the

12  advantages of shopping at Target stores, and thereby violates the DPA.

13  ### C.    Plaintiffs' ADA Claim Will Succeed Because Target.com Is A Service, Facility, Privilege, Advantage Or Accommodation Of Target Stores.

14    Title III of the ADA forbids places of public accommodation from discriminating against

15  people with disabilities in the provision of goods, services, facilities, privileges and advantages.[60]

16  A public accommodation which denies blind customers full and equal access to whatever

17  "goods," "services," "facilities," "privileges," and/or "advantages" that it provides to sighted

18  customers is thus discriminating in violation of Title III.[61]  The courts have held that Title III

19  forbids intangible as well as tangible barriers to access by persons with disabilities.[62]  Thus, to

20  prevail on the merits of their ADA claim, plaintiffs need only establish that Target stores are

21  places of public accommodation and that target.com is a service, facility, privilege or advantage

22  of those stores to which Target denies plaintiffs access, in whole or in part.  For the reasons

23  discussed below, plaintiffs are highly likely to prevail on this basis.

24

25  [58] Sexton Decl. at ¶¶16, 31.  For similar examples of the barriers which the blind routinely experience in trying to use target.com, *see* Ayala Decl., Elder Decl., Jacobson Decl., Sexton

26  Decl., Stigile Decl., Thomas Decl., Uttermohlen Decl., Volonte Decl.
   [59] Thatcher Decl. at ¶61.

27  [60] 42 U.S.C. §12182(a).
   [61] 42 U.S.C. §12182(b).

28  [62] *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1283 (11th Cir. 2002).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

Defendant also violates several additional provisions of Title III of the ADA.  Target has failed to remove communication barriers from target.com, even though such removal is readily achievable.[63]  Moreover, Target has failed to make reasonable modifications to its policy and practice of maintaining an inaccessible website, even though such modifications are necessary and even though Target cannot show that such modifications would fundamentally alter target.com's nature by making it something other than a website.[64]  Finally, Target has failed to provide auxiliary aids or services where the absence of those aids or services excludes the blind, even though this would not fundamentally alter the nature of the website nor result in an undue burden.[65]  Each of these violations alone is enough to subject Target to liability under the ADA.

### 1.    Title III Applies to Target.com Because It Is A Service, Facility, Privilege, Advantage Or Accommodation Of Target Corporation's Stores.

Target stores are sales establishments.  As such, each is unquestionably a place of public accommodation within the meaning of Title III.[66]  Target.com is a service provided by Target that is related to and highly integrated with Target's brick-and-mortar stores.  Examples of these store-related features include:

- a store locator, allowing persons who wish to shop at a Target store to learn its location, hours, and phone numbers;[67]

- an online pharmacy, allowing a customer to order a prescription refill online for pickup at those Target stores which have pharmacies;[68]

- an online photo shop, allowing a customer to order photo prints for pickup at a Target store;[69]

- weekly ads, allowing a customer to know what items are on sale at a particular Target

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

---

[63] *See* 42 U.S.C. §12182(b)(2)(A)(iv).
[64] *See* 42 U.S.C. §12182(b)(2)(A)(ii).
[65] *See* 42 U.S.C. §12182(b)(2)(A)(iii).
[66] *See* 42 U.S.C. §12182(7)(e).
[67] Target Corporation, "Store Locator", http://target.com/storelocator (last visited May 4, 2006).
[68] Target Corporation, "Target Pharmacy", http://sites.target.com/site/en/spot/page.jsp?title=pharmacy_home (last visited May 4, 2006).
[69] Target Corporation, "Target Photo Center", http://target.com/target_group/stores_services/photo_center.jhtml (last visited May 4, 2006).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1    store location;[70]

2    • coupons for groceries, eyeglasses and portrait photos, among others, that customers may

3    redeem at Target stores;[71]

4    • online wedding and baby registries linked to Target's in-store merchandise which allow

5    customers of a Target store to purchase a gift for a target.com user;[72] and

6    • a party function, allowing customers to order deli products online for pickup at a local

7    Target "superstore."[73]

8    In addition, sighted Target customers can browse target.com to obtain product information about

9    a wide assortment of in-store items before going to the store to make a purchase, an advantage

10   denied to blind customers because of the inaccessibility of the website.  All of these services are

11   clearly intended to enhance a consumer's use of Target stores, adding benefits of convenience,

12   information and costs savings.

