LAURENCE W. PARADIS (California Bar No. 122336)
lparadis@dralegal.org
MAZEN M. BASRAWI (California Bar No. 235475)
mbasrawi@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, California 94704
Telephone:    (510) 665-8644
Facsimile:    (510) 665-8511
TTY:          (510) 665-8716

TODD M. SCHNEIDER (California Bar No. 158253)
tschneider@schneiderwallace.com
JOSHUA KONECKY (California Bar No. 182897)
jkonecky@schneiderwallace.com
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA  94104
Telephone:    (415) 421-7100
Fax:          (415) 421-7105
TTY:          (415) 421-1655

DANIEL F. GOLDSTEIN (*pro hac vice*)
dfg@browngold.com
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 1700
Baltimore, MD 21202
Telephone:    (410) 962-1030
Fax:          (410) 385-0869

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, the NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, on behalf of their members, and Bruce F. Sexton, on behalf of himself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION,<br><br>                    Defendant. | Case No.:  C 06-01802 MHP<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS**<br><br>Hearing Date: July 24, 2006<br>Time:          2:00 p.m.<br>Judge:         The Honorable Marilyn Hall Patel |

1

# TABLE OF CONTENTS

I.    Introduction.................................................................................................... 1

II.   Factual Allegations ........................................................................................ 2

III.  Argument ....................................................................................................... 4

    A.    Plaintiffs Properly State A Claim Under Title III Of The Americans With Disabilities Act............................................................................. 5

        1.    Target Is Denying Full and Equal Access to A Service, Privilege And Advantage Of Target Stores.......................................... 5

        2.    Congress Intended Title III To Apply To All Services Of A Public Accommodation, Including Newly Emerging Forms of Services. ............ 7

    B.    Plaintiffs Properly State A Claim Under The Unruh Act .................................... 10

        1.    Target Corporation Is A Business Establishment That Unlawfully Discriminates Against The Blind............................................................. 11

        2.    If Intentional Discrimination Is An Element Of An Unruh Act Claim, Target's Knowing Refusal To Remove Barriers Demonstrates Intent. .... 13

        3.    Plaintiffs' Claim Does Not Require Any Structural Construction Or Modification Of A Physical Structure. .................................................... 15

    C.    Plaintiffs Have Properly Stated A Claim Under The Disabled Persons Act. ....... 15

    D.    The Commerce Clause Does Not Bar Application Of Plaintiffs' State Law Claims. ...................................................................................... 17

        1.    The Unruh Act and DPA Are Constitutional Because They Are Civil Rights Laws of General Application Which Do Not Conflict with the Laws of Other States and Which Have Local Benefits That Outweigh Whatever Incidental Burdens on Interstate Commerce That May Theoretically Exist. .............................................................................. 18

        2.    The Unruh Act and DPA may address conduct that occurs on the Internet. ................................................................................................... 20

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    i

# TABLE OF AUTHORITIES

## CASES

*Access Now, Inc. v. Southwest Airlines, Co.*,
227 F. Supp. 2d 1312 (S.D. Fla. 2002) ..................................................... 6

*American Library Ass'n v. Pataki*,
969 F. Supp. 160 (S.D.N.Y. 1997) .......................................................... 22

*Arnold v. United Artists Theatre Cir., Inc.*,
158 F.R.D. 439 (N.D. Cal. 1994) ............................................................ 16

*Bibb v. Navajo Freight Lines*,
359 U.S. 520 (1959) ........................................................................... 22, 24

*Blum v. Stenson*,
465 U.S. 886 (1984) ................................................................................. 9

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994), *overruled on other grounds* by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) .................................. 17, 23

*Brecht v. Abrahamson*,
507 U.S. 619, 632 (1993) ......................................................................... 8

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
476 U.S. 573 (1986) ............................................................................... 19

*Burks v. Poppy Const. Co.*,
57 Cal. 2d 463 (1962) ............................................................................ 11

*C & A Carbone, Inc. v. Town of Clarkstown*,
511 U.S. 383 (1994) ............................................................................... 18

*Cashatt v. State*,
873 So. 2d 430 (Fla. Dist. Ct. App. 2004) ............................................... 22

*Chabner v. United of Omaha Life Ins. Co.*,
225 F.3d 1042 (9th Cir. 2000) ............................................................ 7, 11

*Colo. Anti-Discrimination Comm'n v. Cont'l Air Lines, Inc.*,
372 U.S. 714 (1963) ............................................................................... 24

*Curran v. Mt. Diablo Council of the Boy Scouts of America*,
17 Cal. 4th 670 (1998) ...................................................................... 11, 12

*Doe v. Mutual of Omaha Ins. Co.*,
179 F.3d 557, 559 (7th Cir. 1999) ............................................................ 9

*Ferguson v. Friendfinders, Inc.*,
94 Cal. App. 4th 1255 (2002) ................................................................. 22

*Ford Motor Co. v. Tex. Dep't of Transp.*,
264 F.3d 493 (5th Cir. 2001) ............................................................ 21, 22

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
Case No.:  C 06-01802 MHP
Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss                    ii

## TABLE OF AUTHORITIES
### (continued)

*Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Resources*,
　504 U.S. 353 (1992) ........................................................................................... 18

*Hankins v. El Torito Restaurants, Inc.*,
　63 Cal. App. 4th 510 (1998) ................................................................... 14, 15, 16

*Harris v. Capital Growth Investors XIV*,
　52 Cal. 3d 1142 (1991) ...................................................................................... 14

*Hatch v. Superior Ct.*,
　80 Cal. App. 4th 170 (2000) ......................................................................... 21, 22

*Head v. N.M. Bd. of Examiners*,
　374 U.S. 424 (1963) ............................................................................... 19, 23, 24

*Healy v. Beer Inst., Inc.*,
　491 U.S. 324 (1989) ........................................................................................... 23

*Huron Portland Cement Co. v. City of Detroit*,
　362 U.S. 440 (1960) ........................................................................................... 19

*Ingels v. Westwood One Broadcasting Services, Inc.*,
　129 Cal. App. 4th 1050 (2005) ..................................................................... 11, 12

*Isbister v. Boys' Club of Santa Cruz, Inc.*,
　40 Cal. 3d 72 (1985) .................................................................................... 14, 19

*Kassel v. Consol. Freightways Corp. of Del.*,
　450 U.S. 662 (1981) ........................................................................................... 22

*Koebke v. Bernardo Heights Country Club*,
　36 Cal. 4th 824 (2005) ....................................................................................... 14

*Lentini v. Cal. Ctr. for the Arts*,
　370 F.3d 837 (9th Cir. 2004) ............................................................................. 13

*Marsh v. Edwards Theatres Circuit, Inc.*,
　64 Cal. App. 3d 881 (1976) ............................................................................... 16

*Martin v. Metro. Atlanta Rapid Transit Auth.*,
　225 F. Supp. 2d 1362, 1377 (N.D. Ga. 2002) ..................................................... 8

*MaryCLE, LLC v. First Choice Internet, Inc.*,
　890 A.2d 818 (Md. 2006) ................................................................................... 22

*New Energy Co. of Ind. v. Limbach*,
　486 U.S. 269 (1988) ........................................................................................... 18

*O'Connor v. Village Green Owners Ass'n*,
　33 Cal. 3d 790 (1983) ........................................................................................ 11

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
Case No.:  C 06-01802 MHP
Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss                    iii

# TABLE OF AUTHORITIES
### (continued)

*People v. Foley,*
   731 N.E.2d 123 (NY. 2000)............................................................................ 22

*People v. Hsu,*
   82 Cal. App. 4th 976 (2000) .................................................................... 21, 22

*Pike v. Bruce Church, Inc.,*
   397 U.S. 137 (1970)..................................................................................... 19

*Presta v. Peninsula Corridor Joint Powers Bd.,*
   16 F. Supp. 2d 1134 (N.D. Cal. 1998) ................................................... 13, 14

*Rendon v. Valleycrest Prod.,*
   294 F.3d 1279 (11th Cir. 2002) ..................................................................... 6

*Roberts v. United States Jaycees,*
   468 U.S. 609 (1984)..................................................................................... 19

*Rotary Club of Duarte v. Bd. of Dir. of Rotary Club Int'l,*
   178 Cal. App. 3d 1035 (Ct. App. 1986)................................................... 10, 12

*Rothman v. Emory Univ.,*
   828 F. Supp. 537 (N.D. Ill. 1993) ................................................................ 8

*S.D. Myers, Inc. v. City of San Francisco,*
   253 F.3d 461 (9th Cir. 2001) ...................................................... 18, 19, 20, 24

*Sherlock v. Alling,*
   93 U.S. 99 (1876)........................................................................................ 18

*Smith v. Jackson,*
   84 F.3d 1213 (9th Cir. 1996) ........................................................................ 4

*South-Central Timber Dev., Inc. v. Wunnicke,*
   467 U.S. 82, 87 (1984)................................................................................. 18

*State v. Backlund,*
   672 N.W.2d 431 (N.D. 2003) ...................................................................... 22

*State v. Heckel,*
   24 P.3d 404 (Wash. 2001), *cert. denied*, 534 U.S. 997 (2001)...................... 22

*State v. Snyder,*
   801 N.E.2d 876 (Ohio Ct. App. 2003)......................................................... 22

*Torres v. AT&T Broadband, LLC,*
   158 F. Supp. 2d 1035 (N.D. Cal. 2001) ......................................................... 7

*Valley Bank of Nev. v. Plus System, Inc.,*
   914 F.2d 1186 (9th Cir. 1990) ..................................................................... 19

