# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JUN 28 1999
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
    DEPUTY CLERK

| | |
|---|---|
| HAROLD R. HOOKS, a.k.a. Ray Hooks, ) | |
| Plaintiff, ) | |
| V. ) | Civil Action No. SA-99-CA-214-EP |
| OKBRIDGE, INC., ) | |
| Defendant. ) | |

**ORDER GRANTING SUMMARY JUDGMENT**

On this date came to be considered the defendant's motion to dismiss or alternatively motion for summary judgment, filed April 20, 1999, the plaintiff's response, filed May 24, 1999, the plaintiff's corrected response, filed May 28, 1999, and the defendant's reply to the plaintiff's response, filed June 10, 1999 in the above-styled and numbered cause. After careful consideration, the Court is of the opinion that the motion should be granted.

**Facts and Procedural Background**

Plaintiff Harold R. Hooks, a.k.a. Ray Hooks ("Hooks") has sued OKbridge, Incorporated ("OKbridge"), alleging that he was discriminated against in violation of the Americans with Disabilities Act (ADA), by the alleged failure of OKbridge to accommodate Hook's mental disability in accordance with the ADA's public accommodations provisions under Title III. Hooks has a

bipolar disorder, depression and a narcissistic personality disorder.

OKbridge operates an on-line bridge game, website, and provides other Internet-based services related to bridge. Hooks became a member of OKbridge on July 22, 1997. On November 1, 1997, Hooks upgraded his membership to the tournament level. On July 22, 1998, Hooks purchased another standard, one-year membership. On August 7, 1998, Hooks once again upgraded his membership to the tournament level. OKbridge requires all members to abide by OKbridge's rules, and OKbridge reserves the right to refuse service to anyone.

Hooks alleges he was an active bridge player in both the non-tournament and tournament areas of OKbridge. Hooks also frequently posted messages to Discuss, OKbridge's Internet-based forum for the discussion of bridge rules, etiquette, and hand playing. Hooks frequently posted disturbing and offensive messages. His messages were offensive to other OKbridge members to whom the messages were directed, as well as to other readers of the Discuss forum. Hooks also frequently posted disparaging, vulgar, and rude complaints about OKbridge's owner, management, and products to the Discuss forum. Other OKbridge members posted messages to the Discuss forum complaining about Hooks' behavior.

During a tournament on October 4, 1998,[1] Hooks received

---

[1] October 4, 1998 is the date that the defendant claimed this tournament occurred where the plaintiff violated the rules, whether purposefully or inadvertently. The plaintiff disputes that this is the correct date. However, the defendant offers

2

000334

EXHIBIT __K__ PAGE __143__

communication from his partner after the game had started, in clear violation of the OKbridge tournament rules. Hooks alleges that this violation was inadvertent; he claims that his opponents mistook Internet technical difficulties for a deliberate attempt by Hooks and his partner to avoid getting a bad score. OKbridge terminated plaintiff on October 22, 1998, stating that this was a result of "Hooks' continued abusive, vulgar, and disruptive behavior" and his "violation of OKbridge tournament rules." Hooks claims that the termination was due to discrimination because of his disability, and he subsequently filed this lawsuit.

**Summary Judgment Standard**

A party is entitled to Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) when it demonstrates on the record that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. In meeting this burden, the movant needs only present or designate evidence which negates or disproves "the existence of any essential element of the opposing party's claim." Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). When a Summary Judgment motion is properly supported, the opposing party may not rest on the allegations or denials of its pleadings, but must come forward with sufficient evidence to demonstrate a "genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510

---

proof that this is the correct date, and the plaintiff offers no proof to rebut it.

3

000335

EXHIBIT ___K___ PAGE __144__

(1986).

To defeat a defendant's Summary Judgment motion, a plaintiff must direct the District Court's attention to evidence sufficient to establish a genuine issue of fact as to each material element on which plaintiff would bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552(1986). A dispute concerning a material fact is "genuine" and sufficient to overcome a Summary Judgment motion "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. Summary Judgment may be granted where "the [nonmovant's] evidence is merely colorable, or is not significantly probative." 477 U.S. at 249-50, 106 S. Ct. at 2511. Summary Judgment will be granted for the Defendants in this case.

