1  LAURENCE W. PARADIS (California Bar No. 122336)
   lparadis@dralegal.org
2  MAZEN M. BASRAWI (California Bar No. 235475)
   mbasrawi@dralegal.org
3  DISABILITY RIGHTS ADVOCATES
   2001 Center Street, Third Floor
4  Berkeley, California 94704
   Telephone:   (510) 665-8644
5  Facsimile:   (510) 665-8511
   TTY:         (510) 665-8716
6
   TODD M. SCHNEIDER (California Bar No. 158253)
7  tschneider@schneiderwallace.com
   JOSHUA KONECKY (California Bar No. 182897)
8  jkonecky@schneiderwallace.com
   SCHNEIDER & WALLACE
9  180 Montgomery Street, Suite 2000
   San Francisco, CA 94104
10 Telephone:   (415) 421-7100
   Fax:         (415) 421-7105
11 TTY:         (415) 421-1655

12 DANIEL F. GOLDSTEIN (*pro hac vice*)
   dfg@browngold.com
13 BROWN, GOLDSTEIN & LEVY, LLP
   120 E. Baltimore St., Suite 1700
14 Baltimore, MD 21202
   Telephone:   (410) 962-1030
15 Fax:         (410) 385-0869

16
17                     **UNITED STATES DISTRICT COURT**
18                     **NORTHERN DISTRICT OF CALIFORNIA**
19                          **SAN FRANCISCO DIVISION**

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, the NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, on behalf of their members, and Bruce F. Sexton, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No.: C 06-01802 MHP<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: July 24, 2006<br>Time: 2:00 p.m.<br>Judge: The Honorable Marilyn Hall Patel |

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 1

    A. The Actual Evidence Clearly Show That Target.com Is Inaccessible To Blind Persons ................................................................................................................... 1

        1. Target Mischaracterizes The Testimony Of NFB's Declarants Regarding Their Experiences Using Target.com ......................................................... 1

        2. Dr. Thatcher Properly Assessed The Accessibility Of Target.com ............ 3

    B. The Steps Needed To Make Target.com At Least Minimally Accessible Are Simple, Clear And Undisputed. ............................................................................. 4

    C. The Testimony Of Target's Blind Declarants Actually Supports NFB's Position. 6

    D. Target.com's 1-800 Number Does Not Alleviate These Barriers.......................... 7

    E. The Extensive Connections Between Target.com And The Physical Stores Are Undisputed. ............................................................................................................ 8

    F. Target Has Acknowledged The Necessity And Feasability Of Removing Barriers On Target.com By Finally Beginning To Take Steps To Address Accessibility Issues ...................................................................................................................... 9

III. ARGUMENT .................................................................................................................. 10

    A. Defendant Should be Enjoined From Its Violation Of State Law ....................... 10

    B. Defendant Should Also Be Enjoined From Violation of the ADA. ..................... 12

IV. INJUNCTIVE RELIEF IS NECESSARY AND APPROPRIATE ................................ 13

V. CONCLUSION ............................................................................................................... 15

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**
i

## TABLE OF AUTHORITIES

**Cases**

*Arnett v. Dal Cielo*, 923 P.2d 1 (1996) .................................................................................... 12

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) ............................................ 12

*Barnes v. Healy,* 980 F.2d 572 (9th Cir. 1992) ............................................................................ 9

*Briefer v. Carnival Corp.,* 1999 U.S. Dist. LEXIS 21256 (D. Ariz. 1999) ................................ 12

*Chabner v. Mutual of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000) .............................. 10

*Cloutier v. Prudential Ins. Co. of America,* 964 F. Supp. 299 (N.D. Cal. 1997) ........................ 12

*Cupolo v Bay Area Rapid Transit,* 5 F. Supp.2d 1079 (N.D. Cal. 1997) ..................................... 9

*Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004) ................................ 14

*Goldman v. Standard Insurance Co.*, 341 F.3d 1023 (9th Cir. 2003) ........................................ 10

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423 (1974) .............................................. 14

*Hankins v. El Torito Restaurants, Inc.*, 63 Cal. App. 4th 510 (1998) ........................................ 11

*Independent Living Resources v. Oregon Arena Corp.*, 1 F.Supp.2d 1159 at 1173 n.16 (D.Or.1998) ........................................................................................................................ 15

*Kotev v. First Colony Life Ins. Co.*, 927 F. Supp. 1316 (C.D.Cal.1996) ................................... 12

*Lentini v. Cal. Center for the Arts*, 370 F.3d 837 (9th Cir. 2004) .............................................. 10

*Lieber v. Macy's West, Inc.*, 80 F. Supp. 2d 1065 (N.D. Cal. 1999) ..................................... 5, 14

*Marsh v. Edwards Theatre Circuit, Inc.*, 64 Cal. App. 3d 881 (1976) ...................................... 11

*Rendon v. Valleycrest Prods., Ltd.,* 294 F.3d 1279 (11th Cir. 2002) ......................................... 12

*Stafford v. Realty Bond Service Corp.,* 249 P.2d 241 (1952) .................................................... 12

*U.S. v. Holtzman,* 762 F.2d 720 (9th Cir. 1985) ........................................................................ 14

*Walker v. Carnival Cruise Lines* , 63 F. Supp. 2d 1083 (N.D. Cal. 1999) ................................. 12

