# EXHIBIT 1

1   ROBERT A. NAEVE (CA SBN 106095)
    RNaeve@mofo.com
2   MORRISON & FOERSTER LLP
    19900 MacArthur Blvd.
3   Irvine, California 92612-2445
    Telephone: (949) 251-7500
4   Facsimile: (949) 251-0900

5   DAVID F. MCDOWELL (CA SBN 125806)
    SARVENAZ BAHAR (CA SBN 171556)
6   MICHAEL J. BOSTROM (CA SBN 211778)
    DMcDowell@mofo.com
7   SBahar@mofo.com
    MBostrom@mofo.com
8   MORRISON & FOERSTER LLP
    555 West Fifth Street, Suite 3500
9   Los Angeles, California 90013-1024
    Telephone: (213) 892-5200
10   Facsimile: (213) 892-5454

11   STUART C. PLUNKETT (CA SBN 187971)
    SPlunkett@mofo.com
12   MORRISON & FOERSTER LLP
    425 Market Street
13   San Francisco, California 94105-2482
    Telephone: (415) 268-7000
14   Facsimile: (415) 268-7522

15   Attorneys for Defendant
    TARGET CORPORATION
16

17                           UNITED STATES DISTRICT COURT

18                           NORTHERN DISTRICT OF CALIFORNIA

19                               SAN FRANCISCO DIVISION

20

21   NATIONAL FEDERATION OF THE BLIND,          Case No.   C06-01802 MHP
    the NATIONAL FEDERATION OF THE
22   BLIND OF CALIFORNIA, on behalf of their         **TARGET CORPORATION'S**
    members, and Bruce F. Sexton, on behalf of         **SURREPLY BRIEF IN SUPPORT**
23   himself and all others similarly situated,           **OF OPPOSITION TO PLAINTIFFS'**
                                                    **MOTION FOR PRELIMINARY**
24                  Plaintiffs,                       **INJUNCTION**

25       v.                                     Date:   July 24, 2006
                                                        Time:   2:00 p.m.
26   TARGET CORPORATION,                             Jude:   Hon. Marilyn Hall Patel

27                 Defendant.

28

Target's Surreply Brief in Support of Opp. to Plaintiffs' Mot. for Preliminary Injunction
Case No. 06-01802 MHP
sf-2160008

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I. BRUCE SEXTON'S REPLY DECLARATION FAILS TO DISCLOSE TO THE COURT THAT THE 1-800 REPRESENTATIVES HELPED HIM SHOP ON TARGET.COM *FOR TWO HOURS* ............................................................................ 1

II. NFB BADLY MISCHARACTERIZES THE TESTIMONY OF TARGET'S BLIND DECLARANTS .................................................................................. 4

    A. The Description Of Target's Blind Declarants As "Web Olympians" Is A Gross Exaggeration And Contrary To Their Testimony ........................................................................ 4

    B. NFB's Description Of "Barriers And Difficulty" Encountered By Target's Blind Declarants On Target.com Are Either False Or Seriously Misleading .................................................................................................. 5

III. NFB BADLY MISCHARACTERIZES THE TESTIMONY OF TARGET'S EXPERT, MR. LETOURNEAU ............................................................. 8

    A. NFB Makes Numerous Assertions About Mr. Letourneau's Testimony That Are Untrue Or Seriously Misleading ................................................................................ 8

    B. Contrary To NFB's Characterizations, Mr. Letourneau Testified That He Could Only Speculate About Dr. Thatcher's Opinions Regarding The Accessibility Of Target.com ........................................................................ 12

IV. NFB BADLY MISCHARACTERIZES THE TESTIMONY OF TARGET EMPLOYEE GREGG BODNAR ................................................................ 13

V. NFB'S ASSERTION THAT TARGET "MISCHARACTERIZED MUCH OF THE EVIDENCE" IN ITS OPPOSITION BRIEF IS UNSUPPORTED ....................................................... 15

TARGET'S SURREPLY BRIEF IN SUPPORT OF OPP. TO PLAINTIFFS' MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 06-01802 MHP
sf-2160008

i

# INTRODUCTION

Target submits this surreply brief to bring to the Court's attention numerous serious mischaracterizations of evidence in NFB's reply brief that it submitted in support of the motion for preliminary injunction. This surreply only discusses evidence that was newly submitted by NFB in its reply.

