1   HAROLD J. McELHINNY (CA SBN 66781)
    MATTHEW I. KREEGER (CA SBN 153793)
2   KRISTINA PASZEK (CA SBN 226351)
    HMcElhinny@mofo.com
3   MKreeger@mofo.com
    KPaszek@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone: (415) 268-7000
6   Facsimile: (415) 268-7522

7   Attorneys for Defendant
    TARGET CORPORATION
8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13  NATIONAL FEDERATION OF THE BLIND,        Case No.    C06-01802 MHP
    the NATIONAL FEDERATION OF THE
14  BLIND OF CALIFORNIA, on behalf of their   **TARGET CORPORATION'S**
    members, and Bruce F. Sexton, on behalf of  **OPPOSITION TO PLAINTIFFS'**
15  himself and all others similarly situated,  **MOTION FOR CLASS**
                                                **CERTIFICATION**
16                Plaintiffs,
                                              Date:    April 12, 2007
17        v.                                  Time:    2:30 PM
                                              Judge:   Hon. Marilyn Hall Patel
18  TARGET CORPORATION,

19                Defendant.

20

21

22

23

24

25

26

27

28

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

I.    THE COURT'S RULING ON TARGET'S MOTION TO DISMISS HAS
      NARROWED THE SCOPE OF THIS ACTION .......................................................... 2

II.   THE MEMBERS OF THE PUTATIVE CLASS AND THE NATURE OF
      THEIR CLAIMS ............................................................................................................. 3

      A.    The Named Plaintiffs ............................................................................................ 3

            1.    Bruce Sexton .............................................................................................. 3

            2.    NFB and NFB California ........................................................................... 4

      B.    The Remaining Putative Class Members .............................................................. 5

            1.    The Putative Class Members Complain that they Cannot
                  Purchase Items Directly from Target.com ................................................. 5

            2.    Declarants' Attempts to Use Gift Registries ............................................. 7

            3.    Putative Class Members' Attempts to Use the Weekly
                  Advertisement ............................................................................................ 8

            4.    Putative Class Members' Attempts to Use Target.com to
                  Preview Products Before Visiting a Target Retail Store ............................ 8

            5.    Putative Class Members' Attempts to Use the On-line
                  Pharmacy .................................................................................................... 9

            6.    Putative Class Members' Attempts to Use Upload Digital
                  Photo Files for Printing .............................................................................. 9

III.  POST-FILING MODIFICATIONS TO TARGET.COM ............................................... 9

ARGUMENT ........................................................................................................................ 10

I.    PLAINTIFFS' CLASS DEFINITION PRECLUDES CERTIFICATION ................... 11

      A.    Plaintiffs Seek Certification of a Class Composed of Individuals
            Whose Claims Have Been Dismissed .................................................................. 11

      B.    The Putative Class Is Not Adequately Defined and Clearly
            Ascertainable ...................................................................................................... 13

II.   PLAINTIFFS HAVE NOT SHOWN THAT THEIR CLAIMS ARE
      TYPICAL ...................................................................................................................... 14

A.    The Named Plaintiffs Have Demonstrated  No Legally Cognizable Injury .................................................................................................... 14

B.    The Putative Class Is Diverse ................................................................... 15

III.   PLAINTIFFS CANNOT ADEQUATELY PROTECT THE INTERESTS OF THE CLASS ...................................................................................................... 16

IV.   NUMEROSITY HAS NOT BEEN ESTABLISHED ....................................... 16

V.    Plaintiffs' Damages Subclass Cannot Be Certified Under Rule 23(b)(2) ........ 18

A.    NFB and NFB California Lack Standing  to Assert Claims for Damages ..................................................................................................... 19

B.    Damages Are the Predominant Form of Relief Sought by the California Subclass ..................................................................................... 19

C.    The Calculation of Statutory Damages Would Require Complex, Individualized Inquiries ............................................................................ 20

D.    Plaintiffs Have Not Shown that the Rule 23(a) Prerequisites for Certification Have Been Separately Satisfied for the Damages Subclass ...................................................................................................... 23

VI.   THE LIMITATIONS ON A REPLY BRIEF ..................................................... 23

VII.  THE CERTIFICATION DECISION MAY BE DEFERRED UNTIL AFTER A TEST CASE ...................................................................................... 24

CONCLUSION ........................................................................................................... 25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Adashunas v. Negley,*
    626 F.2d 600 (7th Cir. 1980) ............................................................................................. 13

5

*Alaska Fish & Wildlife Fed. & Outdoor Council, Inc. v. Dunkle,*
    829 F.2d 933 (9th Cir. 1987) ............................................................................................. 19

6

7

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ..................................................................................................... 16, 22

8

*Arnold v. United Artists Theater Circuit, Inc.,*
    158 F.R.D. 439 (N.D. Cal. 1994) ...................................................................................... 20

9

10

*Bano v. Union Carbide Corp.,*
    361 F.3d 696 (2d Cir. 2004) ............................................................................................. 19

11

*Bates v. United Parcel Service,*
    204 F.R.D. 440 (N.D. Cal. 2001) ...................................................................................... 14

12

13

*Betts v. Reliable Collection Agency, Ltd.,*
    659 F.2d 1000 (9th Cir. 1981) .......................................................................................... 23

14

*Broadcast Music, Inc. v. Moor-Law, Inc.,*
    No. 77-325, 1980 WL 1986 (D. Del. Oct. 17, 1980) ....................................................... 24

15

16

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.,*
    141 F.R.D. 144 (N.D. Cal. 1991) ...................................................................................... 11

17

*Contratto v. Ethicon, Inc.,*
    227 F.R.D. 304 (N.D. Cal. 2005) ...................................................................................... 23

18

19

*Corum v. Fifth Third Bank of Kentucky, Inc., No. Civ. A. 3:99CV-268-H,*
    2004 WL 594996 (W.D. Ky. Mar. 3, 2004) ..................................................................... 24

20

*De Bremaecker v. Short,*
    433 F.2d 733 (5th Cir. 1970) ............................................................................................. 13

21

*East Texas Motor Freight Sys. Inc. v. Rodriguez,*
    431 U.S. 395 (1977) ........................................................................................................... 14

22

23

*Ellis v. Costco Wholesale Corp.,*
    No. C04-03341-MHP, __ F.R.D. __, 2007 WL 127800 (N.D. Cal. Jan. 11, 2007) ......... 23

24

*Garrish v. United Auto., Aerospace, & Agricultural Implement Workers of America,*
    149 F. Supp. 2d 326 (E.D. Mich. 2001) ........................................................................... 13

25

26

*General Tel. Co. v. Falcon,*
    457 U.S. 147 (1982) ..................................................................................................... 14, 23

27

28

*Gustafson v. Polk County*,
 226 F.R.D. 601 (W.D. Wis. 2005) ........................................................................ 13

*Hagen v. City of Winnemuca*,
 108 F.R.D. 61 (D. Nev. 1985) ............................................................................. 13

*Hunt v. Washington State Apple Adver. Comm'n*,
 432 U.S. 333 (1977) .......................................................................................... 19

*In re Urethane Antitrust Litig.*,
 237 F.R.D. 440 (D. Kan. 2006) ........................................................................... 13

*Katz v. Carte Blanche Corp.*,
 496 F.2d 747 (3d Cir. 1974) ............................................................................... 24

*La Mar v. H&B Novelty & Loan Co. v. Allegheny Airlines*,
 489 F.2d 461 (9th Cir. 1973) .............................................................................. 14

*Molski v. Gleich*,
 318 F.3d 937 (9th Cir. 2003) .......................................................................... 19, 20

*Oshana v. Coca-Cola Co.*,
 225 F.R.D. 575 (N.D. Ill. 2005) .......................................................................... 13

