1   LAURENCE W. PARADIS (California Bar No. 122336)
    ROGER N. HELLER (California Bar No. 215348)
2   DISABILITY RIGHTS ADVOCATES
    2001 Center Street, Third Floor
3   Berkeley, California 94704
    Telephone:    (510) 665-8644
4   Facsimile:    (510) 665-8511
    TTY:          (510) 665-8716
5

6   JOSHUA KONECKY (California Bar No. 182897)
    RACHEL BRILL (California Bar No. 233294)
7   SCHNEIDER & WALLACE
    180 Montgomery Street, Suite 2000
    San Francisco, CA  94104
8   Telephone:    (415) 421-7100
    Fax:          (415) 421-7105
9   TTY:          (415) 421-1655

10  DANIEL F. GOLDSTEIN (*pro hac vice*)          PETER BLANCK (*pro hac vice*)
    BROWN, GOLDSTEIN & LEVY, LLP                   900 S. Crouse Ave.
11  120 E. Baltimore St., Suite 1700              Crouse-Hinds Hall, Suite 300
    Baltimore, MD 21202                           Syracuse, NY 13244-2130
12  Telephone:    (410) 962-1030                  Telephone:    (315) 443-9703
    Fax:          (410) 385-0869                  Fax:          (315) 443-9725

13

14

15                   UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17

18

19

20  NATIONAL FEDERATION OF THE            Case No.:  C 06-01802 MHP
    BLIND, the NATIONAL FEDERATION OF
21  THE BLIND OF CALIFORNIA, on behalf of **CLASS ACTION**
    their members and all others similarly situated,
22  and BRUCE F. SEXTON, on behalf of himself **PLAINTIFFS' MEMORANDUM OF**
    and all others similarly situated,    **POINTS AND AUTHORITIES IN**
23                                         **OPPOSITION TO DEFENDANT'S**
                                           **MOTION FOR SUMMARY JUDGMENT**
24                   Plaintiffs,
                                           Hearing Date: April 16, 2007
25  v.                                     Time: 2:00 PM
                                           Judge: The Hon. Marilyn Hall Patel
26  TARGET CORPORATION

27                   Defendant.

28

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS .................................................................................2

    A.      The Close Nexus Between target.com and Target's Retail Stores. .........................2

    B.      Pervasive Barriers on target.com. ...................................................................5

    C.      Plaintiff Sexton's Experiences Attempting to Access target.com. .........................6

    D.      Plaintiff Sexton's Experiences Attempting to Use target.com to Enhance his Experience as a Shopper at Target's Retail Stores. ...............................................7

III.    ARGUMENT.........................................................................................................8

    A.      Standard for Summary Judgment. ...................................................................9

    B.      Plaintiff Sexton Raises a Triable Issue of Material Fact That He Has Been Denied the Full and Equal Enjoyment of the Goods and Services of Target's Retail Stores in Violation of the ADA and California Law. .......................................................9

        1.      Target's Motion is Based on an Overly Narrow Interpretation of the Nexus Requirement................................................................................................9

        2.      The Evidence Demonstrates That target.com and Target's Retail Stores are Deeply Connected and Integrated................................................................10

        3.      The Evidence Demonstrates that Plaintiff Sexton Has Encountered Barriers on target.com Which Have Impeded His Enjoyment of the Goods and Services of Target's Retail Stores.......................................................11

        4.      Target's Proposed Substitutes for Accessible Weekly Advertisements on target.com Are Inadequate.........................................................................12

            a.      Target's 1-800 Number. ................................................................12

            b.      Target's Stores. ............................................................................13

    C.      Plaintiff Sexton Raises a Triable Issue of Material Fact That He Has Been Denied Full and Equal Access to target.com in Violation of California Law, Even if There Were No Nexus to the Physical Stores. ...............................................................13

        1.      The Unruh Act Independently Requires Full and Equal Access to target.com. ..................................................................................................14

            a.      The Broad Reach of the Unruh Act. ..............................................14

            b.      Target Corporation is a Business Establishment. ...........................15

            c.      Target.com is an Accommodtion, Advantage, Privilege and Service Covered by the Unruh Act.................................................15

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

i

2.  The Disabled Persons Act Independently Requires Full and Equal Access to target.com, Regardless of the Nexus to Target's Physical Stores. ........ 15

    a.  The Disabled Persons Act Was Intended To Provide Broad Protection Against Discrimination By Businesses Serving the General Public, and Should Not Be Limited by the Ninth Circuit's More Narrow Interpretaion of the ADA. ....................................... 16

    b.  Target.com is a Place to Which the General Public is Invited. ..... 16

3.  The Extensive Evidence Demonstrates That Plaintiff Sexton Has Been Denied Full and Equal Access to target.com ........................................... 17

IV.  CONCLUSION ............................................................................................ 18

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

ii

# TABLE OF AUTHORITIES

## Cases

*Anguiano v. Allstate Ins. Co*, 209 F.3d 1167 (9th Cir. 2000) .......................................... 9

*Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994) ............................................................................................. 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................. 9

*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000) ........... 14, 15

*Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999) ................................. 16

*Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285 (9th Cir. 1987) ............ 9

*Hankins v. El Torito Restaurants, Inc.*, 63 Cal.App.4th 510 (1998) ........................... 16

*Hooks v. OKBridge, Inc.*, 232 F.3d 208 (5th Cir. 2000) .............................................. 16

*Intel. Corp. v. Hartford Accident and Indem. Co.*, 952 F.2d 1551 (9th Cir. 1991) ...... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................... 9

*O'Connor v. Village Green Owners Ass'n.*, 33 Cal.3d 790 (1983) ....................... 14, 15

