# EXHIBIT C

Dockets.Justia.com

Page 58

1    It says in your declaration at paragraph 29
2  that you've attempted on numerous occasions to access
3  Target.com. Approximately how many occasions were
4  there?
5    A. I'd say -- I'd say around 20 or -- more or
6  less around 20.
7    Q. And is that 20 times since a year ago when
8  you started keeping track?
9    A. That's -- yeah, that's what I'm referring to,
10 is 20 times since I started keeping track.
11   And also to go back, a year ago I'm thinking
12 January 2005. That's around about a year, year and a
13 half ago.
14   Q. Did you keep any records of your attempts to
15 access Target on those approximately 20 occasions?
16   A. I -- I think that's privileged information.
17 I'm not sure. Can I --
18   MR. KONECKY: Do you want to --
19   THE WITNESS: Can I take a break?
20   MR. PLUNKETT: Sure. Let's take a break.
21   (Off the record.)
22   MR. PLUNKETT: So back on the record.
23   Would you read the pending question.
24   (Record read as follows:
25   "QUESTION: Did you keep any records of your

TSG Reporting - Worldwide    877-702-9580

Page 59

1  attempts to access Target on those
2  approximately 20 occasions?")
3    MR. PLUNKETT: And counsel has indicated that
4  there is a potential privilege issue, and we've agreed
5  that any disclosure of information that's arguably
6  privileged in response to that question will not result
7  in a waiver. And I agree to that.
8  BY MR. PLUNKETT:
9    Q. What records did you keep regarding your
10 visit to Target.com?
11   A. I changed my browser to allow the
12 preservation of my visits to any website to 365 days
13 rather than the normal 20 days that the browser already
14 has, on counsel of my attorneys.
15   Q. Have you kept any records other than the
16 history retained by your browser?
17   A. Only -- only from what I remember. No,
18 nothing written.
19   Q. All right. And what type of information does
20 your browser retain, to your knowledge?
21   A. I don't -- I don't know.
22   Q. Are you talking about it just records the
23 fact that you went to Target.com or do you know if it
24 records anything beyond that?
25   A. I think it records what I do on the Internet.

TSG Reporting - Worldwide    877-702-9580

Page 60

1    Q. Have you provided that information to
2  anybody -- withdraw.
3    Have you extracted that information from your
4  computer and provided it to anyone?
5    MR. KONECKY: Well, I'm going to -- I'm going
6  to object as to being compound. And I also think
7  you're starting to get into work product issues.
8    MR. PLUNKETT: Okay.
9    MR. KONECKY: You can ask him what he's done,
10 but --
11   MR. PLUNKETT: Okay.
12   MR. KONECKY: -- why don't you exclude from
13 that any interactions he's had with counsel.
14   MR. PLUNKETT: Right. Well, speaking to
15 counsel for a moment, I'm just concerned that if there
16 is a record of anything that goes beyond where he went
17 it actually records, for example, time that was spent
18 on the website or what the witness attempted to access
19 that those would be documents that should be produced.
20   MR. KONECKY: Well, but you can ask him
21 whether he's done that. I'm just saying when you add
22 in there "who did you share things with" or --
23   MR. PLUNKETT: Okay.
24   MR. KONECKY: -- you know, I want you to
25 exclude any kind of attorney-client relationship from

TSG Reporting - Worldwide    877-702-9580

Page 61

1  those questions.
2    MR. PLUNKETT: Okay.
3    MR. KONECKY: I think that will just make it
4  cleaner.
5    MR. PLUNKETT: That's fine.
6    But "did you give that to your attorney" is
7  probably not privileged, but I don't need an answer to
8  that if that's going to result in an argument.
9  BY MR. PLUNKETT:
10   Q. Have you extracted this information from your
11 computer in any way?
12   A. So far I've only changed the setting on my
13 computer.
14   Q. You haven't done anything else?
15   A. That's correct.
16   Q. So this has all been much to do about
17 nothing?
18   MR. KONECKY: Well, I'm going to object as to
19 form.
20   MR. PLUNKETT: All right.
21 BY MR. PLUNKETT:
22   Q. So currently that information is retained on
23 your computer, right?
24   A. I'm -- I changed the setting. If it recorded
25 it, then that's -- that's what it did. And it wasn't

