LAURENCE W. PARADIS (California Bar No. 122336)
ROGER N. HELLER (California Bar No. 215348)
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, California 94704
Telephone:   (510) 665-8644
Facsimile:   (510) 665-8511
TTY:         (510) 665-8716

JOSHUA KONECKY (California Bar No. 182897)
RACHEL E. BRILL (California Bar No. 233294)
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone:   (415) 421-7100
Fax:         (415) 421-7105
TTY:         (415) 421-1655

DANIEL F. GOLDSTEIN (*pro hac vice*)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 1700
Baltimore, MD 21202
Telephone:   (410) 962-1030
Fax:         (410) 385-0869

PETER BLANCK (*pro hac vice*)
900 S. Crouse Ave.
Crouse-Hinds Hall, Suite 300
Syracuse, NY 13244-2130
Telephone:   (315) 443-9703
Fax:         (315) 443-9725

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, the NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, on behalf of their members and all others similarly situated, and BRUCE F. SEXTON, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION<br><br>Defendant. | Case No.: C 06-01802 MHP<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: May 1, 2007<br>Time: 2:00 PM<br>Judge: The Hon. Marilyn Hall Patel |

*National Federation of the Blind, et al. v. Target Corporation.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

Dockets.Justia.com

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................. 1

II. TARGET'S OPPOSITION TO CERTIFICATION OF THE ADA CLAIM RELIES ON AN OVERLY NARROW INTERPRETATION OF THE "NEXUS" REQUIREMENT; MOREOVER, WHETHER TARGET'S INTERPRETION IS CONSISTENT WITH THE ADA AND THIS COURT'S PRIOR ORDER IS A COMMON QUESTION FOR THE MERITS. ......................................................................................................................... 3

III. TARGET'S OPPOSITION TO CERTIFICATION OF THE STATE LAW CLAIMS IS PREMISED ON THE MISTAKEN PRESUMPTION THAT THEY ARE LIMITED BY THE ADA. ............................................................................................................................ 4

   A. The Unruh Act Covers "Any Commercial Force," Independent of Physical Places, Rather Than "Places of Public Accommodation." ................................................. 4

   B. The DPA Also Has Broader Coverage Than The ADA. ........................................ 5

IV. TARGET DOES NOT DISPUTE COMMONALITY; ITS ATTACKS ON TYPICALITY CONFLICT WITH THE UNDISPUTED RECORD THAT TARGET.COM IS DESIGNED TO PROVIDE THE SAME EXPERIENCE TO ALL USERS REGARDLESS OF SKILL LEVEL. ................................................................. 6

V. THE "POST-FILING MODIFICATIONS TO TARGET.COM" WERE MADE UNDER THE PRESSURE OF LITIGATION, REMAIN INCOMPLETE AND BY NO MEANS OBVIATE THE NEED FOR INJUNCTIVE RELIEF. ......................................................... 7

   A. It Is Well Settled That Post-Filing Modifications Such As Those At Issue Here Do Not Moot Claims for Injunctive Relief. ............................................................. 7

   B. Target Showed No Inclination For Access Before The Filing Of This Case. ........ 8

   C. Injunctive relief Is Necessary To Ensure That Target.com Stays Accessible As New Web Pages And Content Are Added To the Site On A Daily Basis. ............. 8

   D. Plaintiffs' Classwide Claims For Injunctive Relief Are Also Ripe To Adjudicate Whether Target's Post Filing And Still Unfinished "On-Line Assistive Technology Guidelines" Will Be Adequate To Ensure Access. .............................. 9

   E. The Statements Target Cites In Support Of Its Mootness Argument Are Neither Probative Nor Admissible. ...................................................................................... 9

VI. RULE 23(B)(2) CERTIFICATION IS APPROPRIATE BECAUSE THIS CASE IS PRIMARILY ABOUT SECURING THE EQUITABLE RELIEF NECESSARY TO ENSURE FULL AND CONTINUED ACCESS ON TARGET.COM; THE RIGHT OF THE CALIFORNIA SUBCLASS TO MINIMUM STATUTORY DAMAGES DOES NOT CHANGE THIS FACT. ................................................................................................. 10

   A. The Courts In This District Have Repeatedly Held That Disability Access Class Actions Under Rule 23(b)(2) Can Include Claims for Minimum Statutory Damages. ............................................................................................................... 10

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

i

B. Plaintiffs' Primary Focus Has and Continues to be Securing Declaratory Relief That The Disability Access Laws Broadly Cover Target.com and Injunctive Relief To Ensure "Full and Equal Enjoyment" of the Website After Resolution of this Litigation. ............................................................................................................... 11

C. Certification of the Damages SubClass Under Rule 23(b)(2) Is Appropriate Here For The Same Reasons It Was For the Fixed Racks In *Lieber v. Macy's*. ............ 11

D. The Court Can Import Class Notice And Opt-Out Procedures Into This Rule 23(b)(2) Class. ...................................................................................................... 13

VII. ALTERNATIVELY, PLAINTIFFS MEET THE CRITERIA FOR CLASS CERTIFICATION UNDER RULE 23(b)(3). ................................................................. 13

