HAROLD J. McELHINNY (CA SBN 66781)
MATTHEW I. KREEGER (CA SBN 153793)
KRISTINA PASZEK (CA SBN 226351)
HMcElhinny@mofo.com
MKreeger@mofo.com
KPaszek@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Defendant
TARGET CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, the NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, on behalf of their members, and Bruce F. Sexton, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No.   C 06-01802 MHP<br><br>**TARGET CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   May 1, 2007<br>Time:   2:00 PM<br>Judge:   Hon. Marilyn Hall Patel |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................1

ARGUMENT ...................................................................................................................................2

I. PLAINTIFF SEXTON HAS NO ADA CLAIM ................................................................2

    A. It Is Plaintiffs that Misstate the Nexus Requirement. ..............................................3

    B. Plaintiff Sexton Has Not Shown that the Inaccessibility of Target.Com Impeded His Full and Equal Enjoyment of the Goods and Services Offered in Target Stores. ..................................................................4

        1. There Is No Evidence that Plaintiff Sexton Was Ever Unable to Purchase a Particular Good or Service Offered in Target Stores on Account of His Disability. ................................................4

        2. Plaintiff Sexton Does Not Have a Claim Under the ADA Based on His Failed Efforts to Use Target.com to "Pre-Shop." ................................................................................................................5

        3. Plaintiff Sexton Does Not Have a Claim Under the ADA Based on His Unsuccessful Attempt to Access the Weekly Advertisement on Target.com. ...................................................................8

        4. Plaintiffs Have Not Shown that Target.com Is a "Service of" Target Stores. ........................................................................................9

II. PLAINTIFF SEXTON DOES NOT HAVE A CLAIM UNDER STATE LAW ..................................................................................................................................10

    A. Plaintiff Sexton Has No Unruh Act Claim. ............................................................10

    B. Plaintiff Sexton Has No Disabled Persons Act Claim. ..........................................13

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................... 1

*Arnold v. United Artists Theatre Cir., Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994) ...................................................................................... 13

*Brae Transp., Inc. v. Coopers & Lybrand*,
    790 F.2d 1439 (9th Cir. 1986) .......................................................................................... 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..................................................................................................... 3, 12

*Dobard v. San Francisco Bay Area Rapid Transit Dist.*,
    No. C-92-3563-DLJ, 1993 WL 372256 (N.D. Cal. Sept. 7, 1993) ................................. 4, 8

*Ford v. Schering-Plough Corp.*,
    145 F.3d 601 (3d Cir. 1998) ............................................................................................... 9

*Hankins v. El Torito Restaurants, Inc.*,
    63 Cal. App. 4th 510 (1998) ............................................................................................. 14

*Harris v. Capital Growth Investors XIV*,
    52 Cal. 3d 1142 (1991) ..................................................................................................... 11

*Mannick v. Kaiser Foundation Health Plan, Inc., No. C 03-5905-PJH*,
    2006 WL 2168877 (N.D. Cal. July 31, 2006) ................................................................... 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................................ 5

*McNeil v. Time Ins. Co.*,
    205 F.3d 179 (5th Cir. 2000) ....................................................................................... 3, 6, 7

*Molski v. M.J. Cable, Inc.*, __ F.3d __,
    No. 05-55347, 2007 WL 865532 (9th Cir. March 23, 2007) ........................................... 12

*O'Connor v. Village Green Owners Ass'n.*,
    33 Cal.3d 790 (1983) .................................................................................................. 11, 12

*Pinnock v. Int'l House of Pancakes Franchisee*,
    844 F. Supp. 574 (S.D. Cal. 1993) ..................................................................................... 4

*Presta v. Peninsula Corridor Joint Powers Bd.*,
    16 F. Supp. 2d 1134 (N.D. Cal. 1998) .............................................................................. 11

*Sea-Land Serv., Inc. v. Lozen Int'l, LLC*,
    285 F.3d 808 (9th Cir. 2002) .............................................................................................. 5

*Viswanathan v. Leland Stanford Junior Univ.*,
   1 Fed. Appx. 669 (9th Cir. 2001) .................................................................................... 11

*Warfield v. Peninsula Golf & Country Club*,
   10 Cal. 4th 594 (1995) ...................................................................................................... 11

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F.3d 1104 (9th Cir. 2000) .......................................................................................... 13

**STATUTES AND OTHER AUTHORITIES**

Cal. Civ. Code
   § 51(b) ........................................................................................................................ 10, 12
   § 51(d) ........................................................................................................................ 10, 12
   § 54.1 .......................................................................................................................... 13, 14
   § 54.1(a)(1) ....................................................................................................................... 13

