1    LAURENCE W. PARADIS (California Bar No. 122336)
     ROGER N. HELLER (California Bar No. 215348)
2    DISABILITY RIGHTS ADVOCATES
     2001 Center Street, Third Floor
3    Berkeley, California 94704
     Telephone:    (510) 665-8644
4    Facsimile:    (510) 665-8511
     TTY:          (510) 665-8716
5
     JOSHUA KONECKY (California Bar No. 182897)
6    RACHEL BRILL (California Bar No. 233294)
     SCHNEIDER & WALLACE
7    180 Montgomery Street, Suite 2000
     San Francisco, CA  94104
8    Telephone:    (415) 421-7100
     Fax:          (415) 421-7105
9    TTY:          (415) 421-1655

10   DANIEL F. GOLDSTEIN (*pro hac vice*)        PETER BLANCK (*pro hac vice*)
     BROWN, GOLDSTEIN & LEVY, LLP               900 S. Crouse Ave.
11   120 E. Baltimore St., Suite 1700           Crouse-Hinds Hall, Suite 300
     Baltimore, MD 21202                        Syracuse, NY 13244-2130
12   Telephone:    (410) 962-1030               Telephone:    (315) 443-9703
     Fax:          (410) 385-0869               Fax:          (315) 443-9725

13

14

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17

18

19   NATIONAL FEDERATION OF THE              Case No. C 06-01802 MHP
     BLIND, the NATIONAL FEDERATION OF
20   THE BLIND OF CALIFORNIA, on behalf of   **CLASS ACTION**
     their members and all others similarly situated,
21   and BRUCE F. SEXTON, on behalf of himself   **PLAINTIFFS' SUPPLEMENTAL BRIEF**
     and all others similarly situated,          **REGARDING STATE LAW CLAIMS**
22
                                              Hearing Date: May 1, 2007
23              Plaintiffs,                    Time: 2:00 PM
                                              Judge: The Hon. Marilyn Hall Patel
24   v.

25   TARGET CORPORATION

26              Defendant.

27

28

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

Dockets.Justia.com

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT.........................................................................................................3

    A.      The Unruh Act Requires Full and Equal Enjoyment of Target.com Without Regard to any Nexus Between the Website and Target's Retail Stores. ................3

        1.      The Term "Business Establishment" is Construed "In The Broadest Sense Reasonably Possible" and Has Been Held to Cover Any "Permanent Commercial Force," Including Commercial Websites................................3

        2.      Target Corporation and Target.com are Each Business Establishments Covered by the Unruh Act..........................................................................4

        3.      The "Building Code" Exception in Section 51(d) Is Inapposite Because Making Target.com Accessible Does Not Require the Alteration of Any Physical Structure. ..............................................................................5

        4.      Target's Argument that Plaintiffs Must Show Intent to Prevail On Their Unruh Act Claim Raises Additional Common Questions of Law And Fact to Support Class Certification...................................................................7

        5.      Plaintiffs Need Not Prove Discriminatory Intent to Prevail on Their Unruh Act Claim..............................................................................................8

        6.      Even if Intentional Discrimination is Required for a Claim Under the Unruh Act, Target's Knowing Failure and Refusal to Include Basic Accessibility Features Constitutes Intent Under California Law. .............11

    B.      The DPA Requires Full and Equal Enjoyment of Target.com Without Regard to Any Nexus Between the Website and Target's Retail Stores. .............................13

        1.      The Language of the DPA Is Broader Than the Language of Title III, and the DPA Applies to Disability Discrimination Pertaining to Nonphysical Places. ..............................................................................................13

        2.      The Rationale in *Weyer* For Restricting the Scope of Title III to Physical Places Does Not Apply to the DPA.........................................................15

        3.      Target.com is a Place to Which the General Public is Invited Under the DPA. ..............................................................................................16

III.    CONCLUSION ...................................................................................................17

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims                                    i

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# TABLE OF AUTHORITIES

**Cases**

*Aktar v. Anderson*, 58 Cal.App.4th 1166 (1997) ...................................................................6

*Arnold v. United Artists Theatre Circuit, Inc.*, 866 F.Supp. 433 (N.D. Cal. 1994)................14, 16

*Burks v. Poppy Const. Co.* 57 Cal.2d 463 (1962)..............................................................3, 4, 6

*Butler v. Adoption Media, LLC*, 2007 WL 963159, *34 (N.D. Cal. Mar. 30, 2007).........4, 5, 7, 15

*Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994)...............................................................................................................15

*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000)...................................4

*Demchuk v. State Dept. of Health Services*, 4 Cal.App.4th Supp. 1 (1991)..................................6

*Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999)...........................................15

*Donald v. Café Royale*, 218 Cal.App.3d 168 (1990)...........................................................14

*Dunlap v. Association of Bay Area Governments*, 996 F.Supp. 962 (N.D.Cal.1998)..................10

*Fazekas v. Cleveland Clinic Foundation Health Care Ventures, Inc.*, 204 F.3d 673 (6th Cir. 2000)...........................................................................................................................6

*Gunther v. Lin*, 144 Cal.App.4th 223 (2007)...............................................................10, 11

*Hale v. Morgan*, 22 Cal.3d 388 (1978)...............................................................................12

*Hankins v. El Torito Restaurants, Inc.*, 63 Cal.App.4th 510 (1998) ...................................passim

*Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142 (1991) ............................9, 10, 11, 12

*Hooks v. OKBridge, Inc.*, 232 F.3d 208 (5th Cir. 2000)......................................................15

*Hurd v. Ramona Land Co.*, 2003 WL 23281593, *3-4 (N.D. Cal. Nov. 12, 2003) .......................9

*Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal.3d 72 (1985) .................................3, 5, 9, 14

*Katzenbach v. Grant*, 2005 WL 1378976, *17 (E.D. Cal. 2005) .............................................17

*Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837 (9th Cir. 2004).......................................9, 10, 11

*Marsh v. Edwards Theatres Circuit, Inc.*, 64 Cal. App. 3d 881 (1976)...................................15

*NewNet v. Lavasoft*, 356 F.Supp.2d. 1090 (C.D.Cal. 2004).................................................16

*O'Connor v. Village Green Owners Ass'n*, 33 Cal. 3d 790 (1983)...............................................4

*Presta v. Peninsula Joint Powers Board*, 16 F.Supp.2d 1134 (N.D. Cal. 1998)...................passim

*Reno v. ACLU*, 521 U.S. 844 ...............................................................................................16

*Schroeder v. Auto Driveaway Co*, 11 Cal.3d 908 (1974) ........................................................12

*Swann v. Burkett*, 209 Cal.App.2d 685 (1962) ......................................................................3

*U.S. v. Hunter*, 101 F.3d 82 (9th Cir. 1996) .......................................................................6

*Warfield v. Peninsula Golf & Country Club,* 10 Cal.4th 594 (1995) .......................................3

*Weyer v. Twentieth Century Fox Film Corp.* ...................................................................2, 15

*Wilson v. Haria and Gogri Corp.*, --- F.Supp.2d ---, 2007 WL 851744, *5-11 (E.D. Cal. Mar. 22, 2007) ...............................................................................................................9, 11

## Statutes

42 U.S.C. § 12181(2) ...........................................................................................................6

42 U.S.C. § 12181(7) .........................................................................................................14

42 U.S.C. § 121812(a) ......................................................................................................14

Cal. Civ. Code § 51 .....................................................................................................passim

Cal. Civ. Code § 54.1 ..................................................................................................passim

## Other Authorities

Stats. 1992, c. 913 (A.B. 1077) ........................................................................................9, 14

Stats. 1959, c. 1866, p.4424 ................................................................................................3

Bonnie Poitras Tucker, The ADA's Revolving Door: Inherent Flaws in the Civil Rights Paradigm, 62 Ohio St. L.J. 335, 353-54 (2001) ..................................................................10

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## I.    INTRODUCTION

This supplemental brief addresses whether Plaintiffs' state law claims under the Unruh Act and/or the Disabled Persons Act ("DPA") require any nexus to Target's retail stores. As discussed below, an analysis of the statutory text, legislative purpose and case law pertaining to these broad civil rights statutes shows that they must cover commercial websites, including target.com, without the need for any connection between the website and a physical place. Accordingly, Plaintiffs have proposed the following definition for the California class:

> "All legally blind individuals in California who have attempted to access Target.com, for plaintiffs' claims arising under the Unruh Civil Rights Act and Disabled Persons Act."[1]

The Unruh Act and the DPA are intended to eradicate both the intentional and unintentional exclusion of people with disabilities from the array of benefits and privileges available to the general public in today's world. Under normal rules of statutory construction, these civil rights laws must be interpreted expansively for the benefit of the class of people they are designed to protect, while any potential exceptions to their coverage are to be narrowly construed.

The Unruh Act, by its plain terms, covers "all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The California Supreme Court has repeatedly held that such all-encompassing language reaches any "permanent commercial force," not just those tied to a physical place or structure. In this respect, the courts have applied the Unruh Act to a spectrum of businesses and commercial activities that are not connected to a physical place, including, most recently by Judge Hamilton of this District, a commercial website.

---

[1] As previously briefed, there is an extensive nexus between target.com and the full and equal enjoyment of the goods and services offered in Target's retail stores. On April 25, 2007, the Court ordered that the class definition for Plaintiffs' claims under the Americans with Disabilities Act ("ADA") be stated as follows: "All legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores." Based on the distinction between the California and federal laws, the proposed class definition for the state law claims is broader. This supplemental brief is limited to a discussion of Target's liability under the Unruh Act and DPA to the extent that there are any portions of target.com that lack a sufficient nexus to the full and equal enjoyment of the goods and services offered in Target's retail stores.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

1

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA, 94704-1204
(510) 665-8644

1    While Target previously has attempted to use Cal Civ. Code § 51(d) to escape coverage,

2    the plain language and context of that provision shows that it is simply designed to relieve

3    businesses of an obligation to make architectural changes beyond those already required by

4    existing business codes, and that it has no application whatsoever to the wide array of other

5    business activities covered by the Unruh Act, including websites.  Additionally, the weight of

6    authority indicates that intent is not a requirement for disability access claims under the Unruh

7    Act.  Nonetheless, Plaintiffs will be able to show, if necessary, at either summary judgment or

8    trial, that Target's knowing failure and refusal to include basic accessibility features in the design

9    of its website demonstrates intent on a class-wide basis.  Either way, the intent issue raises

10    questions of law and fact that are common to the class, making class certification all the more

11    appropriate here.

12    Like the Unruh Act, the DPA also has far reaching language.  For example, unlike the list

13    of items included in the ADA's definition of "place of public accommodation," the DPA's

14    coverage expressly includes services and other activities that are not by their nature linked to a

15    physical place.  Also in contrast to Title III of the ADA, the DPA covers both "places of public

16    accommodation" as well as "other places to which the public is invited."  This language confirms

17    that the DPA need not be construed so narrowly as to apply only to those physical places that

18    were commonly encountered when the legislation was originally passed.  The difference in

19    language between the DPA and the ADA also means that federal cases such as *Weyer v.*

20    *Twentieth Century Fox Film Corp.* are neither binding nor persuasive for interpreting the DPA.

