1   HAROLD J. McELHINNY (CA SBN 66781)
    MATTHEW I. KREEGER (CA SBN 153793)
2   KRISTINA PASZEK (CA SBN 226351)
    HMcElhinny@mofo.com
3   MKreeger@mofo.com
    KPaszek@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone: (415) 268-7000
6   Facsimile: (415) 268-7522

7   Attorneys for Defendant
    TARGET CORPORATION
8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13  NATIONAL FEDERATION OF THE BLIND,        Case No.    C 06-01802 MHP
    the NATIONAL FEDERATION OF THE
14  BLIND OF CALIFORNIA, on behalf of their   **TARGET CORPORATION'S**
    members, and Bruce F. Sexton, on behalf of **SUPPLEMENTAL BRIEF IN**
15  himself and all others similarly situated,  **OPPOSITION TO PLAINTIFFS'**
                                                **MOTION FOR CLASS**
16                   Plaintiffs,                **CERTIFICATION**

17          v.                                 Date:    July 31, 2007
                                               Time:    2:00 PM
18  TARGET CORPORATION,                        Judge:   Hon. Marilyn Hall Patel

19                   Defendant.

20

21

22

23

24

25

26

27

28

Dockets.Justia.com

**INTRODUCTION**

It is now indisputable that there is no class of plaintiffs in this case.  In fact, there is not a single person, declarant or deponent, who alleges that he or she has been denied access to the enjoyment of goods and services at a physical Target store, whether through Target.com or otherwise.

After the Court's "last chance" order of April 25, Plaintiffs' counsel has submitted 34 new declarations.  Those declarations were generated in response to postings on NFB message boards, pleas made to NFB personnel at a special staff meeting; and in some cases, direct telephone solicitations.  The results of these efforts are telling.  *Fifteen* of the declarations try to expand upon declarations this Court previously found insufficient.  *Six* of the declarations are from NFB employees or their spouses.  Another is from a summer associate of one of plaintiffs' law firms.  But despite literally calling upon "friends and family," Plaintiffs still cannot find a single person who has actually suffered a legally cognizable injury.

**STATEMENT OF FACTS**

The Court's April 25 order narrowed the proposed definition of a nationwide class and expressed concern as to whether any declarants were members of the narrower class.  Rather than denying Plaintiffs' motion for class certification at that juncture, the Court gave Plaintiffs one more chance to demonstrate the existence of putative class members who were denied access to goods and services offered in Target stores.

Plaintiffs' counsel attempted to gather new testimony that would improve Plaintiffs' case.  NFB leaders and counsel contacted individuals directly and persuaded them to submit declarations.  (Declaration of Kristina Paszek in Support of Target's Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification ("Paszek Decl.") Ex. B at 76:22-77:2, E at 13:22-14:2; Ex. F. at 51:5-24, Ex. G at 36:19-37:11.)  NFB's president paged NFB's blind employees, told them to report to his office, and personally asked them to submit testimony.  (*Id.* Ex. A at 41:1-43:15.)  In addition, Plaintiffs' counsel solicited new testimony

on the Internet, providing detailed descriptions of what they required. One posting by

counsel said "if you would answer yes to any of the questions below, we need to talk to you:"

> 1. Do you ever use the internet to find out what store has the item you want or the price you want before you go out to buy it?
>
> 2. Do you shop at Target stores? If you do, would you like to be able to use Target's web site to know what products are at the store at what prices or would you like to use the web site for store coupons or for services like pharmacy refills?
>
> 3. Have you ever tried to use Target's web site for such purposes and found it inaccessible?
>
> 4. If you don't fit this description, do you know someone who does?

(Paszek Decl. Ex. K.) When people reacted to this solicitation by observing that Target.com

is in fact accessible, a blind attorney who has worked on the case posted an explanation of

the precise factual allegations and legal theory being asserted:

> To clarify, Target's website contained thousands of unidentifiable active links (over 180 such links on their homepage alone), no HTML headings, unlabeled form fields, and the infamous non-functioning checkout button prior to NFB's filing of its law suit. The question of web accessibility comes down to ease of use, not simply whether it is possible to make a purchase.

(Paszek Decl. Ex. L.)

Ultimately, Plaintiffs collected and filed a total of 34 new declarations. Fifteen came

from individuals who previously submitted declarations in this litigation, expanding upon

prior testimony in light of the Court's expressed concerns about its inadequacy. Of the

remaining 19 declarants, six are employees of the NFB or are married to an NFB employee.

