LAURENCE W. PARADIS (California Bar No. 122336)
ROGER N. HELLER (California Bar No. 215348)
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, California 94704
Telephone:   (510) 665-8644
Facsimile:   (510) 665-8511
TTY:         (510) 665-8716

JOSHUA KONECKY (California Bar No. 182897)
RACHEL BRILL (California Bar No. 233294)
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone:   (415) 421-7100
Fax:         (415) 421-7105
TTY:         (415) 421-1655

DANIEL F. GOLDSTEIN (*pro hac vice*)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 1700
Baltimore, MD 21202
Telephone:   (410) 962-1030
Fax:         (410) 385-0869

PETER BLANCK (*pro hac vice*)
900 S. Crouse Ave.
Crouse-Hinds Hall, Suite 300
Syracuse, NY 13244-2130
Telephone:   (315) 443-9703
Fax:         (315) 443-9725

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, the NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, on behalf of their members, and Bruce F. Sexton, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TARGET CORPORATION, <br><br> Defendants. | Case No.: C 06-01802 MHP <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Hearing Date: July 31, 2007 <br> Time: 2:00 PM <br> Judge: The Hon. Marilyn Hall Patel |

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Suppl. Brief in Support of Motion for Class Certification**

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

## INTRODUCTION

Like its initial opposition to class certification, Target's supplemental opposition attacks the merits of Plaintiffs' claims, rehashing the rejected argument that Target violates Title III of the ADA only when it prevents "access to the stores."[1] The Court, however, has specifically found this argument to be "unpersuasive," ruling that the ADA's protection extends to "off-site" discrimination that impedes the full and equal enjoyment of the goods and services in Target stores.[2] There is no dispute that numerous features on target.com enhance the in-store shopping experience for sighted shoppers at Target's retail stores. However, because target.com has been inaccessible, blind people who shop at Target stores have been denied access to those features, and thus have been denied the "full and equal enjoyment of the goods and services offered in Target stores," as documented by the Plaintiffs' supplemental declarations. *Id.* at 956.

In addition to confounding the scope of the ADA's protection, Target fails to recognize that dependence on a clerk is not the equivalent of securing information and accessing features independently, efficiently, and at the time and place of one's choosing before going to the store. Supp. Br. at 3-4. Target proposes a "separate but equal facilitation" standard that would treat a clerk carrying a wheelchair and its user into the store as the equivalent of a ramp. In any event, target.com is a service of Target stores and <u>all</u> services of a public accommodation need to be accessible.[3] Target has offered no legal foundation for its "separate but equal" standard.

Target suggests that the in-store benefits of target.com are so trivial as to satisfy an imagined "inconvenience" exception to the ADA's guarantee of "full and equal enjoyment of the goods, services . . . of any place of public accommodation." 42 U.S.C. § 12182(a). These benefits, however, are not too trivial for Target to offer to sighted shoppers. In fact, Target has designed target.com with many features intended to improve the use and enjoyment of Target stores. Target.com enables sighted shoppers to find out which products are available at their

---

[1] Target Corporation's Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification ("Supp. Br.") at 3.
[2] *NFB v. Target Corp.,* 452 F. Supp.2d 946, 953-55 (N.D. Cal. 2006).
[3] *NFB v. Target Corp.*,452 F. Supp.2d at 953 ("*Stoutenborough,* 59 F.3d at 582-83 (emphasis added)(concluding that Title III covers `*all* of the services which the public accommodation offers'); *Weyer,* 198 F.3d at 1115 (holding that `whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services')").

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opp. to Target's Suppl. Brief in Opp. to Plaintiffs' Motion for Class Certification**

nearest Target store, to obtain information about the products, and to create a printed "shopping list" to expedite their in-store shopping experience. These features, as well as features like coupons, online pharmacy renewal and e-mailing of digital photos for in-store printing, are intended to facilitate and enhance the "in-store" shopping experience. Having created a service for the "convenience" of Target shoppers, the ADA expressly requires that Target extend that same service to customers with disabilities.

