# EXHIBIT A

Dockets.Justia.com

1  HAROLD J. McELHINNY (CA SBN 66781)
   MATTHEW I. KREEGER (CA SBN 153793)
2  KRISTINA PASZEK (CA SBN 226351)
   HMcElhinny@mofo.com
3  MKreeger@mofo.com
   KPaszek@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone: (415) 268-7000
6  Facsimile: (415) 268-7522

7  Attorneys for Defendant
   TARGET CORPORATION

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13  NATIONAL FEDERATION OF THE BLIND,          Case No.    C 06-01802 MHP
    the NATIONAL FEDERATION OF THE
14  BLIND OF CALIFORNIA, on behalf of their    **STATEMENT OF RECENT
    members, and Bruce F. Sexton, on behalf of  DECISION**
15  himself and all others similarly situated,
                                                Judge:   Hon. Marilyn Hall Patel
16                Plaintiffs,

17        v.

18  TARGET CORPORATION,

19                Defendant.

20

21

22

23

24

25

26

27

28

1    Pursuant to Civil Local Rules 7-3(d) and 7-11, Target submits the appended recent

2    decision, *Urhausen v. Longs Drug Stores California, Inc.*, No. A113937,

3    --- Cal. Rptr. 3d ---, 2007 WL 2702927 (Cal. Ct. App. Sept. 18, 2007), regarding the

4    Disabled Persons Act, Cal. Civ. Code § 54 et seq.

5

6    Dated: September 21, 2007              HAROLD J. McELHINNY
                                           MATTHEW I. KREEGER
7                                          KRISTINA PASZEK
                                           MORRISON & FOERSTER LLP
8

9

10                                  By:    /s/Kristina Paszek
                                           Kristina Paszek

11                                         Attorneys for Defendant
                                           TARGET CORPORATION
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Westlaw.

--- Cal.Rptr.3d ----                                                         Page 1

--- Cal.Rptr.3d ----, 2007 WL 2702927 (Cal.App. 1 Dist.)

**(Cite as: --- Cal.Rptr.3d ----)**

Urhausen v. Longs Drug Stores California, Inc.
Cal.App. 1 Dist.,2007.
Only the Westlaw citation is currently available.
Court of Appeal, First District, Division 1, California.
Dianne URHAUSEN, Plaintiff and Appellant,
v.
LONGS DRUG STORES CALIFORNIA, INC. et
al., Defendants and Respondents.
**No. A113937.**

Sept. 18, 2007.

Contra Costa County Superior Court, Hon. Joyce M.
Cram.

Reed Smith, Paul D. Fogel, Dennis Peter Maio;
Hinton, Alfert & Sumner, Peter W. Alfert, Elise R.
Sanguinetti; Gibbons & Conley, Peter A. Urhanetti
for Plaintiff and Appellant Dianne Urhausen.
Archer Norris, W. Eric Blumhardt for Defendant and
Respondent Longs Drug Stores California, Inc.
Haapala, Altura, Thompson & Abern, Steven Sheriff
Abern for Defendants and Respondents David H.
Malcolm & Associates, George Ogino and Patty
Ogino.
MARGULIES, J.
**\*1** Disabled by a neuromuscular condition, plaintiff
Dianne Urhausen has used crutches since early
adolescence. In September 2002, plaintiff drove to a
drugstore run by defendant Longs Drug Stores
California, Inc. (Longs). Plaintiff chose to park in an
ordinary parking space, although there was an
unoccupied parking space reserved for the use of
disabled persons located adjacent to the parking
space she selected. Using her crutches, plaintiff
intended to cross the empty disabled access parking
space, ascend the sidewalk curb in front of that
parking space, and enter the store. When plaintiff was
within inches of the curb, however, she fell and was
injured.

Later measurements determined that the surface of
the disabled access parking space sloped steeply
upward as it approached the curb where plaintiff fell.
This upward slope violated state and federal
regulations governing the configuration of disabled
access parking spaces, which require a level surface.
Contending that the noncompliant slope caused her
fall, plaintiff sought compensation for her injuries on
theories of common law negligence, negligence per

se under the disabled access regulations, and denial
of full and equal access under California's Disabled
Persons Act (DPA) (Civ.Code, § 54 et seq.).[FN1]

> FN1. All statutory references are to the Civil
> Code unless otherwise indicated.

