

1

2

3

4

5

6                              UNITED STATES DISTRICT COURT

7

8                             NORTHERN DISTRICT OF CALIFORNIA

9   NATIONAL FEDERATION OF THE BLIND,
    the NATIONAL FEDERATION OF THE BLIND OF
10  CALIFORNIA, on behalf of their members, and          No. C 06-1802 MHP
    BRUCE F. SEXTON, on behalf of himself and all
11  others similarly situated,                           **MEMORANDUM & ORDER**
12                                                        **Re: Plaintiffs' Motion for Class**
                        Plaintiffs,                       **Certification and Motion to Bifurcate;**
13                                                        **Defendant's Motion for Summary**
                                                          **Judgment**
14         v.

15  TARGET CORPORATION,

16                      Defendant.

17  _____/

18

19

20        Plaintiffs National Federation of the Blind ("NFB"), National Federation of the Blind of

21  California ("NFB-CA"), Bruce Sexton, and all those similarly situated, filed this action against

22  Target Corporation ("Target"), seeking declaratory, injunctive and monetary relief.  Plaintiffs claim

23  that Target.com is inaccessible to the blind, and thereby violates federal and state laws prohibiting

24  discrimination against the disabled.  Now before the court is plaintiffs' motion for class certification

25  and motion for bifurcation; defendant's motion for summary judgment and the parties' supplemental

26  briefing on the state law claims.  Having considered the parties' arguments and submissions, and for

27  the reasons set forth below, the court enters the following memorandum and order.

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

BACKGROUND[1]

I.    Parties

Plaintiffs NFB and NFB-CA are non-profit organizations.  NFB is a nationwide organization with a 50,000 strong membership, composed primarily of blind individuals.  NFB-CA is the California affiliate of NFB.  The purpose of NFB is to promote the general welfare of the blind by (1) assisting the blind in their efforts to integrate themselves into society on terms of equality and (2) removing barriers and changing social attitudes, stereotypes and mistaken beliefs that sighted and blind persons hold concerning the limitations created by blindness and that result in the denial of opportunity to blind persons in virtually every sphere of life.  These organizations have brought suit on their own behalf and on behalf of their members.

Plaintiff Sexton is a member of the NFB and the NFB of California.  He is legally blind and uses JAWS screen reading software to access the internet.  Sexton Apr. 12, 2006 Dec. ¶¶ 2, 13. Sexton relies on the internet for a variety of functions and frequently uses the internet in order to "research products, compare prices, and make decisions about purchasing goods in the stores' physical locations." Id. ¶ 16.  He has attempted to use Target.com with his screen reader on "numerous occasions" but has been unable to access certain features of the website.  Id. at ¶ 32.

Defendant Target operates approximately 1,400 retail stores nationwide, including 205 stores in California.  Target.com is a website owned and operated by Target.  By visiting Target.com, customers can purchase many of the items available in Target stores.  Target.com also allows a customer to perform functions related to Target stores.  For example, through Target.com, a customer can access information on store locations and hours, refill a prescription or order photo prints for pick-up at a store, and print coupons to redeem at a store.


II.    Background

Plaintiffs allege that Target.com is not accessible to blind individuals.  According to plaintiffs, designing a website to be accessible to the blind is technologically simple and not economically prohibitive.  Protocols for designing an accessible internet site rely heavily on "alternative text":  invisible code embedded beneath graphics.  A blind individual can use screen

2

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  reader software, which vocalizes the alternative text and describes the content of the webpage.

2  Similarly, if the screen reader can read the navigation links, then a blind individual can navigate the

3  site with a keyboard instead of a mouse.  Plaintiffs allege that Target.com lacks these features that

4  would enable the blind to use Target.com.  Since the blind cannot use Target.com, they are denied

5  full and equal access to Target stores, according to plaintiffs.

6

7  III.    Procedural History

8       On February 7, 2006 plaintiffs filed this action in Superior Court of California for the County

9  of Alameda.  On March 9, 2006 defendant removed the case to federal court and subsequently filed a

10  motion to dismiss the complaint for failure to state a claim.  In its motion, defendant claimed that

11  each of the anti-discrimination laws protecting the disabled—the Americans with Disabilities Act,

12  42 U.S.C. section 12182, ("ADA"), Unruh Civil Rights Act, Cal. Civ. Code section 51 ("Unruh

13  Act"), and the Disabled Persons Act, Cal. Civ. Code section 54.1 ("DPA")—cover access to

14  physical spaces only.  Since Target.com is not a physical space, defendant asserted that the

15  complaint does not state a claim under these laws.  On September 5, 2006 the court granted in part

16  and denied in part defendant's motion to dismiss.  The court reasoned that the inaccessibility of

17  Target.com impeded full and equal enjoyment of goods and services offered in Target stores

18  pursuant to the ADA.  Thus, the court dismissed plaintiffs' claims to the extent that they are based

19  on Target.com features that are unconnected to the stores.  The court also denied the motion to

20  dismiss plaintiffs' state law claims.  At the same time, the court denied plaintiffs' request for a

21  preliminary injunction as premature.

22       Plaintiffs filed the instant motion for class certification on February 1, 2007.  On March 8,

23  2007 defendant filed a motion for summary judgment on the grounds that plaintiff Sexton has not

24  suffered a cognizable injury under the ADA.  The court held an initial hearing on these matters on

25  April 12, 2007.  At the hearing, the court requested supplemental briefing on the reach of the

26  relevant state statutes before ruling on the class certification motion as it related to the California

27  subclass.  Following the hearing, the court issued an order on the motion for class certification on

28  April 25, 2007.  In its order, the court narrowed the proposed class definition for the nationwide

3

UNITED STATES DISTRICT COURT
For the Northern District of California

class to include the nexus requirement from its earlier order.  Accordingly, the nationwide class consists of all legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores.  Subsequently, the parties submitted supplemental briefing on whether the DPA and the Unruh Act apply to websites.  Plaintiffs also submitted supplemental declarations of class members in accordance with the court's April 25, 2007 order.  Both parties submitted additional briefing on the class certification issues.

IV.    Recent Modifications to Target.com

        After the filing of the present complaint, Target undertook certain modifications of its website to make it more accessible to the blind.  In response to this litigation, Target began drafting Online Assistive Technology Guidelines based on plaintiffs' expert report.  Nemoir Dep. at 21:18–22:5.

LEGAL STANDARD

I.    Motion for Class Certification

        A party seeking to certify a class must satisfy the four prerequisites enumerated in Rule 23(a), as well as at least one of the requirements of Rule 23(b).  Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e., typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (i.e., adequacy of representation).  Fed. R. Civ. P. 23(a).  In addition to satisfying these prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2) or (3).  See Rule 23(b); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).  Rule 23(b)(2) permits class actions for declaratory or injunctive relief where the party opposing the class "has acted or refused to act on grounds generally applicable to the class." Rule 23(b)(2).

4

UNITED STATES DISTRICT COURT
For the Northern District of California

The party seeking class certification bears the burden of establishing that the requirements of Rules 23(a) and 23(b) have been met.  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1188 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001); Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  However, in adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied.  See Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976).  The merits of the class members' substantive claims are generally irrelevant to this inquiry.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78 (1974); Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).

II.    Motion for Summary Judgment

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving party's allegations.  Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994).  The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion.  Masson v. New

1    Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

2         The moving party may "move with or without supporting affidavits for a summary judgment

3    in the party's favor upon all [claims] or any part thereof." Fed. R. Civ. P. 56(a).  "Supporting and

4    opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be

5    admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the

6    matters stated therein."  Fed. R. Civ. P. 56(e).

7

8    DISCUSSION

9    I.    Motion for Class Certification

10         Plaintiffs seek certification of a nationwide class for claims arising under the Americans with

11   Disabilities Act, 42 U.S.C. sections 12101 et seq. and a California sub-class for violations of the

12   Unruh Civil Rights Act, California Civil Code sections 51 et seq. and the Disabled Persons Act,

13   California Civil Code sections 42 et seq.  In its April 27, 2007 order the court defined the proposed

14   nationwide class as follows:

15        All legally blind individuals in the United States who have attempted to access Target.com
          and as a result have been denied access to the enjoyment of goods and services offered in
16        Target stores.

17   In that order, the court did not address the proposed class definition for the California sub-class.

18   Plaintiffs have proposed the following definition for the sub-class:

19        All legally blind individuals in California who have attempted to access Target.com, for
          plaintiffs' claims arising under the California Unruh Civil Rights Act, California Civil Code
20        §§ 51 et seq. and the Disabled Persons Act, California Civil Code §§ 54 et seq.

