# EXHIBIT A

Dockets.Justia.com

Appeal No. _____

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**NATIONAL FEDERATION OF THE BLIND, the NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, on behalf of their members, and BRUCE F. SEXTON, on behalf of himself and all others similarly situated,**

*Respondents/Plaintiffs,*

v.

**TARGET CORPORATION,**

*Petitioner/Defendant.*

On Appeal from the United States District Court for the
Northern District of California Civil Action No. C 06-1802 MHP

## PETITION OF TARGET CORPORATION
## FOR PERMISSION TO APPEAL FROM ORDER
## GRANTING CLASS CERTIFICATION

### (APPENDIX UNDER SEPARATE COVER FILED CONCURRENTLY)

*Rule 5, Federal Rules of Appellate Procedure*
*Rule 23(f), Federal Rules of Civil Procedure*

HAROLD J. McELHINNY
MATTHEW I. KREEGER
KRISTINA PASZEK
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
hmcelhinny@mofo.com
mkreeger@mofo.com
kpaszek@mofo.com

BETH S. BRINKMANN
BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, N.W.
Suite 5500
Washington, DC 20006-1888
(202) 887-1500
bbrinkmann@mofo.com
bmatsui@mofo.com

*Attorneys for Petitioner/Defendant*
Target Corporation

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure Rule 26.1, counsel for Target Corporation states that Target Corporation has no parent corporation, and there is no publicly held corporation that owns 10% or more of Target Corporation's stock.

sf-2404662

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT.............................................................i

INTRODUCTION...................................................................................................1

QUESTION PRESENTED .....................................................................................3

STANDARD OF REVIEW.....................................................................................3

STATEMENT OF THE CASE ...............................................................................4

RELIEF SOUGHT .................................................................................................7

REASONS FOR GRANTING PERMISSION TO APPEAL...................................8

I.     THE ORDER CERTIFYING NATIONWIDE AND STATEWIDE
CLASSES IS MANIFESTLY ERRONEOUS .................................................8

     A.     The Nationwide Class Was Certified Without a Class
Representative, Based on Inadequate Evidence of Numerosity,
Pursuant to an Unfettered Expansion of the ADA Beyond
Physical Locations, and Assuming All the Plaintiffs'
Allegations Were True .........................................................................8

     B.     The California Subclass Was Certified Under Rule 23(b)(2)
Despite the Predominance of Damages Issues, Without Actual
Evidence of Numerosity, and in Blatant Disregard of Settled
California Law Requiring a Showing of Intentional
Discrimination and Denial of Access....................................................15

II.     THIS CASE PRESENTS IMPORTANT ISSUES THAT LIKELY
WILL EVADE REVIEW ABSENT PERMISSION TO APPEAL AT
THIS TIME .....................................................................................................19

CONCLUSION .......................................................................................................20

ii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allison v. Citgo Petroleum Corp.,*
151 F.3d 402 (5th Cir. 1998) ............................................................... 15

*Blair v. Equifax Check Servs., Inc.,*
181 F.3d 832 (7th Cir. 1999) ............................................................... 20

*Castano v. Am. Tobacco Co.,*
84 F.3d 734 (5th Cir. 1996) ................................................................. 20

*Celano v. Marriott Int'l, Inc.,*
242 F.R.D. 544 (N.D. Cal. 2007) ........................................................ 13

*Chamberlan v. Ford Motor Co.,*
402 F.3d 952 (9th Cir. 2005) ........................................................... 3, 20

*General Tel. Co. of the Southwest v. Falcon,*
457 U.S. 147 (1982) .......................................................................... 8, 14

*General Telephone Co. of the Northwest, Inc. v. Equal Employment
Opportunity,*
446 U.S. 318 (1980) .............................................................................. 11

*Gibson v. Local 40,*
543 F.2d 1259 (9th Cir. 1976) ............................................................... 9

*Gunther v. Lin,*
144 Cal. App. 4th 223 (2006) ........................................................ 16, 18

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) ............................................................... 14

*Harris v. Capital Growth Investors XIV,*
52 Cal. 3d 1142 (1991) .................................................................. 17, 18

iii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Initial Public Offering Sec. Litig.,*
  471 F.3d 24 (2d Cir. 2006)....................................................................... 14

*James v. City of Dallas,*
  254 F.3d 551 (5th Cir. 2001) ................................................................... 12

*Kremens v. Bartley,*
  431 U.S. 119 (1977)................................................................................... 9

*Lemon v. Int'l Union of Operating Eng'gs, Local No. 139,*
  216 F.3d 577 (7th Cir. 2000) ................................................................... 15

*Lierboe v. State Farm Mutual Automobile Ins. Co.,*
  350 F.3d 1018 (9th Cir. 2003) ........................................................... 1, 10

*Lozano v. AT&T Wireless Servs., Inc.,*
  Nos. 05-56466, 05-5651, 2007 U.S. App. LEXIS 22430 (9th Cir. Sept.
  20, 2007) .................................................................................................... 3

*Molski v. Gleich,*
  318 F.3d 937 (9th Cir. 2003) ................................................................... 15

*Moore v. Hughes Helicopters, Inc.,*
  708 F.2d 475 (9th Cir. 1983) ..................................................................... 4

*Murray v. Auslander,*
  244 F.3d 807 (11th Cir. 2001) ................................................................. 15

*Ortiz v. Fibreboard Corp.,*
  527 U.S. 815 (1999)................................................................................. 15

*Probe v. State Teachers' Retirement Sys.,*
  780 F.2d 776 (9th Cir. 1986) ..................................................................... 3

iv

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Robinson v. Metro-North Commuter R.R.,*
  267 F.3d 147 (2d Cir. 2001) ............................................................... 15

*Urhausen v. Longs Drug Stores California, Inc.,*
  155 Cal. App. 4th 254 (2007) ...................................................... 18, 19

*Weyer v. Twentieth Century Fox Film Corp.,*
  198 F.3d 1104 (9th Cir. 2000) ....................................................... 5, 13

## STATUTES

Cal. Civ. Code
  § 51 ....................................................................................................... 1
  § 54.1 .................................................................................................... 1

Federal Rules of Civil Procedure
  Rule 23 ....................................................................................... 9, 11, 14
  Rule 23(a) .............................................................................................. 8
  Rule 23(f) ..................................................................................... *passim*

Federal Rules of Appellate Procedure
  Rule 26.1 ................................................................................................ i

v

## INTRODUCTION

In a decision that affects virtually every commercial website in the United States, the district court certified a nationwide class and California subclass of blind people who have difficulty using the website Target.com, asserting claims under the Americans with Disabilities Act ("ADA") and the state Unruh Civil Rights Act, Cal. Civ. Code § 51, and Disabled Persons Act, Cal. Civ. Code § 54.1. The class certification order contains *at least* three manifest errors.[1]

First, after granting summary judgment to dismiss the claim of the only representative of the nationwide class, the district court nonetheless certified the class under the ADA, with leave to identify a representative later. This decision is directly contrary to this Court's holding in *Lierboe v. State Farm Mutual Automobile Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003).

Second, the district court certified both a nationwide class and a statewide subclass without any evidence to support a finding that the numerosity requirement has been satisfied. The district court relied on speculation based on census data as to the rough number of *all* blind people in the country and the estimated number who use screen-reader software. Such speculation plainly is insufficient to

---

[1]  The district court's order of October 2, 2007 is attached as Exhibit A ("Ex. A"). Other supporting materials are contained in Target Corporation's concurrently filed Appendix ("APP").

1

establish that a large number of individuals are members of a purported class who want to shop at Target stores.

Third, the district court disregarded Ninth Circuit law as to the scope of the ADA, and California Supreme Court and intermediate appellate court law as to the scope of the Unruh Act and the Disabled Persons Act, and created classes without any cognizable claims. The district court unjustifiably expanded the scope of these statutes in ways that eviscerated several individual issues that would have defeated class certification.

Review is necessary at this point in time because the sheer breadth of the district court's class certification expands the scope of claims from just a handful of possible plaintiffs to a large and amorphous potential class based solely on unsubstantiated speculation and inapposite statistical data. The litigation costs, administrative burden, and the potential for damages due to the court's certification of a California subclass for damages make it unlikely that this Court will subsequently get the opportunity to review these important issues of law which fundamentally affect how businesses must engage in commerce on the internet. Resolution of these novel issues is warranted at the earliest opportunity.

## QUESTION PRESENTED

Whether this Court should grant permission under Federal Rule of Civil Procedure 23(f) to appeal the district court's order certifying nationwide and statewide classes.

## STANDARD OF REVIEW

This Court has "unfettered discretion" to permit an appeal from an order certifying a class. Fed. R. Civ. P. 23(f), Advisory Committee's Note. Review of a district court's certification order is appropriate when "the district court's class certification decision is manifestly erroneous" or when "the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). These are "guidelines" that impart discretion rather than impose a "rigid rule" or an exclusive list. The Court retains discretion to grant an interlocutory appeal under Rule 23(f) when it considers it appropriate.

A district court's decision regarding class certification is reviewed for abuse of discretion. *Lozano v. AT&T Wireless Servs., Inc.*, Nos. 05-56466, 05-5651, 2007 U.S. App. LEXIS 22430 *12 (9th Cir. Sept. 20, 2007). The application of an incorrect legal standard or other error of law, of course, always constitutes an abuse of discretion. *Id.*; *see also Probe v. State Teachers' Retirement Sys.*,

3

780 F.2d 776, 779 (9th Cir. 1986); *Moore v. Hughes Helicopters, Inc.*, 708 F.2d
475, 479 (9th Cir. 1983).

## STATEMENT OF THE CASE

By plaintiffs' own accounts, this is a case of first impression involving novel
questions of law that could have broad implications for *every* commercial entity on
the internet. One individual (Bruce Sexton) and two organizations (the National
Federation of the Blind and the National Federation of the Blind of California)
filed this putative class action against Target Corporation on behalf of all legally
blind individuals who have attempted to access the Target.com website. The crux
of plaintiff's complaint is that the Target.com website is inaccessible to the blind
because it contains "access barriers"—*viz.*, it allegedly lacks special computer code
embedded beneath the graphics that would allow blind individuals who have and
use screen reader software to navigate and make purchases on the website.
Plaintiffs contend that, as a result, they are entitled to declaratory and injunctive
relief under the federal Americans with Disabilities Act. Plaintiffs also seek
damages and equitable relief on behalf of a California subclass under California's
Unruh Act and Disabled Persons Act.

Plaintiffs moved for class certification under Rule 23(b)(2) and for
bifurcation of the liability and damages phases of trial. They submitted 22
declarations from purported class members. Target opposed certification and

4

moved for summary judgment as to the claims of the only individual named plaintiff, Bruce Sexton.

Prior to certification, the district court limited the nationwide class definition to blind individuals "who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target retail stores." (APP C at 53.)[2] The court expressed concern, however, "whether any of the declarants satisfy the class definition" because "none of the declarants has stated that the website has impeded their access to the stores." (*Id.*) Accordingly, rather than deny the motion for class certification at that time, the court invited the plaintiffs to "submit class member declarations that are more compelling with respect to the use of the website to access Target stores." (*Id.*) In response to this

---

[2] The district court narrowed the class definition because Target had demonstrated that plaintiffs could not state an ADA claim under *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000). *Weyer* unequivocally held that a "place of public accommodation" for purposes of Title III of the ADA must be a *physical* place and, of course, the internet is not. *Weyer* squarely bars plaintiffs' ADA claim, but the district court refused to follow *Weyer* and ruled that an ADA violation may be based on unequal access to a website where there is some undefined "nexus" between the website and a place of public accommodation. (APP A at 5.) The district court held: "to the extent that plaintiffs allege that the inaccessibility of Target.com impedes the full and equal enjoyment of goods and services offered in Target stores, the plaintiffs state a claim." (*Id.* at 11.) The district court then also sustained plaintiffs' state law claims on the ground that a violation of the ADA is a violation of the Unruh Act and the Disabled Persons Act.

5

admonition, plaintiffs submitted 34 additional declarations, many of them from previous declarants.

On October 2, 2007, the district court filed the order at issue in the instant dispute. The court granted Target's motion for summary judgment as to Sexton's ADA claim, concluding that Sexton could not demonstrate that his purported "inability to access Target.com renders him unable to access the goods and services of Target stores." (Ex. A at 24.) Yet, in the same order, the court granted plaintiffs' motion for class certification and certified both a nationwide class and a California subclass under Rule 23(b)(2).

