LAURENCE W. PARADIS (CA Bar No. 122336)
JULIA M. PINOVER (CA Bar No. 255088)
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, California 94704
Telephone:  (510) 665-8644
Facsimile:  (510) 665-8511
TTY:  (510) 665-8716

PETER BLANCK (*pro hac vice*)
900 S. Crouse Avenue
Syracuse, NY 13244-2130
Telephone:  (315) 443-9703
Fax: (315) 443-9725

JOSHUA KONECKY (CA Bar No. 182897)
CAMILLA ROBERSON (CA Bar No. 248296)
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA  94104
Telephone:  (415) 421-7100
TTY:  (415) 421-1655

DANIEL F. GOLDSTEIN (*pro hac vice*)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 1700
Baltimore, MD 21202
Telephone:         (410) 962-1030
Fax: (410) 385-0869

*Counsel for Plaintiffs*

MATTHEW I. KREEGER (CA SBN 153793)
KRISTINA PASZEK (CA Bar No. 226351)
MKreeger@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, the NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, on behalf of their members, and Bruce F. Sexton, Jr., on behalf of himself and all others similarly situated, Melissa Williamson on behalf of herself and all others similarly situated, and James P. Marks on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>TARGET CORPORATION,<br><br>                    Defendant. | Case No.:  C 06-01802 MHP<br><br>CLASS ACTION<br><br>JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES<br><br><br>Hearing Date:<br>Time:<br>Judge:            The Honorable<br>                      Marilyn Hall Patel |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

I.    RELIEF SOUGHT ..................................................................................................... 2

II.   POINTS AND AUTHORITIES.................................................................................. 2

    A.    Procedural History ......................................................................................... 3

        1.    The Parties........................................................................................... 3

        2.    Pre-Litigation Stage of the Controversy ............................................ 4

        3.    Initial Complaint and Removal .......................................................... 4

        4.    Target's Motion to Dismiss Federal and State Claims and
            Plaintiffs' Motion for a Preliminary Injunction ............................... 5

        5.    Nation-Wide and State-Wide Class Certification and Ruling
            on Defendant's Motion for Summary Judgment................................ 5

        6.    2008 Litigation and Pre-Settlement Negotiation Case Status...................... 6

    B.    Background to the Current Proposed Settlement ........................................... 7

        1.    Representation ..................................................................................... 7

        2.    Settlement Negotiations ...................................................................... 7

III.  SUMMARY OF SETTLEMENT ............................................................................... 8

    A.    Definition of Accessibility ............................................................................ 8

    B.    Evaluation and Certification of Target.com................................................... 8

    C.    Monitoring ..................................................................................................... 9

    D.    Training .......................................................................................................... 9

    E.    Guest Feedback and Complaint Intake .......................................................... 9

    F.    Duration of Agreement ................................................................................ 10

    G.    Opt-Out Option for the Damages Subclass.................................................. 10

    H.    Notice .......................................................................................................... 10

    I.    Injunctive and Damages Release of Claims................................................ 11

    J.    Damages Settlement Fund ........................................................................... 11

    K.    Attorneys Fees and Costs ............................................................................ 13

L.   Dispute Resolution ............................................................. 13

IV.   LEGAL ARGUMENT ....................................................... 14

A.   The Court Should Conditionally Certify The Proposed Settlement
Class .......................................................................................... 14

1.   The Proposed Settlement Classes Satisfy Rule 23(a) .............................. 14

2.   The Court Should Preliminarily Approve Certification of
the California Damages Subclass Because the Proposed
Class Satisfies Rule 23(b)(3)............................................................. 14

B.   The Court Should Preliminarily Approve The Settlement
Agreement ................................................................................. 16

C.   The Court Should Direct Distribution Of The Notice Of Settlement ................... 18

D.   The Court Should Approve the Proposed Scheduling Order
Including Setting A Date For The Fairness Hearing.................................... 20

V.   CONCLUSION .................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................ 14, 15

*Battle v. Liberty Nat'l Life Ins. Co.*,
770 F. Supp. 1499 (N.D. Ala. 1991) ............................................................................ 16

*Botosan v. Paul McNally Realty*,
216 F.3d 827 (9th Cir. 2000) ....................................................................................... 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................... *passim*

*Horton v. Merrill Lynch*,
855 F. Supp. 825 (E.D.N.C. 1994) ......................................................................... 16, 17

*In re Oracle Sec. Litig.*,
829 F. Supp. 1176 (N.D. Cal. 1993) ........................................................................... 17

*Mendoza v. United States*,
623 F.2d 1338 (9th Cir. 1980) .................................................................................... 16

*Murillo v. Texas A&M Univ. Sys.*,
921 F. Supp. 443 (S.D. Tex. 1996) .............................................................................. 17

*Nat'l Fed'n of the Blind v. Target Corp.*,
2007 WL 2846462 (N.D. Cal. Oct. 2, 2007) .......................................................... *passim*

*Nat'l Fed'n of the Blind v. Target Corp.*,
452 F. Supp. 2d 946 (N.D. Cal. 2006) ........................................................................... 5

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ...................................................................................... 17

STATUTES

California Disabled Persons Act, California Civil Code Sections 54 *et. seq.* ....................... *passim*

California Unruh Civil Rights Act, California Civil Code Sections 51 *et seq.* ..................... *passim*

Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 ("ADA") .................... *passim*

1

2

**OTHER AUTHORITIES**

3

Federal Rules of Civil Procedure 23 ...................................................................................... *passim*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OR SETTLEMENT AGREEMENT

NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTE THAT on _____, 2008 at ____a.m./ p.m., or as soon thereafter as the matter may be heard, Plaintiffs and Defendant, Target Corporation ("Target") move the Court for (i) preliminary approval of the proposed Class Settlement Agreement and Release (the "Agreement") which has been filed herewith in the above-captioned matter; (ii) for an order certifying settlement classes for Plaintiffs' declaratory and injunctive relief claims under Federal Rule of Civil Procedure 23(a) and (b)(2) and a settlement class for Plaintiffs' damages claims under Federal Rule of Civil Procedure 23(a) and (b)(3); (iii) an order directing notice to all class members and an opportunity to opt out of the damages settlement; (iv) for a scheduling order setting deadlines for objections and opt-outs and setting a fairness hearing; and (v) for final approval of the proposed settlement agreement following a fairness hearing.

