HAROLD J. McELHINNY (CA SBN 66781)
MATTHEW I. KREEGER (CA SBN 153793)
KRISTINA PASZEK (CA SBN 226351)
HMcElhinny@mofo.com
MKreeger@mofo.com
KPaszek@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Defendant
TARGET CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, the NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, on behalf of their members, and Bruce F. Sexton, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No. C06-01802 MHP<br><br>**CLASS ACTION**<br><br>**DEFENDANT TARGET CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS**<br><br>Date: January 26, 2009<br>Time: 2:00 PM<br>Judge: Hon. Marilyn Hall Patel |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 1

ARGUMENT ................................................................................................................................... 4

I. NO MULTIPLIER SHOULD APPLY ............................................................................... 4

    A. Enhancement Would Render the Fee Award Grossly Disproportionate to the Damages Fund ....................................................... 4

    B. The Relevant Factors Do Not Justify a Multiplier ................................................. 5

    C. Awards in Other Cases Demonstrate That Enhancement Is Unwarranted ............................................................................................................. 7

        1. Courts Routinely Deny Requests for a Multiplier, Even When Substantial Benefits Are Secured for a Class .................................. 7

        2. The Decisions Relied Upon by Plaintiff Are Distinguishable ..................... 8

II. PLAINTIFFS' LODESTAR IS EXCESSIVE ................................................................... 9

    A. Plaintiffs Seek Compensation for Hours Not Reasonably Expended ..................... 9

        1. Non-Compensable Hours .............................................................................. 9

            a. Unsuccessful Preliminary Injunction Motion ................................ 9

            b. Travel Time ................................................................................ 10

            c. Clerical Tasks ............................................................................. 10

            d. Insufficiently Documented Time Entries ................................... 10

        2. Duplicative Hours ....................................................................................... 10

        3. Inefficient Hours ......................................................................................... 11

    B. The Hourly Rates for Summer Associate and Paralegal Work Are Excessive and Should Be Reduced .......................................................................12

    C. Total of Amount of Reasonably Spent Hours ...................................................... 12

    D. Fees on Fees ......................................................................................................... 13

CONCLUSION .............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Blum v. Stenson*,
 465 U.S. 886 (1984) .................................................................................................... 12

*Chalmers v. City of Los Angeles*,
 796 F.2d 1205 (9th Cir. 1986), *amended on other grounds*, 808 F. 2d 1373 (1987) ................ 9

*City of Burlington v. Dague*,
 505 U.S. 557 (1992) ...................................................................................................... 6

*Davis v. City of San Francisco,*
 976 F.2d 1536 (9th Cir. 1992) ...................................................................................... 12

*Fair Hous. Council v. Penasquitos Casablanca Owner's Ass'n,*
 523 F. Supp. 2d 1164 (S.D. Cal. 2007) ........................................................................ 11

*Fischer v. SJB-P.D. Inc.*,
 214 F.3d 1115 (9th Cir. 2000) ........................................................................................ 7

*Flannery v. CHP*,
 61 Cal. App. 4th 629 (1998) ........................................................................................... 7

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ....................................................................................................... 9

*Ketchum v. Moses*,
 24 Cal. 4th 1122 (2001) ......................................................................................... 5, 6, 7

*Lealao v. Beneficial California, Inc.*,
 82 Cal. App. 4th 19 (2000) ............................................................................................. 4

*Lopez v. San Francisco Unified Sch. Dist.*,
 385 F. Supp. 2d 981 (N.D. Cal. 2005) (Illston, J.) .................................................. 5, 7, 8

*Lucas v. Kmart Corp.*,
 2006 U.S. Dist. LEXIS 51420 (D. Colo. July 27, 2006) ..................................... 4, 8, 9

*Morales v. City of San Rafael*,
 96 F.3d 359 (9th Cir. 1996) ............................................................................................ 5

