UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, et al., | No. C 06-01802 MHP |
| Plaintiffs, | **MEMORANDUM & ORDER** |
| v. | **Re: Attorneys' Fees and Costs** |
| TARGET CORPORATION, | |
| Defendant. / | |

Plaintiffs filed the instant action in the Superior Court for the State of California, County of Alameda, in February 2006. In March 2006, defendant removed the case to federal court. A period of intense litigation followed, culminating in the certification of the plaintiff class in October 2007. In April 2008, the parties reached a settlement and agreed, among other things, that defendant would pay plaintiffs' reasonable attorneys' fees and litigation costs in an amount to be determined by the court. On March 9, 2009, the court held a fairness hearing and on March 10, 2009, the court granted final approval of the settlement. As part of the briefing on the fairness issues plaintiffs moved for attorneys' fees and costs. At the fairness hearing the court entertained arguments on the quantum of such fees and costs to which plaintiffs' counsel might be entitled. Having considered the parties' argument and submissions, the court enters the following memorandum and order.

BACKGROUND

Plaintiffs are a non-profit organization with the purpose of promoting the general welfare of blind persons, its California chapter, and individuals representing a national class and a California subclass of blind persons. Defendant Target Corporation operates approximately 1,400 retail stores nationwide, including 205 stores in California. Target.com is a website owned and operated by Target. By visiting target.com, customers can purchase many of the items available in Target stores.

Plaintiffs originally filed a class action in state court seeking certification of a class of California individuals. Plaintiffs alleged that Target.com was not accessible to blind persons, denying them full and equal access to Target stores in violation of California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.*, and Disabled Persons Act, id. §§ 54, *et seq.* After defendant removed this action to federal court, plaintiffs amended their complaint to include a federal claim under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, *et seq.*

Defendant mounted a vigorous opposition. The court denied defendant's first motion to dismiss but also rejected plaintiffs' motion for a preliminary injunction. Plaintiffs filed a motion for class certification, which the court found partially deficient; the court granted plaintiffs leave to amend. Plaintiffs filed a corrected motion for certification, including numerous declarations of blind individuals from across the country documenting similar experiences with Target.com. Defendant deposed many of these persons, and, while the second motion for certification was pending, filed a motion for summary judgment. The court granted in part defendant's motion for summary judgment with respect to plaintiff Bruce F. Sexton's ADA claim but subsequently certified a national class and a California subclass. Plaintiffs replaced Sexton with James P. Marks and Melissa Williamson as representatives of the nationwide class.

Target sought an interlocutory appeal of the class certification before the Court of Appeals, which was denied. Target then filed a second motion to dismiss the ADA claim, which the court rejected as bordering on the frivolous. During this time, defendant had improved Target.com to make it more accessible using a plan submitted by plaintiffs prior to the commencement of this action.

The parties settled in September 2008. Defendant agreed to modify its website to meet accessibility guidelines and permit plaintiffs to monitor its continued compliance. Additionally, defendant established a six million dollar settlement fund to compensate members of the California subclass.

LEGAL STANDARD

A prevailing plaintiff may petition for attorneys' fees under the fee-shifting provisions of the federal ADA, see 42 U.S.C. § 12205, the Unruh Act, see Cal. Civ. Code § 52(a), and the Disabled Persons Act, see Cal. Civ. Code § 54.3(a). All three statutes provide that prevailing plaintiffs may be entitled to reasonable attorneys' fees and costs, as determined by the court in its discretion. Under federal law, to be considered a prevailing party the plaintiff must effect a "material alteration of the legal relationship between the parties [whereby] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." Farrar v. Hobby, 506 U.S. 103, 113 (1992). Defendant does not dispute that plaintiffs are a prevailing party for the purposes of entitlement to fees and costs. While the statutes leave the award of attorneys' fees and costs to the court's discretion, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (citation omitted). The court must determine the amount in fees and costs to which plaintiffs are reasonably entitled. See id. at 433.

When California law governs the claim, it also governs the award of fees. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). California allows courts to award attorneys' fees under the following circumstances:

> [A] court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery . . . .

3

Cal. Code Civ. Proc. § 1021.5. To establish reasonable attorneys' fees, California employs the lodestar method, which "multipl[ies] the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors . . . ." Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19, 26 (Cal. Ct. App. 2000).