13       Courts have applied Title III to remove intangible barriers to a service that has a nexus

14   with a physical place of public accommodation.  In *Rendon v. Valleycrest Productions*,[74] the

15   barrier to a televised game show consisted of an automated telephone contestant selection

16   process, which the court determined was a screening device.  The telephone contest,

17   however, was not fully accessible.  Because the telephone contest had a nexus to the public

18   accommodation (a game show at a public studio), it was required to be accessible.  The

19   court explained that,

20       [A] reading of the plain and unambiguous statutory language at issue reveals
         that the definition of discrimination provided in Title III covers both tangible
21       barriers, that is, physical and architectural barriers that would prevent a

22   _____

23   [70] Target Corporation, "Target Weekly Ad", http://weeklyad.target.com (last visited May 4, 2006).

24   [71] Target Corporation, "Supertarget", http://sites.target.com/site/en/supertarget/page.jsp?title=supertarget_home (last visited May 4, 2006).

25   [72]  Target Corporation, "Target Club Wedd", http://www.target.com/gp/registry/wedding.html

26   (last visited May 4, 2006); Target Corporation, "Target Baby", http://www.target.com/gp/registry/babyreg.html (last visited May 4, 2006).

27   [73] Target Corporation, "Order Party Food", http://sites.target.com/site/en/supertarget/page.jsp;jsessionid=ELXR4CMKRXWKBLARAAVP

28   X5Y?title=supertarget_order_party (last visited May 4, 2006).
     [74] *Rendon,* 294 F.3d at 1280.

1
2
3

disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, and intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges.[75]

4 Moreover, a place of public accommodation cannot discriminate against persons with

5 disabilities simply because, as with a website, the discrimination occurs off-site.[76]  Like the

6 inaccessible telephone system in *Rendon* that denied persons with disabilities an equal

7 opportunity to participate in the televised game show, the inaccessibility of target.com

8 denies blind persons an equal opportunity to receive and participate in many of the services

9 and advantages provided to sighted customers of Target stores through Target's website.

10      **2.    Target Discriminates Against The Blind In Creating, Maintaining And Operating Target.com In An Inaccessible Manner.**

11

12      The variety of barriers on target.com – such as the numerous graphics which do not have

13 text equivalents, the lack of html headings needed by blind persons using screen access software

14 to navigate through target.com, and the lack of proper labeling of form fields – make the website

15 virtually unusable by the blind.[77]  As Dr. Thatcher explains in his declaration, removing these

16 communication barriers is not difficult.[78]  To the extent that making the website accessible will

17 require Target to modify its practices and procedures, such modifications would be reasonable

18 and would not fundamentally alter the nature of target.com.  Indeed, for sighted users, target.com

19 would look and operate precisely as it does now.[79]  With respect to the provision of auxiliary aids

20 and services, removing the accessibility barriers would, again, not constitute a fundamental

21 alteration of the website, as it would only make the existing website accessible to the blind.

22 Moreover, the cost of making target.com accessible could not be an undue burden for a company

whose annual revenue exceeds fifty-two billion dollars.

23      **D.    Target Has Violated All Three Statutes.**

24      The analysis for each of the three specific claims set forth above rests on a common core

25

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

26 [75] *Id.* at 1283 (internal citations omitted).

27 [76] *Id.* at 1284-1285.
[77] Thatcher Decl. at ¶60.

28 [78] *Id.* at ¶¶12-13, 25, 61.
[79] *Id.* at ¶13.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

of established legal principles and documented facts:

- Plaintiffs are a protected class under the applicable statutes.[80]

- Target.com is a service, privilege and advantage offered to customers of Target Corporation for the purchase of products and services sold by Target.

- Target.com also is a service, privilege and advantage of Target stores in that it offers information and features that provide many benefits to individuals seeking to locate and attain the various goods, products, medicines and opportunities available in the stores themselves.

- Blind individuals do not have full and equal access to target.com or the multiple benefits connected to target.com because of the access barriers on the site.[81]

While the precise analysis varies somewhat with each statute, all end with the same outcome. In the context of the Unruh Act, (1) Target Corporation is a "business establishment" that (2) has failed and refused to ensure that blind individuals have "full and equal" access to one of its "accommodations, advantages, facilities, privileges or services" – to wit, target.com. As to the Disabled Persons Act and the ADA: (1) Target stores are "public accommodations;" (2) target.com is a service, accommodation, advantage, facility and/or privilege of those stores; (3) target.com has a nexus to and enhances the use of those stores; but (4) target.com is nonetheless inaccessible to the blind.[82]

Given the established legal standards and facts, plaintiffs are likely to succeed on the merits of all of their claims. A preliminary injunction is thus warranted to prevent Target from continuing to deny blind persons full and equal access to target.com.