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
Case No.: C 06-01802 MHP
Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss

1

## TABLE OF AUTHORITIES
### (continued)

*Van Winkle v. Allstate Ins. Co.,*
   290 F. Supp. 2d 1158 (C.D. Cal. 2003) ............................................................ 17, 23

*Warfield v. Peninsula Golf & Country Club,*
   10 Cal. 4th 594 (1995) ......................................................................................... 11

*Weyer v. Twentieth Century Fox Film Corp.,*
   198 F.3d 1104 (9th Cir. 2000) ............................................................................ 6, 7

## STATUTES

29 U.S.C. §794d ....................................................................................................... 7

42 U.S.C. §§12101, *et seq.* .................................................................................. 1, 3

42 U.S.C. §12101(b) ............................................................................................... 9

42 U.S.C. §12132 ................................................................................................... 8

42 U.S.C. §12181(7)(E) ...................................................................................... 4, 5

42 U.S.C. §12182(a) .......................................................................................... 5, 9

42 U.S.C. §12182(b)(1)(A)(i) ................................................................................ 5

42 U.S.C. §12182(b)(1)(A)(ii) ........................................................................... 5, 6

42 U.S.C. §12182(b)(2)(A)(iii) .............................................................................. 6

42 U.S.C. §12182(b)(2)(A)(iv) .............................................................................. 6

Cal. Bus. & Prof. Code §6157.1 ........................................................................... 21

Cal. Civ. Code §§51, *et seq.* ............................................................................... 1, 3

Cal. Civ. Code §§54, *et seq.* ............................................................................... 1, 3

Cal. Civ. Code §§54.1(a), *et seq.* ........................................................................ 16

Cal. Civ. Code §51(b) ........................................................................................... 10

Cal. Civ. Code §51(d) ........................................................................................... 15

Cal. Civ. Code §51(f) ............................................................................................ 13

Cal. Civ. Code §54.1(d) ........................................................................................ 15

U.S. Const. art. I, §8, cl. 3 .................................................................................... 18

28

*National Federation of the Blind, et al. v. Target Corporation*
Case No.:  C 06-01802 MHP
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                 v

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

**TABLE OF AUTHORITIES**
(continued)

**OTHER AUTHORITIES**

135 Cong. Rec. S4984, S4997 (1990) .................................................................................... 9

*Applicability of the Americans With Disabilities Act (ADA) to Private Internet Sites: Hearing Before the Subcomm. on the Constitution of the House Comm. on the Judiciary,*
106th Cong. 65-010 (2000) ................................................................................................ 8

Brief of the United States as Amicus Curiae in Support of Appellant,
*Hooks v. OKBridge, Inc.*, 232 F.3d 208 (5th Cir. 2000) ........................................................ 9

H.R. Rep. 106-1048, at 210 (2001) .................................................................................... 8

H.R. Rep. No. 101-485, pt. 2, at 108 (1990) ...................................................................... 9

H.R. Rep. No. 101-485, pt. 3, at 26 (1990) ........................................................................ 9

Letter from the Assistant Attorney-General for Civil Rights to Senator Tom Harkin (September 9, 1996), 10 NDLR 240 .................................................................................................... 9

State Bar of Calif. Stdg Comm. On Prof. Responsibility & Conduct,
Formal Op. #2005-168................................................................................................ 21, 24

State Bar of California Stdg Comm. On Prof. Responsibility & Conduct,
Formal Op. # 2001-155................................................................................................ 21

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**     vi

## I.    INTRODUCTION

Plaintiffs, the blind of California and the United States, have brought this action against Target Corporation ("Target") because they are being denied full and equal access to target.com. Target.com is an internet website which provides a variety of services, many relating to Target retail stores. The website is entirely inaccessible to the blind, who use screen reading software to navigate the internet. Plaintiffs' Amended Complaint ("Complaint") states claims under Title III of the Americans with Disabilities Act ("ADA") as well as California's Unruh Civil Rights Act ("Unruh Act") and California's Disabled Persons Act ("DPA").[1] The principal animating theory of plaintiffs' Complaint is that target.com is a *service* of a place of public accommodation (Target's stores) in the case of the ADA and DPA, and a *service* of a business establishment (Target Corporation) in the case of the Unruh Act.[2] Amended Complaint ("Compl.") ¶¶40, 49, 56.

Target's motion to dismiss depends in great part on misconceiving the actual Complaint as premised entirely on the argument that target.com is itself a business establishment or a public accommodation. *See, e.g.,* Target's Memorandum of Points and Authorities in support of its motion to dismiss ("Def. Mem.") at 11 ("Does the term 'business establishment' include a retailer's website?"). In fact, that is just one alternative basis for one cause of action (the DPA claim). The core of the Complaint is that target.com is a service provided by Target Corporation – a service which is linked to Target's brick and mortar stores. Target does not even address these allegations of the Complaint and thus ignores the primary thrust of the case. Target also ignores established rules of statutory construction. Rather than looking to the plain meaning and intent of the statutes at issue, Target creates a wholly new and unrecognized rule wherein a statute may not apply to conduct on the internet until the statute has first been amended. Finally, Target offers an interpretation of the interstate commerce clause that would have the unprecedented effect of making the internet a haven from all state laws of general application that address matters of traditional state concern, from fraud to malpractice, so long as the

---

[1] 42 U.S.C. §§12101, *et seq.;* Cal. Civ. Code §§51, *et seq.*; Cal. Civ. Code §§54, *et seq.*
[2] The various statutes speak of services, privileges, advantages and accommodations. For brevity's sake, the argument will refer to "service" to encompass the entire litany.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                1

1    conduct occurred on the internet.  None of these arguments warrants dismissing the Complaint.

2    **II.    FACTUAL ALLEGATIONS**

3         Target is one of the country's largest retail companies, operating over 1400 stores in 47

4    states with 205 stores in California.  Target owns, operates, and maintains target.com.

5    Target.com is a commercial website that offers products and services for online sale and home

6    delivery that are available in Target retail stores.  The online store allows the user to browse

7    products, product descriptions and prices; view sale items and discounts for online shopping;

8    print coupons for use in Target retail stores; purchase items for home delivery; order pharmacy

9    items and have prescriptions filled for pickup at Target retail stores; find retail store locations;

10   and perform a variety of other functions.  Target.com provides many features that are related to

11   and integrated with the physical stores.  Compl. ¶¶20-23.  These include:

12   - a store locator, allowing persons who wish to shop at a Target store to learn its
13     location, hours, and phone numbers;

14   - an online pharmacy, allowing a customer to order a prescription refill online for
15     pickup at a Target store;

16   - an online photo shop, allowing a customer to order photo prints for pickup at a
17     Target store;

18   - weekly ads, allowing a customer to know what items are on sale at a particular
19     Target store location;

20   - coupons for groceries, eyeglasses and portrait photos, among others, that may be
21     redeemed at Target stores;

22   - online wedding and baby registries to allow shoppers at a Target store to purchase
23     a gift for a target.com user;

24   - information about Target's REDcard[SM] program and other financial products and
25     services offered by Target;

26   - information about Target Corporation's employment opportunities, investor
27     information and company policies; and

28   - sale of many of the products and services available at Target stores.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    2

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

Compl. ¶23.  However, Target has failed and refused to make target.com available to blind people.  Target refuses to put the well-recognized and readily achievable coding on the website which is necessary for blind people to access the site with their screen access software.  Compl. ¶¶ 27-29.

By way of background, blind persons use screen access software to access internet websites.  This software converts information on a computer screen to verbal speech through a voice synthesizer.  Screen access software allows blind persons access to websites only if website designers and operators comply with widely known and available website programming guidelines.  These include the use of alternative text ("alt-text") for graphics to allow screen-readers to recognize the graphical image, the provision of accessible image-maps, the labeling of form fields, the use of HTML markup headings for navigational purposes, and the accessibility of the functions of the website through a keyboard.  Compl. ¶¶27-34.  Target's website contains pervasive barriers that make the website unusable by blind persons:

> Target.com contains access barriers that prevent free and full use by blind persons using keyboards and screen reading software.  These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible image maps, the lack of adequate prompting and labeling; the denial of keyboard access; and the requirement that transactions be performed solely with a mouse.

Compl. ¶29.  These access barriers deny the blind full and equal access to, and enjoyment of, Target stores' goods and benefits.  Compl. ¶36.

The NFB notified Target of the access barriers existing on its website on May 5, 2005.  The parties entered into a standstill/tolling agreement executed on September 1, 2005.  Because the parties did not resolve the matter in structured negotiations, they allowed the agreement to expire.  Compl. ¶37.  Target's website remains inaccessible to the blind.  Compl. ¶¶24-36.

Plaintiffs assert four causes of action against Target: (1) violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, *et seq*.; (2) violation of the California Disabled Persons Act, Cal. Civ. Code §§54, *et seq*.; (3) violation of Title III of the Americans With Disabilities Act, 42 U.S.C. §§12101, *et seq*.; and (4) declaratory relief based on the violation of federal and state law.  Compl. ¶¶39-60.

Plaintiffs' claim under Title III of the ADA alleges that "Target stores are sales

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                3

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

establishments and public accommodations within the definition of Title III of the ADA. 42

U.S.C. §§12181(7)(E). Target.com is a service, privilege or advantage of Target stores.

Target.com is a service that is by and integrated with these stores." Compl. ¶56. "Patrons of

Target stores who are blind have been denied full and equal access to target.com, have not been

provided services that are provided to other patrons through target.com who are not disabled,

and/or have been provided services that are inferior to the services provided to non-disabled

patrons." Compl. ¶60. The Complaint does not allege that target.com is itself a place of public

accommodation for the purposes of the ADA.