**Americans With Disabilities Act ("ADA")**

The McDonnell Douglas burden-shifting analysis first used in Title VII cases applies to ADA claims. See Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir. 1995), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Once an ADA claimant has laid out a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Daigle, 70 F.3d at 396. The defendant need not prove the legitimate reason, but it must produce some evidence to support it. St. Mary's Honor

4

Center v. Hicks, 509 U.S. 502 (1993); Daigle, 70 F.3d at 396. If the defendant does so, the plaintiff then must show that the defendant's nondiscriminatory reason is mere pretext, and that discriminatory intent actually motivated the defendant. Id.

To qualify for relief under the ADA, a worker must establish that he is (1) "disabled" within the meaning of the act; (2) qualified (with no more than a reasonable accommodation) to perform the essential functions of the job and; (3) suffering from an adverse employment action because of his disability. 42 U.S.C. § 12101; Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir. 1993) cert denied, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994).

**Analysis**

Assuming arguendo that Hooks could establish each of the elements of his prima facie case, defendant has articulated a legitimate, nondiscriminatory reason for Hooks' termination, warranting the granting of summary judgment under the Burdine framework.[2] The defendant terminated Hooks because Hooks frequently posted "obscene, vulgar, and rude" messages to the Discuss forum. His messages were disturbing, abusive and offensive to other OKbridge members to whom the messages were directed, as well as to other readers of the Discuss forum. Other OKbridge members posted messages to the Discuss forum complaining about

---

[2]Actually, the defendant has offered two legitimate, nondiscriminatory reasons for terminating Hooks, each which would have been enough in and of itself.

5

Hooks' behavior. Hooks acknowledges that his statements were abusive and intrusive but claims that his statements were that way because of his disability, and he should not have been terminated because of his "conduct symptomatic to his disability." *Plaintiff's Complaint, Par. 28.* This argument is meritless.

Additionally, the defendant terminated Hooks because during a tournament in October 1998, Hooks received communications from his partner after the game had started, in clear violation of the OKbridge tournament rules. In his Complaint, Hooks acknowledges that he was accused of cheating. *Plaintiff's Complaint, par. 18.* However, he states that he had Internet technical difficulties which his opponents mistook for a deliberate attempt by him and his partner to avoid getting a bad score. *Id.* OKbridge subsequently terminated plaintiff for violating OKbridge rules.

Erroneous or even arbitrary personnel decisions do not offend the ADA because that statute only prevents employment decisions motivated by a discriminatory motive. Cf. E.E.O.C. v. Texas Instruments, Inc., 100 F.3d 1173, 1182 (5th Cir. 1996); Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995); Ray v. Tandem Computers, Inc., 63 F.3d 429, 435 n. 19 (5th Cir. 1995). As long as defendant's motive was not discriminatory in violation of the law, this Court will not question the bases for defendant's decision to terminate Plaintiff. See Texas Instruments, 100 F.3d at 1182-83; Mayberry, 55 F.3d at 1091 ("[Plaintiff] misses the mark. The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory

6

000338
EXHIBIT __K__ PAGE __147__

motive."); Waggoner v. City of Garland, 987 F.2d 1160, 1165 (5th Cir. 1993). The defendant offers legitimate and nondiscriminatory reasons for terminating Hooks. Furthermore, although Plaintiff argues that he was terminated as a direct result of his disability, "an employee may not 'bootstrap his disease into the line of causation' by showing that the misconduct relied upon by the employer was caused by the disability." Den Hartog v. Wasatch Academy, 909 F.Supp. 1393, 1401 (D.Utah 1995) (quoting Siefken v. Village of Arlington Heights, 65 F.3d 664, 666 (7th Cir. 1995)). There is an important distinction between discharging an employee for unacceptable conduct and discharging an employee because of a disability. See McKey v. Occidental Chem. Corp., 956 F.Supp. 1313, 1319 (S.D.Tex. 1997); see also Maddox v. University of Tennessee, 62 F.3d 843, 848(6th Cir. 1995); Despears v. Milwaukee County, 63 F.3d 635, 637 (7th Cir. 1995) (Posner, C.J.); Collings v. Longview Fibre Co., 63 F.3d 828, 832 (9th Cir. 1995).