**Statutes**

42 U.S.C. § 12182 ....................................................................................................................... 10

42 U.S.C. §12182 (a) .................................................................................................................. 12

Cal. Civ. Code §51(b) ................................................................................................................. 10

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

ii

Cal. Civ. Code §51(d) .................................................................................................................. 10

Cal. Civ. Code §54.1(a)(1) ........................................................................................................... 11

Cal. Civ. Code §54.1(d) ............................................................................................................... 11

Fed. R. Civ. P 65(d) ..................................................................................................................... 14

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

iii

## I. INTRODUCTION

> *What does "Web accessibility" mean?  To me it means that anyone using any kind of Web browsing technology must be able to visit any site and get a full and complete understanding of the information contained there, as well as have the full and complete ability to interact with the site.*
> — Definition of Web Access from defendant's expert Charles Letourneau

Target's opposition to this motion fails to rebut the following essential points:

- Target is an immense commercial presence in California conducting literally billions of dollars of business in the state through its stores and website

- Target's website is extensively interlinked with Target's physical stores such that customers who can access the website are better able to enjoy the benefits and services of the physical stores

- An entire population group – the blind of America – are being denied full and equal access to such benefits and services because of barriers on the website that could be easily remedied

- Such denial of full and equal access is a violation of fundamental civil rights which by definition results in irreparable injury

Target's opposition papers mischaracterize much of the evidence and misstate the applicable law.  The actual evidence makes clear that the access barriers on Target.com are significantly impeding the ability of blind individuals to freely access the services and products of Target stores, and denying the blind their basic civil rights. Accordingly, a preliminary injunction is both necessary and appropriate.

## II. STATEMENT OF FACTS

### A. <u>The Actual Evidence Clearly Show That Target.com Is Inaccessible To Blind Persons</u>

#### 1. Target Mischaracterizes The Testimony Of NFB's Declarants Regarding Their Experiences Using Target.com

Target repeatedly misrepresents the experiences of NFB's declarants who have tried to use Target.com. *Every one* of these witnesses testified in their depositions that they experienced multiple barriers to accessibility at Target.com to the point that the website is unusable for them.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

1

1  For example, Mr. Sexton testified that he encountered difficulty "[f]rom the very beginning of
2  the site and -- at the very introduction of the site and also throughout the site." Declaration of
3  Bruce Sexton ("Sexton Dep.") at 64:19-23.[1]  He could not find product lines which he was
4  seeking, would spend 15 to 20 minutes "circling around" the site in a vain effort to activate the
5  purchase link, could not place the specific objects he wished to purchase into the website's
6  shopping cart, and could never complete a purchase due to the inaccessible checkout button.
7  Sexton Dep. at 70:11-23; 78:1-4; 88:20-23.

8  Mr. Elder and Mr. Jacobson both testified to similar experiences on Target.com.
9  Deposition of Tim Elder ("Elder Dep.") at 33: 9-15; Deposition of Steve Jacobson ("Jacobson
10 Dep." at 51: 13-20.  Mr. Jacobson also testified that he was unable to activate the checkout
11 button without the assistance of a sighted person, despite trying multiple different approaches. "I
12 could find no way of getting around it."  *Id.* at 57:11-58:11.

13 Ms. Thomas testified that she "couldn't get through [the home page] to browse" and that
14 "every time I clicked on the purchase button and got ready to check out, it wouldn't go."
15 Deposition of Christina Thomas ("Thomas Dep.") at 31:6-11; 32:8-10.  Mr. Stigile similarly
16 testified that he encountered difficulty navigating through the links on the website and that,
17 despite entering information into the search box, "It didn't seem to move to any other page."
18 Deposition of Robert Stigile ("Stigile Dep.") at 30:8-21; 34:4-16.

19 Similarly, Ms. Uttermohlen testified that:

20      When I've gone to the website, I have been unable to read the
        screen in any meaningful way, so I wasn't able to access the
21      product even though I know Target well enough to know that it
        was probably something that I wanted.
22
        …When I hit what I thought would add the item to the cart, a
23      bunch of other products came up and, you know, people who
        bought this also bought kind of products.  And I was not able to
24      locate the [link] that would allow me to actually add it to the cart.
        And then just -- it just turned to garbage.  You know, some of the
25      links were reading, like, cake UPR, garbage, not comprehensible.

26

27

---

28  [1] All deposition testimony cited in this brief is submitted as Exhibits 1 to 10 to the Declaration of Larry Paradis ("Paradis Decl.").

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

2

The Deposition of Teresa Uttermohlen, rough trasncripts ("Uttermohlen Depo.") at 25:9-16; 28:17-25.[2]

## 2. Dr. Thatcher Properly Evaluated the Accessibility Of Target.com

The experts on both sides (Dr. Thatcher for plaintiffs and Mr. Letourneau for Target) agree that there are two primary sets of access guidelines currently applicable to websites: (1) Guidelines promulgated by the World Wide Web Consortium's Web Accessibility Initiative, known as the Web Content Accessibility Guidelines ("WCAG 1.0"); and (2) Standards promulgated by the U.S. Government under Section 508 of the Rehab Act (the "508 Standards").[3]

Target's own expert agrees with Dr. Thatcher that the existing standards under WCAG 1.0 and 508 provide ample guidance on how to make websites accessible to the blind. *See* discussion below. In fact, in his own website Mr. Letourneau states: "The Web Content Accessibility Guidelines developed by the World Wide Web Consortium's Web Accessibility Initiative will provide you with the information you need to accomplish this relatively simple task." Paradis Decl. Ex. 12.