# ARGUMENT

## I. BRUCE SEXTON'S REPLY DECLARATION FAILS TO DISCLOSE TO THE COURT THAT THE 1-800 REPRESENTATIVES HELPED HIM SHOP ON TARGET.COM *FOR TWO HOURS*

NFB submits the reply declaration of Plaintiff Bruce Sexton to support its contention that Target.com's 1-800 number "is a vastly inferior substitute for full and equal access to Target.com." (Reply Br. at 8.) But there are serious credibility issues with Mr. Sexton's declaration. Most significantly, Mr. Sexton tells the Court that he "was hurried along throughout the process" and suggests that the customer service representative limited the amount of time he would spend with Mr. Sexton and made Mr. Sexton feel that the representative's "time was being wasted." (Sexton Reply Decl. ¶ 7.) Mr. Sexton's declaration in this regard is neither fair nor accurate. The customer service representative, Vinson, who answered Mr. Sexton's call at 1:00 a.m. on June 23 spent *1 hour and 20 minutes* assisting Mr. Sexton shop on Target.com. (Declaration of Pamela McGlone ("McGlone Decl.") ¶ 3.) That call was recorded, and a transcript is submitted herewith. (Reply Declaration of Michael Bostrom ("Bostrom Reply Decl.") Ex. A.)

The transcript speaks volumes: Vinson helped Mr. Sexton with every request he made, described products to Mr. Sexton, quoted prices and added items to the cart, described the layout of the website, and repeatedly asked Mr. Sexton what else he could help him shop for. (*Id.*) Vinson never expressed any kind of impatience with Mr. Sexton's repeated requests to look at various areas of the Target.com website; never pressured Mr. Sexton to purchase anything; and went out of his way to describe the website and the items it contains in meaningful ways. (*Id.*)

TARGET'S SURREPLY BRIEF IN SUPPORT OF OPP. TO PLAINTIFFS' MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 06-01802 MHP
sf-2160008

1

1    Although Mr. Sexton's declaration purports to find fault in the quality of Vinson's service, it is clear that Mr. Sexton expressed an entirely different view during the call itself. In particular, about 20 minutes into the call, Mr. Sexton complimented the level of Vinson's service as follows:

> Sexton:    Yeah, let's look at that. Let's see if there's any other colors, maybe black or a different brand maybe.
>
> Vinson:    OK.
>
> Sexton:    *You're being very helpful, thank you so much.*
>
> Vinson:    No problem. Let's see here. You're looking for black jeans here [inaudible]. I also see Levi's cargo shorts and 32 is available, it's in gray.

(*Id.* at 5 (0:23:35) (emphasis added).)

After talking with Mr. Sexton for more than an hour (during which time Mr. Sexton simply "browsed" the same areas of the website over and over again), Vinson notified him that other calls were backing up and that his supervisor asked that he assist these callers. (*Id.* at 18-19.) Significantly, even after being told that he would be transferred to a Target.com supervisor, Mr. Sexton went out of his way to compliment Vinson's services in no uncertain terms:

> Sexton:    Hold on, so there is no other identification other than "Vinson" for your name, there is no identification badge or . . . I don't know . . .
>
> Vinson:    No, there won't be any identification, but there will be notes left on your account here, and there will be an e-mail sent to you here saying if I've helped you or not here.
>
> Sexton:    *And you've been very helpful. I don't want to give you the wrong impression. You really have.*

(*Id.* at p. 21 (1:19:00) (emphasis added).) If the Court grants leave to file this surreply, Target will deliver to chambers a courtesy copy of the recording, as it conveys the patience of the representative and the quality of the service provided to Mr. Sexton in a manner that the transcript cannot.

As noted above, Vinson had to leave the call because the in-coming queue had grown due to the length of time he was helping Mr. Sexton. (*Id.* at 18-19; McGlone Decl. ¶ 3.) But even

that was not the end of Target.com's assistance. Mr. Sexton was transferred to a supervisor who assisted him in his shopping on Target.com for at least another 40 minutes. (McGlone Decl. ¶ 4.) Mr. Sexton states in his declaration that he was told by the representatives that they "couldn't help me look around for different products." (Sexton Reply Decl. ¶ 5.) But the transcript of the first hour and twenty minutes of the call proves that is not true. Mr. Sexton then states that the representative suggested he go online and look at the products (*id.* ¶ 6), but that suggestion was made before Mr. Sexton had explained to the representative that he was blind. (*See* Bostrom Reply Decl. Ex. A at 4.)

It is troubling, to say the least, that Target.com devoted so much time to assist Mr. Sexton only to have him and NFB submit a declaration falsely suggesting to the Court that Mr. Sexton had been "brushed off" when he asked for assistance.