*Rutstein v. Avis-Rent-A-Car Sys., Inc.*,
 211 F.3d 1228 (11th Cir. 2000) ....................................................................... 22, 23

*Sweet v. Pfizer*,
 232 F.R.D. 360 (C.D. Cal. 2005) ...................................................................... 23, 24

*Warth v. Seldin*,
 422 U.S. 490 (1975) .......................................................................................... 19

*Zinser v. Accufix Research Inst., Inc.*,
 253 F.3d  1180 (9th Cir. 2001) ...................................................................... 10, 11

## STATUTES

42 U.S.C.
 § 12188 ........................................................................................................... 20

Fed. R. Civ. P.
 Rule 23(a) ............................................................................... 14, 16, 18, 23
 Rule 23(b)(2) ............................................................................ 2, 18, 19, 21
 Rule 23(b)(3) ............................................................................................. 21

Cal. Civ. Code
 § 52 ................................................................................................................ 20
 § 54.3 ............................................................................................................. 20

## OTHER AUTHORITIES

3 *Newberg on Class Actions* § 9.8 (4th ed.) ...................................................... 24

1

## **INTRODUCTION**

2        Over a year ago, Plaintiffs filed the instant action, alleging that the Target.com

3    website was inaccessible.  In the time that has elapsed since, two events substantially

4    changed the complexion of this action.  First, this Court granted Target's motion to dismiss

5    in part, substantially narrowing Plaintiffs' claims.  In particular, the Court ruled that Plaintiffs

6    could go forward with their claims only to the extent based on allegations that "the

7    inaccessibility of Target.com impedes full and equal enjoyment of the goods and services

8    offered in Target stores."  The Court dismissed Plaintiffs' claims to the extent they are based

9    on allegations "unconnected to Target stores, which do not affect the enjoyment of goods and

10   services offered in Target stores."  Second, since the filing of this lawsuit, Target.com has

11   substantially modified its website, making the site even more accessible, and removing the

12   supposed "access barriers" that Plaintiffs have identified.

13       Plaintiffs' motion for class certification simply ignores these developments.

14   Plaintiffs' proposed class definition — "all legally blind individuals in the United States (or

15   California) who have attempted to access Target.com" — avoids the Court's ruling,

16   sweeping within its bounds individuals that accessed the website without being denied any

17   goods or services offered at Target's retail stores.  In addition, Plaintiffs make no attempt to

18   show that there is a numerous class of individuals that has suffered the limited kind of injury

19   that survived the motion to dismiss.  Plaintiffs rely solely on declarations — many of which

20   were signed before this Court granted in part the motion to dismiss — from individuals who

21   offer generalized complaints about problems using the Target.com website, without offering

22   any facts to show that these individuals were denied *any* goods or services in Target's retail

23   stores.  Indeed, the evidence shows that the only individual plaintiff, Plaintiff Bruce Sexton,

24   has not suffered any legally cognizable harm and that his claims cannot survive this Court's

25   previous ruling.[1]

26   ———————————————

[1] Target has filed a motion for summary judgment along with this opposition, seeking
27   dismissal of Mr. Sexton's claims against Target because facts beyond genuine dispute show
     that Mr. Sexton cannot prevail.

28

1    Moreover, despite the fact that their own internal documents concede that the

2    Target.com website is now accessible, Plaintiffs ignore the fact that Target.com has been

3    substantially revised, eliminating the features that plaintiffs found problematic when they

4    filed this action.  Nevertheless, in an effort to win certification under Rule 23(b)(2), Plaintiffs

5    claim that their primary objective is injunctive and declaratory relief.  The driving force

6    behind this litigation is Plaintiffs' pursuit of damages, and Plaintiffs should not be permitted

7    to evade the stringent requirements for certifying such a class action by pretending otherwise.

8    Plaintiffs' motion for class certification should be denied.

9    **BACKGROUND**

10   **I.     THE COURT'S RULING ON TARGET'S MOTION TO DISMISS HAS
         NARROWED THE SCOPE OF THIS ACTION**

11

12   The Amended Complaint in this action alleges that the inaccessibility of the

13   Target.com website to persons who are blind constitutes a violation of Title III of the

14   Americans with Disabilities Act, 42 U.S.C. section 12101 *et seq.*, California's Unruh Civil

15   Rights Act, California Civil Code section 51 *et seq.*, and California's Blind and Other

16   Physically Disabled Persons Act, California Civil Code section 51 *et seq.*  Target moved

17   under Federal Rule of Civil Procedure 12(b)(6) to dismiss this action, arguing, *inter alia*, that

18   these statutes do not apply to websites.  The Court considered the parties' briefing, as well as

19   oral argument, and issued a 26-page order that granted in part and denied in part Target's

20   motion and also denied Plaintiffs' motion for a preliminary injunction.  The Court ruled that:

21        [T]o the extent that Plaintiffs allege that the inaccessibility of
          Target.com impedes full and equal enjoyment of the goods and
22        services offered in Target stores, the plaintiffs state a claim,
          and the motion to dismiss is denied.  To the extent that
23        Target.com offers information and services unconnected to
          Target stores, which do not affect the enjoyment of goods and
24        services offered in Target stores, the plaintiffs fail to state a
          claim under Title III of the ADA.  Defendant's motion to
25        dismiss this portion of plaintiffs' ADA claim is granted.

26   (Order at 11, Sept. 6, 2006.)  Plaintiffs' state law claims, as they have been articulated thus

27   far, are dependent on their ADA claim.

28

1
2

II.    **THE MEMBERS OF THE PUTATIVE CLASS AND THE NATURE OF THEIR CLAIMS**

3
4    In support of their motion for class certification, Plaintiffs have submitted twenty-two
5    declarations of putative class members.[2]  Significantly absent from these declarations are
6    facts showing that these individuals' experience with Target.com impeded their enjoyment of
     goods and services offered in Target's retail stores.

7
8    Plaintiffs have conceded that they are required to show a "nexus" between
9    Target.com and Target retail stores.  (Plaintiffs' Motion for Class Certification ("Pls.' Mot.")
10    at 13.)  Yet, they focus not on the accessibility of Target's retail stores, but on the
11    accessibility of the Target.com website.  (*Id.* at 16.) (stating that "this lawsuit challenges the
     accessibility of one website" and the principal barriers at issuer are "website barriers").

12    A.    **The Named Plaintiffs**

13    1.    **Bruce Sexton**

14    Bruce Sexton is the only individual named plaintiff.  Mr. Sexton's testimony does not
15    establish that any inaccessibility of Target.com ever impeded his full and equal enjoyment of
16    the goods and services offered in Target retail stores.  In fact, his testimony proves that
17    nothing about his experience of Target.com impeded access to goods and services at Target
18    retail stores.

19    Mr. Sexton resides in Berkeley, California, and has been legally blind since birth.
20    (Declaration of Lawrence Paradis in Support of Plaintiffs' Motion for Class Certification
21    ("Paradis Decl."), Ex. G (Sexton Decl.) ¶ 2.)  Mr. Sexton's declaration states that he "would
22    like to shop at Target.com because having to hire a driver and find someone to travel to the
23    physical retail location with me necessitates a significant expense of time, energy, and
24    money."  (*Id.* at ¶ 28.)  As of April 2006 he found the website difficult to use, and as a result

25
26
27
       [2] Some of the declarations were previously submitted in support of Plaintiffs' motion for a preliminary injunction.  Plaintiffs have simply resubmitted them without acknowledging that this Court previously dismissed the claims they allege.
28

had to travel to the physical store instead.  (*Id.* at ¶¶ 29-33.)  He does not contend that he encountered any difficulties in finding or purchasing items at any of the physical retail stores.