*Presta v. Peninsula Corridor Joint Powers Board*, 16 F. Supp.2d 1134 (N.D. Cal. 1998) ......... 14

*Rendon v. Valleycrest Prod. Ltd.*, 294 F.3d 1279 (11th Cir. 2002) ............................ 10

*Warfield v. Peninsula Golf & Country Club*, 10 Cal.4th 594 (1995) .......................... 14

## Statutes

42 U.S.C. § 12182(b)(1)-(2) ........................................................................................ 10

Cal Civ. Code 54.1 ....................................................................................................... 16

Cal. Civ. Code § 51 ...................................................................................................... 14

Cal. Civ. Code § 54 ...................................................................................................... 17

Fed. R. Civ. P. 56(f) ................................................................................................... 1, 9

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

# I.      INTRODUCTION

The record in this case is replete with evidence that target.com has contained pervasive accessibility barriers which have prevented people who are blind or visually impaired from accessing the website, and enjoying the goods and services of Target's retail stores, with the same or equivalent ease of use as sighted visitors.  Likewise, there is substantial evidence that Plaintiff Bruce Sexton has encountered many accessibility barriers during his visits to target.com, and that Target's failure to take necessary steps to make target.com accessible has denied him full and equal access to target.com and the full and equal enjoyment of the goods and services of Target's retail stores.  Given this evidence, Target's motion for summary judgment must fail.

In moving for summary judgment, Target exercises what can only be characterized as selective memory, choosing to ignore the Court's Order regarding the scope of Plaintiffs' claims, the fact that Plaintiffs' State law claims are broader than, and not dependent solely on, their ADA claim, and significant evidence which demonstrates triable issues of material fact.

Target also bases its motion on an overly narrow interpretation of the ADA nexus requirement that is inconsistent with the standard articulated by the Court.  Under Target's interpretation, Mr. Sexton can only state a claim under the ADA if he has experienced barriers while physically "at" or "in" Target's retail stores.  Under the broader and more reasonable standard articulated by the Court, however, there is more than enough evidence to raise a triable issue of material fact that Mr. Sexton's rights under the ADA have been violated.

Furthermore, Target brought the instant motion despite the fact that the Court, at Target's insistence, has ordered the parties to defer merits discovery until after the Court rules on Plaintiffs' motion for class certification.  This alone would provide grounds to deny Target's motion under Fed. R. Civ. P. 56(f).  Nonetheless, even the limited evidence gathered through discovery thus far (albeit evidence Target chose to omit from its motion), demonstrates that target.com is deeply connected to, and integrated with, Target's retail stores, and that Mr. Sexton has been denied the full and equal enjoyment of the goods and services of Target's retail stores because of accessibility barriers on the website.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

1

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1   Finally, there is overwhelming evidence that Mr. Sexton has been denied full and equal

2   access to target.com, itself, in violation of California State law.  As in its opposition to Plaintiffs'

3   pending motion for class certification, and without citation, Target attempts to characterize

4   Plaintiffs' State law claims as entirely "dependent on their ADA claim."  *See* Target's Motion at

5   p.7.  Indeed, Target's motion for summary judgment rests on that characterization.  Yet, the

6   scope of a "business establishment" for purposes of the Unruh Act, and the scope of "other

7   places to which the general public is invited" for purposes of the Disabled Persons Act, are far

8   broader than the Ninth Circuit's narrow interpretation of the scope of the phrase "places of

9   public accommodation" for purposes of the ADA.  Based on this distinction between California

10  and federal law, Plaintiffs have, since the beginning of this litigation, consistently alleged that

11  the California statutes require full and equal access to target.com, itself, independent of those

12  statutes' incorporation of the ADA, and without regard to any nexus between target.com and

13  Target's retail stores.  Understandably, Target does not argue in its motion that there is a lack of

14  evidence that Mr. Sexton has been denied full and equal access to the website itself.

15   For all these reasons, the Court should deny Target's motion for summary judgment.

16  **II.      STATEMENT OF FACTS**

17      **A.     <u>The Close Nexus Between target.com and Target's Retail Stores.</u>**

18   Target.com and Target's retail stores are closely integrated, and are designed to interact

19  with one another in many ways.  Target.com was designed to be an online extension of Target's

20  retail stores, and both are properly viewed as part of an integrated merchandising effort by

21  Target.  *See, e.g.,* September 6, 2006 Order at p.25, n.4 ("It appears from a review of the website

22  in question…that Target treats Target.com as an extension of its stores, as part of its overall

23  integrated merchandising efforts.").

24   As a practical matter, virtually every page on target.com is connected in some way to

25  Target's retail stores.  For example, search results on target.com routinely indicate which

26  products are available in Target's physical stores, and provide information about such products

27  that enable customers to browse and comparison shop before going to the physical store to make

28  a purchase.  *See* Declaration of Daniel Brome in Support of Plaintiffs' Opposition to Defendant's

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

2

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1   Motion for Summary Judgment ("Brome Decl.") at ¶ 2, Exhibits A, B, C.  This is frequently

2   referred to as "pre-shopping."[1]  Target specifically facilitates the use of the website for pre-

3   shopping its retail stores, by providing a feature that enables the customer to print out an "in-

4   store shopping list" to bring with them to the store after browsing the website.  *See* Brome Decl.

5   at ¶ 3, Exhibit F.  Clearly, Target encourages its customers to use target.com as a step in the

6   overall store-shopping experience, and anticipates that customers will use the website in that

7   way.