TSG Reporting - Worldwide    877-702-9580

Page 62

1  that long ago that I did it, maybe within the last
2  month or two.
3       Q. Do you recall what the name of that browser
4  setting is?
5       A. My best guess would be Browser History.
6       Q. And do you remember what you changed that
7  option to?
8       A. To three -- to retain 365 days rather than 20
9  days.
10      Q. All right.
11         You testified that since January 2005 you've
12 attempted to access Target approximately 20 times.
13 Approximately how much time have you spent on
14 Target.com since January 2005?
15      A. On average or, I should say, the average
16 amount of time that I spend on a website is probably --
17      MR. KONECKY: I'm going to interrupt you
18 there. Focus on his question. You want to have it
19 read back?
20      MR. PLUNKETT: I'll just repeat it because I
21 think what happened is you started to testify about the
22 average amount of time on a website generally.
23 BY MR. PLUNKETT:
24      Q. My question is: How much time did you spend
25 on Target.com since January 2005?

TSG Reporting - Worldwide      877-702-9580

Page 63

1       A. I -- I don't know. I don't know.
2       Q. Okay. Can you provide me with your best
3  estimate?
4       A. Several hours.
5       Q. Several hours since January 2005?
6       A. Yes, several hours since January 2005.
7       Q. Paragraph 31 of your declaration states,
8  "Upon accessing Target.com on several occasions, I have
9  become frustrated with inexplicable code and garbled
10 text that has prevented me from continuing to navigate
11 through the site."
12         On these occasions when you encounter
13 inexplicable code and garbled text, approximately how
14 much time did you spend on the site before you left the
15 site?
16      MR. KONECKY: Objection; overbroad.
17      THE WITNESS: Could you repeat the question,
18 please?
19      MR. PLUNKETT: Can you read it back.
20      (Record read as follows:
21      "QUESTION: Paragraph 31 of your declaration
22      states, 'Upon accessing Target.com on several
23      occasions, I have become frustrated with
24      inexplicable code and garbled text that has
25      prevented me from continuing to navigate

TSG Reporting - Worldwide      877-702-9580

Page 64

1       through the site.'
2       "On these occasions when you encounter
3       inexplicable code and garbled text,
4       approximately how much time did you spend on
5       the site before you left the site?")
6       THE WITNESS: When I encounter inexplicable
7  code and garbled text, I didn't spend much time on the
8  inexplicable code and garbled text. I went other
9  places on the site.
10 BY MR. PLUNKETT:
11      Q. And so the inexplicable code and garbled text
12 did not cause you to leave the site right away?
13      MR. KONECKY: Objection; overbroad, misstates
14 prior testimony.
15      THE WITNESS: Inexplicable code itself did
16 not cause me to leave the site itself, that is,
17 Target.com.
18 BY MR. PLUNKETT:
19      Q. Can you describe for me where on the site you
20 encountered inexplicable code and garbled text?
21      A. From the very beginning of the site and -- at
22 the very introduction of the site and also throughout
23 the site.
24      Q. And did the inexplicable code and garbled
25 text prevent you from browsing for products on

TSG Reporting - Worldwide      877-702-9580

Page 65

1  Target.com?
2       A. It was inexplicable and garbled. I don't
3  know if it prevented me from -- from browsing for
4  anything. It probably did because it's on the site and
5  that's their main goal, is to sell products.
6       Q. Do you recall an occasion when you accessed
7  the home page of Target?
8       A. Say that again, please.
9       Q. Do you ever recall going to the home page of
10 Target and navigating past the home page to other
11 pages?
12      A. I have traveled past the home page of
13 Target.com.
14      Q. Did you use a link on the home page to do
15 that?
16      A. I most likely used a link on the home page to
17 go past that -- past that site.
18      Q. Do you remember what link or what type of
19 link you used to navigate past the home page?
20      A. The link was much like any other link that
21 went from one page to the next.
22      Q. Do you remember how the link was identified?
23      A. I don't remember the specific title of the
24 link.
25      Q. All right. Do you remember on the home page