VIII. TARGET'S PROPOSAL FOR A TEST CASE DOES NOT COMPORT WITH ESTABLISHED OR SENSIBLE CLASS ACTION PROCEDURE ............................... 14

IX. PLAINTIFFS MEET THE *HUNT* TEST FOR REPRESENTATIVE STANDING. ........ 14

X. PLAINTIFFS HAVE ESTABLISHED NUMEROSITY ................................................. 15

XI. CONCLUSION .............................................................................................................. 15

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

ii

# TABLE OF AUTHORITIES

**Cases**

Arnold v. United Artists Theatre Circuit, 158 F.R.D. 439 (N.D.Cal. 1994)..........................9, 10

Barnes v. Healy, 980 F.2d 572 (9th Cir. 1992).............................................................................7

Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042 (9th Cir. 2000)..............................5

Cooper v. Federal Reserve Bank, 467 U.S. 867 (1984)..............................................................10

Cupolo v. Bay Area Rapid Transit, 5 F.Supp.2d 1078 (N.D. Cal. 1997)...........................7, 8, 9

DeFunis v. Odegaard, 416 U.S. 312 (1974) ................................................................................7

Dukes v. Wal-Mart, 222 F.R.D. 137 (N.D. Cal. 2004), aff'd by Dukes v. Wal-Mart, Inc., 474 F.3d 1214................................................................................................................................10

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974) ..................................................................4

Ellis v. Costco, --- F.R.D. ---, 2007 WL 127800, *12 (N.D. Cal. 2007)..........................10. 11

Hankins v. El Torito Restaurants, Inc., 63 Cal. App. 4th 510................................................5, 6

Havens Realty Corp. v. Coleman, 455 U.S. 363.......................................................................15

Hunt v. Washington Apple Advertising Comm'n., 432 U.S. 333 (1977).................................15

International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977)....................10

Lieber v. Macy's West, Inc., 80 F.Supp.2d 1065 (N.D. Cal. 1999).........................................10

Moeller v. Taco Bell Corp., 220 F.R.D. 604 (N.D. Cal. 2003)................................................ 10

Molski v. Gleich, 318 F.3d 937 (9th Cir. 2000)........................................................... 10, 13, 14

O'Connor v. Village Green Owners Ass'n, 33 Cal.3d 790 (1983)........................................4, 5

Rendon v. Valleycrest Prod. Ltd., 294 F.3d 1279 (11th Cir. 2002).........................................3

United States v. W.T. Grant Co., 345 U.S. 629 S.Ct. 894 L.Ed. 1303 (1953).......................7

**Statutes**

42 U.S.C. § 12182(a)...................................................................................................................3

Cal. Civ. Code §51(b).................................................................................................................4

Cal. Civ. Code §54.1(a)(1)..........................................................................................................5

**Federal Regulations**

28 C.F.R. § 36.305(a)................................................................................................................12

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

## I. INTRODUCTION

Target does not present a shred of evidence to dispute that: (1) target.com is designed to provide the same basic experience to its guests regardless of individual skill, experience or other particularities; (2) the lack of alternative text, keyboard access, form labeling and accessible navigation tools on the website has the same general impact on Plaintiffs and blind people as a group because the blind need these features to perceive and communicate information; (3) any access improvements to target.com will be generally applicable to blind people as a class and not tailored to the particularities of any individual user; and (4) target.com is heavily integrated with the Target retail stores. This record confirms that the systemic nature of Plaintiffs' allegations and prayer for equitable relief, as made in the First Amended Complaint, meet the criteria for a class action under Fed. R. Civ. P. 23(a) & (b)(2).

Target premises the lion's share of its Opposition upon a merits-based argument that some members covered by the proposed class definition will not be able to show a "nexus" between the barriers they experienced on target.com and the retail stores.[1] This argument fails for several reasons. First, it relies on a conclusion about the merits of Plaintiffs' claims, which is not a basis to deny class certification. Second, Target's interpretation of the nexus requirement is not consistent with the ADA, because it limits violations to those barriers that are actually experienced *in* a Target retail store. In previously rejecting this very argument, this Court's Order of September 6, 2006, explained that the ADA covers barriers on target.com if they compromise the full and equal enjoyment of the goods and services *of* the retail stores. Third, Target's argument ignores the fact that Plaintiffs' State law claims do not require any nexus with the stores at all. Fourth, Target's assumption that every single member of the class must ultimately be eligible for specific relief as a precondition for class certification is simply wrong. Finally, to the extent the Court has any concerns about the class definition, it has the discretion to narrow that definition, as it has done in other cases such as *Lieber v. Macy's*.

---

[1] This merits-based argument is the foundation for virtually every aspect of Target's Opposition, including Target's arguments regarding the class definition, ascertainability, typicality, adequacy of representation, numerosity, and superiority.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

1

Target also contends that this case should not be certified under Rule 23(b)(2) because its "post-filing modifications to target.com" moot Plaintiffs' claims for injunctive relief. Yet, it is well established that voluntary cessation of illegal activity does not render a case moot unless there is no reasonable expectation that the wrong will be repeated and the effects of the alleged violation are completely and irrevocably eradicated. The deposition testimony of Target's own designee witnesses (curiously absent from Target's Opposition) reveals that Target has not even completed the planning, much less implementation, of the access improvements it claims will be made if Plaintiffs just let the company take care of everything on its own.