Fed. R. Civ. P.
   Rule 12(b)(6) ...................................................................................................................... 1
   Rule 56(e) ........................................................................................................................... 1
   Rule 56(f) .......................................................................................................................... 10

42 U.S.C.
   § 12182(b)(2)(ii) ................................................................................................................. 7
   § 12182(b)(2)(iii) ................................................................................................................ 7
   § 12182(b)(2)(iv) ................................................................................................................ 7

28 C.F.R. app B
   § 36.201 (a) (1992) ............................................................................................................. 4

56 Fed. Reg. 35544 (July 26, 1991) ..................................................................................... 8, 9

# INTRODUCTION

Plaintiffs' opposition ignores the requirement that they supply evidence demonstrating that Mr. Sexton has a claim against Target Corporation. A plaintiff can survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) with properly articulated allegations. There is no need, at that stage, to supply evidence. A motion for summary judgment under Rule 56 is, of course, markedly different. To survive such a motion, a party must substantiate its allegations with actual, admissible evidence. *See* Fed. R. Civ. P. 56(e). If that party's proof is insufficient under the relevant legal standard, summary judgment must be granted in favor of the party's opponent with respect to that claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

As this Court is well aware, Plaintiffs' complaint survived, in part, Target's motion to dismiss under Rule 12(b)(6). To successfully oppose Target Corporation's motion for summary judgment, however, Plaintiffs must do more than articulate a theory. They must supply proof. Mr. Sexton has submitted no fewer than three declarations in this litigation. Plaintiffs are nonetheless unable to point to facts sufficient to make a claim.[1] The consequences are clear. Target Corporation ("Target") is entitled to summary judgment with respect to Plaintiff Sexton.

# BACKGROUND

The following facts concerning Plaintiff Sexton have been established beyond dispute. Plaintiff Sexton resides in Berkeley, California, and has been legally blind since birth. (Declaration of Matthew I. Kreeger in Support of Target Corporation's Motion for Summary Judgment ("Kreeger Decl."), Ex. B (Declaration of Bruce F. Sexton in Support of Plaintiffs' Motion for Preliminary Injunction ("Sexton PI Decl.")) at ¶¶ 2, 5.) He has "used the screen reading software 'JAWS' to access computers, and especially, the internet since he was 18 years old." (*Id.* at ¶ 13.)

---

[1] Notably, Plaintiffs have not cross-moved for summary judgment with regard to Mr. Sexton's claim.

1   Plaintiff Sexton attempted to access weekly advertisements on Target.com, but was
2   unable to do so. (*Id.* at ¶ 32.) In the summer of 2005, he also attempted to purchase towels
3   on Target.com. (*Id.* at ¶ 33.) He "searched Target.com for 'towels' and found several
4   items," but "the numerous results were not matched with the different product descriptions."
5   (*Id.*) He "became so frustrated that he did not continue to the point where [he] could even
6   attempt to complete a transaction on Target.com" (*Id.*) Instead, he traveled to a Target store,
7   where he purchased the towels, "along with laundry soap, hand soap, Kleenex tissue, toilet
8   paper, shampoo, conditioner, toothpaste, and other items." (*Id.*)

9   Plaintiff Sexton has "shopped at Target stores for several years by [him]self and with
10  member of [his] family." (*Id.* at ¶ 19.) While shopping at Target stores, he has sought
11  assistance from Target personnel and has never been denied such assistance. (Kreeger Decl.,
12  Ex. E (Deposition of Bruce F. Sexton ("Sexton Dep.") at 48:23-49:3, 54:18-55:1.) There is
13  no evidence that Plaintiff Sexton was ever denied full and equal enjoyment of the goods or
14  services offered in Target stores.

15  Plaintiff Sexton's declarations set forth numerous other facts. For purposes of this
16  motion, Target does not dispute any of these facts. Target moves for summary judgment on
17  the grounds that if Mr. Sexton were to testify to each of those facts at trial, he would lose.
18  The instant motion thus turns on the parties' differing views of the applicable law.