21    The California Legislature intended the DPA to prevent the exclusion of people with

22    disabilities from public forums generally.  The United States Supreme Court and other courts

23    have held in analogous contexts that the Internet is a public forum which is subject to those legal

24    protections (e.g. the First Amendment) that were drafted without reference to the Internet, but

25    which nonetheless have an underlying purpose that applies with equal force to the activities for

26    which the public are invited to participate online.  Here, Target quite plainly invites the public to

27    visit its website, even referring to users of the website as "guests" on the home page.  It would

28    run counter to the broad objectives and design of the DPA, without any discernable purpose, to

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

2

1  interpret the statute so narrowly as to exclude target.com from the reach of its generally

2  applicable and important anti-discrimination mandate.

## II.     ARGUMENT

### A.     The Unruh Act Requires Full and Equal Enjoyment of Target.com Without Regard to any Nexus Between the Website and Target's Retail Stores.

#### 1.     The Term "Business Establishment" is Construed "In The Broadest Sense Reasonably Possible" and Has Been Held to Cover Any "Permanent Commercial Force," Including Commercial Websites.

The Unruh Act entitles people with disabilities to the "full and equal accommodations,

advantages, facilities, privileges, or services in *all business establishments of every kind*

*whatsoever.*" Cal. Civ. Code § 51(b) (emphasis added).  It is well settled that the term "business

establishment" under the Unruh Act must be construed "in the broadest sense reasonably

possible." *See, e.g., Burks v. Poppy Const. Co.* 57 Cal.2d 463, 468 (1962).  As explained by the

California Supreme Court:

> By its use of the emphatic words "all" and "of every kind
> whatsoever," the Legislature intended that the phrase "business
> establishments" be interpreted "in the broadest sense reasonably
> possible."  Indeed, the Unruh Act was adopted out of concern that
> the courts were construing the 1897 public accommodations statute
> too strictly.

*Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal.3d 72, 78 (1985) (quoting *Burks*, 57 Cal.2d at

468).  In 1959, the Legislature specifically deleted the list of *places* contained in the predecessor

statute and replaced it with a reference to "all business establishments of every kind

whatsoever," to stop the courts of appeal from curtailing the scope of the Act's coverage.

Stats.1959, c. 1866, p. 4424, § 1; *see also Warfield v. Peninsula Golf & Country Club,* 10 Cal.4th

594, 608-609 (1995); *Swann v. Burkett*, 209 Cal.App.2d 685, 694 (1962).  Given the statutory

text and history, Target could only escape coverage by showing that it would be *unreasonable*

for the Unruh Act to be construed to require equal access to business conducted with

Californians through the Internet.  Target cannot meet this burden.  To the contrary, the

Legislature made it clear a half a century ago that the Unruh Act would expansively cover "all"

business establishments, without reference to any particular physical place. *See Isbister,* 40

Cal.3d at 78 (explaining legislative intent).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

3

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Moreover, the California Supreme Court and other California courts have repeatedly held that the Unruh Act applies, not merely to physical places, but more expansively to any "permanent commercial force" that penetrates California's marketplace. *O'Connor v. Village Green Owners Ass'n*, 33 Cal. 3d 790, 795 (1983). As the California Supreme Court discussed in *Burks*:

> The word "business" embraces everything about which one can be employed….The word "establishment"…includes not only a fixed location, such as the place where one is permanently fixed for residence or business, but also a permanent commercial force or organization or a permanent settled position.

*Burks,* 57 Cal.2d at 468-69 (quotations omitted); *see also Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1050 (9th Cir. 2000); *Presta v. Peninsula Joint Powers Board*, 16 F.Supp.2d 1134, 1136 (N.D. Cal. 1998). In keeping with this broad construction, the Unruh Act has been held to apply to a wide array of business activities, from real estate transactions to insurance coverage, many of which need not occur within a physical place. *See O'Connor*, 33 Cal.3d at 795; *Chabner*, 225 F.3d at 1050. Just last month, Judge Hamilton of this District held that the Unruh Act covers a commercial website with no connection to a physical place of business. *See Butler v. Adoption Media, LLC,* 2007 WL 963159, *34 (N.D. Cal. Mar. 30, 2007). It is thus reasonable to recognize here that Target and target.com fall squarely within the Unruh Act's broad coverage.

### 2. Target Corporation and Target.com are Each Business Establishments Covered by the Unruh Act.

Both Target Corporation and target.com are "permanent commercial forces" that are covered by the Unruh Act, as that statute has been consistently interpreted by California courts. First, Target Corporation is a permanent commercial force in California because it conducts millions of dollars of business with Californians every year. Indeed, by a conservative estimate, Target Corporation earns millions of dollars in revenue each year from sales made to California customers on target.com alone. *See* Deposition of Patricia Ann Perry, Jan. 10, 2007 ("Perry Depo."), attached as Exhibit A to Declaration of Roger Heller in Support of Plaintiffs' Supplemental Brief Regarding State Law Claims ("Heller Decl."), at 46:11-14 (Target's revenue

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

4

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  from target.com in 2006).  Thus, there can be no reasonable dispute that Target Corporation is a

2  business establishment, and that target.com is one of the "accommodations, advantages,

3  facilities, privileges, or services" of that business establishment.  Cal. Civ. Code § 51.

4      Second, target.com itself is also a business establishment within the meaning of the

5  Unruh Act.  In *Butler*, for example, Judge Hamilton held that a commercial website that provides

6  adoption services to Californians, among others, and which has no connection to a physical place

7  of business, is "plainly a 'business establishment' as defined under California law." *Butler*, 2007

8  WL 963159 at *34 (citing *Isbister*, 40 Cal.3d at 78-79).  Target.com, if anything, is even more of

9  a business establishment than the website at issue in *Butler*.  Target created target.com in 1999 to

10  offer customers an opportunity to interact with Target, and purchase Target products and

11  services, in an online setting.  *See* Perry Depo. at 71:5-72:10.  Visitors to target.com can also

12  access extensive information on target.com, including information about job opportunities with

13  Target Corporation and information about the corporation itself.[2]  Indeed, if Target were to

14  relinquish its retail stores tomorrow, but maintain its website, target.com would remain a

15  business establishment covered by the Unruh Act.