(Booth Decl. ¶ 4; Wilson Decl. ¶ 4; Carranza Decl. ¶ 4; Frye Decl. ¶ 4; Paszek Decl. Ex. A at

14:22-25; Taylor Supp. Decl. ¶ 4.) Another is a law student currently employed as a summer

associate for Schneider & Wallace, which is representing Plaintiffs in this action. (Paszek

Decl. Ex. B at 67:21-25.)

## ARGUMENT

In its previous briefs filed in opposition to Plaintiffs' motion for class certification,

Target identified a host of reasons why neither a nationwide class nor the proposed California

subclass is certifiable under the relevant law. Now that the Court has narrowed the definition

of the proposed nationwide class, and Plaintiffs have submitted more testimony, additional reasons for denying Plaintiffs' motion have emerged. The fact remains that, despite having been given multiple chances to do so, Plaintiffs cannot meet the requirements of Rule 23.

## I.    PLAINTIFFS HAVE NOT PROVEN NUMEROSITY.

### A.    Not One Declarant Is a Member of the Class Defined by the Court.

In its April 25 order, the Court redefined the proposed class, for purposes of the alleged violation of the ADA, as follows: "All legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores." (Order of April 25, 2007, at 8.) The Court expressed concern whether any of the declarants satisfied this class definition, noting that "none of the declarants has stated that the website impeded their access to the stores." (*Id.*) Although Plaintiffs have submitted new declarations in response to the Court's order, the same fatal defects remain. As before, *none of the declarants has stated that the website impeded their access to the stores.* Accordingly, Plaintiffs have failed to carry their burden of proving numerosity under Rule 23(a).

#### 1.    The Declarants Have Been Able to Access the Goods and Services Offered at Target Stores.

None of the declarants alleges that he or she has been prevented from accessing goods or services of Target retail stores. Moreover, when Target deposed ten of the declarants, it became clear that every deponent who testified to encountering difficulties purchasing products or obtaining information from Target.com who then tried to obtain the desired product or information by calling Target or visiting a Target store was successful. For example, Ken Metz testified that although he had difficulty using the gift registries on Target.com, he was ultimately able to purchase gifts from the registry during visits to a Target store. (Paszek Decl. Ex. C at 19:14-20:8.) On other occasions, Mr. Metz could not find product information that he was seeking on Target.com; however, he was ultimately able to obtain the information by calling a Target store. He was also able to confirm by telephone that what he wanted was in stock and purchase the relevant items by visiting a Target store.

(*Id.* Ex. C at 12:22-15:14.)  Both Mr. Metz and his wife, who is also blind, have received

assistance from Target personnel, whom Mr. Metz described as "very nice," "very helpful,"

"very accommodating," and "great."  (*Id.* Ex. C at 11:3-12:8, 19:14-20:8, 24:20-24, 25:7-20.)

Similarly, when Jennifer Wenzel was unable to use the links in an e-mail from Target's

Portrait Studio to find information and book an appointment, she succeeded by other means.

> So, I called Target to book a portrait appointment.  When I arrived at the store for the portrait, I brought a printout of the e-mail with me and asked a store clerk to explain the deals and what the packet included.  I would have preferred to learn this information from the website in advance and to have had the option of booking the appointment online.

(Wenzel Decl. ¶ 14.)  This and other testimony demonstrates that even if some declarants

have encountered difficulties using the Target.com website, the goods and services offered at

Target stores nonetheless remain accessible. (*Id.* Ex. E at 9:7-10:14, Ex. F at 30:5-31:1,

38:19-39:19, Ex. I at 38:8-41:15, Ex. J at 19:19-20:12.)

Significantly absent in the declarations is any evidence that Target stores are

inaccessible, by virtue of Target.com or otherwise.  Although Plaintiffs have supplied

hundreds of pages of testimony regarding legally blind individuals' experiences using

Target.com and shopping at Target stores, they have not shown that the website actually

impeded anyone's access to Target stores.

## 2.    Inconvenience Does Not Establish Class Membership.

Declarants claim that their inability to utilize the Target.com website makes shopping

at Target stores less convenient than they imagine it might otherwise be.  (Altman Decl. ¶¶ 9-

10; Booth Decl. ¶¶ 8, 12; Czarnecki Decl. Supp. ¶¶ 7-9; Jacobson Supp. Decl. ¶¶ 10, 15;

Kresmer Decl. ¶¶ 13-14; Wilson Decl. ¶¶ 13-17.)  They claim that if they were able to

preview products on the Target.com website before visiting a Target store, they believe they

would be "better prepared and more efficient when [they] go to Target's stores" and able "to

shop more self-sufficiently." (Jacobson Supp. Decl. ¶¶ 10, 15.)  As one declarant elaborates:

> Looking up product information on the website beforehand allows me to rely less on customer service personnel.  Instead, I can go to a store knowing exactly what items I want to buy.  Also, I can get more detailed product information and

1

2

more easily get input from friends, so that I end up selecting better products. For example, if I want to buy a set of decorative pillows for my living room, I can use store websites to learn about the size, material, color, design, and price of pillows sold at area stores. Once I narrow down the pillows I like best, I can e-mail a picture of the pillows to my friends to get their opinion about things like whether the colors will match my living room décor.