The Court directed Plaintiffs to offer supplemental declarations from blind persons whose enjoyment of the goods and services at Target stores have been impeded because of accessibility barriers on target.com. The 34 declarations submitted by Plaintiffs identify with particularity the impact of target.com's inaccessibility on their in-store experiences, including inefficiency, lack of information, time and money lost, and dependence on store clerks, some of whom may be hard to find, uncooperative or unknowledgeable. These declarations fully support the certification of a national ADA class.

## STATEMENT OF FACTS

### A. Target.com is a Service that Benefits Sighted Target Store Shoppers.

Target.com identifies to a sighted shopper products offered for sale at Target stores, and, more particularly, whether a specific product is available at a Target store convenient to the shopper. Altobelli Decl., attached as Ex. 1, at ¶¶ 5-7. For each such product, the sighted shopper can learn not only the brand name and price, but also its dimensions, colors, features, composition and other product details. *Id.* at ¶ 7. Moreover, a sighted visitor to target.com can group and compare items available at Target stores that have a particular feature (e.g., all digital cameras with image stabilization, or toys appropriate for a particular age or gender). *Id.* at ¶¶ 8-9, 11-13. An undecided gift-giver can search for products by the characteristic of the recipient (e.g., "teen girl" or "grandparent") or by occasion (e.g., "housewarming" or "graduation"). *Id.* at ¶ 9. Moreover, having reviewed online products that are on sale at the closest Target store, a sighted shopper can use target.com to create an "in-store shopping list," to bring along to expedite and enhance their shopping experience at the store. *Id.* at ¶ 14. Moreover, a sighted

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opp. to Target's Suppl. Brief in Opp. to Plaintiffs' Motion for Class Certification**

2

shopper can review a friend's baby or wedding registry on target.com and select a gift to purchase at a convenient Target store. *Id.* at ¶ 10.

A sighted store shopper can use these online features to learn about product choices, features and prices to get a better idea in advance of what to purchase. Moreover, one can determine in advance whether to go to the store at all; that is, whether a nearby Target has the desired product at an acceptable price. Also, one can get advance feedback about a contemplated purchase from a friend or relative by e-mailing the page containing the desired item. In all, these online features allow sighted shoppers to shop at Target stores more efficiently and independently, saving them substantial time and money, making them less reliant on Target clerks who may be difficult to locate or may have limited knowledge about products, and making their shopping experiences at Target stores more productive and more enjoyable.

In addition, a sighted Target store shopper, armed with the knowledge of weekly store specials or equipped with online coupons, both of which are posted on target.com, can better decide when to go to Target and for what, and save money as a consequence. Moreover, the sighted shopper who uses Target's online prescription renewal service or online photo order service can reduce waiting time in the store. Target, like its competitors, offers these off-site services because they benefit consumers who wish to shop at their stores.

### B. Target Denies Blind Target Store Shoppers the Benefits of Target.com.

The declarations show that blind shoppers seek the same store-related benefits that Target offers sighted shoppers who first visit target.com, but have been denied those benefits because they have not been able to access target.com. For example, they have not been able to:

- Access information about product selection at Target stores, or product details for products available at Target stores;[4]
- Identify whether products are available at a convenient Target store;[5]
- Find products at a desired price;[6]
- Use the website to shop more efficiently and spend less time in the store;[7]
- Find out what products are on sale at Target stores;[8]
- Locate nearby Target stores;[9]

---

[4] Appx. of Suppl. Decls. at Ex. 1 ¶¶ 7, 17; Ex. 2 ¶ 7, 11; Ex. 3 ¶ 11; Ex. 7 ¶ 9 ; Ex. 8 ¶ 13; Ex. 10 ¶ 11 ; Ex. 13 ¶¶ 12-13 ; Ex. 4 ¶¶ 7, 14.
[5] *Id.* at Ex. 3 ¶ 11; Ex. 4 ¶¶ 13-14; Ex. 6 ¶ 9; Ex. 10 ¶ 11; Ex. 28 ¶ 11; Ex. 31 ¶ 10.
[6] *Id.* at Ex. 7 ¶ 9; Ex. 8 ¶ 13; Ex. 10 ¶ 11 ; Ex. 11 ¶¶ 10-11.
[7] *Id.* at Ex. 2 ¶¶ 11-12 ; Ex. 9 ¶¶ 5-8 ; Ex. 12 ¶¶ 7-12, 15 ; Ex. 13 ¶¶ 9-13.
[8] *Id.* at Ex. 1 ¶ 18; Ex. 2 ¶¶ 7, 11; Ex. 5 ¶¶ 15, 17; Ex. 33 ¶¶ 8, 10; Ex. 12 ¶ 8; Ex. 30 ¶¶ 4-5.