After plaintiff voluntarily dismissed her claims for
common law negligence, the trial court granted
judgment for defendants on her claims for negligence
per se and denial of access. We affirm, concluding
that (1) plaintiff failed to show that she was, in fact,
denied equal access to the Longs store, and (2) the
disabled access regulations governing the slope of
parking spaces were not intended to prevent the type
of accident plaintiff suffered.

**A. _Factual Background_**

As a consequence of a neuromuscular condition,
plaintiff has used crutches for over 30 years. At the
time of the incident underlying this lawsuit, plaintiff
possessed a disabled person parking placard entitling
her to park her vehicle in spaces reserved for the use
of disabled persons. She did not regularly exercise
this privilege, however, because she preferred to
leave such spaces open for wheelchair users and
others with a greater need for the accommodation.

In September 2002, plaintiff drove to an unenclosed
shopping center in Martinez owned by defendants
Patty and George Ogino and managed by defendant
David H. Malcolm & Associates (hereafter jointly
referred to as Malcolm). She parked in front of a
Longs drugstore. The parking space was one of
several located directly in front of the drugstore, all
of which dead-ended against the curb of the sidewalk
that ran along the frontage of the store. Directly in
front of the store entrance were two blue-painted
parking spaces reserved for the disabled. Between
these spaces an aisle had been painted in a cross-
hatched pattern upon the pavement. The aisle led to a
curb cut in front of the store entrance. A short ramp
ran from the bottom of the curb cut, across the
sidewalk, to the doors of the entrance.

**\*2** Although the right-hand disabled access parking
space was not occupied by a vehicle, plaintiff, as was
her habit, chose not to park in that space but took the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----, 2007 WL 2702927 (Cal.App. 1 Dist.)

**(Cite as: --- Cal.Rptr.3d ----)**

ordinary parking space immediately adjoining it. As she emerged from her vehicle, therefore, she was standing in the disabled access space. After lifting her crutches from the vehicle, she headed for the entrance of the drugstore. The direct route from her vehicle to the entrance ran diagonally across the disabled access parking space and over the curb of the sidewalk in front of that space. Plaintiff decided to take this route because it was the shortest available and took her past a trash can that she wanted to use. Despite using crutches, plaintiff was able to step up and over curbs of standard height.

Within eight inches of the curb at the head of the disabled access parking space, before she had begun to step up onto the sidewalk, plaintiff fell backwards. The fall severely fractured her wrist, and she remained on the ground until taken away by ambulance to the hospital.

Although the disabled access parking space appeared to be level, later examination by plaintiff's expert revealed that the pavement sloped sharply upward immediately before it met the curb. In the area of plaintiff's fall, from a distance of eight inches to the curb, the slope was measured as 18.75 percent. The applicable regulations governing disabled access parking spaces permitted a maximum slope of 2 percent in any direction. (Cal.Code Regs., tit. 4, § 1129B.3, subd. 4.) [FN2] Plaintiff contended that this noncompliant slope caused her to fall backward.

> [FN2.] Throughout this litigation, these regulatory provisions are identified as California Code of Regulations, title 24. Title 24, part 2 of the California Code of Regulations is also known as the California Building Code and is published separately under that name.

Plaintiff also presented evidence that the cross-hatched access aisle between the disabled access parking spaces failed to comply with applicable regulations. While applicable federal regulations require the slope of such aisles to be no more than 2 percent (28 C.F.R. § 36, app. A, ¶ 4.6.3 (2006)), a second expert measured the slope of the aisle in front of the Longs store as 6.9 percent.

### B. Procedural Background

Plaintiff filed suit against defendants, alleging in her first amended complaint causes of action for premises liability, common law negligence and negligence per se, and denial of equal access under the DPA. [FN3] Plaintiff sought statutory and treble damages under the DPA, compensatory damages, and attorney fees.

> [FN3.] Plaintiff's husband originally joined as a plaintiff and asserted a claim for loss of consortium, but he dismissed his claims soon after the filing of the first amended complaint.