21   They ask the court to certify their claims for damages as well as injunctive relief under Rule

22   23(b)(2).  Finally, they ask that Sexton be appointed as class representative and that Disability

23   Rights Advocates, Schneider & Wallace, Brown, Goldstein, Levy, LLP, and Dr. Peter Blanck be

24   appointed as class counsel.  Before addressing the requirements for certifying a class under Rule 23,

25   the court must first address a number of preliminary issues.

26

27        A.    Jurisdictional Issues

28         In various parts of its submissions, defendant raises both standing and mootness challenges

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1    to the proposed class action.  Target argues that the organizational plaintiffs do not have standing to

2    pursue the proposed class action.  In addition, Target contends that certain accessibility

3    modifications to the website have rendered plaintiffs' claims moot.

4              1.    <u>Standing</u>

5         NFB and NFB-CA are proper parties to the instant action.  While not raising an explicit

6    standing challenge, Target argues that these two organizational plaintiffs are not members of the

7    putative class according to the proposed class definition, which includes only blind "individuals."

8    However, NFB and NFB-CA are parties to the complaint individually as well as on behalf of their

9    members.  Lack of membership in the class does not defeat standing independent of a class nor can

10   the court contemplate any reason why the exclusion of the organizational plaintiffs from the class

11   definition is relevant.

12        Target further questions whether NFB and NFB-CA have demonstrated injury in their own

13   right, presumably for the purposes of organizational standing.  Def.'s Opp. at 5.  Even if the

14   organization has not suffered injury to itself, it may have standing to assert the rights of its members.

15   <u>Warth v. Seldin</u>, 422 U.S. 490, 511 (1975).  Therefore, these organizations need not prove injury to

16   themselves.

17        If an organization has not suffered injury to itself, it may have standing to assert the rights of

18   its members if (1) its members would have standing to sue on their own; (2) the interests it seeks to

19   protect are germane to its purpose; and (3) its claim and requested relief do not require participation

20   by individual members.  <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333, 343 (1977).

21   Plaintiffs have submitted declarations from members of both NFB and NFB-CA that demonstrate

22   that their members meet the requirements of standing: injury-in-fact, causation, and redressability.

23   <u>See, e.g.</u>, Sexton Dec. ¶ 33.  Sexton is a member of both organizations.  <u>Id.</u> ¶ 6–7.  In his declaration,

24   Sexton describes his thwarted attempts to use Target.com to browse for products found in the Target

25   stores.  <u>Id.</u> ¶ 33.  He also describes his intention to use the website to search store-related weekly

26   specials and other features of the website.  <u>Id.</u>  He states that he is unable to do so because of website

27   accessibility barriers.  <u>Id.</u> ¶ 32; <u>see also</u> Jacobson Dec. ¶ 20.  For the purposes of the injury-in-fact

28   requirement, Sexton has demonstrated that he faces a concrete and particularized injury that is not

UNITED STATES DISTRICT COURT
For the Northern District of California

1    conjectural.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc., 528 U.S. 167, 181 (2000).  The

2    accessibility barriers—lack of alt tags, keyboard accessibility, and headers—are traceable to the

3    conduct of the defendant.  Moreover, Sexton's claims can be redressed by the equitable relief

4    sought. Id.  The court concludes that Sexton has satisfied the Article III standing requirements, and,

5    therefore, NFB and NFB-CA may properly base their representational standing claim on Sexton's

6    standing.

7          Moreover, the instant action and requested relief is germane to the organizational plaintiffs'

8    purposes in protecting the interests of the blind.  FAC ¶¶ 8–9.   Finally, these two plaintiffs seek

9    injunctive relief, which would not require the participation of individual members.  The court,

10   therefore, finds that NFB and NFB-CA have standing as representatives of their members to pursue

11   their claims for injunctive relief both independently and as part of the class and subclass alleged.

12         Target argues that the two organizational plaintiffs do not have standing to pursue damages

13   on behalf of the California subclass.  Certainly, it is unlikely, if not impossible, that organizational

14   plaintiffs would have standing to pursue damages claims because the form of relief necessarily

15   requires the participation of the individual members.  See Bano v. Union Carbide Corp., 361 F.3d

16   696, 714 (2d Cir. 2004) (observing that no federal appellate body had held that an "association has

17   standing to pursue damages claims on behalf of its members").  However, the court need not reach

18   this issue because Sexton has standing to pursue damages claims on behalf of the California

19   subclass.  The parties do not dispute that the organizational plaintiffs have standing to pursue the

20   equitable relief sought by them independently and for the class.

21              2.    Mootness

22         Target points to several accessibility improvements on its website, which it made subsequent

23   to the filing of the instant complaint, to argue that plaintiffs' claims are moot.[2]  In response to the

24   accessibility report of plaintiffs' expert, Target has made certain modifications to its website.

25   Indeed, plaintiffs' expert concedes that the modifications have increased accessibility for the blind.

26   See Thatcher July 7, 2006 Dec.¶ 3 (remarking that the changes at Target.com have made it "more

27   likely that a blind user could complete a transaction").  Target does not assert that all of plaintiffs'

28   accessibility claims have been addressed by the recent modifications, and even the most favorable

8

UNITED STATES DISTRICT COURT
For the Northern District of California

1   understanding of these modifications would suggest that only one aspect of the claims has been fully

2   addressed: keyboard accessibility.  Moreover, the continuous addition of new pages to Target.com

3   argues against a mootness finding.  Aside from the incompleteness of the modifications and the

4   potential for new pages, it is well-settled law that "voluntary cessation of allegedly illegal conduct . .

5   . does not make the case moot."  DeFunis v. Odegaard, 416 U.S. 312, 318 (1974) (citation and

6   quotation omitted).  Therefore, the court rejects the argument that the post-filing modifications to

7   Target.com render plaintiffs' claims moot.

8

9           B.      Proposed Class Definitions

10          Target argues that two deficiencies in the proposed class definitions militate against

11  certification.  First, it argues that the proposed definitions are overbroad, because they include

12  claims that the court dismissed in its previous order.  Second, it contends that the proposed

13  definitions are not adequately defined or ascertainable.  Having addressed both issues in its previous

14  class certification order, the court need not consider those here.

15

16          C.      Supplemental Declarations

17          Target contends that plaintiffs' efforts to certify a class must fail because all of the putative

18  class member declarants were able to access the goods and services of Target stores.  The court has

19  examined each of the thirty-four supplemental declarations submitted by plaintiffs in response to the

20  court's previous class certification order.

21          Styled as a challenge to class certification, Target's argument addresses the merits of whether

22  plaintiffs have suffered an injury under the ADA's requirement of "full and equal enjoyment of the

23  goods [and] services . . . of any place of public accommodation."  42 U.S.C. § 12182(a).  This

24  dispute is dangerously close to asking the court to make a preliminary inquiry into the merits of

25  plaintiffs' claims in determining whether to certify a class.  See Eisen v. Carlisle & Jacquelin, 417

26  U.S. 156, 177 (1974).  Alternatively, Target's position sounds as a standing challenge.  Neither view

27  is persuasive.

28          A preliminary inquiry into the merits of plaintiffs' claims at the class certification stage is

UNITED STATES DISTRICT COURT
For the Northern District of California

1    inappropriate. Id. The court may only scrutinize plaintiffs' legal causes of action to determine

2    whether they are suitable for resolution on a class-wide basis. See, e.g., Moore v. Hughes

3    Helicopters, Inc. 708 F.2d 475, 480 (9th Cir. 1983). This inquiry requires the court to accept the

4    substantive allegations contained in plaintiffs' complaint as true and analyze only whether the

5    asserted claims or defenses are susceptible of resolution on a class-wide basis. See McCarthy v.

6    Kleindienst, 741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984). Target asks the court to determine which of

7    plaintiffs' alleged injuries constitute a denial of access to the stores for the purposes of the ADA; in

8    essence, this would require the court to make a liability determination at this stage. The court

9    declines to decide, at the class certification stage, which of the declarants' purported injuries

10   constitute violations of the ADA. Those questions reach the ultimate merits of this action.

11       Rather, the court has reviewed each of the supplementary declarations to determine whether

12   the putative class members meet the class definition. The court is satisfied that many of the putative

13   class members have alleged that they were denied access to the enjoyment of goods and services

14   offered in Target stores as a result of their inability to access Target.com. The declarations present

15   two types of alleged access problems: diverted purchases and in-store barriers.

16       Some of the putative class members were deterred from going to Target stores after their

17   experiences with the website. See, e.g., Williamson Dec. ¶ 17 ("I was not able to locate any

18   products or access any product descriptions. . . . I gave up . . . and ended up finding the video game I

19   was looking for on Wal-Mart's website and purchased the game from our local Wal-Mart store");

20   Carranza Dec. ¶ 12 ("I tried, without success, to use Target's website before shopping at my local

21   Target store. . . . The layout of the website was extremely confusing and large portions of

22   information appeared to be missing. So, I went to [another] store's website instead. I easily selected

23   a gift from that store's online registry and a friend of mine purchased it from the local store.").