As to the ADA claim, although Sexton had been determined not to have a claim, the district court nonetheless certified the nationwide class without identifying any class representative. The district court's unprecedented solution to this problem was to allow plaintiffs thirty days within which to substitute another plaintiff, not yet identified. In other words, the district court certified the nationwide class on the assumption that an unknown substitute representative would be an adequate representative, and that his or her claims would be typical of the class, even though the claim of the class representative put forward by the

6

plaintiffs' to represent the class claims was not adequate and there was no evidence that any representative would provide an adequate claim.[3]

For the state law claims, the district court certified a California subclass under Rule 23(b)(2), even though damages claims plainly predominated. The district court further held that the Disabled Persons Act does not require any showing of nexus to a physical place, and thus applies to every website visited by a Californian. Refusing to follow an express decision of the California Supreme Court, the district court also held that a showing of intentional discrimination is not a requisite element of a claim under the Unruh Act. As a result, the district court was able to certify the state law damages subclass without requiring any individualized showing of discriminatory intent or denial of access. The court concluded that Sexton's state law claims are typical and common.

## RELIEF SOUGHT

This court should grant interlocutory review of the class certification order, and, after briefing on the merits, vacate the order.

---

[3] The district court noted that the plaintiffs had submitted additional declarations, but "decline[d] to decide, at the class certification stage, which of the declarants' purported injuries constitute violations of the ADA. Those questions reach the ultimate merits of this action." (Ex. A at 10.)

7

## REASONS FOR GRANTING PERMISSION TO APPEAL

I. **THE ORDER CERTIFYING NATIONWIDE AND STATEWIDE CLASSES IS MANIFESTLY ERRONEOUS**

A. **The Nationwide Class Was Certified Without a Class Representative, Based on Inadequate Evidence of Numerosity, Pursuant to an Unfettered Expansion of the ADA Beyond Physical Locations, and Assuming All the Plaintiffs' Allegations Were True**

Rather than conduct a "rigorous analysis" of the requirements of Rule 23(a) before certifying a class, *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982), the district court speculated as to the existence of a class representative and whether the class could satisfy the numerosity requirement, thereby disregarding well-settled precedent from this Court and the Supreme Court of the United States.

**1. A class without a representative**: Four separate times plaintiffs have proffered declarations by Sexton, the *only* named class representative, and each time the district court has concluded that he "has not demonstrated that his inability to access Target.com renders him unable to access the goods and services of Target stores." (Ex. A at 24.) So futile were plaintiffs' efforts that they were instructed by the district court *not* to submit a fifth declaration on behalf of Sexton, and the court instead granted summary judgment for Target on his ADA claim. (Ex. A at 25.) The putative nationwide class thus was left without a class representative.

Rather than accept the obvious possibility that if a *hand-picked* class representative cannot demonstrate the necessary prerequisites under Rule 23 then perhaps no one could, the district court instead speculated that "some of the putative class members would present the same type of legal and remedial theory as the unnamed class members." (Ex. A at 20.)  Citing *Kremens v. Bartley*, 431 U.S. 119, 135 (1977), and *Gibson v. Local 40*, 543 F.2d 1259, 1263 (9th Cir. 1976), the district court announced a new legal rule: that "[a]s long as the proposed class satisfies the requirements of Rule 23, the court may certify the class conditioned upon the substitution of another named plaintiff." *Id.*

But that analysis puts the cart before the horse.  Contrary to the district court's ruling, courts permit "substitution" of named plaintiffs only *after* a class has been properly certified.  In *Kremens*, to the extent substitution was proper, the class had *already* been certified when the named plaintiff's claims became moot. *See Kremens*, 431 U.S. at 135.  Likewise, in *Gibson* this Court merely noted in dicta that, even if the named representatives of a properly certified class could not prove their particular claims *at trial* (they in fact had succeeded), a class action may still proceed.  Neither case permits a district court to certify a class without a showing that the named plaintiff has a claim.

Indeed, this Court expressly rejected an approach like the one taken by the district court here in a virtually indistinguishable appeal under Rule 23(f).

9

*Lierboe v. State Farm Mutual Automobile Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003).

There, the defendant challenged the state law claims of the only named plaintiff,

and the district court "certified to the Supreme Court of Montana two questions of

state law" for proper resolution of the motion. *Id.* at 1021. While the motion to

dismiss was pending, however, the district court nonetheless certified the class,

believing that "whether [the plaintiff has a claim] is not relevant for the purposes

of class certification." *Id.* at 1022. Ultimately, the Montana Supreme Court

determined that the named plaintiff had no claim. *Id.* at 1021.

This Court held that the certification was error, and that the district court

should not have certified the class before it even knew if the plaintiff could state a

claim for relief. *Id.* at 1022. "[S]tanding is the threshold issue in any suit. If the

individual plaintiff lacks standing, the court need never reach the class action

issue." *Id.* (quoting 3 Herbert B. Newberg on Class Actions § 3.19 at 400 (4th ed.

2002)). This Court held that substitution might be possible where the class

representative's claims become moot, *id.*; *see also id.* at 1023 n.6, but because the

*Lierboe* plaintiff "has and had" no claim, class certification should have been

denied. *Id.* at 1023. Indeed, in circumstances such as these, this Court explained,

outright dismissal is the proper result. *Id.*

The manifest error of the decision below cannot be disputed. Nowhere did

the district court attempt to identify who the new class representative might be.

10

sf-2404662

Nor did the court undertake any analysis of whether this unknown representative's claims—if such a person exists—were typical (*i.e.*, "to limit the class claims to those fairly encompassed by the named plaintiff's claims," *General Telephone Co. of the Northwest, Inc. v. Equal Employment Opportunity*, 446 U.S. 318, 330 (1980)), or whether he or she could adequately represent the class. Indeed, by certifying a class without a representative, the district court obviated some of the most basic and fundamental limitations under Rule 23: whether the typicality and adequacy requirements had been met.

 **2. Inadequate evidence of numerosity**: Compounding its certification of a class without a representative, the district court assumed that the class had been shown to be numerous. Even though the nationwide class was defined by the district court as "[a]ll legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores," (Ex. A at 6), the *only* concrete and reliable evidence upon which the district court based its ruling was the number of blind people in the United States and California who are estimated to use screen-reader software. Indeed, the sum total of plaintiffs' evidence as to numerosity was: (1) a declaration with excerpts from a 2002 survey conducted by the U.S. Census Bureau, estimating the total number of blind individuals in the United States and in California (Ex. A at 18 (citing Brome Declaration)); (2)

11

portions of a declaration estimating the number of blind users of screen-reader

software.  (*Id.* (citing Taylor declaration).); and (3) declarations from purported

class members, some who "tried to access in-store information on Target.com and

could not."  (*Id.* at 19.)  The district court "decline[d] to decide, at the class

certification stage, which of the declarants' purported injuries constitute violations

of the ADA."  (*Id.* at 10.)

But the mere existence of disabled individuals who use screen-reader

software cannot satisfy the numerosity requirement when there is no evidence as to

how many of those people shop, or want to shop, at Target.  *James v. City of*

*Dallas*, 254 F.3d 551, 570 (5th Cir. 2001) ("a plaintiff must ordinarily demonstrate

some evidence or reasonable estimate of the number of purported class members").

Plaintiffs offered no evidence showing that numerous blind people have

"attempted to access Target.com and as a result have been denied access to the

enjoyment of goods and services offered in Target retail stores."

Plaintiffs submitted a declaration from an employee of the National

Federation of the Blind, with testimony plaintiffs hoped would provide the critical

missing link in the district court's opinion—the likelihood that blind users of

screen-reader software would have visited the Target.com website.  But the district

court granted Target's motion to strike that testimony because it was purely

speculative, not based on personal knowledge nor submitted by a qualified expert.

12

(Ex. A at 29-30.) Absent such evidence, the plaintiffs simply did not satisfy their burden of showing that the numerosity requirement was met. *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("Plaintiffs' census data and statistics . . . provide[] no insight into how many disabled people who would like to play golf, at Marriott courses, are deterred from doing so because of the absence of single-rider carts.").

**3. Disregard of Ninth Circuit law that correctly limits the access requirements of the ADA to physical locations**: The district court further engaged in manifest error when it created a class that is not cognizable under the ADA. This decision to certify a nationwide class was premised on its decision to expand the ADA to cover an allegedly inaccessible website. In *Weyer*, this Court held that a "place of public accommodation" under the ADA is limited to an "actual physical place." 198 F.3d at 1114.

Notwithstanding this clear authority, the district court certified a nationwide ADA class to pursue a claim based on supposed accessibility barriers found solely on the Target.com website, provided that the plaintiffs could show problems encountered on the website had some undefined "nexus" to Target's physical stores. Target is not aware of any other case permitting an ADA claim to proceed based on a supposedly inaccessible "virtual" place, let alone such a claim that has been allowed as a nationwide class action.

13

**4. Acceptance of the plaintiffs' allegations as true, contrary to governing case law**: The district court failed to analyze rigorously the facts underlying the Rule 23 requirements, believing that it was required to "accept the substantive allegations contained in plaintiffs' complaint as true." (Ex. A at 10 (citing *McCarthy v. Kleindienst*, 741 F.2d 1406 (D.C. Cir. 1984).)

The district court was incorrect as a matter of law. Cases from the Supreme Court, this Court, and other circuit courts all confirm that a district court facing a motion for class certification should not accept as true the allegations of the complaint. Instead, the court should grant class certification only if it makes factual findings necessary to support the Rule 23 requirements. *Falcon*, 457 U.S. at 161; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (courts "consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case"). As the Second Circuit recently held, a district court can certify a class only "if the judge . . . finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met." *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

**B.    The California Subclass Was Certified Under Rule 23(b)(2) Despite the Predominance of Damages Issues, Without Actual Evidence of Numerosity, and in Blatant Disregard of Settled California Law Requiring a Showing of Intentional Discrimination and Denial of Access**

As with the nationwide class, the district court failed to conduct the required "rigorous analysis" of the facts needed to support certification of the state subclass.

**1. A damages subclass under Rule 23(b)(2):** Rule 23(b)(2) permits certification of a mandatory, non-opt-out class that meets the requirements of 23(a) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final *injunctive relief or corresponding declaratory relief* with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2) (emphasis added). The Supreme Court has recently cast doubt on whether damages claims can ever be certified under Rule 23(b)(2). *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 844 (1999). This Court has held in *Molski v. Gleich*, 318 F.3d 937, 950 (9th Cir. 2003), however, that a district court must carefully examine "the specific facts and circumstances" of a proposed class seeking both damages and equitable relief before it can be certified under Rule 23(b)(2). In particular, if the "intent of the plaintiffs" indicates that damages issues predominate, the class should not be certified under Rule 23(b)(2). *Id.*[4]

---

[4] Target maintains that damages actions should not be certifiable under Rule 23(b)(2). There is a split of authority among the courts regarding the circumstances under which damages claims can be certified under Rule 23(b)(2).

(Footnote continues on next page.)

sf-2404662

The district court committed manifest error in this case in certifying a Rule 23(b)(2) California subclass under the Unruh and Disabled Persons Acts, because damages issues plainly predominated for the purported subclass. The nationwide class provided plaintiffs with an opportunity to pursue equitable relief under the ADA. Damages, however, were available to the plaintiffs only under state law. The whole purpose of the state subclass is to recover statutory damages of $4,000 "for each and every offense" or $1,000 "for each offense." *See Gunther v. Lin*, 144 Cal. App. 4th 223, 256 (2006) (describing the "inundation of the federal courts with litigation in which the quest for the minimum $4,000 penalty under state law predominates . . . state law claims have become the tails that wag the dog of federal ADA litigation in California").

Indeed, plaintiffs' own briefs in support of class certification referred to the California class as "the damages subclass." (*See* Plaintiffs' Reply Brief in Support of Motion for Class Certification, APP B at 41 ("CERTIFICATION OF THE DAMAGES SUBCLASS UNDER RULE 23(b)(2) IS APPROPRIATE "); Plaintiffs' Supplemental Brief in Support of Motion for Class Certification, APP D at 65 ("THE PROPOSED DAMAGES SUBCLASS IS INJURED BY DENIAL

---

(Footnote continued from previous page.)

*See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998); *Lemon v. Int'l Union of Operating Eng'gs, Local No. 139*, 216 F.3d 577, 580-81 (7th Cir. 2000); *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001); *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 162-67 (2d Cir. 2001).

16

OF ACCESS TO TARGET.COM").) Plaintiffs proposed, and the district court ordered, a two-phase trial, where the entire second phase would be devoted to state law damages claims. Under the facts and circumstances of this case, the district court manifestly erred in certifying a damages subclass under Rule 23(b)(2).