In support of this Motion, the parties state:

1.      The Agreement represents comprehensive settlement of the issues raised in the above captioned case.

2.      The parties believe that the Agreement offers a fair and equitable result to those affected by it.

3.      The parties believe that the Agreement will result in significant long-term benefits both for individuals who are members of the proposed settlement class and for Target.

1   **I.     RELIEF SOUGHT**

2          Accordingly, the parties respectfully request that the Court enter the attached proposed

3   Order:

4          1.     Conditionally certifying settlement classes for Plaintiffs' declaratory and

5   injunctive relief claims under Federal Rule of Civil Procedure 23(a) and (b)(2) and conditionally

6   certifying Plaintiffs' damages claims under Rule 23(b)(3);

7          2.     Granting preliminary approval of the Agreement so that the parties may proceed

8   with notice to class members;

9          3.     Directing the proposed form of notice to class members; and

10         4.     Setting a schedule for notice to class members; for objections and opt-out

11  statements for the damages subclass, and a fairness hearing for final approval of the Agreement.

12  **II.    POINTS AND AUTHORITIES**

13         The Agreement provides for a commitment by Target to provide access for class members

14  to Target.com with monitoring by Plaintiffs, as well as damages for the California subclass, as

15  described more fully below.  Previously, the Court certified a nation-wide class under the

16  Americans with Disabilities Act ("ADA") and a sub-class under California law.  The nationwide

17  class consists of all legally blind individuals in the United States who have attempted to access

18  Target.com and as a result have been denied access to the enjoyment of goods and services

19  offered in Target stores.  The California subclass consists of all legally blind individuals in

20  California who have attempted to access Target.com, for Plaintiffs' claims arising under the

21  California Unruh Civil Rights Act, California Civil Code Sections 51 *et seq*., and the Disabled

22  Persons Act, California Civil Code Sections 54 *et. seq.*  For settlement purposes only, the parties

23  propose certification of settlement classes under Federal Rule of Civil Procedure 23(b)(2) for

24  Plaintiffs' federal and state law declaratory and injunctive relief claims and under Rule 23(b)(3)

25  for Plaintiffs' California state law damages claims.  The Agreement creates a settlement fund of

26  $6,000,000 for payment of damage claims to members of the California subclass.  The Agreement

27  also provides for Plaintiffs' right to recover attorneys' fees and costs in an amount to be decided

28  by motion to the Court in the event the parties are unable to reach agreement on this issue.  As

1   discussed below, the Agreement is fair, adequate, and reasonable and therefore merits preliminary

2   approval.

3       **A.      Procedural History**

4       The National Federation of the Blind ("NFB") brought this case on behalf of a class of

5   blind persons nationally, alleging violation of the right of that class to full and equal access to

6   Target.com under the Americans with Disabilities Act ("ADA").  NFB also brought this case on

7   behalf of a subclass of blind persons throughout California alleging violation of the rights of that

8   subclass to equal access under California Civil Code §§ 51 *et seq.* (the "Unruh Act") and

9   California Civil Code §§ 54 *et seq.* (the "DPA").  The federal and state law claims include claims

10  for declaratory and injunctive relief.  The state law claims also include a prayer for statutory

11  damage remedies ranging from $1,000 to $4,000 for each occasion wherein each member of this

12  subclass allegedly attempted to access the goods and services offered on Target.com with screen-

13  reader software and encountered access barriers on the website.  Defendant Target Corporation

14  has denied and continues to deny liability under the federal and state statutes at issue.

15      **1.      The Parties**

16      Organizational Plaintiff NFB is the oldest and largest national advocacy organization of

17  blind persons.  The vast majority of its approximately 50,000 members are blind.  The NFB is a

18  collective and representative voice on behalf of blind Americans and their families.  Named

19  Plaintiff for the California subclass, Bruce Sexton, Jr. is a blind resident of California who is also

20  a member of the NFB.  Mr. Sexton, like other members of the California subclass, alleges that he

21  attempted to access the goods and services offered on Target.com with screen-reader software

22  and encountered barriers on the website.  Named Plaintiffs for the nationwide class, Melissa

23  Williamson and James Marks, are also blind individuals who are members of the NFB.  Like

24  other members of the nationwide class, Ms. Williamson and Mr. Marks allege that they attempted

25  unsuccessfully to access Target.com during the relevant period and as a result were unable to

26  equally access the goods and services offered at Target stores.  Collectively, NFB, Bruce Sexton,

27  Jr., Melissa Williamson, and James Marks are the "Named Plaintiffs" in this litigation.

28

1    The NFB has a commitment to expanding access to the world-wide web and information

2    technology for the Blind.  Pursuant to this mission, the NFB has established a web access

3    certification program under which companies may seek the NFB's Non-visual Accessibility

4    Certification.

5    Target Corporation ("Target") is a leading national retailer that offers a variety of goods

6    and services at its physical stores and on its website.  Target operates physical retail stores in all

7    but three states, including more than two hundred located in California.  Through its website,

8    Target.com, Target provides a variety of goods and services including, but not limited to, online

9    purchase of goods, information regarding goods and services offered at Target retail stores,

10   customer service, gift cards, and baby and wedding registry services.  Target.com also includes

11   information about Target's employment opportunities, investor relations and company policies.