*Spalding Labs., Inc. v. Ariz. Biological Control, Inc.,*
 2008 U.S. Dist. LEXIS 56100 (C.D. Cal. May 29, 2008) .............................................. 5

*Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*,
   460 F.3d 1253 (9th Cir. 2006) .................................................................................................. 10

*Wallace v. Consumer Coop. of Berkeley*,
   170 Cal. App. 3d 836 (1985) .................................................................................................... 10

**OTHER AUTHORITIES**

Herbert B. Newberg, Newberg on Class Actions § 14:6 (4th ed. 2002) ......................................... 4

**INTRODUCTION**

As this Court is aware, the parties have reached agreement on a proposed class settlement that provides for a list of specific changes to the Target.com website, in addition to a $ 6 million damages fund. There remains only one issue on which the parties cannot agree: the amount of attorneys' fees and costs to which plaintiffs' counsel are entitled.

Three separate law firms have litigated the case on behalf of plaintiffs, seeking more than $4 million in fees for a case that settled long before trial. A significant portion of the time for which plaintiffs seek fees was spent bringing an unsuccessful preliminary injunction motion, defending against a motion to dismiss that the Court granted in part, and defending against a motion for summary judgment that was granted as to the sole individual named plaintiff's Americans with Disabilities Act ("ADA") claim. Plaintiffs succeeded in winning class certification, but only after the Court gave them a second chance to redo what they did not get right the first time — that is, supply evidence of class members who suffered a cognizable injury for purposes of plaintiffs' claim under the ADA. Even upon granting class certification, the Court required plaintiffs to substitute new named plaintiffs, as no original named plaintiff could properly represent the nationwide class for its ADA claim. Plaintiffs' fee submission includes other uncompensable activities, including, for example, substantial fees for press relations — what essentially amounts to an advertising campaign for plaintiffs' counsel.

Plaintiffs' counsel not only ask that Defendants foot the entire bill for the litigation  They also maintain that their already excessive lodestar amount in excess of $2 million should be inflated further by applying a multiplier of 2.0, resulting in a demand of $4,323,656 for merits fees alone — a sum that exceeds 2/3 of the amount of damages that they secured for class members through settlement.

A fee award of over $4 million is simply not justified in this case. Plaintiffs' counsel should be awarded merits fees of no more than $1,691,417, plus reasonable costs.

**STATEMENT OF FACTS**

Plaintiffs the National Federation of the Blind, the National Federation of the Blind of California, and Bruce F. Sexton (hereinafter the "original plaintiffs") brought this case against

Target in February 2006, after a period of structured negotiations between the parties. The complaint, filed in Alameda County Superior Court, alleged violations of California's Unruh Act and Disabled Persons Act. After Target removed to federal court, plaintiffs filed an amended complaint that added a cause of action under the ADA.

Before this Court, the original plaintiffs moved for a preliminary injunction, and Target moved to dismiss the complaint under Rule 12(b)(6). With regard to the ADA claim, the Court granted Target's motion to dismiss in part and denied it in part, holding that:

> [T]o the extent that plaintiffs allege that the inaccessibility of Target.com impedes the full and equal enjoyment of goods and services offered in Target stores, the plaintiffs state a claim, and the motion to dismiss is denied. To the extent that Target.com offers information and services unconnected to Target stores, which do not affect the enjoyment of goods and services offered in Target stores, the plaintiffs fail to state a claim under Title III of the ADA.

(Order of Sept. 6, 2006 [Docket 62] at 11.) With regard to the Unruh Act and Disabled Persons Act, the Court reasoned that it need not reach Target's arguments at that juncture because an ADA violation alone was sufficient to constitute a violation of the state statutes. (*Id*. at 12-13.) The Court denied the preliminary injunction motion, concluding that the original plaintiffs had not met their burden of establishing entitlement to preliminary injunctive relief. In particular, the Court noted that it was not clear from record whether Target.com was in fact inaccessible to the blind, as had been alleged. (*Id*. at 22.)