DISCUSSION

I. The Lodestar

The "lodestar is the product of reasonable hours times a reasonable rate." City of Burlington v. Dague, 505 U.S. 557, 559 (1992) (citations omitted). The Supreme Court has established a "strong presumption" that lodestar fees are reasonable. Id. at 562. Plaintiffs' attorney bears the burden of submitting detailed records documenting "the hours worked and rates claimed." Hensley, 461 U.S. at 434. The court may reduce those hours if the documentation is inadequate, the submitted hours are duplicative or inefficient, or the requested fees appear excessive or otherwise unnecessary. Id.; see also Chalmers v. Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986).

### A. Hourly Rates

Reasonable hourly rates are calculated by reference to "prevailing market rates in the relevant community," with a special emphasis on fees charged by lawyers of "comparable skill, experience, and reputation." Davis v. City of San Francisco, 976 F.2d 1536, 1546 (9th Cir. 1992). As a general rule, the forum district represents the relevant legal community. See Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992). In this case, the forum district is the Northern District of California. Since these are market rates, and therefore subject to normal performance expectations, they "d[o] not already reflect an expectation of excellent results." Vizcaino, 290 F.3d at 1051. The court is satisfied that the plaintiffs' requested rates are in line with those billed by attorneys in this district experienced in complex litigation, as analyzed and thoroughly discussed by plaintiffs' attorneys' fees expert. See Docket No. 191 (Pearl Dec.).

4

1   While defendant does not dispute the rates charged by plaintiffs' lawyers, it does challenge
2 the rates of summer associates and paralegals.  Defendant also objects to funding plaintiffs' practice
3 of using more expensive partner time for some drafting and research tasks.  First, the court finds
4 plaintiffs' evidence of paralegal and summer associate rates in this judicial district convincing, see
5 id., and notes that defendant's own counsel charges similar rates for paralegals, see id. at 23.
6 Second, as this court has consistently held, the court may not condition fees on plaintiffs' counsel's
7 conformance to the typical commercial law firm's pyramidal staffing structure.  See, e.g., Chabner v.
8 United of Omaha Life Ins. Co., No. C 95-0447, 1999 WL 33227443, at *5 (N.D. Cal. Oct. 12, 1999)
9 (Patel, J.).  The legal profession is diverse enough to embrace a variety of ways of conducting
10 effective litigation, some of which may involve partners with relevant expertise conducting research
11 or preparing a witness.   As this court noted in the past, the benefits of the pyramidal structure itself
12 have been a subject of debate within the profession for some time.  See, e.g., United States v. San
13 Francisco, 748 F. Supp. 1416, 1432 (N.D. Cal. 1990) (Patel, J.).  Plaintiffs' proposed hourly rates are
14 granted as requested.

16      B.    Reduction of Fees

17   Plaintiffs request that all hours be counted as part of the lodestar, regardless of whether the
18 hours were spent pursuing successful or unsuccessful motions.  Defendant opposes paying any of the
19 hours spent on unsuccessful motions or media appearances.
20   Hours spent on unsuccessful motions are excluded when the motion is unrelated to the
21 prevailing plaintiff's successful claim.  Hensley, 461 U.S. at 440.  "Where a lawsuit consists of
22 related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced
23 simply because the district court did not adopt each contention raised.  But where the plaintiff
24 achieved only limited success, the district court should award only that amount of fees that is
25 reasonable in relation to the results obtained."  Id.  The plaintiffs' attorney is entitled to reasonable
26 remuneration for hours spent on a claim that contributes to the ultimate success of plaintiff's main
27 goals.  See Cabrales v. County of Los Angeles, 935 F.2d 1050, 1052 (9th Cir. 1991).

28

5

In cases involving novel arguments or extensions of existing law, the proper test is whether it was reasonable at the time to work on an ultimately unsuccessful motion rather than ask whether, in hindsight, the plaintiff could have prevailed without it. See Walsh ex rel. Walsh v. Tamalpais Union High Sch. Dist., No. C-96-3037, 1998 U.S. Dist. LEXIS 22704 (N.D. Cal. Nov. 19, 1998) (Legge, J.). This was such a case. Plaintiffs' unsuccessful pursuit of a preliminary injunction yielded parts of the evidentiary record used to support their commonality argument at the certification stage. The plaintiffs are granted half of all hours spent litigating the unsuccessful preliminary injunction, in the amount of $116,986.25.