---

[80] Maurer Decl. at ¶¶5-6; Sexton Decl. at ¶¶2, 6.
[81] Thatcher Decl. at ¶60-61.
[82] Plaintiffs also allege in their Amended Complaint that target.com is itself a public accommodation within the reach of both the ADA and the Disabled Persons Act. Whether a website may be a place of public accommodation would be a matter of first impression as to the ADA in the Ninth Circuit and as to the Disabled Persons Act. However, the court need not resolve that question to grant a preliminary injunction in this case. Accordingly, Plaintiffs have not addressed that theory as a basis for preliminary relief.

---

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Motion For Preliminary Injunction**                    16

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

## V.    THE FAILURE TO MAKE TARGET.COM ACCESSIBLE TO THE BLIND CAUSES IRREPARABLE HARM

Irreparable harm is presumed where a defendant engages in acts or practices prohibited by a statute that provides for injunctive relief.[83]  The Unruh Act, Disabled Persons Act and ADA all explicitly provide for injunctive relief.[84]  Accordingly, federal courts have recognized that violations of the disability access laws constitute irreparable injury per se.[85]  More generally, "injuries to individual dignity and deprivations of civil rights constitute irreparable injury."[86] Irreparable injury occurs when the unlawful acts have diminished a party's "ability to function as an independent person, according to her [or his] own self-definition."[87]  Thus, Target's violations of statutes authorizing injunctions and its acts of discrimination both create a presumption of irreparable injury to plaintiffs.

Plaintiffs have suffered and will continue to suffer significant irreparable harm throughout this litigation, absent a preliminary injunction.  No remedy at law can provide

---

[83] *See, e.g., Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 827 (9th Cir. 2001) (violation of Fair Housing Act); *Smallwood v. National Can Co.*, 583 F.2d 419, 420 (9th Cir. 1978) ("this is an injunction issued in response to a statutory provision, and irreparable harm is presumed from the fact of the violation of the Act."); *Burlington Northern R. Co. v. Department of Revenue of State of Wash.*, 934 F.2d 1064, 1074 (9th Cir. 1991) ("When the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown") (internal citations omitted); *United States by Mitchell v. Hayes Int'l Corp,* 415 F.2d 1038, 1045 (5th Cir. 1969) (Civil Rights Act; "irreparable injury should be presumed from the very fact that the statute has been violated"); *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir.1984) ("irreparable injury may be presumed from the fact of discrimination and violation of fair housing statutes").

[84] Cal. Civ. Code § 52.1(b) (Unruh Act); Cal. Civ. Code § 55 (Disabled Persons Act); 42 U.S.C. § 12188(a) (ADA's incorporation of the remedies and procedures set forth in the Civil Rights Act of 1964).

[85] *See, e.g., Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1084 (N.D. Cal. 1997); *Pathways Psychosocial v. Town of Leonardtown, Md.*, 223 F. Supp. 2d 699, 717 (D. Md. 2002).

[86] *Cupolo,* 5 F. Supp. 2d at 1084

[87] *Sullivan By and Through Sullivan v. Vallejo City Unified School Dist.*, 731 F. Supp. 947, 961 (E.D. Cal. 1990) (preliminary injunction issued ordering school district to allow disabled student to bring her service dog to school after Plaintiff showed that "she will likely suffer grave and irreparable injury if a preliminary injunction does not issue." Court held that "neither an award of damages nor a permanent injunction following the conclusion of this litigation could possibly restore to plaintiff the loss of independence she is likely to suffer in the interim as a result of defendants' conduct."); *see also Keirnan v. Utah Transit Authority,* 339 F.3d 1217, 1220 (10th Cir. 2003) (irreparable harm where Defendant's conduct affects Plaintiffs ability to live their lives in an independent fashion).

---

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1　plaintiffs with the ability to access target.com and the myriad of goods, services and information

2　that Target makes available only to its sighted customers.[88]　The lack of access to Target's

3　website contributes to the exclusion and marginalization of blind people from the commercial

4　life of this country, an exclusion which prevents them from obtaining full and independent

5　participation in today's technology-based society.[89]　Unless and until an injunction issues

6　requiring that target.com become accessible to the blind, Target will continue to treat plaintiffs as

7　second-class citizens, despite its vast resources and the relative ease of the fix.