For their Unruh Act claim, plaintiffs allege that Target Corporation is a business

establishment within the meaning of the Unruh Act, as it owns and operates 205 stores in

California as well as selling goods and providing valuable services through its website to

California citizens. Plaintiffs further allege that Target violates the Unruh Act by denying blind

citizens full and equal access to and the use and enjoyment of one of its major services –

target.com and, consequently, a myriad of other goods, services and advantages readily available

to sighted customers on target.com. Target's conduct is intentional in that Target has constructed

and maintained an inaccessible website even after being notified of its inaccessibility and the

discrimination caused by such inaccessibility. Compl. ¶¶40-41.

Plaintiffs' DPA claim alleges two theories of liability: (1) target.com is a public place

within the meaning of the DPA to which Target denies the blind full and equal access; and (2)

target.com is a service "provided by and integrated with" Target's brick and mortar stores, a

service which is inaccessible to the blind. Compl. ¶¶48-49.

## III.    ARGUMENT

On a motion to dismiss for failure to state a claim, the court must assume the truth of all

factual allegations in the complaint, and must construe them in the light most favorable to

plaintiffs. *See, e.g., Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996). The Complaint, fairly

construed, establishes that target.com is a service of a statutorily regulated entity well within the

contemplation of constitutional statutes. Accordingly, the motion must fail.

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    4

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1    **A.    Plaintiffs Properly State A Claim Under Title III Of The Americans With Disabilities Act.**

2

3    Title III of the ADA states, "No individual shall be discriminated against on the basis of

4    disability in the full and equal enjoyment of the *goods, services, facilities, privileges,*

5    *advantages, or accommodations* of any place of public accommodation by any person who

6    owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. §12182(a)

7    (emphasis added).

8    Plaintiffs' Complaint is clear: "Target stores are sales establishments and public

9    accommodations within the definition of Title III of the ADA.  42 U.S.C. §12181(7)(E).

10   *Target.com is a service, privilege or advantage of Target stores.*  Target.com is a service that is

11   by and integrated with these stores."  Compl. ¶56 (emphasis added).  Target, however, treats the

12   Complaint as though it asserted that under the ADA websites are places of public

13   accommodation.  Though websites are in fact covered entities under Title III, this case does not

14   involve a retailer that only exists in cyberspace, and is not the occasion to litigate that issue.

15   Thus, Target's discussion of cases addressing what can and cannot be places of public

16   accommodation under the ADA fails to address the actual basis of the Title III claim in this case.

17   **1.    Target Is Denying Full and Equal Access to A Service, Privilege And Advantage Of Target Stores.**

18

19   Plaintiffs' claim under Title III of the ADA rests comfortably within the recognized

20   contours of the statute.  Target's physical stores throughout the country are clearly places of

21   public accommodation governed by Title III.  Title III of the ADA generally prohibits a covered

22   entity from denying an individual or class of individuals an opportunity "to participate in or

23   benefit from the goods, services, privileges, advantages, or accommodations of an entity."  42

24   U.S.C. §12182(b)(1)(A)(i).  This opportunity must be equal to that afforded non-disabled

25   individuals.  42 U.S.C. §12182(b)(1)(A)(ii).  Title III further specifically obligates a covered

26   entity to: (1) remove communication barriers where such removal is readily achievable; (2)

27   modify its policies and practices where such modification would not cause a fundamental

28   alteration; and (3) provide auxiliary aids and services to the extent this would not be an undue

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    5

1    burden.  42 U.S.C. §§12182(b)(2)(A)(ii)-(iv).  Target's refusal to remedy the barriers on

2    target.com violates these prohibitions.

3            Contrary to defendant's assertion that Title III is limited to physical barriers, Title III

4    applies where, as here, the barrier to access is intangible or even off-site from the public

5    accommodation.  Courts have thus held that Title III applies to intangible barriers to a service

6    that has a nexus with a physical place of public accommodation.  In *Rendon v. Valleycrest*

7    *Productions*, 294 F.3d 1279 (11th Cir. 2002), for example, the barrier to a public

8    accommodation (a televised game show) consisted of an automated telephone contestant

9    selection process that was not fully accessible.  *Rendon*, 294 F.3d at 1280.  The court

10   explained that,

> [a] reading of the plain and unambiguous statutory language at issue reveals
> that the definition of discrimination provided in Title III covers both tangible
> barriers, that is, physical and architectural barriers that would prevent a
> disabled person from entering an accommodation's facilities and accessing its
> goods, services and privileges…and intangible barriers, such as eligibility
> requirements and screening rules or discriminatory policies and procedures
> that restrict a disabled person's ability to enjoy the defendant entity's goods,
> services and privileges.

16   *Rendon*, 294 F.3d at 1283 (internal citations omitted).  Moreover, the Eleventh Circuit explained,

17   a place of public accommodation cannot discriminate against persons with disabilities simply

18   because the discrimination occurs off site.  *Id*. at 1284-85.  So, too, Target has erected intangible

19   barriers that deny the blind an equal opportunity to receive and participate in many of the

20   services and advantages provided to sighted customers of Target stores through Target's website.

21           In challenging plaintiffs' ADA cause of action, defendant's motion relies on several

22   inapplicable cases.  Defendant cites *Access Now, Inc. v. Southwest Airlines, Co*., 227 F. Supp. 2d

23   1312 (S.D. Fla. 2002), where the court held that a website – southwest.com – is not a place of

24   public accommodation.  While plaintiffs belief that case was wrongly decided, it has nothing to

25   do with the issues at hand.  Plaintiffs, again, have not alleged that target.com is a place of public

26   accommodation within the meaning of Title III.

27           Defendant also cites *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir.

28   2000),  where the Ninth Circuit held that an employee insurance policy is not a place of public

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
Case No.:  C 06-01802 MHP
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                                    6

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

accommodation within the meaning of Title III. *Weyer*, 198 F.3d at 1114-15. The court stated that, "The principle of *noscitur a sociis* requires that the term, 'place of public accommodation,' be interpreted within the context of the accompanying words, and this context suggests that some connection between the good or service complained of and an actual physical place is required." *Id.* at 1114. This connection is precisely what plaintiffs in this case allege in detail. See Compl. ¶¶20-23.

In addition, defendant cites *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000), where the court distinguished between access to and the content of goods and services. *Chabner*, 225 F.3d at 1047. The court's holding that Title III does not compel insurance companies to modify the content of their policies is much like a bookstore not being obligated to provide Braille books to its blind customers. Here plaintiffs are simply seeking access to the same goods, services and privileges that Target makes available to the general public.

Finally, defendant cites *Torres v. AT&T Broadband, LLC*, 158 F. Supp. 2d 1035 (N.D. Cal. 2001), where plaintiff alleged that a digital cable program guide which assists a viewer in finding information on and watching programs on a home television was a place of public accommodation. Plaintiff in that case argued that the television became "a place of exhibition and entertainment" and that the digital cable box was a "facility" within the meaning of Title III. *Torres*, 158 F. Supp. 2d at 1037-38. Plaintiffs' allegations in this case are in no way comparable to the allegations in *Torres*. Target stores, and not the website, are the relevant places of public accommodation under the Title III claim in this case. The website here is indisputably a service, privilege, and/or advantage that is related to and integrated with those brick and mortar stores. Compl. ¶¶20-23, 56-60.

## 2. Congress Intended Title III To Apply To All Services Of A Public Accommodation, Including Newly Emerging Forms of Services.

Target has suggested that the failure of Congress to amend the ADA means that a private retailer's website necessarily falls outside its scope and points, cryptically, to Congress' decision to require the federal government to utilize accessible software. 29 U.S.C. §794d. The Supreme

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    7

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1    Court has stated, however, that "[a]s a general matter, we are reluctant to draw inferences from

2    Congress' failure to act."  *Brecht v. Abrahamson*, 507 U.S. 619, 632 (1993) (internal citations

3    omitted).  Moreover, there has been no reason for Congress to amend the ADA to cover websites

4    such as target.com since such websites already fall within the statute as a service, privilege,

5    facility, advantage or accommodation of a public accommodation.[3]  Indeed, the same term

6    "services," which appears also in Title II of the ADA, 42 U.S.C. §12132, dealing with public

7    entities, has already been held broad enough to cover the website of a public entity where the

8    website provided route and scheduling information for public transit.  *Martin v. Metro. Atlanta*

9    *Rapid Transit Auth.*, 225 F. Supp. 2d 1362, 1377 (N.D. Ga. 2002).

10    Target also points to a Congressional oversight hearing entitled *Applicability of the*

11    *Americans With Disabilities Act (ADA) to Private Internet Sites: Hearing Before the Subcomm.*

12    *on the Constitution of the House Comm. on the Judiciary*, 106th Cong. 65-010 (2000)

13    ("Hearing").[4]  The hearing was scheduled after the NFB brought suit against America Online

14    (AOL) for accessibility.  Def. Mem. at 5;  *see also* H.R. REP. 106-1048, at 210 (2001) (noting

15    that one of the developments leading to the hearing was that on November 2, 1999, the NFB

16    filed a class action lawsuit against AOL).  Target suggests, without any authority, that the

17    Committee believed that the ADA did not yet apply to private websites.  To the contrary,

18    members of Congress noted that it was the opinion of the Department of Justice that the ADA

19    applied to private websites and acknowledged that the state of the law was unsettled.  Hearing at

20    7-9 (opening statement of Chairman Charles T. Canady).  While some witnesses testified that the

21    ADA needed to be amended to exclude the internet, Congress ultimately declined to enact such

22    an exception to the statute's broad and far-reaching language.  *Id*. at 7-163.