Having decided that defendant has provided a legitimate, nondiscriminatory reason for termination, the Court now turns to the issue of pretext. Plaintiff has failed to present any evidence to support an argument that defendant's proffered reason for Plaintiff's termination is pretextual. Plaintiff's evidence consists of: Exhibit 1, "Results of Tournament Play, 9/30/98; Exhibit 2, Hooks' Affidavit, which discusses solely the manner in which Hooks served the defendant--it mentions nothing else; Exhibit 3, An ad from the ACBL Bulletin; Exhibit 4, OKbridge Associated

Program.³  This evidence does not support an argument that defendant's proffered reason for plaintiff's termination is pretextual.  Therefore, summary judgment must be granted in favor of the defendant.⁴

Conclusion

Accordingly, it is hereby ORDERED that Defendant's Motion for Summary Judgment is GRANTED and this case is DISMISSED.

It is FURTHER ORDERED that all pending motions are DENIED AS MOOT.

SIGNED and ENTERED this 28 day of June, 1999.

*[signature]*
EDWARD C. PRADO
UNITED STATES DISTRICT JUDGE

---

³The Court notes that Hooks' exhibits one, three, and four are improper summary judgment evidence because they have not been properly authenticated under the Federal Rules of Evidence; they are attached without any accompanying affidavit or proper deposition excerpts mentioning them.  However, assuming they were proper summary judgment evidence, they are not evidence which supports an argument that defendant's proffered reason for Hooks' termination is pretextual.

⁴"Speculation and belief are insufficient to create a fact issue as to pretext."  McKey, 956 F.Supp. at 1319.  It is well-settled that conclusory statements by the plaintiff that the defendant discriminated against the plaintiff will not suffice.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc ); see also Ray, 63 F.3d at 434 (stating that "bald assertions of age discrimination are inadequate to permit a finding that proscribed discrimination motivated [Defendant's] actions against [Plaintiff]").

8

nnn340
EXHIBIT  K  PAGE 149

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
AUG - 4 1999
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

HAROLD R. HOOKS, a.k.a. Ray )
Hooks, )
          )
    Plaintiff, )
          )
V.        ) Civil Action No. SA-99-CA-214-EP
          )
OKBRIDGE, INC., )
          )
    Defendant. )

ORDER

On this date came to be considered the plaintiff's motion to vacate and set aside judgment, filed July 8, 1999, the plaintiff's amended motion to vacate and set aside judgment or in the alternative motion for relief from judgment, filed July 14, 1999, the defendant's response and motion to strike plaintiff's third affidavit, filed July 16, 1999, the plaintiff's reply to defendant's response and to defendant's motion to strike, filed July 26, 1999, the corrected plaintiff's reply, filed July 27, 1999, and the defendant's second response, filed July 29, 1999 in the above-styled and numbered cause. After careful consideration, the Court is of the opinion that the motion should be denied.

The plaintiff, Harold R. Hooks, states several reasons why the judgment in this case should be vacated. Hooks argues that it was improper for the Court to use ADA Title I employment standards to resolve a Title III service discrimination complaint. There are several points to be made with regard to this issue. First, it was

1

not improper for this Court to borrow from the Americans with Disabilities Act (ADA) standard under Title I dealing with employment situations in deciding this ADA Title III case. As the Fifth Circuit Court of Appeals noted in comparing these two provisions in an ADA Title III case, "In light of the statutes' parallel language, we find no basis for distinguishing their respective burdens of proof." Johnson v. Gambrinus Co./Spoetzl Brewery, 116 F.3d 1052, 1059 (5th Cir. 1997).