Contrary to Target's opposition, Dr. Thatcher did not create his own standard of access. Dr. Thatcher explained in his deposition that he evaluated Target.com with regard to its accessibility under Section 508 as well as WCAG Versions 1 and 2, and that "Target.com does not comply with any of those standards. . . I would say to really an extreme extent." Thatcher Dep. at 137:7-15.[4]

---

[2] Some of NFB's declarants who tried to overcome such barriers spent an hour or more on Target.com. Others gave up earlier. Ms. Uttermohlen testified: "I was probably on Target.com for a relatively brief period of time the times that I tried because the graphics labeling and other things were so bad that I couldn't make any progress, so it seemed a waste of time to go further." Uttermohlen Dep. 25:18-25.

[3] The standards are currently being updated. Deposition of James Thatcher ("Thatcher Dep.") at 43:19. A new version of the international standards – WCAG 2.0 – is expected to be adopted by the end of this year. *Id.* at 45:20-21. This new version reflects the current consensus of the expert community on website access. and Dr. Thatcher thus looks to WCAG 2.0 as part of his analysis. *Id.* at 81:19-25; 82:8-11.

[4] Defendant wrongly claims that Dr. Thatcher "did not evaluate whether non-compliance with his chosen guidelines rendered the website inaccessible". Dr. Thatcher concluded that Target.com is not compliant with any of the applicable guidelines *and* is not accessible to blind users. *Id*. at 100:21-102:25. He further noted that the sheer *quantity* of noncompliant elements on Target.com contributed to the overall inaccessibility. *Id*. at 108:14-109:1; *see also* Dr. Thatcher's Reply Decl. at p.2-3; Thatcher Assesment Report, Ex. A to Thatcher Decl., at p.6-7 (assessing which non-compliant conditions pose real difficulties to blind users and which do not).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

3

**B.    The Steps Needed to Make Target.com at Least Minimally Accessible Are Simple, Clear and Undisputed.**

Dr. Thatcher identified four key access features that blind people need which are lacking on Target.com:

1. Provide text equivalents for all non-text content (alt-text for images)
2. Label all form elements
3. Make sure that everything is operable from the keyboard
4. Provide simple aids for in-page navigation

Dr. Thatcher explained that these features are clearly required under the applicable web accessibility guidelines, easily provided, and absolutely necessary for a website to be even minimally accessible to and usable by blind customers.  Moving Declaration of James Thatcher ("Thatcher Decl.") at ¶¶ 37, 59.  See also Reply Declaration of James Thatcher ("Thatcher Reply Decl.") at p.8.[5]

Mr. Letourneau, defendant's own witness and one of the preeminent experts in the field (he co-chaired the working group that developed the WCAG 1.0 Guidelines), agrees with Dr. Thatcher on virtually every issue:

- He uses the same access guidelines as Dr. Thatcher when analyzing the accessibility of a website. The Deposition of Charles Letourneau ("Letourneau Dep.") at 84:15-85:8, 89:16-90:11; 123:11-19.

- He agrees that in assessing whether a website is accessible or not, one looks at the actual content and structure of the website  (*Id.* at 115:7-11)

- He agrees that "the Web Content Accessibility Guidelines developed by the World Wide Web Consortium's Web Accessibility Initiative [the WCAG Guidelines] will provide you with the information you need to accomplish this relatively simple task."  Paradis Decl. Ex.13; Letourneau Dep. at 104:1-6; 105:4-17; 106:8-21; 112:19-113:7.

- He agrees that providing alt text for active images is required under all of the guidelines and is a critical access requirement for blind users. *Id.* at 20:11-17 and 53:7-16.

- He agrees that a system for labeling of form elements is required under the guidelines and necessary for access in any website. *Id.* at 53:19-55:3.

---

[5] The types of barriers at issue here do not involve subjective determinations.  *See* Thatcher Decl. Ex. A ("On these key issues, Target fails miserably.  Forms are not labeled at all and nothing has been done to improve navigation for screen reader or keyboard users.  As a rough estimate, 80% of the images lack text equivalents.   There is one spot in the shopping process (on the path I took to checkout) where it is impossible to move forward without using the mouse.) *Id.* at ¶2.

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:   C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

4

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

- He agrees that a system for in-page navigation is a basic access feature required under the guidelines and necessary for access by the blind. *Id.* at 32:22-33:11 and 57:2-58:5; 32.

- He agrees that blind users need to be able to interact through their keyboards and that this is required under all the guidelines. *Id.* at 58:14-22.

- He acknowledges that there is no conflict between the applicable guidelines and no reason why a website can't be brought into compliance with both WCAG and 508. *Id.* at 97:16-21; 110:21-111:4; 124:12-24; 128:19-129:19.

- He agrees that under the guidelines websites can and should be made easily usable by and accessible to *everyone* even if they have older versions of screen-reading programs. *Id.* at 18:9-25 and 77:16-78:7.

- The experts also agree that there is no shortage of people who can help Target make its website accessible. *See* Paradis Decl. Ex. 12.