Lastly, Mr. Sexton suggests to the Court that he would not have been able to contact Target.com if his attorneys had not provided him with the 800-number. (Sexton Reply Decl. ¶ 3.) But Mr. Sexton said the opposite at his earlier deposition:

> Q. If you had wanted to contact Target.com while you were using the website to ask for help in completing a purchase, would you know how to do that?
>
> [Objections omitted.]
>
> A. I'm pretty confident that I could have found a way to contact Target to let them know that I was having problems with their site if that's what you're asking.
>
> Q. [H]ow would you go about contacting them?
>
> A. I don't know. I could call them. I could e-mail them. I would have to do some research on that.

(Sexton Depo. at 95:9-96:1.)[1]

---

[1] Relevant portions of the deposition testimony cited herein, which are not otherwise provided in NFB's submission, are attached as exhibits to the Bostrom Reply Decl. as follows: Sexton Depo. (Ex. B), Dawn Wilkinson Depo. (Ex. C), Dave Wilkinson Depo. (Ex. D), Tritten Depo. (Ex. E), Polk Depo. (Ex. F), and Letourneau Depo. (Ex. G).

## II. NFB BADLY MISCHARACTERIZES THE TESTIMONY OF TARGET'S BLIND DECLARANTS

### A. The Description Of Target's Blind Declarants As "Web Olympians" Is A Gross Exaggeration And Contrary To Their Testimony

Target submitted the declarations of four blind individuals who accessed the goods and services of Target.com with little difficulty. Unable to discredit the testimony of these individuals, NFB instead describes them as "Web Olympians" who are "unusually skilled at web technology — to the point that they build computers, configure hardware, install software, create websites and train others on web access." (Reply Br. at 6.) With respect to three of the declarants, this description is false. With respect to one of them, Chris Polk, the list of technological skills is mostly accurate, but the characterization is exaggerated.

<u>Dawn Wilkinson</u>. There is no basis for describing Dawn Wilkinson as anything other than an ordinary user of screen readers. She has no training in screen readers or other adaptive technology and is self-taught:

> Q. You don't have any kind of training with [sic] related to adaptive software?
>
> A. *No.*
>
> Q. Okay. How about in computer use, generally?
>
> A. *No.*
>
> \* \* \*
>
> Q. [H]ave you had any training in computer software?
>
> A. *No. I'm clueless —*
>
> Q. Okay.
>
> A. *— in web design.*

(Dawn Wilkinson Depo. at 9:2-16 (emphasis added).) Ms. Wilkinson is a Braille instructor, and as part of that she teaches kids "very, very basic stuff" related to adaptive technology. (Dawn Wilkinson Depo. at 9:17-11:21 (attached to Paradis Decl.).) That hardly qualifies Ms. Wilkinson as a "Web Olympian" or "unusually skilled at web technology." The testimony NFB cites (Reply

TARGET'S SURREPLY BRIEF IN SUPPORT OF OPP. TO PLAINTIFFS' MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 06-01802 MHP
sf-2160008

4

1  Br. at 6 n.7) says only that Ms. Wilkinson has taught basic computer skills and thus *in no way*
2  supports NFB's assertion about Ms. Wilkinson's skill level.

3        <u>Dave Wilkinson</u>. The same is true for Dave Wilkinson, who also testified that he has had
4  no special training in adaptive technology, including screen readers, and is entirely self-taught as
5  it relates to the use of screen readers for accessing the Internet. (Dave Wilkinson Depo. at 9:7-
6  18.) Nothing in Mr. Wilkinson's testimony indicates that his is "unusually skilled at web
7  technology." The testimony NFB cites (Reply Br. at 6 n.7) concerns only Mr. Wilkinson's
8  general employment background and thus *in no way* supports NFB's assertion about Mr.
9  Wilkinson's skill level.

10        <u>Suzanne Tritten</u>. Similarly, nothing in Suzanne Tritten's testimony establishes that she is
11  anything other than an ordinary user of screen readers. Like several of NFB's blind declarants,
12  Ms. Tritten is "self-taught" and has never had any formal training. (Tritten Depo. at 10:1-23.)
13  Ms. Tritten has trained others on computer skills, but only regarding "the basics of how to use a
14  computer." (*Id.* at 11:16-12:9.)

15        <u>Chris Polk</u>. Chris Polk, who is a systems administrator, does have more advanced
16  computer skills than the other declarants, but he is by no means a "Web Olympian." The only
17  formal training Mr. Polk had in adaptive software (which includes screen readers) was a 5-day
18  course offered by the makers of his screen reader that was required for him to obtain a teaching
19  certificate. (Polk Depo. at 9:10-10:1.) Mr. Polk has had no training in web programming or web
20  design. (*Id.* at 10:22-11:1.) Mr. Polk testified that he believes he has "good skills" with
21  computers, but he knows blind people who are more skilled and also people less skilled than he
22  is. (*Id.* at 48:25-49:19.)