Mr. Sexton describes a specific incident from the summer of 2005 when he attempted to purchase towels from Target.com.  (*Id.* at ¶ 33.)  Because the search results on the website "were not matched with the different product descriptions," Mr. Sexton explained:  "I could not determine which product I wanted to purchase.  I became so frustrated that I did not continue to the point where I could even attempt to complete a transaction on Target.com." (*Id.*)  As a result, Mr. Sexton purchased his desired items at a Target retail store without incident:  "Even though I could not complete the transaction online, I purchased the towels I needed along with laundry soap, hand soap, Kleenex tissue, toilet paper, shampoo, conditioner, toothpaste, and other items at one of Target's physical locations."  (*Id.*)

Mr. Sexton also states:  "I have been told that there are many useful store-related features on the Target.com website, including weekly advertisements, which I would like to use."  (*Id.* at ¶ 32.)  "When I attempted to access the weekly ads, I was unable to do so because the web page is inaccessible."  (*Id.*)  Mr. Sexton does not identify, however, any problem he encountered at a Target retail store that resulted from his inability to access the weekly advertisement online.  Moreover, personnel staffing Target's 1-800 number and Target retail stores are available to describe the contents of the weekly advertisement to those who inquire.  (Declaration of Trish Perry in Support of Target Corporation's Opposition to Plaintiffs' Motion for Class Certification ("Perry Decl.") ¶ 6.)  Mr. Sexton does not claim that he tried to access the content of the weekly advertisement by these other means.

### 2.    NFB and NFB California

The National Federation of the Blind ("NFB") is a national advocacy organization of blind persons in the United States.  (Paradis Decl., Ex. E (Maurer Decl.) ¶ 5.)  Its purpose is "to promote the general welfare of the blind by (1) assisting the blind in their efforts to integrate themselves into society on equal terms and (2) removing barriers and changing social attitudes, stereotypes, and mistaken beliefs that sighted and blind persons hold concerning the limitations created by blindness and that result in the denial of opportunity to

1    blind persons in virtually every sphere of life." (*Id.*)  The National Federation of the Blind of

2    California ("NFB California") is a state affiliate of the NFB that carries out the NFB's

3    objectives at the state level.  (Declaration of Robert Stigile in Support of Plaintiffs' Motion

4    for Class Certification ("Stigile Decl.") ¶ 6.)  NFB California has approximately 300-400

5    members, the vast majority of whom are blind persons.  (*Id.* at ¶ 7.)

6         Because NFB and NFB California are not individuals, they are not members of the

7    putative class, as defined by Plaintiffs.  Plaintiffs nonetheless argue that NFB and NFB

8    California "can sue on their own behalf because of a drain in their financial and

9    administrative resources resulting from Target's actions and inactions," (Pls.' Mot. at 20

10   n.75), although they submit no evidence of any such drain on their resources.  Plaintiffs also

11   assert that NFB can sue on behalf of its members, some of whose declarations have been

12   submitted in support of Plaintiffs' motion.

13                    **B.    The Remaining Putative Class Members**

14        In addition to the declaration of Mr. Sexton, Plaintiffs resubmitted seven declarations

15   originally filed in support of Plaintiffs' motion for a preliminary injunction, and submitted

16   fourteen new declarations from additional putative class members.

17                    **1.    The Putative Class Members Complain that they Cannot
                              Purchase Items Directly from Target.com**
18

19        None of the declarants states that the inaccessibility of Target.com impedes their

20   access to the goods and services offered at Target retail stores.[3]  Instead, the declarants

21   complain that they cannot purchase items directly from Target.com.  (App, Ex. C (Dunham

22   Decl.) ¶ 14 ("I want to access Target.com primarily because I want to purchase items directly

23   _____

24        [3] To the contrary, the evidence shows that the goods and services offered at Target
     retail stores are accessible.  Target's customer service and the shopping aides at its retail
     stores have been praised by putative class members, many of whom shop at the retail stores
25   regularly.  (Appendix of Additional Class Members ("App."), Ex. B (Bruns Decl.) ¶ 10, Ex.
     M (Sanders Decl.) ¶ 11; Declaration of Matthew I. Kreeger in Support of Target
26   Corporation's Opposition to Plaintiffs' Motion for Class Certification ("Kreeger" Decl."),
     Ex. A (Deposition of Michelle Bruns ("Bruns Dep.")) 11:5-10; Kreeger Decl., Ex. B
27   (Deposition of Steven Jacobson) 61:20-62:14; Kreeger Decl., Ex. C (Deposition of Christine
     Thomas) at 41:21-42:9; Kreeger Decl., Ex. D (Deposition of Ken Volonte) 35:23-36:4.)

28

from the website."); App., Ex. G (Clegg Decl.) ¶ 13 ("I would prefer to shop at Target.com rather than a physical Target store."); App., Ex. K (Morais Decl.) ¶ 13 ("I would like to shop at Target.com because we do not have a local Target store.").) The putative class members express a preference for shopping on-line and explain that shopping at Target retail stores is inconvenient. (App., Ex. F (Dillon Decl.) ¶¶ 11-12 ("I find it inconvenient to travel to a physical Target store," and "I find shopping online to be faster and more convenient than shopping in a physical store."); App., Ex. A (Bailey Decl.) ¶¶ 12, 14. ("If I am given the opportunity to shop online, I do," and "it "is inconvenient for me to travel to a physical Target store."); App., Ex. E, (Czarnecki Decl.) ¶ 13 ("I would like to shop at Target.com because it would be nice not to have to physically carry these products home with me.").)

In a similar vein, the testimony regarding difficulties encountered at Target.com largely focuses on the difficulties of making purchases directly from the website. (App., Ex. H (Lewis Decl.) ¶¶ 17-21 (describing difficulties in purchasing from Target.com a DVD set that he knew was available at Target retail stores); App., Ex. D (Crowley Decl.) ¶ 15 (describing failed attempt to purchase golf balls from Target.com); App., Ex. F (Dillon Decl.) ¶ 19 (describing failed attempt to purchase garbage bin from Target.com). Declarants also discuss their desire to purchase directly from Target.com items that are not even available for sale at Target retail stores. App., Ex. J (McNally Decl.) ¶ 13 (explaining that she would like to use Target.com to purchase "Keebler Danish Wedding Cookies"); App., Ex. N (Sanders Decl.) ¶ 15 (stating that she "wanted to use Target.com to buy food products); Perry Decl. ¶ 4 (explaining that, unlike Target retail stores, Target.com does not sell food items (with the limited exception of certain gourmet foods, candy, and gift baskets), and Target.com does not sell Keebler Danish Wedding Cookies).)

The complaint of these declarants is not that their enjoyment of goods and services of Target's retail stores has been impeded by the inaccessibility of Target.com. Rather, they want to shop at Target.com *instead of* shopping at Target's retail stores.

### 2.    Declarants' Attempts to Use Gift Registries

Plaintiffs have not demonstrated that any putative class member was denied full enjoyment of the gift registry services available at Target retail stores. Several declarants members testified that they were interested in using the wedding and baby registry features of Target.com. Mr. Ayala and Mr. Elder each testified to having attempted unsuccessfully to use Target.com to purchase a gift from a wedding registry. (Paradis Decl., Ex. H (Ayala Decl.) ¶ 16, Ex. I (Elder Decl.) ¶ 15.) Ms. Bruns, Ms. Dillon, and Ms. Morais testified that they knew friends with gift registries at Target.com. Ms. Bruns stated: "My friends have used Target.com to coordinate their baby showers and gift registries. I was disappointed to discover that I could not purchase gifts for these events due to the inaccessibility of Target.com." (App., Ex. B (Bruns Decl.) ¶ 17.) Ms. Dillon explained: "When my friend used Target.com to set up her wedding registry, I avoided using the site because I believed that I would be unable to purchase gifts through it." (App., Ex. F (Dillon Decl.) ¶ 18.) Ms. Marais testified: "[M]any people I know have had their baby shower registries through Target.com, and I would like to purchase gifts through the site" and "I found that I could not access the Baby Shower registry on Target.com." (App., Ex. K (Morais Decl.) ¶¶ 13, 15.)