8          Target has stressed in this case that there are products featured on the website which are

9   not sold in its physical stores.  However, nearly half of the products featured on target.com are

10  also sold at Target's retail stores—making the website an enormous advantage to all customers

11  who might wish to "pre-shop" before going to the physical stores.  *See* Deposition of Patricia

12  Ann Perry, January 10, 2007 ("Perry Depo."), attached as Exhibit B to the Declaration of Roger

13  Heller in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment

14  ("Heller Decl."), at 65:13-66:8.  Ms. Perry – one of Target's Rule 30(b)(6) designees –

15  acknowledged that target.com web pages customarily contain information about goods and

16  services sold at Target retail stores and other information related to the physical stores.  *Id.* at

17  95:23-96:10, 99:6-100:5.  Moreover, Target's marketing efforts for target.com and its retail

18  stores are heavily coordinated.  *Id.* at 76:2-77:8 (describing coordination to "insure[] that our

19  brand is represented on both sides").

20         There are many additional features on target.com that are specifically designed to

21  operate in conjunction with Target's retail stores, and which visitors can use to enhance their

22  shopping experiences at Target's retail stores.  For example:

23

24  _____

[1] Several class members in this case have described their desire to pre-shop Target's stores on

25  target.com.  *See, e.g,*  Declaration of Janice Bailey in Support of Plaintiffs' Motion for Class
    Certification, filed February 2, 2007, at ¶ 13; Declaration of Michelle Bruns in Support of

26  Plaintiffs' Motion for Class Certification, filed February 2, 2007, at ¶ 13; Declaration of Shannon
    Dillon in Support of Plaintiffs' Motion for Class Certification, filed February 2, 2007, at ¶ 12;

27  Declaration of Anil Lewis in Support of Plaintiffs' Motion for Class Certification, filed February
    2, 2007, at ¶ 14.

28

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

3

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

- Target.com has a store locator feature that allows visitors to locate the address and contact information of the closest Target retail store. *See* Perry Depo. at 86:11-19.

- Goods purchased on target.com can be returned to Target retail stores for a refund or store credit. *See id.* at 85:16-86:10.

- Target.com contains weekly advertisements for products and services that are on sale at Target retail stores. Visitors can even input their zip codes on target.com to find out what goods and products are on sale at the closest Target retail store. *See id.* at 77:10-78:14, 86:20-88:20.

- Target.com contains coupons that visitors can print and redeem for discounts on goods and services at Target retail stores. *See id.* at 83:2-84:3.

- Visitors can browse target.com for information about goods and services that are available *only* at Target retail stores (i.e, goods sold at the physical stores and not sold on target.com). *See id.* at 95:23-96:20.

- Wedding and baby registry services on target.com are coordinated with such services at Target retail stores. By example only: (1) someone can register for goods on target.com and that information is reflected, and can be viewed by customers, at Target retail stores; and (2) someone can register for goods on target.com and those goods can be purchased at Target retail stores. *See id.* at 88:21-89:8, 90:7-13, 92:8-16.

- A visitor can apply on target.com for a Target credit card, which can be used to make purchases, at a discounted rate, at Target retail stores. *See id.* at 93:3-14.

- Target.com has a feature that allows visitors to locate the nearest Target retail store that provides pharmacy services. *See id.* at 80:4-9.

- Visitors can order refills of prescription drugs on target.com, and then pick them up at Target retail stores. *See id.* at 79:22-80:3.

- Visitors can transfer prescriptions on target.com from one Target retail store to another Target retail store. *See id.* at 81:2-82:2.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

4

- Visitors can order photograph prints on target.com, and then pick them up at Target retail stores. *See id.* at 84:22-85:13.

**B.    Pervasive Barriers on target.com.**

It is indisputable that when this lawsuit was filed, target.com had multiple, pervasive accessibility barriers.[2] Testimony from Target's Rule 30(b)(6) designee confirms that target.com has been riddled with critical accessibility barriers. *See, e.g.,* Deposition of Todd J. Nemoir, Jan. 9, 2007 ("Nemoir Depo."), attached as Exhibit A to Heller Decl., at 141:13-16, 142:2-6, 189:14-18 (tens of thousands of images lacked alt tags); 107:21-108:2, 179:14-19 (forms were not labeled); 157:7-23 (pages lacked in-page navigation headings); 156:11-21 (lack of keyboard access). This is consistent with the testimony of Dr. James Thatcher, who evaluated target.com's accessibility for blind visitors. *See, e.g.,* Thatcher Decl. at ¶¶ 25-40 (lack of alt tags), 47-51 (lack of in-page navigation headings), 52-59 (lack of form labels). It is also consistent with the experiences of blind visitors to target.com. *See, e.g,* Plaintiffs' Motion for Class Certification at p. 5 (citing testimony from 14 class member declarations filed in support of Plaintiffs' Motion for Class Certification).[3]

These critical barriers have impeded the ability of blind and visually impaired visitors to access many of the features, and much of the content, on target.com. *See, e.g,* Nemoir Depo. at 85:15-24 (no blind user can experience the content of an image if that image lacks alt tags)[4]; 175:4-176:3 (if forms are not labeled, then "a guest using screen access software would have trouble...understanding what the purpose of each element was."), 159:12-20, 160:10-161:8, 161:19-25 (lack of header tags makes navigation more difficult and time consuming for all blind

---

[2] *See, e.g.,* Expert Declaration of Dr. James W. Thatcher ("Thatcher Decl."), filed in support of Plaintiffs' Motion for Preliminary Injunction, resubmitted in Support of Plaintiffs' Motion for Class Certification, and attached as Exhibit H to Heller Decl.

[3] Additional examples can be found in the class member declarations initially filed in support of Plaintiffs' Motion for Preliminary Injunction, and resubmitted as Exhibits G through O to the Declaration of Laurence Paradis in Support of Plaintiffs' Motion for Class Certification.

[4] *See also* Perry Depo. at 26:5-7 ("if there are no ALT tags...the readers cannot read the webpage").