TSG Reporting - Worldwide      877-702-9580

Page 66

1  a link to departments for shopping on Target.com?
2      A.  It seems to me that there were links to
3  different sections of Target.com.
4      Q.  And were those links usable with JAWS --
5  withdraw.
6          Were those links accessible with JAWS?
7          MR. KONECKY:  Objection; vague and ambiguous,
8  overbroad.
9          THE WITNESS:  JAWS -- JAWS can click on
10 almost any link.  Whether I know what -- where it's
11 going to go does -- is a different story.
12 BY MR. PLUNKETT:
13     Q.  Do you remember links on Target's home page
14 to the various shopping departments that were described
15 to you through JAWS that enabled you to know where the
16 link would take you if you clicked on it?
17         MR. KONECKY:  Objection; compound, vague and
18 ambiguous.
19         THE WITNESS:  To the best of my knowledge,
20 there were links that were on Target.com that got me
21 from the home page to another site.  And they were
22 descriptive enough for me to know approximately where I
23 was going but not all of them.
24 BY MR. PLUNKETT:
25     Q.  Paragraph 30 of your declaration states, "I

Page 67

1  have found it extremely difficult, and at times
2  impossible, to browse for products on Target.com using
3  my screen reader if I do not have a specific item in
4  mind."
5          Can you explain what you mean by that?
6      A.  When -- when I click on a link, it brings me
7  to a page.  And as I recall, the experiences I've had
8  with Target have been that the links don't link to
9  specific retail items that I can reasonably or even
10 find at all in -- in graphic detail unless I do a
11 search.
12     Q.  What do you mean that you can't find the item
13 at all in graphic detail?
14     A.  Um, so if I link to a site where there may or
15 may not be products, um, I don't know my -- the website
16 isn't giving me enough -- or me or JAWS enough
17 information to know what is on the site.
18     Q.  Your declaration says that, "At times it has
19 been extremely difficult and at other times impossible
20 to browse for products."
21     A.  Uh-huh.
22     Q.  Can you recall an occasion when it was
23 impossible?
24     A.  I -- I think that's sort of what I was trying
25 to describe in the last answers.  Most of the time that

Page 68

1  I've ever found an actual product, I've had to do a
2  search.  When I've found an actual -- when I've tried
3  to browse link by link, I really haven't been able to
4  browse the site in a way that I could really find a
5  myriad of items that I -- I don't exactly know what --
6  what may or may not be.
7          If I'm looking for household items and I
8  don't know what specific item I'm looking for, I cannot
9  use the interface to just browse.
10     Q.  All right.  You have to use the search
11 function to search for a particular product?
12     A.  A specific product.  And that's most of the
13 time.  I'm not sure if it's all of the time, but I know
14 that I -- I have rarely, if any a time at any time,
15 been able to -- to actually browse the Internet and
16 just find a product.
17     Q.  Okay.  Well, let's take those one at a time
18 and start first with the search function.
19         Have you had any difficulties using the
20 search function when you have a product in mind and
21 you're going to search for that particular product?
22         MR. KONECKY:  Objection; vague and ambiguous,
23 compound, assumes facts not in the record.
24         You can answer.
25         THE WITNESS:  Could you repeat the question?

Page 69

1          MR. PLUNKETT:  Can you read it back.
2          (Record read as follows:
3          "QUESTION:  Well, let's take those one at a
4          time and start first with the search
5          function.
6          "Have you had any difficulties using the
7          search function when you have a product in
8          mind and you're going to search for that
9          particular product?")
10         THE WITNESS:  The search function is -- in my
11 mind it is a text box that I write something in and
12 press the search button.  I've been able to
13 successfully do that.
14 BY MR. PLUNKETT:
15     Q.  And after searching for a product and the
16 page comes up with a product on it, have you ever added
17 the product to the cart?
18     A.  I don't understand the question exactly.  I
19 mean, there's processes that I go through and you're
20 jumping from searching to buying something.
21     Q.  Okay.  Well, then let me back up.
22         After you enter the text in the box for the
23 product you're searching for, I assume that you hit the
24 function key to search; is that right?
25     A.  That's correct.