Moreover, there is absolutely no guarantee that Target's post-filing plans, assuming their eventual consummation, will be sufficient to guarantee full and equal enjoyment as required by applicable law. The briefing to date demonstrates that there is still a fundamental disagreement between the parties on the class-wide question of what "full and equal enjoyment" means.[2] In addition to class injunctive relief, class-wide declaratory relief is thus still necessary to resolve the question of whether and how the state and federal disability access laws cover websites (a question which Target will no doubt keep ripe through its eventual appeal of the Court's September 2006 Order). Having declined to make a single access upgrade until after the filing of this case (despite repeated and lengthy pre-litigation requests by NFB), and then continuing to fight the very idea of being covered by the disability access laws, it is pure folly for Target to now suggest that the Court should trust it to implement and maintain all the access improvements required by federal and state law.

This case is well suited for Rule 23(b)(2) certification for the same reasons that this Court certified a class under Rule 23(b)(2) in *Lieber v. Macy's*. As in *Macy's*, equitable relief is Plaintiffs' primary goal. The fact that Plaintiffs seek statutory damages for their state law claims does not, in any way, detract from Plaintiffs' primarily goal or make this case uncertifiable. The only kinds of individual issues Target identifies for the damages phase go to the skill level and

---

[2] The sufficiency of Target's incomplete efforts to fix the website after Plaintiffs filed this lawsuit is clearly a common issue that is most efficiently litigated in one class action rather than in multiple, individual lawsuits.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

2

equipment of the user, on the one hand, and the nexus between the specific barriers encountered and the retail stores, on the other. The testimony of Target's own witnesses regarding the generally applicable nature of the target.com experience belies the first contention. The second is a red herring, given that (1) there is no nexus requirement for Plaintiffs' state law claims, (2) Target's remarkably narrow interpretation of the nexus requirement is disputed on the merits of the ADA claim; and (3) target.com is heavily integrated with the retail stores in any event. The claims for minimum statutory damages are a fairly straightforward, subcomponent of this case, and can be resolved through either a claims process or streamlined special master proceedings, after a determination is made on class liability and equitable relief. There is no reason why the Court should not, as in *Macy's*, certify the entire case under Rule 23(b)(2).

## II. TARGET'S OPPOSITION TO CERTIFICATION OF THE ADA CLAIM RELIES ON AN OVERLY NARROW INTERPRETATION OF THE "NEXUS" REQUIREMENT; MOREOVER, WHETHER TARGET'S INTERPRETION IS CONSISTENT WITH THE ADA AND THIS COURT'S PRIOR ORDER IS A COMMON QUESTION FOR THE MERITS.

Target interprets the Court's September 2006 Order narrowly, arguing that Plaintiffs cannot state a claim under the ADA unless they show that they encountered access barriers while physically "*at* a Target retail store" and that such barriers resulted in a *complete* denial of the goods and services they were seeking. *See* Opposition Brief at 4:16, 5:19-27. In contrast, Plaintiffs maintain that to be consistent with the plain language of the ADA, any nexus requirement could not require them to show more than that Target maintains one or more barriers *on target.com*, which deny people with disabilities from "full and equal enjoyment" of the goods and services of Target's retail stores. 42 U.S.C. § 12182(a); *see also* FAC at ¶¶ 54-60. Because there is nothing in the statute or case law that requires the barrier to be in the place of public accommodation rather than off site, Plaintiffs' burden is simply to show that the barrier denies equal enjoyment and ease of access to the goods and services of the place of public accommodation. *See, e.g., Rendon v. Valleycrest Prod. Ltd.*, 294 F.3d 1279, 1284-85 (11th Cir. 2002); *see also* Order, filed September 6, 2007, at 7:3-4 ("The statute applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation.") (emphasis in original); *and see generally id.* at 6:23-11:26. In this regard, Plaintiffs have presented extensive

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

3

evidence to show that the denial of access to target.com has, in fact, denied blind visitors equal enjoyment of the benefits and services of the physical stores. *See, e.g.,* Perry Depo. at 61:22-66:8; *see also* Class Member Declarations Filed In Support of Plaintiffs' Motion for Class Certification; Plaintiffs' Motion for Preliminary Injunction at 13:16-14:12.

This is ultimately a merits issue that the Court need not resolve at the class certification stage. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). Nonetheless, Target cannot simply assume that its version of the merits is correct and then use that construction of the law and facts to defeat the certification of a class action to decide those very issues. If anything, Target's assumptions demonstrate that there is a substantial legal dispute regarding the meaning and scope of the nexus requirement that is best suited for class treatment.

### III. TARGET'S OPPOSITION TO CERTIFICATION OF THE STATE LAW CLAIMS IS PREMISED ON THE MISTAKEN PRESUMPTION THAT THEY ARE LIMITED BY THE ADA.