19                           **ARGUMENT**
20  **I.    PLAINTIFF SEXTON HAS NO ADA CLAIM.**
21  With respect to Mr. Sexton's claim under the Americans with Disabilities Act
22  ("ADA"), 42 U.S.C. §§ 12181, *et seq.*, Plaintiffs argue that summary judgment is not
23  warranted because: (1) Target misstates the nexus requirement; (2) Mr. Sexton's enjoyment
24  of goods and services offered in Target stores has been impeded by access barriers on
25  Target.com; and (3) Target.com is a "service of" Target stores. As explained below, none of
26  these arguments has merit. Plaintiffs have failed to submit facts demonstrating that the
27  inaccessibility of Target.com impeded Mr. Sexton's full and equal enjoyment of goods and
28  services offered in Target stores. Because Plaintiffs have failed to make a showing sufficient

TARGET'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-01802 MHP
sf-2291447

2

1 to establish the existence of this essential element of Mr. Sexton's ADA claim, Target is
2 entitled to summary judgment.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

**A.     It Is Plaintiffs that Misstate the Nexus Requirement.**

This Court explained in its ruling on Target's motion to dismiss that "[a]lthough a plaintiff may allege an ADA violation based on unequal access to a 'service' of a place of public accommodation, courts have held that a plaintiff must allege that there is a 'nexus' between the challenged service and the place of public accommodation."  (Kreeger Decl., Ex. A (Order dated Sept. 6, 2006) at 5.)  On this basis, the Court dismissed Plaintiffs' ADA claim "t[o] the extent that Target.com offers information and services unconnected to Target stores, which do not affect the enjoyment of goods and services offered in Target stores." (*Id.* at 11.)

Although Plaintiffs argue that Target's summary judgment motion is based on an overly narrow interpretation of the nexus requirement, if any party is guilty of misstating the nexus requirement, it is Plaintiffs.  For example, Plaintiffs claim that: "Consistent with the Court's Order, the nexus requirement under the ADA merely requires that Mr. Sexton has experienced one or more barriers on <u>target.com</u> which prevented him from accessing, with <u>equal enjoyment and ease of use</u>, the goods and services of Target's retail stores." (Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Opp.") at 10 (emphasis in original).)  This Court has never so held. By adding "with equal . . . <u>ease of use</u>," Plaintiffs revise the Court's ruling in an attempt to lower the bar to a level closer to their inadequate evidentiary showing.  As the Fifth Circuit observed in *McNeil v. Time Ins. Co.*, 205 F.3d 179 (5th Cir. 2000), "it is literally possible, though strained, to construe 'full and equal enjoyment' to suggest that the disabled must be able to enjoy every good and service offered to the same and identical extent as those who are not disabled."  *Id.* at 187.  Such a reading, however, is "plainly unrealistic, and surely unintended, because it makes an unattainable demand."  *Id.*  It is well established that full and equal enjoyment "does not mean that an individual with a disability must achieve an identical result or level of achievement as persons without a disability."  28 C.F.R. app. B

1  § 36.201(a) (1992); *Dobard v. San Francisco Bay Area Rapid Transit Dist.*, No. C-92-3563-
2  DLJ, 1993 WL 372256, at *3 (N.D. Cal. Sept. 7, 1993) (Jensen, J.) (quoting same); *see also*
3  *Pinnock v. Int'l House of Pancakes Franchisee*, 844 F. Supp. 574, 583 (S.D. Cal. 1993)
4  (discussing the legislative history of Title III of the ADA).

5      Target bases its motion on the standard articulated by the Court in its ruling on
6  Target's motion to dismiss. Plaintiffs state a claim "to the extent that plaintiffs allege that the
7  inaccessibility of Target.com impedes full and equal enjoyment of goods and services offered
8  in Target stores." (Kreeger Decl., Ex. A (Order) at 11.) In other words, Target bases its
9  motion on the absence of evidence that "the inaccessibility of Target.com impede[d] [Mr.
10 Sexton's] full and equal enjoyment of goods and services offered in Target stores."

    **B.    Plaintiff Sexton Has Not Shown that the Inaccessibility of Target.Com Impeded His Full and Equal Enjoyment of the Goods and Services Offered in Target Stores.**

13     Plaintiffs' contention that the inaccessibility of Target.com impeded Mr. Sexton's full
14 and equal enjoyment of goods and services offered in Target stores rests on two facts:
15 (1) that he was unable to use Target.com to "pre-shop" for products and services available at
16 Target stores; and (2) that he was unable to access on Target.com a weekly advertisement
17 that provides information about goods and services on sale at Target stores. Those are all of
18 the facts on which Mr. Sexton's claim is based. While Plaintiffs list possible other theories
19 for how the supposed inaccessibility of Target.com could have, in their view, affected
20 someone's full and equal enjoyment of goods and services offered in Target stores — namely
21 Target's gift registries, pharmacy, and photo center — these are not relevant to this motion
22 because Plaintiff Sexton never discusses them in his declarations or his deposition. The
23 undisputed facts set forth by Plaintiff Sexton are simply insufficient to give rise to a claim
24 under the ADA.