16      **3.    The "Building Code" Exception in Section 51(d) Is Inapposite Because
           Making Target.com Accessible Does Not Require the Alteration of
17           Any Physical Structure.**

18      Target has argued in this case that Cal Civ. Code § 51(d) relieves it of any obligation to

19  make target.com accessible to people with disabilities.  *See* Target's Motion to Dismiss at pp. 4-

20  5.  Section 51(d) states in pertinent part:

21          Nothing in this section shall be construed to require any
            construction, alteration, repair, structural or otherwise, or
22          modification of any sort whatsoever, beyond that construction,
            alteration, repair, or modification that is otherwise required by
23

24  ───────────────
   [2] *See, e.g.*, http://sites.target.com/site/en/corporate/page.jsp?contentId=PRD03-000482 ("About
25  Target");
   http://sites.target.com/site/en/corporate/page.jsp?ref=nav%5Ffooter%5Fcareers2&contentId=PR
26  D03-000483 (job opportunities); http://investors.target.com/phoenix.zhtml?p=irol-
   irhome&ref=nav%5Ffooter%5Finvestors&c=65828 (investor information);
27  http://sites.target.com/site/en/corporate/page.jsp?ref=nav%5Ffooter%5Fdiversity&contentId=PR
   D03-002096 (diversity information).
28

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

5

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

> other provisions of law, to any new or existing establishment,
> facility, building, improvement, or any other structure....

Cal. Civ. Code § 51(d). Significantly, the Legislature employed considerably different and more narrow language in section 51(d), when carving out the limited exception to the coverage of the Unruh Act, than it used in section 51(b), when defining the statute's broad overall coverage earlier in the same section. By its terms, section 51(d) does not apply to "*all business establishments of every kind whatsoever*," but instead applies just to an "establishment, facility, improvement, or any other structure." This raises several rules of statutory construction which confirm that the exception in section 51(d) would not apply to target.com.

First, because the Unruh Act is, by its terms, a civil rights statute to be interpreted broadly, it also is axiomatic that exceptions to its coverage are to be construed narrowly. *See Fazekas v. Cleveland Clinic Foundation Health Care Ventures, Inc.*, 204 F.3d 673, 675 (6th Cir. 2000). Second, when the Legislature uses different language in the same statute (here, the same section of the same statute), it can be presumed that the Legislature intended for the two provisions to carry different meanings. *See Aktar v. Anderson*, 58 Cal.App.4th 1166, 1182 (1997); *Demchuk v. State Dept. of Health Services*, 4 Cal.App.4th Supp. 1, 4 (1991). With the Unruh Act, the Legislature used the all encompassing "all business establishments of every kind whatsoever" in the provision defining coverage, while limiting the exception provision to just those establishments, facilities, buildings and improvements which are related to "structures." As Target has so strenuously argued previously in this case, a website is not a "structure."

Moreover, the Legislature has retained the more narrow language in section 51(d) even after *Burks*, *supra*, and its progeny confirmed that the broader language in section 51(b) applied to any "commercial force," including those unrelated to physical structures. *See Burks*, 57 Cal.2d at 468-69. Not only is the Legislature presumed to understand the case law in existence when enacting and amending legislation, *see U.S. v. Hunter*, 101 F.3d 82, 85 (9th Cir. 1996), but in the case of the Unruh Act it could have easily used the same language in section 51(d) as it did in section 51(b) if the intent was really to limit the entirety of the Unruh Act to physical structures. Evidently, the Legislature intended something broader, in order to eliminate

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

6

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

discrimination in all its forms.  Indeed, the common sense reading of the statute is that the Legislature enacted and retained section 51(d) simply to ensure that those who conform their buildings and other structures to the California Building Code (which itself incorporates architectural standards for disability access), would not be subject to additional liability for structural problems under the broader coverage provisions of the Unruh Act.

In this light, it is not surprising that the courts have applied the Unruh Act to business' policies and practices, including those pertaining to a website.  *See, e.g., Butler*, 2007 WL 963159 at *34 (holding that website is a "plainly a 'business establishment'" covered by the Act); *Hankins v. El Torito Restaurants, Inc.*, 63 Cal.App.4th 510, 519-20 (1998) (applying the Act to policies and procedures which exclude individuals with disabilities).  Incorporating accessibility features to provide people who are blind or visually-impaired with the full and equal enjoyment of target.com does not require the alteration of any building or other physical structure.  Therefore, any attempt by Target to use section 51(d) to avoid liability must fail.

For all the foregoing reasons, the Unruh Act, separate from its incorporation of the ADA, requires that Target provide people with disabilities with the full and equal enjoyment of target.com.

4.    **Target's Argument that Plaintiffs Must Show Intent to Prevail On Their Unruh Act Claim Raises Additional Common Questions of Law And Fact to Support Class Certification.**

Target has argued that Plaintiffs must show intent as an element of their Unruh Act claim. Yet, the extent and nature of any intent requirement for disability discrimination claims under the Unruh Act are questions of law that are common to the class.  Moreover, whether Target acted with the requisite "intent" in refusing to include basic and fundamental accessibility features in the design of target.com presents additional questions of fact that are common to the class and do not require consideration of any particular visit to target.com by any particular class member.