3

4

5

(Carranza Decl. ¶ 10.)

6

       The declarants' testimony regarding the inconveniences allegedly attributable to the

7

inaccessibility of Target.com do not make them eligible for class membership. Such

8

testimony simply does not establish that the declarants have been "denied access to the

9

enjoyment of goods and services offered in Target stores" and accordingly belong to the class

10

defined by the Court. As discussed in Target Corporation's Reply Memorandum in Support

11

of Its Motion for Summary Judgment at 5-8 (filed April 2, 2007), to "pre-shop" is not to

12

shop, and failed efforts to "pre-shop" cannot give rise to a claim under the ADA. The law

13

does not mandate equal convenience. *See McNeil v. Time Ins. Co.*, 205 F.3d 179, 186-87

14

(5th Cir. 2000); *Pinnock v. Int'l House of Pancakes Franchisee*, 844 F. Supp. 574, 583 (S.D.

15

Cal. 1993); *see also* 28 C.F.R. app. B § 36.201(a) (1992); *Dobard v. San Francisco Bay Area*

16

*Rapid Transit Dist.*, No. C-92-3563-DLJ, 1993 WL 372256, at *3 (N.D. Cal. Sept. 7, 1993)

17

(Jensen, J.) (quoting same). A restaurant owner may make her establishment accessible to

18

those who use wheelchairs by building a ramp that meets certain specifications. It may be

19

less efficient for a wheelchair user to access the restaurant's services using this ramp than it

20

is for other patrons (or than if another imaginable version of a ramp were built—such as one

21

without turns). That fact does not subject the restaurant owner to liability under the ADA or

22

other laws. Likewise, Target is not liable for the inconveniences complained of here. The

23

ADA is not a statute of absolutes. *See, e.g.,* 42 U.S.C. § 12182(b)(2)(A)(ii) (requiring

24

"reasonable modifications"); *Id.* at § 12182(b)(2)(A)(iii) (providing that steps that would

25

26

27

28

result in an "undue burden" need not be taken); *Id.* at § 12182(b)(2)(A)(iv) (requiring

removal of architectural barriers "where readily achievable").[1]

### 3. Speculation About Diverted Purchases Does Not Establish Class Membership.

Declarants also speculate that they do not buy as much from Target as they would if

the website were more accessible.  For example, some declarants:  (1) describe a failed

attempt to find a product on Target.com; (2) state that they were able to find the product on a

competitor's website and that they bought the product from that competitor; and (3) opine

that if they were able to use Target.com to confirm that the product was available at a Target

store at a competitive price, they probably would have purchased the product from Target

instead.  (Frye Decl. ¶ 11; Hideshima Decl. ¶¶ 10-12; Scott Decl. ¶¶ 13-14; Williamson Decl.

¶ 17.)  Such testimony is speculative and rests on a number of unsubstantiated assumptions

(including that the products they sought were among the limited subset of products featured

on Target.com that are sold in Target stores).  More importantly, it does not establish that

Target.com *impeded the declarants' access* to Target stores.  (Order of April 25, 2007, at 8.)

As such, it does not establish that they belong to the class defined by the Court.

### 4. Recitation of Future Desire Does Not Establish Class Membership.

As before, many of the new declarations include near-boilerplate statements that if

the Target.com website were more accessible, the declarant believes he or she would use it in

connection with store visits.  (Booth Decl. ¶ 15; Maneki Decl. ¶¶ 10-11; Marks Decl.¶ 13-14;

---

[1] In many cases declarants have complained that they are being denied access to features that are simply not available on Target.com.  For example, one declarant expresses frustration with not being able to generate from Target.com a list of clothing to try on during a visit to a Target store.  (Booth Decl. ¶ 11.)  However, with the exception of the few clothing items sometimes included in weekly advertisements, it is impossible for a guest using Target.com to determine whether clothing featured on the website is available in Target stores.  (Declaration of Patricia Perry in Support of Target's Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification ("Perry Decl.") ¶ 4)  Similarly, another declarant recounted an unsuccessful attempt to purchase from Target.com "small things, like toilet paper, paper towels." (Paszek Decl. Ex. D at 8:17-9:1.)  But Target.com does not sell toilet paper or paper towels.  (Perry Decl. ¶ 3.)  No one, whether blind or sighted, can use Target.com for these purposes.