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opp. to Target's Suppl. Brief in Opp. to Plaintiffs' Motion for Class Certification**

3

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

- Develop gift ideas; [10] and
- Access discount coupons for use in Target stores. [11]

As a result, the declarations demonstrate, blind Target shoppers have had to, among other things:

- Purchase products at other stores (i.e., at stores other than Target); [12]
- Shop at stores that are less convenient and cost more to travel to; [13]
- Spend excessive time trying to shop at Target stores or pay for people to help them shop at Target stores; [14]
- Purchase products other than the specific products desired; [15]
- Rely on Target store clerks who were difficult to locate, uninformed, or unhelpful; [16] and
- Depend on others for tasks that adults normally accomplish without assistance. [17]

## ARGUMENT

### I. PLAINTIFFS HAVE PROVEN NUMEROSITY

**A. The Declarants are Members of the Class Defined by the Court.**

The Court has defined the nationwide class as

All legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores.

Order of April 25, 2007, at 6.

Target asserts that this class is limited to those who have been prevented from purchasing goods and services at Target stores. The Court has made it clear, however, that the ADA's protections go beyond physical access, holding that Plaintiffs have stated an ADA claim to the extent they can present evidence of class members who, because of accessibility barriers on target.com, have been denied *the "full and equal enjoyment* of the goods and services" of Target's stores.[18]

---

[9] *Id.* at Ex. 5 ¶ 14.
[10] *Id.* at Ex. 19 ¶ 9; Ex. 1 ¶¶ 11, 17; Ex. 4 ¶¶ 12-15; Ex. 5 ¶¶ 12-13; Ex. 7 ¶ 9, 10; Ex. 12 ¶¶ 10-12; Ex. 28 ¶ 12.
[11] *Id.* at Ex. 33 ¶¶ 8, 10 ; Ex. 2 ¶ 11 ; Ex. 12 ¶ 13 ; Ex. 32 ¶ 13.
[12] *Id.* at Ex. 1 ¶ 17; Ex. 4 ¶¶ 15-16; Ex. 5 ¶¶ 12-13, 16, 1; Ex. 6 ¶ 9; Ex. 7 ¶ 9; Ex. 10 ¶¶ 11-13; Ex. 11 ¶¶ 10-12; Ex. 13 ¶¶ 12-13; Ex. 28 ¶11.
[13] *Id.* at Ex. 2 ¶ 12; Ex. 13 ¶¶ 9-11.
[14] *Id.* at Ex. 2 ¶ 12; Ex. 3 ¶¶ 11-12; Ex. 9 ¶¶ 7- 8; Ex. 12 ¶¶ 12, 15; Ex. 13 ¶ 11.
[15] *Id.* at Ex. 13 ¶ 13; Ex. 7 ¶ 9; Ex. 19 ¶ 9.
[16] *Id.* at Ex. 6 ¶ 9; Ex. 9 ¶¶ 7- 8; Ex. 12 ¶ 15; Ex. 13 ¶ 11.
[17] *Id.* at Ex. 3 ¶¶ 11-12; Ex. 4 ¶¶ 12-16; Ex. 6 ¶ 10; Ex. 7 ¶ 10; Ex. 8 ¶ 13; Ex. 12 ¶ 15 ; Ex. 13 ¶ 11.