After a period for discovery, Malcolm moved for summary adjudication of plaintiff's claims of negligence per se and denial of equal access under the DPA, arguing that plaintiff was precluded from recovering on these theories because she did not use the disabled access aisle and curb cut but chose to walk across the disabled parking space and up the curb. The trial court granted the motion as to plaintiff's denial of equal access claim, but the court declined to consider summary adjudication of the claim of negligence per se because that claim was pleaded in the same cause of action as the claim for common law negligence. The court noted, however, that it was " dubious" of plaintiff's claim and suggested that Malcolm challenge the claim in a motion in limine prior to trial. Longs later filed a similar motion for summary adjudication of the DPA claim, but the court denied the motion as untimely.

**\*3** Prior to trial, Malcolm moved in limine to exclude all evidence and argument regarding the claim for negligence per se. Longs joined this motion and filed a motion in limine of its own regarding plaintiff's claim under the DPA. In opposition to the latter motion, plaintiff presented for the first time her evidence that the aisle adjoining the disabled access parking space was not in compliance with applicable regulations and argued that she was denied full and equal access because neither route complied with the DPA. In spite of this new evidence, the trial court granted Longs's motion, ruling that " [t]he condition of the handicap parking stall did not deprive plaintiff of fair and equal access to the premises ... because there was reasonable handicap access provided by the adjacent accessible ramp." The court also granted Malcolm's motion in limine regarding the claim for negligence per se, ruling that the regulation governing the slope of disabled access parking spaces did not establish a pertinent negligence standard because it was intended to regulate access by disabled persons using cars, not persons crossing the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----                                                                  Page 3

--- Cal.Rptr.3d ----, 2007 WL 2702927 (Cal.App. 1 Dist.)

**(Cite as: --- Cal.Rptr.3d ----)**

space on foot.

Plaintiff subsequently dismissed her claims for premises liability and common law negligence. Defendants moved for judgment on the pleadings, arguing that plaintiff's dismissal of these claims, combined with the court's rulings on the motions in limine, left plaintiff no viable claims. Plaintiff opposed by rearguing the court's prior rulings, but she did not disagree that the existing rulings effectively disposed of her case. The trial court granted the motions for judgment on the pleadings.

Plaintiff contends that the trial court erred in granting judgment for defendants on her DPA and negligence per se claims.

### A. The Disabled Persons Act

Plaintiff, whose status as a disabled person is undisputed, contends that she was denied full and equal access to the Longs store because the disabled access parking space and the adjacent aisle did not comply with slope regulations applicable under the DPA. We review the trial court's grant of summary adjudication on this issue de novo. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 453, fn. 3.) [FN4]

> **FN4.** As to Longs, the trial court made this ruling on an in limine motion, followed by a motion for judgment on the pleadings. Review of the latter motion is also de novo. (*Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 127.)

Sections 54 through 55.2 are intended to secure to disabled persons the " same right as the general public to the full and free use" of facilities open to the public. (§ 54, subd. (a).) Section 54.1 states that " [i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, ... and privileges of all common carriers, ... modes of transportation ..., places of public accommodation, ... and other places to which the general public is invited ...." (§ 54.1, subd. (a)(1).) " Full and equal access" is defined by section 54.1 to mean access that complies with the regulations developed under the federal Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12111-12117), or under state statutes, if the latter impose a higher standard. (§ 54.1, subd.

(a)(3).) " Access" refers not only to entry into a building but, more broadly, to the use of all facilities made available for general public use, such as restrooms, parking, and fixtures within a building. (E.g., *Gunther v. Lin* (2006) 144 Cal.App.4th 223, 231;*Botosan v. Paul McNally Realty* (9th Cir.2000) 216 F.3d 827, 835.)

**\*4** Section 54.3 creates a private cause of action for damages under the DPA: " Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2." (§ 54.3, subd. (a).) Section 55 authorizes a private action for injunctive relief to correct violations of the DPA. (§ 55.)

The private cause of action provided by section 54.3 has not been extensively considered by our courts. The leading case is still *Donald v. Cafe Royale, Inc.* (1990) 218 Cal.App.3d 168(*Donald* ). The plaintiff in *Donald,* a wheelchair user, went to a restaurant that provided seating on three levels. The first level contained a bar with a few tables that were only rarely used for dinner service, while the primary dining area was on the remaining two levels, which were accessible only by stairs. (*Id.* at p. 173.)When the plaintiff asked about dinner service, he was told that he could dine at a table near the bar or be lifted up the stairs to a dining level. Unwilling to be lifted, he left the restaurant. (*Id.* at pp. 173-174.)There was no dispute that the restaurant's configuration violated applicable disabled access regulations, which required that 75 percent of tables be accessible. (*Id.* at p. 174.)