24   Target dismisses these diverted purchases as speculative, depending on a number of unsubstantiated

25   assumptions about the availability of products in the stores. Certainly, products listed on a gift

26   registry, like the one Ms. Carranza attempted to access, are expected to be available in the stores; her

27   diverted purchase was not based solely on speculation. See Carranza Dec. ¶ 12. Moreover, Target's

28   argument based on the speculative purchases would defeat most ADA claims. There is no

10

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   requirement that a plaintiff who encounters physical accessibility barriers—such as a wheelchair

2   user who confronts a store without ramps at its entrance—must provide a shopping list of products

3   available at the store in order to proceed with an ADA claim.  Rather, it is sufficient that the putative

4   class members have alleged that they were denied access, by being diverted to another store, in order

5   to meet the class definition.  Again, this showing does not establish that any of the alleged injuries

6   were, in fact, a denial of access under the ADA.

7       To put to rest any latent standing challenges on the basis of the declarations presented, the

8   court notes that putative class members who have been deterred from shopping at Target altogether

9   have standing to proceed on their ADA claims.  <u>Pickern v. Holiday Quality Foods Inc.</u> suggests that

10  for the purposes of standing, class members need not have engaged in a "futile gesture" to gain

11  access to the store when they knew that it would likely be inaccessible.  293 F.3d 1133, 1135 (9th

12  Cir. 2002) ("We hold that when a plaintiff who is disabled within the meaning of the ADA has

13  actual knowledge of illegal barriers at a public accommodation to which he or she desires access,

14  that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show

15  actual injury during the limitations period.").  Therefore, those declarants who have described

16  specific incidents in which they were diverted to another store by virtue of the inaccesibility of

17  Target.com have met the class definition.

18      A second set of declarants describe the increased time and expense incurred during in-store

19  shopping as a result of the inaccessibility of the website.  Their inability to pre-shop on the website

20  required declarants to hire an aide or ask a friend or family member to accompany them.  <u>See, e.g.,</u>

21  Marks Dec. ¶ 12; Booth Dec. ¶ 12.  Guided shopping trips took longer as a result of the inability to

22  review products online in advance.  Booth Dec. ¶ 12.  Other declarants resorted to in-store help

23  when they could not access the website.  For example, Charlotte Czarnecki described her experience

24  with seeking assistance with a gift registry after being unable to access it online:

25      I went to the physical Target store and asked a store clerk to print out the registry and read it
        to me.  The list was very long with many categories.  I felt uncomfortable because the store
26      clerk seemed reluctant to read the entire list to me aloud and provide the level of detail I needed
        to decide what to buy. . . . In the end, I made a rash decision about what to buy and purchased
27      the gift before I left the store.

28  Czarnecki Dec. ¶ 8.  Plaintiffs characterize these as a dignitary injury in which a "blind shopper

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    must check her independence at the door." Pls.' Class Cert. Suppl. at 5.  Certainly, forced reliance

2    on other people is injurious in many respects.  Again, Target responds that none of these declarants

3    were absolutely prohibited from entering the Target stores and making purchases as a result of the

4    website's inaccessibility.  According to Target, these shoppers merely experienced inconvenience.

5    Target contends that equal convenience is not required by ADA; therefore, the fact that putative

6    class members spent more time to accomplish the same tasks as sighted persons and required

7    assistance from in-store personnel or guides does not render the stores inaccessible.  Like its

8    argument that deterrence does not constitute inaccessibility, this argument, too, is overbroad.  A

9    wheelchair user is not prohibited from entering a store without a ramp: that person could be carried

10   into the store by the store personnel or hire a guide to do so.  Nevertheless, those accessibility

11   barriers, even where they may be accommodated, would generally violate the ADA.  Similarly, the

12   increased cost and time to surmount the alleged barriers presented by the inability to pre-shop

13   demonstrate that these declarants have met the class definition.  Target's reliance upon their ability

14   to accommodate blind shoppers through other means, such as in-store assistance or a 1-800 customer

15   service number is misplaced at this stage.  As the court noted at the outset of this litigation, the

16   method of accommodation is an affirmative defense.  Order of September 5, 2006 at 11 ("[T]he

17   flexibility to provide reasonable accommodation is an affirmative defense and not an appropriate

18   basis upon which to dismiss the action."). Whether Target's proffered accommodations are

19   reasonable is an inquiry better left to later stages of the litigation.

20        The declarations do not suffer from the defects described in the court's previous order on

21   class certification.  See April 25, 2007 Order at 7 ("Despite the statements indicating that they may

22   have been deterred from purchasing products at Target stores, the declarations make clear that these

23   are individuals who would prefer to shop online.  They consistently express the declarants' desire to

24   shop on the Target.com website.").  The declarants each describe how they use the Target.com

25   website in connection with their visits to the store.  See, e.g., Kresmer Dec. ¶ 7 ("I visit store

26   websites in connection with in-store shopping at least twice a month."); Servan Dec. ¶ 7 ("I also use

27   the internet to access gift registries, but . . . I tend to buy the items at the stores themselves rather

28   than order on the internet.").  The declarations suggest that pre-shopping is an important aspect of

12

UNITED STATES DISTRICT COURT
For the Northern District of California

1    in-store accessibility for blind shoppers.  See Kresmer Dec. ¶ 9 (noting that the newly-blind are

2    taught to use the "internet in conjunction with in-store shopping").  Significantly, each of the

3    putative class members has described specific incidents within the recent past in which the

4    inaccessibility of the website has prevented them from enjoying the goods and services available at

5    Target stores.  See e.g., Frye Dec. ¶ 9 (describing such an incident "last Christmas"); Booth Dec. ¶

6    11–12 (an incident "last fall").  The boilerplate "recitation of [a] future desire" to visit the stores is

7    no longer the only allegation of a nexus to the stores.  April 25, 2007 Order at 8.  The court is

8    satisfied that, for the sole purpose of class certification, the declarants have established that they

9    meet the class definition.

10

11          D.    State law claims

12          As an initial matter, the parties dispute whether the class definition for the proposed

13   California subclass must contain a similar nexus requirement.  Defendant also asserts that

14   certification of a California subclass for either the Unruh or the DPA claims is improper.  The court

15   will consider each of these arguments in turn.

16          Target contends that the Unruh Act and DPA claims must be dependent on an alleged ADA

17   violation because neither statute would apply to Target.com independent of an alleged ADA

18   violation.  In its September 5, 2006 order, the court noted that a violation of the ADA is, by statutory

19   definition, a violation of both the Unruh Act and the DPA.  Cal. Civ. Code §§ 51(f), 54.l(d);  Sept. 5,

20   2006 Order at 12–13.  That order did not address whether the nexus requirement was applicable to

21   the Unruh and DPA claims independent of plaintiffs' ADA claims.  The court did not impose the

22   nexus requirement for state law claims; it merely noted that a violation of the ADA was ipso facto a

23   violation of the two state statutes at issue.  Sept. 5, 2006 Order at 12–13.  Indeed, the court observed

24   that Target.com likely met the definition of a service of a business establishment under section 51(b)

25   of the Unruh Act.  Id.

26          Plaintiffs present persuasive authority to demonstrate that the Unruh Act and the DPA do not

27   require a nexus to the retail stores.  First, neither statute is limited to restrictions on access to a place

28   of public accommodation in the same way as the ADA is limited.  42 U.S.C. § 12182(a) ("No

13

1   individual shall be discriminated against on the basis of disability in the full and equal enjoyment of

2   the goods, services, facilities, privileges, advantages, or accommodations of any place of public

3   accommodation. . . ."); see Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th

4   Cir. 2000) (concluding that, for the purposes of the ADA, "places of public accommodation" is

5   limited to actual, physical spaces).  The Unruh Act regulates "all business establishments of every

6   kind whatsoever." Cal Civ. Code § 51(b).  The DPA addresses "an accommodation, advantage,

7   facility, and privilege of a place of public accommodation" and "other places to which the general

8   public is invited." Id. § 54.1(a)(1).  Thus, the language of both statutes is broader than that of the

9   ADA.

10        What the court alluded to in its previous order, it will now hold explicitly for the purposes of

11   class certification: the Unruh Act and the DPA reach Target.com as a kind of business establishment

12   and an accommodation, advantage, facility, and privilege of a place of public accommodation,

13   respectively.  No nexus to the physical stores need be shown.