**2. Inadequate evidence of numerosity:** As with the nationwide class, the district court committed manifest error when it based its certification of a subclass for state law claims on a finding, without supporting evidence, that there is a numerous class of blind Californians who have had difficulty accessing the Target.com website. Plaintiffs offered no admissible evidence on that subject; the district court improperly relied on census data about the number of blind individuals in California.

**3. Disregard of controlling state law authority that requires proof of intentional discrimination under the Unruh Act and denial of access under the Disabled Persons Act:** In order to avoid the inescapable conclusion that the California Unruh Act requires each plaintiff to prove discriminatory intent by Target, and that the Disabled Persons Act is limited to access to physical places, the district court certified the state law subclass by refusing to follow controlling decisions of the California Supreme Court and a California court of appeal. The California Supreme Court held in *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142 (1991), that a claim under the Unruh Act requires proof of

17

intentional discrimination. *Id.* at 1175.  A California appellate court confirmed that the *Harris* intentional discrimination standard applies to all Unruh Act claims, even where the plaintiff also alleges a violation of the ADA.  *Gunther v. Lin*, 144 Cal. App. 4th 223 (2006).[5]

The district court disagreed.  Instead, it ruled that it "is not persuaded that the California Court of Appeals [in *Gunther v. Lin*] properly acknowledged the unique nature of disability discrimination in applying *Harris* to disability claims for damages." (Ex. A at 27.)  The district court certified the Unruh Act class without requiring any individualized showing of intent to discriminate against particular class members.  (Ex. A at 15 (the "intent requirement, *if one exists*, of the Unruh Act does not render class certification inappropriate") (emphasis added).)  The district court's refusal to follow controlling California authority constitutes manifest error.

The district court also manifestly erred in interpreting the Disabled Persons Act.  In *Urhausen v. Longs Drug Stores California, Inc.*, 155 Cal. App. 4th 254 (2007), the Court of Appeal described the standing requirements for bringing a damages action under the Disabled Persons Act:  "a plaintiff cannot recover damages under [the act ] unless the violation [of the act] actually denied him or her

---

[5] Here, of course, the only named representative, Sexton, cannot rely on the ADA as his ADA claim has been dismissed on the merits.

18

equal access to some public facility." *Id.* at 266. In *Urhausen*, the plaintiff was injured while crossing a parking space with a slope that violated applicable regulations. Nonetheless, the court ruled that the damages claim should have been dismissed because the plaintiff could not prove "that the failure . . . to comply with applicable regulations denied her equal access to Longs. Putting aside her injury, plaintiff makes no attempt to argue that the lack of compliance would, in fact, have prevented her from reaching the entrance of the store." *Id.* at 266.

The plaintiffs' claims in this case should have been analyzed according to the *Urhausen* standard. It was not enough for the plaintiffs to complain about unequal access to the website; they needed to show they had been denied access to Target's stores.

## II.    THIS CASE PRESENTS IMPORTANT ISSUES THAT LIKELY WILL EVADE REVIEW ABSENT PERMISSION TO APPEAL AT THIS TIME

Immediate review is necessary in this case because the sweeping nationwide class certified here guarantees that this litigation will be extremely complex and extraordinarily costly. Plaintiffs' failure to find an adequate representative and the absence of any nonspeculative evidence as to the number of class members both underscore the difficulties that the instant case presents. The district court's willingness to rely on unsubstantiated speculation and inapposite statistical data creates the possibility that the scope of this case could grow and create potentially

19

novel liability. Judicial economy will be served by deciding the propriety of class-wide treatment at this time.

An interlocutory appeal also will allow development of class action jurisprudence and provide guidance on important, unsettled legal issues facing judges and litigants in this Circuit. *Chamberlan*, 402 F.3d at 959. Absent interlocutory review, class certification rulings often become unreviewable rulings because they invite prohibitive litigation costs that coerce settlement despite valid defenses on the merits. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 746 & n.22 (5th Cir. 1996); *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999) (some plaintiffs and courts "may be tempted" to use a class "to wring settlements from defendants whose legal positions are justified but unpopular").

## CONCLUSION

For the foregoing reasons, Target respectfully requests permission to appeal the class certification order.

Dated: October 16, 2007            Respectfully Submitted,

                                   By: _Harold J. McElhinny_
                                       Harold J. McElhinny
                                       MORRISON & FOERSTER LLP

                                       *Attorneys for Petitioner/Defendant*
                                       TARGET CORPORATION

20

# EXHIBIT A

1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NATIONAL FEDERATION OF THE BLIND,
the NATIONAL FEDERATION OF THE BLIND OF
CALIFORNIA, on behalf of their members, and
BRUCE F. SEXTON, on behalf of himself and all
others similarly situated,

        Plaintiffs,

    v.

TARGET CORPORATION,

        Defendant.

No. C 06-1802 MHP

**MEMORANDUM & ORDER**
**Re: Plaintiffs' Motion for Class**
**Certification and Motion to Bifurcate;**
**Defendant's Motion for Summary**
**Judgment**

    Plaintiffs National Federation of the Blind ("NFB"), National Federation of the Blind of

California ("NFB-CA"), Bruce Sexton, and all those similarly situated, filed this action against

Target Corporation ("Target"), seeking declaratory, injunctive and monetary relief. Plaintiffs claim

that Target.com is inaccessible to the blind, and thereby violates federal and state laws prohibiting

discrimination against the disabled. Now before the court is plaintiffs' motion for class certification

and motion for bifurcation; defendant's motion for summary judgment and the parties' supplemental

briefing on the state law claims. Having considered the parties' arguments and submissions, and for

the reasons set forth below, the court enters the following memorandum and order.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  BACKGROUND[1]

2  I.    Parties

3      Plaintiffs NFB and NFB-CA are non-profit organizations.  NFB is a nationwide organization

4  with a 50,000 strong membership, composed primarily of blind individuals.  NFB-CA is the

5  California affiliate of NFB.  The purpose of NFB is to promote the general welfare of the blind by

6  (1) assisting the blind in their efforts to integrate themselves into society on terms of equality and (2)

7  removing barriers and changing social attitudes, stereotypes and mistaken beliefs that sighted and

8  blind persons hold concerning the limitations created by blindness and that result in the denial of

9  opportunity to blind persons in virtually every sphere of life.  These organizations have brought suit

10  on their own behalf and on behalf of their members.

11      Plaintiff Sexton is a member of the NFB and the NFB of California.  He is legally blind and

12  uses JAWS screen reading software to access the internet.  Sexton Apr. 12, 2006 Dec. ¶¶ 2, 13.

13  Sexton relies on the internet for a variety of functions and frequently uses the internet in order to

14  "research products, compare prices, and make decisions about purchasing goods in the stores'

15  physical locations." Id. ¶ 16.  He has attempted to use Target.com with his screen reader on

16  "numerous occasions" but has been unable to access certain features of the website.  Id. at ¶ 32.

17      Defendant Target operates approximately 1,400 retail stores nationwide, including 205 stores

18  in California.  Target.com is a website owned and operated by Target.  By visiting Target.com,

19  customers can purchase many of the items available in Target stores.  Target.com also allows a

20  customer to perform functions related to Target stores.  For example, through Target.com, a

21  customer can access information on store locations and hours, refill a prescription or order photo

22  prints for pick-up at a store, and print coupons to redeem at a store.

23

24  II.    Background

25      Plaintiffs allege that Target.com is not accessible to blind individuals.  According to

26  plaintiffs, designing a website to be accessible to the blind is technologically simple and not

27  economically prohibitive.  Protocols for designing an accessible internet site rely heavily on

28  "alternative text":  invisible code embedded beneath graphics.  A blind individual can use screen

UNITED STATES DISTRICT COURT
For the Northern District of California

1    reader software, which vocalizes the alternative text and describes the content of the webpage.

2    Similarly, if the screen reader can read the navigation links, then a blind individual can navigate the

3    site with a keyboard instead of a mouse.  Plaintiffs allege that Target.com lacks these features that

4    would enable the blind to use Target.com.  Since the blind cannot use Target.com, they are denied

5    full and equal access to Target stores, according to plaintiffs.

6

7    III.    Procedural History

8           On February 7, 2006 plaintiffs filed this action in Superior Court of California for the County

9    of Alameda.  On March 9, 2006 defendant removed the case to federal court and subsequently filed a

10   motion to dismiss the complaint for failure to state a claim.  In its motion, defendant claimed that

11   each of the anti-discrimination laws protecting the disabled—the Americans with Disabilities Act,

12   42 U.S.C. section 12182, ("ADA"), Unruh Civil Rights Act, Cal. Civ. Code section 51 ("Unruh

13   Act"), and the Disabled Persons Act, Cal. Civ. Code section 54.1 ("DPA")—cover access to

14   physical spaces only.  Since Target.com is not a physical space, defendant asserted that the

15   complaint does not state a claim under these laws.  On September 5, 2006 the court granted in part

16   and denied in part defendant's motion to dismiss.  The court reasoned that the inaccessibility of

17   Target.com impeded full and equal enjoyment of goods and services offered in Target stores

18   pursuant to the ADA.  Thus, the court dismissed plaintiffs' claims to the extent that they are based

19   on Target.com features that are unconnected to the stores.  The court also denied the motion to

20   dismiss plaintiffs' state law claims.  At the same time, the court denied plaintiffs' request for a

21   preliminary injunction as premature.

22          Plaintiffs filed the instant motion for class certification on February 1, 2007.  On March 8,

23   2007 defendant filed a motion for summary judgment on the grounds that plaintiff Sexton has not

24   suffered a cognizable injury under the ADA.  The court held an initial hearing on these matters on

25   April 12, 2007.  At the hearing, the court requested supplemental briefing on the reach of the

26   relevant state statutes before ruling on the class certification motion as it related to the California

27   subclass.  Following the hearing, the court issued an order on the motion for class certification on

28   April 25, 2007.  In its order, the court narrowed the proposed class definition for the nationwide

UNITED STATES DISTRICT COURT
For the Northern District of California

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1  class to include the nexus requirement from its earlier order. Accordingly, the nationwide class

2  consists of all legally blind individuals in the United States who have attempted to access

3  Target.com and as a result have been denied access to the enjoyment of goods and services offered

4  in Target stores. Subsequently, the parties submitted supplemental briefing on whether the DPA and

5  the Unruh Act apply to websites. Plaintiffs also submitted supplemental declarations of class

6  members in accordance with the court's April 25, 2007 order. Both parties submitted additional

7  briefing on the class certification issues.

8

9  IV.    Recent Modifications to Target.com

10         After the filing of the present complaint, Target undertook certain modifications of its

11  website to make it more accessible to the blind. In response to this litigation, Target began drafting

12  Online Assistive Technology Guidelines based on plaintiffs' expert report. Nemoir Dep. at

13  21:18–22:5.

14

15  LEGAL STANDARD

16  I.    Motion for Class Certification

17         A party seeking to certify a class must satisfy the four prerequisites enumerated in Rule

18  23(a), as well as at least one of the requirements of Rule 23(b). Under Rule 23(a), the party seeking

19  class certification must establish: (1) that the class is so large that joinder of all members is

20  impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to

21  the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e.,

22  typicality); and (4) that the class representatives will fairly and adequately protect the interests of

23  other members of the class (i.e., adequacy of representation). Fed. R. Civ. P. 23(a). In addition to

24  satisfying these prerequisites, parties seeking class certification must show that the action is

25  maintainable under Rule 23(b)(1), (2) or (3). See Rule 23(b); Amchem Prods., Inc. v. Windsor, 521

26  U.S. 591, 614 (1997). Rule 23(b)(2) permits class actions for declaratory or injunctive relief where

27  the party opposing the class "has acted or refused to act on grounds generally applicable to the

28  class." Rule 23(b)(2).

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1    The party seeking class certification bears the burden of establishing that the requirements of

2    Rules 23(a) and 23(b) have been met. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180,

3    1188 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001); Hanon v. Dataproducts Corp., 976

4    F.2d 497, 508 (9th Cir. 1992). However, in adjudicating a motion for class certification, the court

5    accepts the allegations in the complaint as true so long as those allegations are sufficiently specific

6    to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied.

7    See Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976).

8    The merits of the class members' substantive claims are generally irrelevant to this inquiry. Eisen v.

9    Carlisle & Jacquelin, 417 U.S. 156, 177–78 (1974); Moore v. Hughes Helicopters, Inc., 708 F.2d

10   475, 480 (9th Cir. 1983).