12                          **2.       Pre-Litigation Stage of the Controversy**

13   Prior to initiating this litigation, on May 5, 2005, Plaintiff NFB notified Target that people

14   with vision impairments were unable to fully access and enjoy the goods and services offered at

15   Target.com.  The parties entered into a structured negotiation and tolling agreement.  During this

16   pre-litigation phase, the parties met and conferred regarding the barriers at issue and potential

17   solutions.  The parties were not able to come to a resolution during these negotiations, and

18   Plaintiffs initiated this litigation.

19                          **3.       Initial Complaint and Removal**

20   Plaintiffs filed their complaint on February 6, 2006, in Alameda County Superior Court of

21   California.  The complaint alleged violations of the Unruh Civil Rights Act, Cal. Civ. Code § 51

22   ("Unruh Act") and the California Disabled Persons Act, Cal. Civ. Code § 54.1 ("DPA").  On

23   March 9, 2006, Target filed a notice of removal.  The case was assigned to the San Francisco

24   Division of the Northern District of California on March 24, 2006.  On March 30, 2006, Plaintiffs

25   filed an Amended Complaint which included an additional allegation that the access barriers at

26   Target.com constituted a violation of Title III of the Americans with Disabilities Act, 42 U.S.C.

27   § 12182 ("ADA").  After filing the suit, the parties again attempted to engage in productive

28   settlement negotiations, but were ultimately unable to reach a resolution.

1        **4.**      **Target's Motion to Dismiss Federal and State Claims and Plaintiffs'**
2                   **Motion for a Preliminary Injunction**

3        Following the filing of the complaint, Target filed a motion to dismiss both the ADA and

4    state law claims, arguing that Target could not be found liable under the ADA, the Unruh Act, or

5    the DPA for the alleged deficiencies of the Target.com website.  This Court granted in part and

6    denied in part the motion to dismiss.  *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d

7    946, 965 (N.D. Cal. 2006).  The Court held that Plaintiffs could state an ADA claim but only to

8    the extent there is a nexus between use of the website and enjoyment of the goods and services

9    offered in Target's physical stores.  *Id.* at 957.  The Court further held that because an ADA

10   violation constitutes a violation of the Unruh Act and the DPA, Plaintiffs' allegations were

11   sufficient to state a claim for relief under those statutes.  *Id.* at 957-58.

12       At the same time that Target moved to dismiss the complaint, Plaintiffs moved for a

13   preliminary injunction that would have required Target to implement immediate access

14   improvements to Target.com.  This Court denied Plaintiffs' motion without prejudice.  *Id.* at 964-

15   65.

16       **5.**      **Nation-Wide and State-Wide Class Certification and Ruling on**
17                  **Defendant's Motion for Summary Judgment**

18       On February 1, 2007, Plaintiffs filed a motion to certify under Federal Rule of Civil

19   Procedure 23(a) and (b)(2) nationwide and statewide classes, and also moved to bifurcate this

20   case into two phases: Phase 1 for liability and equitable relief and Phase 2 for class damages.

21   Before the Court had issued a decision on class certification, Target filed a motion for summary

22   judgment.  In support of the motion for summary judgment, Target argued that Named Plaintiff

23   Bruce Sexton, Jr. had not set forth sufficient evidence to state a claim under the ADA or the

24   relevant California statutes.  These motions were followed by considerable briefing by both

25   parties.

26       Ultimately, this Court certified both the nationwide and statewide classes and granted

27   Plaintiffs' motion for bifurcation.  *See Nat'l Fed'n of the Blind v. Target Corp.*, 2007 WL

28   2846462 (N.D. Cal. Oct. 2, 2007).  This Court granted Target's motion for summary judgment

1   with respect to the ADA and denied the motion as to the state law claims.  *See id.* at *18-20.  The

2   Court ruled that the Unruh Act and the DPA applied to Target.com regardless of whether there

3   was a nexus between the online and physical stores.  *Id.* at *10.  The Court also found that

4   although there was insufficient evidence that Mr. Sexton was denied access to goods and services

5   offered at Target's physical stores due to barriers on the website, other declarants may have

6   alleged sufficient facts to support a claim under the ADA.  Accordingly, the Court granted

7   Plaintiffs leave to substitute new class representatives to represent the nationwide class for the

8   ADA claim.  *Id.* at *17.  Plaintiffs thereafter added Ms. Williamson and Mr. Marks as named

9   class representatives for the nationwide class.

10        This Court also directed that notice and opportunity to opt out of the damages claims be

11   distributed to the certified classes.  The Court approved a plan submitted by the parties under

12   which notice was emailed and mailed nationally to hundreds of consumer organizations of

13   persons with disabilities and organizations and entities who advocate for people with disabilities,

14   including advocates for the blind, along with a request that they post the notice for public review.

15   *Order Approving Form of Notice and Notice Distribution Plan*, Case No. C-06-01801 MHP (Jan.

16   25, 2008), at lines 10-22.  A notice administration company — RG2 Claims Administration

17   LLC — was approved to receive any opt-outs that were submitted.  *Id.*  A total of four opt-outs

18   were submitted in response to the notice.