After a period of limited discovery, the original plaintiffs moved for class certification under Rule 23(b)(2) and for bifurcation of the liability and damages phases of trial. Plaintiffs' counsel submitted 22 declarations from purported class members. Target opposed certification and moved for summary judgment as to the claims of the only individual named plaintiff, Bruce Sexton. Target objected to the class certification motion on numerous grounds. Among Target's objections was the vastly overbroad class definition, which encompassed individuals whose claims had been dismissed pursuant to this Court's ruling on Target's motion to dismiss. (Target Corporation's Opposition to Plaintiffs' Motion for Class Certification [Docket 96] at 11-14.) Target also argued that certification was improper because no plaintiff or declarant demonstrated

actionable injury under the relevant standard enunciated by the Court. (*Id*.) The Court addressed these issues in an interim order regarding class certification. (Order of Apr. 25, 2007 [Docket 119].) In that order, the Court restricted the nationwide class to blind individuals "who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target retail stores." (*Id.* at 8.) The Court likewise expressed concern "whether any of the declarants satisfy the class definition" because "none of the declarants has stated that the website has impeded their access to the stores." (*Id.*) Rather than deny the motion for class certification at that juncture, the Court invited the original plaintiffs to cure this problem by "submit[ting] class member declarations that are more compelling with respect to the use of the website to access Target stores." (*Id.*) In response to this admonition, the original plaintiffs submitted 34 additional declarations, many of them from previous declarants. A supplemental round of class certification briefing followed.

On October 2, 2007, the Court granted Target's motion for summary judgment as to Sexton's ADA claim, concluding that Sexton could not demonstrate that his purported "inability to access Target.com renders him unable to access the goods and services of Target stores." (Order of Oct. 2, 2007 [Docket 149] at 24.) In the same order, the Court granted plaintiffs' motion for class certification and certified both a nationwide class and a California subclass under Rule 23(b)(2). Because Sexton had been determined not to have an ADA claim, he could not serve as a class representative for the nationwide class. The Court granted the original plaintiffs leave to substitute another representative for the nationwide class. Plaintiffs later filed an amended complaint adding two new plaintiffs, James P. Marks and Melissa Williamson, to serve as representatives for the nationwide class.

The parties proceeded with discovery and distribution of class notice. After mediation in April 2008, the parties agreed to a tentative settlement, documented in a Class Settlement Agreement and Release executed in August 2008. The settlement provides that if the parties cannot reach agreement as to the amount of attorneys' fees and costs, plaintiffs would file a motion to be decided by the Court. On September 25, 2008, the Court granted preliminary

approval of the proposed class settlement.  Despite efforts to do so, the parties have not been able to reach agreement regarding the amount of attorneys' and fees and costs.

## ARGUMENT

## I.  NO MULTIPLIER SHOULD APPLY

### A.  Enhancement Would Render the Fee Award Grossly Disproportionate to the Damages Fund

Both federal and California courts customarily evaluate the reasonableness of a class action fee award by "cross-checking" it against the amount of the damages fund to ensure that the award is not disproportionate to the class fund.  *Lucas v. Kmart Corp.*, 2006 U.S. Dist. LEXIS 51420, at *22-*27 (D. Colo. July 27, 2006); *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 45-46 (2000).  "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around *one third of the recovery*."  Herbert B. Newberg, Newberg on Class Actions § 14:6 at 551 (4th ed. 2002) (emphasis added).

In *Lealao*, for example, the Court held that "in cases in which the value of the class recovery can be monetized with a reasonable degree of certainty and it is not otherwise inappropriate, a trial court has discretion to adjust the basic lodestar through application of a positive or negative multiplier where necessary to ensure that the fee award is within the range of fees freely negotiated in the legal marketplace."  *Lealao*, 82 Cal. App. 4th at 49-50.  In particular, the Court approved comparing the basic lodestar number to "the range of percentage fees freely negotiated in comparable litigation."  *Id.* at 50.