Similar reasoning applies to plaintiffs' request for hours spent on their supplemental class certification briefing. This briefing should not be fully compensated, since it was necessitated by deficiencies in plaintiffs' first round of briefing. The plaintiffs are granted two-thirds of the hours spent on the supplemental class certification briefing, i.e., $17,175.33, instead of the $25,763 requested.

When a plaintiff's attorney gives press conferences or performs other public relations work directly and intimately connected to the successful representation of the client, he or she is entitled to compensation. See Davis, 976 F.2d at 1545. However, "the district court should disallow any hours claimed by [plaintiff's] counsel for public relations work which did not contribute, directly and substantially, to the attainment of [plaintiff's] litigation goals." Id. In class actions, it is doubly necessary to publicize plaintiffs' efforts in order to keep class members informed of the course of the action and to help identify additional class members. See United States v. San Francisco, 748 F. Supp. at 1423. While recognizing the important function of media work in class actions, the court also notes that the class counsel's reputation also stands to gain considerably. Accordingly, plaintiffs' counsel are granted half of the hours spent on media work, in the amount of $13,969.75.

### C. Unmodified Fees

The following fees, requested by plaintiffs and opposed by defendant, are granted in their entirety. Defendant challenged a number of insufficiently documented time entries, which the

6

1 plaintiffs have agreed to offset by a five percent voluntary reduction in their merit-based fees. This
2 voluntary reduction is sufficient to offset the flawed time entries identified. Defendant also asserts
3 that preparation of an expert witness by two attorneys constituted unnecessarily duplicative billing.
4 In fact, it is often more efficient for lawyers with complementary skill sets to cooperate in
5 performing a task. The use of two attorneys for such a task is hardly extravagant.

Defendant also opposes awarding fees for travel time and time used to perform clerical tasks. The Ninth Circuit has established that travel time and clerical tasks are reasonably compensated at normal hourly rates if such is the custom in the relevant legal market. See Davis, 976 F.2d at 1543; Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co., 460 F.3d 1253, 1256 (9th Cir. 2006). Plaintiffs have documented this custom to the court's satisfaction. See Docket No. 198 (Paradis Dec.) ¶ 6. The custom in this district of charging for word processing and other clerical tasks has also been well-established. See, e.g., Finkelstein v. Bergna, 804 F. Supp. 1235, 1260 (N.D. Cal. 1992) (Conti, J.) (finding that "it has become the prevailing practice in firms in the San Francisco area to bill clients separately for word processing support work").

Finally, defendant would exclude the time plaintiffs' counsel spent in connection with individuals who turned out not to be class members. In class actions, the outer edges of the class are often blurry and may require additional investigation to firmly establish class membership. This task will sometimes involve contacting or deposing individuals who might end up outside of the class definition. The test is the same as for unsuccessful motions: class counsel is entitled to compensation for his reasonable efforts as long as they advanced the class's ultimate goals. Cabrales, 935 F.2d at 1052. Here, the court finds it reasonable to compensate plaintiffs for these hours.

II. Multiplier

Plaintiffs' counsel has requested a 2.0 multiplier, and defendant has argued that no multiplier whatsoever should be granted. There is a strong presumption that the lodestar—computed as the product of hours billed times a reasonable hourly rate—represents a reasonable fee. See Dague, 505

U.S. at 562. A party that requests an augmentation of its lodestar figure through the use of a multiplier bears the burden of showing "that such an adjustment is necessary to the determination of a reasonable fee." Blum v. Stenson, 465 U.S. 886, 898 (1984); see also Ketchum, 24 Cal. 4th at 1138 (establishing that, under California law, "the party seeking a fee enhancement bears the burden of proof"). As a result, district courts will use a multiplier only in "rare and exceptional cases." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). This is such a case.