8　**VI.　THE BALANCE OF HARDSHIPS TIPS HEAVILY IN PLAINTIFFS' FAVOR**

9　　　　As noted, Target's deprivation of plaintiffs' right to be free from discrimination,

10　guaranteed by federal and state law, constitutes an irreparable injury which would be mitigated

11　by the issuance of a preliminary injunction.　By contrast, the harm that an injunction would cause

12　Target is negligible.　Target is one of the world's largest retail companies.　With over fifty billion

13　dollars in annual revenue, the amount Target will need to spend to remove accessibility barriers

14　from target.com is comparatively miniscule, and will not impede Target's ability to operate as a

15　business.　Indeed, once Target is fully accessible, it will likely recover the costs of barrier

16　removal with the resulting revenue from the sale of products and services that are currently

17　inaccessible to the blind.

18　**VII.　THE INJUNCTION PLAINTIFFS SEEK IS REASONABLE**

19　　　　Plaintiffs request that Target be ordered to make target.com readily accessible to and

20　usable by blind people who use screen access software, within ninety (90) days.　There are

21　several readily achievable ways Target can accomplish this.　As just one example, Target can

22　implement the relevant provisions described in Priorities One and Two of the Web Accessibility

23　Initiative Guidelines of the World Wide Web Consortium ("W3C").[90]　As described above, the

24　W3C is the leading standards organization of the World Wide Web.　Given Target's vast

25

26　[88] Sexton Decl. at ¶¶30;  Ayala Decl. at ¶¶ 14, 18; Elder Decl. at ¶12; Thomas Decl. at ¶¶15-16;
Volonte Decl. at ¶¶14-15; Uttermohlen Decl. at ¶¶17-20; Jacobson Decl. at ¶¶15-16; Stigile

27　Decl. at ¶13.
[89] Sexton Decl. at ¶¶37; Ayala Decl. at ¶22; Elder Decl. at ¶18; Thomas Decl. at ¶20; Volonte

28　Decl. at ¶¶20-21; Uttermohlen Decl. at ¶24; Jacobson Decl. at ¶¶14, 23; Stigile Decl. at ¶22.
[90] Thatcher Decl. at ¶15.

resources, there is no reason why it cannot easily comply with such standards.  Indeed, in 2004, the Attorney General of New York State entered into public settlement agreements with both Priceline.com and Ramada Hotels requiring these major commercial entities to make their websites accessible to the blind and visually impaired.[91]  Moreover, if Target encounters a problem with any particular access issue, this Court's injunction could allow Target an opportunity to raise and resolve such particularized concerns through a meet and confer process with plaintiffs.  Thus, the injunction plaintiffs seek is reasonable and appropriate given the facts and circumstances of this case.

**VIII.   AN INJUNCTION IS IN THE PUBLIC INTEREST**

A district court "must always consider whether the public interest would be advanced or impaired by issuance of an injunction in any action in which the public interest is affected."[92] Vindicating state and federally guaranteed rights against discrimination is indisputably in the public interest.[93]  "California courts have clearly and repeatedly held that the Unruh Act is to be interpreted 'in the broadest sense reasonably possible,' so as to achieve its purpose of combating discrimination in all its forms."[94]  Similarly, Congress has made clear in enacting the ADA that the public interest lies in the eradication of discrimination against persons with disabilities, declaring that the ADA's purpose is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."[95]  The injunctive relief plaintiffs seek, as described below, is clearly necessary to achieve these anti-discrimination

---

[91] Press Release, Office of the New York State Attorney General, "Spitzer Agreement To Make Web Sites Accessible To The Blind And Visually Impaired" (August 19, 2004) (at http://www.oag.state.ny.us/press/2004/aug/aug19a_04.html (last visited May 4, 2006)); Attorney General of the State of New York Internet Bureau, "In the Matter of Ramada Franchise Systems – Assurance of Discontinuance" (August 12, 2004), http://www.icdri.org/News/Ramada%20AOD.pdf; Attorney General of the State of New York Internet Bureau, "In the Matter of Priceline.com, Incorporated – Assurance of Discontinuance" (April 8, 2004), http://www.icdri.org/News/Priceline%20AOD.pdf.

[92] *American Motorcyclist Ass'n v. Watt*, 714 F.2d 962, 967 (9th Cir. 1983).

[93] *See* 11A Charles Allen Wright, Arthur A. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2948.4 at 207 (2nd ed. 1995) (where Congress has enacted a statute declaring the public interest, ordering compliance with the statute benefits the public interest).

[94] *Presta* , 16 F. Supp. 2d at 1136 (citations omitted).