23    The typical judicial approach to statutory construction is to begin with the words of the

24    statute, then consider, if necessary, congressional materials.  *Blum v. Stenson*, 465 U.S. 886, 896

25

26    _____

[3] The ADA bar of discrimination in a public accommodation's "goods, services, facilities, privileges, advantages, or

27    accommodations," has been broadly construed.  *See, e.g., Rothman v. Emory University,* 828 F. Supp. 537, 541
(N.D. Ill. 1993) (a law school's recommendation to the bar is an ADA-covered service and privilege offered by a
law school).

28    [4] The referenced portions of the legislative history for this Committee hearing are submitted herewith in Plaintiffs'
Request for Judicial Notice.

_____
*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    8

1    (1984) ("Where, as here, resolution of a question of federal law turns on a statute and the

2    intention of Congress, the court should look first to the statutory language and then to the

3    legislative history if the statutory language is unclear.").  Here, Target has not only eschewed

4    consideration of why a website cannot be a service of a public accommodation, but has pointed

5    to a subsequent committee hearing whose significance is ambiguous at best.

6         Target's overly restrictive approach to the interpretation of the ADA stands in stark

7    contradiction to Congress's intent.  The purpose of the ADA, as stated in the statute itself, was:

> (1) to provide a clear and *comprehensive* national mandate for the elimination of
> discrimination against individuals with disabilities;
> …
> (4) to invoke the sweep of congressional authority…in order to address *the major
> areas of discrimination faced day-to-day* by people with disabilities.

11    42 U.S.C. §12101(b) ("Purpose") (emphasis added).

12         Congress's stated goal in enacting the ADA was to extend broad civil rights protections

13    to people with disabilities, thus eliminating the need for further legislation in this area.  H.R.

14    REP. NO. 101-485, pt. 3, at 26 (1990).  Congress's ultimate intent in enacting Title III was to

15    provide persons with disabilities the right to participate fully in everyday life.[5]

16         The legislative record is also clear that Congress intended the ADA to apply to new and

17    emerging technologies.  The committee report states:

> Indeed, the Committee intends that the types of accommodation and services
> provided to individuals with disabilities, under all of the titles of this bill, should
> keep pace with the rapidly changing technology of the times. This is a period of
> tremendous change and growth involving technology assistance and the
> Committee wishes to encourage this process.

21    H.R. REP. NO. 101-485, pt. 2, at 108 (1990).  Furthermore, Congress explicitly intended to

22    remove barriers to information exchange.  *Id.*[6]

---

[5] *See* remarks of Sen. John Kerry, 135 CONG REC. S4984, S4997 (1990) ("Talking on the telephone, following a
sports game on television, or operating a word processor are all activities that most of us take for granted, yet they
too are needlessly unavailable to many of the disabled.").

[6] The U.S. Department of Justice, the entity charged with issuance of the regulations under Title III, has thus found
that Title III applies to internet websites such as target.com whether or not there is a nexus to a physical store.  *See*
Brief of the United States Department of Justice as Amicus Curiae in Support of Appellant, *Hooks v. OKBridge,
Inc.,* 232 F.3d 208 (5th Cir. 2000) (*available at* http://www.usdoj.gov/crt/briefs/hooks.htm); *see also* Letter from the
Assistant Attorney-General for Civil Rights to Senator Tom Harkin (September 9, 1996) (10 NDLR 240 *available at*
http://www.usdoj.gov/crt/foia/cltr204.txt).  *See also Doe v. Mutual of Omaha Ins. Co.,* 179 F.3d 557, 559 (7th Cir.
1999) ("The core meaning of [42 U.S.C. §12182(a)], plainly enough, is that the owner or operator of a store, hotel,
restaurant, dentist's office, travel agency, theater, *Web site* or other facility (whether in physical space or electronic

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    9

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1    Application of Title III to Target's website service is well within the scope of the statute,

2  consistent with applicable caselaw, and necessary to implement Congressional intent.

3  Accordingly, defendant's motion to dismiss the ADA Title III cause of action should be denied.

4    **B.    Plaintiffs Properly State A Claim Under The Unruh Act**

5    As a business establishment that operates in California, Target Corporation is required to

6  abide by the Unruh Act, which guarantees that persons with disabilities "are entitled to the full

7  and equal accommodations, advantages, facilities, privileges, or services in all business

8  establishments of every kind whatsoever."  Cal. Civ. Code §51(b).  Thus, to state an independent

9  claim under the Unruh Act, plaintiffs need only allege facts showing that (1) Target Corporation

10  is a business establishment, (2) target.com is one of the "accommodations, advantages, facilities,

11  privileges, or services" of Target Corporation, and (3) the blind lack "full and equal" access to

12  target.com.  The Complaint clearly does so.  Compl. ¶40.

13    The motion to dismiss shoots wide of the mark and focuses instead on the proposition

14  that a retailer's website is not itself a "business establishment."  Def. Mem. at 11-14.  The

15  Complaint alleges that Target Corporation is the business establishment in that Target is a for-

16  profit corporation conducting business at its 205 stores in California and through target.com.

17  Compl. ¶11.  The Complaint further alleges that the website, target.com, is an accommodation,

18  advantage, facility, privilege, or service of a business establishment – to wit, Target Corporation.

19  The terms "accommodations, advantages, facilities, privileges and services of a business

20  establishment" are clearly meant to encompass all the benefits which a business establishment

21  offers.  *See, e.g., Rotary Club of Duarte v. Bd. of Dir. of Rotary Club Int'l*, 178 Cal. App. 3d

22  1035, 1059 (Ct. App. 1986) (finding that benefits of Rotary Club membership included

23  membership itself, receipt of the organization's magazine and publications, the right to wear the

24  Rotary emblem and the opportunity to attend "business relation conferences").  The Complaint

25  delineates the obvious benefits of target.com to Target's customers.  Compl. ¶¶22-23.

26

27  space) . . . that is open to the public cannot exclude disabled persons from entering the facility and, once in, from
using the facility in the same way that the nondisabled do.") (emphasis added).  The argument about whether Title
III covers a website business that has no connection to a physical place of public accommodation, however, must

28  await another case on another day.  As discussed above, the complaint here concerns a website service which is
extensively linked to and integrated with Target's physical stores.

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    10

1  Target's approach is a novel and ultimately unsatisfactory approach to statutory

2  construction. The proper starting point is the text of the statute and a determination as to whether

3  target.com can be fairly said to be an accommodation, advantage, facility, privilege, or service of

4  Target Corporation. Target has not and cannot argue otherwise. Since target.com is clearly a

5  service of Target Corporation, and since the benefits of that service are being denied to the blind

6  due to the pervasive access barriers, the claim should proceed.

### 1. Target Corporation Is A Business Establishment That Unlawfully Discriminates Against The Blind

9  The California Supreme Court has repeatedly held that the Unruh Act should be liberally

10  construed to apply to the full gamut of business entities. *See Burks v. Poppy Const. Co.*, 57 Cal.

11  2d 463, 468-469 (1962); *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 621

12  (1995); *O'Connor v. Village Green Owners Ass'n,* 33 Cal. 3d 790, 795 (1983). For example, in

13  *O'Connor v. Village Green Owners Association,* the Supreme Court reasoned:

> The Legislature used the words "all" and "of every kind whatsoever" in referring
> to business establishments covered by the Unruh Act (Cal. Civ. Code § 51), and
> the inclusion of these words without any exception and without specification of
> particular kinds of enterprises, leaves no doubt that the term "business
> establishments" was used in the broadest sense reasonably possible…The word
> "establishment," as broadly defined, includes not only a fixed location, such as
> the "place where one is permanently fixed for residence or business," but also *a
> permanent "commercial force or organization"* or "a permanent settled position
> as in life or business."

19  *O'Connor*, 33 Cal. 3d at 795 (quoting *Burks,* 57 Cal. 2d at 468) (emphasis added). The Ninth

20  Circuit reached the same conclusion. *See Chabner*, 225 F.3d at 1050 (holding that an insurance

21  company is a business establishment within the meaning of the Unruh Act). Target Corporation

22  is a business establishment in the most traditional sense: a for-profit, publicly traded corporation

23  conducting a substantial retail business with California residents in California every day of every

24  year. Target Corporation is clearly a permanent commercial force and organization within

25  California.

26  Defendant's reliance on *Curran v. Mt. Diablo Council of the Boy Scouts of America*, 17

27  Cal. 4th 670 (1998), and *Ingels v. Westwood One Broadcasting Services, Inc*., 129 Cal. App. 4th

28  1050 (2005), is misplaced. In *Curran*, the court decided that the internal membership policies of

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**    11

1    a non-profit organization fall outside the purview of the Unruh Act. *Curran*, 17 Cal. 4th at 697-

2    98. The court stated,

> The record establishes that the Boy Scouts is an organization whose primary
> function is the inculcation of a specific set of values in its youth members, and
> whose recreational facilities and activities are complementary to the
> organization's primary purpose. Unlike membership in the Boys' Club of Santa
> Cruz, Inc., membership in the Boy Scouts is not simply a ticket of admission to a
> recreational facility that is open to a large segment of the public and has all the
> attributes of a place of public amusement.