However, despite the fact that it was not improper for the Court to borrow the Title I ADA standard for this Title III case, the Court will now examine all of the previously submitted pleadings and evidence under the Title III standard. The factual background to this case has already been summarized in this Court's Order granting summary judgment, so this Court need not repeat it here. However, the Court notes a few additional facts. At the time of Hooks' application to Defendant OKbridge, Inc. (OKbridge), Hooks did not state or disclose that he was disabled in any manner, nor did he request an accommodation from OKbridge. He requested an accommodation in membership only after OKbridge terminated his membership for violating the rules and for his history of abusive and harassing communications to other OKbridge members. After he was terminated, Hooks indicated to OKbridge that the reason he behaved the way he did was that he had a "bipolar" disorder. OKbridge could not have known that Hooks wanted an accommodation of some type until after he requested one. OKbridge offered Hooks certain accommodations so as to rejoin OKbridge, but he rejected

000454

EXHIBIT __K__ PAGE __151__

these and filed this lawsuit instead.

The only relief this Court could issue under Title III of the ADA is injunctive relief, namely Hooks' membership reinstatement into OKbridge. However, there are limits on what accommodations are required in complying with the standards set out under the ADA. Any accommodation under the ADA has to be reasonable. Assuming arguendo that a public accommodation is applicable in this case, Section 12182(b)(2)(A)(ii) of the ADA limits modifications if a covered entity can show that such requested modifications would "fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

In the instant case, the defendant has offered an abundance of evidence that it terminated Hooks because Hooks frequently posted "obscene, vulgar, and rude" messages to the Discuss forum. Hooks' messages were disturbing, abusive and offensive to other OKbridge members to whom the messages were directed, as well as to other readers of the Discuss forum. Other OKbridge members posted messages to the Discuss forum complaining about Hooks' behavior. Hooks himself even acknowledges that his statements were abusive and intrusive but claims that his statements were that way because of his disability, and he should not have been terminated because of his "conduct symptomatic to his disability." Plaintiff's Complaint, Par. 28.

OKbridge has clearly offered much evidence that participation by Hooks as a member in OKbridge would not be a reasonable accommodation. It would "fundamentally alter" the nature of their

3

services because participation by Hooks in either the discussion or card playing arenas would detrimentally impact the congenial, hospitable and sportsmanlike atmosphere promoted by OKbridge and impinge on the reputation of OKbridge. Hooks has not provided any summary judgment evidence to indicate that allowing him to participate would be reasonable or that it would not fundamentally alter the nature of OKbridge. In fact Hooks offers no relevant summary judgment evidence. In his response to defendant's motion for summary judgment, Hooks' only summary judgment evidence consisted of: Exhibit 1, Results of Tournament Play, 9/30/98; Exhibit 2, Hooks' affidavit, which discusses solely the manner in which Hooks served the defendant--it mentions nothing else; Exhibit 3, an ad from the ACBL Bulletin; Exhibit 4, OKbridge Associated program. This evidence does not even discuss Hooks' behavior or his e-mails.

Furthermore, Hooks was accused of cheating and OKbridge claims that was another reason that it terminated Hooks' membership. Hooks offers no summary judgment evidence indicating that he did not cheat or that the defendant's accusation was false. Allowing Hooks to remain a member of OKbridge under these circumstances would not be a reasonable accommodation.

Since Hooks has provided no summary judgment evidence discussing his conduct or showing that allowing him to participate in OKbridge would be a reasonable accommodation, he has failed to defeat the defendant's motion for summary judgment under Title III of the ADA.

4

000456

EXHIBIT K PAGE 153

In his motion to vacate judgment Hooks has now offered an affidavit stating that he denies "having engaged in any conduct that would amount to a disruption of OKbridge discussion and play and having disrupted the sportsmanlike and ethical atmosphere of OKbridge for other members." He further states that he denies that he often complained during tournament play or that he encouraged other members to be disruptive. First, the Court need not considered this evidence since it is untimely and was not submitted to this Court until after the case was dismissed. However, even if this Court disregards the fact that the affidavit was untimely, the affidavit does not help Hooks' case because Hooks just makes conclusory, self-serving statements which are not proper summary judgment evidence. His affidavit does not in any way show that his comments were not disruptive, abusive and vulgar. Furthermore, Hooks does not even attempt to explain why he was accused of cheating in his affidavit. Hooks also attaches a few e-mails to his motion to vacate, but they are not relevant to the issue of his conduct, and, furthermore, they are inadmissible hearsay. Furthermore, they were not attached to Hooks' original responses and replies to the defendant's motion for summary judgment. For these reasons, Hooks' motion to vacate must be denied.