Remarkably, Mr. Letourneau did not even look at the website which is the subject of this litigation. Letourneau Dep. 12:24-13:5. Instead, he was directed by defendant's counsel to answer three abstract questions, none of which involved examining the website at issue, and to address only those three questions. *Id.* at 14:12-22; 63:23-64:11; 65:8-10. Mr. Letourneau acknowledges that he took only the information provided to him by defense counsel and sought to elicit no information that was not specifically given to him by Target's lawyers. *Id.* at 116:12-15 and 22-25. Moreover, he could not even explain what the relevance might be of the questions he was asked to address as far as the accessibility of Target.com is concerned. *Id.* at 97:16-21; 111:9-23; 112:1-9.

Target's decision not to ask Mr. Letourneau to evaluate the subject of the litigation suggests that his evaluation "would not have supported defendant's case." *See Lieber v. Macy's West, Inc.*, 80 F. Supp. 2d 1065, 1072 (N.D. Cal. 1999) ("Under these facts, the court may infer that defendant's decision not to call its expert witnesses means that their evidence would not have supported defendant's case.")

Target also tries to muddy the waters by claiming that the experience of website barriers will vary between different users. However, there is no dispute that the four key types of barriers which Dr. Thatcher found on Target.com would cause difficulty to typical blind users. As discussed above, defendant's own expert conceded that a website containing such barriers is likely to be difficult if not impossible for ordinary blind people to use. Given the nature of these

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

5

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 barriers, there are no screen readers, operating systems, or web browsers on the market which

2 would make Target.com easily usable by the blind. Thatcher Dep. at 139:3-140:3.[6]

3     **C.  The Testimony Of Target's Blind Declarants Actually Supports NFB's Position**

5     Not surprisingly, Target Corporation was able to find a few blind individuals who claim

6 to be happy with the state of Target.com.  These individuals are not typical blind shoppers.  All

7 four are unusually skilled at web technology – to the point that they build computers, configure

8 hardware, install software, create websites and train others on web access.[7]  Clearly, these four

9 individuals are not reflective of the typical blind person seeking to use Target.com.  Yet even

10 these "Web Olympians" admitted that they encountered barriers and difficulty on Target.com.

11     Mr. Polk, for example, testified that even with his advanced training and expertise in the

12 use of JAWS, he was unable to activate the checkout button at the bottom of the page on

13 Target.com, no matter how many different methods he tried. Deposition of Chris Polk ("Polk

14 Dep.") at 60:18-24.  He testified that he encountered numerous unlabelled on the homepage of

15 Target.com.  The difference with Mr. Polk is that he *enjoys* the challenges and troubleshooting

16 necessary to overcome barriers on Target.com. *Id.* at 83:5-84:10. Mr. Polk even acknowledged

17 this difference from other JAWS users, stating that a "beginner JAWS user would have problems

18 with all the links that are on the front page that aren't labeled with the ALT text," and that such

19 users would have similar difficulty with the "proceed to checkout" button. *Id.* at 72:21-73:14.

20 Mr. Polk further acknowledged that Target.com is not "as fully and equally accessible to a blind

21 user as it is to a sighted user," and that "aspects of Target.com are inaccessible." *Id.* at 84:18-

22 85:2.  He testified that Target.com needs work, including labeling the links on the home page

23 and fixing the "proceed to checkout" button. *Id.* at 89:18-90:2.  Although he was ultimately able

---

[6] That each blind shopper might experience these barriers in a slightly different way is not surprising.  Some will try to find ways around barriers and persist for even hours in such an endeavor.  Others will give up in frustration sooner.  By way of analogy, a step at the entrance to a store is a barrier to wheelchair users even though some might find ways to surmount it.

[7] Polk Dep. at 4:23-5:3; 6:5-14; 8:7-21; 53:10-23;18:23-19:12; 42:4-9, 45:3-5; David Wilkinson Dep. at 8:22-9:5; 106:16-24, 108:13-23; Dawn Wilkinson Dep. at 7:12-8:8; 11:1-23; Tritten Decl. at ¶2.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