23      **B.**    **NFB's Description Of "Barriers And Difficulty" Encountered By Target's Blind Declarants On Target.com Are Either False Or Seriously Misleading**

25  NFB next contends that Target's blind declarants "admitted that they encountered barriers
26  and difficulty on Target.com." (Reply Br. at 6.) NFB's citations to the deposition testimony do
27  not support this claim, but far more troubling than that, nearly all of NFB's citations are false or
28  seriously misleading.

1  <u>Dawn Wilkinson</u>. NFB attributes three statements to Dawn Wilkinson, and they are *all* utterly fabricated. First, NFB says that Dawn Wilkinson "acknowledged that she had to 'work around' barriers on Target.com." (Reply Br. at 7:8-9.) But in the passage cited, Ms. Wilkinson was *not even talking about Target.com*, and she said *nothing about working around "barriers"* on a website. (Dawn Wilkinson Depo. at 50:7-51:5 (attached to Paradis Decl.).) To the contrary, Ms. Wilkinson repeatedly explained that she had little difficulty using Target.com. (Dawn Wilkinson Depo. at 55:16-56:21, 89:6-90:11, 95:19-96:11.) Second, NFB says that Ms. Wilkinson encountered a "checkout" button on Target.com that was "inaccessible" with her screen reader, JAWS (Reply Br. at 7:6-7), but the testimony NFB cites says <u>*precisely the opposite*</u>: Ms. Wilkinson *did in fact activate the "checkout" button using JAWS*, and it took her just "a couple of minutes." (Dawn Wilkinson Depo. at 86:7-80:17 (attached to Paradis Decl.).) Third, NFB says that Ms. Wilkinson encountered graphics on Target.com "which needed labels" (Reply Br. at 7:6), but the cited testimony does not say that, and is not even about Target.com. (Dawn Wilkinson Depo. at 43:12-18 (attached to Paradis Decl.).)

<u>Dave Wilkinson</u>. NFB attributes one statement to Mr. Wilkinson — that he encountered "unlabeled links which caused 'barrier[s]' to his ability to navigate Target.com." (Reply Br. at 7:3-5.) But Mr. Wilkinson actually testified that unlabeled links "certainly didn't keep me from using the site." (Dave Wilkinson Depo. at 84:4-14.) Here is the complete question and answer:

> Q. Okay. You say in your declaration that you encountered obstacles on target.com. Do you recall what those obstacles were?
>
> A. Certainly a link that doesn't tell me where it's going to go is a barrier to being able to get there. I also – well, I'm trying to think if that's – that's Target-specific. I think that it would be great if those links – I mean, if that – if – I'm – and it would be nice if they were labeled specifically. Could it be probably designed a bit better? Okay. *But it certainly didn't keep me from using the site.*

(*Id.* (emphasis added).)

<u>Suzanne Tritten</u>. NFB's treatment of Ms. Tritten's testimony is no less troubling. First, NFB says that Ms. Tritten "admits" that "the 'proceed to checkout' button did not activate." (Reply Br. at 7 (citing Tritten Depo. at 60:12-15).) But that is not what Ms. Tritten said. Tritten

TARGET'S SURREPLY BRIEF IN SUPPORT OF OPP. TO PLAINTIFFS' MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 06-01802 MHP
sf-2160008

6

said that the "proceed to checkout" button did not activate "*by pressing enter*," but that she *did* activate the button using "a standard workaround" with her screen reader that took "about ten seconds" to accomplish. (Tritten Depo. at 60:12-62:25.) Thus, NFB incorrectly paraphrased the testimony it cited and then omitted the subsequent questions that prove NFB's characterization of Ms. Tritten's testimony are false.

Second, NFB says that, despite "spending four hours exploring" Target.com, Ms. Tritten was "unable to activate or test numerous links, such as those for grocery coupons, pharmacy, wedding registry, baby registry, portrait studio, photo center, optical center or the California privacy rights page." (Reply Br. at 7.) This description of Ms. Tritten's testimony can only be designed to mislead. There is nothing in Ms. Tritten's testimony to indicate that she was "unable" to access any of these pages on Target.com. She simply testified that these were areas of the website she did not look at. (Tritten Depo. at 70:20-72:7 (attached to Paradis Decl.).) That is fundamentally different from NFB's characterization.