These individuals do not, however, say that they were impeded in any way from making gift registry purchases at retail stores. When questioned at her deposition, Ms. Dillon testified that she never tried to purchase a gift from the wedding registry from a Target retail stores. (Kreeger Decl., Ex. E (Deposition of Shannon Dillon) 13:10-17.) In fact, there is no barrier preventing anyone from purchasing gifts at Target retail stores that are listed on the gift registries. (Perry Decl.¶ 5.) Indeed, Ms. Bruns admitted to this, testifying that on the occasions when she was unable to purchase registry gifts available from Target.com, she instead purchased them at a Target retail store. (Kreeger Decl., Ex. A (Bruns Dep.) 8:12-10:4.) Mr. Ayala testified that because he found Target.com to be inaccessible, he "had to find time to go to the physical store in person" in order to purchase a wedding gift listed on the registry. (Paradis Decl., Ex. H (Ayala Decl.) ¶ 16.)

1

### 3.     Putative Class Members' Attempts to Use the Weekly Advertisement

2

3     Plaintiffs have not demonstrated that any putative class member was denied full

4     enjoyment of goods and services available at Target retails stores as a result of an inability to

5     access the local weekly advertisement on Target.com.

6     Some putative class members testified that they would be interested in using

7     Target.com to access the local weekly advertisement.  Personnel staffing Target's 1-800

8     number and Target retail stores are available to describe the contents of the weekly

9     advertisement to those who inquire about it.  (Perry Decl. ¶ 6.)

10     Only two declarants, Mr. Sexton and Mr. Ayala, reported that they unsuccessfully

11     attempted to access the weekly advertisements page on Target.com, and no declarant

12     identified any problem he encountered at a Target retail store that resulted from an inability

13     to access the weekly advertisement online.  (Paradis Decl., Ex. G (Sexton Decl.) ¶ 32, Ex. H

14     (Ayala Decl.) ¶ 18.)  Mr. Ayala testified in his deposition that this feature "was not

15     something [he] was specifically looking for," but rather he was "just curious [as to] what

16     have they got on sale."  (Kreeger Decl, Ex. F (Deposition of Robert Ayala) 44:17-18.)

17

### 4.     Putative Class Members' Attempts to Use Target.com to Preview Products Before Visiting a Target Retail Store

18

19     Not a single putative class member referred to a specific instance in which she was

20     impeded from locating or purchasing an item at a Target retail store by difficulties with the

21     website.  Several putative class members testified that they would like to use Target.com in

22     connection with a visit to a Target retail store in order to preview products before visiting a

23     Target retail store.  (App., Ex. A (Bailey Decl.) ¶ 13; App., Ex. C (Clegg Decl.) ¶ 13; App.,

24     Ex. L (Peterkin Decl.) ¶ 13.)  In fact, however, the majority of the items available for sale at

25     Target retail stores do not appear at Target.com (and conversely, the majority of the items

26     available for sale at Target.com are not sold in Target retail stores).  (Perry Decl. ¶ 4, Kreeger

27     Decl, Ex. G (Declaration of Trish Perry in Support of Target Corporation's Opposition to

28     Motion for Preliminary Injunction) ¶ 6.)

### 5.    Putative Class Members' Attempts to Use the On-line Pharmacy

Some putative class members testify that they would be interested in using Target's on-line pharmacy.  (Paradis Decl., Ex. J (Jacobson Decl.) ¶ 20, Ex. M (Uttermohlen Decl.) ¶ 21, Ex. N (Volonte Decl.) ¶ 17)  The online pharmacy allows one to use Target.com to request that a prescription be transferred or refilled.  (Perry Decl. ¶ 7.)  No putative class member testified that she was unable to refill a prescription because of difficulties with the website.  In fact, requests to refill or transfer a prescription can be made by phone or in person at Target's retail stores.  (*Id.*)

### 6.    Putative Class Members' Attempts to Use Upload Digital Photo Files for Printing

Some putative class members testify that they would be interested in using Target.com's photo printing service.  A partnership between Target and Yahoo! Photo allows guests of Target.com to upload digital photo files and pick up prints of these photos at Target retail stores.  (Perry Decl. ¶ 8.)  No putative class member testified she was impeded from obtaining photo prints because of a problem with the Target.com website.  In fact, digital photo printing is fully available at Target retail stores to those who bring in digital photo files on CD or other storage media.  (*Id.*)

### III.    POST-FILING MODIFICATIONS TO TARGET.COM

Since this action was filed, Target.com has been substantially modified, and the issues identified by the plaintiffs have been eliminated.  For this reason, Plaintiffs carefully avoid any discussion of the current state of the website.  Instead, Plaintiffs' motion states that they "filed this class action lawsuit on February 6, 2006," and "*[a]t that time*, target.com was riddled with access barriers."  (Pls.' Mot. at 5 (emphasis added).)  Indeed, Plaintiffs' discussion in its motion for class certification of the alleged inaccessibility of Target.com relies on an expert report of James Thatcher completed in July 2005.  (*Id.* at 6-9.)  In a declaration dated July 6, 2006, Dr. Thatcher admitted that since he completed that report, Target.com has become more accessible to the blind:

1
2
3
4
5

> In July of 2005 it was impossible to complete a transaction using only the keyboard. As I stated in my declaration, there was a change in the Target.com web site that I detected on April 6, 2006. After that change it seems to be *possible* that a blind person could complete a transaction although it is still highly unlikely. There have been more changes since April 6 and I think it is more likely that a blind user could complete a transaction.

6  (Paradis Decl., Ex. P (Thatcher Decl. ¶ 3, July 7, 2006).)

7  Email correspondence produced by NFB in discovery also evidences the significant

8  improvements to Target.com. In an email dated December 6, 2006, an NFB spokesman

9  wrote:

10
11
12
13
14
15

> You will definitely want to check out the Target Web Site. I see now why you asked me if I had been there recently. I wouldn't have believed it, but they have indeed made some rather drastic improvements. I was able to purchase a compact disk, completing the checkout process with no major problems. Even the home page is quite different. The unlabeled navigation links are gone, replaced with either text or alt-text. There are still a few unlabeled links here and there, but *overall I'd have to say the site is usable by a blind person* . . . . [Also,] the heading function in JAWS now works with the site.

16  (Kreeger Decl., Ex. H (Email, Dec. 2, 2006) (emphasis added).)

17  As explained below, the dynamic character of Target.com complicates this putative

18  class action in ways wholly unacknowledged by Plaintiffs. For proof of damages, it

19  necessitates an inquiry into the timing of each attempted visit to Target.com. The

20  acknowledgement that Target.com is now accessible also refutes Plaintiffs' statement, in

21  support of certification of a subclass, that their primary objective is injunctive and

22  declaratory relief.

23  ## ARGUMENT

24  Plaintiffs bear the burden of demonstrating that this class action satisfies all four

25  requirements of Federal Rule of Civil Procedure 23(a), and at least one of the alternatives

26  under Federal Rule of Civil Procedure 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d

27  1180, 1186 (9th Cir. 2001). Because Plaintiffs have not carried their burden here, this

28

1    putative class action should not be certified.  *See Burkhalter Travel Agency v. MacFarms*

2    *Int'l, Inc.*, 141 F.R.D. 144, 152 (N.D. Cal. 1991).