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment
5

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1   visitors), 154:10-155:9 (importance of keyboard access).  This includes features and content that

2   are very clearly connected to Target's retail stores.  *See, e.g.,* Declaration of Bruce F. Sexton in

3   Support of Plaintiffs' Motion for Preliminary Injunction ("Sexton PI Decl."), attached as Exhibit

4   D to Heller Decl, at ¶¶ 16, 32; Declaration of Bruce F. Sexton in Support of Plaintiffs'

5   Opposition to Defendant's Motion for Summary Judgment ("Sexton SJ Decl."), filed herewith, at

6   ¶ 2.  Only after Plaintiffs filed this lawsuit did Target even begin to take steps to address these

7   barriers.  *See, e.g.,* Nemoir Depo. at 138:7-148:15, 156:11-21, 179:10-19.

8          C.    **Plaintiff Sexton's Experiences Attempting to Access target.com.**

9              Given the pervasive accessibility barriers on target.com, it is not surprising that Mr.

10  Sexton has experienced great difficulty accessing the website.  Mr. Sexton has been legally blind

11  since birth.  *See* Sexton PI Decl. at ¶ 2.  He has used screen access software to access the internet

12  since he was 18 years old, and spends hours each day on the internet.  *See id.* at ¶¶ 13-14.  Using

13  screen access software, he has tried to access target.com on many occasions, including

14  approximately 20 occasions in the last two years.  *See id.* at ¶ 29; Deposition of Bruce F. Sexton,

15  May 23, 2006 ("Sexton Depo."), attached as Exhibit C to Heller Decl., at 58:1-12.  In all, Mr.

16  Sexton has spent several hours visiting target.com.  *See id.* at 62:24-63:6.  However, because of

17  numerous accessibility barriers on the website, Mr. Sexton has "found the entire process of

18  attempting to access target.com to be extremely frustrating and aggravating."  Sexton PI Decl. at

19  ¶¶ 30-35.  For example, the pervasive lack of alt-tags for images on target.com has prevented

20  Mr. Sexton, like other blind and visually-impaired visitors to target.com, from accessing

21  information and content on the website.  *See id.* at ¶ 31; Sexton Depo. at 64:19-65:5.  Rather than

22  experiencing such content as a sighted visitor could, Mr. Sexton has encountered "inexplicable

23  code and garbled text" "[f]rom the very beginning of the site and…throughout the site," Sexton

24  Depo. at 64:19-23; *see also* Nemoir Depo. at 85:15-24 (blind users cannot experience content of

25  images unless they are labeled), and has experienced difficulty navigating the website as a result.

26  *See* Sexton PI Decl. at ¶ 31.

27          For Mr. Sexton, barriers on the website have made it "extremely difficult, and at times

28  impossible, to browse for products on Target.com."  *Id.* at ¶ 30.  He has been unable to browse

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

6

1   for products in the same way that sighted visitors can (i.e. by following a series of links), and has

2   been unable browse for products unless he has a specific product in mind. *See* Sexton Depo. at

3   67:6-68:16 ("If...I don't know what specific item I'm looking for, I cannot use the interface just

4   to browse"); *see also id.* at 87:24-88:6. Rather, to find a product on target.com Mr. Sexton has to

5   rely on the "search" function of the website. This process only helps when he has a specific type

6   of product in mind, and even then, there have been times when Mr. Sexton has been unable to

7   locate products or product information using the "search" function. *See* Sexton PI Decl. at ¶¶ 33,

8   34; Sexton Depo. at 70:3-9.

9       Moreover, Mr. Sexton has been unable to make a purchase on target.com, despite

10  extensive efforts to do so. *See id.* at 77:11-78:16, 81:12-22; 84:11-23.

11      **D.     Plaintiff Sexton's Experiences Attempting to Use target.com to Enhance his**
        **Experience as a Shopper at Target's Retail Stores.**

12      Given his frustrating experiences trying to access target.com, and the deep connections

13  between target.com and Target's retail stores, it is not surprising that accessibility barriers on

14  target.com have also significantly impeded Mr. Sexton's enjoyment of the goods and services of

15  Target's retail stores. Mr. Sexton has shopped at Target stores for several years. *See* Sexton PI

16  Decl. at ¶ 19. Mr. Sexton has tried to use target.com, as sighted visitors are able to do, to

17  enhance his experience as a shopper at Target's retail stores. Mr. Sexton has explained that he

18  routinely uses retailers' websites to locate information about goods and services for sale at

19  physical stores, to compare the prices of such goods and services with the prices of competitors,

20  and to make decisions about potential purchases at the physical stores. *See* Sexton PI Decl. at ¶

21  16. In short, Mr. Sexton routinely engages in the same "pre-shopping" activities that are a key

22  advantage provided by the retailer websites. Mr. Sexton has tried to "pre shop" Target stores on

23  target.com, but has been denied the opportunity to do so because of various accessibility barriers

24  on the website. *See* Sexton SJ Decl. at ¶ 2; Sexton PI Decl. at ¶ 31; Sexton Depo. at 64:19-65:5;

25  *see also* Perry Depo. at 95:23-96:20 (target.com can be used for that purpose). There is thus

26  evidence that Mr. Sexton has been denied a key advantage offered by Target to sighted visitors

27

28

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

7

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1  to target.com, which has resulted in unequal access to the goods and services of the physical

2  stores.