Page 70

1    Q. Then what happens next?
2    A. After that, a page with products comes up.
3    Q. All right. And have you been able to
4  navigate that page to find the product you want and add
5  it to the cart?
6        MR. KONECKY: Objection; compound.
7        THE WITNESS: I've had difficulty navigating
8  through the -- that part of it -- part of the site
9  after it's -- after I've done a search.
10 BY MR. PLUNKETT:
11   Q. Have you ever been able to do it -- withdraw.
12      Have you ever been able -- withdraw.
13      I understand that you've had difficulty
14 navigating a page that it goes to. My question is
15 whether you've been able to do it to find the item you
16 want and to add it to the cart.
17       MR. KONECKY: Objection; vague and ambiguous,
18 compound.
19       THE WITNESS: I've been able to put a product
20 in a shopping cart, but I don't know that I've ever
21 been able to put the exact make and model, color that
22 I've wanted into that shopping cart.
23 BY MR. PLUNKETT:
24   Q. So you have added an item to a cart that
25 you've searched for, correct, but you're just not sure
TSG Reporting - Worldwide    877-702-9580

Page 71

1  if that was the item you intended to add to the cart;
2  is that what your testimony is?
3        MR. KONECKY: I object. It's been asked and
4  answered, and the testimony will speak for itself.
5        You can answer it again.
6        THE WITNESS: I'm not sure that the product
7  that I -- I am selecting to go into the cart is the
8  product -- the product that I want.
9  BY MR. PLUNKETT:
10   Q. Why not?
11   A. Because the description -- from my
12 experience, the description of what I've looked for and
13 the -- the way the page is set up, the way -- yeah, the
14 way the page is set up, it reads the description of the
15 item, the -- the price and the like, the make or the
16 model of the item in such a way that it's confusing
17 which one goes to which item. That's why when I put it
18 in my cart it's confusing.
19   Q. If I understand your testimony, you have
20 clicked the add to cart button and added an item to a
21 cart, right?
22       MR. KONECKY: I'll object to it being
23 compound, vague and ambiguous.
24       You can answer it.
25       THE WITNESS: If -- if the actual button is
TSG Reporting - Worldwide    877-702-9580

Page 72

1  called "add to cart," then I have been able to put it
2  into a place where it's -- it would be considered
3  checking out, or a cart.
4        MR. PLUNKETT: All right.
5  BY MR. PLUNKETT:
6    Q. After you added an item to a cart, were you
7  able to use -- withdraw.
8       After you added an item to a cart, could you
9  verify at that time whether or not the item in the cart
10 was the item you intended to put in the cart?
11       MR. KONECKY: Objection; overbroad.
12       THE WITNESS: At the time that I put an item
13 into the cart, it -- it seems to me that it was
14 verified that I put what I put there. And if it was
15 what I wanted, it told me if it was something I wanted
16 or didn't want, I think.
17       MR. PLUNKETT: I'm sorry, I'm not sure I
18 understand your answer. So let me rephrase the
19 question.
20 BY MR. PLUNKETT:
21   Q. Did you ever attempt, after adding an item to
22 the cart, to use some function on the website to verify
23 whether or not the item in the cart is the item you
24 intended to put in the cart?
25   A. Well, I used JAWS to go through the site and
TSG Reporting - Worldwide    877-702-9580

Page 73

1  the site then had a product that I put into the cart.
2  But it was also trying to sell me, as I recall, some of
3  the other products. So eventually I think I was able
4  to determine what the item was that was actually in the
5  cart that I added rather than the surrounding products.
6    Q. So after you navigated past the other links
7  that were trying to sell you other products, you were
8  able to tell what was added to the cart; is that right?
9        MR. KONECKY: Objection; overbroad.
10       If you can answer.
11       THE WITNESS: Could you ask the question
12 again?
13       MR. PLUNKETT: Sure.
14 BY MR. PLUNKETT:
15   Q. After you added an item to the cart, I
16 understand that a page came up that you said was trying
17 to sell you other products. After you on that page
18 navigated past the links that were trying to sell you
19 other products and you got to the cart, you were able
20 to identify the item that had been added to the cart;
21 is that correct?
22       MR. KONECKY: Objection; vague and ambiguous,
23 assumes facts not in the record, overbroad.
24       You can answer.
25       THE WITNESS: I don't understand the
TSG Reporting - Worldwide    877-702-9580