Without citation to the record, Target incorrectly claims that "Plaintiffs' state law claims are entirely dependent on their ADA claim." Opposition at 2:26-27. To the contrary, Plaintiffs have articulated state law claims that are independent of the ADA. The Court's September 2006 Order recognized, but did not adjudicate, this aspect of Plaintiffs' claims. Order at 12:1-13:11. Plaintiffs' California law claims are broader than their ADA claims, and do not require a nexus between Target.com and a place of public accommodation.

#### A. THE UNRUH ACT COVERS "ANY COMMERCIAL FORCE," INDEPENDENT OF PHYSICAL PLACES, RATHER THAN "PLACES OF PUBLIC ACCOMMODATION."

The Unruh Act provides:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code §51(b). The California courts interpret the phrase "all business establishments of every kind whatsoever" in the "broadest sense reasonably possible." *See, e.g. O'Connor v. Village Green Owners Ass'n*, 33 Cal.3d 790, 796 (1983). In *O'Connor*, for example, the California Supreme Court held:

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

4

> The Legislature used the words 'all' and 'of every kind whatsoever' in referring to business establishments covered by the Unruh Act (Civ. Code, § 51), and the inclusion of these words without any exception and without specification of particular kinds of enterprises, leaves no doubt that the term 'business establishments' was used in the broadest sense reasonably possible. *The word 'business' embraces everything about which one can be employed*, and it is often synonymous with 'calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain.' [Citations.] *The word 'establishment,' as broadly defined, includes not only a fixed location, such as the 'place where one is permanently fixed for residence or business,' but also a permanent 'commercial force or organization' or 'a permanent settled position (as in life or business).'* [Citation.]

*O'Connor*, 33 Cal.3d at 795 (emphasis added) (*citing Burks v. Poppy Construction Co.* (1962) 57 Cal.2d 463, 468-469); *see also Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1050 (9th Cir. 2000). There is absolutely nothing about the Unruh Act to suggest that the goods and services must be connected to a physical place of public accommodation, rather than to a "business establishment," as that term is broadly construed.

The framework for analyzing Plaintiffs' Unruh Act claim is the same basic framework that would be used for the absent class members. It will revolve around a series of common questions such as (a) whether Target Corporation is a permanent commercial force in California by virtue of the substantial retail business it conducts with California residents, even without reference to its physical retail stores, (b) whether target.com is an accommodation, advantage, privilege or service covered by the Act, and (c) the design of target.com with respect to accessibility features such as alternative text, keyboard usage, form labeling, and navigation tools. These questions are common to the California subclass and their resolution does not depend upon incorporation of the ADA.

### B. THE DPA ALSO HAS BROADER COVERAGE THAN THE ADA.

The DPA provides, "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities … and privileges of … places of public accommodation … or other places to which the general public is invited." Cal. Civ. Code §54.1(a)(1). Like the other disability laws, Section 54.1 manifests "a legislative intent to afford broad protection and maximize the incentive for compliance in order to achieve access for disabled individuals." *Hankins v. El Torito Restaurants, Inc.*, 63 Cal. App. 4th 510, 523 (citations omitted). The statute covers not just structural impediments in buildings,

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

5

1   but also policies that deny full and equal access to people with disabilities. *Id.* at 523 & 524.

2         Plaintiffs have alleged two theories directly under the language of the DPA. First, Plaintiffs maintain that target.com is an "accommodation, advantage, facility, and privilege" of a "place[] of public accommodation" – *i.e.,* Target's California stores. Target's attempt to defeat certification of this portion of Plaintiffs' claim is similar to its strained nexus argument with respect to the ADA. Yet, Target cannot point to a single California authority to support its interpretation that Plaintiffs must be physically in a Target retail store to state a DPA claim.

      Second, Plaintiffs have alleged that target.com itself falls within the definition of "other places to which the general public is invited." Plaintiffs allege this based on both the sweeping legislative intent behind the statute as well as the fact that target.com functions as a place to which Target literally invites "guests" to enter, set up accounts, and sign in.[3] Tens of millions of guests visit Target.com each month.[4] The site is open to, and designed to be user-friendly for, the general public. *See* Nemoir Depo. at 62:17-63:5. Given the purpose of the DPA to provide broad protection for people with disabilities from discrimination by businesses, the DPA should not be fixed to a time when all such economic life was done in physical places. Thus, independent of whether target.com is a good or service of, or has a nexus to, the retail stores, Plaintiffs have also asserted that target.com is directly covered by the DPA. Target's Opposition does not address this class issue in the slightest.

### IV. **TARGET DOES NOT DISPUTE COMMONALITY; ITS ATTACKS ON TYPICALITY CONFLICT WITH THE UNDISPUTED RECORD THAT TARGET.COM IS DESIGNED TO PROVIDE THE SAME EXPERIENCE TO ALL USERS REGARDLESS OF SKILL LEVEL.**

Target claims that "levels of success using Target.com" will depend on "the class members' skill level and experience using the internet." Opposition Brief at 15:27-28. This directly contradicts Target's own admissions that target.com is designed to provide the same experience for users of all experience levels. Nemoir Depo at 63:14-21. Moreover, Target's

---

[3] *See* http://www.target.com (home page) and http://www.target.com/gp/flex/sign-in.html, attached as Exhibit G to the Declaration of Roger Heller in Support of Plaintiffs' Motion.