    **1.    There Is No Evidence that Plaintiff Sexton Was Ever Unable to Purchase a Particular Good or Service Offered in Target Stores on Account of His Disability.**

27     Plaintiff Sexton has "shopped at Target stores for several years by [him]self and with
28 member of [his] family." (Kreeger Decl., Ex. B (Sexton PI Decl.) ¶ 19.) While shopping at

Target stores, he has sought assistance from Target personnel and has never been denied such assistance. (Kreeger Decl., Ex. E (Sexton Dep.) at 48:23-49:3, 54:18-55:1.) Although he complains of an instance in which he was unable to purchase towels directly from Target.com, he states that he nevertheless purchased those towels, along with other items, from a Target store. (Kreeger Decl, Ex. B (Sexton PI Decl.) ¶ 33.) In fact, there is no evidence that Plaintiff Sexton was ever unable to purchase a particular good or service offered in Target stores on account of his disability.

### 2. Plaintiff Sexton Does Not Have a Claim Under the ADA Based on His Failed Efforts to Use Target.com to "Pre-Shop."

In support of Plaintiffs' motion for a preliminary injunction, Plaintiff Sexton submitted two declarations that detailed his experiences using Target.com, Target.com's 1-800 number, and Target retail stores. In response to Target's motion for summary judgment, Plaintiffs have submitted a third declaration on behalf of Mr. Sexton. In this declaration, Mr. Sexton adds:

> On numerous occasions, I have attempted to access Target.com to research products that are available at Target retail stores, compare the prices of goods at Target's retail stores with the prices of Target's competitors, and to make decisions about purchasing goods at Target's retail stores. However, because of various accessibility barriers on Target.com, I have not been able to use Target.com for these purposes.

(Declaration of Bruce F. Sexton in Support of Plaintiff's Opposition to Motion for Summary Judgment ("Sexton Opp. Decl.") ¶ 2.) Even if Mr. Sexton has thus been unable to "pre-shop," as Plaintiffs call it,[2] these facts do not establish a valid claim under Title III of the

---

[2] Mr. Sexton's new testimony contradicts his deposition testimony, which made clear that he was able to obtain product information on Target.com. (Kreeger Decl., Ex. E (Sexton Dep.) at 90:9-16.) Under established Ninth Circuit law, a party cannot avoid summary judgment by submitting an affidavit that contradicts his prior deposition testimony. *See, e.g., Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 820 n.11 (9th Cir. 2002). For purposes of this motion, however, even assuming Mr. Sexton's testimony is accepted, and drawing factual inferences in Plaintiffs' favor, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), Mr. Sexton still has no claim based on his supposed inability to "pre-shop."

TARGET'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-01802 MHP
sf-2291447

5

ADA.[3] To "pre-shop" is not to shop. The activity of comparing prices with competitors or otherwise comparison shopping before visiting stores is made possible by the Internet itself; it is not a service offered by Target stores. The fact that Mr. Sexton was unable to use Target.com "to enhance his experience as a shopper at Target's retail stores" (Opp. at 7) in this way does not mean that his full and equal enjoyment of the goods and services offered in Target stores was impeded. The record is devoid of a single instance in which Mr. Sexton was unable to purchase a particular product or service offered in a Target store on account of his disability.

Again, *McNeil* is instructive. In that case, the Fifth Circuit declined to hold that the defendant insurer violated Title III of the ADA by offering the plaintiff, who had AIDS, an insurance policy that limited the amount of coverage for AIDS. In so ruling, the Court asked: "Practically speaking, how can an owner, etc., deny the full and equal enjoyment of the goods or services that he offers?" *McNeil,* 205 F.3d at 186. The Court answered: "By denying access to, or otherwise interfering with, the use of the goods or services that the business offers." *Id.* Even if Mr. Sexton was unable to use Target.com to "pre-shop," that did not deny him access to, or otherwise interfere with, his use of the goods or services offered in Target stores.