All of the expert testimony thus far, as well as Target's own Rule 30(b)(6) witnesses in deposition, have confirmed that Target's failure and refusal to include the most basic accessibility elements in its website design (i.e., alternate text, keyboard access, navigation links and cues for inserting information into online forms) affects the blind in the same general

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

7

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   fashion, regardless of their location, their proficiency with the Internet, or the specific type of

2   software they are using.[3]

3       The continuing development of new technology will not prevent the Court from

4   adjudicating Target's intent to date on a class-wide basis. Plaintiffs' claims revolve around

5   Target's failure to employ fundamental accessibility features that apply generally to anyone

6   relying on screen access software, not any new "bells and whistles." Since the development of

7   the Internet, the communication of visual information on a website to someone using screen

8   access software (as well as the communication of commands from the user back to the site)

9   simply cannot be accomplished without coding on the site for alternative text, keyboard use,

10  navigation links, and online form cues.[4] Even the most skillful blind computer user, using the

11  newest equipment, still cannot make a screen reader identify an image or form that is unlabeled,

12  anymore than they might be able to point and click a mouse on a screen that they cannot visually

13  see. *See* Nemoir Depo. at 85:15-24, 154:10-155:9, 175:4-176:3. Thus, to the extent that there is

14  any intent requirement for Plaintiffs' Unruh Act claim, Target's liability on the merits will turn

15  on the company's knowledge of its failure to incorporate these basic accessibility features and

16  the effect of not including those features in the website design, not on any changes in Internet

17  technology.

18          **5.    Plaintiffs Need Not Prove Discriminatory Intent to Prevail on Their**
                    **Unruh Act Claim.**
19

20      A plaintiff alleging disability discrimination is not required to prove intent in order to

21  establish liability or obtain relief under the Unruh Act. *See Presta*, 16 F.Supp.2d at 1134-36.

22  As a primary matter, courts in the Ninth Circuit have consistently held that, at least to the extent

23  _____

24  [3] *See* Expert Declaration of Dr. James W. Thatcher in Support of Plaintiffs' Motion for
    Preliminary Injunction, filed May 8, 2006 ("Thatcher PI Decl"), attached as Exhibit B to Heller
    Decl., at Ex.A, pp. 1-2; Deposition of Charles Letourneau, July 5, 2006 ("Letourneau Depo."),
25  attached as Exhibit C to Heller Decl., at 18:9-25, 20:11-17, 32:22-33:11, 53:7-16, 53:19-55:3,
    57:2-58:5, 58:14-22, 77:16-78:8; Deposition of Todd J. Nemoir, Jan. 9, 2007 ("Nemoir Depo."),
26  attached as Exhibit D to Heller Decl., at 85:15-24, 89:6-12, 154:10-155:9, 160:10-161:8, 175:4-
    176:3; Perry Depo. at 22:20-23:2.
27

28  [4] *See* Thatcher PI Decl. at ¶¶ 13, 42, 43, 49, 53, 54; Ex. A, pp. 1-2.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

8

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   that a claim is predicated on the statute's incorporation of the ADA, no showing of

2   discriminatory intent is required to establish liability or obtain equitable or monetary relief under

3   the Unruh Act. *See Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 846-47 (9th Cir. 2004);

4   *Wilson v. Haria and Gogri Corp.*, --- F.Supp.2d ---, 2007 WL 851744, *5-11 (E.D. Cal. Mar. 22,

5   2007); *Hurd v. Ramona Land Co.*, 2003 WL 23281593, *3-4 (N.D. Cal. Nov. 12, 2003); *Presta*,

6   16 F.Supp.2d at 1134-36.

7        No case to date has directly addressed the question of whether a plaintiff must prove

8   intent under the Unruh Act for disability discrimination that is otherwise actionable under the

9   Unruh Act but not under the ADA.  Nonetheless, the reasoning of *Lentini*, *Presta* and their

10  progeny applies with full force to that question, given both: (a) the well-established principle that

11  "the Unruh Act is to be interpreted in the broadest sense reasonably possible so as to achieve its

12  purpose of combating discrimination *in all its forms*"; and (b) the unique nature of disability

13  discrimination, whereby discrimination often takes the form of inaction or seemingly-neutral

14  policies, rather than affirmatively discriminatory behavior. *Presta*, 16 F.Supp.2d at 1135-36

15  (citing *Isbister*, 40 Cal.3d at 76) (emphasis added).[5]

16       The lack of an intent requirement is firmly grounded in the unique character of disability

17  discrimination.  While an intent requirement might be applicable to claims of gender or other

18  types of discrimination that would otherwise rely on pure disparate impact theories to challenge a

19  facially-neutral policy, *see, e.g., Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142

20  (1991), disability discrimination differs fundamentally from discrimination against other

21  protected groups with respect to the significance of facially-neutral policies.  Unlike race and

---

22  [5] Implicit in the statute's incorporation of the ADA, which has no intent requirement, is a
23  legislative purpose not to require intent as an element of a disability discrimination claim under
    the Unruh Act. *See Presta*, 16 F. Supp.2d at 1135-36.  In fact, the Legislature intended the
24  Unruh Act to provide people with disabilities even broader protection from discrimination than
    the ADA.  In addition to the broad language and purpose of the Unruh Act, discussed above,
25  when the statute was amended in 1992 to incorporate the ADA, the Legislature intended "to
26  strengthen California law in areas where it is weaker than the Americans with Disabilities Act of
    1990, and to retain California law when it provides more protection for individuals with
27  disabilities than the [ADA]." Stats. 1992, c. 913 (A.B. 1077), §§ 1, 3.  Thus, the ADA is
    properly viewed as a floor in terms of the protection from discrimination that the Unruh Act
28  provides to people with disabilities.