1  Williamson Decl. ¶¶ 18-20.)  For example, Joanne Wilson states:  "If Target's website were

2  accessible I would use it often to find information about products before going to the store to

3  purchase them, especially when looking for gifts for my family and friends from the general

4  website or the online gift registry."  (Wilson Decl. ¶ 17.)  Such statements, however, are

5  precisely the sort of "recitation[s] of … future desire" that the Court has already deemed

6  inadequate.  (Order of April 25, 2007, at 8.)

7      Moreover, these recitations often do not withstand scrutiny.  For example, a handful

8  of declarants express an interest in using coupons from Target.com.  (Elder Supp. Decl. ¶ 13;

9  Jacobson Supp. Decl. ¶ 16; Peterkin Supp. Decl. ¶ 13.)  Olga Peterkin's testimony is typical:

10  "I would like to have the opportunity to read and download coupons from the [Target.com]

11  website for use at [Target] stores, and would like to use this feature if it were accessible."

12  (Peterkin Supp. Decl. ¶ 13.)  When asked in deposition whether they ever tried to access

13  coupons on Target.com, Ms. Peterkin and others admitted that they have not.  (Paszek Decl.

14  Ex. B at 75:25-76:3, Ex. D at 11:6-11, Ex. E at 15:5-11.)

15          **B.      The Existence of Absent Class Members Cannot Be Presumed.**

16      On this record, the Court cannot presume that any absent class members, let alone a

17  numerous quantity, exist.  It is Plaintiffs' burden to *prove* that the requirements of Rule 23,

18  including the numerosity requirement, have been met.  *Zinser v. Accufix Research Inst., Inc.*,

19  253 F.3d 1180, 1186, *amended*, 273 F.3d 1266 (9th Cir. 2001).  The declarations filed by

20  Plaintiffs, many by individuals with close ties to the NFB or Plaintiffs' counsel (Booth Decl.

21  ¶ 4; Wilson Decl. ¶ 4; Carranza Decl. ¶ 4; Frye Decl. ¶ 4; Taylor Decl. ¶ 4; Paszek Decl. Ex.

22  A at 14:22-25, Ex. B at 67:21-25.), do not establish that the class defined by the Court has

23  any members.  The same is true of the statistical data submitted by Plaintiffs, and discussed

24  in Target's briefs opposing Plaintiffs' motion for class certification and in Target's motion to

25  strike.  As the court explained in *Celano v. Marriott Int'l, Inc.*, No. C 05-4004 PJH, 2007 WL

26  1149113, at *6 (N.D. Cal. Apr. 18, 2007) (Hamilton, J.), "rank speculation" ostensibly based

27  on statistical or census data does not prove numerosity.

28

### C.    Blind and Visually Impaired Persons Are Able to Use Target.com.

Plaintiffs' failure to present evidence demonstrating the existence of a numerous class can be explained by the simple fact that blind users are perfectly capable of using Target.com.  Several legally blind individuals testified early on in this litigation that they were able to use Target.com successfully.  (Paszek Decl. Exs. M, N, O, P.)  NFB has admitted in its own documents that Target.com is accessible to the blind.  (*Id.* Ex. Q.)  In depositions, declarants likewise admitted to making purchases on Target.com (*Id.* Ex. G at 24:6-21), finding product information on Target.com (*Id.* Ex. E at 6:24-7:11), and using the store-locator feature on Target.com (*Id.* Ex. C at 21:24-22:8).  One declarant also admitted that problems encountered while using JAWS screen-reading software on Target.com went away when he used Windows-Eyes software instead.  (Paszek Ex. G at 23:6-24.)

Internet postings found on the NFB website, responding to counsel's solicitation of testimony, likewise attest to the accessibility of Target.com.  One participant observed:  "I guess they don't want to hear from those of us who can and do use the [Target.com] web site."  (*Id.* Ex. R)  Another commented:  "I've had a look at this site using Safari, which parts are people having problems accessing?  It all looks straight forward to me."  (*Id.* Ex. S.)  Yet another participant said:

> As for the Target web site, I just went there and looked up AT&T and found some cordless phones.  I was able to add one to my shopping cart; but, I chose not to go through the process of building an account and buying the phone . . . .  Some say that Target's site is not accessible while others maintain it is.  Who's to be believed?  . . . I'm not suggesting that the NFB is acting fraudulently, But, I am just curious.