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opp. to Target's Suppl. Brief in Opp. to Plaintiffs' Motion for Class Certification**

4

The declarations submitted by Plaintiffs demonstrate injuries consistent with the Court's class definition. For example, Melissa Williamson, mother of five, and Jennifer Wenzel, mother of three, shop with their small children in tow. *See* Appx. of Suppl. Decls. at Ex. 1 ¶¶ 10, 14; Ex. 12 ¶ 8. To keep store visits from being too long, each finds it advantageous to identify online which stores have what products at what price, while the children are otherwise occupied. Then, aided by the information they found online, they shop quickly and efficiently at specific stores, without going from store to store searching for the items they want. *Id.* at Ex. 1 ¶¶ 10-15; Ex. 12 ¶ 8. Target offers sighted shoppers the opportunity to preview online the products that are available at their stores, while a blind parent like Ms. Williamson or Ms. Wenzel must go to a Target store, locate a knowledgeable clerk (if one is present) and rely on that clerk to tell them what is on the shelves, product details, and prices. *Id.* at Ex. 12 ¶ 15. Not only is this process time-consuming, and not only does the blind shopper check her independence at the door, but there is no reason to think that information the clerk provides will be as complete, accurate, or organized as the information available to sighted shoppers on target.com.

Similarly, a sighted person who selects a gift from a friend's gift registry at target.com can buy it at a physical Target store during her lunch hour. By contrast, when Charlotte Czarnecki could not access target.com for that purpose, she nonetheless went to Target on her lunch hour to attempt to buy a gift for a friend who was registered at Target. *Id.* at Ex. 9 ¶ 6-8; Supp. Brief, Paszek Decl., Ex. H at 15. As she testified in deposition, Target first provided her with a clerk who couldn't read the registry and was uncomfortable helping her. *Id.* at 13-14. Eventually, the supervisor supplied a second person who became very overwhelmed

> by the list and asked me what I wanted. But I had no idea what I wanted to get my friend. And I had no idea of the price range of the things on the list. And to stand there or go sit down and read the whole list would have . . . taken a long time. And that wouldn't have been a good idea, both on my time and on her time because I was shopping during my lunch hour. The -- so I decided to pick a category, and even under that category there were a lot of things. And this person didn't seem comfortable reading all of the items. . . .[W]hen you go to Target is that they find you the most --

---

[18] *NFB v. Target Corp.,* 452 F. Supp.2d 946, 953-54 (N.D. Cal. 2006). *See also* April 25, 2007 Memorandum and Order Re Class Certification at 3:21-24, where the court noted: "On September 5, 2006, the court granted in part and denied in part defendant's motion to dismiss. The court reasoned that the inaccessibility of Target.com impeded full and equal enjoyment of goods and services offered in Target stores pursuant to the ADA."

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opp. to Target's Suppl. Brief in Opp. to Plaintiffs' Motion for Class Certification**

5

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

> the first available person to help you. That doesn't mean that this person is a trained reader. It doesn't mean that this person likes to read out loud. It doesn't even mean that this person has even helped a blind or vision impaired person ever before. So for her to read that gift registry list, even a portion of it, she stumbled over the words. And so I just on a whim picked out a couple of soap and lotion holders, just to buy something for my friend. I needed to get it done.

*Id.* Like the product information and other store-related features on target.com, the online gift registry is a service which allows sighted shoppers to shop more efficiently and independently at Target stores. Ms. Czarnecki, because she could not access the gift registry on target.com, did not have full and equal access to the goods and services of Target stores. Had she, like a sighted person, had full access to this off-site service, she could have bought something at the store that she actually wanted to give to her friend.[19]

### B. The Declarants Have Suffered More than "Inconvenience" as a Result of Target's Discrimination.

Target asserts that the declarants have been subjected only to an "inconvenience" as a result of being repeatedly denied access to target.com, but the evidence is to the contrary.[20] Class member Robert Kresmer is a blind rehabilitation teacher whose duties include

> teaching skills to the newly blind that will enable them to lead independent lives. *As part of their training, I teach my students to visit store websites before they shop at the physical store. Learning to use the internet in conjunction with in-store shopping is an important component of their independence.*

*Id.* at Ex. 8 ¶ 9. Ironically, Target's web site forced dependence on Mr. Kresmer, who ultimately had to turn to his wife for help to get product information before making a purchase at a Target store. *Id.* at Ex. 8 ¶ 14.