In considering the plaintiff's claim for damages as a result of the failure of the restaurant to comply with applicable access regulations, *Donald* held that section 54.3 incorporates what is, in effect, a standing requirement. As the court explained, " [Health and Safety Code section] 19955 et seq., [Government Code section] 4450 et seq. and [Civil Code section]

--- Cal.Rptr.3d ----                                                                                      Page 4

--- Cal.Rptr.3d ----, 2007 WL 2702927 (Cal.App. 1 Dist.)

**(Cite as: --- Cal.Rptr.3d ----)**

54 et seq., taken together, provide for a two-fold procedure.[FN5] A designated public agency or an individual may initiate an action to *enforce compliance* with the handicapped access standards provided for by section 19955 et seq. and section 4450 et seq. [Fn. omitted.] On the other hand, to maintain an action for *damages* pursuant to section 54 et seq. an individual must take the additional step of establishing that he or she was denied equal access on a particular occasion.... For example, let us take a restaurant that is required to have 100 percent of its dining area accessible to the handicapped, but in fact only 90 percent of the dining area meets this standard. If a handicapped individual is readily seated and served in the 90 percent primary dining area which meets all handicap access requirements, then he or she would not have a cause of action for damages for denial or interference with admittance pursuant to Civil Code section 54.3, but an individual or a designated public agency could pursue an action under one of the enforcement provisions to bring about full compliance by the restaurant." (*Donald, supra,* 218 Cal.App.3d at p. 183.) Subsequent cases have recognized this requirement, at least implicitly. (See, e.g., *Hankins v. El Torito Restaurants, Inc.* (1998) 63 Cal.App.4th 510, 521[" [T]he owner of a public accommodation whose violation of a structural access standard results in the denial of access to a handicapped individual is liable under Civil Code section 54 et seq." ]; *Boemio v. Love's Restaurant* (S.D.Cal.1997) 954 F.Supp. 204, 207 [" An individual may initiate an action to enforce compliance with the handicapped access standards. To maintain an action for damages, however, an individual must take the additional step of establishing that he or she was denied equal access on a particular occasion" ].)

FN5.Government Code section 4450 et seq. and Health and Safety Code section 19955 et seq. require newly constructed or renovated public and private buildings to comply with various standards facilitating access by disabled persons.

**\*5** Plaintiff argues that she satisfies this standing requirement because the sudden increase in slope near the curb caused her to fall, thereby preventing her from entering the store. While we recognize that the failure of the parking space to comply with slope requirements was the cause of plaintiff's injury, and therefore a cause of her failure to reach the entrance of the drugstore, we do not believe that this is

sufficient to demonstrate that plaintiff was denied equal access to the store. The phrase " denied equal access" necessarily implies that either the structure of the public facility, or some policy of its operator, precluded equal access. It is undisputed, however, that Longs provided access to its entrance by way of an aisle, curb cut, and ramp installed for the particular use of the disabled. Because this means of access was at all times available for plaintiff's use, she cannot demonstrate that she was denied equal access to the store without demonstrating that this route, too, was inadequate. By her own acknowledgment, however, she was fully capable of negotiating a typical disabled access ramp. It was plaintiff's injury, and not the physical configuration of the store, that prevented plaintiff from entering.[FN6]Accordingly, she was not *denied* equal access to the store; rather, she was *unable* to enter as a result of her fall.

FN6. This situation is therefore distinguishable from the recent case *Madden v. Del Taco, Inc.* (2007) 150 Cal.App.4th 294, in which the plaintiff, a wheelchair user, was unable to use one of two disabled access entrances to a restaurant because the entrance was blocked by a trash container. (*Id.* at pp. 297-298.)At the time, the plaintiff was unaware of the second entrance. (*Id.* at p. 299.)The *Madden* court did not address the issue of denial of access or cite *Donald.*It could be argued, however, that the plaintiff was denied equal access because he was unable to enter through the only disabled accessible entrance known to him.