14           1.    Unruh Act

15       The Unruh Act, California Civil Code section 51, et seq. states that

16       (b) All persons within the jurisdiction of this state are free and equal, and no matter
    what their sex, race, color, religion, ancestry, national origin, disability, medical
17       condition, marital status, or sexual orientation are entitled to the full and equal
    accommodations, advantages, facilities, privileges, or services in all business
18       establishments of every kind whatsoever.

19   The statutory text is not susceptible to the limited construction that the Ninth Circuit has placed on

20   the ADA.  Weyer, 198 F.3d at 1114 (9th Cir. 2000).  In its 1959 amendments to the Unruh Act, the

21   California legislature eliminated the list of physical places contained in the Act and replaced it with

22   the reference to "all business establishments of every kind whatsoever."  Warfield v. Peninsula Golf

23   & Country Club, 10 Cal. 4th 594, 618 (1995) (discussing 1959 amendments to the Unruh Act);

24   Gardner v. Vic Tanny Compton, Inc., 182 Cal. App. 2d 506, 512 (1960) (describing interpretation of

25   previous statutory language limiting Unruh Act to "all other places").  By contrast, the California

26   Supreme Court has read the relevant language of the Unruh Act to the broadest extent possible: "the

27   word 'establishment,' as broadly defined, includes not only a fixed location . . . but also a permanent

28   'commercial force or organization.'" O'Connor v. Village Green Owners Ass'n,  33 Cal. 3d 790,

UNITED STATES DISTRICT COURT
For the Northern District of California

795 (1983).  In its most recent amendments to the Unruh Act, the legislature made a specific finding

expressing its support for the expansive construction in O'Connor.  See Cal. Civ.Code. § 51,

Historical Notes-Historical and Statutory Notes ("It is the intent of the Legislature that the

amendments made to the Unruh Civil Rights Act by this act do not affect the California Supreme

Court's rulings in [Marina Point] and [O'Connor].").  Indeed, one federal district has recently

construed the term "business establishment" to include an exclusively internet-based adoption

agency.  Butler v. Adoption Media, LLC, 486 F.Supp. 2d 1022, 1054 (N.D. Cal. 2007) (Hamilton,

J.).  In that case, the plaintiffs alleged that the website's refusal to offer same-sex domestic partners

the adoption-related services on the same terms and conditions offered married couples, violated the

Unruh Act.  None of these cases restrict the applicability of the Unruh Act in the same way as the

ADA; imposing a nexus requirement on the class definition for the California subclass is, therefore,

not necessary.

        In its supplemental briefing, Target does not appear to dispute that the Unruh Act applies to

websites.  Rather, it argues that the Unruh Act requires an individualized showing of discriminatory

intent and that such a showing necessarily defeats class certification.  Under this theory, plaintiffs

cannot meet the predominance showing required by Rule 23(b)(3).  See Rutstein v. Avis Rent-A-Car

Systems, Inc., 211 F.3d 1228, 1235 (11th Cir. 2000) (concluding that putative class action requiring

a showing of intentional discrimination could not meet the predominance requirement).  Target also

contends that the damages claims would require individualized determinations unsuitable for a class

action.  In similar contexts, district courts have certified class actions alleging disability

discrimination under the Unruh Act.  See Moeller v. Taco Bell Corp., 220 F.R.D. 604, 613 (N.D.

Cal. 2004) (Jenkins, J.) (certifying class under Rule 23(b)(2) for ADA and Unruh Act claims brought

by wheelchair users against restaurant); Arnold, 158 F.R.D. at 461–62 (certifying similar class under

Rule 23(b)(2)); Berlowitz v. Nob Hill Masonic Management, No. C-96-01241 MHP, 1996 WL

724776 (N.D. Cal. Dec. 6, 1996) (Patel, J.) (same).  In each of these cases as in the present one, the

class members did not challenge individual actions by the defendant against each member of the

class but the same actions taken by defendant.  Moeller, 220 F.R.D. at 516.  The intent requirement,

if one exists, of the Unruh Act does not render class certification inappropriate.

UNITED STATES DISTRICT COURT
For the Northern District of California

1     Target also argues that the Unruh Act bars claims that require modification of the sort sought

2   by plaintiffs claims for injunctive relief.  See Cal. Civ. Code 51(d) ("Nothing in this section shall be

3   construed to require any construction, alteration, repair, structural or otherwise, or modification of

4   any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise

5   required by other provisions of law, to any new or existing establishment, facility, building,

6   improvement, or any other structure. . . .").  This argument, even if it is correct, is not relevant to the

7   instant motion for class certification.

8           2.     DPA

9       The DPA guarantees that individuals with disabilities

10          shall be entitled to full and equal access, as other members of the general public, to
            accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and
11          physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad
            trains, motorbuses, streetcars, boats, or any other public conveyances or modes of
12          transportation (whether private, public, franchised, licensed, contracted, or otherwise
            provided), telephone facilities, adoption agencies, private schools, hotels, lodging places,
13          places of public accommodation, amusement, or resort, and other places to which the general
            public is invited, subject only to the conditions and limitations established by law, or state
14          or federal regulation, and applicable alike to all persons.

15   Cal. Civ. Code § 54.1(a)(1).  The parties dispute whether the language "and other places to which

16   the general public is invited" includes websites such as Target.com.  Id.  The text itself is silent on

17   the issue, but it is notably broader than the ADA.  Compare id. with 42 U.S.C. § 12182(a) ("No

18   individual shall be discriminated against on the basis of disability in the full and equal enjoyment of

19   the goods, services, facilities, privileges, advantages, or accommodations of any place of public

20   accommodation by any person who owns, leases (or leases to) or operates a place of public

21   accommodation.").  The enumeration of the public places in the DPA includes such things as

22   "telephone facilities," defined by the Act as "tariff items and other equipment and services."  Cal.

23   Civ. Code § 54.1(a)(2).  The logic of Weyer in limiting the ADA to physical places relied upon the

24   canon of *noscitur a sociis*:

25          Title III provides an extensive list of "public accommodations" in § 12181(7), including
            such a wide variety of things as an inn, a restaurant, a theater, an auditorium, a bakery, a
26          laundromat, a depot, a museum, a zoo, a nursery, a day care center, and a gymnasium.  All
            the items on this list, however, have something in common.  They are actual, physical
27          places where goods or services are open to the public, and places where the public gets
            those goods or services.

28

16

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  198 F.3d at 1114.  Fidelity to this principle of statutory construction would suggest the opposite

2  conclusion for the DPA: because the DPA enumerates both physical places and non-physical places,

3  the phrase "other places to which the general public is invited" cannot be limited solely to physical

4  places.  Furthermore, among the "places" enumerated in the DPA is entitlement to "advantages,"

5  which clearly is not affixed to any particular physical location.

6       While there are no cases applying the DPA to websites, there is no case law to suggest that

7  the legislature intended to exclude websites from the coverage of the DPA.  Indeed, the broad

8  language of the DPA comfortably encompasses websites as "places to which the general public is

9  invited."  Recent amendments to the statute reaffirm that the statutory language was intended to be

10  read liberally.  In enacting the 1992 amendments to the statute, the legislature noted its intent "to

11  strengthen California law in areas where it is weaker than the Americans with Disabilities Act of

12  1990, and to retain California law when it provides more protection for individuals with disabilities .

13  . . ." 1992 Cal. Stats. 4282.  In drafting such broad language, the legislature was likely aware that it

14  was ensnaring websites.

15       In sum, the court concludes that imposing a nexus requirement on the definition of the

16  subclass would be inappropriate at this stage.  Therefore, the court finds that the proposed California

17  subclass definition is appropriate.

18

19  II.    Rule 23(a) Requirements

20       As noted above, a party seeking class certification must establish that the numerosity,

21  commonality, typicality and adequacy of representation requirements of Rule 23(a) have been met.

22  The court addresses each of these requirements below.

23

24       A.    Numerosity

25       Pursuant to Rule 23, the class must be "so numerous that joinder of all members is

26  impracticable." Fed. R. Civ. P. 23(a)(1).  As a general rule, classes numbering greater than 41

27  individuals satisfy the numerosity requirement.  See 5 James Wm. Moore et al., Moore's Federal

28  Practice § 23.22[1][b] (3d ed. 2004).  Although plaintiffs need not allege the exact number or

17

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    identity of class members to satisfy the numerosity prerequisite, mere speculation as to the number

2    of parties involved is not sufficient to satisfy the numerosity requirement.  See Freedman v.