11

12   II.    Motion for Summary Judgment

13   Summary judgment is proper when the pleadings, discovery and affidavits show that there is

14   "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

15   matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the

16   case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is

17   genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

18   party. Id. The party moving for summary judgment bears the burden of identifying those portions

19   of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material

20   fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party

21   will have the burden of proof at trial, the moving party need only point out "that there is an absence

22   of evidence to support the nonmoving party's case." Id.

23   Once the moving party meets its initial burden, the nonmoving party must go beyond the

24   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

25   genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving

26   party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.

27   1994). The court may not make credibility determinations, and inferences to be drawn from the

28   facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New

1  Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

2         The moving party may "move with or without supporting affidavits for a summary judgment

3  in the party's favor upon all [claims] or any part thereof." Fed. R. Civ. P. 56(a). "Supporting and

4  opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be

5  admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the

6  matters stated therein." Fed. R. Civ. P. 56(e).

7

8  DISCUSSION

9  I.      Motion for Class Certification

10        Plaintiffs seek certification of a nationwide class for claims arising under the Americans with

11  Disabilities Act, 42 U.S.C. sections 12101 et seq. and a California sub-class for violations of the

12  Unruh Civil Rights Act, California Civil Code sections 51 et seq. and the Disabled Persons Act,

13  California Civil Code sections 42 et seq. In its April 27, 2007 order the court defined the proposed

14  nationwide class as follows:

15        All legally blind individuals in the United States who have attempted to access Target.com
          and as a result have been denied access to the enjoyment of goods and services offered in
16        Target stores.

17  In that order, the court did not address the proposed class definition for the California sub-class.

18  Plaintiffs have proposed the following definition for the sub-class:

19        All legally blind individuals in California who have attempted to access Target.com, for
          plaintiffs' claims arising under the California Unruh Civil Rights Act, California Civil Code
20        §§ 51 et seq. and the Disabled Persons Act, California Civil Code §§ 54 et seq.

21  They ask the court to certify their claims for damages as well as injunctive relief under Rule

22  23(b)(2). Finally, they ask that Sexton be appointed as class representative and that Disability

23  Rights Advocates, Schneider & Wallace, Brown, Goldstein, Levy, LLP, and Dr. Peter Blanck be

24  appointed as class counsel. Before addressing the requirements for certifying a class under Rule 23,

25  the court must first address a number of preliminary issues.

26

27        A.      Jurisdictional Issues

28        In various parts of its submissions, defendant raises both standing and mootness challenges

6

1    to the proposed class action. Target argues that the organizational plaintiffs do not have standing to

2    pursue the proposed class action. In addition, Target contends that certain accessibility

3    modifications to the website have rendered plaintiffs' claims moot.

4              1.    <u>Standing</u>

5              NFB and NFB-CA are proper parties to the instant action. While not raising an explicit

6    standing challenge, Target argues that these two organizational plaintiffs are not members of the

7    putative class according to the proposed class definition, which includes only blind "individuals."

8    However, NFB and NFB-CA are parties to the complaint individually as well as on behalf of their

9    members. Lack of membership in the class does not defeat standing independent of a class nor can

10   the court contemplate any reason why the exclusion of the organizational plaintiffs from the class

11   definition is relevant.

12             Target further questions whether NFB and NFB-CA have demonstrated injury in their own

13   right, presumably for the purposes of organizational standing. Def.'s Opp. at 5. Even if the

14   organization has not suffered injury to itself, it may have standing to assert the rights of its members.

15   <u>Warth v. Seldin</u>, 422 U.S. 490, 511 (1975). Therefore, these organizations need not prove injury to

16   themselves.

17             If an organization has not suffered injury to itself, it may have standing to assert the rights of

18   its members if (1) its members would have standing to sue on their own; (2) the interests it seeks to

19   protect are germane to its purpose; and (3) its claim and requested relief do not require participation

20   by individual members. <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333, 343 (1977).

21   Plaintiffs have submitted declarations from members of both NFB and NFB-CA that demonstrate

22   that their members meet the requirements of standing: injury-in-fact, causation, and redressability.

23   <u>See, e.g.</u>, Sexton Dec. ¶ 33. Sexton is a member of both organizations. <u>Id.</u> ¶ 6–7. In his declaration,

24   Sexton describes his thwarted attempts to use Target.com to browse for products found in the Target

25   stores. <u>Id.</u> ¶ 33. He also describes his intention to use the website to search store-related weekly

26   specials and other features of the website. <u>Id.</u> He states that he is unable to do so because of website

27   accessibility barriers. <u>Id.</u> ¶ 32; <u>see also</u> Jacobson Dec. ¶ 20. For the purposes of the injury-in-fact

28   requirement, Sexton has demonstrated that he faces a concrete and particularized injury that is not

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   conjectural. <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.</u>, 528 U.S. 167, 181 (2000). The

2   accessibility barriers—lack of alt tags, keyboard accessibility, and headers—are traceable to the

3   conduct of the defendant. Moreover, Sexton's claims can be redressed by the equitable relief

4   sought. <u>Id.</u> The court concludes that Sexton has satisfied the Article III standing requirements, and,

5   therefore, NFB and NFB-CA may properly base their representational standing claim on Sexton's

6   standing.

7         Moreover, the instant action and requested relief is germane to the organizational plaintiffs'

8   purposes in protecting the interests of the blind. FAC ¶¶ 8–9.  Finally, these two plaintiffs seek

9   injunctive relief, which would not require the participation of individual members. The court,

10  therefore, finds that NFB and NFB-CA have standing as representatives of their members to pursue

11  their claims for injunctive relief both independently and as part of the class and subclass alleged.

12        Target argues that the two organizational plaintiffs do not have standing to pursue damages

13  on behalf of the California subclass. Certainly, it is unlikely, if not impossible, that organizational

14  plaintiffs would have standing to pursue damages claims because the form of relief necessarily

15  requires the participation of the individual members. <u>See Bano v. Union Carbide Corp.</u>, 361 F.3d

16  696, 714 (2d Cir. 2004) (observing that no federal appellate body had held that an "association has

17  standing to pursue damages claims on behalf of its members"). However, the court need not reach

18  this issue because Sexton has standing to pursue damages claims on behalf of the California

19  subclass. The parties do not dispute that the organizational plaintiffs have standing to pursue the

20  equitable relief sought by them independently and for the class.

21                2.    <u>Mootness</u>

22        Target points to several accessibility improvements on its website, which it made subsequent

23  to the filing of the instant complaint, to argue that plaintiffs' claims are moot.[2]  In response to the

24  accessibility report of plaintiffs' expert, Target has made certain modifications to its website.

25  Indeed, plaintiffs' expert concedes that the modifications have increased accessibility for the blind.

26  <u>See</u> Thatcher July 7, 2006 Dec.¶ 3 (remarking that the changes at Target.com have made it "more

27  likely that a blind user could complete a transaction"). Target does not assert that all of plaintiffs'

28  accessibility claims have been addressed by the recent modifications, and even the most favorable

8

1  understanding of these modifications would suggest that only one aspect of the claims has been fully

2  addressed: keyboard accessibility. Moreover, the continuous addition of new pages to Target.com

3  argues against a mootness finding. Aside from the incompleteness of the modifications and the

4  potential for new pages, it is well-settled law that "voluntary cessation of allegedly illegal conduct . .

5  . does not make the case moot." DeFunis v. Odegaard, 416 U.S. 312, 318 (1974) (citation and

6  quotation omitted). Therefore, the court rejects the argument that the post-filing modifications to

7  Target.com render plaintiffs' claims moot.

8

9        B.    Proposed Class Definitions

10        Target argues that two deficiencies in the proposed class definitions militate against

11  certification. First, it argues that the proposed definitions are overbroad, because they include

12  claims that the court dismissed in its previous order. Second, it contends that the proposed

13  definitions are not adequately defined or ascertainable. Having addressed both issues in its previous

14  class certification order, the court need not consider those here.

15

16        C.    Supplemental Declarations

17        Target contends that plaintiffs' efforts to certify a class must fail because all of the putative

18  class member declarants were able to access the goods and services of Target stores. The court has

19  examined each of the thirty-four supplemental declarations submitted by plaintiffs in response to the

20  court's previous class certification order.

21        Styled as a challenge to class certification, Target's argument addresses the merits of whether

22  plaintiffs have suffered an injury under the ADA's requirement of "full and equal enjoyment of the

23  goods [and] services . . . of any place of public accommodation." 42 U.S.C. § 12182(a). This

24  dispute is dangerously close to asking the court to make a preliminary inquiry into the merits of

25  plaintiffs' claims in determining whether to certify a class. See Eisen v. Carlisle & Jacquelin, 417

26  U.S. 156, 177 (1974). Alternatively, Target's position sounds as a standing challenge. Neither view

27  is persuasive.

28        A preliminary inquiry into the merits of plaintiffs' claims at the class certification stage is

9

1   inappropriate. Id. The court may only scrutinize plaintiffs' legal causes of action to determine

2   whether they are suitable for resolution on a class-wide basis. See, e.g., Moore v. Hughes

3   Helicopters, Inc. 708 F.2d 475, 480 (9th Cir. 1983). This inquiry requires the court to accept the

4   substantive allegations contained in plaintiffs' complaint as true and analyze only whether the

5   asserted claims or defenses are susceptible of resolution on a class-wide basis. See McCarthy v.

6   Kleindienst, 741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984). Target asks the court to determine which of

7   plaintiffs' alleged injuries constitute a denial of access to the stores for the purposes of the ADA; in

8   essence, this would require the court to make a liability determination at this stage. The court

9   declines to decide, at the class certification stage, which of the declarants' purported injuries

10  constitute violations of the ADA. Those questions reach the ultimate merits of this action.

11      Rather, the court has reviewed each of the supplementary declarations to determine whether

12  the putative class members meet the class definition. The court is satisfied that many of the putative

13  class members have alleged that they were denied access to the enjoyment of goods and services

14  offered in Target stores as a result of their inability to access Target.com. The declarations present

15  two types of alleged access problems: diverted purchases and in-store barriers.

16      Some of the putative class members were deterred from going to Target stores after their

17  experiences with the website. See, e.g., Williamson Dec. ¶ 17 ("I was not able to locate any

18  products or access any product descriptions. . . . I gave up . . . and ended up finding the video game I

19  was looking for on Wal-Mart's website and purchased the game from our local Wal-Mart store");

20  Carranza Dec. ¶ 12 ("I tried, without success, to use Target's website before shopping at my local

21  Target store. . . . The layout of the website was extremely confusing and large portions of

22  information appeared to be missing. So, I went to [another] store's website instead. I easily selected

23  a gift from that store's online registry and a friend of mine purchased it from the local store.").

24  Target dismisses these diverted purchases as speculative, depending on a number of unsubstantiated

25  assumptions about the availability of products in the stores. Certainly, products listed on a gift

26  registry, like the one Ms. Carranza attempted to access, are expected to be available in the stores; her

27  diverted purchase was not based solely on speculation. See Carranza Dec. ¶ 12. Moreover, Target's

28  argument based on the speculative purchases would defeat most ADA claims. There is no

UNITED STATES DISTRICT COURT
For the Northern District of California

10

1    requirement that a plaintiff who encounters physical accessibility barriers—such as a wheelchair

2    user who confronts a store without ramps at its entrance—must provide a shopping list of products

3    available at the store in order to proceed with an ADA claim. Rather, it is sufficient that the putative

4    class members have alleged that they were denied access, by being diverted to another store, in order

5    to meet the class definition. Again, this showing does not establish that any of the alleged injuries

6    were, in fact, a denial of access under the ADA.

7        To put to rest any latent standing challenges on the basis of the declarations presented, the

8    court notes that putative class members who have been deterred from shopping at Target altogether

9    have standing to proceed on their ADA claims. Pickern v. Holiday Quality Foods Inc. suggests that

10   for the purposes of standing, class members need not have engaged in a "futile gesture" to gain

11   access to the store when they knew that it would likely be inaccessible. 293 F.3d 1133, 1135 (9th

12   Cir. 2002) ("We hold that when a plaintiff who is disabled within the meaning of the ADA has

13   actual knowledge of illegal barriers at a public accommodation to which he or she desires access,

14   that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show

15   actual injury during the limitations period."). Therefore, those declarants who have described

16   specific incidents in which they were diverted to another store by virtue of the inaccesibility of

17   Target.com have met the class definition.

18       A second set of declarants describe the increased time and expense incurred during in-store

19   shopping as a result of the inaccessibility of the website. Their inability to pre-shop on the website

20   required declarants to hire an aide or ask a friend or family member to accompany them. See, e.g.,

21   Marks Dec. ¶ 12; Booth Dec. ¶ 12. Guided shopping trips took longer as a result of the inability to

22   review products online in advance. Booth Dec. ¶ 12. Other declarants resorted to in-store help

23   when they could not access the website. For example, Charlotte Czarnecki described her experience

24   with seeking assistance with a gift registry after being unable to access it online:

25       I went to the physical Target store and asked a store clerk to print out the registry and read it
         to me. The list was very long with many categories. I felt uncomfortable because the store
26       clerk seemed reluctant to read the entire list to me aloud and provide the level of detail I needed
         to decide what to buy. . . . In the end, I made a rash decision about what to buy and purchased
27       the gift before I left the store.