19            **6.        2008 Litigation and Pre-Settlement Negotiation Case Status**

20        In the months prior to the settlement negotiations that produced the Agreement that is

21   before the Court today, the case was in active litigation.  The parties engaged in motion practice

22   relating to the class certification ruling and had begun conducting merits discovery.  Under the

23   existing case management order, non-expert merits discovery is scheduled to close on

24   September 3, 2008 and expert discovery to close on November 26, 2008.  The trial on liability

25   and equitable relief is set to begin on March 3, 2009.

26

27

28

**B.     Background to the Current Proposed Settlement**

**1.     Representation**

On both sides, this litigation has been vigorously prosecuted and defended by competent and experienced counsel.  Plaintiffs have been represented by the California law firms of Disability Rights Advocates, Schneider Wallace Cottrell Brayton Konecky LLP as well as *pro hac vice* counsel Peter Blanck and the firm of Brown, Goldstein & Levy.  Plaintiffs' counsel have extensive expertise in class action and disability rights litigation.  *See generally Nat'l Fed'n of the Blind*, 2007 WL 2846462 at 24 (N.D. Cal. Oct. 2, 2007).  Target Corporation has been ably represented by attorneys from Morrison and Foerster, which has extensive experience in defending corporate clients in class action litigation.

**2.     Settlement Negotiations**

Starting before this lawsuit was even filed, and continuing through until the present, the parties engaged in repeated settlement negotiations and worked diligently to resolve the parties' differences on the issues addressed by this Agreement.  As mentioned above, settlement negotiations were first attempted in the spring and summer of 2005, after NFB notified Target that Target.com contained access barriers to people with vision impairments.  At this time, the parties entered into pre-litigation structured negotiations in an effort to resolve this matter.  Those efforts were unsuccessful.

In 2006, the parties appeared before the Honorable Magistrate Judge Infante, Retired, of the Judicial Arbitration and Mediation Service.  During these negotiations, the parties discussed their respective views on potential components of equitable relief for the class.  This 2006 mediation ended, however, when the parties were unable to resolve the damages claims for the California subclass.  The litigation then continued with the motions for class certification and motion for partial summary judgment discussed above.  During the pendency of the litigation, Target undertook significant enhancements to its website to improve the accessibility of Target.com.  Target engaged a web access consultant and developed a set of internal guidelines designed to promote access to its website.

1    In 2008, the parties again engaged in formal settlement negotiations in front of the

2    Honorable Magistrate Judge Infante, Retired.  Through this further facilitated negotiation, the

3    parties reached the Agreement that is before the Court today.  During the 2008 negotiations,

4    Plaintiffs agreed that Target had made substantial progress on improving access to its website, but

5    maintained that there was still additional improvement needed.  The parties agreed to meet and

6    confer to identify additional enhancements to the website.  The parties also agreed that the

7    Settlement would call for a three-year monitoring period following final approval during which

8    Target would maintain full access to the website.

9    **III.    SUMMARY OF SETTLEMENT**

10    The Proposed Settlement includes the following terms, which were agreed upon by the

11    parties.

12    **A.    Definition of Accessibility**

13    Target will ensure that Target.com meets the Target Online Assistive Technology

14    Guidelines ("TOATG") and that blind guests using screen-reader software are able to acquire the

15    same information and engage in the same interactions as are available to sighted guests with

16    substantially equivalent ease of use.  Target has revised its TOATG guidelines based on dialogue

17    with NFB.  Target will also make additional improvements to the website as stated in section

18    6.2.1 and 6.2.2 of the Agreement.

19    **B.    Evaluation and Certification of Target.com**

20    Target and the NFB are working collaboratively toward obtaining certification of the

21    Target.com website through the NFB's Non-visual Accessibility Certification program using the

22    standard techniques and criteria of that program.  To this end, technical personnel from the NFB

23    and Target have met and conferred:  (1) to discuss the current state of the Target.com website;

24    (2) to identify additional changes to the Target.com website that are necessary to achieve NFB

25    non-visual accessibility certification; (3) to establish a deadline by which the changes to the

26    Target.com website will be implemented; (4) to establish a timeline for the NFB non-visual

27    accessibility certification; (5) to specify the testing protocols to be used by the NFB in monitoring

28    the accessibility of the Target.com website; and (6) to reach final agreement on changes to the

TOATG guidelines.  Through this process, the parties reached an agreement on a list of specified additional access improvements to be made to the Target.com website, set forth in Exhibit E to the Agreement.  As stated in section 6.2 of the Agreement, Target expects to implement these improvements by February 2009.  Upon completion of the changes agreed to by the parties mentioned above, the NFB agreed to evaluate and certify the Target.com website according to its standard criteria for non-visual accessibility certification.

### C.    Monitoring

For the three-year term of the Agreement, the NFB will monitor the Target.com website on a quarterly basis according to the protocol agreed upon in section 8.1 of the Agreement.  The NFB will notify Target if this quarterly monitoring identifies any concerns about the accessibility of the Target.com website and both parties will designate a specific person to conduct this communication.

Target will provide periodic payments to the NFB for this monitoring.  The NFB will use these monitoring funds to pay consultants and counsel for work related to the monitoring of the Target.com website.  NFB will receive $50,000 for the first year of the monitoring, and $40,000 for each subsequent year.

### D.    Training

At a location to be determined by Target, NFB will provide periodic one-day training sessions regarding website accessibility to Target employees responsible for coding the Target.com website.  Each of these employees will attend one such training session during his or her employment at Target.  Target will pay the NFB for documented actual expenses, up to $15,000 per session, that the NFB incurs in providing this training.

### E.    Guest Feedback and Complaint Intake

Target will ensure that any complaints it receives from guests using screen-reader technology concerning accessibility of Target.com are reported to a Target employee designated as the person responsible for ensuring that Target.com is accessible.