Similarly, in *Lucas*, a case brought under the ADA and parallel state laws, the Court approved attorneys fees of $3.25 million under California law only after performing a "cross-check" to the $13 million in damages paid to class members.  Applying *Lealao*, the Court found that the "cross check demonstrates that Class Counsel's fee request – which represents less than 20%" of the damages fund, was reasonable.  *Lucas*, 2006 U.S. Dist. LEXIS at *27.  Although the settlement also included "injunctive relief that is comprehensive and far-reaching," *Lucas*, 2006 U.S. District LEXIS at *5, the Court performed the cross-check only against the

1  "$13 million fund on behalf of [the] Damages Sub-Class," the part of the settlement which could
2  be monetized with reasonable certainty.

3  In this case, the lodestar requested by plaintiffs — more than $2 million — by itself
4  exceeds one-third of the $6 million of the damages fund created by the settlement. Plaintiffs'
5  request for a multiplier would result in a total fee award that greatly exceeds the appropriate
6  percentage of the damages fund created by the settlement. The "cross check" therefore strongly
7  counsels against any multiplier, let alone the 2.0 multiplier sought by plaintiffs.

### B. The Relevant Factors Do Not Justify a Multiplier

9  Plaintiffs ask the Court to apply a multiplier of 2.0 to the lodestar, resulting in a merits
10 fee request in excess of $4 million. But plaintiffs have not met their burden in demonstrating
11 that the lodestar in this case should be increased to that exorbitant sum. No multiplier, let alone
12 a 2.0 multiplier, should be applied in this case.

13 First, plaintiffs argue that a 2.0 multiplier is warranted because this matter was novel and
14 complex. That factor does not favor enhancement because it is already accounted for in the
15 initial lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir.
16 1996) (only factors "that are not already subsumed in the initial lodestar calculation" are
17 relevant); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) ("a trial court should not consider
18 . . . factors to the extent that they are already encompassed in the lodestar"). Were it not for the
19 novelty of the legal issues presented and the particular expertise of counsel, there would be no
20 justification for involving three separate law firms, each with partners whose significant time
21 expenditure on the case is multiplied by high hourly rates, to calculate the initial lodestar.
22 Similarly, if the case were routine and straightforward, plaintiffs would not be entitled to count,
23 for purposes of calculating the lodestar, so many thousands of hours. Double-counting cannot be
24 relied upon to justify application of a multiplier. *Morales*, 96 F.3d at 363-64; *Ketchum*, 24 Cal.
25 4th at 1138; *see also Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 999 (N.D.
26 Cal. 2005) (Illston, J.) (finding that the complexity of the case did not warrant enhancement, "as
27 this factor was already considered in determining the appropriate lodestar amount").
28

1   Second, plaintiffs assert a 2.0 multiplier is necessary because the outcome in this
2   litigation was "highly contingent and risky."  In *City of Burlington v. Dague*, 505 U.S. 557, 563-
3   64 (1992), the United States Supreme Court rejected the use of multipliers based on contingent
4   risk because they encourage non-meritorious litigation and can result in double-counting.
5   California law continues to allow "fee enhancement, or [a] so-called multiplier, for contingent
6   risk [in order] to bring the financial incentives for attorneys enforcing important constitutional
7   rights, such as those protected under the anti-SLAPP provision, into line with incentives they
8   have to undertake claims for which they are paid on a fee-for-services basis."  *Ketchum*, 24 Cal.
9   4th at 1132.  In this case, however, a multiplier is not warranted by the contingency or risk
10  presented by the instant litigation, for several reasons.  No single individual or law firm took on
11  the attendant risk; the risk was shared among multiple attorneys working on behalf of different
12  firms and organizations.  In addition, plaintiffs' counsel had significant incentives, monetary and
13  otherwise, to undertake the representation of plaintiffs in this case.  As the billing records reflect,
14  plaintiffs' counsel has received significant publicity as a result of bringing this lawsuit.  The
15  substantial lodestar here is sufficient to compensate counsel and need not be adjusted to create
16  incentives for bringing this type of high-profile litigation.  The risks associated with this
17  litigation do not justify enhancement.