Federal law does not permit the use of multipliers in actions brought under fee-shifting statutes like the ADA, see Dague, 505 U.S. at 566, but California law does, see Ketchum, 24 Cal. 4th at 1138. "When a party prevails under both federal and state law, the district court may apply the more generous provisions of state law in calculating a fee award, such as including a multiplier for contingent fee risk." Fair Housing Council of San Diego v. Penasquitos Casablanca Owner's Ass'n, 523 F. Supp. 2d 1164, 1170 (S.D. Cal. 2007), citing Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1479 (9th Cir. 1995). This action involved California claims and one federal claim. Under the circumstances of the case, it is reasonable for the court to consider applying a multiplier. A court may augment or reduce the lodestar figure in order to bring it in line with "the range of fees freely negotiated in the legal marketplace in comparable litigation." Lealao, 82 Cal. App. 4th at 50. In determining the exact quantum of the multiplier, California courts evaluate several factors, including: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." Ketchum, 24 Cal. 4th at 1132.[1] The total fee amount is then compared against lodestar multipliers in comparable cases.

### A. Factors Affecting the Multiplier

Exceptional results in the face of vigorous opposition and in the absence of supporting precedent militate in favor of higher multiplier values. See Vizcaino, 290 F.3d at 1048. As discussed below, plaintiffs' litigation strategy involved the extension of important areas of disability law into an emerging form of electronic commerce that promises to grow in importance. While

8

similar results in established areas of law might be less impressive or worthy of additional encouragement, it takes exceptional creativity to establish the lawfulness of extending established rights into uncharted legal territory. When successful, these efforts must earn a premium to encourage novel legal arguments and a stringent examination of the accessability of new technologies. The alternative is a stagnant legal landscape where advances in technology render statutory protections ineffective or obsolete.

While every action enforcing a right sends a message to the losing party or others like it, presumably affecting their future behavior, the public must benefit in a more tangible way to warrant the award of a multiplier. See Flannery v. Cal. Highway Patrol, 61 Cal. App. 4th 629, 637 (Cal. App. 1998). In Flannery, the state court found that a successful action, even when it sent a message that sexual discrimination and harassment would not be tolerated, failed to register as a significant public benefit. Id. The court found that the lawsuit's primary result was to secure a remedy for the plaintiff, while the public received only the generic assurance that anti-discrimination laws will be enforced. Id. Unlike the Flannery plaintiff, plaintiffs in this action have not only vindicated their own rights, but have created a six-million dollar damages fund for a California class, prompted defendant to effect substantial changes to its website enabling the plaintiff class to access it, and established for the first time that equal access to internet commerce is guaranteed under California law and partially protected by the ADA.

The scope and significance of plaintiffs' victory cannot be overlooked—nor has it been ignored by the country's largest retailers, many of whom promptly revised their websites following this lawsuit. See Docket No. 199 (Goldstein Dec.) ¶ 6 & Exh. C. As in Heritage v. Town of Woodside, Nos. A120749 & A120757, 2008 WL 4868816 (Cal. Ct. App. 2008), a case in which the state court awarded a 2.0 multiplier, the present action "added to the jurisprudence of California on legal issues of public interest" by expanding important civil rights to the disabled, with the assistance of little existing case law. See id. at 3. Plaintiffs have substantially achieved their goals. In addition to securing a six million dollar settlement fund, they have compelled defendant, and

9

influenced other corporations, to alter their respective web presences.  Plaintiffs have broken new ground in an important area of law.

Class counsel's skill is also a factor to be considered.  In the court's estimation, and as demonstrated by the result obtained above, class counsel has prosecuted the instant action with exceptional skill.  Not every tactical decision was flawless, as is almost always true, but the court has already reduced the lodestar to account for unsuccessful motions.  The skill of class counsel supports a substantial multiplier.

Defendant does not dispute plaintiffs' counsel's representations that plaintiffs' counsel turned down other potential cases in order to pursue the instant case.  The need to ensure a steady supply of excellent lawyers advocating public causes militates in favor of awarding a multiplier greater than one in this case.  That said, the record does not indicate that any of plaintiffs' attorneys dedicated themselves exclusively to this case or document how many or what sort of opportunities were turned down in order to continue with this action.  This factor militates in favor of a substantial multiplier, though not necessarily 2.0.

Risk of non-payment is also an issue to be considered.  "A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." Ketchum, 24 Cal. 4th at 1132-1133, citing Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992).  After careful consideration, the Ketchum court declined to adopt the Dague rule. Id. at 1136-37.  "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." Id. at 1133.