[95] 42 U.S.C. § 12101(b)(1).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

---

1    mandates.

2    **IX.    THE COURT SHOULD WAIVE THE BOND REQUIREMENT OR ORDER A
          NOMINAL BOND**

3
          The Court should waive the bond requirement for preliminary injunctions.  A court may

4    dispense with the bond requirement set out in Rule 65(c) of the Federal Rules of Civil Procedure

5    or only order a nominal bond when (1) there is little or no realistic likelihood of harm to the

6    defendant;[96] (2) the balance of the potential hardships each party will suffer as a result of a

7    preliminary injunction "weighs overwhelmingly in favor of the party seeking the injunction;"[97]

8    or (3) the moving party has demonstrated an overwhelmingly strong likelihood of success on the

9    merits.[98]

10          In the case at hand, there is little or no likelihood of harm to the defendant and the

11   balance of equities falls squarely in plaintiffs' favor.  Indeed, Target would likely benefit by

12   making the website accessible to more customers.[99]  Furthermore as in *Cupolo v. Bay Area

13   Rapid Transit,* "any additional costs that [Target] may incur will advance the public policy

14   established by the ADA of enhancing the accessibility of [public accommodations] to individuals

15   with disabilities."[100]  Plaintiffs, as demonstrated by this record, have suffered and are likely to

16

17

18   [96] *See, e.g., Connecticut General Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878,
     882-883 (9th Cir. 2003) ("bond amount may be zero if there is no evidence the party will suffer
19   damages from the injunction") (*citing Gorbach v. Reno,* 219 F.3d 1087, 1092 (9th Cir. 2000));
     *Doctor's Associates, Inc. v. Stuart,* 85 F.3d 975, 985 (2nd Cir. 1996) (affirming district court's
20   waiver of bond where Defendants did not show that they would suffer any harm absent the
     posting of a bond).
21   [97] *Cupolo,* 5 F. Supp. 2d at 1086 (ordering bond of $100 in a disability access class action
     concerning access to an entire mass transit agency's facilities).  The Court in *Cupolo* held that a
22   court "may waive Rule 65(c)'s bond requirement when the balance of the equities weighs
     overwhelmingly in favor of the party seeking the injunction."
23   [98] *See, e.g., People of State of Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency,*
     766 F.2d 1319, 1325-1326 (9th Cir. 1985) ("The court has discretion to dispense with the
24   security requirement…[where] the likelihood of success on the merits, as found by the district
     court, tips in favor of a minimal bond or no bond at all.") (internal citations omitted); *Scherr v.
25   Volpe,* 466 F2d 1027, 1035 (7th Cir. 1972) (finding no abuse of discretion in waiving bond
     requirement because "the amount of the security rests within the discretion of the district
26   judge…[and the plaintiffs demonstrated a] strong likelihood of success on the merits[.]").
     [99] *See, e.g.,* Ayala Decl. at ¶21; Elder Decl. at ¶¶ 15, 17; Volonte Decl. at ¶16,19; Uttermohlen
27   Decl at ¶24; Jacobson Decl. at ¶ 22; Stigile Decl. at ¶¶ 14,19, 21.
     [100] *Cupolo,* 5 F.Supp.2d at 1086.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

---

1  continue to suffer irreparable harm as a result of Target's neglect and refusal to act.[101]  Unless

2  Target is ordered to make its website accessible, plaintiffs will continue to be denied access to a

3  whole host of services which Target currently makes available only to sighted customers.

4  Finally, as demonstrated in Section IV, *supra,* there is a very high likelihood of success on the

5  merits in this case.  Accordingly, waiver of the bond requirement is appropriate.

6  **X.    CONCLUSION**

7         For all the foregoing reasons, plaintiffs request that the Court issue a preliminary

8  injunction ordering that, within ninety (90) days, Target ensure that target.com is readily

9  accessible to and usable by blind people who use screen access software.

10

11  DATED:        May 8, 2006              DISABILITY RIGHTS ADVOCATES
                                          LAURENCE W. PARADIS
12                                        MAZEN M. BASRAWI

13                                        SCHNEIDER & WALLACE
                                          TODD M. SCHNEIDER
14                                        JOSHUA KONECKY

15                                        BROWN, GOLDSTEIN & LEVY, LLP
                                          DANIEL F. GOLDSTEIN (*pro hac vice*)
16

17                                        By:     /s/ Laurence W. Paradis
                                                  Laurence W. Paradis
18                                                Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

---

[101] *See* Section V, *supra.*