7    *Id*. Target Corporation is nothing like the Boy Scouts. Rather, it is in every sense the traditional

8    type of business that the California Supreme Court has found falls within the Act – a large-scale

9    retailer without any function other than to profit from the sales of goods and services to the

10   general public. *Ingels* is similarly inapplicable. In that case, the plaintiffs alleged that a talk

11   show violated the Unruh Act by berating an on-air caller for their age. The court found that the

12   Unruh Act could not be extended so as to violate the defendant's constitutional free-speech

13   rights. *Ingels*, 129 Cal. App. 4th at 1072. Target cannot seriously assert that removal of the

14   barriers which deny the blind access to its website would interfere with protected speech.

15          Target also claims that the Unruh Act does not cover websites because the statute has not

16   been amended to specifically mention websites. Target fails to explain, however, why any such

17   amendment is necessary. The terms "advantages, facilities and privileges" have been in the

18   statute since 1905 and have not been further refined, even though websites are but one of the

19   many advantages, facilities and privileges that did not exist in 1905. Indeed in 1959, the

20   language "all business establishments of any kind whatsoever" was substituted for the previous

21   specific list of business establishments in order to ensure that the scope of the statute's coverage

22   is comprehensive. There are many kinds of businesses today that did not exist in 1959. There is

23   no rule of law that the legislature must determine every session what new services and what new

24   business establishments have been created and amend the statute accordingly. Indeed, such an

25   approach would be contrary to the Act's comprehensive intent. The Unruh Act, after all, "is to

26   be liberally construed with a view to effectuating the purposes for which it was enacted,"

27   purposes which include interdicting "all arbitrary discrimination by a business enterprise."

28   *Rotary Club*, 178 Cal. App. 3d at 1046-47.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**          12

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1    Target also argues that it cannot be held liable for violation of the Unruh Act because (i)

2    no court has previously held that the Act applies to internet services such as target.com (the issue

3    has not previously been addressed), and (ii) the Act contains a damage remedy along with the

4    injunctive relief remedy.  Under this reasoning, the Unruh Act could never be applied to cover a

5    new type of business enterprise.  The undisputed facts are that Target, a $52 billion-per-year

6    business enterprise, was put on notice by plaintiffs that Target's website illegally excluded the

7    blind, that Target refused to rectify this violation, and that Target now seeks to be excused from

8    compliance with any state or federal access obligations concerning its inaccessible website

9    service.  Due process surely does not extend so far as to be a license to discriminate in the

10    provision of goods and services by a major business establishment such as Target.  None of the

11    cases cited by defendant support such a proposition.

12    Finally, the Unruh Act has been amended to incorporate defendant's obligations under

13    the ADA.  *See* Cal. Civ. Code §51(f).  Defendant's violation of Title III of the ADA (see

14    discussion above) thus also subjects defendant to liability for injunctive relief and damages under

15    the Unruh Act.

16    **2.    If Intentional Discrimination Is An Element Of An Unruh Act Claim,**
**Target's Knowing Refusal To Remove Barriers Demonstrates Intent.**

17

18    Target's insistence that the Unruh Act claim must be dismissed for want of a

19    discriminatory intent fails on three grounds:  (1) under Rule 9(b), Fed. R. Civ. P., intent may be

20    generally averred; (2) disability discrimination claims do not require a discriminatory animus;

21    and (3) the Complaint alleges specific facts amounting to intentional discriminatory conduct by

22    Target.

23    In *Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134 (N.D. Cal. 1998),

24    Judge Henderson of this District held that a plaintiff "need not demonstrate that defendants

25    harbored discriminatory intent as an element of her claim of disability discrimination under the

26    Unruh Civil Rights Act."  *Presta*, 16 F. Supp. 2d at 1136.  The Ninth Circuit has also rejected the

27    suggestion that intentional discrimination is an element of all Unruh Act claims.  *Lentini v. Cal.*

28    *Ctr. for the Arts,* 370 F.3d 837, 847 (9th Cir. 2004) ("We find that… no showing of intentional

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                13

1   discrimination is required where the Unruh Act violation is premised on an ADA violation"). As

2   Judge Henderson reasoned in *Presta*,

3          often the most damaging instances in which rights of persons with disabilities are
       denied come not as the result of malice or discriminatory intent, but rather from
4       benevolent inaction when action is required. Such discrimination may only be
       fought by a statute that prescribes liability without reference to an actor's intent.
5

6   *Presta*, 16 F. Supp. 2d at 1136. [7] It may be that the Act requires intentional conduct in most

7   cases that do not involve disability discrimination. *See, e.g., Harris v. Capital Growth Investors*

8   *XIV*, 52 Cal. 3d 1142, 1175 (1991) (upholding dismissal of sex discrimination claim pled under

9   disparate impact theory and holding that plaintiffs would have needed to plead intent to state

10  Unruh Act claim). However, this case clearly alleges disability discrimination and not just from

11  benevolent inaction but also from a deliberate disregard after a defendant was specifically put on

12  notice of the discrimination, yet chose to continue to exclude the blind from the benefits of its

13  services.[8]

14          Accordingly, even if the Unruh Act requires that Target acted intentionally, plaintiffs

15  easily meet their burden. Intentional discrimination under California law simply means that the

16  defendant has unlawfully engaged in wrongful and discriminatory conduct with "knowledge of

17  the effect [its conduct] was having on [] disabled persons." *Hankins v. El Torito Restaurants,*

18  *Inc.*, 63 Cal. App. 4th 510, 518 (1998). In *Hankins*, the court found intentional discrimination

19  where plaintiff alleged that the defendant had "'wrongfully and unlawfully denied accessible

20  restroom facilities to physically handicapped persons,' that it acted with 'knowledge of the effect

21  [its conduct] was having on physically disabled persons,' and that [the plaintiff] was

22  'discriminated against on the sole basis that he was physically disabled and on crutches.'" *Id*. In

23  the case at hand, plaintiffs notified Target on May 5, 2005 that Target's website is inaccessible to

24

---

25  [7] Judge Henderson also reasoned that the Unruh Act's incorporation of the ADA as a floor for liability belies any
    construction of the statute which would require an intent to discriminate, given that the ADA does not require such
26  intent. *Presta*, 16 F. Supp. 2d at 1135-1136. This is further confirmed by the fact that the "California courts have
    clearly and repeatedly held that the Unruh Act is to be interpreted 'in the broadest sense reasonably possible,' so as
27  to achieve its purpose of combating discrimination in all its forms." *Id*. (citing *Isbister v. Boys' Club of Santa Cruz*,
    40 Cal. 3d 72, 76 (1985)).
    [8] For this reason, the two cases Target cites, *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824 (2005) and
28  *Harris*, 52 Cal. 3d 1142 (1991), are inapplicable, as neither involves disability discrimination.

---

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    14

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1   the blind and that the site's access barriers discriminate against and exclude the blind from the

2   benefits of that service.  Plaintiffs unsuccessfully attempted to convince Target to make its

3   website accessible.  Compl. ¶37.  The site remains inaccessible to the blind even now.  Compl.

4   ¶¶29-34.  This certainly suffices for an allegation of intent under California law – if such a

5   showing were necessary.

6
        **3.    Plaintiffs' Claim Does Not Require Any Structural Construction Or
7        Modification Of A Physical Structure.**

8        Defendant relies on Cal. Civ. Code §51(d), which states in pertinent part:

9        Nothing in this section shall be construed to require any construction, alteration,
        repair, structural or otherwise, or modification of any sort whatsoever, beyond
10       that construction, alteration, repair, or modification that is otherwise required by
        other provisions of law, to any new or existing establishment, facility, building,
11       improvement, or any other structure…

12  By its own terms, this provision applies solely to the alteration of physical structures, specifically

13  establishments, facilities and buildings.  Target's reliance on this provision is nothing less than

14  ironic, given that it takes great pains to argue elsewhere that target.com is not a physical

15  structure.  In any event, the section simply does not purport to apply to the modification,

16  alteration or repair of a service, privilege, accommodation or advantage.  California courts have

17  recognized that this provision does not bar Unruh Act claims relating to policies, practices and

18  procedures such as those asserted by plaintiffs in this case. See *Hankins,* 63 Cal. App. 4th at 519-

19  520.

20      **C.    Plaintiffs Have Properly Stated A Claim Under The Disabled Persons Act.**

21      The Disabled Persons Act states that, "Individuals with disabilities shall be entitled to full

22  and equal access, as other members of the general public, to accommodations, advantages,

23  facilities . . . and privileges of . . . places of public accommodation . . . or other places to which

24  the general public is invited."  Cal. Civ. Code §54.1(a)(1).

25      Plaintiffs have properly stated a claim under the DPA for three reasons.  First, the DPA

26  (like the Unruh Act) incorporates the ADA by reference and the Plaintiffs have, as articulated

27  above, properly pled a violation of the ADA.  Cal. Civ. Code §54.1(d).  Second, target.com is

28  properly understood as an "accommodation, advantage, facility and privilege" of a place of

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    15

1    public accommodation – to wit, Target stores in California.  Third, although the Court need not

2    reach this issue to deny the motion to dismiss, target.com is itself, under California law, a

3    "place" to which the general public is invited.

4        Target contends that the DPA cannot apply to a website.  Def. Mem. at 19-21.  Again the

5    authority Target cites does not in fact support this proposition.  California Civil Code §§54.1(a),

6    *et seq.*, reflects "…a legislative intent to afford broad protection."  *Hankins*, 63 Cal. App. 4th at

7    523.  In the *Hankins* case, the court explicitly held that the DPA prohibits a covered entity from

8    maintaining a policy or practice "unrelated to any structural impediment, which results in a

9    denial of full and equal access by a disabled individual to a public accommodation."  *Id*.  That is

10   precisely the type of situation presented here – target.com is a service provided by and linked to

11   Target's physical stores.  Target's decision to make this website usable only by sighted

12   customers results in a denial of full and equal access by blind customers to the services of these

13   physical stores.