Hooks also gives other reasons as to why the motion to vacate should be granted. He claims that the Court failed to rule on his motion to strike defendant's reply to plaintiff's response to defendant's motion for summary judgment, and therefore the Court should vacate its judgment. He also claims that the Court failed

000457

EXHIBIT __K__ PAGE __154__

to rule on or grant his motion for a 30 day stay in the proceedings, and that the Court failed to give him an adequate amount of time for discovery, so the judgment should be vacated. However, these arguments are meritless. First, once a court rules on a dispositive motion and dismisses the case entirely, all pending pre-trial motions are rendered moot. Furthermore, Hooks was given plenty of time to respond to the defendant's motion for summary judgment, filed April 20, 1999. The Court granted Hooks' first motion for an extension of time to respond to the defendant's motion for summary judgment, and it gave the plaintiff until May 24, 1999 to respond to the motion. Furthermore, the Court then waited an additional month to rule on the motion, allowing Hooks another month to file more responses and replies, which he definitely did. In fact, between April 20, 1999, when defendant filed its dispositive motion, until June 28, 1999, when the Court ruled on the motion, Hooks filed ten notices, pleadings, or motions in response to defendant's dispositive motion. Thus, Hooks' argument that he did not receive due process lacks merit. Furthermore, Hooks never requested discovery to respond to defendant's motion for summary judgment. To be entitled to additional time to obtain discovery to oppose a motion for summary judgment, the opposing party must demonstrate how additional time and discovery will enable him to rebut the movant's allegations of no genuine issue of material fact. Hicks v. Brysch, 989 F.Supp 797, 809 and n.58 (W.D. Tex. 1997). As in Hicks, Hooks has not presented this court with any specific factual allegations

6

establishing either that he has diligently sought any relevant information that could help him oppose defendant's motion for summary judgment or that there exists any information that could help him establish the non-frivolous nature of his claims. Hicks, 989 F.Supp at 809 and n.59.

Plaintiff's fifth point has already been addressed by this Court in this Order and in its Order granting summary judgment so the Court need not address it again now. Plaintiff's six point lacks merit and the Court need not address the issue. For the reasons stated, Hooks' motion to vacate must be denied.

This Court notes that it in discussing the defendant's motion for summary judgment and the plaintiff's motion to vacate, this Court has been assuming that the defendant is covered under the ADA. However, another reason to dismiss this case is that the defendant is not covered under the ADA. The defendant is exempted from coverage under the ADA because (1) it is not a place of public accommodation and (2) it is a private club. 42 U.S.C. § 12181. The ADA's regulations define a "place of public accommodation" as a "facility, operated by a private entity, whose operations affect commerce and fall within at least one of the following categories. . ." 28 C.F.R. § 36.104 (1998); 42 U.S.C. § 12181(7). If there is no physical structure or facility, there is no place of public accommodation and Title III of the ADA is not applicable. See Welsh v. Boy Scouts of America, 993 F.2d 1267 (7th Cir. 1993).

Furthermore, defendant is a private club and is therefore exempted from coverage under the ADA. A very important factor to

000459

EXHIBIT K PAGE 156

consider in determining whether a club is a private or public club for purposes of the ADA is the selectivity of the group. Here, we are dealing with a bridge club that charges dues and requires that its members know how to play bridge, a complicated and difficult game. Although there are no formal requirements that its members know how to play bridge, the club offers no lessons, and bridge is not the type of game that one can play without instruction. In effect, one must know how to play bridge in order to join the club. For these reasons, OKbridge is not covered under the ADA and this case must remain dismissed for that reason. Furthermore, even if OKbridge were covered under the ADA, the defendant's motion for summary judgment was properly granted, and the motion to vacate must be denied.

Accordingly, it is hereby ORDERED that the plaintiff's motion to vacate judgment is DENIED.

SIGNED and ENTERED this 4th day of August, 1999.

EDWARD C. PRADO
UNITED STATES DISTRICT JUDGE

8

000460

EXHIBIT K  PAGE 157