1   to complete a purchase, it was only by figuring out a way to *work around* the barrier – a way that
2   has eluded numerous of the other declarants.
3        Mr. and Mrs. Wilkinson similarly testified that they encountered a number of barriers on
4   Target.com, including: unlabeled links which caused "barrier[s]" to his ability to navigate on
5   Target.com", Deposition of David Wilkinson ("David Wilkinson Dep.") at 84:4-8, graphics
6   which needed labels, Deposition of Dawn Wilkinson ("Dawn Wilkinson Dep.") at 43:12-18, and
7   a checkout button which was inaccessible when using JAWS. Dawn Wilkinson Dep. at 86:10-
8   91:11.  Ms. Wilkinson acknowledged that she had to "work around" barriers on Target.com.
9   Dawn Wilkinson Dep. At 50:7-51:5.
10        Ms. Tritten similarly admitted that when she first logged on to Target.com she ran into
11   "confusion" when "a number of meaningless links appeared at the top of the page." Declaration
12   of Suzanne Tritten ("Tritten Decl.") at ¶4. She also admits she had to switch between different
13   screen reader modes to be able to "checkout" and purchase her items. Tritten Decl. at ¶6.
14        She admits that none of the image maps on the target.com home page had alt tags, Tritten
15   Depo. at 46:18-25, that she encountered many unlabeled links on the site which she could not
16   identify, *Id*. at 31:12-15; 33:25-34:10, and that the "proceed to checkout" button did not activate.
17   *Id.* at 60:12-15.  She was able to navigate the site in large part only by "ignoring" improperly
18   coded image maps, *Id*. at 56:18-24, and using a "work around" for the checkout function which
19   she had learned through tutorials. *Id.* at 60:16-62:15.  Despite spending four hours exploring
20   Target's website, *Id.* at 27:15-16, Ms. Tritten was apparently unable to activate or test numerous
21   links, such as those for grocery coupons, pharmacy, wedding registry, baby registry, portrait
22   studio, photo center, optical center or the California privacy rights page. *Id.* at 70:20-72:7.
23       **D.**    <u>**Target.com's 1-800 Number Does Not Alleviate These Barriers**</u>
24        Defendant points to the existence of Target's customer service number as an alternative
25   form of accessibility, but this 1-800 "fix" does not provide equal access in any way, and likely
26   makes shopping even more difficult. To begin with, Defendant neglects to describe the extreme
27   difficulty of finding that 1-800 number.  Even for a sighted computer user who does not have to
28   navigate through Target's multiple barriers on the website, finding this numbers requires

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

7

navigating a labyrinth of links. Declaration of Yelena Trepetin at ¶¶ 4-13. The number is not listed on the home page, nor is there any indication that a customer services number exists on the home page. *Id.* at ¶¶4-9. Mr. Stigile, for example, testified that he attempted to find Target.com's telephone contact information "each time [he had] been to Target.com," but was unable to do so, even though he tried navigating through each of the links on the home page and searching for the word "contact" on the home page. Stigle Dep. at 39:13-40:22.

Further, even if one is lucky enough to find Target.com's 1-800 number, this number does not provide the same level of access as would a fully accessible version of Target.com. For instance, callers are not informed of features offered by Target.com such as the weekly advertisements.[8] Being forced to use Target.com's 1-800 number also denies blind persons the independence offered by the internet to browse for products at their own pace without the assistance of anyone else. The 1-800 number is a vastly inferior substitute for full and equal access to Target.com. *See* Sexton Reply Decl. at ¶¶2-7 (describing the difficulties he experienced when he tried to use this service after being given the number by plaintiffs' counsel).

### E. The Extensive Connections Between Target.com And The Physical Stores Are Undisputed.

It is undisputed that Target.com serves a variety of functions that enhance shoppers' ability to enjoy the goods, benefits and advantages of Target's physical stores. Several of the blind witnesses have testified that they like to go to websites to pre-shop so that they can determine what goods are available at a store and compare prices, features, etc. *See* Uttermohlen Decl. at ¶¶11, 15; Declaration of Ken Volonte ("Volonte Decl.") at ¶10; Declaration of Tina Thomas ("Thomas Decl.") at ¶9; Sexton Decl at ¶16. Target's own technology services manager admits that "Target Corporation" has a variety of "services" on its website for which "the

---

[8] These weekly ads for items sold in the stores are a significant part of the benefits available to sighted shoppers on Target.com. See, e.g., Ex. A to Akers-Healy Dec. (Sample copy of weekly ads).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

1  fulfillment [] would come through the store." Declaration of Gregg Bodnar ("Bodnar Depo.") at
2  67:22-68:3; *see also id.* at 58:22-59:7.[9]

### F. Target Has Acknowledged The Necessity And Feasability Of Removing Barriers on Target.com By Finally Beginning To Take Steps To Address Accessibility Issues

Bodnar also testified that in late April or early May 2006 defendant convened a new in house team (called "Target Accessibilities Guidelines") to implement standards for web access. Bodnar Dep. at 100:16-101:7. Mr. Bodnar, who is a manger for Target's technology services department and is now on this team, is not aware of any effort Target undertook prior to April 2006 to even address access to blind or vision disabled people on Target.com (independent of communications with the attorneys in connection with this litigation). *Id.* at 101:8-18; 108:22-109:8; 123:5-8; *see also id.* at 43:11-17; 44:16-45; 45:24-46:6. Nonetheless, within the past month (i.e. after Plaintiffs' filed the motion for preliminary injunction), the company has been reviewing new "requirements" recently circulated from its major vendor (Amazon.com), which would "change" the way Target.com web pages are built in order to make them accessible to the blind. *Id.* at 89:23-90:10; 91:9-12.[10]

Mr. Bodnar could not identify a single financial cost or burden that would make it impractical or undesirable from Target's perspective to add alt-tags to all of its images and

---

[9] Mr. Bodnar acknowledges all of the following connections between target.com and the Target stores include: weekly ads, providing information concerning in-store specials and price discounts, and allowing customers to print out coupons that can be used in the Target stores to reduce the price of goods such as groceries. Bodnar Dep. at 73:18-24; store locator, allowing persons who wish to shop at Target's stores to learn locations, hours, and phone numbers, as well as which stores have pharmacies and are most conveniently located. (*Id.* at 52:13-53:4; 62:23-63:4); descriptions of products sold both online as well as in the Target stores. *Id.* at 54:25-55:14; 64:18-21; online pharmacy, allowing a customer to place prescription orders and then "have a refill waiting for them in the store." *Id.* at 62:11-16; 63:7-64:9; online photo shop, which provides information about what is available at the Target stores and allows customers to order photo prints for pickup there in as little as one hour. *Id.* at 58:3-59:7; 59:20-60:5; a party function, allowing customers to order deli products for pickup at a local Target "superstore"; the ability to apply for a Target credit card online which can be used to purchase products in the Target stores at a 10% discount. *Id.* at 74:18-75:12; a return policy permitting customers to go to a Target store to return an item purchased on Target.com. *Id.* at 74:1-16; and online wedding and baby registries linked to Target's in-store merchandise which allow customers to create a registry in the store and then view it on line, as well as to create a registry on line of products which can then be viewed and purchased at Target's stores. *Id.* at 60:23-61:25.