Third, NFB says that Ms. Tritten "admits" that "none of the image maps on the target.com home page had alt tags," but they cite testimony in which Ms. Tritten said she could only "guess" whether or not that was the case. (Tritten Depo. at 46:18-25 (attached to Paradis Decl.).)

Finally, contrary to NFB's assertions, Ms. Tritten did not state that unlabeled links caused her difficulties on Target.com. Ms. Tritten said she encountered unlabeled links on Target.com's home page, but (1) she was not bothered by the unlabeled links, (2) she found the links she needed to access the websites goods and services, and (3) she acquainted herself with the home page and navigated past it in less time than she would ordinarily be able to do on other Internet websites. (Tritten Depo. at 34:14-35:8, 39:21-40:9.)

Chris Polk. NFB misleadingly claims that Chris Polk was unable to activate the "checkout" button on Target.com and that he was only able to make a purchase by "figuring out a way to *work around* the barrier." (Reply Br. at 6-7 (emphasis in original).)[2] In fact, what Mr.

---

[2] NFB also says that Mr. Polk testified that he enjoyed the challenge of troubleshooting on Target.com, but in the cited testimony, Mr. Polk is not even talking about Target.com. (Reply Br. at 6:15-16 (citing Polk Depo. at 87:21-88:18).)

TARGET'S SURREPLY BRIEF IN SUPPORT OF OPP. TO PLAINTIFFS' MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 06-01802 MHP
sf-2160008

7

Polk said is that there were two "checkout" buttons on the page and that he had no difficulty activating the one at the top and completing his purchase. (Polk Depo. at 60:11-61:9.) NFB decided to tell the Court only about the "checkout" button that Mr. Polk did not use.[3]

### III. NFB BADLY MISCHARACTERIZES THE TESTIMONY OF TARGET'S EXPERT, MR. LETOURNEAU

#### A. NFB Makes Numerous Assertions About Mr. Letourneau's Testimony That Are Untrue Or Seriously Misleading

NFB asserts that "Mr. Letourneau, defendant's own witness and one of the preeminent experts in the field . . . agrees with Dr. Thatcher [NFB's expert] on virtually every issue." (Reply Br. at 4.) NFB then lists a series of purported areas of agreement supported by citations to Mr. Letourneau's deposition, and also makes a number of statements about Mr. Letourneau's testimony that are not supported by citations. Simply put, all but one[4] of NFB's citations to the deposition are false or misleading, because the quotes are taken out of context or because NFB chose not to provide the Court with clarifying testimony.

First, NFB falsely claims that Mr. Letourneau agrees with Dr. Thatcher that website accessibility is determined by looking at the "actual content and structure" of the website. There is a fundamental difference between (1) determining that a website is *noncompliant* with guidelines and (2) determining that it is *inaccessible* to, or *unusable*, by blind people. Dr. Thatcher and Mr. Letourneau agree that a noncompliant website may be accessible and a compliant website may be inaccessible. By his own admission, NFB's expert, Dr. Thatcher, *did not evaluate whether a blind person could actually access the goods and services of Target.com.* Instead, he evaluated whether the website was compliant with his guidelines.

---

[3] The other testimony NFB cites is speculation offered by Mr. Polk in response to counsel's improper questions asking Mr. Polk his belief regarding whether a less computer savvy blind person could access Target.com, and improper opinion testimony about whether Mr. Polk "believes" Target.com "needs work." (Reply Br. at 6:16-23.)

[4] The citation to Mr. Letourneau's testimony regarding the importance of keyboard access to the blind is technically accurate (Reply Br. at 5:3-4) (unlike the other citations), but it is also misleading: Mr. Letourneau made clear that he could *not* testify whether a particular website was inaccessible without evaluating the website. (Letourneau Depo. at 82:4-11.)

TARGET'S SURREPLY BRIEF IN SUPPORT OF OPP. TO PLAINTIFFS' MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 06-01802 MHP
sf-2160008

8

1  In the apparent hope of rehabilitating their expert, NFB now twists Mr. Letourneau's testimony to argue that he believes that a blind person's ability to access a website can be determined merely by looking at the "content and structure" of the website — *i.e.*, by looking at whether the website is compliant with guidelines. But the single line of testimony NFB cites is plucked from its context and ignores multiple passages in which Mr. Letourneau testified that (1) noncompliance and usability are distinct concepts and every website must be evaluated individually to determine usability, because compliance *does not* equate to whether or not a blind user can access a website (Letourneau Depo. at 31:14-21, 48:7-22, 98:1-8, 100:8-102:1) and (2) he measures "usability by performing usability tests with subjects who are going to be using the website" (*id.* at 102:19-25) — which is precisely what Dr. Thatcher *did not do*. In short, nothing in Mr. Letourneau's testimony undercuts Target's point that Dr. Thatcher's opinion that Target.com is "inaccessible" is entitled to *no weight* because Dr. Thatcher *only evaluated compliance issues*.