3    **I.    PLAINTIFFS' CLASS DEFINITION PRECLUDES CERTIFICATION**

4           **A.    Plaintiffs Seek Certification of a Class Composed of
                    Individuals Whose Claims Have Been Dismissed**
5

6           Plaintiffs seek to certify a class defined as "all legally blind individuals in the United

7    States who have attempted to access Target.com."  Plaintiffs also propose to certify a

8    damages subclass limited to members of the larger putative class that resides in California.

9           The proposed primary class and subclass are based on Plaintiffs' original theory of

10   the case, encompassing every blind person who made any attempt to access the Target.com

11   website.  Plaintiffs have thus ignored the Court's ruling on the motion to dismiss, which

12   makes clear that under Ninth Circuit law, a "place of public accommodation" for purposes of

13   Title III of the ADA is a physical place.  (Order at 5, Sept. 6, 2006.)  Thus, the amended

14   complaint states a claim only "to the extent that Plaintiffs allege that the inaccessibility of

15   Target.com impedes full and equal enjoyment of the goods and services offered in Target

16   stores."  (*Id.* at 11.)  Plaintiffs make no effort to account for this in their expansive class

17   definition.

18          The proposed class in this case thus differs markedly from the class that the Court

19   certified in *Lieber v. Macy's West Inc.*  (Paradis Decl., Ex. Q (Order, March 9, 1998).)  In

20   *Lieber*, the Court did not certify a class consisting of every disabled person who ever visited

21   the Macy's stores at issue.  Instead, the Court limited the class to individuals with certain

22   disabilities "*who have been denied access* to Macy's goods and services at Macy's Main

23   store at Union Square."  (*Id.* at 5 (emphasis added).)

24          Included in Plaintiffs' class definition are the twenty-two putative class members on

25   whose declarations Plaintiffs rely.  As discussed above, however, none of these individuals

26   has testified to facts showing that any inaccessibility of Target.com impeded her enjoyment

27   of goods and services offered in Target stores.

28

1    Indeed, Plaintiff's class definition includes all blind individuals who have attempted

2    to access Target.com, even if they accessed the website with no intention of using the goods

3    or services of Target's retail stores.  For example, an individual named "Malcolm" emailed

4    an individual at NFB in April 2006 to report:  "I reviewed the Target web-site but got

5    nowhere.  I wonder, however, should I contact the Disability Rights law firm?  I am quite

6    new at JAWS with the Internet.  Moreover, I really didn't want to purchase anything from

7    them."  (Kreeger Decl., Ex. I (Email, April 29, 2006).)  Based on this email, and the Court's

8    ruling on Target's motion to dismiss, Malcolm does not have a valid claim against Target.

9    (*See* Order at 11, Sept. 6, 2006.)  Nevertheless, assuming that he his legally blind, Malcom is

10   a putative class member.

11   Plaintiffs' expansive class definition likewise includes putative class members who

12   have been able to access and use Target.com successfully.  In opposition to Plaintiffs' motion

13   for a preliminary injunction, Target submitted evidence that at least four putative class

14   members using screen reading software could successfully navigate and purchase products

15   from Target.com in May 2006.  (Kreeger Decl., Ex. J (Declaration of Dawn Wilkinson in

16   Support of Target Corporation's Opposition to Motion for Preliminary Injunction), Ex. K

17   (Declaration  of Dave Wilkinson in Support of Target Corporation's Opposition to Motion

18   for Preliminary Injunction), Ex. L (Declaration of Suzanne Tritten in Support of Target

19   Corporation's Opposition to Motion for Preliminary Injunction), Ex. M (Declaration of Chris

20   Polk in Support of Target Corporation's Opposition to Motion for Preliminary Injunction).)

21   In December 2006, an NFB spokesman reported that he was able to use the checkout process

22   and purchase a compact disc from Target.com.  "[O]verall," he concluded, "I'd have to say

23   that the site is usable by a blind person."  (Kreeger Decl., Ex. H (Email).)  Clearly, there are

24   blind individuals who have succeeded in using Target.com for whatever they set out to do.

25   These individuals have not been denied full enjoyment of goods and services offered by

26   Target stores, and accordingly, they do not have a claim against Target for purposes of this

27   action.  Nevertheless, these individuals remain putative class members.

28

1

**B.    The Putative Class Is Not Adequately Defined and
Clearly Ascertainable**

2

3       "It is elementary that in order to maintain a class action, the class sought to be

4    represented must be adequately defined and clearly ascertainable." *De Bremaecker v. Short*,

5    433 F.2d 733, 734 (5th Cir. 1970); *Hagen v. City of Winnemuca*, 108 F.R.D. 61, 63 (D. Nev.

6    1985).  A precise class definition is critical because it "allows the Court to determine *who*

7    *would be entitled to relief*, who would be bound by a judgment, and who is entitled to notice

8    of the action." *Garrish v. United Auto., Aerospace, & Agricultural Implement Workers of*

9    *America*, 149 F. Supp. 2d 326, 331 (E.D. Mich. 2001) (emphasis added) (citing 5 James Wm.

10   Moore et al., Moore's Federal Practice ¶ 23.213 (3d ed. 1998)); *see also, e.g., In re Urethane*

11   *Antitrust Litig.*, 237 F.R.D. 440, 444 (D. Kan. 2006) (quoting Manual for Complex Litigation

12   § 21.222 at 270 (4th ed. 2005)).

13      A class is not adequately defined or clearly ascertainable if it includes individuals

14   who are not entitled to relief or who lack identifiable basis for standing.  *See, e.g.,*

15   *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming denial of motion for class

16   certification where the proposed class "was so amorphous and diverse" that it was not

17   "reasonably clear that the proposed class members have all suffered a constitutional or

18   statutory violation warranting some relief"); *Gustafson v. Polk County*, 226 F.R.D. 601, 607

19   (W.D. Wis. 2005) (denying motion for class certification because the class definition

20   included individuals not entitled to relief); *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 580

21   (N.D. Ill. 2005) (denying motion for class certification where the class definition was "overly

22   inclusive and encompasse[d] millions of potential members without any identifiable basis for

23   standing").

24      Here, for the reasons set out above, we have no plaintiff or declarant who

25   demonstrates actionable injury under the standard enunciated by the Court.  In the absence of

26   any "prototypical" plaintiff, there is simply no way that the Court (or Target) can apply the

27   Rule 23 requirements; there is no way to define the class; there is no way to determine if

28

"numerous" others are similarly situated; and, critically, there is no way to determine if the claims of the "representative" are typical of those of other members of the class.[4]

## II.    PLAINTIFFS HAVE NOT SHOWN THAT THEIR CLAIMS ARE TYPICAL

Rule 23(a) further requires Plaintiffs to show that "the claims or defense of the representative parties are typical of the claims or defense of the class." Fed. R. Civ. P. 23(a). "Typicality requires that named plaintiffs be members of the class they represent and 'possess the same interest and suffer the same injury' as class members." *Bates v. United Parcel Service*, 204 F.R.D. 440, 446 (N.D. Cal. 2001) (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982)); *see also East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403-04 (1977) (plaintiffs who "could have suffered no injury . . . [a]re, therefore simply not eligible to represent a class of persons who did allegedly suffer injury"); *La Mar v. H&B Novelty & Loan Co. v. Allegheny Airlines*, 489 F.2d 461 465 (9th Cir. 1973) ("Obviously, this requirement [of typicality under Rule 23(a)] is not met when the 'representative' plaintiff never had a claim of any type against defendant."). Plaintiffs have failed to establish this essential prerequisite to certification.