3     In addition, Mr. Sexton has attempted to access the weekly advertisements available on

4  target.com, which identify goods and services that are on sale at Target's retail stores. *See*

5  Sexton PI Decl. at ¶ 32; *see also* Perry Depo. at 77:10-78:14, 86:20-88:20 (explaining the online

6  weekly ad feature). He would like to access those advertisements online, as sighted visitors can,

7  to enhance his shopping experience at Target's retail stores. *See* Sexton PI Decl. at ¶ 32. Again,

8  however, because of accessibility barriers on target.com, he has been unable to access those

9  weekly advertisements as sighted visitors can. *See id.*[5]

10 **III.   ARGUMENT**

11    In its motion for summary judgment, Target does not dispute that Mr. Sexton is entitled

12 to protection under the ADA, Unruh Act, or Disabled Persons Act. Nor does Target dispute that

13 Mr. Sexton has experienced numerous, critical accessibility barriers on target.com. Rather,

14 Target's motion is based solely on its assertion that there is insufficient evidence that Mr. Sexton

15 was denied the full and equal enjoyment of the goods and services of Target's retail stores as a

16 result of accessibility barriers on target.com. *See* Target's Motion at pp. 5-7. Target's motion is

17 misguided for two reasons.

18    First, to the extent that Plaintiffs' claims require a nexus between target.com and Target's

19 retail stores, there is more than sufficient evidence to raise a triable issue of material fact that

20 accessibility barriers on target.com have caused Mr. Sexton to be denied the full and equal

21 enjoyment of the goods and services of Target's retail stores.

22    Second, Plaintiffs' State law claims do not rely solely on there being a connection

23 between target.com and Target's retail stores. As discussed below, Plaintiffs have consistently

24 alleged two separate theories of liability under California State law—first, that people with

25

26 [5] As discussed below, for Target to argue that Mr. Sexton might have found some way to have
   these weekly ads read to him by a Target employee indicates that Target does not understand the
   concept of full and equal access. The whole point of the civil rights statutes underlying this case
27 is to reduce the extent to which people with disabilities are relegated to second class treatment
28 and dependence upon others.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

8

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1    disabilities are entitled to full and equal access to target.com even if there were no nexus

2    between the website and Target's physical stores; and second, that there is in fact such a nexus.

3    The first theory rests on the broad language of the California statutes at issue, which predates the

4    incorporation of the ADA into those statutes.  Under that theory, Plaintiffs need only show that

5    they have been denied full and equal access to target.com, itself.  With respect to Mr. Sexton,

6    there is extensive evidence to support that he has been denied full and equal access to target.com.

7    ### A.   Standard for Summary Judgment.

8    Summary judgment is only proper if, upon viewing the evidence in the light most

9    favorable to the non-moving party, the Court finds that no triable issue of fact exists, and the

10   moving party is clearly entitled to prevail as a matter of law.  *See Celotex Corp. v. Catrett*, 477

11   U.S. 317, 322-23 (1986); *Anguiano v. Allstate Ins. Co*, 209 F.3d 1167, 1169 (9th Cir. 2000).  The

12   moving party bears the burden of showing that there is no material factual dispute.  The Court

13   must therefore regard as true the opposing party's evidence, if supported by affidavits or other

14   evidentiary material.  *See Celotex*, 477 U.S. at 324; *Eisenberg v. Insurance Co. of North*

15   *America*, 815 F.2d 1285, 1289 (9th Cir. 1987).  The court must draw all reasonable inferences in

16   favor of the party against whom summary judgment is sought.  *See Matsushita Elec. Indus. Co.*

17   *v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Intel. Corp. v. Hartford Accident and Indem.*

18   *Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991).  The Court must also allow the opposing party a

19   reasonable opportunity to conduct relevant discovery before granting a motion for summary

20   judgment.  *See* Fed. R. Civ. P. 56(f).

21   ### B.   Plaintiff Sexton Raises a Triable Issue of Material Fact That He Has Been
22       Denied the Full and Equal Enjoyment of the Goods and Services of Target's
       Retail Stores in Violation of the ADA and California Law.

23   To the extent that Plaintiffs' claims require a nexus between target.com and Target's

24   stores, Target's motion must fail since there is sufficient evidence to raise a triable issue of

25   material fact that Mr. Sexton has been denied the full and equal enjoyment of the goods and

26   services of Target's retail stores because of accessibility barriers on the website.

27   #### 1.   Target's Motion is Based on an Overly Narrow Interpretation of the
       Nexus Requirement.

28

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

9

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

Target premises its motion on the idea that Mr. Sexton cannot state a claim under the ADA unless he shows that he has encountered access barriers while he is physically "at" or "in" a Target store. *See, e.g.*, Target's Motion at 2:9-13, 3:9-11, 3:17-19, 3:25-27. That interpretation is inconsistent with the Court's September 6, 2006 Order, which articulated the standard for establishing a nexus under the ADA as follows:

> [T]o the extent that Plaintiffs allege that the inaccessibility of Target.com impedes full and equal enjoyment of the goods and services offered in Target stores, the plaintiffs state a claim, and the motion to dismiss is denied. To the extent that Target.com offers information and services unconnected to Target stores, which do not affect the enjoyment of goods and services offered in Target stores, the plaintiffs fail to state a claim under Title III of the ADA.

September 6, 2006 Order at 11:23-26; *see also id.* at 7:3-4 ("The statute applies to services *of* any place of public accommodation, not services *in* a place of public accommodation.").

Consistent with the Court's Order, the nexus requirement under the ADA merely requires that Mr. Sexton has experienced one or more barriers on target.com which prevented him from accessing, with equal enjoyment and ease of use, the goods and services of Target's retail stores. *See* September 6, 2006 Order at 6:23-10:3; *see also* 42 U.S.C. § 12182(b)(1)-(2); *Rendon v. Valleycrest Prod. Ltd.*, 294 F.3d 1279, 1284-85 (11th Cir. 2002) (barriers to access need not be physical in nature and can instead be offsite and intangible). Mr. Sexton clearly has presented sufficient evidence showing such denial of access, so as to raise a triable issue of material fact on this issue.