Page 74

1  question. I'm -- maybe I'm getting tired or something.
2      MR. PLUNKETT: Okay.
3      THE WITNESS: It's a lot of information in
4  that question.
5      MR. PLUNKETT: I'm sorry about that. My
6  question is probably confusing.
7      THE WITNESS: Uh-huh.
8  BY MR. PLUNKETT:
9      Q. You said that a page would come up after you
10 added an item to a cart where Target.com was trying to
11 sell you other products; is that correct?
12     A. Yes. Another page would come up and there
13 would be the product that I put in the cart and other
14 products.
15     Q. Were you able to tell what item you put in
16 the cart?
17     MR. KONECKY: Objection; overbroad.
18     THE WITNESS: I'm almost certain at one point
19 or another I was able to tell with a bit of difficulty
20 which product I had put into the cart.
21 BY MR. PLUNKETT:
22     Q. What was the difficulty you encountered?
23     A. The general navigation of the page, the
24 ambiguity of what was in the cart versus what was
25 trying -- what was an extra item trying to be sold to

TSG Reporting - Worldwide    877-702-9580

Page 75

1  me from Target.com.
2      Q. Was there a place on the page -- withdraw.
3          Was there -- withdraw.
4          Did the website identify for you how many
5  items were in the cart?
6      A. I don't recall.
7      Q. Have you ever seen an element on the page
8  that identifies for you how many items are in the cart?
9      A. I don't recall.
10     Q. Did you ever look for that?
11     A. I don't recall.
12     Q. After navigating through these difficulties
13 and identifying the item that was in the cart, were you
14 able to determine whether that was the item you had
15 intended to add to the cart?
16     MR. KONECKY: Objection; overbroad, vague and
17 ambiguous, assumes facts not in the record, asked and
18 answered.
19     You can answer.
20     THE WITNESS: The -- could you repeat the
21 question?
22     MR. PLUNKETT: Could you read it back.
23     (Record read as follows:
24     "QUESTION: After navigating through these
25     difficulties and identifying the item that

TSG Reporting - Worldwide    877-702-9580

Page 76

1      was in the cart, were you able to determine
2      whether that was the item you had intended to
3      add to the cart?")
4      THE WITNESS: Sometimes I was able to
5  identify that it was the -- the wrong item that I
6  didn't want to add to the cart, and sometimes I was
7  able to identify that it was close to the right item
8  that I wanted.
9      So for instance, it may have been a towel
10 that I wanted, but it may not have been the color blue
11 that I wanted. But I don't recall whether, if ever,
12 I've actually gotten the actual product, color, and
13 brand that I wanted in the cart.
14 BY MR. PLUNKETT:
15     Q. You can't recall an occasion when you were
16 able to verify that you added the correct item to the
17 cart?
18     A. Not -- not a correct item but something that
19 was to -- to my liking, my specifications, if you will.
20 So ...
21     Q. When you say that the item was not to your
22 specifications, do you mean it was not the product you
23 intended to add to the cart?
24     A. When I said not to my liking, I meant that
25 it's the one that I didn't intend to put into the cart.

TSG Reporting - Worldwide    877-702-9580

Page 77

1      Q. What did you do on those occasions when you
2  verified that the item in the cart is not the one you
3  wanted in the cart?
4      MR. KONECKY: Objection; overbroad.
5      THE WITNESS: Well, I've done several
6  different things on several different occasions.
7  BY MR. PLUNKETT:
8      Q. What are the different things you've done?
9      A. One occasion I -- I tried to purchase the
10 item anyways.
11     Q. And what happened when you tried to do that?
12     A. It brought me to -- let me start over.
13         When I -- when I tried to buy the product, it
14 brought me to another page asking whether I was certain
15 I wanted to buy products -- this is paraphrasing. I
16 don't know exactly what it said, but it -- the gist is
17 that it asked me if I wanted to buy other products and
18 if I was sure I wanted to buy the products in my -- in
19 my cart. That's the gist of it.
20     Q. And what did you do next?
21     A. I pressed another button that said something
22 like "go to the next step" or "make a purchase."
23     Q. And then what happened, were you able to
24 complete the purchase?
25     A. No, I was never able to complete a purchase.