[4] *See* Exhibit F to Heller Decl. (indicating number of visitors to Target.com in each of the last six months).

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

6

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1  own conduct since the filing of this litigation belies any contention that there are somehow too
2  many differences between class members to have a class action. Specifically, under the pressure
3  of litigation, Target contends that it has begun to modify the website in accordance with the
4  recommendations of Plaintiff's expert, Dr. James Thatcher. *See* Nemoir Depo. at 152:25-153:6;
5  *and generally* at 153:14-179:19. Dr. Thatcher makes clear that any such modifications would be
6  systemic in scope and generally applicable to blind users of target.com as a class. *See* Exhibit D
7  to the Declaration of Laurence Paradise in Support of Class Certification. Indeed, Target does
8  not claim to have mooted Plaintiffs' case by tailoring particular website modifications to the skill
9  levels or other individualized attributes of particular users, but rather by making modifications to
10 the website as a whole that are designed to provide the same experience to all users regardless of
11 individual characteristics. *See* Nemoir Depo at 121:5-14; *see also id.* at 85:15-86:4; 154:10-
12 155:9; 160:10-161:8; 179:10-180:14. There simply is no merit to Target's superficial claim that
13 variations among class members should defeat class treatment.

## V. THE "POST-FILING MODIFICATIONS TO TARGET.COM" WERE MADE UNDER THE PRESSURE OF LITIGATION, REMAIN INCOMPLETE AND BY NO MEANS OBVIATE THE NEED FOR INJUNCTIVE RELIEF.

### A. IT IS WELL SETTLED THAT POST-FILING MODIFICATIONS SUCH AS THOSE AT ISSUE HERE DO NOT MOOT CLAIMS FOR INJUNCTIVE RELIEF.

Target ignores the well-settled principle that "voluntary cessation of allegedly illegal conduct … does not make the case moot." (*DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) (quoting *United States v. W. T. Grant Co.,* 345 U.S. 629, 632 (1953)). Judge Wilken's reasoning and holding in the analogous ADA case of *Cupolo v. Bay Area Rapid Transit*, 5 F.Supp.2d 1078 (N.D. Cal. 1997), are instructive:

> [Defendant] argues in the alternative that, even if it is liable for past problems with elevator service, the initiatives it has recently undertaken to redress these problems moot Plaintiffs' request for injunctive relief. The Court's power to grant injunctive relief survives the discontinuance of the illegal conduct. *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Voluntary cessation of illegal conduct does not render a challenge to that conduct moot unless "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992).

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

7

*Cupolo*, 5 F.Supp.2d at 1084. As in *Cupolo,* the need for equitable relief in this case remains paramount. While Target has made improvements to target.com under the pressure of litigation, its work is far from complete and its future commitment to access is far from established.

### B. TARGET SHOWED NO INCLINATION FOR ACCESS BEFORE THE FILING OF THIS CASE.

Target's own witnesses have confirmed in deposition that the company did not begin to make any access improvements to target.com until this litigation was well underway, and then only in response to the claims presented by Plaintiffs and the testimony of Plaintiffs' access expert. *See* Nemoir Depo. at 11:11-16:16; *see also id.* at 21:18-22:3, 107:21-112:16, 124:17-22, 126:20-25, 128:23-129:8, 143:15-20, 144:7-12; Perry Depo. at 17:18-18:11. It only decided to test the website's accessibility "as part of this litigation" and did not begin to even outline such efforts until "sometime in 2006." Perry Depo. at 7:4-8, 8:2-3. Moreover, whatever modifications have been made to the website since the filing of this lawsuit, Target's designee witness on access improvements revealed that much remains to be done before Target completes and implements policies and procedures to ensure accessibility. *Id.* at 97:10-112:6; 193:2-195:25. The most Target's designee witness could say about the future accessibility of web pages on target.com was: "I know we're working to develop that plan now." *Id.* at 194:16-17. Target comes nowhere close to meeting its heavy burden to demonstrate that ongoing compliance can be assured without specific injunctive relief.

### C. INJUNCTIVE RELIEF IS NECESSARY TO ENSURE THAT TARGET.COM STAYS ACCESSIBLE AS NEW WEB PAGES AND CONTENT ARE ADDED TO THE SITE ON A DAILY BASIS.

Target adds new web pages and new product information to target.com on a daily basis, if not more often. *See* Nemoir Depo at 36:13-37:5. The company now has "hundreds of thousands" of pages on target.com, a number that has steadily increased at a rate 25-30% per year. *Id.* at 29:21-31:3. Despite the constant state of flux, Target does not have any particular manager, individual, group, or monitoring procedure to ensure that new web pages are accessible to the blind. *Id.* at 48:11-18; 49:2-9. To the contrary, up until the ruling on its motion to dismiss (and presumably continuing on through its eventual appeal of that order), Target has steadfastly

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

8

1  maintained that it simply does not need to make its website accessible. Injunctive relief thus
2  remains critical to ensure continued compliance and to prevent Target from simply returning to
3  its old ways after this litigation. *See Arnold v. United Artists Theatre Circuit*, 158 F.R.D. 439,
4  456 (N.D.Cal. 1994).