Plaintiffs seek to rely on a strained reading of the ADA, rejected by *McNeil* and other courts, that literally requires "equal enjoyment and ease of use." Because a website is inherently a medium for visual communication, that standard is unattainable. Since this lawsuit was filed, Target has made changes to the Target.com website that address Plaintiffs'

---

[3] The facts regarding Mr. Sexton's use of Target.com to "pre-shop" for goods and services offered in Target stores are themselves thin. While Plaintiff Sexton complains in his declaration about a search that he conducted on Target.com for towels, he makes clear that he was not pre-shopping, but rather wanted to purchase towels directly from Target.com. (Kreeger Decl., Ex. B (Sexton PI Decl.) ¶ 33.) His declarations identify a few specific items that he has purchased in a Target store, other than towels. These items — laundry soap, hand soap, Kleenex tissue, toilet paper, shampoo, conditioner, and toothpaste — are the sort of staple items that are not sold on Target.com. (*Id.*; Kreeger Decl., Ex. C (Declaration of Trish Perry in Support of Target's Opposition to Class Certification ("Perry Class Cert. Decl.") ¶ 4.) Thus, it would be impossible to use Target.com to pre-shop for any of these items.

1  concerns. Plaintiffs have acknowledged this, and complaints about the present-day
2  Target.com website are noticeably absent from their recent court filings. Nevertheless, even
3  if Target made each and every modification to the Target.com website urged by Plaintiffs,
4  Target would still be violating the ADA, as the statute is construed by Plaintiffs, because
5  "equal enjoyment and ease of use" for all users is a standard that can never be achieved. As
6  observed in *McNeil*, "[i]t is a flawed and unreasonable construction of any statute to read it in
7  a manner that demands the impossible." *Id.* at 187. Moreover, the ADA in particular is not a
8  statute of absolutes. *See, e.g.,* 42 U.S.C. § 12182(b)(2)(A)(ii) (requiring "reasonable
9  modifications"); *Id.* at § 12182(b)(2)(A)(iii) (providing that steps that would result in an
10 "undue burden" need not be taken); *Id.* at § 12182(b)(2)(A)(iv) (requiring removal of
11 architectural barriers "where readily achievable").
12       Even if the ability to "pre-shop" is required for full and equal enjoyment of goods and
13 services offered in Target stores, Mr. Sexton would have been able to obtain through other
14 means, such as Target.com's 1-800 number, information available from Target.com about
15 goods and services offered in Target stores. (Declaration of Matthew I. Kreeger in Support
16 of Target Corporation's Reply Memorandum in Support of Its Motion for Summary
17 Judgment ("Kreeger Reply Decl."), Ex. A (Declaration of Trish Perry in Support of Target
18 Corporation's Opposition to Motion for Preliminary Injunction ("Perry PI Decl.") ¶ 7.)
19 Target.com's 1-800 number constitutes an acceptable auxiliary aid for purposes of 42 U.S.C.
20 § 12182(2)(A)(iii). There is no evidence that Mr. Sexton ever tried using the 1-800 number
21 to pre-shop. Although Plaintiffs suggest that they need only prove that barriers on
22 Target.com prevented Mr. Sexton from accessing the goods and services of Target's retail
23 stores "with equal enjoyment and ease of use," once again, that is not the applicable standard.
24 Rather:

> [t]he auxiliary aid requirement [of the ADA] is a flexible one.
> A public accommodation can choose among various
> alternatives as long as the result is effective communication.
> For example, a restaurant would not be required to provide
> menus in Braille for patrons who are blind, if the waiters in the
> restaurant are made available to read the menu. Similarly, a
> clothing boutique would not be required to have Brailled price

TARGET'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-01802 MHP
sf-2291447

7

tags if sales personnel provide price information orally upon request; and a bookstore would not be required to make available a sign language interpreter, because effective communication can be conducted by notepad.

*Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities,* 56 Fed. Reg. 35544, 35566 (July 26, 1991).  The legality of an auxiliary aid does not turn on whether it is the most technologically advanced or whether one particular individual is satisfied with it.  *Dobard*, 1993 WL 372256, at *3 (granting motion to dismiss despite plaintiff's allegations that the provided auxiliary aids were not effective for him).

### 3. Plaintiff Sexton Does Not Have a Claim Under the ADA Based on His Unsuccessful Attempt to Access the Weekly Advertisement on Target.com.

The fact that Mr. Sexton was unable to access the weekly advertisement on Target.com likewise does not give rise to a valid ADA claim.  A denial of access to a retailer's advertising, as opposed to the products themselves, cannot, for purposes of a claim under Title III of the ADA, impede full and equal enjoyment of the goods and services offered in its stores.  Although Plaintiffs argue to the contrary, they cite no legal authority whatsoever to support this proposition.