---

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  gender cases, where the underlying goal is often to secure a truly neutral policy or practice,

2  disability cases present the scenario where seemingly-neutral policies themselves cause

3  discrimination and exclusion.  Thus, disability access laws are designed to require modification

4  of, or accommodation to, such seemingly-neutral policies, not merely the elimination of

5  affirmatively discriminatory behavior.  This makes cases like *Harris* inapposite.  As Judge

6  Henderson explained in *Presta*:

7
> [D]iscrimination against persons with disabilities differs from
> discrimination on the basis of, for example, gender, or race.
8
> Discrimination in the latter instances has been judicially defined as
> disparate treatment on the basis of a certain characteristic that
9
> identifies an individual as a member of a protected class. However,
> a person with a disability may be the victim of discrimination
10
> precisely because she did not receive disparate treatment when she
> needed accommodation.  In the context of disability, therefore,
11
> equal treatment may not beget equality, and facially neutral
> policies may be, in fact, discriminatory if their effect is to keep
12
> persons with disabilities from enjoying the benefits of services
> that, by law, must be available to them.

13  *Presta*, 16 F.Supp.2d at 1136 (citing *Dunlap v. Association of Bay Area Governments*, 996

14  F.Supp. 962, 965 (N.D.Cal.1998)).  Thus, it is critical that people with disabilities be able to rely

15  on anti-discrimination laws to protect them from inaction and policies that exclude because they

16  are facially-neutral.  *See, e.g.,* Bonnie Poitras Tucker, The ADA's Revolving Door: Inherent

17  Flaws in the Civil Rights Paradigm, 62 Ohio St. L.J. 335, 353-54 (2001) ("Since equal treatment

18  of people with disabilities often leads to unequal results, different treatment is required to ensure

19  equivalent results.").  "Such discrimination may only be fought by a statute that prescribes

20  liability without reference to an actor's intent."  *Presta*, 16 F.Supp2d at 1136 (finding no intent

21  requirement for disability discrimination claim under the Unruh Act) [6]; *see also Lentini*, 370 F.3d

22  at 846 (no intent requirement for ADA claim).

23         For these reasons and others, the recent case of *Gunther v. Lin*, 144 Cal.App.4th 223

24  (2007), is not persuasive and has already been criticized by at least one recent court decision.

25

26  _____

[6] While the plaintiff in *Presta* brought claims under both the ADA and the Unruh Act, nothing in
27  the court's decision in that case would limit the application of the court's reasoning on the intent
question to claims that are predicated on the Unruh Act's incorporation of the ADA. *See Presta*,
28  16 F.Supp.2d at 1135-36.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

10

1    *See Wilson*, ---F.Supp.2d---, 2007 WL 851744 at *7-11 ("*Gunther* held what every other court

2    before it has rejected."). In *Gunther*, an intermediate California appellate court relied on *Harris*,

3    *supra*, to conclude that a plaintiff alleging disability discrimination must show intent to recover

4    statutory damages under the Unruh Act. As a primary matter, the court in *Gunther* recognized

5    that no showing of intent is required to obtain injunctive relief for Unruh Act violations. *See id.*

6    at 234, 247, 252. Thus, at most, *Gunther* would apply only to Plaintiffs' statutory damages

7    claims, which would be addressed in a second phase in this case.

8          Moreover, *Gunther*'s holding with respect to statutory damages is misguided for several

9    reasons, and should not be followed by this Court. First, the decision contradicts *Lentini* and

10    other decisions from Ninth Circuit courts that reached the opposite conclusion. Second, by

11    relying on *Harris*, a gender discrimination case, for the holding at issue, the decision ignores

12    critical differences between disability discrimination and discrimination against other protected

13    groups, discussed above. Third, the decision discards the legislative history of the Unruh Act,

14    which chronicles the ever-widening scope of the Unruh Act and is consistent with a legislative

15    intent to apply the statute broadly to eradicate forms of disability discrimination that result from

16    the failure to accommodate or modify neutral practices. *See Presta*, 16 F.Supp.2d at 1135-36;

17    *Wilson*, --- F.Supp.2d ---, 2007 WL 851744 at *7-11.

18        **6.    Even if Intentional Discrimination is Required for a Claim Under the**
            **Unruh Act, Target's Knowing Failure and Refusal to Include Basic**
19                **Accessibility Features Constitutes Intent Under California Law.**

20          Even if a claim under the Unruh Act requires that Target has acted "intentionally" in

21    denying Plaintiffs the full and equal enjoyment of target.com, the evidence will demonstrate that

22    Target's discrimination has been "intentional," as that term is used in California law. A plaintiff

23    need not show that a defendant had an evil animus to demonstrate that their actions or inactions

24    were intentional under California law. Rather, intent under California law can be established by

25    evidence that a defendant knowingly failed to take action that is required by the law, and had

26    knowledge of the effect that its inaction would have. *See Hankins*, 63 Cal.App.4th at 518 [7]; *see*

27

28       [7] Though the court in *Hankins* did cite *Harris* for the proposition that a plaintiff needs to prove
intent to establish a claim under the Unruh Act, the court did not specifically address the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

11

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  *also Schroeder v. Auto Driveaway Co*, 11 Cal.3d 908, 922 (1974) ("We assume defendants felt

2  no personal animus toward plaintiffs. But 'intent,' in the law of torts, denotes not only those

3  results the actor desires, but also those consequences which he knows are substantially certain to

4  result from his conduct.") (citing Restatement 2d of Torts, § 8(a) and Prosser, Torts (4th ed.