(*Id.* Ex. T.)  Still another reported:  "I looked at Target.com and have seen a lot worse.  I can actually get around."  (*Id.* Ex. U.)

### II.    THE REMAINING REQUIREMENTS OF RULE 23(A) HAVE NOT BEEN SATISFIED.

As this Court is well aware, Rule 23(a) requires more than a showing of numerosity.  As a prerequisite to class certification, Plaintiffs must also demonstrate that "there are questions of law or fact common to the class," "the claims or defenses of the representative

1   parties are typical of the claims or defenses of the class," and "the representative parties will

2   fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

3           Under the circumstances, the requirements of commonality, typicality, and adequacy

4   of representation likewise cannot be satisfied.  Without class members, it is impossible to

5   show that questions of law or fact are common to class members.  Similarly, because none of

6   the named plaintiffs is a member of the class defined by the Court, it cannot be said that the

7   named plaintiffs' claims or defenses are typical.  *See Bates v. United Parcel Service*, 204

8   F.R.D. 440, 446 (N.D. Cal. 2001) ("[t]ypicality requires that named plaintiffs be members of

9   the class they represent").  Finally, as a matter of law, the named plaintiffs cannot fairly and

10  adequately protect the interests of a class to which they do not belong.  *See Amchem Prods.,*

11  *Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

12          **III.    CLASS MEMBERSHIP IS NOT OBJECTIVELY ASCERTAINABLE.**

13          An additional reason why class certification would be improper in this case is that

14  class membership is not ascertainable by objective standards.  It is improper to certify a class

15  whose members can be ascertained only by looking to subjective standards—such as intent

16  or state of mind.  *See DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970);

17  *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003).  Here,

18  membership in the proposed classes cannot be determined by objective, documentary

19  evidence.  Instead, class membership turns on an individual's unverifiable statement that he

20  intended to use Target.com for a particular purpose and was unable to do so.  For this

21  additional reason, class treatment is inappropriate in this case.

22          **IV.     THE PROPOSED DAMAGES SUBCLASS IS NOT CERTIFIABLE**
            **DUE TO THE DECLARANTS' LACK OF INJURY.**
23

24          Finally, the lack of any real injury evident in even this most recent batch of

25  declarations further demonstrates why Plaintiffs' proposed damages subclass cannot be

26  certified.  Counsel's reliance on solicitation to find potential class members, their posting of

27  explanations of the legal theories being advocated, and the ultimate submission of

28  declarations from individuals on NFB's payroll indicates that this is another example of the

1   "'cart before the horse' approach to litigation" that this Court recognized "is not the proper

2   mechanism for the vindication of legal rights." *Bodner v. Oreck Direct, LLC*, C 06-4756-

3   MHP, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007) (Patel, J.).  In a similar vein,

4   courts have used their discretion to deny class certification in cases where a defendant's

5   liability for statutory damages could be substantially disproportionate to the harm suffered by

6   any plaintiff or class member.  *See Spikings v. Cost Plus, Inc.*, CV 06-8125-JFW (AJWx),

7   2007 U.S. Dist. LEXIS 44214, at *9-*16 (C.D. Cal. May 29, 2007) (collecting cases).

8          Indeed, if Rule 23(b)(3) is applied for purposes of this subclass — as it must be for

9   litigation that is driven by a potential damages award — the superiority requirement, among

10  others, plainly cannot be satisfied.  The Court may recall that Target proposed, in March, that

11  the Court proceed first with a test case before deciding whether a class should be certified.

12  Target Corporation's Opposition to Plaintiffs' Motion for Class Certification at 24 (filed

13  March 8, 2007).  If the resources that have so far been consumed with class certification had

14  been used to try a test case, the underlying controversy might have already been put to rest.

15  Here, class certification serves neither the interests of justice nor efficiency.

## CONCLUSION

17         For the foregoing reasons, as well as those set forth in Target's other briefs pertaining

18  to class certification, Plaintiffs' motion for class certification should be denied.

20  Dated:  July 16, 2007             HAROLD J. McELHINNY
                                      MATTHEW I. KREEGER
21                                    KRISTINA PASZEK
                                      MORRISON & FOERSTER LLP

23                                    By: /s/ Matthew I. Kreeger

24                                    Matthew I. Kreeger

25                                    Attorneys for Defendant
                                      TARGET CORPORATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>ECF CERTIFICATION</u>

Pursuant to General Order No. 45, § X.B., the filing attorney attests that she has obtained concurrence regarding the filing of this document from the signatory to this document.

By: <u>/s/  Kristina Paszek</u>
Kristina Paszek