Class member Carlos Servan explained why independence matters to a blind adult in this context:

> I have mastered many alternative techniques to accomplish otherwise "sight-based" tasks so that I can be a functioning and effective adult, so that the division

---

[19] Appx. of Suppl. Decls. at Ex. 9 at ¶¶ 8, 12. Ms. Czarnecki was one of several declarants who noted either the inferiority of relying on a clerk (apart from the requirement that one must first travel to the store) or the desire not to have to depend on someone else for a task that, if target.com were accessible, a blind person could perform independently. *See, e.g.,* Appx. of Suppl. Decls. at Ex. 6 ¶ 9; Ex. 12 ¶ 15; Ex. 13 ¶ 11; Ex. 15 ¶ 15; Ex. 3 ¶¶ 11-12; Ex. 4 ¶¶ 13-16; Ex. 8 ¶ 13; Ex. 17 ¶ 12; Ex. 31 ¶ 10; and Ex. 32 ¶¶ 11-12; *See also* Paszek Decl., Ex. A at 24:6-25:7. For a similar problem with gift registries, *see* Paszek Decl., Ex. A at 38:7-39:1.

[20] *Id.* at Ex 1 ¶¶ 11-15; Ex. 3 ¶¶ 8, 11-12; Ex. 4 ¶¶ 9-10; Ex. 7 ¶¶ 10-11; Ex. 8 ¶¶ 8, 13; Ex. 5 ¶¶ 9-10; Ex. 13 ¶ 11; Ex. 31 ¶ 10; Ex. 32 ¶¶ 11-12; Ex. 9 ¶ 8; Ex. 12 ¶ 15; Ex. 15 ¶ 15.

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opp. to Target's Suppl. Brief in Opp. to Plaintiffs' Motion for Class Certification**

6

of labor in our family is not determined by my blindness and so that I set a proper example for my children.  Although having to depend on my wife in this instance was not a major event; nonetheless, having used accessible web sites to shop at stores and otherwise, I know of no reason why I should have to sacrifice my independence to be a Target shopper.

*Id.* at Ex. 17 ¶ 12.

In any event, the cases cited by Target do not support an "inconvenience" exception to the equal access mandate of the ADA.[21]  *McNeil v. Time Ins. Co.,* 205 F.3d 179, 187 (5th Cir. 2000) noted that the visual aspects of a tennis match and the aural aspects of a symphony performance will be less accessible, respectively, to the blind and deaf.  There is nothing inherently visual, however, in the description of a toaster that makes the specifications, price, make and model of a toaster inaccessible to a blind person.  Indeed, the blind and the sighted both rely on the same source for this information—words.  *McNeil* declined to "dictate to every business in the country what *types* of goods and services must be offered." *Id.* at 188 (emphasis supplied).  Plaintiffs do not ask the Court to tell Target it must offer a web site with information about store products.  Having decided to offer this type of service, however, Target must make it accessible.

Nowhere does *Pinnock v. IHOP*[22] discuss whether the ADA mandates "equal convenience" as Target claims.  The plaintiff in *Pinnock* sought an accessible bathroom at IHOP, and in the face of IHOP's claim that Title III was unconstitutionally vague, the Court cited the following legislative history:

> [f]ull and equal enjoyment does not encompass the notion that persons with disabilities must achieve the identical result or level of achievement of nondisabled persons, *but does mean that persons with disabilities must be afforded equal opportunity to obtain the same result*.[23]

Plaintiffs embrace this standard.  The blind simply want the opportunity to use a service of Target stores; to wit, target.com.[24]