As an illustration of this distinction, consider a wheelchair user having a wheelchair capable of crossing over typical sidewalk curbs. Because going over curbs is convenient, the user has become accustomed to crossing over them directly, rather than using the curb cuts provided for wheelchair access. If, put in plaintiff's situation, the wheelchair user had approached the curb at Longs, attempted to cross over the curb, and found herself unable to make it up the curb because of the sharp slope of the parking space as it met the curb, she would not have been " denied equal access" to Longs. She could back up the wheelchair, travel across the parking space to the access aisle, and use the curb cut and ramp. Although the user would have been prevented from crossing over the curb because of the failure of the parking space to comply with disabled access

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----                                                        Page 5

--- Cal.Rptr.3d ----, 2007 WL 2702927 (Cal.App. 1 Dist.)

**(Cite as: --- Cal.Rptr.3d ----)**

requirements, she would not have been denied equal access to the store, as required by <u>section 54.3</u>.

The legal implications of this hypothetical would not change if the wheelchair user, in attempting to travel up and over the curb, tipped her wheelchair and was injured. Regardless of the injury, the disabled access route to the entrance would have remained available for her use. It may be that the wheelchair user, as a result of the injury, would not be able to use that route, but she would not be *denied* its use. The injury, and not the configuration of the sidewalk and parking space, would have prevented her from gaining access to Longs. Plaintiff's injury placed her in the same position.

Plaintiff argues that she should be permitted to recover damages because the injury that kept her out of the store was caused by the failure of the parking space to comply with disabled access regulations. The purpose of <u>section 54.3</u>, however, is not to provide a cause of action for disabled persons who have suffered physical injury but to persons who have been denied the same access to public facilities as persons without a disability.[FN7] As noted in *Donald,* " [t]he impediments to the physically handicappeds' interaction in community life is the inequity which <u>section 54 et seq</u>.... seek[s] to prevent." (*Donald, supra,* <u>218 Cal.App.3d at pp. 179-180</u>.)

> [FN7.] This is not to say that disabled access regulations are unconcerned with the safety of the disabled, but this concern is incidental to the primary purpose of providing access to public facilities. Disabled persons who are forced to cope with otherwise inaccessible public facilities risk not only the injustice of a denial of access but also the risk of injury in attempting to achieve access. Similarly, any regulations designed to facilitate access are worthless unless they facilitate *safe* access. In both cases, however, the prevention of injury is only incidental to the provision of access, which remains the primary concern of the statute.

**\*6** If plaintiff had attempted to use the disabled access aisle, curb cut, and ramp and had fallen because these were not in compliance with statutory requirements, she would presumably have a cause of action under the DPA. The cause of action would not arise because plaintiff was injured, however, but

because her fall suggested that the store did not provide safe access for disabled persons, thereby denying them equal access. In that situation, her injury would not be the basis of the cause of action but would be evidence of a lack of equal access. Here, in contrast, plaintiff did not demonstrate that the means for disabled access provided by Longs was unsafe or otherwise unusable by her. Because plaintiff did not demonstrate that she was denied equal access, <u>section 54.3</u> provides no remedy for her injury.[FN8]

> [FN8.] Defendants argue at length, and the trial court ruled, that <u>section 54.3</u> also does not permit the recovery of personal injury damages. Because we hold that plaintiff was not denied equal access under these circumstances, we need not reach the issue of personal injury damages, and we express no opinion on the matter.

Plaintiff argues that, even if she was not denied equal access as a practical matter, she should be deemed to have been denied equal access because neither the parking space nor the cross-hatched access aisle adjoining it satisfied the applicable slope regulations, leaving her with no access route that complied with the DPA.[FN9] The argument is based on <u>section 54.1, subdivision (a)(3)</u>, which defines " full and equal access" to mean access that satisfies state and federal disabled access regulations. Plaintiff argues that because Longs provided no access route fully compliant with the applicable regulations, she was necessarily denied full and equal access pursuant to <u>section 54.1, subdivision (a)(3)</u>.

> [FN9.] As noted above, while federal regulations, which are adopted as a standard by the DPA under <u>section 54.1, subdivision (a)(3)</u>, required the slope of the access aisle to be no more than 2 percent (28 C.F.R. § 36, app. A, ¶ 4.6.3 (2006)), plaintiff's expert submitted evidence that the slope was, in fact, 6.9 percent. While defendants are correct in arguing that the state regulation originally relied on by plaintiff in making this argument was not in effect at the time of her fall, the federal regulation in effect at the time carried the same requirement.