3    Louisiana-Pac. Corp., 922 F. Supp. 377, 398 (D. Or. 1996); 7 Wright, Miller, & Kane, Federal

4    Practice and Procedure § 1762 (3d ed. 1995).

5            Plaintiffs have submitted evidence, based on U.S. Census data, that there are likely thousands

6    of potential class members in the nationwide class based on the large number of people who are

7    legally blind and use screen access software.  See Brome Dec. ¶ 4.  Similarly, they estimate that

8    there are approximately 140,000 blind individuals in California.  Id.  They further contend that

9    10,000 blind people in California use screen access software to access the internet.  Taylor Dec. ¶ 4.

10   Target responds that plaintiffs have not met their burden on this element: they have not presented

11   any evidence of the number of blind individuals who use the internet and more specifically those

12   who have attempted to access Target.com.  However, defendant seeks to impose a level of

13   specificity not required by Rule 23(a).  Courts, including this one, have repeatedly certified ADA

14   classes like the one proposed here based on similar evidentiary showings.  In Lieber v. Macy's Cal.,

15   Inc., No. C 96-2955 MHP, Order re: Class Certification, at 5 (N.D. Cal. Mar. 9, 1998), this court

16   found the numerosity requirement satisfied based on census data and statistical evidence indicating

17   that there were thousands of wheelchair users and persons with other mobility disabilities living in

18   the Bay Area.  In that action, like the present one, the class definition included persons with certain

19   specific mobility disabilities who had been denied access to one of defendants' stores.  Id.  The court

20   required no evidence that a sufficiently numerous subset of mobility impaired persons had been

21   denied access to the stores, because no such evidence was required by the dictates of Rule 23.

22   Indeed, in cases, like those involving alleged violations of the ADA, where the alleged violations

23   may have deterred putative class members from attempting to access stores, the type of evidence

24   defendant seeks may be unavailable, if not impossible, to obtain.  The court in Arnold v. United

25   Artists Theatre Circuit, Inc., 158 F.R.D. 439, 448 (N.D. Cal. 1994) (Henderson, J.) similarly

26   concluded that estimates of the likely number of disabled persons affected by access barriers in

27   seventy of the defendant's theaters was sufficient to establish numerosity.

28           Defendant's reliance upon Celano v. Marriott Intern., Inc., No. C 05-4004 PJH, 2007 WL

18

UNITED STATES DISTRICT COURT
For the Northern District of California

1149113, at *3 (N.D. Cal. Apr. 18, 2007) (Hamilton, J.) is misplaced.  The district court in <u>Celano</u>

held that the plaintiffs had not satisfied the numerosity requirement because they had not established

how many putative class members "actually had attempted to access one of [plaintiff's facilities] and

could not do so because of the lack of accessible" auxiliary aides.  <u>Id.</u> at *4.  In the instant action,

plaintiffs have submitted declarations establishing that putative class members have tried to access

in-store information on Target.com and could not.  Additionally, the statistical evidence submitted

here does not suffer from the same defects as that in <u>Celano</u>.  That court distinguished the unspecific

and insufficient statistical evidence provided from that in <u>Arnold</u>.  <u>Id.</u>  Like the data in <u>Arnold</u>, the

statistics presented by plaintiffs establish that many blind people currently shop at Target and that

the type of activity, shopping at a Target store, is sufficiently "widespread", "numerous" and

"readily available" that the use of statistics regarding the number of blind shoppers at Target is not

"rank speculation untethered to real facts."  <u>Id.</u> at *5.  Plaintiffs have submitted sufficient evidence

to demonstrate numerosity, and the court declines defendant's request for more granularity.

### B.    Commonality

To fulfill the commonality prerequisite of Rule 23(a)(2), plaintiff must establish that there

are questions of law or fact common to the class as a whole.  Rule 23(a)(2) does not mandate that

each member of the class be identically situated, but only that there be substantial questions of law

or fact common to all.  <u>See</u> <u>Harris v. Palm Spring Alpine Estates, Inc.</u>, 329 F.2d 909, 914 (9th Cir.

1964).  Individual variation among plaintiffs' questions of law and fact does not defeat underlying

legal commonality, because "the existence of shared legal issues with divergent factual predicates is

sufficient" to satisfy Rule 23.  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).  To

the extent that the parties' commonality arguments overlap with the merits, the court has evaluated

all relevant evidence to determine whether commonality has been established.

Plaintiffs, like those in <u>Arnold</u>, bring challenges to common design features of Target.com on

the basis of "common distinguishing characteristics shared by all the class members," in this case,

their status as blind or visually impaired individuals.  158 F.R.D. at 452.  The common questions of

law presented here include whether the ADA covers websites as a service for a place of

19

UNITED STATES DISTRICT COURT
For the Northern District of California

1   accommodation, which parts of the Target.com website are covered by the ADA, and whether

2   Target has satisfied its obligations under the relevant statutes by accommodating access including,

3   but not limited to, providing a customer service telephone number.  The questions of fact common to

4   all class members include whether the website is linked to Target stores, what specific

5   accommodations (e.g., alt-tags, keyboard functionality, headings) are available on Target.com, and

6   whether the post-filing improvements have satisfied Target's statutory obligations.  Defendants

7   present no arguments to suggest that plaintiffs have not satisfied the commonality requirement.

8       In sum, plaintiffs have demonstrated to the court that there are common issues of fact and

9   theories of law as to accessibility of the Target.com website.  Therefore, the court finds that

10  plaintiffs have satisfied the commonality requirement.

11

12      C.    Typicality

13      Under Rule 23(a)(3), the claims of the representative plaintiff must be typical of the claims

14  of the class.  To be considered typical for purposes of class certification, the named plaintiff need

15  not have suffered an identical wrong.  See Hanlon, 150 F.3d at 1020.  Rather, the class

16  representative must be part of the class and possess the same interest and suffer the same injury as

17  the class members.  See General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982).

18      The gravamen of Target's argument is that the named plaintiff, Sexton, has not demonstrated

19  a legally cognizable injury and, therefore, his claims are not typical of those belonging to the class.

20  Specifically, they contend that Sexton's declaration—nor that of any of the putative class

21  members—has not demonstrated an injury with sufficient nexus to the Target stores.  As discussed

22  below, the court is not convinced that Sexton has demonstrated an injury with the requisite nexus to

23  the Target stores for the nationwide class.  However, the court is satisfied that some of the putative

24  class members would present the same type of legal and remedial theory as the unnamed class

25  members.  As long as the proposed class satisfies the requirements of Rule 23, the court may certify

26  the class conditioned upon the substitution of another named plaintiff.  See Kremens v. Bartley, 431

27  U.S. 119, 135 (1977) (where named plaintiffs' claims were determined to be moot, ordering

28  substitution of class representatives); Gibson v. Local 40, 543 F.2d 1259, 1263 (9th Cir. 1976) ("In

UNITED STATES DISTRICT COURT
For the Northern District of California

1   any event, failure of proof as to the named plaintiffs would not bar maintenance of the class action or

2   entry of judgment awarding relief to the members of the class."). Thus, the court will grant

3   plaintiffs' leave to substitute another class representative for the nationwide class.

4       Target also attacks the proposed class on the basis that the class members' claims are widely

5   divergent, depending on the members' different skill levels with the internet; the type of technology

6   they use; and which parts of the website they attempted to access. These arguments are unavailing.

7   "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily

8   defeat typicality." Dukes v. Wal-Mart, Inc., 474 F.3d 1214, 1232 (9th Cir. 2007). In most cases

9   involving access under the ADA, there will be individual variations among class members in terms

10  of the nature of their disability, the types of aides used, and the individual nature of each class

11  member's encounters with the website and access to services and facilities. See, e.g., Moeller v.

12  Taco Bell Corp., 220 F.R.D. 604, 611 (N.D. Cal. 2004) (finding typicality satisfied where proposed

13  class used different types of mobility aides but experienced the same "effect of these alleged barriers

14  and policies").

15

16      D.      Adequacy of Representation

17      Rule 23(a)(4) dictates that the representative plaintiff must fairly and adequately protect the

18  interests of the class. To satisfy constitutional due process concerns, unnamed class members must

19  be afforded adequate representation before entry of a judgment which binds them. See Hanlon, 150

20  F.3d at 1020 (citing Hansberry v. Lee, 311 U.S. 32, 42–43 (1940)). "Resolution of two questions

21  determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of

22  interest with other class members and (2) will the named plaintiffs and their counsel prosecute the

23  action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

24      Defendant attacks the adequacy of the representation by reiterating the same theory: that

25  Sexton has not provided proof of a legally cognizable injury. Having addressed that elsewhere, the

26  court need not revisit that argument here. Plaintiffs and their counsel appear to have no conflicts of

27  interest with the members of the class. Moreover, it is clear that plaintiffs' counsel is highly

28  competent and defendant does not dispute this. Therefore, the court concludes that plaintiffs have

21

1    satisfied the adequacy of representation requirement.