28   Czarnecki Dec. ¶ 8. Plaintiffs characterize these as a dignitary injury in which a "blind shopper

11

1    must check her independence at the door." Pls.' Class Cert. Suppl. at 5. Certainly, forced reliance

2    on other people is injurious in many respects. Again, Target responds that none of these declarants

3    were absolutely prohibited from entering the Target stores and making purchases as a result of the

4    website's inaccessibility. According to Target, these shoppers merely experienced inconvenience.

5    Target contends that equal convenience is not required by ADA; therefore, the fact that putative

6    class members spent more time to accomplish the same tasks as sighted persons and required

7    assistance from in-store personnel or guides does not render the stores inaccessible. Like its

8    argument that deterrence does not constitute inaccessibility, this argument, too, is overbroad. A

9    wheelchair user is not prohibited from entering a store without a ramp: that person could be carried

10    into the store by the store personnel or hire a guide to do so. Nevertheless, those accessibility

11    barriers, even where they may be accommodated, would generally violate the ADA. Similarly, the

12    increased cost and time to surmount the alleged barriers presented by the inability to pre-shop

13    demonstrate that these declarants have met the class definition. Target's reliance upon their ability

14    to accommodate blind shoppers through other means, such as in-store assistance or a 1-800 customer

15    service number is misplaced at this stage. As the court noted at the outset of this litigation, the

16    method of accommodation is an affirmative defense. Order of September 5, 2006 at 11 ("[T]he

17    flexibility to provide reasonable accommodation is an affirmative defense and not an appropriate

18    basis upon which to dismiss the action."). Whether Target's proffered accommodations are

19    reasonable is an inquiry better left to later stages of the litigation.

20        The declarations do not suffer from the defects described in the court's previous order on

21    class certification. See April 25, 2007 Order at 7 ("Despite the statements indicating that they may

22    have been deterred from purchasing products at Target stores, the declarations make clear that these

23    are individuals who would prefer to shop online. They consistently express the declarants' desire to

24    shop on the Target.com website."). The declarants each describe how they use the Target.com

25    website in connection with their visits to the store. See, e.g., Kresmer Dec. ¶ 7 ("I visit store

26    websites in connection with in-store shopping at least twice a month."); Servan Dec. ¶ 7 ("I also use

27    the internet to access gift registries, but . . . I tend to buy the items at the stores themselves rather

28    than order on the internet."). The declarations suggest that pre-shopping is an important aspect of

12

1   in-store accessibility for blind shoppers. See Kresmer Dec. ¶ 9 (noting that the newly-blind are

2   taught to use the "internet in conjunction with in-store shopping"). Significantly, each of the

3   putative class members has described specific incidents within the recent past in which the

4   inaccessibility of the website has prevented them from enjoying the goods and services available at

5   Target stores. See e.g., Frye Dec. ¶ 9 (describing such an incident "last Christmas"); Booth Dec. ¶

6   11–12 (an incident "last fall"). The boilerplate "recitation of [a] future desire" to visit the stores is

7   no longer the only allegation of a nexus to the stores. April 25, 2007 Order at 8. The court is

8   satisfied that, for the sole purpose of class certification, the declarants have established that they

9   meet the class definition.

10

11        D.    State law claims

12        As an initial matter, the parties dispute whether the class definition for the proposed

13   California subclass must contain a similar nexus requirement. Defendant also asserts that

14   certification of a California subclass for either the Unruh or the DPA claims is improper. The court

15   will consider each of these arguments in turn.

16        Target contends that the Unruh Act and DPA claims must be dependent on an alleged ADA

17   violation because neither statute would apply to Target.com independent of an alleged ADA

18   violation. In its September 5, 2006 order, the court noted that a violation of the ADA is, by statutory

19   definition, a violation of both the Unruh Act and the DPA. Cal. Civ. Code §§ 51(f), 54.l(d); Sept. 5,

20   2006 Order at 12–13. That order did not address whether the nexus requirement was applicable to

21   the Unruh and DPA claims independent of plaintiffs' ADA claims. The court did not impose the

22   nexus requirement for state law claims; it merely noted that a violation of the ADA was ipso facto a

23   violation of the two state statutes at issue. Sept. 5, 2006 Order at 12–13. Indeed, the court observed

24   that Target.com likely met the definition of a service of a business establishment under section 51(b)

25   of the Unruh Act. Id.

26        Plaintiffs present persuasive authority to demonstrate that the Unruh Act and the DPA do not

27   require a nexus to the retail stores. First, neither statute is limited to restrictions on access to a place

28   of public accommodation in the same way as the ADA is limited. 42 U.S.C. § 12182(a) ("No

UNITED STATES DISTRICT COURT
For the Northern District of California

13

1   individual shall be discriminated against on the basis of disability in the full and equal enjoyment of

2   the goods, services, facilities, privileges, advantages, or accommodations of any place of public

3   accommodation. . . ."); see Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th

4   Cir. 2000) (concluding that, for the purposes of the ADA, "places of public accommodation" is

5   limited to actual, physical spaces). The Unruh Act regulates "all business establishments of every

6   kind whatsoever." Cal Civ. Code § 51(b). The DPA addresses "an accommodation, advantage,

7   facility, and privilege of a place of public accommodation" and "other places to which the general

8   public is invited." Id. § 54.1(a)(1). Thus, the language of both statutes is broader than that of the

9   ADA.

10          What the court alluded to in its previous order, it will now hold explicitly for the purposes of

11   class certification: the Unruh Act and the DPA reach Target.com as a kind of business establishment

12   and an accommodation, advantage, facility, and privilege of a place of public accommodation,

13   respectively. No nexus to the physical stores need be shown.

14                     1.     Unruh Act

15          The Unruh Act, California Civil Code section 51, et seq. states that

16          (b) All persons within the jurisdiction of this state are free and equal, and no matter
             what their sex, race, color, religion, ancestry, national origin, disability, medical
17           condition, marital status, or sexual orientation are entitled to the full and equal
             accommodations, advantages, facilities, privileges, or services in all business
18           establishments of every kind whatsoever.

19   The statutory text is not susceptible to the limited construction that the Ninth Circuit has placed on

20   the ADA. Weyer, 198 F.3d at 1114 (9th Cir. 2000). In its 1959 amendments to the Unruh Act, the

21   California legislature eliminated the list of physical places contained in the Act and replaced it with

22   the reference to "all business establishments of every kind whatsoever." Warfield v. Peninsula Golf

23   & Country Club, 10 Cal. 4th 594, 618 (1995) (discussing 1959 amendments to the Unruh Act);

24   Gardner v. Vic Tanny Compton, Inc., 182 Cal. App. 2d 506, 512 (1960) (describing interpretation of

25   previous statutory language limiting Unruh Act to "all other places"). By contrast, the California

26   Supreme Court has read the relevant language of the Unruh Act to the broadest extent possible: "the

27   word 'establishment,' as broadly defined, includes not only a fixed location . . . but also a permanent

28   'commercial force or organization.'" O'Connor v. Village Green Owners Ass'n, 33 Cal. 3d 790,

UNITED STATES DISTRICT COURT
For the Northern District of California

14

1    795 (1983). In its most recent amendments to the Unruh Act, the legislature made a specific finding

2    expressing its support for the expansive construction in O'Connor. See Cal. Civ.Code. § 51,

3    Historical Notes-Historical and Statutory Notes ("It is the intent of the Legislature that the

4    amendments made to the Unruh Civil Rights Act by this act do not affect the California Supreme

5    Court's rulings in [Marina Point] and [O'Connor]."). Indeed, one federal district has recently

6    construed the term "business establishment" to include an exclusively internet-based adoption

7    agency. Butler v. Adoption Media, LLC, 486 F.Supp. 2d 1022, 1054 (N.D. Cal. 2007) (Hamilton,

8    J.). In that case, the plaintiffs alleged that the website's refusal to offer same-sex domestic partners

9    the adoption-related services on the same terms and conditions offered married couples, violated the

10   Unruh Act. None of these cases restrict the applicability of the Unruh Act in the same way as the

11   ADA; imposing a nexus requirement on the class definition for the California subclass is, therefore,

12   not necessary.

13           In its supplemental briefing, Target does not appear to dispute that the Unruh Act applies to

14   websites. Rather, it argues that the Unruh Act requires an individualized showing of discriminatory

15   intent and that such a showing necessarily defeats class certification. Under this theory, plaintiffs

16   cannot meet the predominance showing required by Rule 23(b)(3). See Rutstein v. Avis Rent-A-Car

17   Systems, Inc., 211 F.3d 1228, 1235 (11th Cir. 2000) (concluding that putative class action requiring

18   a showing of intentional discrimination could not meet the predominance requirement). Target also

19   contends that the damages claims would require individualized determinations unsuitable for a class

20   action. In similar contexts, district courts have certified class actions alleging disability

21   discrimination under the Unruh Act. See Moeller v. Taco Bell Corp., 220 F.R.D. 604, 613 (N.D.

22   Cal. 2004) (Jenkins, J.) (certifying class under Rule 23(b)(2) for ADA and Unruh Act claims brought

23   by wheelchair users against restaurant); Arnold, 158 F.R.D. at 461–62 (certifying similar class under

24   Rule 23(b)(2)); Berlowitz v. Nob Hill Masonic Management, No. C-96-01241 MHP, 1996 WL

25   724776 (N.D. Cal. Dec. 6, 1996) (Patel, J.) (same). In each of these cases as in the present one, the

26   class members did not challenge individual actions by the defendant against each member of the

27   class but the same actions taken by defendant. Moeller, 220 F.R.D. at 516. The intent requirement,

28   if one exists, of the Unruh Act does not render class certification inappropriate.

15

1        Target also argues that the Unruh Act bars claims that require modification of the sort sought

2    by plaintiffs claims for injunctive relief.  See Cal. Civ. Code 51(d) ("Nothing in this section shall be

3    construed to require any construction, alteration, repair, structural or otherwise, or modification of

4    any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise

5    required by other provisions of law, to any new or existing establishment, facility, building,

6    improvement, or any other structure. . . .").  This argument, even if it is correct, is not relevant to the

7    instant motion for class certification.

8                2.      **DPA**

9            The DPA guarantees that individuals with disabilities

10           shall be entitled to full and equal access, as other members of the general public, to
             accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and
11           physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad
             trains, motorbuses, streetcars, boats, or any other public conveyances or modes of
12           transportation (whether private, public, franchised, licensed, contracted, or otherwise
             provided), telephone facilities, adoption agencies, private schools, hotels, lodging places,
13           places of public accommodation, amusement, or resort, and other places to which the general
             public is invited, subject only to the conditions and limitations established by law, or state
14           or federal regulation, and applicable alike to all persons.

15   Cal. Civ. Code § 54.1(a)(1).  The parties dispute whether the language "and other places to which

16   the general public is invited" includes websites such as Target.com.  Id.  The text itself is silent on

17   the issue, but it is notably broader than the ADA.  Compare id. with 42 U.S.C. § 12182(a) ("No

18   individual shall be discriminated against on the basis of disability in the full and equal enjoyment of

19   the goods, services, facilities, privileges, advantages, or accommodations of any place of public

20   accommodation by any person who owns, leases (or leases to) or operates a place of public

21   accommodation.").  The enumeration of the public places in the DPA includes such things as

22   "telephone facilities," defined by the Act as "tariff items and other equipment and services."  Cal.

23   Civ. Code § 54.1(a)(2).  The logic of Weyer in limiting the ADA to physical places relied upon the

24   canon of *noscitur a sociis*:

25           Title III provides an extensive list of "public accommodations" in § 12181(7), including
             such a wide variety of things as an inn, a restaurant, a theater, an auditorium, a bakery, a
26           laundromat, a depot, a museum, a zoo, a nursery, a day care center, and a gymnasium.  All
             the items on this list, however, have something in common.  They are actual, physical
27           places where goods or services are open to the public, and places where the public gets
             those goods or services.