Target agreed to provide to the NFB a quarterly summary of any such complaints that are received.  In each summary, Target agreed to identify the nature of any complaint and indicate

1   whether the issue was resolved; if an issue was not resolved, Target agreed to consult with the

2   NFB about possible resolution.

3       **F.     Duration of Agreement**

4       The parties agreed to terminate the Agreement three years after the date that the settlement

5   is finally approved by the Court or three years after the date that the Target.com website is

6   certified by the NFB as accessible, whichever is later.

7       **G.     Opt-Out Option for the Damages Subclass**

8       If this Court grants the joint motion to certify a settlement subclass under Rule 23(b)(3),

9   any potential California settlement class members, except for the Named Plaintiffs, will have the

10  right and an additional opportunity to opt out of the monetary relief subclass.  (Class members

11  already had an initial opportunity to opt out pursuant to the notice that was issued after the

12  Court's Order granting Class Certification under Federal Rule of Civil Procedure 23(a) & (b)(2).)

13  The parties will accept requests to opt out of the monetary settlement that are received by the

14  Claims Administrator within sixty days of the Notice Deadline that is set by the court.  The

15  parties agreed upon form language and content of opt-out requests, which is reflected in section

16  12.1 of the attached Agreement, and that opt-out requests that are not made in the agreed upon

17  language may be reviewed by the Court upon the request of either party.  Target shall have the

18  right to terminate the settlement if more than 300 individuals opt out of the proposed damages

19  subclass.  The proposed damages subclass is for the purposes of settlement only and the opt-out

20  provision will only be available to the state damages subclass.  The four individuals who

21  previously opted out of the damages claims will be treated as having opted out of the proposed

22  settlement.

23      **H.     Notice**

24      If this proposed Agreement is preliminarily approved and the proposed damages subclass

25  is certified, the parties will provide notice to both the nationwide settlement class and the

26  California settlement subclass in the manner approved by this Court.  The proposed notice will be

27  in the same form as was previously approved by the Court and used to provide notice to the class

28  after the Court's Class Certification Order in this case.  (The currently proposed notice is attached

hereto as Exhibit 1).  In addition, the parties agreed to mail by first class mail the notice to any individuals that Class Counsel know are members of the damages subclass.  The notice to all class members will describe the Agreement and inform them of their right to object to the Agreement.  The notice to the proposed California subclass members will inform them of their right to opt out of the damages portion of the Agreement, and will describe the prerequisites for recovering damages from the claims fund.

### I.     Injunctive and Damages Release of Claims

In exchange for the injunctive relief described in this proposed Agreement, Plaintiffs agreed to release any injunctive relief claims against Target relating to the subject matter of the litigation.  The release will apply to claims that arose between February 7, 2003, and the date that the Court grants Final Approval of the Agreement.  The release will also apply to claims relating to enforcement of the settlement agreement that might arise during the three-year enforcement/ monitoring period.  This release will apply to the Named Plaintiffs, the nationwide class, and the California statewide class.

In exchange for the damages relief described in the proposed Agreement, Plaintiffs also agreed to release all damages claims of the California subclass against Target relating to the subject matter of the litigation.  The damages release will apply to any potential claims of the Named Plaintiffs and members of the proposed California settlement subclass who chose not to opt out of the Agreement.  The release will apply to any claims for damages under California state access law that arose between February 7, 2003, and the deadline that the Court sets for opting out of the Agreement.

### J.     Damages Settlement Fund

Target agreed to contribute $6,000,000 into a settlement fund that will be used to pay valid claims submitted by members of the California subclass. Target will deposit these funds into an interest bearing trust account within thirty days of the Finality Date, which date is defined in section 3.1 of the Agreement.  Claims will be processed and the funds will be distributed within sixty days of the end of the claims period.  The "claims period" will last for ninety days after the date notice is disseminated.  Interest earned by the account will also go to the damages subclass.

1    Plaintiffs selected, and Target did not object to, the Claims Administrator RG2 Claims

2    Administration, LLC.  The claims administrator will be retained to process and validate submitted

3    claims forms, and to distribute funds pursuant to the proposed Agreement.  Target will bear the

4    costs of claims administration.

5    In order to submit a claim, eligible members of the damages subclass will be required to

6    submit a claim form, executed under penalty of perjury, setting forth, among other things, (i) the

7    class member's name and address; (ii) the nature of the class member's vision disability; (iii) the

8    dates or approximate dates during the class period on which the class member attempted to access

9    the Target.com website using screen-reader technology; and (iv) the nature of the difficulty

10   encountered when attempting to use the Target.com website.

11   Claims may be submitted on line through a website previously established for class notice

12   and opt-outs.  This website is located at www.nfbtargetlawsuit.com.  Damages claims may also

13   be submitted by mail directly to the claims administrator.

14   Each class member who timely submits a claim form will be entitled to $3500 for each

15   valid claim.  If the class claims exceed $6 million plus accrued interest, then the amount paid per

16   claim will be reduced pro rata so that the total amount paid from the fund does not exceed $6

17   million plus accrued interest.  Each California class member will entitled to submit up to two

18   claims.

19   If the total dollar amount that is distributed to class members totals less than $6 million

20   plus accrued interest, or if any portion of the damages fund remains unpaid for 400 days after the

21   claims administrator has mailed checks to class members, the remainder of the settlement fund

22   will be divided according to the *cy pres* beneficiaries:  the Braille Institute of America and

23   Recordings for the Blind and Dyslexic ("RFB&D").  Both of these non profit organizations do

24   work that provides significant benefits to the relevant Class.  For information on RFB&D, see

25   http://www.rfbd.org/.  For information on the Braille Institute see http://www.brailleinstitute.org/.