18   Finally, plaintiffs' counsel point to the results they achieved by the settlement, asserting
19  that their work has "greatly increased access to target.com for tens of thousands of blind people
20  in California and hundreds of thousands of people with vision impairment throughout the
21  country."  (Plaintiffs' MPA at 23.)  The accessibility of the Target.com website has always been
22  a disputed issue, however, on which no conclusive finding was ever made.  Indeed, when this
23  Court denied plaintiffs' motion for a preliminary injunction, it found that "plaintiffs cannot
24  demonstrate that the relevant facts clearly favor[ed] a finding that the Target.com is inaccessible
25  to the blind."  (Order of Sept. 6, 2006 at 22.)  Rather, as the Court acknowledged, the record
26  raised "questions . . . with respect to whether the average blind person is able to access Target's
27  website."  (*Id.* at 24.)

28

Similarly, the record is devoid of any support for the suggestion that "tens of thousands of blind people in California" use Target.com, let alone that they have encountered any problems when doing so. Thus far, only a modest amount of claims have been filed by California class members. Likewise, there is no evidence that "hundreds of thousands" of people with vision impairment in the United States have encountered barriers on Target.com. The Court should not award a multiplier based on assertions by plaintiffs that are not supported by facts in the record. *See Flannery v. CHP*, 61 Cal. App. 4th 629 (1998) (reversing and remanding application of a 2.0 multiplier because the trial court's finding of "substantial benefit to a large class of persons" was not supported by the record).[1]

### C. Awards in Other Cases Demonstrate That Enhancement Is Unwarranted

#### 1. Courts Routinely Deny Requests for a Multiplier, Even When Substantial Benefits Are Secured for a Class

Plaintiffs give the impression that a multiplier is virtually automatic. In fact, the opposite is so. "A 'strong presumption' exists that the lodestar figure represents a 'reasonable fee,' and therefore, it should only be enhanced or reduced in 'rare and exceptional cases.'" *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). Because of the strong presumption, courts routinely deny requests for enhancement even when the value of the benefit secured for class members greatly exceeds the lodestar. *Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981 (N.D. Cal. 2005) (Illston, J.) is illustrative. Just as in the instant case, *Lopez* was brought under the ADA and parallel state laws. *See id.* at 984. The court characterized the litigation as "long [and] hard-fought." *Id.* On the eve of trial, the parties reached a settlement

---

[1] Target notes that the other factors named but not discussed by plaintiffs likewise do not support a multiplier. The lawyers' skill in representing the issues is accounted for in the high hourly rates, unchallenged by Target, of plaintiffs' counsel. *See Ketchum*, 24 Cal. 4th at 1138 (noting that this factor is particularly susceptible to improper double-counting). The preclusion of other employment by the attorneys should not be an issue here because plaintiffs were represented by a large team of lawyers, including multiple lawyers each from Disability Rights Advocates, Schneider Wallace Cottrell Brayton Konecky, and Brown, Goldstein & Levy, none of whom appear to have worked on this case full time.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES
Case No. C-06-01802-MHP
sf-2612701

7

1   that required the school district to bring the facilities of 96 different schools and child
2   development centers into compliance with ADA Accessibility Guidelines and established an
3   enforceable timetable for compliance. *Id.* at 984-85. The court found that the settlement
4   agreement provided "substantial and important benefits for disabled students in the [San
5   Francisco Unified School] District." *Id.* at 984. The parties estimated that the cost of the access
6   work agreed to would exceed $100 million. *Id.* at 985. Even so, the Court denied plaintiffs'
7   request for a 1.2 multiplier, instead ordering no multiplier at all. *Id.* at 998-1000, 1004.