Plaintiffs faced considerable risk in undertaking the present action.  Defendant is correct that the risk of non-payment of any recovery was low considering Target's financial resources.  However, defendant makes a basic mathematical error by suggesting that risk should be discounted because the work was divided among multiple firms.  Merely because the risk was spread around to

10

more than one firm does not mean that the risk of losing the lawsuit was somehow diminished: the amount at stake is less for each firm, but the risk of not getting paid remains the same.

In terms of the risk that plaintiffs would not prevail, it should be noted that defendant is a large national corporation whose resources dwarfed those available to plaintiffs. The arguments were new, the law uncharted. Defendant's arguments threatened to derail plaintiffs' strategy on more than one occasion. Without much legal precedent to guide their assessment of risk, plaintiffs' attorneys can hardly be faulted for seeking a higher than usual return on their investment. In summary, this was a substantially risky case; it merits a substantial multiplier.

### B. Multipliers in Similar Cases

California state courts have awarded multipliers greater than one for successful cases brought under the Unruh Act and federal law, placing special emphasis on the results obtained. See, e.g., Donovan v. Poway Unified School Dist., 167 Cal. App. 4th 567, 628 (2008) (awarding a 1.25 multiplier in light of the case's difficulty and risk, but declining to grant the 1.7 multiplier plaintiffs had requested). When plaintiffs have been only partially successful in their claims or the lawsuit proved unexceptional, the courts have on occasion reduced the multiplier to less than 1, reflecting factors such as the fraction of the claims that plaintiffs failed to win or the quality of counsel's legal representation. See, e.g., Fair Hous. Council v. Penasquitos Casablanca Owner's Ass'n, 523 F. Supp. 2d 1164, 1178 (S.D. Cal. 2007) (granting a 0.61 multiplier).

Courts have awarded 2.0 multipliers in those few exceptional cases where the risk of non-payment was so overwhelming that it had to be offset by the expectation of substantial attorneys' fees. In Woodside, which plaintiffs cite in support of a 2.0 multiplier, the court noted that the 2.0 multiplier was generous but found it to be within the range of acceptability, given the uncertainty of the outcome and protracted appellate litigation. 2008 WL 4868816 at *7. Discussing the multipliers generally awarded in the San Francisco area, this court previously underscored that 2.0 was usually the upper limit for cases that involved novel issues, high risk, and low availability of comparable

counsel. See United States v. San Francisco, 748 F. Supp. 1416, 1435-1436 (N.D. Cal. 1990) (Patel, J.).

Even when courts have declined to grant multipliers of 2.0, they have adjusted multipliers upward to reflect delays in expected payment and the counsel's effective loan of legal services to the client class. See, e.g., Stevens v. Vons Cos., 2d Civil Nos. B196755, B201528, 2009 WL 117902, at *10 (Cal. Ct. App. 2009) (upholding 1.4 and 1.6 multipliers in light of three-year duration of the lawsuit during which class counsel received no compensation); Donovan, 167 Cal. App. 4th at 628 (affirming a 1.25 multiplier where risk and novelty of arguments were factors but rejecting a 1.75 value as excessive). Like the prevailing plaintiffs in Stevens, plaintiffs' victory came only after multi-year litigation during which class counsel received no fees.

The instant case also resembles a previous decision of this court, involving the same counsel, a similarly large retailer, and a comparable victory. See Lieber v. Macy's West, Inc., 80 F. Supp. 2d 1065, 1066 (N.D. Cal. 1999) (Patel, J.). The court emphasized the risk associated with the counsel's decision to represent the class, ultimately resulting in a bench trial. The attorneys' fee award included a 1.75 multiplier. Lieber v. Macy's West, Inc., No. C 96-2955 (N.D. Cal. Dec 18, 2000) (Patel. J.). Unlike the Lieber plaintiffs, plaintiffs in the present case settled before the trial stage and, in the court's estimation, took on a somewhat smaller risk.

In light of these considerations, the court grants a multiplier of 1.65.