14       Target also cites to two building code architectural barriers cases that simply have no

15   relevance here.  In *Marsh v. Edwards Theatres Circuit, Inc.*, 64 Cal. App. 3d 881 (1976), the

16   court addressed whether a pre-existing structure had to be modified to allow accessibility when

17   existing building codes did not so require.  *Marsh*, 64 Cal. App. 3d at 886.  Likewise, the court in

18   *Arnold v. United Artists Theatre Cir., Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994) simply found that

19   violation of the building code applicable at the time of construction or alteration constituted a

20   violation of the DPA.  *Arnold*, 158 F.R.D. 439 at 446-47.  *Arnold* said nothing about whether the

21   DPA's application is limited only to building code requirements.  In this case, Target's policies

22   and practices, not its conformance with building codes, are at issue.

23       By using the words "other places to which the public is invited," in §54.1(a)(1), the

24   legislature demonstrated an intent for the DPA to encompass all types of business enterprises

25   which serve the general public.  In *Hankins*, 63 Cal. App. 4th at 523, the court noted that

26   §§54.1(a), *et seq.*, reflects "…a legislative intent to afford broad protection."  Target.com is

27   surely a "place" where the public is "invited".  Open twenty-four hours a day, seven days a

28   week, target.com sells products and services and provides information to the general public.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    16

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1    Compl. ¶¶20-23.  Essentially, target.com extends Target's physical stores into cyberspace.[9]

2        The public policy underlying the DPA applies with equal force to Target's stores and

3    website.  Increasingly, the internet plays a central role in the commercial life of our state and

4    nation.  The DPA seeks to ensure that people with disabilities have an equal opportunity to

5    participate in this commercial life.  To give effect to the legislative intent to afford "broad

6    protection," the DPA must encompass websites such as target.com.

7        Accordingly, the DPA count should be permitted to proceed not only because target.com

8    is a service related to Target stores under the ADA and the DPA, but because target.com is itself

9    a place to which the general public is invited for the purposes of the DPA.

10       **D.    The Commerce Clause Does Not Bar Application Of Plaintiffs' State Law**
11       **Claims.**

12       Target argues that to the extent the Unruh Act and DPA apply to discrimination on the

13   internet against blind Californians, they are *per se* unconstitutional burdens on interstate

14   commerce, and insists that "any regulation of the Internet must be instituted at the national

15   level."  Def. Mem. at 23.  This argument, if accepted, would immunize a breathtaking range of

16   conduct ordinarily regulated by or violative of state law – as long as it occurred on the Internet.

17   However, the Internet is not, as Target would have it, a haven from compliance with state laws

18   directed to traditional subjects of state concern, even when those laws incidentally affect

19   interstate commerce.  Moreover, the Unruh Act and DPA are legitimate exercises of state powers

20   whose benefits far exceed their effect on commerce and, as such, do not run afoul of the

21   restrictions the Commerce Clause imposes on the states.

22

23

24

25   ---

[9] Target quite literally invites the public to visit its website for the purpose of purchasing goods and services.  The
26   sign-in page for target.com invites "New Guests" to enter and set up an account, and asks "Returning Guests" to
     sign in with their account number.  *See* http://www.target.com (home page) and http://www.target.com/gp/flex/sign-
27   in.html, attached hereto as Exhibits 1 and 2.  Even though this matter is before the court on a motion to dismiss, it
     may consider the contents of Target's web page without converting the motion to one for summary judgment.  *See
     Branch v. Tunnell,* 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds* by *Galbraith v. County of Santa
28   Clara,* 307 F.3d 1119 (9th Cir. 2002)**Error! Bookmark not defined.**; *Van Winkle v. Allstate Ins. Co.,* 290 F. Supp.
     2d 1158, 1162 n.2 (C.D. Cal. 2003).

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    17

1

2

3

1.    **The Unruh Act and DPA Are Constitutional Because They Are Civil Rights Laws of General Application Which Do Not Conflict with the Laws of Other States and Which Have Local Benefits That Outweigh Whatever Incidental Burdens on Interstate Commerce That May Theoretically Exist.**

4    In asserting that California's civil rights acts unconstitutionally burden interstate

5    commerce, Target eschews the traditional framework by which courts analyze such a contention.

6    When these laws are considered in that context, it is clear that they meet constitutional

7    requirements.

8    The Commerce Clause of the United States Constitution, U.S. Const. art. I, §8, cl. 3,

9    grants Congress the power to regulate interstate and foreign commerce.  By implication the

10    Clause also limits "the power of the States to enact laws imposing substantial burdens on such

11    commerce."  *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984).  This

12    "dormant" Commerce Clause "prohibits economic protectionism – that is, regulatory measures

13    designed to benefit in-state economic interests by burdening out-of-state competitors."  *New*

14    *Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988); *see Fort Gratiot Sanitary Landfill,*

15    *Inc. v. Mich. Dep't of Natural Resources*, 504 U.S. 353, 359 (1992).  As the Ninth Circuit

16    explained in *S.D. Myers, Inc. v. City of San Francisco*, 253 F.3d 461 (9th Cir. 2001):

17

18

19

20

The "central rationale" of the dormant Commerce Clause "is to prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent . . . . The Commerce Clause is concerned with the free flow of goods and services through the several states; it is the economic interest in being free from trade barriers that the clause protects."

21    *S.D. Myers*, 253 F.3d at 466, 471 (quoting *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S.

22    383, 390 (1994)).  It follows that legislation that affects but does not discriminate against out-of-

23    state interests and does not unduly burden interstate commerce passes constitutional muster.  The

24    framers "never intended to cut the States off from legislating on all subjects relating to the

25    health, life, and safety of their citizens, though the legislation might indirectly affect the

26    commerce of the country."  *Sherlock v. Alling*, 93 U.S. 99, 103 (1876).  A "state law may not be

27    struck down on the mere showing that its administration affects interstate commerce in some

28    way.  'State regulation, based on the police power, which does not discriminate against interstate

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    18

commerce or operate to disrupt its required uniformity, may constitutionally stand.'" *Head v. N.M. Bd. of Examiners*, 374 U.S. 424, 429 (1963) (citing *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 448 (1960)).

In *S.D. Myers,* the Ninth Circuit set out the analytical framework for determining when a state statute must be struck down as an infringement on Congress's powers over interstate commerce:

> When a state statute directly regulates or discriminates against interstate commerce or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*S.D. Myers*, 253 F.3d at 466 (citing *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986)); *see Valley Bank of Nev. v. Plus System, Inc.*, 914 F.2d 1186 (9th Cir. 1990). The Unruh Act and DPA do not fall within the scope of the first test, as they are not direct regulations of commerce: the Acts contain "no language explicitly or implicitly targeting either out-of-state entities or entities engaged in interstate commerce." *S.D. Myers*, 253 F.3d at 468-70. Even if they were direct regulations, Target "must either present evidence that conflicting, legitimate legislation is already in place or that the threat of such legislation is both actual and imminent." *Id.* at 469. No such evidence – that other states require discriminatory websites – has been presented. *See* Section III.D.2 *infra*.

Because the Acts do not discriminate against interstate commerce and only indirectly affect it, they are measured by the second test articulated in *S.D. Myers*: the Court should invalidate them only if the State's interest in such legislation is illegitimate and the burdens they impose on interstate commerce clearly exceed the local benefits. *S.D. Myers*, 253 F.3d at 471; *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). States have a compelling interest in prohibiting discrimination; such laws protect "the State's citizenry from a number of serious social and personal harms." *Roberts v. United States Jaycees*, 468 U.S. 609, 610 (1984). The Unruh Act "is this state's bulwark against arbitrary discrimination." *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d. 72, 75 (1985). The Disabled Persons Act, too, is an expression of the State's

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    19

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

legitimate interests in protecting the rights and dignity of disabled Californians and ensuring that California benefits from their wide participation in the political, economic and cultural life of the State. Target does not cite, and Plaintiffs are not aware of, a single case striking down a state disability access or other equal protection law on the basis that it would somehow violate the Commerce Clause.

Target has offered but one fact to support its claim of burden: that the nature of the internet is such that target.com would be subject to the most stringent standard imposed by any State. Def. Mem. at 24. That claim is insufficient as a matter of law: Target "must either present evidence that *conflicting,* legitimate legislation is already in place or that the threat of such legislation is both actual and imminent." *S.D. Myers*, 253 F.3d at 469-70 (emphasis added). By contrast, the local benefits of freeing California's blind from discrimination in the services provided by a major retailer are substantial.

### 2. The Unruh Act and DPA may address conduct that occurs on the Internet.

Because of the protean nature of the internet, a host of activities normally within the purview of state regulation now occur online as well: advertising, consumer transactions, consumer credit transactions, banking, prescription refills, firearm sales, insurance, even legal advice, to name but a few.[10] According to Target, however, a state is powerless to use its civil or criminal laws to address information privacy, false advertising, unfair competition, consumer fraud, usury, illegal firearm transactions, unlicensed insurance sales, prescription drug abuse, malpractice and violations of professional conduct, not to mention discrimination, when the conduct occurs on the internet. A libel online would not be actionable, apparently, unless and until Congress passes a federal libel law.