[10] Such "eve of trial" efforts are a frequent defense strategy and do not eliminate the need for preliminary injunctive relief. *See, e.g., Cupolo v Bay Area Rapid Transit,* 5 F. Supp.2d 1079 (N.D. Cal. 1997); *see also Barnes v. Healy,* 980 F.2d 572, 580 (9th Cir. 1992) ("Voluntary cessation of illegal conduct does not render a challenge to that conduct moot unless "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.")

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

information on Target.com; to put titles for screen readers on the links; to make the online forms accessible; or to provide keyboard navigation. *Id.* at 95:16-23; 96:8-99:4. These are the same changes that the experts testified would be necessary, at a minimum, to ensure accessibility of a website. *See* Section II.C., *supra*. Mr. Bodnar also indicated that Target is beginning to use the WCAG and Section 508 Guidelines to inform the access changes that have been recommended to it. *Id.* at 106:3-13. Mr. Bodnar did not know of any provisions in either the Section 508 or WCAG guidelines that would be impracticable, or create a financial or administrative burden, for Target. *Id.* at 106:15-107:23.

## III.      ARGUMENT

### A.      Defendant Should Be Enjoined From Its Violation Of State Law

Target's interstate commerce clause argument is a repeat of that presented in its motion to dismiss. *See* Plaintiffs' Opposition to that motion (hereafter "Plaintiffs' 12(b) Opp'n Brief). This argument was also undercut by the only witness Target put forth to present it. *See* Bodnar Dep. at 116:25-117:10.

Target also repeats its argument that Plaintiffs' Unruh Act claim is barred by Section 51(d). By its very terms, Section 51(d) only limits claims that concern construction or alteration to physical structures, something which – as Target has taken great pains to emphasize – is not the issue in this case. Target presents no authority for its proposition that this narrow exception somehow neuters the Unruh Act's full and equal access requirement when it comes to a business' policies and practices.[11]

The Unruh Act makes a broad promise of freedom from discrimination by all business establishments. Cal. Civ. Code §51(b). That promise extends to the "full and equal" enjoyment of all "accommodations, advantages, facilities, privileges or services in all business

---

[11] Target's broad interpretation of the application of Section 51(d) would also undo most of the impact of Section 51(f), which provides that a violation of the right of any individual under the ADA is also a violation of Section 51. The ADA's prohibitions go beyond physical access barriers to, among other things, eligibility criteria, policies and procedures, auxiliary aids and services. *See* 42 U.S.C. § 12182.

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

10

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

establishments of every kind whatsoever. *Id.* This promise has been enforced in multiple access cases involving discriminatory policies and practices.[12]

The only reasonable reading of Cal. Civ. Code §51(d) is that the California Legislature intended to preserve the system of building code regulations when it comes to construction and alteration of buildings. This reading does no violence to the language or the spirit of the statute and accords with the judicial and legislative history.[13]

Target next argues that under *Marsh v. Edwards Theatre Circuit, Inc.*, 64 Cal. App. 3d 881 (1976), the Disabled Persons Act ("DPA") is not violated so long as the public accommodation does not violate any other law, such as a building or fire code. This position rests on a misreading of both the DPA and *Marsh*. Section 54.1(a)(1) of the California Civil Code guarantees disabled persons full and equal access to public accommodations "subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Cal. Civ. Code §54.1(a)(1). [14]

*Hankins v. El Torito Restaurants, Inc.*, 63 Cal. App. 4th 510 (1998) addressed this very question. In *Hankins*, the Court of Appeal rejected El Torito's claim that a violation cannot be made out when the public accommodation complies with structural access standards. *Hankins* concluded that *Marsh* is irrelevant when the issue is not a structural impediment to access and

---

[12] For example, in *Lentini v. Cal. Center for the Arts*, 370 F.3d 837 (9th Cir. 2004), the Ninth Circuit upheld liability under the Unruh Act, the DPA and the ADA against a concert hall owner who wrongly barred a plaintiff from entering with her service dog and approved the District Court's order directing the Defendant to modify its policy. So, too, in *Goldman v. Standard Insurance Co.*, 341 F.3d 1023 (9th Cir. 2003), the Court recognized that the discriminatory denial of insurance to a Plaintiff with a disability may violate the Unruh Act. *Id.* at 1026-1027; *see also Chabner v. Mutual of Omaha Life Ins. Co.*, 225 F.3d 1042, 1050-1051 (9th Cir. 2000) (holding that policies which result in pricing differentials in the provision of insurance to people with disabilities may violate the Unruh Act, even though discrimination does not prevent access to the place of business of the insurance company itself.)