Second, NFB falsely claims that Dr. Thatcher and Mr. Letourneau use the same website accessibility guidelines. The cited testimony of Mr. Letourneau states that he has used WCAG and Section 508 in evaluating websites,[5] but (1) it does not say what *combination* of those guidelines he uses, (2) it does not say those are the *only* guidelines he uses, and (3) NFB fails to cite multiple passages in which Mr. Letourneau explains that he uses *different* guidelines depending on what his client requests and that he evaluates websites based on criteria *outside of WCAG and Section 508*. (*Id.* at 13:10-14, 45:16-19, 86:10-87:2, 119:19-120:6, 122:20-123:8.) NFB's apparent attempt to demonstrate to the Court that "experts agree" on the appropriate website accessibility guidelines is therefore without foundation.[6]

---

[5] WCAG and Section 508 are two potential sources of website accessibility guidelines that are identified by Mr. Thatcher and discussed in the parties' briefing. It bears repeating that no one contends that Target.com is subject to either set of guidelines.

[6] For the same reasons, NFB's bullet point stating that Mr. Letourneau testified that WCAG provides the necessary information to make a website accessible (Reply Br. at 4:21-22) is false and misleading. The testimony NFB cites does not support NFB's assertion.

TARGET'S SURREPLY BRIEF IN SUPPORT OF OPP. TO PLAINTIFFS' MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 06-01802 MHP
sf-2160008

9

1   <u>Third, NFB falsely suggests that Mr. Letourneau testified that "alt text for active images"
2   is required to make a website accessible.</u> While Mr. Letourneau testified that "in general" the "alt
3   text" guideline was important, nothing in his testimony supports the conclusion that lack of "alt
4   text" makes a website inaccessible. (*See* Letourneau Depo. at 20:11-17, 53:7-16 (attached to
5   Paradis Decl.).)

6   <u>Fourth, NFB falsely claims that Mr. Letourneau testified that "labeling of form elements"
7   is "necessary for access in any website."</u> The cited testimony simply does *not* say what NFB
8   contends it says; rather, it says only that the purpose of labeling forms is to make them easier to
9   fill out. (Letourneau Depo. at 53:19-55:3 (attached to Paradis Decl.).) Furthermore, NFB omits
10  Mr. Letourneau's testimony that a form can be usable by a blind person even if it does not comply
11  with the form labeling requirements of various guidelines, and that he could not determine
12  whether a form is usable without first reviewing the website. (Letourneau Depo. at 60:3-60:25,
13  72:24-74:13.)

14  <u>Fifth, NFB falsely claims that Mr. Letourneau testified that "in-page navigation" is a
15  feature "necessary for access by the blind."</u> The cited testimony does not say what NFB contends
16  it says. In fact, in the cited testimony Mr. Letourneau made clear that he could only speculate as
17  to whether a blind person required certain navigation features in accessing websites. (*Id.* at
18  33:12-19.) Furthermore, NFB omits several passages that are contrary to its characterization. For
19  example:

20      Q.      [W]hat about moving within a page, are there any basic site
                navigation tools that failing to include in a website would
21              make the page inaccessible to blind users?

22      [Objections omitted.]

23      A.      In my opinion, no.

24

25  (*Id.* at 40:3-9.) In other omitted passages, Mr. Letourneau testified that there are many ways to
26  design a web page so it can be navigated by a blind person; "headings" (which is what NFB says
27  Target.com lacks) are *not* a basic navigation tool and may not even be necessary depending on the
28  particular website. (*Id.* at 34:11-37:21, 39:4-13, 92:8-19.)

1        <u>Sixth</u>, NFB falsely and misleadingly claims that Mr. Letourneau testified that "there is no conflict between the applicable guidelines" and "no reason why a website can't be brought into compliance with both WCAG and 508." NFB's characterization of this testimony is false and misleading, for several reasons. First, in a passage omitted by NFB, Mr. Letourneau testified that he had no opinion regarding whether Target.com (or any other specific website) could be re-programmed to comply with WCAG and 508, because he was not asked to evaluate Target.com. (*Id.* at 111:20-112:9.) Second, Mr. Letourneau testified (consistently with Dr. Thatcher) that there *are* differences between WCAG and Section 508. (*Id.* at 109:2-4, 130:13-131:4.) Third, the cited passages say nothing about whether there are "reason[s]" (*see* Reply Br. at 5:5) why a website could or could not be brought into compliance. Finally, in several of the cited passages, Mr. Letourneau clearly stated that he was speculating. For example, NFB cites as evidence the following passage:

> Q.   Is it fair to say that that remains a requirement for compliance with 508 and WCAG 1.0?
>
> A.   I can only speculate. I don't know. I am assuming it will, but I don't know for sure.