### A.    The Named Plaintiffs Have Demonstrated No Legally Cognizable Injury

Plaintiffs have not shown that Mr. Sexton has suffered any legally cognizable injury. Mr. Sexton testified to a single instance in the summer of 2005 when he was unable to purchase towels from Target.com and instead purchased them, along with several other items, at one of Target's retail stores. (Paradis Decl., Ex. G (Sexton Decl.) ¶ 33.) Mr. Sexton further reported that he was unable to access the local weekly advertisement on Target.com. (*Id.* ¶ 32.) However, personnel staffing Target's 1-800 number and Target retail stores are

---

[4] For the same reasons, this problem cannot be solved by unilaterally narrowing the class to "persons who have been denied access," as the Court did in *Lieber*. Here, there is no evidence that any such person exists. Moreover, there is no factual showing of how the denial occurred or in what form it may have taken.

1   available to describe the contents of the weekly advertisement to those who inquire about it.

2   (Perry Decl. ¶ 6.)  Mr. Sexton makes no mention of any effort to learn the contents of the

3   weekly advertisement by these other available means.  Nor does he identify any problem he

4   encountered at a Target retail store that resulted from his inability to access the weekly

5   advertisement online.

6         Plaintiffs have likewise failed to submit any evidence that NFB or NFB California

7   has suffered any legally cognizable harm.  Although Plaintiffs refer to "a drain in their

8   financial and administrative resources" of these organizations "resulting from Target's

9   actions and inactions," they point to no evidence.  (Pls.' Mot. at 20 n.75.)  Similarly,

10  although NFB and NFB California also seek to sue on behalf of their members, Plaintiffs

11  have failed to identify a single member of either organization who has suffered any legally

12  cognizable harm.

13        Only one type of injury remains at issue in this case:  whether the claimed

14  inaccessibility of Target.com impeded any individual's enjoyment of the goods and services

15  offered in Target stores.  Plaintiffs have failed to submit any evidence whatsoever that Mr.

16  Sexton, NFB, NFB California, or any members of NFB or NFB California suffered this

17  injury.  Typicality has not been shown.

18                          **B.      The Putative Class Is Diverse**

19        Furthermore, the assertion that the named Plaintiffs' claims are typical ignores the

20  diversity of Plaintiffs' broadly defined class.  Unlike Mr. Sexton, other putative class

21  members have succeeded in navigating and purchasing products from Target.com.  (Kreeger

22  Decl., Exs. J-M (Decl. of Dawn Wilkinson; Decl. of Dave Wilkinson; Decl. of Suzanne

23  Tritten, Decl. of Chris Polk).)  In December 2006, an NFB spokesman reported that the

24  Target.com had undergone "some rather drastic improvements and was now in fact "usable

25  by a blind person."  (Kreeger Decl., Ex. H (Email).)

26        Putative class members have had different levels of success in using Target.com as a

27  result of a multitude of factors.  These include:  the class members' skill level and experience

28  using the internet; whether assistive technology was being used, and if so, which kind; which

1    version of software was being used; which functions were enabled or disabled during the

2    visit; which feature of the website was the class member attempting to use; and when did the

3    class member visit the website.  Moreover, the reason why each putative class member

4    attempted to access Target.com affects the validity of each claim.  One putative class

5    member may have attempted to access Target.com in order to learn more about a product

6    available at a Target retail store.  Another may have attempted to access Target.com in order

7    to learn about a product available at Target.com, but not available at Target's retail stores.  A

8    third may have attempted to access Target.com as an experiment for this litigation, with no

9    interest in the goods and services provided by the website or the retail stores.  Given the

10   breadth of the putative class and the undeniable diversity of its members, the named

11   Plaintiffs' claims (or lack thereof) cannot fairly be characterized as "typical."

12       **III.    PLAINTIFFS CANNOT ADEQUATELY PROTECT THE INTERESTS**
13       **OF THE CLASS**

14       Rule 23(a) requires Plaintiffs to show that the class representatives "fairly and

15   adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  As explained above,

16   Plaintiffs have failed to submit any evidence that Mr. Sexton, NFB, NFB California, or any

17   members of NFB or NFB California suffered a legally cognizable injury.  Because of this,

18   the named Plaintiffs cannot be relied upon to protect the interest of absent class members,

19   particularly those who may have actually been injured.  *See Amchem Prods., Inc. v. Windsor*,

20   521 U.S. 591, 625 (1997) (explaining that the adequacy requirement "serves to uncover

21   conflicts of interest between the named parties and the class they seek to represent" and class

22   representatives must therefore "be part of the class and 'possess the same interest and suffer

23   the same injury' as the class members").  Plaintiffs have failed to show that the named

24   Plaintiffs will adequately protect the interests of the class.

25       **IV.    NUMEROSITY HAS NOT BEEN ESTABLISHED**

26       Another essential prerequisite of a class action is that "the class is so numerous that

27   joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).  Plaintiffs have not

28   demonstrated that this prerequisite has been satisfied.

1    Plaintiffs make no effort to show that there is a significant number of individuals

2  whose enjoyment of goods and services at Target's retail stores has been impeded by

3  problems with the Target.com website.  Indeed, plaintiffs have not offered *a single*

4  *declaration* from any individual who meets this standard.  Plaintiffs knew this was a

5  problem.  Internal documents from the NFB indicate that the plaintiffs believed they needed

6  thirty declarations to show numerosity.  (Kreeger Decl., Ex. N (Deposition of Marc Maurer

7  ("Maurer Dep.") Ex. 2).)  The NFB posted multiple pleas to an internet "listserv" seeking

8  putative class members.  The first listserv posting asked for individuals who had experienced

9  problems with Target.com.  (Kreeger Decl., Ex. O (Maurer Dep. Ex. 1).)  When that did not

10  generate enough responses, NFB posted a second plea, this time asking visually impaired

11  individuals to go visit Target.com and report back about the problems they found.  (Kreeger

12  Decl., Ex. N (Maurer Dep. Ex. 2).)  In addition, to an audience of an estimated 1500 at a

13  national meeting of the National Federation of the Blind, an announcement was made

14  encouraging putative class members to speak with the assembled counsel about their

15  experiences with the website.  (Kreeger Decl., Ex. P (Maurer Dep. 15:1-15, 33:17-34:2).)

16  Despite these efforts, Plaintiffs only found fourteen new declarants, none of whom has

17  testified to encountering problems with the website that impeded enjoyment of the goods and

18  services of Target physical stores.

19    Having failed to locate anyone with a legally cognizable claim, Plaintiffs attempt to

20  satisfy the numerosity requirement of Rule 23(a) by relying on a broad class definition.  They

21  point to statistics regarding the number of disabled persons in the United States, the number

22  of blind persons in the United States, and the number of disabled persons in California, and

23  then conclude that there can be "no serious dispute" that the numerosity requirement has

24  been satisfied.  (Pls.' Mot. at 15.)

25    Even this analysis skips numerous critical steps.  Plaintiffs have presented no

26  evidence regarding the number of blind individuals in the United States or in California who

27  use the internet.  Plaintiffs merely report that a "substantial portion of those blind people use

28  screen access software, such as screen readers and screen enlargement software," basing this

1    on the vague conclusion of an NFB declarant that "the use by the blind of screen access

2    software has become widespread." (Pls.' Mot. at 15 (citing Taylor Decl. ¶ 8).)[5]  Beyond this,

3    Plaintiffs make no effort whatsoever to show that the number of blind individuals in the

4    United States and in California who have attempted to access the single website here at issue,

5    Target.com, is sufficient.  Even if Plaintiffs' vastly overbroad class definition were accepted,

6    their evidentiary showing fails.

7        Again, this case is very different from *Lieber*.  There, the plaintiffs were able to

8    demonstrate the number of individuals who used wheelchairs.  The fact that disabled

9    shoppers use commercial stores was confirmed by express statutory requirements that

10   commercial stores be made physically accessible.  In this case, however, there is no similar

11   statutory prescription concerning websites, supported by congressional findings.  Thus, based

12   on the current record, the Court is simply being asked to presume that numerous blind people

13   use the internet, and to presume that more than a handful of blind internet users have ever

14   tried to shop at Target.com.  There is simply no factual basis in the record to support either

15   presumption.