### 2. The Evidence Demonstrates That target.com and Target's Retail Stores are Deeply Connected and Integrated.

While the Court found that Plaintiffs' ADA claim requires some nexus between target.com and Target's retail stores, the Court noted that "a broader application of the ADA to the website may be appropriate if upon further discovery it is disclosed that the store and website are part of an integrated effort." September 6, 2006 Order at p.25, n.4. Since the Court bifurcated discovery in this case, at Target's insistence, discovery regarding the connection between target.com and Target's stores has been limited. Nevertheless, substantial evidence, including testimony from Target's Rule 30(b)(6) designee, reveals that target.com and Target's

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

10

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1   stores are deeply integrated. *See, supra*, Section II.A. Indeed, as a practical matter, virtually

2   every page on target.com (including pages that list products that are only available online) has

3   links connecting to information about goods and services available in the retail stores. *See* Perry

4   Depo. at 95:23-96:10, 99:6-100:5; Brome Decl. at ¶¶ 2,3, and Exhibits A-F. Moreover, the

5   extensive list of features on target.com that are specifically designed to operate in conjunction

6   with, and which visitors can use to enhance their shopping experiences at, Target's retail stores

7   (*see, supra*, Section II.A) supports the Court's characterization of target.com as "a means to gain

8   access to" Target's stores. September 6, 2006 Order at p.25, n.4.

9               **3.      The Evidence Demonstrates that Plaintiff Sexton Has Encountered
                          Barriers on target.com Which Have Impeded His Enjoyment of the**
10                        **Goods and Services of Target's Retail Stores.**

11          Given the substantial evidence regarding the close nexus between target.com and

12  Target's retail stores, it is not surprising that the pervasive accessibility barriers which have

13  plagued target.com have impeded the full and equal enjoyment of the goods and services of

14  Target's retail stores for people who are blind and visually impaired, including Mr. Sexton. The

15  evidence to date certainly is sufficient to preclude entry of summary judgment against Mr.

16  Sexton on this issue.

17          As discussed above, Mr. Sexton regularly shops at Target retail stores, and has tried to

18  use target.com to enhance his experience as a shopper at Target retail stores in some of the ways

19  that sighted visitors to target.com are able to do with ease. *See, supra*, Section II.D. In

20  particular, Mr. Sexton has attempted to use target.com, as he does with other retailers' websites,

21  to locate information about goods and services for sale at Target's retail stores, to compare the

22  prices of goods and services for sale at Target's retail stores with the prices of Target's

23  competitors, and to make decisions about potential purchases at Target's retail stores. *See*

24  Sexton PI Decl. at ¶ 16; Sexton SJ Decl. at ¶ 2. Moreover, Mr. Sexton has attempted to access

25  the weekly advertisements available on target.com, which identify goods and services that are on

26  sale at Target's retail stores. *See* Sexton PI Decl. at ¶ 32. However, because of various

27  accessibility barriers on target.com, Mr. Sexton has been unable to use target.com for these

28  purposes. *See* Sexton SJ Decl. at ¶ 2; Sexton PI Decl. at ¶¶ 31-32; Sexton Depo. at 64:19-65:5.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment
                                                                                                    11

The benefits of these features to retail store customers are abundantly clear. *See, supra,* Section II.A; *see also* Perry Depo. at 77:10-78:14, 86:20-88:20 (online weekly ads); 95:23-96:20 (online information about products at Target's stores). Moreover, there is no question that accessibility barriers on target.com have prevented Mr. Sexton from fully and equally accessing those features, and have, thus, impeded Mr. Sexton's enjoyment of the goods and services of Target's retail stores. *See* September 6, 2006 Order at 11:23-26.

### 4. Target's Proposed Substitutes for Accessible Weekly Advertisements on target.com Are Inadequate.

Target suggests that barriers which prevented Mr. Sexton from accessing weekly advertisements for goods and services on sale at Target stores did not impede his enjoyment of the goods and services of Target's stores because he could have gotten comparable information by calling Target's 1-800 number or visiting a Target store. *See* Target's Motion at 6:23-26. For Target to argue that Mr. Sexton might have found some way to have these weekly ads read to him by a Target employee indicates that Target does not understand the concept of full and equal access. The whole point of the civil rights statutes underlying this case is to reduce the extent to which people with disabilities are relegated to second class treatment and dependence upon others.

In any event, Target's argument on this point, at best, raises disputed issues of material facts, such that summary judgment is not warranted. The evidence does not support that either option suggested by Target represents an adequate substitute for being able to access information online, as sighted visitors can. The online weekly advertisements are made available to sighted visitors in a way that is user friendly and convenient. By contrast, the options proposed by Target would require significant additional effort by blind visitors to get comparable information, and are otherwise inadequate substitutes.

#### a. *Target's 1-800 Number.*

Discovery regarding Target's 1-800 number has been limited because the Court, at Target's insistence, has bifurcated discovery. Nevertheless, the record shows that the 1-800 number has not been a sufficient substitute for features on target.com, including the weekly

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

12

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1  advertisements.  In addition to the extra effort required to call the 1-800 number and

2  communicate with a customer service representative, the evidence shows that the 1-800 number

3  has not been adequately displayed on the website, and that Mr. Sexton, like so many other

4  visitors to target.com, did not even know that it existed until he was told about it by counsel.

5  *See, e.g.*, Reply Declaration of Bruce F. Sexton in Support of Plaintiffs' Motion for Preliminary

6  Injunction ("Sexton Reply PI Decl."), attached as Exhibit E to Heller Decl., at ¶ 3.  Indeed,

7  Target's Rule 30(b)(6) designee candidly admitted that just locating the 1-800 number on the

8  website has been a "common problem." Perry Depo. at 141:25-142:7, 147:15-17.