TSG Reporting - Worldwide    877-702-9580

## Page 78

1  Q. What happened when you attempted to complete
2  the purchase?
3  A. It just kept circling around that -- that
4  process that I just described to you.
5  Q. And just so the record is clear, that process
6  is that it would continue to offer you additional items
7  to buy, that's what it kept circling back to?
8  A. And am I sure that I wanted to buy that
9  product that I had put in my cart.
10 Q. Did you ever see a button on Target.com
11 called "proceed to checkout"?
12 A. I never -- I never encountered a button that
13 said "proceed to checkout" or -- that may -- may or may
14 not be true. I don't know if that's the button that
15 kept circling me around or if it was the one that I
16 never encountered.
17 Q. Did you ever -- withdraw.
18    In your times visiting Target.com, did you
19 ever arrive on a page requiring you to sign in or
20 create a new account?
21 A. Could you repeat the question?
22 Q. In your times using Target.com, did you ever
23 arrive at a page requiring you to sign in or create a
24 new account?
25 A. Could you be more specific?

TSG Reporting - Worldwide    877-702-9580

## Page 79

1  Q. Well, all right, I'll represent to you that
2  there is a page on Target.com that requires a user to
3  sign in with an e-mail and a password or to create a
4  new account.
5     Did you ever arrive at a page like that?
6  A. Could you be more specific?
7  Q. I don't know if I can be more specific than
8  that.
9  A. Okay.
10 Q. And I'm just asking for your best
11 recollection sitting here.
12    MR. KONECKY: Well, maybe you should ask a
13 different question.
14    I mean, answer it if you can.
15    But there's been an expression that the
16 witness doesn't understand the question.
17    THE WITNESS: Yeah, I don't --
18    MR. KONECKY: You can answer, or you can ask
19 another question.
20    THE WITNESS: Could you ask me another
21 question? I don't quite understand that one.
22 BY MR. PLUNKETT:
23 Q. Do you ever recall being on a page on
24 Target.com where you were asked to sign in?
25 A. I'm having the same problem with that

TSG Reporting - Worldwide    877-702-9580

## Page 80

1  question. I don't understand what you're asking.
2  Q. Gosh, I don't know if I can be much more
3  specific, but I'll try.
4  A. Okay.
5  Q. Do you recall ever being on Target.com and
6  being prompted for your e-mail address or for a
7  password?
8  A. I tried to sign up for e-mail ads or
9  something like that at Target.com.
10 Q. Can you recall being on any other page where
11 you were prompted to enter your e-mail address?
12    MR. KONECKY: Any other page on Target?
13    MR. PLUNKETT: Correct.
14    THE WITNESS: I think I tried applying for a
15 Target credit card on Target.com.
16 BY MR. PLUNKETT:
17 Q. What do you remember about that?
18 A. That I went through the form and stopped
19 midway through and did not come back to it, didn't
20 finish it.
21 Q. What information was that form asking you
22 for?
23 A. The basic information that credit card
24 companies need to -- to give you a credit card -- name,
25 address, those sorts of things.

TSG Reporting - Worldwide    877-702-9580

## Page 81

1  Q. And why did you not complete the form?
2  A. Because at the time I did not -- I did not
3  wish to proceed with the application.
4  Q. Did you ever arrive on a page on Target.com
5  that asked you for any information about shipping?
6  A. I don't recall ever coming to a point where
7  it asked about shipping.
8  Q. Do you recall ever arriving on a page that
9  asked you for information about payment type?
10 A. I'm almost certain that I did not incur any
11 page like that.
12 Q. We were talking earlier about the website
13 circling around and taking you back to the same area
14 where it asked you if you were sure if you wanted to
15 buy. Can you provide me with an estimate of the amount
16 of time you spent trying to get out of that circle?
17    MR. KONECKY: Objection; overbroad, vague and
18 ambiguous.
19    THE WITNESS: I probably spent 15 to 20
20 minutes trying to not only get out of that circle but
21 find the -- the place where I could actually make a
22 purchase, a button or a link, so on and so forth.
23 BY MR. PLUNKETT:
24 Q. Do you know if at the time you were looking
25 for that button or the link to make a purchase you were