### D. PLAINTIFFS' CLASSWIDE CLAIMS FOR INJUNCTIVE RELIEF ARE ALSO RIPE TO ADJUDICATE WHETHER TARGET'S POST FILING AND STILL UNFINISHED "ON-LINE ASSISTIVE TECHNOLOGY GUIDELINES" WILL BE ADEQUATE TO ENSURE ACCESS.

According to Target's 30(b)(6) designee, Target has begun drafting internal Online Assistive Technology Guidelines. Nemoir Depo. at 113:3-23. These Guidelines are being designed to create the same experience regardless of the skill level or other individualized characteristics of the user. *Id.* at 121:5-14. Whether the experience envisioned by the Guidelines is sufficient to meet both federal and California standards presents common questions. If the guidelines are found inadequate on the merits, further declaratory and injunctive relief will be necessary. Furthermore, Target has not finished drafting the Guidelines, much less fully implemented them. *Id.* at 113:3-23. Injunctive relief is therefore still necessary.

### E. THE STATEMENTS TARGET CITES IN SUPPORT OF ITS MOOTNESS ARGUMENT ARE NEITHER PROBATIVE NOR ADMISSIBLE.

Target has submitted no evidence from its own representatives or experts concerning the current state of accessibility of Target.com. Instead, Target cites Dr. Thatcher's acknowledgement that <u>one</u> of the pervasive, website-wide access barriers on Target.com was fixed in 2006 (keyboard access). Target also cites to an unauthenticated email apparently written by a single NFB member, who says that target.com became "usable by a blind person" after the litigation, but who does not indicate any comprehensive review of target.com or lay any other foundation for the statement. Target does not show how such unsubstantiated hearsay would even be admissible, much less demonstrative of mootness.[5]

---

[5] This email does not constitute a party admission; the individual has no authority to speak for the NFB, nor does the statement represent the NFB's position with regards to target.com.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

9

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

## VI. RULE 23(B)(2) CERTIFICATION IS APPROPRIATE BECAUSE THIS CASE IS PRIMARILY ABOUT SECURING THE EQUITABLE RELIEF NECESSARY TO ENSURE FULL AND CONTINUED ACCESS ON TARGET.COM; THE RIGHT OF THE CALIFORNIA SUBCLASS TO MINIMUM STATUTORY DAMAGES DOES NOT CHANGE THIS FACT.

### A. THE COURTS IN THIS DISTRICT HAVE REPEATEDLY HELD THAT DISABILITY ACCESS CLASS ACTIONS UNDER RULE 23(B)(2) CAN INCLUDE CLAIMS FOR MINIMUM STATUTORY DAMAGES

The Courts have repeatedly held that statutory damages under the Unruh Act and DPA can be certified under Rule 23(b)(2) so long as the primary relief sought is equitable in nature. *Molski v. Gleich*, 318 F.3d 937, 950 (9th Cir. 2000); *Arnold*, 158 F.R.D. at 451; *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 612-613 (N.D. Cal. 2003); *Lieber v. Macy's West, Inc.*, 80 F.Supp.2d 1065, 1082 (N.D. Cal. 1999). Most civil rights class actions have a damage phases with individualized determinations for monetary relief. *See, e.g., Cooper v. Federal Reserve Bank*, 467 U.S. 867, 876 (1984); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 361 (1977).[6] Target presents no authority to suggest that Plaintiffs' Unruh Act and DPA claims do not fall within this well-established framework. Indeed, the minimum statutory damages that Plaintiffs seek are much simpler to determine, and raise far fewer individualized issues, than the compensatory and punitive damages permitted in other Rule 23(b)(2) class actions. *Cf. Dukes v. Wal-Mart*, 222 F.R.D. 137, 170-173 (N.D. Cal. 2004), *aff'd by Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214; *Ellis v. Costco*, --- F.R.D. ---, 2007 WL 127800, *12-13 (N.D. Cal. 2007) (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001)).

---

[6] The underlying principles and rationale of *Teamsters* are not limited to the employment context. 3 Newberg on Class Actions § 9:53 at 432-35 (noting that split trials have been used in cases involving, *inter alia*, "patent infringement, welfare, employment discrimination, Truth in Lending Act, mass tort, education, bankruptcy, labor, and criminal" law). *Teamsters* reflects an established tradition in class action jurisprudence that global issues regarding liability and equitable relief for the class as a whole can be decided before determining which class members actually suffered damage or are otherwise entitled to specific relief. *Teamsters*, 431 U.S. at 361. Target is simply wrong to assert that a class cannot be certified if some class members turn out to be ineligible for relief at the damages phase. *Id.* at 360.

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

10

### B. PLAINTIFFS' PRIMARY FOCUS HAS AND CONTINUES TO BE SECURING DECLARATORY RELIEF THAT THE DISABILITY ACCESS LAWS BROADLY COVER TARGET.COM AND INJUNCTIVE RELIEF TO ENSURE "FULL AND EQUAL ENJOYMENT" OF THE WEBSITE AFTER RESOLUTION OF THIS LITIGATION.