Furthermore, the information contained in the weekly advertisement is available to the blind by other means, such as from Target.com's 1-800 number or employees at Target stores.  Plaintiffs complain that these alternatives are not equivalent in terms of time, convenience, and independence.  Once again, the law does not require such equivalence.  *See* 56 Fed. Reg. at 35566.  It might be less convenient for a blind restaurant patron to ask a waiter to read the contents of a menu than it would be for her to read a Braille menu.  Likewise, it might compromise a blind shopper's sense of independence to ask a store worker for the price of an item instead of reading a Brailled price tag.  In spite of this, such auxiliary aids are perfectly lawful.  *See id.*  Again, Target has no obligation under the ADA to provide the most technologically advanced auxiliary aid or the auxiliary aid of Mr. Sexton's choosing.  *Dobard*, 1993 WL 372256, at *3.  Plaintiffs urge this Court to apply a legal standard that is both unreasonable and unprecedented.

### 4. Plaintiffs Have Not Shown that Target.com Is a "Service of" Target Stores.

Nor have Plaintiffs shown that Target.com is a "service of" Target stores. (Kreeger Decl., Ex. A (Order) at 5.) *See ADA Title III Technical Assistance Manual*, § III-1.2000 ("The entire private entity is, legally speaking, a public accommodation, but it only has ADA title III obligations with respect to the operations of the places of public accommodation."); 56 Fed. Reg. 35544 ("Of course, a company that operates a place of public accommodation is subject to this part only in the operation of that place of public accommodation.") As observed by the Third Circuit, "'goods, services, facilities, privileges, advantages, or accommodations' . . . are not free-standing concepts but rather all refer to the statutory term 'public accommodation' and thus to *what these places of public accommodation provide*." *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998) (emphasis added).

Plaintiffs cannot show that Target.com is provided as a "service of" Target stores. Plaintiffs make broad, unsupported statements like "virtually every page on target.com is connected in some way to Target's retail stores." (Opp. at 2.) In a similar vein, Plaintiffs give a false impression of the degree of overlap between the merchandise on Target.com and the merchandise available in Target stores. In fact, the majority of goods sold on Target.com are not sold in Target stores, and conversely, the majority of goods sold in Target stores are not featured on Target.com. (Kreeger Decl., Ex. C (Perry Class Cert. Decl.) ¶ 4; Kreeger Reply Decl., Ex. A (Perry PI Decl.) ¶ 6.) For example, Target.com does not sell the staple items sold in Target stores, nor does it sell food items, with the limited exception of certain gourmet foods, candy, and gift baskets. (Kreeger Decl., Ex. C (Perry Class Cert. Decl.) ¶ 4.) Target.com has its own president and management team. (Kreeger Reply Decl., Ex. A (Perry PI Decl.) ¶ 5.) Target.com has its own buyers, who are different than the buyers for Target's retail stores, and the decision of what to sell on the Target.com website is made by Target.com, not Target's retail stores. (*Id.* at ¶ 6.) Target.com also has its own logistics system for fulfilling on-line orders. (*Id.*)

Effectively conceding their lack of evidence on this topic, Plaintiffs state that discovery on this subject has been limited, although notably, they do not make a formal request for additional discovery under Rule 56(f) for purposes of this motion. *See Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir. 1986) ("References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f)," and the "[f]ailure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment."). Plaintiffs have presented neither the argument nor the evidence necessary to establish that Target.com is a "service of" Target stores.

## II.  PLAINTIFF SEXTON DOES NOT HAVE A CLAIM UNDER STATE LAW

### A.  Plaintiff Sexton Has No Unruh Act Claim.

The Unruh Act, California Civil Code section 51, *et seq.*, provides:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).

The Unruh Act makes clear, however, that:

> Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure . . . .

Cal. Civ. Code § 51(d).

Plaintiff Sexton's Unruh Act claim fails because the Act does not apply to the Internet. Section 51 only applies to establishments, facilities, buildings, improvements, and other structures. Plaintiffs contend that the Unruh Act has a broad reach and cite several cases to support their contention that the Act encompasses websites. But none of the cases

cited by Plaintiffs stands for that proposition.  Indeed, each of the cited cases deals with a business enterprise that engaged in intentional discrimination resulting in the inability of the plaintiff to enjoy the benefits of some physical space.  *See, e.g., O'Connor v. Village Green Owners Ass'n.*, 33 Cal. 3d 790, (1983) (condominium association, which had a no-children policy and attempted to evict condominium owners who, after moving in, had a child, was deemed a business enterprise under the Unruh Act); *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594 (1995) (private social club, which barred women from being issued memberships and accessing the club unless associated a man who was a member, was deemed a business enterprise subject to the strictures of the Unruh Act); *Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134 (N.D. Cal. 1998) (Amtrak, which discriminated against the disabled plaintiff by denying her sufficient time to board and disembark the trains it operates, was considered a business enterprise subject to the Unruh Act).