5  1971), at pp. 31-32); *Hale v. Morgan*, 22 Cal.3d 388, 396 (1978) (intent determined "without

6  regard to motive").[8]

7          At trial and/or during the summary judgment phase, Plaintiffs will present evidence

8  showing that Target's failure and refusal to incorporate the most basic accessibility features on

9  target.com have been intentional within the meaning of California law.  The evidence will show

10  that the technologies that are required to incorporate these basic accessibility features have been

11  widely known and readily available for many years, and indeed were available when Target

12  launched its website in 1999.  *See* Declaration of James W. Thatcher in Support of Plaintiffs'

13  Supplemental Brief Regarding State Law Claims, filed herewith, ("Thatcher Supp. Decl.") at ¶¶

14  5-7.  Plaintiffs further expect that after the completion of merits discovery, they will be able to

15  show that Target, with its extensive personnel and sophistication, should have known, and in fact

16  did know, of these technologies long before it began to take any action to incorporate the basic

17  accessibility features into its website design.  Finally, the evidence will show that Plaintiffs'

18  counsel informed Target of the pervasive accessibility barriers on target.com and the harm that

19  such barriers were causing members of the blind and visually-impaired community, but that

20

21  application of that general principle to disability discrimination claims. *See Hankins*, 63
    Cal.App.4th at 517-18.  Nor was the court's brief reference to *Harris* determinative in that case,

22  since the court ultimately found that the defendant's knowledge of its discriminatory policy and
    its effect on people with disabilities was sufficient to establish that the defendant's conduct was

23  "intentional." *See id.* at 518-19.

24  [8] According to the comments on Restatement 2d of Torts, § 8(a):

25          Intent is not…limited to consequences which are desired.  If an

26          actor knows that the consequences are certain, or substantially
            certain, to result from his act, and still goes ahead, he is treated by

27          the law as if he had in fact desired to produce the result.

28  Restatement 2d of Torts, § 8(a), comment b.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

12

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Target nonetheless refused to take any action until well after the filing of this litigation, which itself occurred approximately one year after Plaintiffs' counsel contacted Target. *See* Letter from Mazen Basrawi to Robert Ulrich, May 5, 2005, attached as Exhibit E to Heller Decl.; Nemoir Depo. at 138:7-148:15, 156:11-21, 179:10-19. Thus, even to the extent that the Court finds an intent requirement under the Unruh Act, the evidence will show that Target's failure and refusal to incorporate basic accessibility elements into the design of target.com has been "intentional" under California law.[9]

### B.   The DPA Requires Full and Equal Enjoyment of Target.com Without Regard to Any Nexus Between the Website and Target's Retail Stores.

The DPA also requires Target to provide people with disabilities with the full and equal enjoyment of target.com, regardless of any nexus between the website and Target's retail stores. Target's refusal to remove pervasive accessibility barriers throughout the website is actionable under that statute as well.

### 1.   The Language of the DPA Is Broader Than the Language of Title III, and the DPA Applies to Disability Discrimination Pertaining to Nonphysical Places.

The "broad language" of the DPA indicates a legislative intent "to afford broad protection" to persons with disabilities from discrimination by businesses serving the general public. *Hankins*, 63 Cal.App.4th at 523. As the court explained in *Hankins*:

> Many courts have recognized that California's disability access laws manifest a legislative intent to afford broad protection and maximize the incentive for compliance in order to achieve access for disabled individuals.

---

[9] Under Target's theory (i.e. that its knowing refusal to make taget.com accessible is not actionable under the Unruh Act), any business could refuse to provide necessary accommodations to people with disabilities and, even if they are aware of the need for such accommodations and the harms that will result if such accommodations are not provided, claim that such refusal does not violate the Unruh Act because the requisite intent, as Target's sees it, is lacking. For example, a hospital could refuse to provide translation services to a deaf patient and then argue that it did not violate the Unruh Act because it had no negative animus towards deaf people. Such an interpretation simply cannot be squared with the purpose of the Unruh Act or the way that courts have consistently applied the Unruh Act to disability discrimination claims.

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Id.* (citing *Donald v. Café Royale*, 218 Cal.App.3d 168, 176-78 (1990); *Isbister*, 40 Cal.3d at 74-76; *Arnold v. United Artists Theatre Circuit, Inc.*, 866 F.Supp. 433, 437-39 (N.D. Cal. 1994)). Thus, the DPA prohibits policies and practices "unrelated to any structural impediment," but which nevertheless have the effect of discriminating against disabled customers. *Hankins*, 63 Cal.App.4th at 523.

In pertinent part, the DPA provides:

> (a)(1) Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), *telephone facilities, adoption agencies*, private schools, hotels, lodging places, places of public accommodation, amusement, or resort, *and other places to which the general public is invited*, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.
>
> (2) As used in this section, "telephone facilities" means *tariff items* and other equipment *and services*....

Cal. Civ. Code § 54.1 (emphasis added).

The language of the DPA is broader than the language of Title III of the ADA in at least two significant respects. First, unlike the examples of places listed in Title III, the DPA's list of "places of public accommodation" includes items that are not necessarily dependent upon a physical space . *Compare* Cal. Civ. Code § 54.1(a) *with* 42 U.S.C. § 12181(7). Second, the DPA applies not just to "places of public accommodation" in the strictest sense, but also to "other places to which the general public is invited." *Compare* Cal. Civ. Code § 54.1(a)(1) *with* 42 U.S.C. § 121812(a). Moreover, in 1992, the California Legislature amended the DPA "to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990, and to retain California law when it provides more protection for individuals with disabilities than the [ADA]." Stats. 1992, c. 913 (A.B. 1077), §§ 1, 5.

Given the broader language of the DPA and the Legislature's intention that the ADA act as a floor in terms of the protection provided by the DPA, the federal authorities interpreting

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.: C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

14

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Title III as being limited to physical places are not binding on this Court's interpretation of the DPA.[10]  Rather, the Court can make its own determination based on a review of the statutory language, legislative history and case law.