---

[21] *See Rothman v. Emory Univ.,* 828 F. Supp. 537, 541 (N.D. Ill. 1993) (holding that the need for an additional interview as a result of discrimination, while minor, is actionable injury).
[22] 844 F.Supp. 574 (S.D. Cal. 1993).
[23] *Id.* at 583 (emphasis added).  This statement has been incorporated into the ADA regulations, 28 C.F.R. App. B § 36.201(a) (1992) and was cited in the remaining case relied on by Target, *Dobard v. Bart*, 1993 WL 37225 at ¶ 3 (N.D. Cal. 1993).  *Chuffin v. Kansas State Fair Bd.*, 348 F.3d 850, 861 (10th Cir. 2003)(holding that a violation of the ADA "does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity").
[24] *See, e.g., Martin v. MARTA*, where the Court granted a preliminary injunction requiring MARTA to make its website schedule of transportation accessible, 225 F.Supp. 2d 1362 (N.D.Ga. 2002).  By Target's

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opp. to Target's Suppl. Brief in Opp. to Plaintiffs' Motion for Class Certification**

7

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

### C. Class Members Who Went Elsewhere for their Purchases After Being Unsuccessful on Target.com Are Proper Class Members.

Target incorrectly dismisses as "speculation," testimony from declarants who eventually purchased goods elsewhere. For example, Garrick Scott, impressed by a co-worker's space heater bought at Target, went to target.com to find out whether it was carried by his local Target. Unable to find out, he picked out one he did not want as much from walmart.com, and bought it from his local Wal-Mart.[25] The denial of information was Mr. Scott's injury. It is not speculative that Mr. Scott sought information about in-store availability from a service, target.com, through which Target provides such information to sighted Target shoppers.

Jeff Rios shops regularly at a local Target store. *Id.* at Ex. 33 ¶ 6. Before he shops at other stores, he visits the stores' websites to find specials and print coupons. *Id.* ¶ 8. He has tried unsuccessfully to do so with target.com. *Id.* ¶ 10. Since Mr. Rios did not know what Target's coupons were for or what items were on sale at Target, he could not act on information readily available to others. His injury is not speculative because he lost the opportunity Target offers a sighted person to independently access and use information at a Target store.

### D. Denial of Access and a Continued Desire for Access Establishes Class Membership

Target dismisses frustrated blind shoppers who continue to express a desire to use store-related features at target.com. For example, James Marks would like to make use of target.com to secure information about featured products, get an overall sense of inventory, learn product information and compare prices. *Id.* at Ex. 2 ¶ 7. Like the other declarants, he regularly goes to stores' websites before shopping at the stores. *Id.* At least six times in the last three years, he has gone to target.com to try "to find product information, sale items and coupons, and to compare costs, as I do with other stores, before shopping at Target." *Id.* at ¶ 11. Each time, his attempts to secure that information failed, and he has thus been forced to either shop at far less

---

reasoning, the *Martin* court was wrong because, while the inaccessible website might mean that a blind person would stand all night waiting for the next paratransit van, the inaccessibility of the site was not a barrier to that person actually getting into the van.

[25] Appx. of Suppl. Decls. at Ex. 13 ¶ 13. When Mr. Scott shops he must schedule a van and complete his shopping before the van returns. Accordingly, he goes to websites to be sure the store will have the desired product.

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opp. to Target's Suppl. Brief in Opp. to Plaintiffs' Motion for Class Certification**

8

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

convenient stores whose websites are accessible, or pay an aide to assist him at Target. *Id.* at ¶¶ 12-13.

Target incorrectly presumes that the Court's prior dissatisfaction with boilerplate recitations of a future desire to use target.com somehow means that one cannot be a class member if she desires to use a service of a public accommodation. Supp. Br. at 7. But a wheelchair user who cannot enter his local Target cannot be excluded because there is no proof that he would find anything in the store he wanted to buy. So, too, Mr. Marks and others who have tried and failed to access the coupons on target.com cannot be rejected on the basis that they might not like anything for which there were coupons. Target's blithe rhetoric notwithstanding, the declarants' testimony on this point is not "boilerplate."