Not every denial of " full and equal access" under <u>section 54.1</u>, however, gives rise to a cause of action for damages under <u>section 54.3</u>. Rather, <u>section 54.3</u>

--- Cal.Rptr.3d ----                                                                   Page 6

--- Cal.Rptr.3d ----, 2007 WL 2702927 (Cal.App. 1 Dist.)

**(Cite as: --- Cal.Rptr.3d ----)**

states that a cause of action for damages arises against a person who " denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2...." *Donald* interpreted this language, not as providing a cause of action for damages in connection with *every* violation of the equal access standards, but as half of a two-part enforcement mechanism under the DPA, which provides for both equitable and monetary relief. (*Donald, supra,* 218 Cal.App.3d at p. 183.) Civil Code section 55, Government Code section 4458, and Health and Safety Code section 19955.5 authorize private and governmental actions for injunctive relief to correct any violation of DPA standards. An equitable action under section 55 carries no standing requirement other than that the plaintiff be a " person who is aggrieved or potentially aggrieved" by the challenged violation. Section 54.3, the second enforcement provision of the DPA, authorizes monetary relief. In contrast to section , section 54.3 imposes the standing requirement that the plaintiff have suffered an actual denial of equal access before any suit for damages can be brought. (*Donald,* at p. 183.)In other words, while virtually any disabled person can bring an action to compel compliance with the DPA under section 55, a plaintiff cannot recover damages under section 54.3 unless the violation actually denied him or her equal access to some public facility.

**\*7** Plaintiff's attempt to equate a denial of equal access with the presence of a violation of federal or state regulations would nullify the standing requirement of section 54.3, since any disabled person could sue for statutory damages whenever he or she encountered noncompliant facilities, regardless of whether that lack of compliance actually impaired the plaintiff's access to those facilities. Plaintiff's argument would thereby eliminate any distinction between a cause of action for equitable relief under section 55 and a cause of action for damages under section 54.3, in contravention of the long-standing rule of *Donald.*

Plaintiff therefore had the burden of demonstrating that the failure of the access aisle to comply with applicable regulations denied her equal access to Longs. Putting aside her injury, plaintiff makes no attempt to argue that the lack of compliance would, in fact, have prevented her from reaching the entrance to the store. She was able to cross the

parking space itself, which had an overall slope similar to that of the access aisle, without difficulty. It was only when she encountered the more extreme slope within inches of the curb that she fell. Further, the claimed 6.9 percent slope of the access aisle is less than the 8.3 percent maximum allowed for disabled access ramps generally under California regulations (Cal.Code Regs., tit. 24, § 1003.3.4.3), and plaintiff testified at her deposition that she had no difficulty with typical access ramps. In spite of the failure of the access aisle to satisfy applicable regulations, there is no reason to believe that plaintiff would, as a matter of fact, have been unable to reach the entrance of Longs had she taken the prescribed route.[FN10]

> FN10. Plaintiff also argues that the DPA " did not allow [defendants] to compel her to use the ' handicapped-accessible' aisle ." Certainly this is true, but there is no evidence that defendants compelled plaintiff to use this route. On the contrary, plaintiff was free to use any route into Longs that she chose. In order to state a claim under the DPA, however, she was required to show that she was unable to gain equal access to the store. Because the disabled accessible aisle existed, plaintiff was required to demonstrate that it was inadequate to state a claim under the DPA.

**B.** *Negligence Per Se*

Plaintiff argues that she should have been permitted to use the disabled access parking slope regulation as the applicable standard for negligence under the doctrine of negligence per se because the regulation was promulgated for the protection of disabled persons in accessing public facilities.

Although there was no dispute, at least on the motions for judgment on the pleadings, that the disabled accessible parking space did not satisfy applicable slope regulations, " [n]ot every infraction of a statute will result in civil liability." (*Nunneley v. Edgar Hotel* (1950) 36 Cal.2d 493, 497(*Nunneley* ).) It is the purpose of the doctrine of negligence per se to define those situations in which the failure to comply with a statutory requirement will be presumed to be actionable negligence. (*Spates v. Dameron Hospital Assn.* (2003) 114 Cal.App .4th 208, 218.) Stated generally, the doctrine holds that " ' a presumption of negligence arises from the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute.' " (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 938.)

**\*8** The doctrine is codified in Evidence Code section 669, subdivision (a), which states: " The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." The first two of these requirements are issues of fact, while the second two are issues of law. (*Lua v. Southern Pacific Transportation Co.* (1992) 6 Cal.App.4th 1897, 1901-1902.)