2         E.    Rule 23(b)(2) Requirements

3         In addition to meeting the conditions imposed by Rule 23(a), a party seeking certification of a

4    class under Rule 23(b)(2) also bears the burden of establishing that "the party opposing the class has

5    acted or refused to act on grounds generally applicable to the class, thereby making" injunctive relief

6    appropriate.  Fed. R. Civ. P. 23(b)(2).  Class actions certified under Rule 23(b)(2) are "not limited to

7    actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary

8    damages" where the claim for injunctive relief is the primary claim.  Probe v. State Teachers' Ret.

9    Sys., 780 F.2d 776, 780 (9th Cir. 1986).  Rule 23(b)(2) certification of a class seeking both injunctive

10   relief and damages is proper only where the claim for injunctive relief is the predominant form of

11   relief sought by the class.  The court addresses these requirements below.

12        For the purposes of Rule 23(b)(2), plaintiffs have sufficiently established that Target's actions

13   with respect to the accessibility of its website are "generally applicable to the class." Fed. R. Civ.

14   Proc. 23(b)(2).  Target's expert, Dr. Thatcher, explained in his report that "[a]s of April 12, 2006 the

15   website of Target Corporation is virtually unusable by a visitor who is blind."  Thatcher Dec. ¶ 60,

16   Pls.' Exh. D. Target has made accessibility improvements to its website more recently.  See Nemoir

17   Dep. at 21:18–22:5. Nonetheless, putative class members state that they have experienced difficulties

18   accessing the website as recently as June 2007.  See e.g., Jacobs Dep. at 44–45.  The parties agree

19   that these barriers, to the extent that they still exist, impact all blind users who rely on reader

20   software.[3]  While the class definition as modified may include both blind individuals who use reader

21   software and those who do not, the court is satisfied that the website accessibility barriers identified

22   by plaintiffs are generally applicable to the class.

23        The second of the Rule 23(b)(2) requirements, the predominance inquiry, affects only the

24   California subclass.  Here, plaintiffs seek statutory damages only for the California state law claims

25   on behalf of the putative California subclass.  The nationwide class seeks only declaratory and

26   injunctive relief, thus satisfying the predominance requirement.  Target argues that the statutory

27   damages sought by the California subclass predominate over their request for equitable relief; indeed,

28   it asserts that the damages are the very "*raison de etre* of this subclass."  Def.'s Opp. at 20.  In

22

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    divining the intent of the plaintiffs, Target emphasizes the recent changes to the website and

2    statements made by NFB members that the changes render the site accessible.  Because Target.com is

3    now more accessible, Target argues that equitable relief will accomplish little more and, therefore,

4    the damages claims predominate.  While some anticipation of plaintiffs' intent is appropriate under

5    Rule 23(b)(2), see Molski v. Gleich, 318 F.3d 937, 950 (9th Cir. 2003) (focusing on the plaintiff's

6    intent for purposes of the predominance inquiry), Target's heavy focus on damages, and hence intent,

7    is misplaced.  The nature of the equitable relief is likely to be different and more expansive given the

8    court's holding on the state law claims.  Also, plaintiffs' own declarations and those of putative class

9    members indicate that the major form of relief sought is equitable.  See, e.g., Clegg Dec. ¶ 21; Sexton

10   Apr. 12, 2006 Dec. ¶ 37 (describing impact on Sexton from not being able to access the website).

11   Moreover, as noted previously, the changes made to the website have not addressed all of plaintiffs'

12   claims.  Accordingly, reliance on the court's order in Leiber is inapposite.  Paradis Dec., Exh. R.

13   Here, the issues requiring equitable relief have not been resolved to the same degree, if at all, and will

14   need to be treated differently from the federal claims.

15         Next, Target attempts to persuade the court that the damages claims require individualized

16   inquires too complex for certification of a (b)(2) subclass.  However, plaintiffs seek the minimum

17   statutory damages, a fixed amount per offense.  As the court noted in a similar case seeking both

18   injunctive relief and statutory damages, individual-specific claims for statutory damages, such as

19   those requested here, are routine in employment discrimination cases.  Arnold, 158 F.R.D. at 453

20   (considering class certification in action for statutory damages and equitable relief for alleged

21   violations of the ADA, California Disabled Persons Act, and the Unruh Civil Rights Act).  In Arnold

22   as here, the relatively minor complexity of these damage claims should not defeat certification under

23   Rule 23(b)(2).

24         Therefore, certification of the nationwide class and the California subclass is proper under

25   Rule 23(b)(2).

26

27   III.    Motion for appointment of class counsel

28         Federal Rule 23(g) requires the court to appoint plaintiffs' counsel in a class action.  Fed. R.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Civ. P. 23(g).  The court is confident in the collective and individual abilities of Mr. Paradis, Mr.

2    Konecky, Dr. Blanck, and Mr. Goldstein to fairly and adequately represent the class.  Together

3    counsel have decades of class action and disability rights experience and adequate resources to

4    pursue an action of this nature.  See, e.g., Paradis Dec. ¶¶ 2–6; Konecky Dec. ¶¶ 1–6.

5            Accordingly, the court grants plaintiffs' motion for appointment of lead counsel.

6

7    IV.    Motion for Summary Judgment

8            Shortly after plaintiffs filed their motion for class certification, Target filed a motion for

9    summary judgment arguing that plaintiff Sexton had suffered no legally cognizable injury.

10    Specifically, Target argues that Sexton had failed to meet the nexus requirement for the purposes of

11    his ADA claim.  Because his state law claims were dependent on his ADA claim, those too must fail

12    according to Target.

13

14            A.    ADA claim

15            The court agrees that Sexton has not demonstrated that his inability to access Target.com

16    renders him unable to access the goods and services of Target stores.  Sexton has submitted at least

17    four declarations over the course of this litigation.  See App. of Supp. Dec., Exh. 14 (compiling

18    declarations).  His most recent one, submitted May 25, 2007, describes how Sexton frequently pre-

19    shops on several stores' websites before shopping.  Sexton May 25, 2007 Dec. ¶ 4.  It further

20    describes the cost and time incurred when he is unable to pre-shop.  Id. ¶ 5.  However, Sexton's

21    declarations do not establish how his difficulties with the Target.com website have impeded his

22    access to the goods and services in the store.  He states only that he has been "unable to use

23    Target.com for th[e] purpose" of pre-shopping and that he has been unable to use the weekly

24    advertisements on Target.com for use in the stores.  Id. ¶ 6–7.  The only specific incident described in

25    his declarations involves his purchase of towels for his dorm room.  Sexton Apr. 12 2006 Dec. ¶ 33.

26    While he was unable to access information about the towels online, he was ultimately successful in

27    purchasing them in the store after hiring a driver and coordinating a trip with a companion.  Id.

28    While Sexton's experience may qualify under the class definition if he incurred increased expense

24

UNITED STATES DISTRICT COURT
For the Northern District of California

1    and time from the inability to access the website, nonetheless his declaration does not suggest that

2    hiring the driver and arranging for the companion were necessary only because he could not pre-shop.

3    Accordingly, the court will grant defendant's motion for summary judgment on Sexton's ADA claim,

4    but allow substitution of another plaintiff or plaintiffs on this claim.[4]

5

6        B.    State law claims

7        While Target contends that plaintiffs' state law claims rest entirely on their ADA claims,

8    plaintiffs have stated independent bases for their claims under the Unruh Act and the DPA.  See FAC

9    ¶¶ 42, 50.  Therefore, Sexton's failure to meet the nexus requirement does not necessarily defeat his

10   state law claims.  Having determined that the DPA and the Unruh Act apply to Target.com without a

11   nexus requirement, Sexton's state law claims may survive.

12        1.    Unruh Act

13       The Unruh Act, California Civil Code section 51, et seq. provides in relevant part:

14       (b) All persons within the jurisdiction of this state are free and equal, and no matter what
         their sex, race, color, religion, ancestry, national origin, disability, medical condition,
15       marital status, or sexual orientation are entitled to the full and equal accommodations,
         advantages, facilities, privileges, or services in all business establishments of every kind
16       whatsoever.