28

                                            16

UNITED STATES DISTRICT COURT
For the Northern District of California

1    198 F.3d at 1114. Fidelity to this principle of statutory construction would suggest the opposite

2    conclusion for the DPA: because the DPA enumerates both physical places and non-physical places,

3    the phrase "other places to which the general public is invited" cannot be limited solely to physical

4    places. Furthermore, among the "places" enumerated in the DPA is entitlement to "advantages,"

5    which clearly is not affixed to any particular physical location.

6         While there are no cases applying the DPA to websites, there is no case law to suggest that

7    the legislature intended to exclude websites from the coverage of the DPA. Indeed, the broad

8    language of the DPA comfortably encompasses websites as "places to which the general public is

9    invited." Recent amendments to the statute reaffirm that the statutory language was intended to be

10   read liberally. In enacting the 1992 amendments to the statute, the legislature noted its intent "to

11   strengthen California law in areas where it is weaker than the Americans with Disabilities Act of

12   1990, and to retain California law when it provides more protection for individuals with disabilities .

13   . . ." 1992 Cal. Stats. 4282. In drafting such broad language, the legislature was likely aware that it

14   was ensnaring websites.

15        In sum, the court concludes that imposing a nexus requirement on the definition of the

16   subclass would be inappropriate at this stage. Therefore, the court finds that the proposed California

17   subclass definition is appropriate.

18

19   II.    Rule 23(a) Requirements

20        As noted above, a party seeking class certification must establish that the numerosity,

21   commonality, typicality and adequacy of representation requirements of Rule 23(a) have been met.

22   The court addresses each of these requirements below.

23

24        A.    Numerosity

25        Pursuant to Rule 23, the class must be "so numerous that joinder of all members is

26   impracticable." Fed. R. Civ. P. 23(a)(1). As a general rule, classes numbering greater than 41

27   individuals satisfy the numerosity requirement. See 5 James Wm. Moore et al., Moore's Federal

28   Practice § 23.22[1][b] (3d ed. 2004). Although plaintiffs need not allege the exact number or

17

1  identity of class members to satisfy the numerosity prerequisite, mere speculation as to the number

2  of parties involved is not sufficient to satisfy the numerosity requirement. See Freedman v.

3  Louisiana-Pac. Corp., 922 F. Supp. 377, 398 (D. Or. 1996); 7 Wright, Miller, & Kane, Federal

4  Practice and Procedure § 1762 (3d ed. 1995).

5     Plaintiffs have submitted evidence, based on U.S. Census data, that there are likely thousands

6  of potential class members in the nationwide class based on the large number of people who are

7  legally blind and use screen access software. See Brome Dec. ¶ 4. Similarly, they estimate that

8  there are approximately 140,000 blind individuals in California. Id. They further contend that

9  10,000 blind people in California use screen access software to access the internet. Taylor Dec. ¶ 4.

10  Target responds that plaintiffs have not met their burden on this element: they have not presented

11  any evidence of the number of blind individuals who use the internet and more specifically those

12  who have attempted to access Target.com. However, defendant seeks to impose a level of

13  specificity not required by Rule 23(a). Courts, including this one, have repeatedly certified ADA

14  classes like the one proposed here based on similar evidentiary showings. In Lieber v. Macy's Cal.,

15  Inc., No. C 96-2955 MHP, Order re: Class Certification, at 5 (N.D. Cal. Mar. 9, 1998), this court

16  found the numerosity requirement satisfied based on census data and statistical evidence indicating

17  that there were thousands of wheelchair users and persons with other mobility disabilities living in

18  the Bay Area. In that action, like the present one, the class definition included persons with certain

19  specific mobility disabilities who had been denied access to one of defendants' stores. Id. The court

20  required no evidence that a sufficiently numerous subset of mobility impaired persons had been

21  denied access to the stores, because no such evidence was required by the dictates of Rule 23.

22  Indeed, in cases, like those involving alleged violations of the ADA, where the alleged violations

23  may have deterred putative class members from attempting to access stores, the type of evidence

24  defendant seeks may be unavailable, if not impossible, to obtain. The court in Arnold v. United

25  Artists Theatre Circuit, Inc., 158 F.R.D. 439, 448 (N.D. Cal. 1994) (Henderson, J.) similarly

26  concluded that estimates of the likely number of disabled persons affected by access barriers in

27  seventy of the defendant's theaters was sufficient to establish numerosity.

28     Defendant's reliance upon Celano v. Marriott Intern., Inc., No. C 05-4004 PJH, 2007 WL

18

UNITED STATES DISTRICT COURT
For the Northern District of California

1   1149113, at *3 (N.D. Cal. Apr. 18, 2007) (Hamilton, J.) is misplaced.  The district court in <u>Celano</u>

2   held that the plaintiffs had not satisfied the numerosity requirement because they had not established

3   how many putative class members "actually had attempted to access one of [plaintiff's facilities] and

4   could not do so because of the lack of accessible" auxiliary aides. <u>Id.</u> at *4.  In the instant action,

5   plaintiffs have submitted declarations establishing that putative class members have tried to access

6   in-store information on Target.com and could not.  Additionally, the statistical evidence submitted

7   here does not suffer from the same defects as that in <u>Celano</u>.  That court distinguished the unspecific

8   and insufficient statistical evidence provided from that in <u>Arnold</u>. <u>Id.</u>  Like the data in <u>Arnold</u>, the

9   statistics presented by plaintiffs establish that many blind people currently shop at Target and that

10   the type of activity, shopping at a Target store, is sufficiently "widespread", "numerous" and

11   "readily available" that the use of statistics regarding the number of blind shoppers at Target is not

12   "rank speculation untethered to real facts." <u>Id.</u> at *5.  Plaintiffs have submitted sufficient evidence

13   to demonstrate numerosity, and the court declines defendant's request for more granularity.

14

15         B.    <u>Commonality</u>

16         To fulfill the commonality prerequisite of Rule 23(a)(2), plaintiff must establish that there

17   are questions of law or fact common to the class as a whole.  Rule 23(a)(2) does not mandate that

18   each member of the class be identically situated, but only that there be substantial questions of law

19   or fact common to all. <u>See</u> <u>Harris v. Palm Spring Alpine Estates, Inc.</u>, 329 F.2d 909, 914 (9th Cir.

20   1964).  Individual variation among plaintiffs' questions of law and fact does not defeat underlying

21   legal commonality, because "the existence of shared legal issues with divergent factual predicates is

22   sufficient" to satisfy Rule 23. <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).  To

23   the extent that the parties' commonality arguments overlap with the merits, the court has evaluated

24   all relevant evidence to determine whether commonality has been established.

25         Plaintiffs, like those in <u>Arnold</u>, bring challenges to common design features of Target.com on

26   the basis of "common distinguishing characteristics shared by all the class members," in this case,

27   their status as blind or visually impaired individuals. 158 F.R.D. at 452.  The common questions of

28   law presented here include whether the ADA covers websites as a service for a place of

19

Case 3:06-cv-01802-MHP    Document 149    Filed 10/02/2007    Page 20 of 33

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   accommodation, which parts of the Target.com website are covered by the ADA, and whether

2   Target has satisfied its obligations under the relevant statutes by accommodating access including,

3   but not limited to, providing a customer service telephone number. The questions of fact common to

4   all class members include whether the website is linked to Target stores, what specific

5   accommodations (e.g., alt-tags, keyboard functionality, headings) are available on Target.com, and

6   whether the post-filing improvements have satisfied Target's statutory obligations. Defendants

7   present no arguments to suggest that plaintiffs have not satisfied the commonality requirement.

8          In sum, plaintiffs have demonstrated to the court that there are common issues of fact and

9   theories of law as to accessibility of the Target.com website. Therefore, the court finds that

10  plaintiffs have satisfied the commonality requirement.

11

12          C.    Typicality

13          Under Rule 23(a)(3), the claims of the representative plaintiff must be typical of the claims

14  of the class. To be considered typical for purposes of class certification, the named plaintiff need

15  not have suffered an identical wrong. See Hanlon, 150 F.3d at 1020. Rather, the class

16  representative must be part of the class and possess the same interest and suffer the same injury as

17  the class members. See General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982).

18          The gravamen of Target's argument is that the named plaintiff, Sexton, has not demonstrated

19  a legally cognizable injury and, therefore, his claims are not typical of those belonging to the class.

20  Specifically, they contend that Sexton's declaration—nor that of any of the putative class

21  members—has not demonstrated an injury with sufficient nexus to the Target stores. As discussed

22  below, the court is not convinced that Sexton has demonstrated an injury with the requisite nexus to

23  the Target stores for the nationwide class. However, the court is satisfied that some of the putative

24  class members would present the same type of legal and remedial theory as the unnamed class

25  members. As long as the proposed class satisfies the requirements of Rule 23, the court may certify

26  the class conditioned upon the substitution of another named plaintiff. See Kremens v. Bartley, 431

27  U.S. 119, 135 (1977) (where named plaintiffs' claims were determined to be moot, ordering

28  substitution of class representatives); Gibson v. Local 40, 543 F.2d 1259, 1263 (9th Cir. 1976) ("In

UNITED STATES DISTRICT COURT
For the Northern District of California

1 | any event, failure of proof as to the named plaintiffs would not bar maintenance of the class action or

2 | entry of judgment awarding relief to the members of the class."). Thus, the court will grant

3 | plaintiffs' leave to substitute another class representative for the nationwide class.

4 |  Target also attacks the proposed class on the basis that the class members' claims are widely

5 | divergent, depending on the members' different skill levels with the internet; the type of technology

6 | they use; and which parts of the website they attempted to access. These arguments are unavailing.

7 | "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily

8 | defeat typicality." Dukes v. Wal-Mart, Inc., 474 F.3d 1214, 1232 (9th Cir. 2007). In most cases

9 | involving access under the ADA, there will be individual variations among class members in terms

10 | of the nature of their disability, the types of aides used, and the individual nature of each class

11 | member's encounters with the website and access to services and facilities. See, e.g., Moeller v.

12 | Taco Bell Corp., 220 F.R.D. 604, 611 (N.D. Cal. 2004) (finding typicality satisfied where proposed

13 | class used different types of mobility aides but experienced the same "effect of these alleged barriers

14 | and policies").

15 |

16 |  D. Adequacy of Representation

17 |  Rule 23(a)(4) dictates that the representative plaintiff must fairly and adequately protect the

18 | interests of the class. To satisfy constitutional due process concerns, unnamed class members must

19 | be afforded adequate representation before entry of a judgment which binds them. See Hanlon, 150

20 | F.3d at 1020 (citing Hansberry v. Lee, 311 U.S. 32, 42–43 (1940)). "Resolution of two questions

21 | determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of

22 | interest with other class members and (2) will the named plaintiffs and their counsel prosecute the

23 | action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

24 |  Defendant attacks the adequacy of the representation by reiterating the same theory: that

25 | Sexton has not provided proof of a legally cognizable injury. Having addressed that elsewhere, the

26 | court need not revisit that argument here. Plaintiffs and their counsel appear to have no conflicts of

27 | interest with the members of the class. Moreover, it is clear that plaintiffs' counsel is highly

28 | competent and defendant does not dispute this. Therefore, the court concludes that plaintiffs have

UNITED STATES DISTRICT COURT
For the Northern District of California

1    satisfied the adequacy of representation requirement.

2        **E.**    <u>Rule 23(b)(2) Requirements</u>

3        In addition to meeting the conditions imposed by Rule 23(a), a party seeking certification of a

4    class under Rule 23(b)(2) also bears the burden of establishing that "the party opposing the class has

5    acted or refused to act on grounds generally applicable to the class, thereby making" injunctive relief

6    appropriate. Fed. R. Civ. P. 23(b)(2). Class actions certified under Rule 23(b)(2) are "not limited to

7    actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary

8    damages" where the claim for injunctive relief is the primary claim. <u>Probe v. State Teachers' Ret.</u>

9    <u>Sys.</u>, 780 F.2d 776, 780 (9th Cir. 1986). Rule 23(b)(2) certification of a class seeking both injunctive

10   relief and damages is proper only where the claim for injunctive relief is the predominant form of

11   relief sought by the class. The court addresses these requirements below.

12       For the purposes of Rule 23(b)(2), plaintiffs have sufficiently established that Target's actions

13   with respect to the accessibility of its website are "generally applicable to the class." Fed. R. Civ.