26   (*See also* Declaration of Laurence Paradis In Support of Joint Motion for Preliminary Approval

27   ("Paradis Decl.") at ¶ 10.)  There will be no reversion of any funds to Target.

28

1   The parties also agreed to a separate incentive settlement on behalf of Named Plaintiff

2   Bruce Sexton, Jr.  In exchange for Mr. Sexton's release of all claims, Target will donate $20,000

3   on behalf of Mr. Sexton to a non-profit organization that Mr. Sexton is helping to establish named

4   the California Center for the Blind.  The mission of this 501(c)(3) organization is to assist the

5   blind in developing independent living and orientation skills.  (*See* Paradis Decl. at ¶ 18.)

6   **K.      Attorneys Fees and Costs**

7   The parties engaged in a separate mediation session before the Honorable Magistrate

8   Judge Infante in an effort to reach agreement as to the amount of attorneys' fees and costs to be

9   paid by Target as part of the settlement.  The parties were unable to resolve this issue at that time

10  but expect to take further steps to resolve this issue.  If the parties are unable to reach agreement

11  as to the amount of attorneys' fees and costs, Plaintiffs will file a motion for attorneys' fees and

12  costs to be decided by this Court.  Target will be free to oppose the amount of fees and costs

13  sought in any such motion but will not dispute Plaintiffs' entitlement to reasonable fees and costs.

14  The proposed scheduling order includes a deadline for Plaintiffs to file their motion for an award

15  of reasonable fees and costs.

16  **L.      Dispute Resolution**

17  Enforcement of this Agreement will be subject to the continuing jurisdiction of the Court.

18  A condition of the Agreement is the appointment of United States Magistrate Judge Howard

19  Lloyd of the United States District Court for the Northern District of California, for the purposes

20  of this continuing jurisdiction.  Prior to seeking court enforcement, the parties will meet and

21  confer to discuss and resolve any dispute that arises regarding compliance with the agreement.  If,

22  within 30 days, the parties are still unable to resolve the dispute through the meet-and-confer

23  process, they will engage in mediation.  If, within sixty days, the parties are unable to resolve the

24  dispute through mediation, the issue may be presented to Magistrate Judge Lloyd, who will have

25  the authority to enforce the agreement.  The parties agreed that attorneys' fees and costs awards

26  for dispute resolution should be awarded in accordance with the standards set forth in existing

27  United States Supreme Court and California Supreme Court precedent as to prevailing party

28  status.

1   **IV.    LEGAL ARGUMENT**

2          **A.      The Court Should Conditionally Certify The Proposed Settlement Class**

3          Certification of the proposed settlement classes is appropriate under Federal Rules of Civil

4   Procedure 23.

5                  **1.      The Proposed Settlement Classes Satisfy Rule 23(a)**

6          Under Rule 23(a) of the Federal Rules of Civil Procedure, a class must meet four

7   requirements for certification:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy

8   of representation.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

9   (settlement class certification decision applying *Amchem Products, Inc. v. Windsor*, 521 U.S. 591

10  (1997) (in the context of a nationwide products liability class action)).  The Court previously

11  certified a nationwide class and California subclass for declaratory and injunctive relief and

12  minimum statutory damages under Rule 23(b)(2) and in doing so, engaged in an extensive

13  analysis of the Rule 23(a) requirements.  *See Nat'l Fed'n of the Blind*, 2007 WL 2846462 (N.D.

14  Cal. Oct. 2, 2007).  Nothing in the class definition has changed to defeat the proposed state class'

15  satisfaction of the Rule 23(a) requirements.  As such, the requirements of Rule 23(a) are still

16  satisfied for the purpose of the proposed the proposed declaratory and injunctive relief settlement

17  classes.  The only inquiry is whether the proposed damages subclass also meets the requirements

18  of 23(b)(3).

19                  **2.      The Court Should Preliminarily Approve Certification of the**
                    **California Damages Subclass Because the Proposed Class Satisfies**
20                  **Rule 23(b)(3)**

21         As mentioned prior, in its October 10, 2007 Memorandum & Order Re: Plaintiffs' Motion

22  for Class Certification and Motion to Bifurcate, the Court certified the damages claims of the

23  California subclass, as represented by Plaintiff Sexton, for class treatment under Rule 23(b)(2).

24  2007 WL 2846462 at *17.  The class action settlement now presented is conditional upon the

25  parties seeking, and the Court granting, re-certification of a damages settlement class under

26  Rule 23(b)(3).  For the following reasons, certification of the damages class is appropriate under

27  Rule 23(b)(3).

28

1    Under Rule 23(b)(3), certification is appropriate where common questions of law and fact

2    "predominate over any questions affecting only individual members, and that a class action is

3    superior to other available methods for fairly and efficiently adjudicating the controversy."  When

4    assessing predominance and superiority, the court may consider that the class will be certified for

5    settlement purposes only, and that manageability of trial is therefore irrelevant.  *Amchem*

6    *Products, Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997).  In this context, predominance is found

7    when "proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id*.

8    at 623; *Hanlon*, 150 F.3d at 1022.