8               **2.       The Decisions Relied Upon by Plaintiff Are Distinguishable**

9              Plaintiffs rely on three cases as supposed support for the 2.0 multiplier they seek. None
10  of those cases support a multiplier in this case. In *Chabner v. United of Omaha Life Insurance*
11  *Co.*, the fee award was less than $500,000 for merits work *after* the Court applied a multiplier of
12  2.0 — a modest fraction of the $4-million-plus fee award that plaintiffs seek here. (Declaration
13  of Laurence W. Paradis in Support of Plaintiffs' Motion for Reasonable Fees and Costs ("Paradis
14  Decl."), Ex. H at 12.) If enhancement was required to compensate Chabner's counsel
15  adequately, it does not follow that the same is true here.
16             Likewise, in *Lieber v. Macy's West*, far more modest sums were at issue. The court-
17  ordered lodestar was approximately $917,000 for merits work. A 1.75 multiplier was applied,
18  yielding a fee award for merits work of approximately $1.6 million. (Declaration of Kristina
19  Paszek in Support of Target Corporation's Opposition to Plaintiffs' Motion for Reasonable Fees
20  and Costs ("Paszek Decl."), Ex. A at Entry 194.) In *Lieber*, this fee award came after a trial and
21  nearly five years after the complaint was filed. (*Id.*) In the instant case, which settled long
22  before trial or even the deadline for dispositive motions, plaintiffs seek a lodestar that far
23  exceeds the fee award that the Court granted in *Lieber* after applying a multiplier.
24             Tellingly, plaintiffs cite only one ruling in which a fee award even approaches the sum
25  that plaintiffs seek: *Lucas v. Kmart Corp.*, 2006 U.S. Dist. LEXIS 51420 (D. Colo. July 27,
26  2006). In *Lucas*, the Court applied a multiplier of 1.87, resulting in a fee award of $3.25 million.
27  *Id.* at *23-*27, *29. However, in addition to providing for "comprehensive and far-reaching"
28  injunctive relief, the settlement in Lucas created a $13 million fund on behalf of a damages

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES
Case No. C-06-01802-MHP
sf-2612701

8

subclass. *Id.* at *5.  Thus, in *Lucas*, plaintiffs' counsel secured a damages fund over twice the size of the damages fund created in this case and were awarded over $1 million less in fees than the amount that plaintiffs' counsel seek here.  In all, the *Lucas* fee award amounted to approximately 25% of the damages fund, far less than the 70% sought by plaintiffs here.  As with *Chabner* and *Lieber*, *Lucas* does not justify plaintiffs' request in this case.

## II.   PLAINTIFFS' LODESTAR IS EXCESSIVE

### A.   Plaintiffs Seek Compensation for Hours Not Reasonably Expended

Plaintiffs bear the burden of submitting sufficient evidence to support the hours for which they now seek compensation.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended on other grounds*, 808 F. 2d 1373 (1987) (holding "hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours are deemed excessive or otherwise unnecessary").  Plaintiffs have failed to provide evidence to support the conclusion that the hours claimed were reasonably spent. Plaintiffs seek compensation for a total of over 5000 hours.  However, a significant portion of these hours are duplicative, inefficient, or non-compensable.  A full listing of the time entries that should be deducted are provided in Exhibit B of the Paszek Declaration.[2]

#### 1.   Non-Compensable Hours

##### a.   Unsuccessful Preliminary Injunction Motion

Plaintiffs seek $233,972.50.50 in connection with their unsuccessful motion for preliminary injunction. (Paszek Decl. ¶¶ 3-8 & Ex. B.)  As Plaintiffs were unsuccessful in this motion, this sum should not be included in the lodestar.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983) (holding the court has discretion to reduce the lodestar amount by the fees incurred working on unsuccessful claims); *see also Wallace v. Consumer Coop. of Berkeley*, 170 Cal. App. 3d 836, 846-47 (1985).