Defendant urges the court to cross-check the final fee award obtained through the multiplier method against percentage awards in common fund cases. It cites a Colorado district court decision that cross-checked a lodestar total only against the part of the settlement that could be monetized with certainty. See Lucas v. Kmart Corp., No. 99-CV-01923, 2006 WL 2729260 (D. Colo. July 27, 2006). In Lucas, the Colorado court relied upon a common fund case, Vaszlavik v. Storage Tech. Corp., No. 95-B-2525, 2000 U.S. Dist. LEXIS 21140 (D. Colo. Mar. 9, 2000), to cross-check the lodestar against a thirteen million dollar damages fund while ignoring the admittedly "comprehensive and far-reaching" injunctive relief the plaintiff had obtained. Id. at *2. The court declines to follow this path in the instant case. Here, the primary remedy sought by plaintiffs was

injunctive relief, not monetary damages. The court need not limit itself to monetary damages or cash settlement funds in assessing the benefits of a litigation. Vizcaino, 290 F.3d at 1049. Some important benefits are difficult to quantify, such as clarifying a certain area of law, id., forcing changes in corporate policies affecting thousands of individuals, id., or educating the public that the law requires them to accommodate persons with disabilities, Fischer, 214 F.3d at 1120.[2] These are more than merely "technical" victories; they are the very heart of what plaintiffs sought to accomplish. See id.

III. Costs Other Than Attorneys' Fees

Plaintiffs, as the prevailing party, are entitled to costs other than attorneys' fees, unless otherwise provided by federal statute. Fed. R. Civ. P. 54(d)(1). Defendant does not dispute plaintiffs' requested total, which the court views as well-documented and reasonable. Costs are granted in their entirety, in the amount of $194,353.

IV. Fees on Fees

"[T]ime spent by counsel in establishing the right to a fee award is compensable." Davis, 976 F.2d at 1544. California also allows the prevailing party's counsel to recover a "fee on fees," since otherwise the interminable litigation related to fees would frustrate the "purpose behind statutory fee authorizations[, which are meant to] encourage attorneys to act as private attorneys general and to vindicate important rights affecting the public interest." Ketchum v. Moses, 24 Cal. 4th 1122, 1133-1134 (Cal. 2001). After a review of the time records plaintiffs have submitted, the court has determined that $125,000 constitutes a reasonable award of fees for time used litigating fees and costs, rather than the requested $160,000.

V. Calculation of Fees

The award of fees and costs is calculated as follows. Plaintiffs' request for $2,321,050.50 in attorneys' fees is reduced by $13,969.75 (media), $116,986.25 (preliminary injunction), and

13

$8,587.66 (supplemental class certification briefing). The total after these reductions is $2,181,506.83. Applying a 5% voluntary reduction in fees, the lodestar merit fees to which plaintiffs are entitled becomes $2,072,431.49. Applying a 1.65 multiplier to this amount yields a total merit-based fee of $3,419,511.96. Additionally, the court awards costs of $194,353 and fees on fees of $125,000.

CONCLUSION

Plaintiffs' motion for reasonable attorneys' fees and costs is GRANTED as described above. Attorneys' fees and costs shall be awarded in the amount of $3,738,864.96.

IT IS SO ORDERED.

Dated: August 3, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. In Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), the Ninth Circuit listed twelve factors courts should consider when evaluating attorneys' fees in federal cases. In addition to California's four factors, Kerr requires a district court to consider "the time and labor required, . . . the customary fee, . . . time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases." Id. at 70. The court has already considered most of these factors in its determination of the lodestar amount, and now incorporates the remaining ones into its evaluation of the multiplier. Since the court is awarding the multiplier pursuant the more generous provisions of California law, it has structured the following discussion according to the four factors articulated by California precedent. See Ketchum, 24 Cal. 4th at 1132. To avoid double-counting, the court has excluded the factors already discussed in the lodestar from its evaluation of the multiplier. See Morales v. City of San Rafael, 96 F.3d 359, 363-364 (9th Cir. 1996) (only factors "that are not already subsumed in the initial lodestar calculation" are relevant).

2. Plaintiffs' counsel contend that their work on this case has greatly increased access to target.com for tens of thousands of blind people. Defendants note that the accessibility of target.com was a disputed issue and that no conclusive finding was made. Yet there is ample evidence in the record of defendant's significant moves to upgrade the accessibility of its website.