To understand the breathtaking scope of Target's argument, consider that, if accepted, California would be powerless to regulate the practice of law by California lawyers who advertise or give advice over the internet. This is no hypothetical: legal advice is now available

---

[10] *See, e.g., https://www.google.com/adsense/success; http://www.target.com; http://www.ditech.com; https://bankus.etrade.com; http://www.medsforless.com; http://www.bushmaster.com; http://www.federatedinsurance.com; http://www.freeadvice.com.*

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**          20

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1   on the web.[11]  If the website contains improper advertising under State law; if unlicensed persons

2   offer legal advice online; if confidential information conveyed online is disclosed; or if online

3   advice breaches standards of care; then, if Target is correct, no State has the authority to address

4   these issues.  Only Congress, Target's argument suggests, may legislate standards of professional

5   responsibility for legal websites.  The decision of the California Bar Association that attorney

6   websites are subject to California's law governing deceptive advertising[12] and that the

7   confidentiality of information disclosed in online attorney-client conferences are subject to its

8   disciplinary rules[13] is, according to Target's argument, an unconstitutional burden on interstate

9   commerce because it is a regulation of the internet.

10      Defendant's argument that conduct normally within a state's power to regulate enters a

11  lawless enclave when it occurs on the internet, while ill-considered, is not novel.  At issue in

12  *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493 (5th Cir. 2001), was the application to an

13  internet site called "The Showroom," from which Ford offered to sell used automobiles in

14  violation of a Texas law requiring that automobile dealers be licensed and prohibiting

15  manufacturer-owned dealerships.  Ford claimed, as does Target, that applying state laws to

16  websites unduly burdens interstate commerce, because e-commerce is one of those types of

17  commerce that demand national regulation.  *Ford Motor Co.*, 264 F.3d at 504-05.  While this

18  assertion is worthy of consideration with respect to statutes that directly regulate internet activity,

19  the Fifth Circuit recognized that it was "absurd" to apply that argument whenever the internet

20  was used to violate state law:  "It would allow corporations or individuals to circumvent

21  otherwise constitutional state laws and regulations simply by connecting the transaction to the

22  internet."  *Id.* at 505.

23      In *People v. Hsu*, 82 Cal. App. 4th 976 (2000)*,* and *Hatch v. Superior Court*, 80 Cal. App.

24  4th 170 (2000), defendants who used the internet to send material intended to seduce a child

25  have twice made Target's argument with respect to a California statute that penalized sending

26

27  [11] *See, e.g.*, http://www.freeadvice.com.
    [12] Cal. Bus. & Prof. Code §6157.1.

28  [13] State Bar of Calif. Stdg Comm. On Prof. Responsibility & Conduct, Formal Op. #2005-168; State Bar of
    California Stdg Comm. On Prof. Responsibility & Conduct, Formal Op. # 2001-155.

---

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    21

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

such materials "by any means."  In both instances, the court concluded that logging on to the internet does not put a defendant beyond the reach of California law.  *Hsu*, 82 Cal. App. 4th at 984-85; *Hatch*, 80 Cal. App. 4th at 194-95.[14]  Moreover, both concluded that there was no protected right of commerce at issue.  *Hsu*, 82 Cal. App. 4th at 985; *Hatch*, 80 Cal. App. 4th at 196.  As stated in *Hsu*, "it is difficult to conceive of any legitimate commerce that would be burdened by penalizing the transmission of harmful sexual material to known minors in order to seduce them."  *Hsu*, 82 Cal. App. 4th at 984.  So, too, it is hard to conceive of any legitimate commerce that is burdened by requiring that commercial websites be accessible to the blind.

For its extraordinary proposal that all conduct on the internet is beyond the reach of state law, Target cites as its sole authority *American Library Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997), which struck down as a burden on interstate commerce a statute making it a crime to use the internet to disseminate obscene materials to minors and which concluded that "the Internet is one of those areas of commerce that must be marked off as a national preserve to protect users from inconsistent legislation."  *Id.* at 169.  As observed, however, in *Ford Motor Co.*, *Hsu* and *Hatch,* whatever force of logic *Pataki* may have when applied to statutes directly regulating the internet, it has none with respect to statutes that only indirectly affect the internet.[15]  Moreover, *Pataki* has met with less than universal acceptance, as other courts in California and elsewhere have upheld state "anti-spam" statutes in the face of interstate commerce challenges.  *See, e.g., Ferguson v. Friendfinders, Inc.,* 94 Cal. App. 4th 1255 (2002); *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818 (Md. 2006); *State v. Heckel,* 24 P.3d 404 (Wash. 2001), *cert. denied*, 534 U.S. 997 (2001).

Target, however, argues that if it made its website accessible to comply with the Unruh Act and DPA, then those statutes would be controlling conduct beyond the boundaries of

---

[14] Other courts have reached similar conclusions concerning "luring" statutes of other states that are violated by conduct on the internet.  *See Cashatt v. State,* 873 So. 2d 430, 436 (Fla. Dist. Ct. App. 2004); *State v. Backlund,* 672 N.W.2d 431, 438 (N.D. 2003); *State v. Snyder,* 801 N.E.2d 876, 886 (Ohio Ct. App. 2003); *People v. Foley,* 731 N.E.2d 123 (NY. 2000).

[15] The *Pataki* court labored under the misapprehension that state laws applying to railroads, trucks and highways are *per se* violations of the interstate commerce clause.  Rather, such laws are subject to the same balancing test as any other state law addressed to traditional state law concerns.  *See, e.g., Kassel v. Consol. Freightways Corp. of Del.,* 450 U.S. 662 (1981); *Bibb v. Navajo Freight Lines,* 359 U.S. 520 (1959).

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                22

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1  California.  Citing a case that struck down a state statute that *directly* regulated interstate

2  commerce, *Healy v. Beer Inst., Inc.,* 491 U.S. 324 (1989), Target posits that all state statutes that

3  have the effect of controlling conduct beyond the state's boundaries are *per se* unconstitutional.

4  Def. Mem. at 7-8 (citing *Healy*, 491 U.S. at 336).  That proposition is factually and legally

5  unsound.

6      In *Healy*, the Court struck down a state beer pricing statute which in essence required

7  beer shippers to seek permission from on State with regard to the prices of beer being sold in

8  other states, with the practical effect of creating "price gridlock" across the several states. *Id.* at

9  333, 337-339.  Nothing of the kind is occurring here.  Compliance with the Unruh Act and

10  Disabled Persons Act does not impermissibly burden, and need not even impact, Target's

11  conduct in other states.  For example, Target's website already uses a similar method to comply

12  with another state law, California's privacy law: it has created a link on its home page to a page

13  advising California's residents of their privacy rights.[16]  Similarly, no barrier appears to exist to

14  Target creating a link to a duplicate, fully accessible site that would allow purchases to be made

15  by consumers whose billing or shipping address was in California.  In that manner, if Target

16  insisted on continuing to exclude blind people in other States, Californians could use a fully

17  accessible target.com and Target would be free to force everyone else to use the existing

18  inaccessible site.  Wholly out-of-state transactions would thus be unaffected by compliance with

19  the Unruh Act and DPA.[17]

20      But even if Target could only comply by creating a single accessible site for all users, no

21  constitutional vice would attach to California's anti-discrimination laws.  Many state statutes

22  whose practical effect is to regulate conduct outside its borders have survived judicial scrutiny.

23  For example, in *Head*, 374 U.S. 424, the Supreme Court upheld a New Mexico law that

24  prohibited a New Mexico radio station and a newspaper that also served parts of Texas from

25

---

26  [16] *See* http://www.target.com (home page) and http://sites.target.com/site/en/spot/page.jsp?title=privacy_policy_ca
(California privacy page), attached hereto as Exhibits 1 and 3.  As noted above, the court may consider the contents
27  of Target's web page without converting the motion to one for summary judgment.  *See Branch,* 14 F.3d at 453-54;
*Van Winkle,* 290 F. Supp. 2d at 1162 n.2.
28  [17] So, too, Ford Motor Co. could have changed its web page to indicate that Texas consumers wishing to buy from
"the Showroom" must do so through a Texas dealer.

---

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    23

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

1  advertising a Texas optometrist's eyeglass prices.  The Court readily acknowledged that the

2  application of New Mexico's law affected commercial transactions wholly outside the state, but

3  explained that "[a] state law may not be struck down on the mere showing that its administration

4  affects interstate commerce in some way."  *Id.* at 429.

5          Indeed, in *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520 (1959), the Supreme Court

6  acknowledged that it had repeatedly upheld state law restrictions on the weight and size of

7  trucks, even when those laws could require an interstate motor carrier "to replace all equipment

8  or keep out of the state."  *Bibb*, 359 U.S. at 526.  While complying with the most onerous state

9  size and weight regulation would necessarily affect a truck's activity in other states, the Court

10  saw no constitutional defect, because by meeting the most demanding requirement of any state,

11  the trucking company could "pass muster" in all.  *Id.*  The constitutional line is only crossed,

12  when, as in *Bibb*, compliance with one state's law is a violation of another's.  *See S. D. Myers*,

13  253 F.3d at 469-70 (plaintiff must present evidence of conflicting legislation to establish an

14  unconstitutional burden on interstate commerce).

15          The Supreme Court has long emphasized this distinction in the context of state

16  discrimination laws.  In *Colo. Anti-Discrimination Comm'n v. Cont'l Air Lines, Inc.*, 372 U.S.

17  714 (1963), the Court concluded that a state anti-discrimination law, when applied to the hiring

18  of pilots for a national airline, did not create a practical interference with commerce, because no

19  other states could bar pilots based on their color.  *Cont'l Air Lines*, 372 U.S. at 721.  Target has

20  pointed to no statute of another state that requires websites to discriminate against the disabled.