[13] The legislative history of section 51(d) submitted by defendant undercuts Target's position. That history indicates that section 51(d) was added for the sole purpose of maintaining the status quo solely as regards building code standards. The Unruh Act was being amended at that time to specifically include people with physical disabilities in the Act's protections. The expressed intent stated by the proponents of the bill was to "prohibit businesses from discrimination in the process of buying from, selling to, or trading with persons." Declaration of Michael Bodstum ("Bostrum Decl.") at 167; Ex. L. Certain business interests expressed concern that this amendment not undermine the existing system of building code regulations set forth in the Government Code and Health and Safety Code. *Id.* at 170; Ex. L. Section 51(d) was proposed to address this concern. *Id.* at 172. The lobbyist for business interests thus agreed to this amendment, noting: "We agreed that the bill should be amended to set forth legislative intent stating that there is no intention of mandating additional building standards." *Id.* at 173.

[14] Thus, in *Marsh*, where a quadriplegic desired to stay in his wheelchair, a choice that would have blocked the aisle and thus violated the fire code, the court held that because the fire code prevents all persons from blocking the aisle, no actionable discrimination occurs.

---

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

11

1  concluded that the legislative intent behind the DPA was to address policy impediments not

2  otherwise compelled by law, as well as structural impediments. *Hankins,* 63 Cal. App. 4th. at

3  523-24.   Because no law compels Target to maintain Target.com in an inaccessible state, the

4  consequent denial of full and equal access is redressable by the DPA.[15]

5        **B.**      **Defendant Should Also Be Enjoined From Violation of the ADA.**

6        Target's argument that Title III only applies to policies that completely deny or preclude

7  a person from physically accessing a place of public accommodation comports with neither the

8  language of the statute nor applicable precedent.  The language of the statute unmistakably

9  shows that Title III applies to more than physical access:

> No individual shall be discriminated against on the basis of disability in the full and *equal enjoyment* of the *goods, services, facilities, privileges, advantages, or accommodations* of any place of public accommodation by any person who owns, leases (or leases to), or operated a place of public accommodation. 42 U.S.C. §12182 (a) (emphasis added).

14  To contend that Title III allows discriminatory treatment as long as it is off site requires

15  misreading the relevant statutory language. *See* e.g., *Rendon v. Valleycrest Prods., Ltd.,* 294 F.3d

16  1279, 1285 (11th Cir. 2002).[16]  *See also Cloutier v. Prudential Ins. Co. of America,* 964 F. Supp.

17  299, 302 (N.D. Cal. 1997) ("Interpreting Title III to prohibit only physical barriers to the access

---

[15] Several other factors confirm that the DPA is not limited to building code compliance. First, in 1992, the California Legislature amended the statute to protect people with "mental impairments," rather than just "blind persons, visually handicapped persons and other physically disabled persons," as the statute had previously read. Compare Stats.1992 Ch.913 § 4 (AB1077) with Stats.1968 Ch.461 § 1.  Given that architectural barriers generally do not preclude people with mental impairments from accessing goods and services of a public accommodation, the inclusion of such individuals within the definition of those entitled to full and equal access evidences the legislative intent to have the DPA apply to policies and practices that are not tied to specific physical structures.  Second, the 2002 amendments to the DPA make any violation of the ADA a violation of the DPA. *See* Cal. Civ. Code §54.1(d). As noted previously, the ADA covers much more than physical access.  Third, the established case law in California is that the DPA reaches discriminatory policies.

[16] It is a well known maxim of statutory construction that "courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage." *Arnett v. Dal Cielo*, 923 P.2d 1, 2 (1996). Additionally, the Supreme Court has affirmed that a court must "construe statutes to avoid rendering superfluous any parts thereof." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991).  Moreover, the emphasized choice of words is deliberate: the Legislature repeatedly used the same wording "goods," "services," "facilities," "privileges," "advantages," and "accommodations" in several other provisions of the Act. The Legislature cannot be presumed to have engaged in idle acts. *Stafford v. Realty Bond Service Corp.,* 249 P.2d 241, 245 (1952).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

1  of 'facilities' would dispense with the language mandating equal opportunity to 'participate in or

2  benefit from' the 'goods,' 'services,' 'privileges,' and 'advantages.'").[17]

3        This requirement for equal access clearly applies to a website such as Target.com given

4  the many ways in which the website is linked to and facilitates shoppers' experience of the

5  physical stores. *Rendon, supra,* does not support defendant's argument. In that case, the court

6  held that Title III applies to any policy or practice which "restrict a disabled person's ability to

7  enjoy the defendant entity's goods, services and privileges" whether or not it involves a physical

8  barrier. *See* Plaintiffs' 12(b) Opp'n at 6:6-20. Target's refusal to make its website accessible is

9  clearly impairing the ability of blind customers to enjoy on an equal basis "the defendant entity's

10 goods, services, and privileges." *Rendon*, 294 F.3d at 1283; *see also Bragdon v. Abbott*, 524

11 U.S. 624 (1998).

12       *Parker* and the other insurance cases which defendant relies upon are inapposite because

13 they involve a wholly different issue: the question of whether Title III extends to an employer

14 provided benefit plan. Opp'n at 15. These cases are further inapplicable since they raise unique