(Letourneau Depo. at 128:24-129:2 (attached to Paradis Decl.).)

      <u>Seventh</u>, NFB falsely claims that Mr. Letourneau testified that "websites can and should be made easily usable by and accessible to *everyone*" even if they employ older technology. The cited passages do not support this characterization of Mr. Letourneau's testimony. Responding to counsel's vague questioning, Mr. Letourneau testified that, "ideally," his understanding of "access" would include access by people using older technologies. (Letourneau Depo. at 77:16-78:7 (attached to Paradis Decl.).) Nowhere did he testify that websites "can and should" be made "easily usable by and accessible to everyone."

      Finally, NFB "sums up" its misleading rendition of Mr. Letourneau's testimony by telling the Court that "defendant's own expert conceded that a website containing [the barriers identified by Dr. Thatcher] is likely to be difficult if not impossible for ordinary blind people to use." (Reply Br. at 5). That statement is false: Mr. Letourneau *repeatedly* made clear to counsel that

TARGET'S SURREPLY BRIEF IN SUPPORT OF OPP. TO PLAINTIFFS' MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 06-01802 MHP
sf-2160008

11

1  he could only speculate about whether a particular "barrier" would prevent access to Target.com
2  or to any website without first reviewing the website. (Letourneau Depo. at 63:9-22, 65:11-20,
3  67:7-68:11, 72:3-13, 73:23-74:13, 76:5-19.) To quote just one of these examples:

> Q. Is there a point at which the number of access barriers that a blind person encounters increases on a website that you would say that website is inaccessible to a blind user?
>
> [Objections omitted.]
>
> A. I would have to actually evaluate an actual case to answer that completely.

(*Id.* at 82:4-11.) Thus, Mr. Letourneau's testimony in no way supports Dr. Thatcher's opinion that Target.com is inaccessible — an opinion that, as pointed out elsewhere, has no foundation.

### B. Contrary To NFB's Characterizations, Mr. Letourneau Testified That He Could Only Speculate About Dr. Thatcher's Opinions Regarding The Accessibility Of Target.com

Mr. Letourneau submitted a declaration making three points, each of which had already been conceded by NFB's expert, Dr. Thatcher: (1) there are multiple sources of website accessibility guidelines, which are not all consistent; (2) website accessibility depends on a number of factors other than the website's design; and (3) there are many screen readers available on the market and more recent technology makes it easier to use websites. (Letourneau Decl. ¶¶ 5-13.) Mr. Letourneau did not evaluate Target.com, because that was not the purpose of his declaration.

Nonetheless, rather than ask Mr. Letourneau about the topics in his declaration, NFB's counsel tried to force Mr. Letourneau at his deposition to speculate about the accessibility of Target.com. Now, NFB mischaracterizes Mr. Letourneau's answers to counsel's inherently vague and hypothetical questions in an attempt to demonstrate that Mr. Letourneau believes Target.com is inaccessible and that it can be made accessible by implementing specific guidelines. That is simply not Mr. Letourneau's opinion, as demonstrated by the following passage (which is one of many such passages):

> Q. So the question is, do you have any basis to dispute this finding?

TARGET'S SURREPLY BRIEF IN SUPPORT OF OPP. TO PLAINTIFFS' MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 06-01802 MHP
sf-2160008

12

| | | |
|---|---|---|
|1| A. | I can neither confirm nor deny anything Dr. Thatcher has said about this website. |
|2| | |
|3| Q. | So that would apply generally to all of Dr. Thatcher's findings? |
|4| A. | That's correct. |

(Letourneau Depo. at 67:21-68:2; *see also* 15:1-4, 63:13-64:11, 111:20-112:9)

NFB also makes the ludicrous argument that the decision not to have Mr. Letourneau evaluate Target.com suggests that, if he had reviewed Target.com, he would have found the website to be inaccessible to blind people. (Reply Br. at 5.) NFB cites this Court's decision in *Lieber v. Macy's West, Inc.*, 80 F. Supp. 2d 1065 (N.D. Cal. 1999), as its only support, but in *Lieber* the Court stated only that defendant's decision not to call a previously disclosed expert at trial indicated that the expert would not support defendant's case. That holding is irrelevant here. It cannot be the law that, whenever an expert does not give an opinion on a particular topic, the court can infer the opinion would have supported the opposing party.