16       The fact remains that Plaintiffs have not located a single putative class member with a

17   claim that can survive this Court's ruling on the motion to dismiss.  For purposes of Rule

18   23(a), numerosity has not been shown.

19   **V.    PLAINTIFFS' DAMAGES SUBCLASS CANNOT BE CERTIFIED
            UNDER RULE 23(B)(2)**

20

21       Even if the Court were to determine that certification for injunctive and declaratory

22   relief under Rule 23(b)(2) is warranted, the Court should not certify the proposed damages

23   subclass.

24

25

---

26   [5] The conclusion by Ms. Taylor that "the use by the blind of screen access software
     has become widespread" is apparently based on the number of telephonic inquiries received
27   by the International Braille and Technology Center and the number of individuals trained to
     teach others the use of screen access software.  (Paradis Decl., Ex. F, (Taylor Decl.) ¶ 8.)

28

1

2

### A.     NFB and NFB California Lack Standing to Assert Claims for Damages

3       The Supreme Court has set forth the three requirements for an association to have

4   standing to sue on behalf of its members:  "(a) its members would otherwise have standing to

5   sue in their own right; (b) the interests it seeks to protect are germane to the organization's

6   purpose; and (c) *neither the claim asserted nor the relief requested requires the participation*

7   *of individual members in the lawsuit*."  *Hunt v. Washington State Apple Adver. Comm'n*, 432

8   U.S. 333, 343 (1977) (emphasis added).  As many courts have held, individual members

9   must participate in a damages claim.  Thus, associations have not been permitted to pursue

10  claims for damages on behalf their members.  *See Warth v. Seldin*, 422 U.S. 490, 515-516

11  (1975); *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) ("We know of no

12  Supreme Court or federal court of appeals ruling that an association has standing to pursue

13  damages on behalf of its members."); *Alaska Fish & Wildlife Fed. & Outdoor Council,*

14  *Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987) (holding that an association had standing to

15  bring a suit on behalf of its members because it was seeking "declaratory and prospective

16  relief rather than money damages, [and therefore] its members need not participate directly in

17  the litigation").  This rule applies with equal force when an association brings a class action

18  lawsuit on behalf of its members.  *See, e.g., Bano*, 361 F.3d at 715.

19       The law on this point is clear.  Neither NFB nor NFB California has standing to assert

20  a claim for damages on behalf of its members in this action.  Certification of a damages

21  subclass represented by NFB and NFB California would be improper.[6]

### B.     Damages Are the Predominant Form of Relief Sought by the California Subclass

23

24       Claims for damages may be certified under Rule 23(b)(2) only when they do not

25  predominate.  *Molski v. Gleich*, 318 F.3d 937, 949 (9th Cir. 2003).  The ADA does not

26   _____

27       [6] If the Court grants Target's Motion for Summary Judgment as to Mr. Sexton, concurrently filed with this opposition, NFB and NFB California will be the only class representatives remaining in this action.

28

1    provide for damages for the violations alleged in this case.  *See* 42 U.S.C. § 12188.  Damages

2    are only available for Plaintiffs' state law claims.  *See* Cal. Civ. Code §§ 52, 54.3.  Plaintiffs

3    ask the Court to certify under Rule 23(b)(2) a separate subclass defined as "all legally blind

4    individuals in California who have attempted to access Target.com."  Damages are the very

5    *raison d'etre* of this subclass.

6        Plaintiffs nevertheless insist that "declaratory and injunctive relief is the primary form

7    of relief sought by the class here," and Plaintiffs' "primary objective in filing this lawsuit was

8    to ensure that Target.com be made accessible to the blind."  (Pls.' Mot. at 24-25.)  An NFB

9    spokesman has admitted, however, that "drastic improvements" have been made to

10    Target.com, making the website "usable by a blind person."  (Kreeger Decl, Ex. E (Email).)

11    NFB's admission that the website is "usable by a blind person" demonstrates that Plaintiffs

12    are now predominantly seeking damages.  As this Court observed in *Lieber*, "the fact is that

13    the parties have resolved the majority of issues which would require injunctive relief and at

14    this point in the litigation, plaintiffs are in fact primarily seeking money damages – which

15    makes class certification under 23(b)(2) inappropriate."  (Paradis Decl., Ex. R. (Order, Dec.

16    18, 2000) at 5.)

17            **C.        The Calculation of Statutory Damages Would Require Complex,
                          Individualized Inquiries**

18

19        As a matter of case management, the damages claims will predominate due to the

20    complicated individualized inquiries required to determine whether each class member is

21    eligible for statutory damages.  For this reason, too, certification of the proposed subclass

22    under Rule 23(b)(2) is improper.  *See Molski*, 318 F.3d at 949; *Arnold v. United Artists*

23    *Theater Circuit, Inc.*, 158 F.R.D. 439, 451 (N.D. Cal. 1994) ("The hallmark of the (b)(2)

24    action is homogeneity.")  As in *Lieber v. Macy's Californi*a, Plaintiffs' request for damages

25    in this case is "not nearly so straightforward as they blithely assert."  (Paradis Decl., Ex. R

26    (Order, Dec. 18, 2000) at 5.)

27        Plaintiffs are not currently seeking certification under Rule 23(b)(3).  Plaintiffs

28    contend that their claims for statutory damages under state law on behalf of the proposed

1    California subclass "will flow directly from the Court's liability determination with respect to

2    injunctive and declaratory relief." (Pls.' Mot. at 13.) They assert that "if the Court

3    determines that the common barriers on Target.com resulted in a website that has not

4    comported with applicable law, the amount of damages for each class member would be

5    determined by a mathematical calculation, without any need to re-litigate any of the more

6    complex and time consuming issues going to liability and equitable relief." (*Id.*) Plaintiffs

7    are mistaken.

8         If, however, the Court were to certify the proposed class and later find for the

9    Plaintiffs on liability, determining eligibility for statutory damages would be an arduous

10   affair. Because Plaintiffs' class definition is so vast, the putative class would necessarily

11   contain individuals who have suffered no legally cognizable harm and are entitled to no

12   relief. The Court would need to make belated liability determinations as to each and every

13   individual class member: What was the purpose of their visit to the website? Did it involve

14   seeking to enjoy goods and services offered in Target's retail stores? When was the attempt

15   made? Was the attempt made with assistive technology? If it was software, what type?

16   What were the settings within the program (e.g., was "JavaScript" enabled?)? What was the

17   program proficiency level of the class member? What was the result of their visit to the

18   website? If they claim to have been denied a good or service via the website, could the class

19   member have obtained such good or service by visiting a Target retail store? Or, could the

20   class member have obtained such good or service from an alternative source, such as

21   utilizing the Target.com 1-800 number? This is but a glimpse of the numerous

22   individualized inquiries that would be necessary to begin to sort out which class members

23   might be eligible for statutory damages.[7]

24

25         [7] The claims in the instant case resemble the "access to merchandise" damages claims
     in *Lieber*, which this Court found could not be certified under either Rule 23(b)(2) or Rule
26   23(b)(3). (Paradis Decl., Ex. R (Order at 4-8, Dec. 18, 2000).) Here, as in *Lieber*, "statutory
     damages could not be granted automatically," but rather "would require . . . individualized
27   showing[s]." (*Id.* at 8.) As in *Lieber*, "[t]he need for separate inquiries as to these claims
     makes the class structure inappropriate." (*Id.*)

28

1     Plaintiffs attempt to sweep these problems under the rug by suggesting that

2     bifurcation will somehow obviate the need for the individualized determinations required by

3     the substantive law under which they seek damages.  Under Plaintiffs' proposal, Plaintiffs

4     would never have to prove that anyone was unable to access Target.com or that a visit to the

5     website impeded anyone's enjoyment of particular goods and services offered in Target retail

6     stores.  (*See* Order at 11, Sept. 6, 2006 .)  In other words, every class members would simply

7     enjoy a presumption of liability.