9        Moreover, the 1-800 number is an inadequate substitute for any feature on the website

10  because it does not allow a blind visitor to independently and directly access the relevant

11  information on the visitor's own schedule, as a sighted visitor can.  *See, e.g.,* Sexton Reply PI

12  Decl at ¶¶ 2 (1-800 number "did not enable me to browse as independently, easily or freely as I

13  would like"), 4 (couldn't multi-task or take breaks), 7 (was "hurried along throughout the

14  process…and was told that they could only spend a certain amount of time with me because the

15  lines were getting busy"); *see also* Perry Depo. at 186:15-22 (lack of independence), 177:4-178:9

16  (caller to 1-800 number can't take breaks).

17                 **b.**    ***Target's Stores.***

18        By suggesting that Mr. Sexton could have asked an employee at a Target store about the

19  weekly advertisements, Target misses the point entirely.  A sighted visitor to target.com could

20  have checked the weekly advertisements online, and then decided whether she wanted to go to a

21  Target store based on the advertisements.  Because of accessibility barriers on target.com, Mr.

22  Sexton did not have that option.  It is absurd for Target to suggest that a trip to a Target store to

23  ask about weekly advertisements is equivalent—in terms of time, convenience, independence or

24  any measure—to clicking on a link at target.com to get that information.

25      **C.**    <u>**Plaintiff Sexton Raises a Triable Issue of Material Fact That He Has Been**</u>

26           <u>**Denied Full and Equal Access to target.com in Violation of California Law,**</u>
<u>**Even if There Were No Nexus to the Physical Stores.**</u>

27        Contrary to Target's assertion, Plaintiffs' State law claims are not completely dependent

28  on their ADA claim.  Rather, Plaintiffs have consistently asserted an independent basis for their

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment
13

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1   claims under the Unruh Act and Disabled Persons Act, that does not rely on those statutes'

2   incorporation of the ADA.[6]  More specifically, Plaintiffs have asserted that because Target

3   Corporation is a "business establishment," and target.com an accommodation, advantage,

4   privilege and service covered by the Unruh Act, and because target.com is a "place to which the

5   general public is invited" under the Disabled Persons Act, Target's failure to make target.com

6   accessible to people who are blind or visually impaired constitutes a violation of those statutes

7   regardless of their incorporation of the ADA and, importantly, regardless of any connection

8   target.com has to Target's retail stores.[7]  As set forth herein, there is more than enough evidence

9   to raise a triable issue of material fact that Mr. Sexton has been denied full and equal access to

10  target.com.

11   **1.   The Unruh Act Independently Requires Full and Equal Access to target.com.**

12   **a.   _The Broad Reach of the Unruh Act._**

13   The Unruh Act entitles people with disabilities to the "full and equal accommodations,

14   advantages, facilities, privileges, or services in _all business establishments of every kind_

15   _whatsoever._"  Cal. Civ. Code § 51(b) (emphasis added).  The Unruh Act applies not only to

16   physical places of business, but also to any "permanent commercial force" which operates within

17   California.  _O'Connor v. Village Green Owners Ass'n._, 33 Cal.3d 790, 795 (1983); _Chabner v._

18   _United of Omaha Life Ins. Co._, 225 F.3d 1042, 1050 (9th Cir. 2000); _see also Warfield v._

19   _Peninsula Golf & Country Club_, 10 Cal.4th 594, 621 (1995); _Presta v. Peninsula Corridor Joint_

20   _Powers Board_, 16 F. Supp.2d 1134, 1136 (N.D. Cal. 1998) ("California courts have clearly and

21   repeatedly held that the Unruh Act is to be interpreted 'in the broadest sense reasonably

22   possible,' so as to achieve its purpose of combating discrimination in all its forms.") (citations

23

24   [6] _See_ First Amended Complaint at ¶¶ 42, 50; Plaintiffs' Motion for Preliminary Injunction, at pp.

25   7-12; Plaintiffs' Opposition to Defendant Target Corporation's Motion to Dismiss, at pp. 10-17; Plaintiffs' Motion for Class Certification, at 17:21-25.

26   [7] In its September 6, 2006 Order, the Court found that Plaintiffs stated a claim under the Unruh

27   Act and Disabled Persons Act through those statutes' incorporation of the ADA. The Court deferred the question of whether under California law, Plaintiffs were required to show a nexus

28   between Target's retail stores and target.com. _See_ September 6, 2006 Order at pp.11-12.

_National Federation of the Blind, et al. v. Target Corporation, et al._
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

14

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1   omitted).  A massive commercial operation such as Target Corporation, which is conducting

2   millions of dollars in sales in California every day, is certainly a "permanent commercial force"

3   and thus covered under the Unruh Act as that statute has been interpreted by the courts.

        *b.*     ***Target Corporation is a Business Establishment.***

5        Target Corporation is a "business establishment" in the most traditional sense.  A for-

6   profit, publicly-traded corporation conducting a substantial retail business with California

7   residents in California every day of every year, Target Corporation is a permanent commercial

8   force and organization within California.  *See Chabner*, 225 F.3d at 1050; *O'Connor*, 33 Cal. 3d

9   at 795.