TSG Reporting - Worldwide    877-702-9580

Page 82

1  using the virtual cursor or the PC cursor?
2      MR. KONECKY: Objection; vague and ambiguous.
3  BY MR. PLUNKETT:
4      Q. Do you know what I mean by those terms?
5      A. Yes, they're JAWS terms.
6      Q. Do you know whether at the time you were
7  trying to find the way to proceed with your purchase
8  you were using a virtual cursor or the PC cursor?
9      A. I -- I think I tried both.
10     Q. Do you know whether or not you tried both?
11     A. I think I tried both.
12     Q. All right. And how -- was there a difference
13 in the way they functioned in helping you find that?
14     MR. KONECKY: Objection; vague and ambiguous.
15     THE WITNESS: The virtual cursor and the JAWS
16 cursor do have different functions.
17 BY MR. PLUNKETT:
18     Q. Did switching from one to the other help you
19 at all on this page where you were trying to find a way
20 to proceed with a purchase?
21     A. Switching from one cursor to the other,
22 virtual or -- what was the other one -- JAWS cursor, I
23 don't recall it ever making a difference in whether
24 I -- whether I was able to find -- I was never able to
25 find the button, so it most likely made no difference.
   TSG Reporting - Worldwide      877-702-9580

Page 83

1      Q. Have you ever encountered websites where you
2  needed to switch between those two cursors to make the
3  website operate properly or to do what you want it to
4  do on the website?
5      A. On the Internet I have used both cursors to
6  optimize my viewing of websites.
7      Q. Have you ever found that the functionality of
8  the JAWS cursor and the PC cursor vary depending on
9  which version of JAWS you were using?
10     A. In my experience the cursors have virtually
11 changed very little in their functionality, if any.
12     Q. Do you recall returning -- withdraw.
13         Talking again about this Target.com page
14 where you're attempting to find a way to proceed with
15 your purchase, before you switched cursors do you know
16 whether or not you tried to tether the JAWS cursor to
17 the PC cursor by pressing control, insert, plus the
18 minus key on the number pad?
19     A. Usually when I tether the two, I press just
20 insert and then the JAWS cursor -- the minus key which
21 is the button that we call the JAWS cursor.
22     MR. PLUNKETT: Can you read that answer back.
23     (Record read as follows:
24     "ANSWER: Usually when I tether the two, I
25     press just insert and then the JAWS cursor --
   TSG Reporting - Worldwide      877-702-9580

Page 84

1      the minus key which is the button that we
2      call the JAWS cursor.")
3  BY MR. PLUNKETT:
4      Q. Did that assist you in figuring out how to
5  complete your purchase on Target.com?
6      A. Tethering the JAWS cursor to the PC cursor
7  only creates, in my experience, just that, a tether to
8  it. Therefore, that -- that tethering process never
9  helped because I was never able to pinpoint anything
10 that was of help to me on that site.
11     Q. On this page that we've been talking about,
12 after you tether the JAWS cursor to the PC cursor, did
13 you attempt to tab through the elements on the page to
14 find a button that would indicate something like
15 "proceed to checkout" or "complete purchase"?
16     (Cell phone rings.)
17     THE WITNESS: If you mean -- by "tabbing" you
18 mean using the tab key on the keyboard or even if you
19 mean using the arrow keys or any other key that allows
20 me to navigate through the site, both the JAWS cursor
21 and the PC cursor have not allowed me to be successful
22 at making a purchase on that site. That's the bottom
23 line.
24     MR. PLUNKETT: Okay, and I understand that.
25 And unfortunately I do need to get the detail of what
   TSG Reporting - Worldwide      877-702-9580

Page 85

1  you tried to the extent you recall them.
2      MR. KONECKY: Counsel, when you have a chance
3  I want to return a phone call. But when you're at a
4  good breaking point.
5      MR. PLUNKETT: Okay. I will be in a minute.
6  BY MR. PLUNKETT:
7      Q. Did you ever -- after tethering the cursors
8  as we've talked about with the key strokes we've talked
9  about, would you then turn off the virtual cursor
10 before attempting to tab through the elements on the
11 page with insert-Z?
12     MR. KONECKY: Objection; overbroad, vague and
13 ambiguous.
14     THE WITNESS: I don't ever recall using the
15 control -- did you say control-Z?
16     Q. Insert-Z.
17     A. Insert-Z.
18     I don't recall ever using that -- that
19 function to -- to search for anything on this page.
20     Q. Do you know what insert-Z does on JAWS?
21     A. Um ...
22     MR. KONECKY: Objection; assumes facts not in
23 the record.
24     THE WITNESS: Could you ask the question
25 again?
   TSG Reporting - Worldwide      877-702-9580