Like the ADA, both the Unruh Act and the DPA provide for equitable relief. Plaintiffs have been clear throughout this case that equitable relief is their primary focus. *See* Class Member Declarations Filed In Support of Plaintiffs' Motions for Preliminary Injunction and Class Certification. Indeed, given the lifelong impact that exclusion from the market place has on blind people as a class, a reasonable blind person (as well as a membership organization representing integration and independence for the blind) would certainly be expected to bring a case to achieve an accessible website even without damages claims. *Cf. Ellis*, --- F.R.D. at ---, 2007 WL 127800, *13. Unless equitable relief is granted, Target would be free to abandon the access improvements it has begun to make only since the filing of this litigation. Plaintiffs' request for minimum statutory damages on behalf of the California subclass in no way detracts from the primary importance of securing equitable relief.[7]

### C. CERTIFICATION OF THE DAMAGES SUBCLASS UNDER RULE 23(B)(2) IS APPROPRIATE HERE FOR THE SAME REASONS IT WAS FOR THE FIXED RACKS IN LIEBER V. MACY'S.

In *Lieber v. Macy's West*, this Court certified a damages class against Macy's West for individuals who encountered inaccessible "fixed racks." *Lieber v. Macy's*, Case No. C 96-02955 MHP, Order of March 9, 1998 (N.D. Cal.). The Court reasoned that once the existence of the barriers was established, the class members could prove their damages claims by affirming that they had mobility disabilities and had attempted to access the store before the barriers were removed. *Id.* at 10-12. In contrast, the Court declined to certify a damages class for the movable

---

[7] Target's own "post-filing modifications to target.com" illustrate that equitable relief remains the primary focus of the case. That is, Target does not argue that it could moot Plaintiffs' state claims simply by paying minimal statutory damages to the California class members. Instead, Target is attempting to moot Plaintiffs' claims by arguing that it has voluntarily provided Plaintiffs with the access improvements they seek. While Target has a long way to go before actually assuring this relief, and Plaintiffs will need an injunction to ensure that Target actually finishes and maintains all the necessary improvements, Target's own focus on the injunctive element of Plaintiffs' state law claims confirms the predominance of equitable relief.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

11

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

racks on the basis that the legality of each barrier would turn upon individual issues, such as whether it was readily achievable for Macy's to remove the barrier on the particular day it was encountered and whether Macy's provided adequate customer service if it was not readily achievable. *See* Order of December 18, 2000, at 4-8.

The inaccessibility of target.com is far more analogous to the fixed racks than the moveable racks in *Macy's*. First, Target presents no argument or evidence of any financial or administrative impediment to making target.com fully accessible. To the contrary, both Target's 30(b)(6) designees have testified that access is readily achievable. Nemoir Depo. at 198:22-199:22; *see also* Evidence Cited In Plaintiffs' Opening Brief, filed under Seal, at 9, n.44. Second, unlike the moveable racks in *Macy's*, Target cannot claim that the provision of customer service would negate a claim for damages for a website barrier. A customer service defense first requires a showing that barrier removal is not readily achievable – something Target cannot do here.[8] Thus, if the website is determined to have been inaccessible for a certain period of time in the class period, class members will be able to demonstrate their entitlement to minimum statutory damages with affirmation that they are blind and that they encountered an access barrier on target.com during this time period. This analytic framework is no different from the one presented in *Macy's*. *See* Order, filed December 18, 2000, at 5-8.

Behind the rhetoric, Target suggests only two kinds of individual issues for the damages phase: (1) questions concerning the skill levels and equipment of the user; and (2) the question of whether the user intended to visit a retail store. Opposition at 21:8-23. As discussed above, the first category of questions are irrelevant in this case, insomuch as Target's own witnesses have confirmed that information on the website cannot be conveyed to any blind user without accessibility coding and that the website is designed to provide the same general experience for all users in any event. *See* Nemoir Depo at 63:14-21; 85:15-86:4; 121:5-14; 154:10-155:9; 160:10-161:8; 179:10-180:14.

---

[8] The ADA Regulations make clear that a precondition to a customer service defense is that the barrier removal itself is not readily achievable. *See* 28 C.F.R. § 36.305(a). Moreover, there is nothing in the Unruh Act or DPA suggesting that businesses may maintain access barriers as long as there is some form of customer service.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

12

Target's second category of so-called individual issues is also irrelevant. To begin with, Plaintiffs' damages claims arise under California law, under which, as discussed above, Plaintiffs need not show a nexus between Target.com and Target's physical stores. Moreover, even if Plaintiffs had to show a nexus, Target presumes an overly narrow interpretation of the nexus requirement under federal law. *See* Section II., *supra*. Finally, target.com is so integrated with Target's physical stores that almost every page has some nexus to the retail stores. *See* Perry Depo. at 95:23-96:10, 99:6-100:5; *and generally* at 75:12-112:2; *see also* Order of September 6, 2006, at 25:13-20, n.3 ("The website is a means to gain access to the store. … A broader application of the ADA to the website may be appropriate if upon further discovery it is disclosed that the store and website are part of an integrated effort.").