   The factual predicate in the case at bar is entirely different from the cases cited by Plaintiffs.  As discussed in detail above (and in Target's opening brief), Plaintiffs have not demonstrated and cannot demonstrate a connection between the alleged inaccessibility of Target.com on the one hand and Plaintiff Sexton's enjoyment of goods and services offered in Target physical stores on the other.  In fact, Plaintiffs have presented no evidence of any impediment to Mr. Sexton's enjoyment of Target's physical stores at all.  The cases cited do not speak to such a scenario and Plaintiffs have pointed to no case law suggesting that the inaccessibility of a commercial website that does not hinder access to the affiliated physical store violates the Unruh Act.

   Even if the Unruh Act could be read to encompass websites, Plaintiff Sexton's claim still fails.  The California Supreme Court has long held that "a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act."  *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991) (emphasis added); *see also Viswanathan v. Leland Stanford Junior Univ.*, 1 Fed. Appx. 669, 672 n. 3 (9th Cir. 2001).  In their Complaint,

1   Plaintiffs allege that Target intentionally discriminated against visually impaired persons,

2   (*see* Amended Complaint at ¶ 41), but they have failed to provide any evidence of intentional

3   discrimination on Target's part.[4]  Thus, Plaintiff Sexton's Unruh Act claim fails.

4       Plaintiff Sexton's Unruh Act claim also fails because it is tethered to his defective

5   ADA claim.  According to section 51(d), nothing in the Unruh Act requires Target to make

6   any "alteration, repair, or modification" to its website in order to improve access by the

7   visually impaired beyond what is "otherwise required by other provisions of law."  The

8   ADA, here, would constitute the only "other provision[] of law" that could require Target to

9   make such changes.  As discussed above, Plaintiffs have failed to submit facts demonstrating

10  that the inaccessibility of Target.com impeded Mr. Sexton's full and equal enjoyment of

11  goods and services offered in Target stores; thus, he has no ADA claim.  Without an ADA

12  claim, Target has no independent obligation to alter its website under the Unruh Act.[5]

13      Finally, for all the same reasons that Plaintiff Sexton's ADA claim fails, Plaintiff

14  Sexton cannot prevail on his Unruh Act claim.  Like the ADA, the Unruh Act provides for

15  "full and equal accommodations, advantages, facilities, privileges, or services."  Cal Civ.

16  Cod. § 51(b).  As explained above, the facts that Plaintiff Sexton has set forth regarding his

---

[4] Additionally, in their motion to bifurcate, Plaintiffs contend that "whether, and to what extent, laws protecting people with disabilities provide a right to full and equal access to the internet site of a major retailer" is a "novel issue." (*See* Plaintiffs' Motion for Bifurcation of Issues at Trial at 3:13-15.)  The conceded uncertainty about Target's access obligations with respect to its website seriously undercuts any claim that the alleged accessibility problems resulted from intentional discrimination.

[5] There are some circumstances, such as in those cases cited by Plaintiffs, in which an Unruh Act claim can lie without a viable ADA claim.  See, e.g., O'Connor, 33 Cal. 3d 790; (condominium association policy barring children may violate the Unruh Act); Warfield, 10 Cal. 4th 594 (private social club policy prohibiting the issuance of memberships to women may violate the Unruh Act); Chabner, 225 F.3d 1042 (insurance company policy of charging higher rates for disabled persons may violate the Unruh Act).  But see Molski v. M.J. Cable, Inc., __ F.3d __, No. 05-55347, 2007 WL 865532, *5 (9th Cir. March 23, 2007) (noting that the Unruh Act is "coextensive with the ADA").  However, the O'Connor, Warfield, and Chabner decisions are distinguishable from the case at bar because each involves a discriminatory policy, which is not addressed by section 51(d).  In the instant case, by contrast, the issue is whether Target is required to make an "alteration, repair, or modification" of its website, an issue directly addressed, and disposed of, by section 51(d).  Plaintiffs do not cite a single case in which an Unruh Act claim was found to exist in the absence of an ADA claim in analogous factual circumstances.

TARGET'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-01802 MHP
sf-2291447

12

1  failed efforts to pre-shop and to access the weekly advertisement using Target.com do not
2  support the conclusion that he was denied full and equal enjoyment of the goods and services
3  offered in Target stores. (*See* Part I.B., *supra.*) Consequently, he has no claim under either
4  the Unruh Act or the ADA.