### 2.    The Rationale in *Weyer* For Restricting the Scope of Title III to Physical Places Does Not Apply to the DPA.

The rationale used in restricting the scope of the ADA to physical places does not apply to the DPA.  In *Weyer*, *supra*, the Ninth Circuit noted that the list of "public accommodations" in Title III had one thing in common:  "They are actual, physical places where goods or services are open to the public and places where the public gets those goods or services."  *Weyer*, 198 F.3d at 1114.  Thus, the court reasoned that *noscitur a sociis* required that "place of public accommodation" be interpreted as requiring a connection between the service in question and a physical place.  *Id.*  The same cannot be said of the DPA.  Notably, the list of covered "places" in 54.1(a) includes "telephone facilities," which is defined to include "tariff items" as well as "services."  Cal. Civ. Code § 54.1(a)(1) & (2).  These are no more or less places that one visits than is a computer.  Moreover, the list includes "adoption agencies."  Cal. Civ. Code § 54.1(a).  As is clear from Judge Hamilton's recent decision, an adoption agency can operate on the Internet without any physical location.  *See Butler*, 2007 WL 963159.  Thus, the principle of statutory construction underlying the court's conclusion in *Weyer* does not apply to the DPA.[11]

---

[10] As discussed in Plaintiffs' Opposition to Target's Rule 12(b)(6) motion, the federal authorities are actually split as to whether Title III of the ADA covers places without any nexus to a physical site—with the Ninth Circuit holding, in a case involving insurance in the employment context, that Title III coverage requires a nexus to a physical place.  *Compare Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000) and cases cited therein, *with Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12, 19-20 (1st Cir. 1994); *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999); Brief of the United States Department of Justice as Amicus Curiae in Support of Appellant, *Hooks v. OKBridge, Inc.*, 232 F.3d 208 (5th Cir. 2000) (available at http://www.usdoj.gov/crt/briefs/hooks.htm).

[11] In arguing that the DPA does not cover target.com, Target has also cited, previously in this case, to two building code architectural barriers cases that have no relevance to this case.  In *Marsh v. Edwards Theatres Circuit, Inc.*, 64 Cal. App. 3d 881 (1976), the court addressed whether a pre-existing structure had to be modified to allow accessibility when existing building codes did not so require.  *Id.* at 886.  In *Hankins*, *supra*, the California appellate court specifically rejected the same argument that Target makes here, finding that *Marsh* in no way

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

15

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**3.    Target.com is a Place to Which the General Public is Invited Under the DPA.**

In addition to being a place of public accommodation, target.com also is a "place[] to which the general public is invited" under the broad language of section 54.1(a)(1).    Target.com is open to the general public, and is designed to be user-friendly for the general public.  *See* Nemoir Depo. at 62:17-63:5.  Twenty-four hours a day, seven days a week, Target provides information and sells goods and services to the general public on target.com.  Tens of millions of visitors visit target.com each month.[12]  Target quite literally invites the public to visit its website.  The sign-in page for target.com invites "New Guests" to enter and set up an account, and asks "Returning Guests" to sign in with their account number.[13]

There is no dispute that the Internet is becoming a bigger and bigger part of everyday life for most Americans.  Recognizing that, courts have repeatedly applied laws relating to public "places" to the Internet, even when those laws have not been amended to specifically reference the internet.  *See, e.g, Reno v. ACLU*, 521 U.S. 844, 868, 870, 880 (1997) (noting in a First Amendment case that "most Internet forums—including chat rooms, newsgroups, mail exploders, and the Web—are open to all comers" and would therefore be covered by laws that did not specifically mention the Internet when originally drafted); *NewNet v. Lavasoft*, 356 F.Supp.2d. 1090, 1107-1108 (C.D.Cal. 2004) ("[I]t is not surprising that courts have uniformly held or, deeming the proposition obvious, simply assumed that internet venues to which

---

limited section 54.1 claims challenging discriminatory policies.  *See Hankins*, 63 Cal.App.4th at 522.  Similarly unavailing is *Arnold*, 158 F.R.D. 439, which simply found that a violation of the building code applicable at the time of construction or alteration constituted a violation of the DPA.  *Id.* at 446-47.  *Arnold* said nothing about whether the DPA's application is limited only to building code requirements.  In this case, Target's policies and practices, not its conformance with building codes, are at issue.  *See Hankins*, 63 Cal.App.4th at 524 (citing *Arnold* in support of its finding that section 54.1 prohibits discriminatory policies unrelated to physical impediments).

[12] *See* Exhibit F to Declaration of Roger Heller in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, filed Mar. 26, 2007 ("Heller SJ Decl") (indicating number of visitors to target.com in recent months).

[13] *See* http://www.target.com (home page) and http://www.target.com/gp/flex/sign-in.html, attached as Exhibit G to Heller SJ Decl.

1   members of the public have relatively easy access constitute a 'public forum' or a place 'open to

2   the public.'"); *Katzenbach v. Grant*, 2005 WL 1378976, *17 (E.D. Cal. 2005) (holding that

3   "[t]he Internet is a public forum").  Thus, the Court should hold in this case that a commercial

4   website like target.com, which receives tens of millions of visitors each month, is a "place to

5   which the public is invited" under the DPA.

6        For the foregoing reasons, the DPA, separate of its incorporation of the ADA, requires

7   Target to provide people with disabilities with the full and equal enjoyment of target.com.

8   **III.    CONCLUSION**

9        For the foregoing reasons, and those additional reasons presented in the Opening and

10  Reply Papers filed in connection with Plaintiffs' Motion for Class Certification, Plaintiffs request

11  certification of the following California class:  "All legally blind individuals in California who

12  have attempted to access Target.com, for plaintiffs' claims arising under the Unruh Civil Rights

13  Act and Disabled Persons Act."

14       Respectfully submitted,

15

16

17  Dated:  April 26, 2007                 DISABILITY RIGHTS ADVOCATES
                                            SCHNEIDER & WALLACE
18                                          BROWN, GOLDSTEIN & LEVY, LLP
                                            PETER BLANCK, J.D., Ph.D.
19

20                                          By: _____

21                                               Roger Heller
                                                 Attorney for Plaintiff
22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation, et al.*
Case No.:  C 06-01802 MHP
Plaintiffs' Supplemental Brief Regarding State Law Claims

17