### E. There is Ample Evidence that Target.com is not Yet Fully Accessible.

If it were either relevant or true that target.com is now fully accessible, Target would undoubtedly offer competent evidence of the same, perhaps an affidavit from an expert or an employee detailing the various functions of the site and the steps taken to make them accessible. Target has proffered no such evidence. By contrast, multiple class member declarations show that the website continues to be rife with barriers, including evidence of multiple unsuccessful visits to the site, some as recently as last month.[26]

## II. THE REMAINING REQUIREMENTS OF RULE 23(A) HAVE BEEN SATISFIED.

Target argues that there are no class members and therefore Rule 23(a) cannot be satisfied. Supp. Br. at 8-9. It has, of course, set forth a paradigm in which there can be no class members, having asserted that those who were forced to ask for assistance from others to buy a product from a Target store, or went elsewhere, are all outside the class. In fact, each declarant (1) has a convenient Target store where they have shopped; (2) uses retail web sites to get information in preparation for in-store shopping; (3) has tried and failed to use target.com in connection with particular attempts to gain information; and (4) has failed to get information that is offered by that service to sighted in-store shoppers. Moreover, it is clear that the reasons that

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

---

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opp. to Target's Suppl. Brief in Opp. to Plaintiffs' Motion for Class Certification**

9

each declarant could not use target.com stemmed from a common set of factors: the declarants are blind and the website lacked features needed for access by the blind.

## III. THE COURT DEFINED AN OBJECTIVELY ASCERTAINABLE CLASS.

Target asserts that the ADA class for injunctive relief is not ascertainable because it depends on subjective criteria. As this Court ruled in *Macy's*, with respect to a similar class in the face of a similar argument, "[a] class that is defined by the contested practices of the defendant is sufficiently ascertainable."[27] Target's further argument that every class member's claim must be verified by documents, while certainly a magic bullet for all ADA Title III cases, is an extreme view that has no home in the jurisprudence of disability rights law.

## IV. THE PROPOSED DAMAGES SUBCLASS IS INJURED BY THE DENIAL OF ACCESS TO TARGET.COM.

Target's final argument demonstrates why state and federal laws barring discrimination against persons with disabilities continue to be necessary. The worldwide web has become a significant part of mainstream social and economic life and Target uses its website as part of an integrated "bricks and clicks" merchandising operation. Yet one of the leading American retailers deems it inconsequential that it provides the advantages of this web component only to the sighted. Supp. Br. at 10. Target's argument is a reminder that civil rights cases serve an important educative function in addition to vindicating rights.

If Target were seriously attempting to argue that a denial of a service on the basis of disability is not itself a compensable injury under California law, Target would have explored how that could be reconciled with the California Legislature's decision to provide minimum presumed damages for each violation. Instead, it has compared this case and the NFB to two odious cases in which attorneys ginned up litigation through smarmy conduct. *Id.* That comparison is uncalled for and deserves no response.

---

[26] Appx. of Suppl. Decls. at Ex. 19 ¶ 9 (March 2007); Ex. 5 ¶ 14; Ex. 12 ¶¶ 13-14; Ex. 13 ¶ 13; Ex. 32 ¶ 11; Ex. 33 ¶ 10; Pasek Decl., Ex. A at 44-48 (June 18, 2007); Ex. J at 22-25 (June 17, 2007); Ex. H at 16-20.

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.: C 06-01802 MHP**
**Plaintiffs' Opp. to Target's Suppl. Brief in Opp. to Plaintiffs' Motion for Class Certification**

**CONCLUSION**

For the reasons expressed herein, Plaintiffs respectfully request that the Motion for Class Certification be granted.

Respectfully submitted,

DATED:  July 25, 2007

DISABILITY RIGHTS ADVOCATES
SCHNEIDER & WALLACE
BROWN, GOLDSTEIN & LEVY, LLP
PETER BLANCK, J.D., Ph.D.

By:     /s/ Daniel F. Goldstein
          Daniel F. Goldstein
          Attorneys for Plaintiff

---

[27] *Lieber v. Macy's West, Inc.*, No. C96-02955 MHP at 4 (N.D. Cal. Mar. 9, 1998) (order granting class certification).

*National Federation of the Blind, et al. v. Target Corporation*
**Case No.:  C 06-01802 MHP**
**Plaintiffs' Opp. to Target's Suppl. Brief in Opp. to Plaintiffs' Motion for Class Certification**

11

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644