For purposes of the trial court's ruling, neither defendants' violation of the regulation nor the causal connection between the violation and plaintiff's fall was disputed. Rather, the parties differed as to the purpose of the regulation under the third and fourth statutory requirements. Because these are issues of law, we review the trial court's decision de novo. (*In re Javier G.* (2006) 137 Cal.App.4th 453, 459.)

There are innumerable cases illustrating the application of these requirements. An example cited by defendants is *Nunneley, supra,* 36 Cal.2d 493. In *Nunneley,* the plaintiff and a companion, a guest at the defendant hotel, walked onto its roof. They came to a mattress that appeared to be resting on a raised platform. In fact, the mattress was lying atop a low parapet that surrounded the opening of a two-story air shaft. When the plaintiff sat on the mattress, it collapsed into the air shaft, taking him with it. (*Id.* at pp. 494-495.)

The plaintiff sued the hotel, contending that it was guilty of negligence per se because the parapet surrounding the air shaft, on which the mattress rested, was only 27 inches high, rather than the 30 inches required by state statute. The court concluded that the plaintiff was part of the class of persons for whose benefit the statute was enacted, since it was intended to protect visitors to the hotel. (*Nunneley,*

*supra,* 36 Cal.2d at p. 497.) It nonetheless refused to permit use of the doctrine of negligence per se, concluding that the regulation was not enacted to prevent the type of the accident that happened. The height regulation, the court held, was intended to prevent visitors from walking or stumbling into the shaft, not inadvertently sitting atop it. " Upon no reasonable theory may it be said that the legislation was designed to guard one from the danger of falling into a shaft by reason of sitting upon the parapet. A wall 30 inches in height presents no more obstacle to sitting upon it than one three inches lower." (*Id.* at p. 498.)As in *Nunneley,* our task is to determine the purpose of the parking space slope regulation.

The violated state slope regulation, California Code of Regulations, title 24, section 1129B.3, subdivision 4, is part of a chapter governing " accessible parking." That chapter prescribes the configuration for disabled access parking spaces, requiring that they have specific dimensions and be accompanied by a " loading and unloading access aisle on the passenger side of the vehicle" which connects to " [p]edestrian ways which are accessible to persons with disabilities ..., including curb cuts or ramps as needed." (Cal.Code Regs., tit. 24, § 1129B.3, subds. 1 & 3.) The interpretive manual for the regulations makes clear that the purpose of the specified configuration is to accommodate persons transferring from a vehicle to a wheelchair, particularly when using a van with a side lift. (California State Accessibility Standards, Interpretive Manual (3d ed.1989) § 7102(c), pp. 127-128.) The parallel federal regulations, containing essentially the same requirements, similarly explain that this configuration is specially designed to accommodate disabled persons using " vans with side-mounted lifts or ramps." (28 C.F.R. § 36, app. A, ¶ A4.6.3 .) The federal regulations explain that the strict slope requirement is imposed to further this purpose: " An essential consideration for any design is having the access aisle level with the parking space. Since a person with a disability, using a lift or ramp, must maneuver within the access aisle, the aisle cannot include a ramp or sloped area." (*Ibid.*)

**\*9** The regulation restricting parking spaces and access aisles to no more than a 2 percent slope is much stricter than the regulation governing typical disabled access ramps, which are permitted a slope of up to 8.3 percent. (Cal.Code Regs., tit. 24, § 1003.3.4.3.)Therefore, restricting the slope to 2 percent is not necessary to permit transit by disabled

--- Cal.Rptr.3d ----                                                                 Page 8

--- Cal.Rptr.3d ----, 2007 WL 2702927 (Cal.App. 1 Dist.)

**(Cite as: --- Cal.Rptr.3d ----)**

persons across the space or up the aisle. Rather, as the above discussion suggests, this strict requirement is imposed to facilitate the transition of disabled persons from their vehicles to the pavement. As such, the regulations anticipate that a disabled person arriving by car will park the car in the marked space and exit to the side, using the access aisle, curb cut, and ramp to enter the store. While the requirement of an essentially level surface undoubtedly eases the transition even for the ambulatory disabled, such as plaintiff, it was particularly intended to accommodate wheelchair users, who require a level surface on which to rest a lift or ramp. The level surface is therefore intended to facilitate the use of mechanized means of vehicle entry and exit and minimize the accidents that a greater slope or irregular surface might cause, such as a loss of balance or unintended movement of a wheelchair.