17       (d) Nothing in this section shall be construed to require any construction, alteration,
         repair, structural or otherwise, or modification of any sort whatsoever, beyond that
18       construction, alteration, repair, or modification that is otherwise required by other
         provisions of law, to any new or existing establishment, facility, building, improvement,
19       or any other structure, nor shall anything in this section be construed to augment, restrict,
         or alter in any way the authority of the State Architect to require construction, alteration,
20       repair, or modifications that the State Architect otherwise possesses pursuant to other
         laws.
21

22       With respect to the Unruh Act claim, Target notes that there are only a few contexts in which

23   an Unruh Act claim can exist independent of an ADA claim.  It contends that the facts presented here

24   are not one of those contexts.  Compare  Chabner v. United of Omaha Life Ins. Co., 225 F.3d

25   1042,1047 (9th Cir. 2000) (holding that insurance policy that discriminated against the disabled did

26   not violate the ADA but did independently violate the Unruh Act) with Molski v. M.J. Cable, Inc.,

27   481 F.3d 724, 731 (9th Cir. 2007) ("In the disability context, California's Unruh Civil Rights Act

28

25

**UNITED STATES DISTRICT COURT**
For the Northern District of California

operates virtually identically to the ADA.").  The distinguishing factor, according to Target, is that an

independent cause of action under the Unruh Act involves a discriminatory policy.  That argument is

easily set aside.  Nothing in the text of the Unruh Act suggests that a discriminatory policy is required

for a claim independent of an ADA claim, nor does Target cite any case law to support that position.

Target notes that section 51(c) limits Unruh Act claims to those that do not require any

"modification or alterations" beyond that required by other provisions of law.  Cal. Civ. Code § 51(c).

It is premature, at this stage, to determine whether the ADA or the DPA would require modifications

of the Target.com website.  The court sees no reason why the Unruh Act's reference to other

provisions of law would not refer to either the ADA or the state statute.  Id.  Moreover, plaintiffs

argue that the modification language refers to physical modification or construction and, therefore,

would not restrict remedies in the instant action, which require only modification of a website.

Second, Target argues that Sexton has failed to make the requisite intent showing.  Harris v.

Capital Growth Investors XIV, 52 Cal. 3d 1142, 1175 (1991) ("[T]he language and history of the

Unruh Act indicate that the legislative object was to prohibit intentional discrimination in access to

public accommodations.").  Under Ninth Circuit law, intentional discrimination is not required for an

Unruh Act claim predicated on an ADA claim.  See Lentini v. Cal Ctr. for the Arts, 370 F.3d 837,

846–47 (9th Cir. 2004) ("We find that, regardless of whether Harris may continue to have relevance

to other Unruh Act suits, no showing of intentional discrimination is required where the Unruh Act

violation is premised on an ADA violation.").  Having determined that Sexton has failed to establish

his ADA claims, Lentini does not absolve him of his duty to prove intent for his independent claim

under the Unruh Act.

Whether intent is required for an independent disability claim under the Unruh Act has not

been addressed by the Ninth Circuit.  Harris held that disparate impact theories for gender

discrimination were not actionable under the Unruh Act.  52 Cal. 3d at 1175.  However, the

legislative history of the Act and its subsequent construction tilts in favor of plaintiffs' preferred

reading.  The 1992 amendments to the Unruh Act included a provision to make a violation of the

ADA a per se violation of the Unruh Act.  In doing so, the legislature noted its intent "to strengthen

California law in areas where it is weaker than the Americans with Disabilities Act of 1990, and to

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   retain California law when it provides more protection for individuals with disabilities. . . ." 1992

2   Cal. Stats. 4282.  This statement of legislative intent, issued after <u>Harris</u>, suggests that <u>Harris'</u>

3   proclamations on the legislature's intent may no longer be applicable, particularly in disability cases.

4   <u>But see</u> <u>Gunther v. Lin</u>, 144 Cal. App. 4th 223 (2007) (relying on <u>Harris</u> to conclude that a plaintiff

5   must prove intent for a damages claim, but not for injunctive relief, under the Unruh Act).

6          Plaintiffs argue that the unique nature of discrimination on the basis of disability makes the

7   reasoning in <u>Harris</u> inapposite.  Disability discrimination, they contend, is characterized by inaction

8   and the appropriate remedy for this type of discrimination is modification of otherwise neutral

9   policies or practices.  <u>Presta v. Peninsula Corridor Joint Powers Bd.</u>, 16 F.Supp. 2d 1134, 1136 (N.D.

10  Cal. 1998) (Henderson, J.) ("[D]iscrimination against persons with disabilities differs from

11  discrimination on the basis of, for example, gender, or race.  Discrimination in the latter instances has

12  been judicially defined as disparate treatment on the basis of a certain characteristic that identifies an

13  individual as a member of a protected class.  However, a person with a disability may be the victim of

14  discrimination precisely because she did not receive disparate treatment when she needed

15  accommodation.").  The ADA thus departs from other anti-discrimination statutes in requiring that

16  places of public accommodation take affirmative steps to accommodate the disabled.  H.R. Rep. No.

17  101–485, pt.2, at 104 (1990); 42 U.S.C. § 12182(b)(2)(A)(ii-iv).  The court is not persuaded that the

18  California Court of Appeals properly acknowledged the unique nature of disability discrimination in

19  applying <u>Harris</u> to disability claims for damages.  <u>Gunther</u>, 144 Cal. 4th at 223.  At least one

20  other district court has reached this conclusion.  <u>See</u> <u>Wilson v. Haria and Gogri Corp.</u>, 479 F.Supp. 2d

21  1127, 1141 (E.D. Cal. 2007) (rejecting <u>Gunther</u> where Unruh claim depended on violations of the

22  ADA).

23         Plantiffs have alleged intentional discrimination in their complaint.  FAC ¶ 41.  Target argues

24  that they have not established intent nor can they for four reasons: 1) Target did not engage in any

25  discriminatory personal contact with Sexton; 2) Target has not engaged in any willful, affirmative

26  misconduct; 3) Discriminatory intent cannot be inferred from the effect on the class;

27  4) Discriminatory intent cannot be inferred from Target's refusal to modify its website.  Plaintiffs, in

28  their supplementary brief on state law issues, set out their evidentiary proffer of intent for a later

UNITED STATES DISTRICT COURT
For the Northern District of California

1    stage of litigation, namely that Target's knowing failure and refusal to adopt certain accessibility

2    features in Target.com constitute the requisite intent.  They cite Hankins v. El Torito Restaurants,

3    Inc., 63 Cal. App. 4th 510, 518 (1998) for the proposition that such a knowing failure establishes the

4    requisite intent.  That case is far from clear on the nature of the intent showing required by the Unruh

5    Act.

6                          2.    DPA

7            The DPA provides in relevant part:

8        § 54(a) Individuals with disabilities or medical conditions have the same right as the general
         public to the full and free use of the streets, highways, sidewalks, walkways, public buildings,
9        medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and
         other public places.
10
         . . .
11
         (c) A violation of the right of an individual under the Americans with Disabilities Act of 1990
12       (Public Law 101-336) also constitutes a violation of this section.

13
         § 54.1(a)(1) Individuals with disabilities shall be entitled to full and equal access, as other
14       members of the general public, to accommodations, advantages, facilities, medical facilities,
         including hospitals, clinics, and physicians' offices, and privileges of all common carriers,
15       airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public
         conveyances or modes of transportation (whether private, public, franchised, licensed,
16       contracted, or otherwise provided), telephone facilities, adoption agencies, private schools,
         hotels, lodging places, places of public accommodation, amusement, or resort, and other
17       places to which the general public is invited, subject only to the conditions and limitations
         established by law, or state or federal regulation, and applicable alike to all persons.
18
         . . .
19
         (3) "Full and equal access," for purposes of this section in its application to transportation,
20       means access that meets the standards of Titles II and III of the Americans with Disabilities
         Act of 1990 (Public Law 101-336) and federal regulations adopted pursuant thereto, except
21       that, if the laws of this state prescribe higher standards, it shall mean access that meets those
         higher standards.
22
     Cal. Civ. Code § 54 et seq.
23
             Target argues that Sexton's DPA claim must fail because the DPA requires an ADA violation
24
     or a building code violation.  Under this view, because Sexton has not suffered an injury under the
25
     ADA and has provided no evidence of a building code violation, his DPA claim must also fail.
26
     Target relies on two cases for the proposition that the DPA requires a violation of the ADA or a
27
     building code violation.  The first, Mannick v. Kaiser Foundation Health Plan, Inc., No. 03-5905,
28

                                                    28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    2006 WL 2168877, at *16 (N.D. Cal. July 31, 2006) (Hamilton, J.), involved a DPA claim that was

2    based solely on the plaintiff's claims under the ADA.  Here, plaintiffs have alleged an independent

3    DPA claim from the alleged ADA violations.  Like <u>Mannick</u>, the second case, <u>Arnold v. United</u>

4    <u>Artists Theatre Cir., Inc.,</u> also involved building code violations and thus the court referred to those

5    as the appropriate state law for the purposes of determining what "full and equal access" meant in

6    that context.  <u>See</u> Cal Civ. Code § 54.1(a)(3) ("Full and equal access," for purposes of this section in

7    its application to transportation, means access that meets the standards [of the ADA] . . . except that,

8    if the laws of this state prescribe higher standards, it shall mean access that meets those higher

9    standards.").  Nothing in the language of the DPA suggests that it is limited to building code

10   violations; rather the statutory language refers to the higher standards of state law.  <u>Id.</u>  In <u>Arnold</u> and

11   in <u>Mannick</u>, the relevant higher standard of state law was the building code because the disputes

12   concerned building accessibility.[5]  Here, if state law requires higher standards of website accessibility

13   than the ADA, those standards are the relevant ones for the purposes of the DPA.  Accordingly, the

14   applicable standards of "full and equal access" under state law is still an open question.  The court

15   declines to adopt Target's cramped reading of the DPA.