14   Proc. 23(b)(2). Target's expert, Dr. Thatcher, explained in his report that "[a]s of April 12, 2006 the

15   website of Target Corporation is virtually unusable by a visitor who is blind." Thatcher Dec. ¶ 60,

16   Pls.' Exh. D. Target has made accessibility improvements to its website more recently. <u>See</u> Nemoir

17   Dep. at 21:18–22:5. Nonetheless, putative class members state that they have experienced difficulties

18   accessing the website as recently as June 2007. <u>See e.g.</u>, Jacobs Dep. at 44–45. The parties agree

19   that these barriers, to the extent that they still exist, impact all blind users who rely on reader

20   software.[3] While the class definition as modified may include both blind individuals who use reader

21   software and those who do not, the court is satisfied that the website accessibility barriers identified

22   by plaintiffs are generally applicable to the class.

23       The second of the Rule 23(b)(2) requirements, the predominance inquiry, affects only the

24   California subclass. Here, plaintiffs seek statutory damages only for the California state law claims

25   on behalf of the putative California subclass. The nationwide class seeks only declaratory and

26   injunctive relief, thus satisfying the predominance requirement. Target argues that the statutory

27   damages sought by the California subclass predominate over their request for equitable relief; indeed,

28   it asserts that the damages are the very "*raison de etre* of this subclass." Def.'s Opp. at 20. In

22

1    divining the intent of the plaintiffs, Target emphasizes the recent changes to the website and

2    statements made by NFB members that the changes render the site accessible. Because Target.com is

3    now more accessible, Target argues that equitable relief will accomplish little more and, therefore,

4    the damages claims predominate. While some anticipation of plaintiffs' intent is appropriate under

5    Rule 23(b)(2), see Molski v. Gleich, 318 F.3d 937, 950 (9th Cir. 2003) (focusing on the plaintiff's

6    intent for purposes of the predominance inquiry), Target's heavy focus on damages, and hence intent,

7    is misplaced. The nature of the equitable relief is likely to be different and more expansive given the

8    court's holding on the state law claims. Also, plaintiffs' own declarations and those of putative class

9    members indicate that the major form of relief sought is equitable. See, e.g., Clegg Dec. ¶ 21; Sexton

10    Apr. 12, 2006 Dec. ¶ 37 (describing impact on Sexton from not being able to access the website).

11    Moreover, as noted previously, the changes made to the website have not addressed all of plaintiffs'

12    claims. Accordingly, reliance on the court's order in Leiber is inapposite. Paradis Dec., Exh. R.

13    Here, the issues requiring equitable relief have not been resolved to the same degree, if at all, and will

14    need to be treated differently from the federal claims.

15        Next, Target attempts to persuade the court that the damages claims require individualized

16    inquires too complex for certification of a (b)(2) subclass. However, plaintiffs seek the minimum

17    statutory damages, a fixed amount per offense. As the court noted in a similar case seeking both

18    injunctive relief and statutory damages, individual-specific claims for statutory damages, such as

19    those requested here, are routine in employment discrimination cases. Arnold, 158 F.R.D. at 453

20    (considering class certification in action for statutory damages and equitable relief for alleged

21    violations of the ADA, California Disabled Persons Act, and the Unruh Civil Rights Act). In Arnold

22    as here, the relatively minor complexity of these damage claims should not defeat certification under

23    Rule 23(b)(2).

24        Therefore, certification of the nationwide class and the California subclass is proper under

25    Rule 23(b)(2).

26

27    III.     Motion for appointment of class counsel

28        Federal Rule 23(g) requires the court to appoint plaintiffs' counsel in a class action. Fed. R.

23

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Civ. P. 23(g). The court is confident in the collective and individual abilities of Mr. Paradis, Mr.

2   Konecky, Dr. Blanck, and Mr. Goldstein to fairly and adequately represent the class. Together

3   counsel have decades of class action and disability rights experience and adequate resources to

4   pursue an action of this nature. See, e.g., Paradis Dec. ¶¶ 2–6; Konecky Dec. ¶¶ 1–6.

5        Accordingly, the court grants plaintiffs' motion for appointment of lead counsel.

6

7   IV.    Motion for Summary Judgment

8        Shortly after plaintiffs filed their motion for class certification, Target filed a motion for

9   summary judgment arguing that plaintiff Sexton had suffered no legally cognizable injury.

10  Specifically, Target argues that Sexton had failed to meet the nexus requirement for the purposes of

11  his ADA claim. Because his state law claims were dependent on his ADA claim, those too must fail

12  according to Target.

13

14  A.    ADA claim

15       The court agrees that Sexton has not demonstrated that his inability to access Target.com

16  renders him unable to access the goods and services of Target stores. Sexton has submitted at least

17  four declarations over the course of this litigation. See App. of Supp. Dec., Exh. 14 (compiling

18  declarations). His most recent one, submitted May 25, 2007, describes how Sexton frequently pre-

19  shops on several stores' websites before shopping. Sexton May 25, 2007 Dec. ¶ 4. It further

20  describes the cost and time incurred when he is unable to pre-shop. Id. ¶ 5. However, Sexton's

21  declarations do not establish how his difficulties with the Target.com website have impeded his

22  access to the goods and services in the store. He states only that he has been "unable to use

23  Target.com for th[e] purpose" of pre-shopping and that he has been unable to use the weekly

24  advertisements on Target.com for use in the stores. Id. ¶ 6–7. The only specific incident described in

25  his declarations involves his purchase of towels for his dorm room. Sexton Apr. 12 2006 Dec. ¶ 33.

26  While he was unable to access information about the towels online, he was ultimately successful in

27  purchasing them in the store after hiring a driver and coordinating a trip with a companion. Id.

28  While Sexton's experience may qualify under the class definition if he incurred increased expense

24

UNITED STATES DISTRICT COURT
For the Northern District of California

1    and time from the inability to access the website, nonetheless his declaration does not suggest that

2    hiring the driver and arranging for the companion were necessary only because he could not pre-shop.

3    Accordingly, the court will grant defendant's motion for summary judgment on Sexton's ADA claim,

4    but allow substitution of another plaintiff or plaintiffs on this claim.[4]

5

6        **B.**   <u>State law claims</u>

7        While Target contends that plaintiffs' state law claims rest entirely on their ADA claims,

8    plaintiffs have stated independent bases for their claims under the Unruh Act and the DPA. <u>See</u> FAC

9    ¶¶ 42, 50. Therefore, Sexton's failure to meet the nexus requirement does not necessarily defeat his

10   state law claims. Having determined that the DPA and the Unruh Act apply to Target.com without a

11   nexus requirement, Sexton's state law claims may survive.

12           **1.**   <u>Unruh Act</u>

13       The Unruh Act, California Civil Code section 51, <u>et seq.</u> provides in relevant part:

14       (b) All persons within the jurisdiction of this state are free and equal, and no matter what

15   their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations,

16   advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

17

18       (d) Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that

19   construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement,

20   or any other structure, nor shall anything in this section be construed to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration,

21   repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

22       With respect to the Unruh Act claim, Target notes that there are only a few contexts in which

23   an Unruh Act claim can exist independent of an ADA claim. It contends that the facts presented here

24   are not one of those contexts. <u>Compare</u> <u>Chabner v. United of Omaha Life Ins. Co.</u>, 225 F.3d

25   1042,1047 (9th Cir. 2000) (holding that insurance policy that discriminated against the disabled did

26   not violate the ADA but did independently violate the Unruh Act) <u>with</u> <u>Molski v. M.J. Cable, Inc.</u>,

27   481 F.3d 724, 731 (9th Cir. 2007) ("In the disability context, California's Unruh Civil Rights Act

28

1   operates virtually identically to the ADA."). The distinguishing factor, according to Target, is that an

2   independent cause of action under the Unruh Act involves a discriminatory policy. That argument is

3   easily set aside. Nothing in the text of the Unruh Act suggests that a discriminatory policy is required

4   for a claim independent of an ADA claim, nor does Target cite any case law to support that position.

5          Target notes that section 51(c) limits Unruh Act claims to those that do not require any

6   "modification or alterations" beyond that required by other provisions of law. Cal. Civ. Code § 51(c).

7   It is premature, at this stage, to determine whether the ADA or the DPA would require modifications

8   of the Target.com website. The court sees no reason why the Unruh Act's reference to other

9   provisions of law would not refer to either the ADA or the state statute. Id. Moreover, plaintiffs

10  argue that the modification language refers to physical modification or construction and, therefore,

11  would not restrict remedies in the instant action, which require only modification of a website.

12         Second, Target argues that Sexton has failed to make the requisite intent showing. Harris v.

13  Capital Growth Investors XIV, 52 Cal. 3d 1142, 1175 (1991) ("[T]he language and history of the

14  Unruh Act indicate that the legislative object was to prohibit intentional discrimination in access to

15  public accommodations."). Under Ninth Circuit law, intentional discrimination is not required for an

16  Unruh Act claim predicated on an ADA claim. See Lentini v. Cal Ctr. for the Arts, 370 F.3d 837,

17  846–47 (9th Cir. 2004) ("We find that, regardless of whether Harris may continue to have relevance

18  to other Unruh Act suits, no showing of intentional discrimination is required where the Unruh Act

19  violation is premised on an ADA violation."). Having determined that Sexton has failed to establish

20  his ADA claims, Lentini does not absolve him of his duty to prove intent for his independent claim

21  under the Unruh Act.

22         Whether intent is required for an independent disability claim under the Unruh Act has not

23  been addressed by the Ninth Circuit. Harris held that disparate impact theories for gender

24  discrimination were not actionable under the Unruh Act. 52 Cal. 3d at 1175. However, the

25  legislative history of the Act and its subsequent construction tilts in favor of plaintiffs' preferred

26  reading. The 1992 amendments to the Unruh Act included a provision to make a violation of the

27  ADA a per se violation of the Unruh Act. In doing so, the legislature noted its intent "to strengthen

28  California law in areas where it is weaker than the Americans with Disabilities Act of 1990, and to

26

UNITED STATES DISTRICT COURT
For the Northern District of California

1   retain California law when it provides more protection for individuals with disabilities. . . ." 1992

2   Cal. Stats. 4282. This statement of legislative intent, issued after <u>Harris</u>, suggests that <u>Harris'</u>

3   proclamations on the legislature's intent may no longer be applicable, particularly in disability cases.

4   <u>But see</u> <u>Gunther v. Lin</u>, 144 Cal. App. 4th 223 (2007) (relying on <u>Harris</u> to conclude that a plaintiff

5   must prove intent for a damages claim, but not for injunctive relief, under the Unruh Act).

6          Plaintiffs argue that the unique nature of discrimination on the basis of disability makes the

7   reasoning in <u>Harris</u> inapposite. Disability discrimination, they contend, is characterized by inaction

8   and the appropriate remedy for this type of discrimination is modification of otherwise neutral

9   policies or practices. <u>Presta v. Peninsula Corridor Joint Powers Bd.</u>, 16 F.Supp. 2d 1134, 1136 (N.D.

10  Cal. 1998) (Henderson, J.) ("[D]iscrimination against persons with disabilities differs from

11  discrimination on the basis of, for example, gender, or race. Discrimination in the latter instances has

12  been judicially defined as disparate treatment on the basis of a certain characteristic that identifies an

13  individual as a member of a protected class. However, a person with a disability may be the victim of

14  discrimination precisely because she did not receive disparate treatment when she needed

15  accommodation."). The ADA thus departs from other anti-discrimination statutes in requiring that

16  places of public accommodation take affirmative steps to accommodate the disabled. H.R. Rep. No.