9    The proposed California damages class here is sufficiently cohesive, sharing a "common

10   nucleus of facts and potential legal remedies."  *Hanlon*, 150 F.3d at 1022 (certifying a class using

11   the standards set forth in *Amchem*).  Mr. Sexton and all of the members of the California damages

12   class have the same claims for minimum statutory damages under California law for the access

13   barriers they have encountered on the Target.com website.  *Nat'l Fed'n of the Blind*, 2007 WL

14   2846462 at *17.  The damage claims here are well suited to resolution on a class basis, as they do

15   not require complex individualized determinations.  *Id*.; *Botosan v. Paul McNally Realty*, 216

16   F.3d 827, 834-35 (9th Cir. 2000) (proof of actual damages not required for recovery of statutory

17   damages under the Unruh Civil Rights Act).  Resolution of the statutory damages claims here

18   would involve analysis of the same website, during the same general time frame, for all members

19   of the subclass.  Thus, for all class members, the damages claims in the case would turn on an

20   analysis of a "common nucleus of facts and potential legal remedies."  *Hanlon*, 150 F.3d at 1022.

21   As the Ninth Circuit noted in *Hanlon*, "'When common questions present a significant aspect of

22   the case and they can be resolved for all members of the class in a single adjudication, there is a

23   clear justification for handling the dispute on a representative rather than on an individual basis.'"

24   *Id*. at 1022 (quoting 7A Wright & Miller, *Federal Practice & Procedure* § 1778 (2d ed. 1986)).

25   "The superiority inquiry under Rule 23(b)(3) requires determination of whether the

26   objectives of the particular class action procedure will be achieved in the particular case."

27   *Hanlon*, 150 F.3d at 1023.  Here, the proposed resolution of the claims of the damages subclass is

28   a settlement that includes an agreed-upon and streamlined claims procedure designed to provide

1    redress and finality to the damages claims of the class.  Under the terms of the settlement, this

2    resolution is conditional upon the certification of the damages class under Rule 23(b)(3).

3    Accordingly, certification of the damages class under Rule 23(b)(3), which the Court has already

4    found to meet the requirements of Rule 23(a) and (b)(2), will bring substantial benefits to the

5    class and the efficient administration of justice.  Resolution by class action settlement is far more

6    manageable and far superior to the alternative of requiring further litigation to resolve these

7    claims.  Thus, the parties respectfully request that the Court certify the damages subclass for

8    settlement purposes under Rule 23(b)(3).

9        **B.    The Court Should Preliminarily Approve The Settlement Agreement**

10       Rule 23(e) of the Federal Rules of Civil Procedure conditions the settlement of any class

11   action on court approval.  *Hanlon*, 150 F.3d at 1025.  Class action settlements are generally

12   subject to a two-step approval process: "[f]irst the court conducts a preliminary approval or pre-

13   notification hearing to determine whether the proposed settlement is 'within the range of possible

14   approval' or, in other words, whether there is 'probable cause' to notify the class of the proposed

15   settlement."  *Horton v. Merrill Lynch*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (quoting

16   *Armstrong v. Board of School Directors*, 616 F.2d 305, 312 (7th Cir. 1980)).  Preliminary or

17   conditional approval allows parties to avoid the unnecessary expenditure of resources arising

18   from notice to the class of a settlement that cannot possibly gain court approval.

19       If a proposed settlement receives preliminary approval, the parties provide notice to the

20   class in a manner determined by the court.  Under revised Rule 23(c)(2)(A) of the Federal Rules

21   of Civil Procedure, "(f)or any class certified under…Rule 23(b)(2), the court may direct

22   appropriate notice to the class."  Fed. R. Civ. Proc. 23(c)(2).  In a class action certified under

23   Rule 23(b)(2) of the Federal Rules of Civil Procedure, "a district court has great discretion in

24   determining the kind of notice to employ in alerting class members to a proposed settlement and

25   settlement hearing, subject to the 'broad reasonableness standards imposed by due process.'"

26   *Battle v. Liberty Nat'l Life Ins. Co.*, 770 F. Supp. 1499, 1521 (N.D. Ala. 1991) (internal citation

27   omitted); *see also Mendoza v. United States*, 623 F.2d 1338, 1350-51 (9th Cir. 1980).

28

1    For the subclass certified under Rule 23 (b)(3) the rule requires a court to direct "the best

2    notice that is practicable under the circumstances, including individual notice to all members who

3    can be identified through reasonable effort." Fed. R. Civ. P. 23 (c)(2)(B). In this case, there is no

4    readily available list of all California subclass members to whom individual notice can be sent.

5    The best notice that is practicable would thus be the same notice previously approved by the

6    Court. The parties' proposed plan for distribution of notice of the settlement is set forth in section

7    D below.

8    Once the court grants preliminary approval and notice is provided, the court conducts a

9    "fairness hearing," at which all interested parties are afforded an opportunity to be heard. *Horton*,

10   855 F.2d at 827. At such a hearing, the Court conducts a substantive evaluation of the proposed

11   settlement to determine whether it is "fundamentally fair, adequate, and reasonable." *See Officers*

12   *for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Oracle Sec. Litig.*, 829

13   F. Supp. 1176, 1179 (N.D. Cal. 1993).

14   There is an "initial presumption of fairness when a proposed class settlement was

15   negotiated at arm's length by counsel for the class." *Murillo v. Texas A&M Univ. Sys.*, 921 F.

16   Supp. 443, 445 (S.D. Tex. 1996). Other factors courts consider in assessing a settlement proposal

17   include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely

18   duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

19   (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

20   proceedings; (6) the experience and views of counsel; (7) the presence of a government

21   participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon*, 150

22   F.3d at 1026; *see also In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1179 (N.D. Cal. 1993). The

23   district court must explore these factors comprehensively to survive appellate review but "the

24   decision to approve or reject a settlement is committed to the sound discretion of the trial judge."

25   *Hanlon*, 150 F.3d at 1026.