---

[2] The chart in Exhibit B to the Paszek Declaration was designed so that in calculating the full sum to be deducted, entries that fall into multiple categories are not double-counted. (Paszek Decl. ¶ 5.)

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES
Case No. C-06-01802-MHP
sf-2612701

9

### b. Travel Time

Plaintiffs seek a total of $89,167 for time devoted solely to travel. (Paszek Decl. ¶¶ 3-8 & Ex. B.) Because plaintiffs have "not submitted any evidence demonstrating a local customary practice of billing clients for travel time," *Spalding Labs., Inc. v. Ariz. Biological Control, Inc.*, 2008 U.S. Dist. LEXIS 56100, at *15 (C.D. Cal. May 29, 2008), this sum must be deducted from the lodestar.

### c. Clerical Tasks

Plaintiffs seek a total of $8,803.50 for time devoted to secretarial or clerical tasks such as word processing or "receiving" filed documents. (Paszek Decl. ¶¶ 3-8 & Ex. B.) Fees for such work are compensable only if plaintiffs establish that clients are customarily billed for such work in the relevant community. *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006). They have not submitted evidence of such a custom. Moreover, even when the record demonstrates that it is customary to bill clients for such tasks, it is impermissible to charge paralegal rates for clerical tasks, regardless of who performs them. *Id.* Accordingly, $8,8803.50 should be deducted from the lodestar.

### d. Insufficiently Documented Time Entries

Many of the time entries in the billing records submitted by plaintiffs' counsel lack sufficient descriptions of the work performed. (Paszek Decl. ¶¶ 3-8 & Ex. B.) Furthermore, there are a number of entries in the Schneider Wallace Cottrell Brayton Konecky LLP time records corresponding to "CMH," with a billing rate of $550 per hour. (Declaration of Joshua Konecky in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs & Ex. A at 36; Decl. Paszek Decl. ¶ 6 & Ex. B.) The relevant declaration provides no explanation as to the identity or qualifications of this timekeeper. Because these entries are insufficiently documented, the corresponding sum of $15,207.50 should not be included in the lodestar.

### 2. Duplicative Hours

A review of the billing records reveals numerous instances of unnecessary duplication. For example, plaintiffs have charged for more than one attorney (or summer associate) to depose a witness or prepare a witness for deposition. (Paradis Decl., Ex. B at 151; Paszek Decl. ¶ 6 &

1   Ex. B.) Defendants should not be forced to foot the bill for over-staffing and the inefficient use
2   of personnel. *Fair Hous. Council v. Penasquitos Casablanca Owner's Ass'n,* 523 F. Supp. 2d
3   1164, 1180 n. 10 (S.D. Cal. 2007) (finding that "double attendance of counsel" at depositions
4   constituted overstaffing). $24,500 should accordingly be deducted from the lodestar. (Paszek
5   Decl. ¶ 3-8 & Ex. B.)

### 3.   Inefficient Hours

Plaintiffs seek compensation for numerous activities that were inefficient and unnecessary. These sums should not be included in the lodestar:

- Plaintiffs seek $2,590 for research and drafting by partners. (Paszek Decl. ¶¶ 3-8 & Ex. B.) This work could have been completed more efficiently by associates who bill at a lower rate. Defendant should not be required to pay the partner billing rates for these activities. $1,295, which represents half of the sum sought for these entries, should accordingly be deducted from the lodestar.

- Plaintiffs seek $25,763 for their 2007 supplemental class certification briefing. (Paszek Decl. ¶¶ 3-8 & Ex. B.) Had plaintiffs clearly set forth their arguments in the first round of briefing, the supplemental briefing would not have been required. Defendant should not bear the burden of compensating plaintiffs for inefficient work.