21  Thus, even if the Unruh Act and DPA are the most stringent of state statutes applicable to the

22  internet and even if compliance with the most stringent statutes necessarily affects conduct

23  wholly within another state, the statutes are not thereby unconstitutional.[18]

24

25

26

27  _____
[18] Thus, the State Bar concluded that a law firm's website may be subject to regulation by all states in which the law firm is located or members of the firm are licensed, thus requiring the website to conform to whichever state's rules against deceptive advertising were the most stringent.  State Bar of California Stdg Comm. on Prof. Responsibility & Conduct, Formal Op. # 2001-155.

28

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**                    24

1    **IV.     CONCLUSION**

2        For all the foregoing reasons, defendant's motion should be denied.

3    DATED:        June 12, 2006              DISABILITY RIGHTS ADVOCATES
                                            LAURENCE W. PARADIS
4                                            MAZEN M. BASRAWI

5                                            SCHNEIDER & WALLACE
                                            TODD M. SCHNEIDER
6                                            JOSHUA KONECKY

7                                            BROWN, GOLDSTEIN & LEVY, LLP
                                            DANIEL F. GOLDSTEIN (*pro hac vice*)
8
                                            By:     /s/ Laurence W. Paradis
9                                                   Laurence W. Paradis
                                                   Attorneys for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
510.665.8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opposition to Defendant Target Corporation's Motion To Dismiss**          25

EXHIBIT 1




**TARGET.**

CART    MY ACCOUNT    REDCARDS    HELP

TARGET PHOTO    STORE LOCATOR    WEEKLY AD

CLUB WEDD REGISTRY    TARGET BABY REGISTRY    WISH LIST    GIFT FINDER    GIFTCARDS

Women ⌄ | Men ⌄ | Baby ⌄ | Kids ⌄ | Home ⌄ | Bed + Bath ⌄ | Furniture ⌄ | Patio + Garden ⌄ | Sports ⌄ | Toys ⌄ | Electronics ⌄ | Entertainment ⌄

Can we help you find something? **Search**  [_____]  **GO** ▶        ⟩ Sign in    New guest? ⟩ Start here

**This Week** at Target.com

**Furniture Collections** ⟩:
Free shipping on select styles.

- - - - - - - - - -

**Women's Clothing + Shoes** ⟩:
Spend $50, get free shipping.

- - - - - - - - - -

**Get 10% Off In Store** ⟩:
Plus 10% off online when you are approved for a REDcard℠.

- - - - - - - - - -

**Weekly Ad** ⟩:
Find tons of deals on gifts for dad.

**Shop** Target.com

**Gift Finder** ⟩
**Season's Picks** ⟩:
**Red Hot Shop** ⟩:
**Home** ⟩
▸ Bedding
▸ Kitchen + Housewares
▸ Patio + Garden
▸ Home Décor
▸ Lighting
▸ Rugs
▸ Window Coverings
▸ Slipcovers
▸ Appliances
▸ Bath
▸ Dining
▸ Home Improvement
▸ Health + Beauty
▸ Pets
▸ See All

**Furniture** ⟩:
▸ Bedroom
▸ Living Room
▸ Kitchen + Dining
▸ Home Office
▸ See All

# tech your pick

**save up to 20%**\* on the hottest choices in electronics ⟩:






| | | |
|---|---|---|
| iPod ⟩: | MP3 Players + More ⟩: | Cameras + Camcorders ⟩: |
| Samsung ⟩: | Audio ⟩: | Digital Photo Frames ⟩: |
| Canon ⟩: | TVs ⟩: | Home Office ⟩: |
| Panasonic ⟩: | DVD Players ⟩: | Video Games ⟩: |

\*Sale ends 6/10/06. Save 5%-20%.

**Free shipping**\* in Women's on orders over $50.        \*Free shipping details ⟩





| Clothing ⟩: | Swim Shop ⟩: | Shoes ⟩: |
|---|---|---|
| • Dresses | • Halter Tops | • Flip Flops |
| • Skirts | • Tankini Tops | • Casual Sandals |
| • Gauchos | • Triangle Tops | • Wedges |
| • Tops | • See All ⟩ | • Flats |
| • See All ⟩ | | • See All ⟩ |

## Baby ›
› **Furniture**
› **Nursery**
› **Baby Gear**
› See All

## Kids ›
› **Girls' Clothing**
› **Boys' Clothing**
› **Kids' Room**
› See All

## Women ›
› **Clothing**
› **Maternity**
› **Shoes**
› **Jewelry**
› See All

## Men ›
› **Pants**
› **Shirts**
› See All

## Electronics ›
› **Digital Cameras**
› **Audio**
› **Televisions**
› **Home Office**
› **Video Games**
› See All

## Sports ›
› **Exercise + Fitness**
› **Outdoor Sports**
› **Camping**
› See All

## Toys ›
› **Sports + Outdoor Play**
› **Learning Toys**
› **Shop by Age**
› See All

## Entertainment ›
› **DVD Movies**
› **Music**
› **Books**
› See All

## Gift Finder ›

## Party Supplies ›

## See All Departments ›

## Clearance ›



**Home.** **Free shipping** on select items:    Free shipping details ›





**$39.99**
Chicago Cutlery 10-pc. Set ›

**Shop All Kitchen**
from $14.99

**$39.99**
Hamilton Beach Electric Slicer ›

**Shop All Appliances**
from $19.99

**$22.99-$279.99**
Ultra Woven Rug - Desert Tan ›

**Shop All Rugs**
from $29.99

**Kids.** Find sunny deals on summer-fun essentials.





**Outdoor Toys**
- Riding Toys from $24.99
- Playhouses + Climbers from $69.99
- Swingsets + Gyms from $119.99
- Inflatable Bouncers from $19.99
- See All >

**Kids' Sports**
- Bikes from $59.99
- Baseball + Teeball from $9.99
- Manual Scooters from $29.99
- Water Toys from $12.99
- See All >

**Kids' Clothing**
- Girls' Clothing from $7.99
- Boys' Clothing from $7.99
- Kids' Shoes from $12.99

## E-mail Exclusives.

Get news and special
offers from Target.

**Sign up now ❖**



anyone.
anywhere.
**anytime.**

**Give a GiftCard ❖**



### The REDcards℠

❯ Apply for a Card

❯ Target Business Card

### Help

❯ Shipping Rates +
  Policies

❯ Track an Order

❯ Update an Order

❯ Return an Item

❯ Product Rebates

❯ Product Recalls

❯ Contact Us

❯ Shopping Directory

More»

### Target Stores

❯ Store Locator

❯ Grocery
  Coupons

❯ Photo Center

❯ Portrait Studio

❯ Weekly Ad

❯ Optical

❯ Pharmacy

❯ Promotions

More»

**Stronger together.**
❯ Learn what Target is doing in your community

**See yourself here.**
❯ Learn more about working at Target

About Target | Careers | News | Investors | Community | Diversity | Affiliates | Team Member Services

**PRIVACY** | Terms + Conditions
California Privacy Rights

©2006 Target.com. All rights reserved.
The Bullseye Design and Bullseye Dog are trademarks of Target Brands, Inc.
Powered by Amazon.com

EXHIBIT 2



# Sign in or create a Target.com account.

| Returning Guests | New Guests |
|---|---|
| If you have an account with Target.com, please sign in. | If you don't have an account with Target.com, please create one. |

**I want to sign in with my:**

- ○ Target.com account.
- ○ Amazon.com account. (Learn more)

**Your e-mail address:**

**Your password:**

**Sign In**   **Create a New Account**

› Forgot your password?

› Has your e-mail address changed since your last order?

› Having trouble signing in? You can use our unsecured standard server.

You don't need a credit card to create an account. Payment information isn't required until you make a purchase.

Your shopping experience is safe with us. Read the Target.com Safe Shopping Guarantee.

Redeeming an e-GiftCard or promotional code? You'll be asked to enter it on the Review and Purchase page.

Having difficulties? We're here to help. E-mail us or call (800) 591-3869.

EXHIBIT 3



**Your California Privacy Rights**

Under California law, California residents who have an established business relationship with Target, may choose to opt out of Target disclosing personal information about them to third parties for marketing purposes.

For purposes of this opt-out option:

- "Target" means Target Stores and the Target website, and
- "Third Party" means:
  - a business that is outside the Target family, and
  - a Target Corporation business (Target National Bank, Target Bank, Target Stores and Target.com)

If you choose to opt out, Target will not disclose your personal information to a Third Party for marketing purposes. As a result, you will not receive direct mail, telephone or e-mail solicitations for products or services from:

1. a business outside the Target family
2. Target National Bank, Target Bank, Target Stores or Target.com

To opt out, please do the following:

- Contact Target Guest Relations at 1-800-440-0680 (M-F, 7:00 a.m.-6:00 p.m. CST)
- Tell the telephone rep that you would like to opt out of Target sharing your information with a third party AND that you would like to opt out of receiving direct mail, telephone and e-mail solicitations from Target Corporation.

Your opt out request will be processed within 30 days of the date it was received. Once you have opted out, you do not need to do so again.

For more information about the Target.com online privacy policy, click here.
For more information about the Target National Bank privacy policy, click here.

### Privacy
### Pharmacy Privacy
### Terms + Conditions
**California Privacy Rights**

anyone.
anywhere.
**anytime.**

Give a GiftCard >



©2006 Target.com. All rights reserved.
The Bullseye Design and Bullseye Dog are trademarks of Target Brands, Inc.

**PRIVACY** | Terms + Conditions
California Privacy Rights
102 : 2