15 issues concerning the content of an insurance plan and the scope of the safe harbor provision in

16 Title III relating to insurance. Again, the court here need not reach the issue of whether a place of

17 public accommodation needs to exist in a physical space in order for Title III to apply. Target

18 already admits that its stores are places of public accommodations. As explained earlier,

19 Target.com is a service provided by Target that is substantially connected to Target's "brick and

20 mortar" stores in multiple significant respects. This nexus squarely brings this case under Title

21 III under all of the applicable precedents.

22 **IV.    INJUNCTIVE RELIEF IS NECESSARY AND APPROPRIATE**

23       Absent an injunction, the blind of America will continue to be denied equal access to the

24 goods and services of a major national retailer and suffer the irreparable harm of unlawful

25 discrimination. The California and federal disability access statutes specifically contemplate

26 injunctive relief to remedy these irreparable harms. Target on the other hand, would not be

27 ───────────────

28 [17] *Cloutier* has been cited favorably in several different cases. *See, e.g., Briefer v. Carnival Corp.,* 1999 U.S. Dist. LEXIS 21256 (D. Ariz. 1999); *Kotev v. First Colony Life Ins. Co.*, 927 F. Supp. 1316, 1321 (C.D.Cal.1996); *Walker*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

13

1  harmed since, according to Target's own expert, the relief requested is a "relatively simple task."
2  In fact, according to Target's own expert, defendant will likely benefit financially from making
3  its website accessible.[18]

4  The fact that Target.com has existed since 1999 is simply irrelevant to determining
5  whether preliminary relief is appropriate.  An entity's demonstrated history of unlawful
6  discrimination has never been a defense to that unlawful discrimination.

7  Fed. R. Civ. P 65(d) requires the language of injunctions to be reasonably clear so that
8  ordinary persons will know simply what action is proscribed.  "Injunctions are not set aside
9  under rule 65(d)…unless they are so vague that they have no reasonably specific meaning." *U.S.*
10 *v. Holtzman,* 762 F.2d 720, 726 (9th Cir. 1985).  Plaintiffs' proposed injunction easily meets this
11 requirement.  It provides a reasonable standard that Defendant must meet to be in compliance,
12 i.e. that Target.com is "readily accessible and usable."  It names a discrete class of people whom
13 the injunction is designed to benefit, i.e., "blind persons using screen access software."  The
14 injunction states a clearly defined time frame in which to comply with the injunction, i.e. 90
15 days.  The injunction further suggests specific standards and protocols that Defendant can
16 employ to achieve compliance – standards and protocols which Defendant's own expert agrees
17 are necessary for access and easy to achieve.  Finally, the proposed injunction describes a
18 detailed dispute resolution mechanism in the event that Target encounters any particular
19 difficulties in achieving compliance.[19]

20 Defendant seems to be operating under the misconception that the Court must set out
21 each and every step for compliance in an injunction.  That is not so.  See, e.g., *Fortyune v.*
22 *American Multi-Cinema, Inc*., 364 F.3d 1075, 1087 (9th Cir. 2004) (The rule simply only

---

*v. Carnival Cruise Lines* , 63 F. Supp. 2d 1083 (N.D. Cal. 1999).
[18] Mr. Letourneau notes that by making its website accessible, a company will improve its bottom line because it makes the website more usable by everyone, not just the disabled. Submitted as Ex. 12 to Paradis Decl..
[19] The proposed injunction is similar to the approach taken by this Court in *Lieber v Macys*, supra, another case in which defendant argued that the standards defining minimum access were not clear.  In *Lieber*, this Court after a trial on the merits found defendant in violation of Title III and ordered the parties to "meet and confer to develop a compliance plan to ensure that Macy's begins to meet its obligations under the ADA [and state law].  The parties shall submit such compliance plan within sixty (60) days of the date of this order, and a status conference will be set by the court to review the progress of the parties and determine whether further steps are necessary or appropriate." *Lieber,* 80 F. Supp. 2d at 1082.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

14

1  requires the court to "describe in reasonable detail…the act or acts sought to be restrained.")

2  *See Independent Living Resources v. Oregon Arena Corp.*, 1 F.Supp. 2d 1159 at 1173 n.16

3  (D.Or. 1998) (leaving "logistical matters" concerning the implementation of an injunction "in the

4  capable hands of the [defendants]").[20]

5      Finally, given that the injunction would be for the purpose of remedying civil rights

6  violations, this court should waive the bond or only require a nominal bond. *See* Pls' Moving Br.

7  at 20-21.

**V.    CONCLUSION**

9      For the reasons discussed above, Plaintiffs request that preliminary injunctive relief issue.

11  DATED:    July 10, 2006        DISABILITY RIGHTS ADVOCATES
    LAURENCE W. PARADIS
12      MAZEN M. BASRAWI

13      SCHNEIDER & WALLACE
    TODD M. SCHNEIDER
14      JOSHUA KONECKY

15      BROWN, GOLDSTEIN & LEVY, LLP
    DANIEL F. GOLDSTEIN (*pro hac vice*)

    By:    /s/ Laurence W. Paradis
17          Laurence W. Paradis
        Attorneys for Plaintiffs

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

[20] Ironically, a more detailed order would simply deprive defendant of any discretion it might wish to exercise in implementing the court order.

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction**

15