### IV. NFB BADLY MISCHARACTERIZES THE TESTIMONY OF TARGET EMPLOYEE GREGG BODNAR

Target submitted the declaration of a technology services employee, Gregg Bodnar, to explain that the web pages on Target.com are administered and hosted by numerous different entities and that modifications to the website would have effects outside of California. (Bodnar Decl. ¶¶ 2-5.) Despite the narrow focus of his declaration, NFB asked Mr. Bodnar at his deposition to speculate on a number of issues that go well beyond Mr. Bodnar's technology services role. NFB badly twists the testimony it obtained in response to these questions.

NFB argues that there would be no "financial cost or burden that would make it impractical or undesirable from Target's perspective" to make changes to its website, because Mr. Bodnar could not identify any costs or burdens. (Reply Br. at 9-10.) That characterization is plainly unfair and misleading. In the passages cited, Mr. Bodnar indicated to counsel that he could only speculate about the issue of costs and burdens. For example:

Q. Is there any particular cost, burdens, either financial or administrative, that you are aware of that would make it

TARGET'S SURREPLY BRIEF IN SUPPORT OF OPP. TO PLAINTIFFS' MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 06-01802 MHP
sf-2160008

13

>
> undesirable or prohibitive to provide titles on the links on the website for blind users?
>
> [Objections omitted.]
>
> A.  I can only guess.
>
> Q.  You're not aware of anything else?
>
> A.  No.

(Bodnar Depo. at 97:6-15 (attached to Paradis Decl.).)  Yet, counsel continued to question him, failing even to establish a foundation regarding whether Mr. Bodnar had ever evaluated potential costs and burdens.  There is plainly no basis for NFB to use Mr. Bodnar's "I don't know" answers as evidence that there would be no costs or burdens to modify Target.com.[7]

NFB also cites, without any explanation, the following testimony from Mr. Bodnar as "undercut[ting]" Target's interstate commerce clause argument (Reply Br. at 10):

> Q.  But am I correct as you sit here today, you don't know of any specific way in which making accessibility modifications to Target.com to improve access for blind people would affect transactions between Target.com and the Internet users in any part of the country, other than to make the website more accessible to blind people?
>
> [Objections omitted.]
>
> A.  I don't know of any.

(Bodnar Depo. at 116:25-117:10 (attached to Paradis Decl.).)  The testimony in no way "undercuts" Target's commerce clause argument, which is that NFB urges the Court to interpret California's access statutes in a manner that would impermissibly regulate conduct beyond California's borders.  The fact that Mr. Bodnar could not identify specific ways in which unspecified "modifications" to Target.com would affect transactions is simply irrelevant to that argument.

---

[7] NFB uses Mr. Bodnar's testimony in the same misleading way when it argues that "Mr. Bodnar did not know of any provisions in either the Section 508 or WCAG guidelines that would be impracticable, or create a financial or administrative burden, for Target." (Reply Br. at 10.)  It is clear from the testimony cited that Mr. Bodnar could only guess at the answers to counsel's questions. (Bodnar Depo. at 106:15-107:23 (attached to Paradis Decl.).)

TARGET'S SURREPLY BRIEF IN SUPPORT OF OPP. TO PLAINTIFFS' MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 06-01802 MHP
sf-2160008

14

## V. NFB'S ASSERTION THAT TARGET "MISCHARACTERIZED MUCH OF THE EVIDENCE" IN ITS OPPOSITION BRIEF IS UNSUPPORTED

Ironically, the introduction to NFB's reply brief asserts that "Target's opposition papers mischaracterize much of the evidence." (Reply Br. at 1.) It is apparent, however, that this is nothing more than an unfounded, knee-jerk accusation. No where in the reply brief does NFB identify a single instance of Target mischaracterizing evidence. In its statement of facts, NFB says that "Target repeatedly misrepresents the experiences of NFB's declarants who have tried to use Target.com" (*id.*), but nothing from Target's opposition brief is even cited. Every bit of testimony in Target's opposition brief is accurately and fairly cited.

Dated: July 18, 2006

ROBERT A. NAEVE
DAVID F. MCDOWELL
STUART C. PLUNKETT
SARVENAZ BAHAR
MICHAEL J. BOSTROM
MORRISON & FOERSTER LLP


By:   /S/
      _____
      Robert A. Naeve

      Attorneys for Defendant
      TARGET CORPORATION