8          Plaintiffs' proposal is manifestly unlawful.  A Court cannot alter the burden of proof

9     and the elements required to prove a claim in order to facilitate administration of a class

10    action.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 613, 620 (1997) (the principle

11    behind the Rules Enabling Act "that rules of procedure 'shall not abridge, enlarge or modify

12    any substantive right,'" applies without limitation to Rule 23).  Plaintiffs' reliance on the

13    burden-shifting principles of *International Brotherhood of Teamsters v. United States*, 431

14    U.S. 324, 359 n. 45 (1977) is utterly misplaced.  *Teamsters* is inapplicable here for the same

15    reasons cited by the Eleventh Circuit when it reversed the grant of a class certification

16    motion in *Rutstein v. Avis-Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1236-1240 (11th Cir. 2000).

17    First, the instant case is not an employment discrimination action.  *See id.* at 1236-39

18    (explaining that the *Teamsters* rationale is uniquely suited to the context of employment

19    discrimination, where burden shifting principles have been authorized by *McDonnell-*

20    *Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  "Second, and more important, the relief to

21    which individual plaintiffs were entitled after a finding of a pattern or practice of

22    discrimination in *Teamsters* (and in all subsequent cases employing the *Teamsters* rationale)

23    was *equitable* in nature."  *Rutstein*, 211 F.3d at 1239.  Here, by contrast, Plaintiffs argue that

24    the *Teamsters* framework may be applied for purposes of proving damages.  *Teamsters*

25    simply does not stand for this.  Here, as in *Rutstein*, "[t]o establish that they are entitled to

26    compensation," individual class members would "have to prove that they actually suffered

27    some injury."  *Id.*  "The idea that individual injury could be settled on a class-wide basis is

28

1    preposterous." *Id.* Bifurcation will not obviate the need for the individualized inquiries

2    required to seek damages.

3            **D.    Plaintiffs Have Not Shown that the Rule 23(a) Prerequisites for**
               **Certification Have Been Separately Satisfied for the Damages**
4              **Subclass**

5            Plaintiffs must show that the requirements of Rule 23(a) have been met for each

6    subclass to be certified. *Betts v. Reliable Collection Agency, Ltd.,* 659 F.2d 1000, 1005 (9th

7    Cir. 1981). As explained above, Plaintiffs have not shown that the requirements of

8    numerosity, typicality, and adequacy of representation have been met even as to the national

9    class, much less the smaller California subclass. In the absence of a representative claim, no

10   class can be certified.

11           **VI.    THE LIMITATIONS ON A REPLY BRIEF**

12           Certifying a class action is a significant act that has substantial consequences. This

13   Court will undoubtedly examine the evidentiary showing with care. *See General Tel. Co. v.*

14   *Falcon*, 457 U.S. 147, 161 (1982) (A class action "may only be certified if the trial court is

15   satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.").

16   The movants, as potential class representatives, have a serious burden to provide the Court

17   with a carefully crafted class definition and *evidence* that compels the conclusion that the

18   requirements of Rule 23 have been met. *See id.* at 160-161; *Ellis v. Costco Wholesale Corp.*,

19   No. C04-03341-MHP, __ F.R.D. __, 2007 WL 127800, at *4 (N.D. Cal. Jan. 11, 2007) . In

20   this case, however, Plaintiffs have simply "mailed in" their showing.

21           Plaintiffs' predictable response will be to try to fix the critical issues in their reply.

22   Given that every declaration submitted to date was drafted by counsel (Kreeger Decl., Ex. J

23   (Maurer Dep. Ex. 2)), we can expect to see reply declarations trying to establish cognizable

24   injuries, and attempts by NFB to prove a financial drain on its resources.

25           The problem, however, as numerous courts have recognized, is that presenting new

26   factual declarations for the first time on reply will deny Target the opportunity to take

27   necessary discovery and respond. *See, e.g., Sweet v. Pfizer*, 232 F.R.D. 360, 364 n.7 (C.D.

28   Cal. 2005); *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 309 n.5 (N.D. Cal. 2005). Thus,

1   Plaintiffs' evidentiary failure should be deemed fatal to this motion without regard to any

2   "new" facts Plaintiffs may offer for the first time in reply.

3       **VII.    THE CERTIFICATION DECISION MAY BE DEFERRED UNTIL
                  AFTER A TEST CASE**

4

5       For the reasons set forth herein, the proposed class should not be certified.  If,

6   however, the Court is concerned that there may actually be a class lurking here somewhere, it

7   should defer the decision regarding certification until after one or more test cases has been

8   tried.  As Plaintiffs themselves have admitted, the questions raised on the merits in this

9   litigation are "novel."  (Plaintiffs' Motion for Bifurcation of Issues at Trial at 3, Feb. 1,

10  2007.)  As a matter of case management, therefore, it is difficult to envision how exactly a

11  trial in this case would proceed.  Trial of one or more test cases would give the Court a much

12  clearer idea as to the nature of the claims, the typicality of the claims, and the manner in

13  which this litigation might be best administered.  *See Katz v. Carte Blanche Corp.*, 496 F.2d

14  747 (3d Cir. 1974) (deferring decision on class certification until after liability is determined

15  using a test case); *Broadcast Music, Inc. v. Moor-Law, Inc.*, No. 77-325, 1980 WL 1986 (D.

16  Del. Oct. 17, 1980) (same); *Corum v. Fifth Third Bank of Kentucky, Inc.*, No. Civ. A.

17  3:99CV-268-H, 2004 WL 594996 (W.D. Ky. Mar. 3, 2004) (discussing benefits of trying test

18  case before deciding issue of class certification); 3 *Newberg on Class Actions* § 9.8 (4th ed.)

19  (discussing availability of pilot and test cases as a case management option).

20      Having tried one or more test cases, the Court could make a more informed decision

21  as to whether a class action is superior to other methods of adjudication, or whether the

22  diversity of claims renders class certification improper.  *See Sweet*, 232 F.R.D. at 374

23  ("[C]ourts have held that even though Rule 23(b)(2), unlike Rule 23(b)(3), does not

24  specifically contain predominance and superiority requirements, a class under Rule 23(b)(2)

25  must not be overrun with individual issues.").  The court might conclude at that time that the

26  dictates of Rule 23 cannot be satisfied in light of the need for individualized inquiries, such

27  as each class member's skill and experience level, whether assistive technology was used

28  (and if so, what kind), which software functions were enabled during the website visit, what

1    website functions the class member was trying to use, and when and for what reason the class

2    member visited the website.  Or, the Court might ultimately decide to proceed with class

3    certification, in which case it would have the benefit of greater insight as to how the class

4    might best be defined.

5        Instead of granting Plaintiffs' class certification motion in the face of significant

6    uncertainty, the Court should force Plaintiffs to make some showing of the kind of alleged

7    injury that they are seeking to redress.

8                                   **CONCLUSION**

9        For the foregoing reasons, Plaintiffs' motion for class certification should be denied.

10

11   Dated:  March 8, 2007                HAROLD J. McELHINNY
                                          MATTHEW I. KREEGER
12                                        KRISTINA PASZEK
                                          MORRISON & FOERSTER LLP
13

14
                                          By:    /s/ Matthew I. Kreeger
15                                               Matthew I. Kreeger

16                                        Attorneys for Defendant
                                          TARGET CORPORATION
17

18

19

20

21

22

23

24

25

26

27

28

TARGET'S OPP. TO PLAINTIFFS' MOT. FOR CLASS CERTIFICATION
CASE NO. 06-01802 MHP
sf- 2273746

25