        *c.*     ***Target.com is an Accommodation, Advantage, Privilege and Service Covered by the Unruh Act***

11       Target.com is an "accommodation, advantage, privilege, advantage and service" covered

12  by the Unruh Act.  Target Corporation created target.com in 1999 to offer customers an

13  opportunity to interact with Target Corporation in an online setting.  *See* Perry Depo. at 71:5-

14  72:10.  In addition to the numerous advantages and services listed above, *see, supra*, Section

15  II.A, and among other things, visitors to target.com can secure information about job

16  opportunities with Target Corporation as well as information about the corporation itself.  If

17  Target Corporation were to relinquish its stores tomorrow, but maintain its website, it would

18  remain a business establishment, and the website would still be a service covered by the Unruh

19  Act.  Therefore, the Unruh Act, separate of its incorporation of the ADA, requires that Target

20  provide full and equal access to target.com for people with disabilities.

    **2.**    **The Disabled Persons Act Independently Requires Full and Equal Access to target.com, Regardless of the Nexus to Target's Physical Stores.**

23       Unlike Plaintiffs' ADA claim, the question of whether a service needs to be connected to

24  a physical place in order to be covered by the Disabled Persons Act is one of first impression.

25  While the Court here has been bound to follow the Ninth Circuit's interpretation of the ADA in

26  *Weyer*, the Court can and should interpret the Disabled Persons Act more broadly to apply to

27  target.com without regard to any nexus between target.com and Target's stores.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment
15

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

**a.**  **The Disabled Persons Act Was Intended To Provide Broad Protection Against Discrimination By Businesses Serving the General Public, and Should Not Be Limited by the Ninth Circuit's More Narrow Interpretation of the ADA.**

The Disabled Persons Act states that: "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities . . . and privileges of . . .places of public accommodation . . . *or other places to which the general public is invited.*"  Cal. Civ. Code §54.1(a)(1) (emphasis added).

California courts have held that the "broad language" of the Disabled Persons Act indicates a legislative intent "to afford broad protection" to persons with disabilities from discrimination by businesses serving the general public.  *Hankins v. El Torito Restaurants, Inc.*, 63 Cal.App.4th 510, 523 (1998).  They have also held that the Disabled Persons Act prohibits policies imposed by a business which have the effect of discriminating against disabled customers, even when the business is compliant with applicable building access standards.  *See Hankins*, 63 Cal.App.4th at 523 (DPA not limited to physical access).  Accordingly, the language of the Disabled Persons Act, which requires access to all "places to which the general public is invited" should be given its broadest reasonable interpretation.  Cal Civ. Code 54.1(a).  There is no reason to think that the California legislature intended this broad remedial civil rights statute to be limited to the types of businesses open to the public at the time the statute was first enacted.  Rather, the statute can and should be interpreted as applying to websites such as target.com, which are increasingly becoming a centerpiece of daily economic life for millions of people throughout California.[8]

**b.**  **Target.com is a Place to Which the General Public is Invited.**

---

[8] Given the legislature's goal of providing broad protection through the Disabled Persons Act, and the fact the U.S. Department of Justice and several federal courts outside the Ninth Circuit have interpreted "places of public accommodation" under the ADA to include pure website businesses and/or other nonphysical places, it is reasonable to adopt a broader interpretation of the Disabled Persons Act than the interpretation of the ADA under current Ninth Circuit precedent.  *See* Brief of the United States Department of Justice as Amicus Curiae in Support of Appellant, *Hooks v. OKBridge, Inc.*, 232 F.3d 208 (5th Cir. 2000) (*available at* http://www.usdoj.gov/crt/briefs/hooks.htm); *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999); *Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12, 19-20 (1st Cir. 1994).

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

16

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1   Target.com is fairly viewed as "place[] to which the general public is invited" under the

2   Disabled Persons Act.  Target.com is open to the general public, and is designed to be user-

3   friendly for the general public.  *See* Nemoir Depo. at 62:17-63:5.  Twenty-four hours a day,

4   seven days a week, Target provides information and sells goods and services to the general

5   public on target.com.  Tens of millions of visitors visit target.com each month.[9]  Target quite

6   literally invites the public to visit its website.  The sign-in page for target.com invites "New

7   Guests" to enter and set up an account, and asks "Returning Guests" to sign in with their account

8   number.[10]  Target.com is thus appropriately viewed as a "place[] to which the general public is

9   invited," and the Disabled Persons Act, separate of its incorporation of the ADA, thus requires

10   Target to provide full and equal access to target.com for people with disabilities.[11]

11                    **3.        The Extensive Evidence Demonstrates That Plaintiff Sexton Has Been
                                  Denied Full and Equal Access to target.com**

12            As set forth above, there is more than enough evidence to raise a triable issue of material

13   fact that Mr. Sexton has been denied full and equal access to target.com.  *See, supra,* Section

14   II.A through D.

15

16

17

18

19

20

_____

21   [9] *See* Exhibit F to Heller Decl. (indicating number of visitors to target.com in each of the last six

22   months).

23   [10] *See* http://www.target.com (home page) and http://www.target.com/gp/flex/sign-in.html,
     attached as Exhibit G to Heller Decl.

24
     [11] The history of the statute provides further support to this interpretation.  For example, in 1992

25   the California Legislature redefined the class of individuals protected by the Disabled Persons
     Act to include people with mental disabilities as well physical disabilities.  *See* Cal. Civ. Code §

26   54(a) and (b).  Given that mental impairments do not preclude physical access to physical
     structures, the current Disabled Persons Act is appropriately interpreted as ensuring access to

27   "public accommodations" and "places to which the general public is invited" even if they are not
     connected to any physical place.

28

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

17

IV.   **CONCLUSION**

For the foregoing reasons, Target's motion for summary judgment should be denied.

Respectfully submitted,

Dated:  March 26, 2007

DISABILITY RIGHTS ADVOCATES
SCHNEIDER & WALLACE
BROWN, GOLDSTEIN & LEVY, LLP
PETER BLANCK, J.D., Ph.D.

By: _____
          Roger Heller
          Attorney for Plaintiff

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

18