Page 86

BY MR. PLUNKETT:
Q. Do you know what insert-Z does on JAWS? Are you familiar with that function?
A. I've -- I've used it before, but I'm not sure that I know exactly what it does.
Q. Okay. Are you familiar with the concept of turning the virtual concept off and tabbing through the elements of a page using the PC cursor?
A. Yes. I'm familiar with that, yes.
Q. Did you attempt to do that in navigating this page we've been talking about?
A. Yes, I used the virtual PC cursor with the JAWS cursor off to navigate through the page.
Q. Did you ever tab through the page with the virtual cursor turned off?
A. I don't know that I did.
MR. PLUNKETT: We could take a break now.
MR. KONECKY: Okay.
(Recess taken.)
BY MR. PLUNKETT:
Q. I want to now talk about the problems you've had in browsing for products on Target.com. And maybe the best way to do that is to read what's in paragraph 33 of your declaration and then ask you about it.
At paragraph 33 it says, "In the summer of

TSG Reporting - Worldwide    877-702-9580

Page 87

2005, I attempted to purchase towels in preparation for moving into my dorm room the following fall. I searched Target.com for, quote, towels, unquote, and found several items. However, the numerous results were not matched with the different product descriptions. Because of this situation, I could not determine which product I wanted to purchase. I became so frustrated that I did not continue to the point where I could even attempt to complete a transaction on Target.com."
And my question is what you mean by your statement that the "numerous results were not matched with the different product descriptions."
A. When I searched for "towels," many -- many different brands and sizes and colors of towels or whatever came up from that search were the numerous part.
Q. Is this the -- this was the result of a search. Is this the same problem you experienced when you were browsing on the website, that you couldn't match the product descriptions with the item?
A. While browsing I rarely found products that -- that I -- I rarely found products, period.
Q. Can you explain to me what you mean by you couldn't find products when browsing?

TSG Reporting - Worldwide    877-702-9580

Page 88

A. I didn't get the same list of type of products. For instance, "towels," I didn't get that broad of a selection. I didn't even get a selection of towels. I might have gotten -- I may have gotten soaps and bathroom products but not -- so more broad categories rather than the specific.
Q. Okay. Well, I'll represent to you that from the Target home page there are links to departments such as Women, Men, Baby, Kids, Home, Bed and Bath, Furniture, et cetera.
Do you recall those links being at the top of the Target page?
A. I seem to recall hearing those links.
Q. Did you ever attempt to go into, for example, the Bed and Bath department using that link to find a specific product category like towels or soap?
A. I think that is the process I went through.
Q. And you were not able to find a product categories using that process?
A. After clicking on the link, I don't know exactly where it brought me. But I know that it frustrated me to no end, wherever it did bring me, and I wasn't able to find that specific product line.
Q. What caused that frustration?
A. The inability to navigate the next or the

TSG Reporting - Worldwide    877-702-9580

Page 89

preceding pages.
Q. Despite the frustration that you experienced in trying to navigate the previous pages, when you arrived at the department page like Bed and Bath or Home, did you ever attempt to search through the links and try to find more specific product categories like towels or soap?
MR. KONECKY: Objection; compound.
THE WITNESS: Could you rephrase the question?
MR. PLUNKETT: I was afraid you were going to ask that.
THE WITNESS: Sorry.
BY MR. PLUNKETT:
Q. When you would browse on Target.com and you would go to an area like Home, I believe your testimony is that the links on the page were frustrating and it was frustrating to navigate.
My question is whether or not you nonetheless attempted to search on that page for links to more specific product categories like towels.
A. Uh-huh.
MR. KONECKY: Vague and ambiguous, overbroad.
THE WITNESS: I think what happened, the process that I went through was to browse broad

TSG Reporting - Worldwide    877-702-9580