### D. THE COURT CAN IMPORT CLASS NOTICE AND OPT-OUT PROCEDURES INTO THIS RULE 23(B)(2) CLASS.

The Ninth Circuit permits the importation of Rule 23(b)(3) procedures, such as notice and an opportunity to opt out, into a Rule 23(b)(2) class action with damages claims. *See, e.g.*, *Molski*, 318 F.3d at 951-953. If the Court in its discretion elects to import these safeguards, Plaintiffs suggest that the Court provide the parties with an opportunity to meet and confer to develop the details with respect to the costs, timing, and procedures for the class notice and opt out procedures.

### VII. ALTERNATIVELY, PLAINTIFFS MEET THE CRITERIA FOR CLASS CERTIFICATION UNDER RULE 23(B)(3).

Alternatively, Plaintiffs meet the predominance and superiority tests of Rule 23(b)(3), because the same evidence and analytic framework applies to each class member claim. The evidence and issues that will predominate through each class member claim include, among other things: the content and design of the Target.com website; the integration of target.com and the target retail stores; whether it is readily achievable for Target to make the website accessible; the extent to which the ADA, the Unruh Act, and the DPA cover websites; and the meaning and extent of the nexus requirement under the ADA. A single class action to address these global issues would be far superior to a multiplicity of repetitive trials reviewing the same evidence and

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

13

legal arguments over and over again, risking inconsistent results after a substantial and prolonged drain on judicial resources.

## VIII. TARGET'S PROPOSAL FOR A TEST CASE DOES NOT COMPORT WITH ESTABLISHED OR SENSIBLE CLASS ACTION PROCEDURE

The "the use of a test or pilot case … has serious disadvantages and will normally be unsuitable when claims are small." 2 Newberg § 4:33 at 291 (4th ed.).[9]

Somewhat enigmatically, Target contends that its highly experienced attorneys cannot "envision" how this case would proceed as a class action. Although it is premature to come up with a complete trial plan, Plaintiffs offer the following basic preview: At the class liability and equitable relief phase, Plaintiffs will present testimony from accessibility experts and Target's own representatives, along with foundational documents and demonstrative exhibits, showing that (1) target.com was not designed to be accessible to the blind; (2) target.com is integrated with the retail stores; and (3) fixing the access problems is readily achievable and systemic in nature. Plaintiffs will also present testimony from a limited number of blind people about their experiences on target.com to illustrate and bring the systemic access problems to life. (This is essentially the same approach successfully used in the *Lieber v. Macy's* Stage One trial.) Then, if liability is established, the minimum statutory damages for the California subclass would be determined either through a claims process or streamlined hearings before a special master, during which class members could present a claim by affirming that they are blind and that they encountered an access barrier on target.com during the relevant time period. This general framework, although only skeletal at this early stage, falls squarely within the accepted procedures for Rule 23(b)(2) class actions. *See* Section VI.A., *supra.*

## IX. PLAINTIFFS MEET THE HUNT TEST FOR REPRESENTATIVE STANDING.

Target makes a half-hearted, half-articulated challenge to the organizational plaintiffs' standing. However, plaintiffs have shown that both organizations have standing to sue as representatives of their members under *Hunt v. Washington Apple Advertising Comm'n.*, 432 U.S. 333, 343 (1977). First, as blind individuals, the members of Plaintiffs NFB and NFB-CA

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

14

would otherwise have standing to sue Target on their own. Indeed, Plaintiffs have presented testimony from over a dozen members of NFB and NFB-CA showing that they have been denied equal benefits and services of Target due to the access barriers on Target.com.[10] Second, as Plaintiffs NFB and NFB-CA have demonstrated in their declarations and in deposition, this lawsuit is germane to their organizational goal of promoting the general welfare and independence of the blind. Finally, the participation of individual members of the organizations will not be necessary, given how Plaintiffs will present their claims. *See* Section VIII., *supra*.

## X. **PLAINTIFFS HAVE ESTABLISHED NUMEROSITY**

Plaintiffs have submitted reliable data and observations regarding trends within the blind community, both in California and nationally, to establish numerosity. *See* Declaration of Daniel Brome in Support of Class Certification at ¶ 4; Declaration of Anne Taylor in Support of Plaintiffs' Motion for Preliminary Injunction at ¶¶ 8-10. Based on this evidence and other data showing that target.com receives tens of millions of visitors each month, Plaintiffs submit a reply declaration of Anne Taylor showing that at least thousands of class members (and at least hundreds of California subclass members) would be a *conservative* estimate of the number of people with screen access software who would visit target.com if it were accessible. *See* Declaration of Anne Taylor in Support of Plaintiffs' Reply in Support of Motion for Class Certification, at ¶¶ 3-6.

## XI. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Class Certification and Bifurcation.

DATED: March 29, 2007

Respectfully submitted,

By: _____/s/_____
Laurence W. Paradis
Attorney for Plaintiff

---

[9] Target's authority for its test case proposal is inapposite, consisting of four cases in the strict Rule 23(b)(3) setting, and none involving disability access or other civil rights.

[10] Although a few of the fourteen class member declarants are testers, they also have standing to challenge the access barriers at issue in this case. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-375.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Reply Brief in Support of Class Certification and Bifurcation

15