### B. Plaintiff Sexton Has No Disabled Persons Act Claim.

California's Disabled Persons Act ("CDPA"), California Civil Code section 54, *et seq.*, guarantees "full and equal access" for individuals with disabilities to all public places. Under the CDPA, such public places include: the "accommodations, advantages, facilities . . . and privileges of all common carriers, airplanes . . . private schools, hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited . . . ." Cal. Civ. Code § 54.1(a)(1). Because the statute lists only physical places as examples of covered facilities, under the doctrine of *noscitur a sociis*, the CDPA should be interpreted as applying only to other physical places. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000). Internet websites are not physical places. Thus, Plaintiff Sexton's CDPA claim fails.

Even if the CDPA were interpreted to encompass websites, however, Plaintiff Sexton's CDPA claim would still fail. "Under the CDPA, a plaintiff can show either that the ADA was violated, or that the facility in question does not comply with the California Building Code requirements for disabled access ('Title 24')." *Mannick v. Kaiser Foundation Health Plan, Inc.*, No. C 03-5905-PJH, 2006 WL 2168877, at *16 (N.D. Cal. July 31, 2006) (citing Cal. Civ. Code § 54; Cal. Health & Safety Code § 19955; Cal. Code Regs. tit. 24, § 1134B.1, 2); *see also Arnold v. United Artists Theatre Cir., Inc.*, 158 F.R.D. 439, 446 (N.D. Cal. 1994) ("The degree of 'full and equal access' to places of public accommodation guaranteed to disabled persons under § 54.1(a) is defined by building code standards that are imposed under California Government Code § 4450.")

Here, to the extent that Plaintiff Sexton's CDPA claim is dependent on a claimed violation of the ADA, the CDPA claim fails as Plaintiffs have provided no evidence, as discussed above, that Mr. Sexton suffered any injury under the ADA. Plaintiffs do not allege

1  that Target.com is in violation of the California Building Code nor can they present any
2  evidence to support such a claim; thus, Plaintiff Sexton's CDPA claim cannot survive on that
3  basis.
4        Plaintiffs attempt to salvage their CDPA claim by citing *Hankins v. El Torito*
5  *Restaurants, Inc.*, 63 Cal. App. 4th 510, 522 (1998).  According to Plaintiffs, *Hankins* stands
6  for the proposition that the CDPA is not limited to the inaccessibility of a physical place.
7  But Plaintiffs are wrong.  In *Hankins*, defendant El Torito prohibited disabled patrons from
8  using the employee restroom on the restaurant's first floor even though the only restroom for
9  customer use was on the second floor of the restaurant, which was inaccessible to disabled
10 customers.  At issue was whether the restaurant's policy to preclude access to a Building
11 Code compliant bathroom constituted a violation of the CDPA.  The court held that a
12 discriminatory policy that precludes access to a physical place may violate the CDPA.  *Id*. at
13 522-24.  The *Hankins* court did not hold that the CDPA applies to accessibility problems
14 with websites or other non-physical spaces.  Thus, *Hankins* cannot save Plaintiff Sexton's
15 CDPA claim because Plaintiffs have not alleged, nor presented evidence to demonstrate, that
16 Target has any discriminatory policy that prevents Mr. Sexton from accessing a physical
17 place.  Indeed, as discussed in more detail in Target's opening brief, Mr. Sexton only
18 complains about the difficulties of using Target.com, not of any accessibility problems at
19 Target's physical stores.
20       Finally, for the same reasons that Plaintiff Sexton's ADA and Unruh Act claims fail,
21 Plaintiff Sexton cannot prevail on his CDPA claim.  Like the ADA, the CDPA provides for
22 "full and equal" access.  Cal Civ. Code § 54.1.  As discussed above, Plaintiff Sexton has not
23 provided any evidence that his failed efforts to pre-shop and to access the weekly
24 advertisement using Target.com denied him full and equal enjoyment of the goods and
25 services offered in Target stores.  (*See* Part I.B., *supra.*)  Consequently, Mr. Sexton has no
26 CDPA claim.
27
28

**CONCLUSION**

For the foregoing reasons, Defendant Target's motion for summary judgment against Plaintiff Bruce F. Sexton should be granted.

Dated: April 2, 2007

HAROLD J. McELHINNY
MATTHEW I. KREEGER
KRISTINA PASZEK
MORRISON & FOERSTER LLP

By: /s/ Matthew I. Kreeger
     Matthew I. Kreeger

Attorneys for Defendant
TARGET CORPORATION