Given this intent, we conclude that, for at least two reasons, the slope regulation was not designed to prevent the type of accident suffered by plaintiff. First, the regulations were not designed to prevent injury to persons crossing the parking space or curb on foot. As noted above, the regulations anticipate that disabled persons will use the aisle, curb cut, and ramp to enter the store, not that they will step up onto the curb. Necessarily, the regulations anticipate that when the parking space is being used by a disabled person, a vehicle will be parked there, preventing persons from stepping onto the curb. Second, the requirement of a level surface was designed primarily to facilitate the use of wheelchairs and mechanized loading devices, not to make it easier to cross the parking space or aisle. As the considerably steeper access ramp slope requirement demonstrates, it is not necessary to impose a 2 percent slope to allow disabled persons to cross the parking space and aisle.

Plaintiff argues that slope regulations generally are intended " to prevent disabled persons from falling." While this is certainly true, it both overstates the purpose of this particular slope regulation and misses the significance of vehicles with mechanized lifts or ramps. As explained above, the parking space regulations of which this slope regulation was a part were intended to ensure that disabled persons, and particularly wheelchair users, would have a conveniently located parking space configured to permit safe and unencumbered entry into and exit from their vehicle. Thus, to the extent these regulations were intended to prevent falls, they were directed at falls by persons getting into and out of

their vehicles. There is nothing to suggest that the regulations were designed to prevent falls by, or even to affect, persons crossing an empty parking space on foot.

**\*10** The fact that the levelness of an empty disabled accessible parking space might, as plaintiff argues, " welcome[ ] a disabled person, whether in a wheelchair or ... on crutches" to cross does not mean that this was the *intent* of the regulations. It is entirely foreseeable, of course, that a person, including a disabled person using crutches, would cross the empty parking space and mount the curb. It has been held repeatedly, however, that a regulation will not be found to have been *intended* to prevent a particular accident merely because compliance with the regulation would foreseeably have prevented the accident.

An illustrative case is *Lua v. Southern Pacific Transportation Co., supra,* 6 Cal.App.4th 1897. In *Lua,* the plaintiff pedestrian found his way blocked by a train stopped at a railroad crossing. He waited for over 10 minutes for the train to move before he lost patience and attempted to cross over the standing train. When it moved suddenly, he was injured. (*Id.* at p.1900 .) The plaintiff sought to establish the negligence of the defendant railroad by relying on a Public Utilities Commission (PUC) order that prohibited railroads from blocking a rail crossing with a stopped train for more than 10 minutes at a time. (*Id.* at p.1901.) Although it seems entirely foreseeable that an impatient pedestrian might attempt to cross over a standing train that blocked a crossing for more than 10 minutes, the court refused to permit reliance on the regulation under a theory of negligence per se. Reviewing the order, the court concluded that its purpose was to avoid traffic tie-ups, rather than to protect the safety of passing pedestrians. Accordingly, the court held, the plaintiff's accident was not one the PUC order was designed to prevent. (*Id.* at pp.1902-1903; see similarly *Atkins v. Bisigier* (1971) 16 Cal.App.3d 414, 421-422.) So here, while it was foreseeable that a level surface might prevent plaintiff's type of fall, the purpose of this regulation was not to prevent such falls but to provide a secure platform for the disabled to enter and exit their vehicles.

Accordingly, plaintiff's claim for negligence per se under Evidence Code section 669, subdivision (a) fails because her injury did not " result[ ] from an occurrence of the nature which the statute, ordinance,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----, 2007 WL 2702927 (Cal.App. 1 Dist.)

**(Cite as: --- Cal.Rptr.3d ----)**

or regulation was designed to prevent." (Evid.Code, §
669, subd. (a)(3).) Because a plaintiff must satisfy all
four of the criteria of section 669 in order to assert
negligence per se, we need not decide whether she
was of the class of persons the statute was intended to
protect.

The trial court's judgment is affirmed.

We concur: STEIN, Acting P.J., and SWAGER, J.
Cal.App. 1 Dist.,2007.
Urhausen v. Longs Drug Stores California, Inc.
--- Cal.Rptr.3d ----, 2007 WL 2702927 (Cal.App. 1
Dist.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.