16

17   V.    <u>Motion to Strike</u>

18           Target filed a motion to strike portions of the March 29, 2007 declaration of Anne Taylor

19   submitted in support of plaintiffs' reply.  Target bases its motion on grounds that the testimony is

20   speculative, that the declarant lacks personal knowledge, and that the testimony lacks foundation.  In

21   particular, defendant objects to Taylor's statements regarding the likelihood of blind and visually

22   impaired people using screen access software to visit the website.  Taylor Mar. 29, 2007 Dec. ¶ 5.  To

23   be admissible, this statement, Target argues, requires Taylor to be qualified as an expert.

24   Additionally, they are not based on Taylor's personal knowledge.  Plaintiffs contend that Taylor is

25   qualified to attest to the statements in her declaration based on her experience in the field of access to

26   technology by the blind.  <u>See</u> Taylor May 8, 2006 Dec. ¶ 2.  Taylor appears to have knowledge in this

27   field, although without properly qualifying her as an expert, her testimony is inadmissible.  Taylor

28   does not have personal knowledge, according to Federal Rule of Evidence 602, of the incidence and

UNITED STATES DISTRICT COURT
For the Northern District of California

1    usage of all blind and visually impaired people using the website.  While there may be a somewhat

2    relaxed standard for the use of expert testimony at class certification, the lenience of the standard

3    does not apply to qualification as an expert but to the probative value of her conclusions.  Dukes v.

4    Wal-Mart, Inc., 222 F.R.D. 189, 191 (N.D. Cal. 2004) (Jenkins, J.); see also In re Polypropylene

5    Carpet Antitrust Litigation, 996 F. Supp. 18, 26 (N.D. Ga.1997) (at class certification stage court only

6    examined whether the expert's methodology will (a) comport with basic principles, (b) have any

7    probative value, and (c) primarily use evidence that is common to all members of the proposed class).

8    The court has no information about Taylor's methodology or basis for her conclusion.  Accordingly,

9    her declaration has not met even the lower Daubert standard applicable at this stage.

10        Target further objects to Taylor's statements about the number of blind and visually impaired

11   people who would likely visit Target.com if it were fully and equally accessible.  Again, Target

12   argues that this statement is speculative and without foundation.  In defense of Taylor's declaration,

13   plaintiffs raise her extensive experience and point to the underlying data on which Taylor relied to

14   reach this conclusion.  Her forecasts about the incidence of blind and visually impaired visitors to a

15   fully accessible site suffer from the same flaws as the previous statement: she lacks personal

16   knowledge and has not sufficiently laid the foundation for her conclusions.

17        Accordingly, Target's motion to strike the disputed portions of the Taylor declaration is

18   GRANTED.

19

20   IV.    Motion for Bifurcation

21        Plaintiffs ask the court to bifurcate the issues at trial into two stages.  Phase I would address

22   the liability to the class as well as declaratory and injunctive relief.  If Target is found liable at the

23   first stage, then phase II would address damages for the class members, likely in the form of claims

24   process or hearings before a special master.  Pursuant to Federal Rule of Civil Procedure 42(b), the

25   court has discretion to order a separate trial of any issue or claim where it is convenient and not

26   prejudicial.  Id.; see also Davis & Co. v. Summa Corp., 751 F.2d 1507, 1517 (9th Cir. 1985).

27   Defendant contends that plaintiffs' bifurcation proposal attempts to import burden-shifting principles

28   from the employment discrimination context to the instant action.  See International Broth. of

30

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Teamsters v. U.S., 431 U.S. 324, 360–61 (1977).  Unlike a damages phase in an employment

2    discrimination action, a proposed damages phase in the instant action would not require burden-

3    shifting; nor do plaintiffs appear to seek such a framework in their proposal.  Rather, a finding of

4    liability in phase I—namely that Target.com was impermissibly inaccessible to blind users—would

5    require at phase II proof only that a particular user was blind and that he or she encountered a

6    particular barrier on the website.

7        Because neither party has requested a jury trial, the relevant considerations for bifurcation are

8    complexity, disposition of the issues, and the likelihood of prejudice to the parties.  See, e.g., Arnold,

9    158 F.R.D. at 459.  The complexity of the legal and factual issues associated with the proposed

10   liability stage in addition to those associated with individual determinations of damages weighs in

11   favor of bifurcation.  In particular, the court must determine what the statutory requirement of full

12   and equal access means in the context of reviewing a website and its nexus to the Target stores.  It

13   must evaluate whether the various parts of Target.com met that standard and the appropriate form of

14   equitable relief, if any.  These issues are distinct from the inquiries related to damages determinations

15   and separating the issues will aid in their determination.  Target objects that plaintiffs' proposal alters

16   the burden of proof and presumes liability, thereby prejudicing Target.  Having rejected this

17   argument, the court concludes that bifurcation is appropriate.

18

19

20

21

22

23

24

25

26

27

28

31

UNITED STATES DISTRICT COURT
For the Northern District of California

CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED that:

   1) Plaintiffs' motion to certify a class is GRANTED.

   2) The nationwide class consists of all legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores.  The California subclass includes all legally blind individuals in California who have attempted to access Target.com, for plaintiffs' claims arising under the California Unruh Civil Rights Act, California Civil Code §§ 51 et seq. and the Disabled Persons Act, California Civil Code §§ 54 et seq.

   3) Plaintiffs are ordered to substitute a new class representative with respect to the ADA claims consistent with this order within thirty (30) days of the date of this order.

   4) The counsel of named plaintiff shall serve as counsel for the class.

   5) Defendant's motion to strike Taylor's supplementary declaration is GRANTED.

   6) Plaintiffs' motion for bifurcation of trial is GRANTED.

   7) Defendant's motion for summary judgment is DENIED subject to the provisions of this order.


      IT IS FURTHER ORDERED that counsel shall confer and submit a proposed class notice in compliance with this order within thirty (30) days of the date of this order.  Within thirty (30) days, counsel shall also set forth a class commencement date that is to be included in the definition of the class.


Date:   September 28, 2007

_____
MARILYN HALL PATEL
United States District Judge
Northern District of California

32

<u>ENDNOTES</u>

1.  Unless otherwise noted, background facts are taken from plaintiffs' First Amended Complaint ("FAC" or "Complaint").

2.  Target raises this issue in the context of arguing that the timing of the improvements to the website complicate individual damages calculations, without explicitly raising a mootness challenge. However, the court considers it prudent to address any potential jurisdictional issues.

3.  Plaintiffs contend that Target's witnesses, Nemoir and Perry, acknowledge that the accessibility barriers on Target.com are generally applicable to the class.  <u>See</u> Pl's Mot. at 17.  However, a review of the deposition testimony of these two witnesses indicates that both acknowledge only that alt-tags are necessary for people using JAWS or other reader software.  Perry Dep. at 22:17–26:7; Nemoir Dep. at 85:15–24.  Nemoir further acknowledged that keyboard navigation is generally necessary for blind users who use screen access software.  Nemoir Dep. at 154:10–155:9.

4.  Anticipating that plaintiffs may attempt another declaration by Mr. Sexton, the court instructs that this avenue has been exhausted and it will not entertain any further declarations from Mr. Sexton or other plaintiffs.  Plaintiffs may substitute another named plaintiff who does not have the shortcomings of Mr. Sexton as described above and set forth in the amended complaint the basis on which the newly named plaintiff satisfies the standing requirements.

5.  Target also cites to <u>Urhausen v. Longs Drug Stores of Ca., Inc.</u>, No. A113937, 2007 WL 2092927 (Cal. Ct. App. Sept. 18, 2007).  <u>Urhausen</u>, however, provides further support for the court's holding since it defines "full and equal access" as access that complies with the ADA, or complies with state statutes, if the latter impose a higher standard.  <u>Id.</u> at *3.  Specifically, the court declines to limit the definition of access "only to entry into a building."  <u>Id.</u>