17  101–485, pt.2, at 104 (1990); 42 U.S.C. § 12182(b)(2)(A)(ii-iv). The court is not persuaded that the

18  California Court of Appeals properly acknowledged the unique nature of disability discrimination in

19  applying <u>Harris</u> to disability claims for damages. <u>Gunther</u>, 144 Cal. App. 4th at 223. At least one

20  other district court has reached this conclusion. <u>See</u> <u>Wilson v. Haria and Gogri Corp.</u>, 479 F.Supp. 2d

21  1127, 1141 (E.D. Cal. 2007) (rejecting <u>Gunther</u> where Unruh claim depended on violations of the

22  ADA).

23         Plaintiffs have alleged intentional discrimination in their complaint. FAC ¶ 41. Target argues

24  that they have not established intent nor can they for four reasons: 1) Target did not engage in any

25  discriminatory personal contact with Sexton; 2) Target has not engaged in any willful, affirmative

26  misconduct; 3) Discriminatory intent cannot be inferred from the effect on the class;

27  4) Discriminatory intent cannot be inferred from Target's refusal to modify its website. Plaintiffs, in

28  their supplementary brief on state law issues, set out their evidentiary proffer of intent for a later

UNITED STATES DISTRICT COURT
For the Northern District of California

1  stage of litigation, namely that Target's knowing failure and refusal to adopt certain accessibility

2  features in Target.com constitute the requisite intent. They cite Hankins v. El Torito Restaurants,

3  Inc., 63 Cal. App. 4th 510, 518 (1998) for the proposition that such a knowing failure establishes the

4  requisite intent. That case is far from clear on the nature of the intent showing required by the Unruh

5  Act.

6         2.    DPA

7         The DPA provides in relevant part:

8     § 54(a) Individuals with disabilities or medical conditions have the same right as the general
      public to the full and free use of the streets, highways, sidewalks, walkways, public buildings,
9     medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and
      other public places.
10
      . . .
11

12    (c) A violation of the right of an individual under the Americans with Disabilities Act of 1990
      (Public Law 101-336) also constitutes a violation of this section.
13

14    § 54.1(a)(1) Individuals with disabilities shall be entitled to full and equal access, as other
      members of the general public, to accommodations, advantages, facilities, medical facilities,
15    including hospitals, clinics, and physicians' offices, and privileges of all common carriers,
      airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public
16    conveyances or modes of transportation (whether private, public, franchised, licensed,
      contracted, or otherwise provided), telephone facilities, adoption agencies, private schools,
17    hotels, lodging places, places of public accommodation, amusement, or resort, and other
      places to which the general public is invited, subject only to the conditions and limitations
18    established by law, or state or federal regulation, and applicable alike to all persons.

19    . . .

20    (3) "Full and equal access," for purposes of this section in its application to transportation,
      means access that meets the standards of Titles II and III of the Americans with Disabilities
21    Act of 1990 (Public Law 101-336) and federal regulations adopted pursuant thereto, except
      that, if the laws of this state prescribe higher standards, it shall mean access that meets those
22    higher standards.

23 Cal. Civ. Code § 54 et seq.

24         Target argues that Sexton's DPA claim must fail because the DPA requires an ADA violation

25 or a building code violation. Under this view, because Sexton has not suffered an injury under the

26 ADA and has provided no evidence of a building code violation, his DPA claim must also fail.

27 Target relies on two cases for the proposition that the DPA requires a violation of the ADA or a

28 building code violation. The first, Mannick v. Kaiser Foundation Health Plan, Inc., No. 03-5905,

UNITED STATES DISTRICT COURT
For the Northern District of California

1   2006 WL 2168877, at *16 (N.D. Cal. July 31, 2006) (Hamilton, J.), involved a DPA claim that was

2   based solely on the plaintiff's claims under the ADA. Here, plaintiffs have alleged an independent

3   DPA claim from the alleged ADA violations. Like Mannick, the second case, Arnold v. United

4   Artists Theatre Cir., Inc., also involved building code violations and thus the court referred to those

5   as the appropriate state law for the purposes of determining what "full and equal access" meant in

6   that context. See Cal Civ. Code § 54.1(a)(3) ("Full and equal access," for purposes of this section in

7   its application to transportation, means access that meets the standards [of the ADA] . . . except that,

8   if the laws of this state prescribe higher standards, it shall mean access that meets those higher

9   standards."). Nothing in the language of the DPA suggests that it is limited to building code

10  violations; rather the statutory language refers to the higher standards of state law. Id. In Arnold and

11  in Mannick, the relevant higher standard of state law was the building code because the disputes

12  concerned building accessibility.[5] Here, if state law requires higher standards of website accessibility

13  than the ADA, those standards are the relevant ones for the purposes of the DPA. Accordingly, the

14  applicable standards of "full and equal access" under state law is still an open question. The court

15  declines to adopt Target's cramped reading of the DPA.

16

17  V.    Motion to Strike

18        Target filed a motion to strike portions of the March 29, 2007 declaration of Anne Taylor

19  submitted in support of plaintiffs' reply. Target bases its motion on grounds that the testimony is

20  speculative, that the declarant lacks personal knowledge, and that the testimony lacks foundation. In

21  particular, defendant objects to Taylor's statements regarding the likelihood of blind and visually

22  impaired people using screen access software to visit the website. Taylor Mar. 29, 2007 Dec. ¶ 5. To

23  be admissible, this statement, Target argues, requires Taylor to be qualified as an expert.

24  Additionally, they are not based on Taylor's personal knowledge. Plaintiffs contend that Taylor is

25  qualified to attest to the statements in her declaration based on her experience in the field of access to

26  technology by the blind. See Taylor May 8, 2006 Dec. ¶ 2. Taylor appears to have knowledge in this

27  field, although without properly qualifying her as an expert, her testimony is inadmissible. Taylor

28  does not have personal knowledge, according to Federal Rule of Evidence 602, of the incidence and

1  usage of all blind and visually impaired people using the website.  While there may be a somewhat

2  relaxed standard for the use of expert testimony at class certification, the lenience of the standard

3  does not apply to qualification as an expert but to the probative value of her conclusions.  Dukes v.

4  Wal-Mart, Inc., 222 F.R.D. 189, 191 (N.D. Cal. 2004) (Jenkins, J.); see also In re Polypropylene

5  Carpet Antitrust Litigation, 996 F. Supp. 18, 26 (N.D. Ga.1997) (at class certification stage court only

6  examined whether the expert's methodology will (a) comport with basic principles, (b) have any

7  probative value, and (c) primarily use evidence that is common to all members of the proposed class).

8  The court has no information about Taylor's methodology or basis for her conclusion.  Accordingly,

9  her declaration has not met even the lower Daubert standard applicable at this stage.

10        Target further objects to Taylor's statements about the number of blind and visually impaired

11  people who would likely visit Target.com if it were fully and equally accessible.  Again, Target

12  argues that this statement is speculative and without foundation.  In defense of Taylor's declaration,

13  plaintiffs raise her extensive experience and point to the underlying data on which Taylor relied to

14  reach this conclusion.  Her forecasts about the incidence of blind and visually impaired visitors to a

15  fully accessible site suffer from the same flaws as the previous statement: she lacks personal

16  knowledge and has not sufficiently laid the foundation for her conclusions.

17        Accordingly, Target's motion to strike the disputed portions of the Taylor declaration is

18  GRANTED.

19

20  IV.    Motion for Bifurcation

21        Plaintiffs ask the court to bifurcate the issues at trial into two stages.  Phase I would address

22  the liability to the class as well as declaratory and injunctive relief.  If Target is found liable at the

23  first stage, then phase II would address damages for the class members, likely in the form of claims

24  process or hearings before a special master.  Pursuant to Federal Rule of Civil Procedure 42(b), the

25  court has discretion to order a separate trial of any issue or claim where it is convenient and not

26  prejudicial.  Id.; see also Davis & Co. v. Summa Corp., 751 F.2d 1507, 1517 (9th Cir. 1985).

27  Defendant contends that plaintiffs' bifurcation proposal attempts to import burden-shifting principles

28  from the employment discrimination context to the instant action.  See International Broth. of

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Teamsters v. U.S., 431 U.S. 324, 360–61 (1977).  Unlike a damages phase in an employment

2  discrimination action, a proposed damages phase in the instant action would not require burden-

3  shifting; nor do plaintiffs appear to seek such a framework in their proposal.  Rather, a finding of

4  liability in phase I—namely that Target.com was impermissibly inaccessible to blind users—would

5  require at phase II proof only that a particular user was blind and that he or she encountered a

6  particular barrier on the website.

7       Because neither party has requested a jury trial, the relevant considerations for bifurcation are

8  complexity, disposition of the issues, and the likelihood of prejudice to the parties.  See, e.g., Arnold,

9  158 F.R.D. at 459.  The complexity of the legal and factual issues associated with the proposed

10  liability stage in addition to those associated with individual determinations of damages weighs in

11  favor of bifurcation.  In particular, the court must determine what the statutory requirement of full

12  and equal access means in the context of reviewing a website and its nexus to the Target stores.  It

13  must evaluate whether the various parts of Target.com met that standard and the appropriate form of

14  equitable relief, if any.  These issues are distinct from the inquiries related to damages determinations

15  and separating the issues will aid in their determination.  Target objects that plaintiffs' proposal alters

16  the burden of proof and presumes liability, thereby prejudicing Target.  Having rejected this

17  argument, the court concludes that bifurcation is appropriate.

18

19

20

21

22

23

24

25

26

27

28

CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED that:

1) Plaintiffs' motion to certify a class is GRANTED.

2) The nationwide class consists of all legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores. The California subclass includes all legally blind individuals in California who have attempted to access Target.com, for plaintiffs' claims arising under the California Unruh Civil Rights Act, California Civil Code §§ 51 et seq. and the Disabled Persons Act, California Civil Code §§ 54 et seq.

3) Plaintiffs are ordered to substitute a new class representative with respect to the ADA claims consistent with this order within thirty (30) days of the date of this order.

4) The counsel of named plaintiff shall serve as counsel for the class.

5) Defendant's motion to strike Taylor's supplementary declaration is GRANTED.

6) Plaintiffs' motion for bifurcation of trial is GRANTED.

7) Defendant's motion for summary judgment is DENIED subject to the provisions of this order.


        IT IS FURTHER ORDERED that counsel shall confer and submit a proposed class notice in compliance with this order within thirty (30) days of the date of this order. Within thirty (30) days, counsel shall also set forth a class commencement date that is to be included in the definition of the class.


Date:    September 28, 2007

MARILYN HALL PATEL
United States District Judge
Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

32

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ENDNOTES

1. Unless otherwise noted, background facts are taken from plaintiffs' First Amended Complaint ("FAC" or "Complaint").

2. Target raises this issue in the context of arguing that the timing of the improvements to the website complicate individual damages calculations, without explicitly raising a mootness challenge. However, the court considers it prudent to address any potential jurisdictional issues.

3. Plaintiffs contend that Target's witnesses, Nemoir and Perry, acknowledge that the accessibility barriers on Target.com are generally applicable to the class. See Pl's Mot. at 17. However, a review of the deposition testimony of these two witnesses indicates that both acknowledge only that alt-tags are necessary for people using JAWS or other reader software. Perry Dep. at 22:17–26:7; Nemoir Dep. at 85:15–24. Nemoir further acknowledged that keyboard navigation is generally necessary for blind users who use screen access software. Nemoir Dep. at 154:10–155:9.

4. Anticipating that plaintiffs may attempt another declaration by Mr. Sexton, the court instructs that this avenue has been exhausted and it will not entertain any further declarations from Mr. Sexton or other plaintiffs. Plaintiffs may substitute another named plaintiff who does not have the shortcomings of Mr. Sexton as described above and set forth in the amended complaint the basis on which the newly named plaintiff satisfies the standing requirements.

5. Target also cites to Urhausen v. Longs Drug Stores of Ca., Inc., No. A113937, 2007 WL 2092927 (Cal. Ct. App. Sept. 18, 2007). Urhausen, however, provides further support for the court's holding since it defines "full and equal access" as access that complies with the ADA, or complies with state statutes, if the latter impose a higher standard. Id. at *3. Specifically, the court declines to limit the definition of access "only to entry into a building." Id.

33

# CERTIFICATE OF SERVICE

I certify that the above document was served by U.P.S. Next Day Air

Service and by Electronic Service on October 16, 2007 on counsel at the mailing

addresses indicated below.

*Brenda Fuller*
Brenda Fuller

## Service

Laurence W. Paradis
Roger Norton Heller
Disability Rights Advocates
2001 Center Street, Third Floor
Berkeley, California 94704
Phone: (510) 665-8644
Fax: (510) 665-8511
Email: Larryp@dralegal.org
Email: RHeller@dralegal.org

Attorneys for Plaintiffs
National Federation of the Blind

Camilla Roberson
Joshua Konecky
Schneider & Wallace
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Phone: (415) 421-7100
Fax: (415) 421-7105
Email:
croberson@schneiderwallace.com
jkonecky@schneiderwallace.com

Attorneys for Plaintiffs
National Federation of the Blind

Daniel F. Goldstein
Brown Goldstein & Levy LLP
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
Phone: (410) 962-1030
Fax: (410) 385-0869
Email: dfg@browngold.com

Attorneys for Plaintiffs
National Federation of the Blind

sf-2406351

Peter Blanck
900 S. Crouse Avenue
Syracuse, NY 13244-2130
Telephone: (315) 443-9703
Fax: (315) 443-9725

(Via U.P.S. Next Day Air only)

Attorneys for Plaintiffs
National Federation of the Blind