26   Furthermore, courts must give "proper deference to the private consensual decision of the

27   parties." *Id.* at 1027. Settlement is the preferred means of dispute resolution, particularly in

28   complex class litigation. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.

1  1982) (class action suit challenging allegedly discriminatory employment practices by a police

2  department).  "[T]he court's intrusion upon what is otherwise a private consensual agreement

3  negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

4  reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

5  between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

6  adequate to all concerned." *Hanlon*, 150 F.3d at 1027.  Thus, a district court's decision to

7  approve a class action settlement may be reversed "only upon a strong showing that the district

8  court's decision was a clear abuse of discretion." *Id.*

9      This Court will find, after scrutinizing the settlement in light of the factors set forth above,

10  that the Agreement is fair and should be preliminarily approved.  The outcome of the litigation is

11  uncertain.  (Paradis Decl. at ¶ 13.)  Proceedings through trial and appeal would involve

12  substantial litigation risks, would be costly, and would substantially delay resolution of this

13  already lengthy action.  (*Id.*)  Plaintiffs and the class would face risks in going forward given the

14  defenses available to Target and the novel nature of this suit.  (*Id.*)  Further, approval of the

15  settlement is proposed here by experienced and reputable class action counsel for both Parties.

16      When considered together, these factors support preliminary approval of the proposed

17  class action settlement under Rule 23(e)(2).  Because the settlement is a "fundamentally fair,

18  adequate, and reasonable" resolution of the disputed issues, it should be preliminarily approved

19  by the Court through entry of the proposed Order.

20      **C.      The Court Should Direct Distribution Of The Notice Of Settlement**

21      This Court should order notice to the Settlement Class in the manner described in the

22  Agreement in section 16.  The parties have agreed upon a form of notice of the settlement (the

23  "Notice") which is attached hereto as Exhibit 1 to this Joint Motion.  The parties jointly propose

24  that this Notice be distributed in the same manner as was previously employed to provide similar

25  class notice in this case — *i.e.*, mailing and/or emailing the notice to organizations around

26  California and the country that are organizations of persons with disabilities and organizations

27  and entities that advocate for people with disabilities, including the blind.  *See* January 24, 2008

28  *Order Approving Form of Notice and Notice Distribution Plan*, Case No. C-06-01801 MHP,

1   at 2:10 – 23, Document No. 173 on the Court's docket.  Class counsel have assembled a list over

2   a thousand such organizations and entities to receive the proposed Notice.  (Paradis Decl. at ¶ 15

3   & Ex. A thereto, which sets forth the distribution list for the Notice.)  Class counsel will mail

4   and/or email the proposed Notice to these organizations along with a request that they post the

5   Notice for public review.  (Paradis Decl. at ¶ 15.)  Class counsel will also send individual First

6   Class mailed copies of the Notice in an accessible format to those individuals that Class Counsel

7   know are members of the damages subclass.  (Paradis Decl. at ¶ 17.)  Finally, as stated in section

8   28 of the Agreement, Defendant will provide the required notice of the settlement to

9   governmental entities pursuant to the Class Action Fairness Act.

10        The proposed Notice describes the content of this Agreement, and informs all class

11   members of their right to object to the Agreement.  The Notice advises members of the proposed

12   California subclass of their right to opt out of the damages portion of the Agreement, and

13   describes the process, prerequisites, and time limits required for recovering damages from the

14   claims fund.  The Notice will refer class members to the website previously established per Court

15   order — www.nfbtargetlawsuit.com — for further information and for settlement damages class

16   members to submit either an Opt-Out Notification or a damages claim.  Class Counsel will further

17   distribute a supplemental notice of the claims procedure (the "Claims Notice")  to California-

18   based and nationwide recipients that are organizations of persons with disabilities and

19   organizations and entities that advocate for people with disabilities, including advocates for the

20   blind, with a request that the recipients post the Claims Notice for public review.  (*See* proposed

21   Claims Notice attached as Ex. 2 hereto; *see also* Paradis Decl. at ¶ 16 and Ex. B thereto, which

22   sets forth the distribution list for the Claims Notice.)  The Claims Notice will inform members of

23   the California Settlement Class of the claims distribution process and refer to the Settlement

24   Website for further information.  Target will retain the previously selected administrator — RG2

25   Claims Administration — to collect and process any opt-out statements as well as to receive and

26   process damages claims.  RG2 will submit copies of any opt-out statements it receives to the

27   parties and the Court.  RG2 will also submit a report to the parties at the end of the claims

28   administration process detailing the results of the claims administration process.

1

**D.      The Court Should Approve the Proposed Scheduling Order Including Setting A Date For The Fairness Hearing**

2

3      The parties are submitting with this motion a proposed scheduling order setting forth

4  proposed dates for issuance of the notices, deadlines for objections and opt-outs, deadlines for

5  claims submission, a date for the Fairness Hearing to determine final approval of the Agreement,

6  and related orders and deadlines.  The parties request that the Court enter this proposed order with

7  such changes as the Court deems appropriate.

8  **V.      CONCLUSION**

9      For the reasons discussed above, Plaintiffs and Defendant request that the Court issue

10  preliminary approval of the class-action settlement subclasses, approve the form of the proposed

11  notices, and issue the proposed scheduling order, including setting a date for a final approval

12  hearing.

13  Dated: August 27, 2008

14

15                    By:   /s/Laurence W. Paradis
                              Laurence W. Paradis

16                          Attorneys for Plaintiffs

17  Dated: August 27, 2008

18

19                    By:   /s/Matthew I. Kreeger
                              Matthew I. Kreeger

20                          Attorneys for Defendant

21

22

23

24

25

26

27

28