- Plaintiffs submitted declarations from numerous persons who were found, upon consideration of the initial round of class certification briefing, not to be class members. Target should not be forced to foot the $10,028 bill for the depositions and inadequate declarations of these individuals. (Paszek Decl. ¶¶ 3-8 & Ex. B.)

- Although counsel may be compensated for "[a]ttorney work in the political area . . . where narrowly focused on fostering litigation goals of their clients," *Davis v. City of San Francisco,* 976 F.2d 1536, 1545 (9th Cir. 1992), plaintiffs' counsel in this case has submitted requests to be paid $27,939.50 for time speaking to reporters, reviewing press coverage, and coordinating a media

campaign. (Paszek Decl. ¶¶ 3-8 & Ex. B.) Target should not be required to fund a public relations campaign initiated by plaintiffs' counsel.

### B. The Hourly Rates for Summer Associate and Paralegal Work Are Excessive and Should Be Reduced

Plaintiffs have the burden of producing "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services . . . ." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Plaintiffs have not met their burden of establishing that the claimed rate of $195 per hour for time spent by summer associates is reasonable. In fact, the record contains only one reference to an hourly rate for summer associates: $60-$80. (Decl. of Richard M. Pearl in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs § 9(a)(4).) In accordance with this evidence, the rate for work by Disability Rights Advocates summer associates should be reduced to $70 per hour, which would result in a total deduction of $43,076.28. (Paszek Decl. ¶¶ 3-8 & Ex. B.)

The evidence submitted by plaintiffs also indicates that the rate of $225 per hour sought for paralegal work by Disability Rights Advocates and Brown, Goldstein & Levy is excessive. Plaintiffs' evidence shows that the mean 2008 hourly billing rate for paralegals at California law firms is approximately $160.[3] The rate for paralegal work by these firms should be reduced to $160 per hour for purposes of calculating the lodestar. This would result in a total deduction of $18,482.07. (Paszek Decl. ¶¶ 3-8 & Ex. B.)

### C. Total of Amount of Reasonably Spent Hours

After deducting for non-compensable or unsupported hours, the total lodestar should be no greater than $1,691,417 (Plaintiffs' claimed lodestar of $2,161,828 - $470,411).[4] (Paszek Decl. ¶ 9.)

---

[3] This calculation was made by averaging the 2008 billing rates for paralegals set forth in section 9.b. of the Declaration of Richard M. Pearl in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs. Where a firm listed a rate range rather than a single rate, the average of the lowest and highest rate was used.

[4] The total deduction ($470,411) is slightly less than the sum of all of the individual deductions, as a small number of billing entries fall within more than one category. (*See* Paszek Decl. ¶ 5.)

### D. Fees on Fees

Target reserves the right to challenge the amount claimed by plaintiffs for "fees on fees" after plaintiffs provide, as they indicated they will, the total sum sought for this category of fees, along with supporting documentation.

## CONCLUSION

For the reasons stated above, Target respectfully requests that the Court reduce plaintiffs' requested fees. There is no dispute that plaintiffs' counsel are entitled to reasonable fees and costs. Target does not challenge the hourly rates of plaintiffs' counsel, nor does Target contend that plaintiffs' counsel should not be compensated for work that was reasonably done to litigate the case. However, the reduced lodestar of nearly $1.7 million is ample compensation for plaintiffs' counsel under the circumstances present in this case. The Court should reduce the total lodestar award by $470,411, the total amount that was billed as a result of duplicative, inefficient or non-compensable work. The total attorneys' fee award should not exceed $1,691,417. In addition, a multiplier is not appropriate in this action.

Dated: December 10, 2008
MATTHEW I. KREEGER
KRISTINA PASZEK
MORRISON & FOERSTER LLP

By:  /s/ Matthew I. Kreeger
         Matthew I. Kreeger

*Attorneys for Defendant*
TARGET CORPORATION

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES
Case No. C-06-01802-MHP
sf-2612701

13